IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD. | § | |
| | § | Hon. Ronald Clark |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 9:06-CV-00158-RC |
| | § | |
| MICROSOFT CORPORATION, and | § | |
| NINTENDO OF AMERICA, INC., | § | ORAL HEARING REQUESTED |
| | § | |
| Defendants. | § | |

**DEFENDANT MICROSOFT CORPORATION'S MOTION
TO STAY LITIGATION PENDING REEXAMINATION
OF THE PATENTS-IN-SUIT BY THE PATENT OFFICE**

Dockets.Justia.com

## TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................**Error! Bookmark not defined.**

II.     BACKGROUND ................................................................................................... 3

III.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO
        STAY THIS LITIGATION PENDING THE REEXAMINATIONS ............................... 5

        A.      Stays Pending Reexamination Are Routinely Granted Early In The Case ............. 5

        B.      Reexaminations Will Dispose Of The Case Or, At Least, Simplify The Issues ..... 6

                1.      Claims That Are Invalidated (Or, For Most, Even Amended) Will
                        Eliminate Issues From The Case .................................................................. 6

                2.      Even If Claims Survive, Inter Partes Reexaminations, Which Have An
                        Estoppel Provision, Guarantee Streamlining Invalidity Issues ................... 8

                3.      Given The New Prior Art And The PTO's Longstanding
                        Experience With Mr. Armstrong's Patents And Related
                        Applications, A Stay Will Allow The Court To Take
                        Advantage Of The Work And Expertise Of The PTO .............................. 9

                4.      This Case's Size And Complexity Make
                        Simplification Even More Likely ........................................................... 10

        C.      A Stay Will Not Prejudice The Plaintiff ................................................................. 11

                1.      Because Anascape Is Not A Competitor, It Can Be
                        Fully Compensated By Money Through Royalty
                        Damages That Accrue During The Stay ................................................... 11

                2.      The PTO Must Act Quickly, Minimizing Any Delay ............................... 12

                3.      Anascape's Own Delay In Filing Suit Confirms It
                        Will Not Be Prejudiced In Letting The PTO Do Its Work ...................... 12

                4.      Microsoft and Nintendo Would Suffer
                        Serious Prejudice Absent A Stay ............................................................ 13

        D.      The Very Early Stage Of The Litigation Also Weighs In Favor Of A Stay ......... 13

IV.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Abbott Diabetes Care v. DexCom,*
    2006 WL 2375035 (D. Del. Aug. 16, 2006) ...................................................................... 5

*Alza Corp. v. Wyeth*,
    2006 WL 3500015 (E.D. Tex. Nov. 21, 2006) ................................................. 6, 9, 12, 14

*Amiga Dev. LLC v. Hewlett-Packard Co.,*
    Case No. 2:04-CV-242 (E.D. Tex. Feb. 16, 2006) ...................................................... 14

*Antor Media Corp. v. Nokia, Inc.,*
    No. 2:05-CV-186-DF (E.D. Tex. Sept. 27, 2006)............................................. 6, 9, 11, 14

*Bausch & Lomb Inc. v. Alcon Labs.,*
    914 F. Supp. 951 (W.D.N.Y. 1996) ............................................................................. 6, 13

*Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.,*
    129 F.3d 1247 (Fed. Cir. 1997).......................................................................................... 7

*Broadcast Innovation v. Charter Comm.,*
    2006 WL 1897165 (D. Colo. July 11, 2006) ...................................................................... 5

*CNS, Inc. v. Silver Eagle Labs, Inc.,*
    2004 WL 3631121 (D. Minn. Nov. 29, 2004) ................................................................. 14

*Data Treasury Corp. v. First Data Corp.,*
    No. 5:03CV39 (E.D. Tex. Apr. 26, 2006).......................................................................... 14

*Echostar Tech. Co. v. TiVo, Inc.,*
    2006 WL 2501494 (E.D. Tex. July 14, 2006) .......................................................... passim

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988).......................................................................................... 5

*Everything for Love.com v. Tender Loving Things*,
    2006 WL 2091706 (D. Ariz. July 21, 2006) ...................................................................... 5

*Gioello Enters. Ltd. v. Mattel, Inc.,*
    2001 WL 125340 (D. Del. Jan. 29, 2001)........................................................................ 13

*Gould v. Control Laser Corp.*,
    705 F.2d 1340, 1342 (Fed. Cir. 1983)............................................................................. 6

*Hubbell Inc. v. Genlyte Group*,
    2006 WL 1431967 (D.S.C. May 22, 2006)........................................................................ 5

*Ingro v. Tyco Indus., Inc.*,
    1985 WL 1649, at *3 (N.D. Ill. 1985) ............................................................................ 12

*KLA-Tencor v. Nanometrics*,
    2006 WL 708661 (N.D. Cal. March 16, 2006) ................................................................ 11

*May v. Wacoal*,
    Case No. 5:03-CV-160-DF (E.D. Tex. Apr. 5, 2005)........................................................ 5

*Middleton, Inc. v. Minnesota Mining and Mfg. Co.*,
    2004 WL 1968669 (S.D. Iowa Aug. 24, 2004)............................................................... 11

*Pegasus Dev. Corp. v. DirecTV, Inc.*,|
    2003 WL 21105073 (D. Del. May 14, 2003)............................................................ 10, 12

*Photoflex Prods. v. Circa 3 LLC*,
    2006 WL 1440363 (N.D. Cal. May 26, 2006) ............................................................ 5, 12

*Soverain Software LLC v. Amazon.com*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ........................................................................... 14

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
    33 U.S.P.Q.2d 2022 (N.D. Cal. 1995) ............................................................................ 14

*Verity Instr. v. Lam Res. Corp.*,
    No. 4:01CV321-RAS (E.D. Tex. April 10, 2002) ........................................................ 5, 14

*VData LLC v. Aetna, Inc.*,
    2006 WL 339288 (D. Minn. Nov. 21, 2006) .............................................................. 5, 10

*Watlow Elec. Mfg. v. Ogden Mfg.*,
    2006 WL 1892546 (E.D. Mo. July 10, 2006) ................................................................... 5

## **Statutes**

35 U.S.C. § 252 ............................................................................................................................. 7

35 U.S.C. § 303 .................................................................................................................. 4

35 U.S.C. § 307 .................................................................................................................. 7

35 U.S.C. § 311 *et seq* ...................................................................................................... 4

35 U.S.C. § 312 .................................................................................................................. 4

35 U.S.C. § 315(c) .............................................................................................................. 4

**<u>Other Authorities</u>**

*Manual of Patent Examining Procedure* § 2261 .............................................................. 4

**<u>Rules</u>**

37 C.F.R. § 1.913 .............................................................................................................. 4

MICROSOFT'S MOTION TO STAY
LITIGATION PENDING REEXAMINATION

Microsoft Corporation respectfully moves this Court to stay all proceedings in this action pending the reexamination of all twelve patents-in-suit by the United States Patent and Trademark Office ("PTO").  Nintendo of America, Inc. has informed Microsoft that it joins in this motion and will file a separate paper with the Court to that effect.

## I.    <u>INTRODUCTION</u>

On December 13, 2006, Microsoft filed its first request for reexamination, relating to Anascape's '802 patent.  (Carraway Declaration, ¶ 3).  Since then, more requests have been filed. (*Id.*).  By January 31, 2007, before this motion is fully briefed, Microsoft will have filed requests for reexamination of all twelve patents-in-suit.  (*Id.*).  The time is ripe for the Court to stay the litigation to allow the PTO to conduct its reexamination of the patents before the parties embark on what will be an enormously complex and expensive case.

Stays pending completion of reexaminations is not suited for every case.  However, this is the atypical case in which ***all*** of the factors that guide the Court's decision on a stay motion decisively support such a stay, as summarized below:

## 1.    Simplification of Issues – <u>Supports Stay</u>

o  ***New, Unconsidered Prior Art***:  Microsoft's reexamination requests present the PTO with new prior art it was not given a chance to consider when it originally examined the patents-in-suit.  The requests detail how the prior art fully invalidates the asserted claims.  In light of published PTO statistics and this new prior art, there is an overwhelming probability that the claims will be cancelled or at least amended in reexamination.

o  ***Even Amended Claims Will Eliminate Issues***:  In the typical case, ***only*** cancellation of a claim during reexamination can eliminate that claim from the lawsuit.  However, Anascape targets almost 75% of its asserted claims only against ***former*** products no longer being made. Because an amended claim can only be asserted prospectively, against activities that occur after

the reexamination is over, any amendment of those "old product" asserted claims would preclude the claim from being raised in this litigation, just as would cancellation. This unusual fact greatly increases the number of issues that will likely be eliminated by reexamination.

o    ***Inter Partes Reexaminations Guarantee Simplification***:  Unlike the typical case, this case includes ***inter partes*** reexaminations, which have a statutory estoppel provision to prevent relitigation of issues.  This atypical aspect of the case guarantees simplification even if some claims survive reexamination:  "[A]n inter partes reexamination can have no other effect but to streamline ongoing litigation … "[C]ourts have an even more compelling reason to grant a stay when an inter partes reexamination is proceeding with the same parties." *Echostar Tech. Co. v. TiVo, Inc.*, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006) (granting stay).[1]

o    ***Complex and Expensive Litigation***:  Anascape chose to assert 191 claims of twelve patents against eight different accused products.  Discovery, claim construction, motions, experts, and trials for such a complex case will be extremely expensive, much more so than the typical case.  This unusual complexity greatly increases the benefits of a stay.  Because the reexaminations will go forward regardless, and because all claims found invalid by the PTO (or, for most, even amended) would wipe them from the litigation, all resources of the parties and the Court spent on such claims will have been entirely wasted if the case is not stayed.

## 2.    No Prejudice – <u>Supports Stay</u>

o    ***Anascape Is Not A Competitor***:  Anascape does not practice its patents but instead is in the business of licensing patents.  Because it is not a competitor, it will not suffer loss of market share or similar types of competitive harm as a result of the stay.  Thus, money damages will be

---

[1] All cases cited in this brief taken from the Westlaw online database or the U.S.P.Q. reporter are collectively attached as Exhibit 12 to the Carraway Declaration filed in support of this motion.  The cases in Exhibit 12 are arranged alphabetically by first party.

sufficient to compensate Anascape if it prevails in both the reexaminations and the litigation.

o **Anascape Itself Delayed Nearly Five Years**:  The PTO is required by statute to resolve the reexaminations with "special dispatch."  Moreover, Anascape cannot complain about delaying the case during the time required to permit the PTO to complete its work when Anascape itself delayed nearly five years before filing this lawsuit.

**3.    Early Stage Of Case – <u>Supports Stay</u>**

The substantive work of this litigation is just underway, with minimal discovery to date, two trial dates over a year away, and—most important—no work yet on claim construction. While the parties and the Court have yet to consume significant resources, they are about to start down a very expensive road.  Given all of the factors supporting a stay, neither the Court nor the parties should be required to litigate the entire case ahead on patents in such a precarious state.

**II.    <u>BACKGROUND</u>**

Since being surprised by this lawsuit, Microsoft has diligently conducted the mountainous task of tracking down and analyzing prior art around the world (much of the relevant art is Japanese) for twelve patents with nearly 400 claims and then preparing reexaminations.  Furthermore, because the majority of the reexaminations are the inter partes variety, Microsoft is required to provide all of its ammunition in the request, which has made the task even larger.  Microsoft has been open with Anascape and the Court about its progress toward completing this task and its intent to seek a stay.  (Carraway Dec., Ex. 2, Ex. 3 at 73-74).

The week of December 13, 2006, Microsoft filed the first two of these reexamination requests.  (Carraway Dec., ¶ 3).  Because of the size of each reexamination, an exemplary request (the '997 inter partes request) is submitted with this motion.  (*Id*. Ex. 1).  Microsoft's requests for reexamination include prior art references that are not in the prosecution files and that anticipate or render obvious every asserted claim of the patents.  (Carraway Dec., ¶ 3; *see,*

*e.g., id.,* Ex. 1 (detailing how previously unconsidered Inoue, prior art anticipates or renders obvious asserted claims in '997 patent). By January 31, 2007, before this motion is fully briefed, all twelve reexamination requests will have been completed and filed.

Seven of the patents-in-suit are eligible for, and are being filed under, the newer inter partes reexamination procedure.[2] In contrast to an ex parte proceeding, an inter partes reexamination is more akin to an adversarial proceeding in which third parties, as well as the patentee, are permitted to make arguments in the PTO regarding a patent's validity during the reexamination. 35 U.S.C. § 311 *et seq.* Because of this chance to participate, "a third-party requester is estopped from relitigating the same issue 'which the third-party requester raised or could have raised during the inter partes reexamination proceedings.'" *Echostar*, 2006 WL 2501494, at *3 (quoting 35 U.S.C. § 315(c)).

The PTO will quickly decide whether to declare reexaminations. By statute, the PTO is required to grant or deny all ex parte or inter partes reexamination requests within three months of their filing. 35 U.S.C. §§ 303, 312. Because the PTO did not have an opportunity to consider most of the prior art during the prosecution of the patents-in-suit, there exists a "substantial new question of patentability" affecting the validity of the claims of the patents-in-suit, and the PTO will grant the requests. *See* 35 U.S.C. §§ 303, 312. Significantly, an overwhelming percentage of reexamination requests are granted. PTO statistics reveal that over the past two years, both types of requests were granted over 93% of the time. (Carraway Dec. Ex. 5-8) (showing, for 2005-06, grant of 934 out of 992 ex parte requests and 97 out of 104 inter partes requests).

Reexaminations also typically lead to the cancellation or amendment of most patent

---

[2] By regulation, the inter partes option is only available for patents that issued from applications filed after November 29, 1999. 37 C.F.R. § 1.913. This includes the following seven patents-in-suit: '991, '791, '997, '700, '415, '271, and '303. (Carraway Dec., ¶ 4).

MICROSOFT'S MOTION TO STAY
LITIGATION PENDING REEXAMINATION

claims.  The PTO cancels or requires amendments to 74% of claims in ex parte reexaminations.

(Carraway Dec. Ex. 9).  This number is even higher for inter partes reexaminations, which will

apply to seven of the patents; in the three inter partes proceedings that were concluded before

June 30, 2006 (the latest statistics available from the PTO), all of the claims at issue were

cancelled—100%.  (Carraway Dec. Ex. 10).  Several examples from cases in this district support

these statistics.  In the inter partes reexaminations that emanated from *May v. Wacoal*, No. 5:03-

CV-160-DF and *Echostar v. TiVo*, No. 5:05-CV-81-DF-CMC, both of which were stayed, the

PTO has rejected every challenged claim.  (Carraway Dec., ¶ 23-24, Ex. 18-21).

## III.     THIS COURT SHOULD EXERCISE ITS DISCRETION TO STAY THIS LITIGATION PENDING THE REEXAMINATIONS

### A.  Stays Pending Reexamination Are Routinely Granted Early In The Case

"Courts have inherent power to manage their dockets and stay proceedings, including the

authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon, Inc. v.

Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).  To further judicial

efficiency and economy and avoid wasting resources litigating regarding invalid claims, courts

both in this district and others routinely grant stays where, as here, the litigation has not

progressed beyond early discovery and other factors support a stay.[3]

"In deciding whether to stay litigation pending reexamination, courts typically consider:

---

[3] Recent decisions granting stays in ***this district*** include:  *Alza Corp. v. Wyeth*, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006); *Antor Media Corp. v. Nokia, Inc.*, No. 2:05-CV-186-DF, slip copy at 7 (E.D. Tex. Sept. 27, 2006); *Echostar Tech.  v. TiVo, Inc.*, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006); *May v. Wacoal*, Case No. 5:03-CV-160-DF (E.D. Tex. Apr. 5, 2005); *Verity Instr. v. Lam Res. Corp.*, 4:01CV321-RAS (E.D. Tex. April 10, 2002).  Reported decisions granting stays in ***other districts***, just in the past year, include:  *VData LLC v. Aetna, Inc.*, 2006 WL 339288, at *6 (D. Minn. Nov. 21, 2006); *Abbott Diabetes Care v. DexCom*, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006); *Everything for Love.com v. Tender Loving Things*, 2006 WL 2091706 (D. Ariz. July 21, 2006); *Broadcast Innovation v. Charter Comm.*, 2006 WL 1897165 (D. Colo. July 11, 2006); *Watlow Elec. Mfg. v. Ogden Mfg.*, 2006 WL 1892546 (E.D. Mo. July 10, 2006); *Photoflex Prods. v. Circa 3 LLC*, 2006 WL 1440363 (N.D. Cal. May 26, 2006); *Hubbell Inc. v. Genlyte Group*, 2006 WL 1431967 (D.S.C. May 22, 2006); *KLA-Tencor v. Nanometrics*, 2006 WL 708661 (N.D. Cal. March 16, 2006).

MICROSOFT'S MOTION TO STAY
                                                  LITIGATION PENDING REEXAMINATION

1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; 2) whether a stay will simplify the issues in question and trial of the case; and 3) whether discovery is complete and whether a trial date has been set." *Alza Corp. v. Wyeth*, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006). Given the atypical facts of this case, each of these factors strongly favors the entry of a stay of this litigation to allow the PTO to complete its reexamination of the twelve patents-in-suit in light of the previously unconsidered prior art.

### B.  <u>Reexaminations Will Dispose Of The Case Or, At Least, Simplify The Issues</u>

#### 1.  **Claims That Are Invalidated (Or, For Most, Even Amended) Will Eliminate Issues From The Case**

Microsoft's requests seek reexamination of ***all asserted claims*** of all twelve asserted patents. Given that each reexamination is based on previously unconsidered prior art, the reexamination procedure may well invalidate all of the asserted claims, disposing of this case in its entirety. *Echostar*, 2006 WL 2501494, at *2. If that occurs, and the suit were not stayed, then any further work by this Court and the parties would be entirely wasted. *See Bausch & Lomb Inc. v. Alcon Labs.*, 914 F. Supp. 951, 952-53 (W.D.N.Y. 1996).

Even if the patents are not invalidated in their entirety, a stay will simplify the issues in this highly complex, 191-claim, twelve-patent, eight-product litigation. As discussed earlier, historical statistics show that 100% of claims in inter partes proceedings have been canceled and 74% of claims in ex parte reexaminations are canceled or at least amended. Any claim found invalid and canceled by the PTO renders the claim void—as if it never existed—eliminating all infringement, validity, and damages issues regarding that claim from this litigation. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Thus, "[c]laim cancellations will certainly simplify the issues that need to be litigated because these claims will be removed entirely from consideration in the litigation." *Antor Media v. Nokia, Inc.*, No. 2:05-CV-186-DF,

at 8 (E.D. Tex. Sept. 27, 2006) (Carraway Dec. Ex. 14) (granting stay).

A peculiar circumstance of this case presents an even greater risk than usual that resources will be wasted absent a stay because, for almost three-quarters of the asserted claims, even amendment of claims during the reexamination (not just cancellation) will entirely wipe those claims from this lawsuit.  Claims that are substantively amended during reexamination are treated as if they only issued for the first time at the end of the reexamination, such that infringement of such a claim can only exist for activities that occur *after the reexamination is over*.  *Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); 35 U.S.C. §§ 307(b), 252.  Anascape has targeted 141 of the 191 asserted claims against only the original Xbox controller and controller S.  (Carraway Dec. Ex. 14, at 1).  These controllers are no longer being made by Microsoft and have been replaced by the new Xbox 360.  (Declaration of Marc Whitten, ¶ 4).  Because claims amended during reexamination can only be asserted against post-reexamination activities, substantive amendment to any of those 141 claims targeted only at these former Microsoft products would preclude their assertion after the reexamination, removing them entirely from the lawsuit.

"[I]f the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims.  The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."  *Echostar*, 2006 WL 2501494, at *3.  Given that the most significant prior art has not yet been considered by the PTO, that the majority of ex parte reexaminations (74%) result in claims being cancelled or modified, that 100% of the claims in inter partes reexaminations completed to date have been cancelled, and that for most of

Anascape's claims either cancellation or amendment will remove claims from this litigation, principles of judicial efficiency and economy counsel heavily for a stay.

### 2.   Even If Claims Survive, Inter Partes Reexaminations, Which Have an Estoppel Provision, Guarantee Streamlining Invalidity Issues

For the seven asserted patents that are eligible for inter partes reexamination, Microsoft is filing under that available procedure.  (Carraway Dec., ¶ 4).  As discussed above, the inter partes statute includes an estoppel provision to prevent re-litigation of validity issues that were or could have been raised in the reexaminations.  Thus, even if some claims survive inter partes reexamination, the statute ensures that the remaining litigation would be streamlined.

The facts in this case are analogous to those in *Echostar v. TiVo*, in which reexamination requests were filed for all three patents-in-suit, one of them being an inter partes procedure, the others being ex parte.  There, the Court pointed to the estoppel provision as "an ***even more compelling reason*** to grant a stay" because "an inter partes reexamination can have ***no other effect but to streamline ongoing litigation***."  *Echostar*, 2006 WL 2501494, at *3 (emphasis added).  The Court went on to find that the inter partes nature of one of the reexaminations in that case "distinguishes it from those cases cited by Plaintiff":  "Defendants have requested an inter partes reexamination of one the patents at issue in this case …, [which] will have a dramatic effect on future litigation."  *Id*. at *4.  As in *Echostar*, the inter partes nature of the majority of the reexaminations that are being instituted by Microsoft, an atypical fact distinguishing this case from others, weighs heavily in favor of a stay.[4]

---

[4] A stay is even more appropriate here than in *Echostar* because not only are the majority of the reexaminations in this case the inter partes variety, the reexaminations also have been filed far earlier in the litigation.  *See Echostar*, at 2006 WL 2501494, at *2 (motion to stay filed when discovery was "near completion").

MICROSOFT'S MOTION TO STAY
LITIGATION PENDING REEXAMINATION

**3. Given The New Prior Art And The PTO's Longstanding Experience With Mr. Armstrong's Patents And Related Applications, A Stay Will Allow The Court To Take Advantage Of The Work And Expertise Of The PTO**

In any litigation, a stay pending reexamination involving previously unconsidered prior art allows both the Court and the parties to take advantage of the PTO's work and expertise in the areas of patent validity and prior art. *See Alza*, 2006 WL 3500015, at *2 ("Allowing issues of validity to be evaluated by the PTO makes sense because the PTO may be in a better position than the Court to evaluate the validity of a patent in view of prior art references."); *Echostar*, 2006 WL 2501494, at *2 (finding a stay beneficial where new prior art is at issue because "prior art presented to the Court will have been first considered by the PTO, with its particular expertise"); *Antor Media*, No. 2:05-CV-186-DF, at 7 (finding that "technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain"). Furthermore, "[b]ecause statements made during the reexamination proceedings become part of the prosecution history, a stay will allow the intrinsic evidence to be fully developed before this court begins the claim construction process." *Alza*, 2006 WL 3500015, at *2.

This case presents an even more compelling situation than the typical case because the PTO's experience includes not only its initial examination of the patents-in-suit but also its ongoing examination of dozens of related applications filed by Mr. Armstrong, many still pending. (Carraway Dec., ¶ 26, Ex. 23). Furthermore, while the PTO never had a chance to consider much of the new reexamination prior art for the patents-in-suit, it has applied some of the reexamination art to some of Mr. Armstrong's more recent, related applications; in fact, on the basis of some of this new reexamination prior art, the PTO has ***rejected*** related applications'

claims that are remarkably similar to those asserted by Anascape in this litigation.[5]  While this Court is fully capable of handling the validity issues, the PTO, due to its ongoing experience with Mr. Armstrong's related applications, is unusually well-suited to address the new prior art issues in the first instance in a manner that will be more efficient for the parties and the legal system as a whole.

### 4.  This Case's Size And Complexity Make Simplification Even More Likely

"Particularly in complex cases involving multiple patents and related patents, courts have found that a stay would result in simplification."  *VData LLC v. Aetna, Inc.*, 2006 WL 339288, at *6 (D. Minn. Nov. 21, 2006).  This makes sense because the more complex a case, the greater the likelihood that issues will be litigated regarding claims that are canceled or amended, which would be a waste of resources.  *See Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, at *1 (D. Del. May 14, 2003) (where litigation involved five patents and many related patent applications, stay granted because "in this case, more than many, the court would benefit from a narrowing of the issues"); *Echostar,* 2006 WL 2501494 (staying a three-patent case).

The instant litigation is not a one-patent, one-claim case that can be litigated for a fairly inexpensive amount.  Instead, Anascape chose to make the case extremely complex, with 12 asserted patents, 191 different asserted claims, twelve patents, and eight accused products.  Even with the efficient procedures employed in this district, the parties estimate combined budgets for

---

[5] For example, Microsoft's reexamination of the '997 Patent explains how a prior art US Patent No. 5,207,426 ("Inoue") in combination with Japanese Patent No. 5-86760 ("Japanese 760") renders obvious the asserted claims directed to a device for controlling imagery having a "pressure-sensitive variable-conductance analog sensor." (Carraway Dec., Ex. 1, App. A, pp. 13-14).  Inoue was not considered by the PTO for the '997 Patent.  However, in Mr. Armstrong's U.S. Application No. 10/042,027 (the "027 Application"), which is related to the '997 Patent, the Examiner cited the same combination (Inoue and Japanese 760) as rendering obvious a controller for controlling imagery in which pressure-sensitive sensors provide an analog signal.  (*Id*., Ex. 24, (Dec. 4, 2002 Office Action, pp. 2-3)).  Mr. Armstrong thereafter abandoned his '071 Application.  (*Id*., Ex. 23, 25).  Thus, not only is the PTO already familiar with this particular reexamination prior art but, because of its rejection of related Armstrong applications, is also familiar with how the new art applies to invalidate the claims of the '997 Patent.

MICROSOFT'S MOTION TO STAY
                                            LITIGATION PENDING REEXAMINATION

this case in excess of $10 million. (Carraway Dec., Ex. 3 at 42-44). Given this complexity, the number of issues that are likely to be simplified or eliminated by Microsoft's reexaminations, including entire patents, accused products, and claim terms that otherwise would need construction, is even higher than a typical case. Should any of the claims survive reexamination, the parties and the Court will have saved substantial time and money that would have been spent litigating the other claims that do not survive.

### C. A Stay Will Not Prejudice The Plaintiff

#### 1. Because Anascape Is Not A Competitor, It Can Be Fully Compensated By Money Through Royalty Damages That Accrue During The Stay

Even in the highly unlikely event that the patents emerge from reexamination completely unchanged, Anascape would not be prejudiced. Anascape does not manufacture or sell products under its patents, nor compete with Microsoft or Nintendo. (Carraway Dec. Ex. 3 at 6). Because Anascape is not a competitor, it cannot suffer competitive harm, such as loss of market share, while the case is stayed. Thus, even if Anascape's suit were successful following a stay, any royalty damages that accrued during the stay period would fully compensate any harm done during that time. *See, e.g.*, *Antor Media*, No. 2:05-CV-186-DF, at 8 (finding no prejudice from a stay because "Antor can be adequately compensated through economic damages under these circumstances—neither Antor, nor its licensees, is a sole manufacturer or producer of the intellectual property in question"); *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669, at *9 (S.D. Iowa August 24, 2004) (finding no undue prejudice and granting a stay where defendant was not "selling or marketing products under its patent and would be entitled to money damages if proven"). Also, Defendants would be financially able to pay any money judgment were Anascape ultimately to prevail. *See Middleton*, 2004 WL 1968669, at *9.

### 2.  The PTO Must Act Quickly, Minimizing Any Delay

"Reexamination does not threaten protracted or indefinite delay." *Alza*, 2006 WL 3500015, at *1.  The PTO is required by statute to conduct reexamination proceedings with "special dispatch."  35 U.S.C. § 305.  Thus, the duration of the proposed stay should be minimized by the PTO's guidelines requiring a swift proceeding.  Indeed, the PTO has recently formed a special group to resolve reexaminations as promptly as possible.  (Carraway Dec. Ex. 11).  In addition, where, as here, the patents are already involved in parallel district court litigation, reexamination is expedited.  (*See* Carraway Dec., Ex. 26 (MPEP § 2261)).

Given the PTO's statutory mandate to act quickly, Anascape cannot claim that it will suffer undue prejudice while the PTO does its work.  "The delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Products, Inc. v. Circa 3 LLC*, 2006 WL 1440363 (N.D. Cal. May 26, 2006); *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).  Furthermore, Anascape "affirmatively invoked the rights of the patent statute; [it] can hardly be heard now to complain of the rights afforded others by that same statutory framework." *Pegasus*, 2003 WL 21105073, at *2.

### 3.  Anascape's Own Delay In Filing Suit Confirms It Will Not Be Prejudiced In Letting The PTO Do Its Work

Anascape also should not be heard to complain about the time it will take the PTO to complete the reexaminations because it waited nearly five years to file this lawsuit.  Anascape accuses Microsoft's original Xbox controllers of infringing 11 of the 12 patent-in-suit.  (Carraway Dec., Ex. 4).  Those controllers, however, went on sale in November 2001.  (*Id*. Ex. 22; Whitten Dec., ¶ 2).  Anascape's delay until August 2006 to commence a lawsuit against these products defeats any claim it might make that a stay of the litigation now, for reexamination, will cause it undue prejudice. *See Ingro v. Tyco Indus., Inc.*, 1985 WL 1649, at *3 (N.D. Ill. 1985)

("especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings . . . will constitute neither undue nor unreasonable delay").

### 4.  Microsoft and Nintendo Would Suffer Serious Prejudice Absent A Stay

Microsoft and Nintendo, in contrast, would suffer serious prejudice absent a stay of litigation.  Should cancellation or amendment of the claims occur without a stay having been granted, the defendants will have defended themselves and prepared for trial in the interim—at great expense—from the assertion of invalid patents, or patents that will need to be relitigated because the claims are different.  *See Echostar*, 2006 WL 2501494, at *3.

Allowing this case to proceed in conjunction with the PTO proceedings would not only forgo efficiencies but also would prejudice the parties by "run[ning] the risk of inconsistent adjudications or issuance of advisory opinions."  *Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340 (D. Del. Jan. 29, 2001) at *1.  While the PTO must conclude its administrative review, this Court has the discretion to stay the litigation.  *Id.* at *2 ("Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict.").  Thus, only the Court can take the important steps to avoid that potential conflict, which would cause "significant harm."  *Bausch & Lomb*, 914 F. Supp. at 953.

### D.  <u>The Very Early Stage Of The Litigation Also Weighs In Favor Of A Stay</u>

The early posture of the litigation also heavily favors a stay.  Discovery is only just getting started.  The parties have exchanged interrogatories, but no depositions have been taken and mandatory disclosures are not scheduled until next month.  (Carraway Dec., ¶ 5).  Furthermore, expert reports have not been prepared or exchanged, no dispositive motions have been filed, and trial is well over a year away.  "Perhaps most importantly, the claim construction process has not begun."  *Alza*, 2006 WL 3500015, at *2 (granting a stay).

In contrast, what remains to be done in this litigation is vast.  Given the large number of

patents, accused products, and prior art involved in this case, the parties face unusually expensive discovery and litigation over the next year, involving numerous experts, extensive depositions of prior art witnesses, voluminous claim construction briefing, possibly two claim construction hearings, and two trials.  This disparity between the minimal resources consumed so far and the great expense ahead strongly supports a stay.  *See, e.g., Echostar*, 2006 WL 2501494, at *4 (granting a stay even after some discovery had occurred, where "discovery is not yet completed, summary judgment motions have not been filed, and the Court has not completed its claim construction"); *Antor Media*, No. 2:05-CV-186-DF, at 9 (granting stay three months before discovery closed and six months before trial date); *Verity Instr., Inc., v. Lam Res. Corp.*, Case No. 4:01-CV-321 (E.D. Tex. April 10, 2002) (Carraway Dec. Ex. 13) (granting motion for stay filed almost four months after filing of lawsuit).[6]

Cases that have denied stays in this district typically have done so because the cases were *much* farther down the road—near the close of discovery and after claim construction—when the resources already spent by the Court and the parties far outweighed what remained.  *See*, *e.g.*, *Soverain Software LLC v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (denying stay where case was over one year old, discovery was about to close, and the Court had already held the *Markman* hearing); *Data Treasury Corp. v. First Data Corp.*, No. 5:03CV39, at 5 (E.D. Tex. Apr. 26, 2006) (Carraway Dec. Ex. 16) (denying stay motion filed three years into litigation, after claim construction order issued, nine days before discovery closed, and four months before trial); *Amiga Dev. LLC v. Hewlett-Packard Co.*, Case No. 2:04-CV-242 (E.D. Tex. Feb. 16,

---

[6] *See also CNS, Inc. v. Silver Eagle Labs, Inc.*, 2004 WL 3631121 (D. Minn. Nov. 29, 2004) ("Even though some discovery has taken place, it has not been an extensive amount such that the work will be duplicated once the reexamination is completed.); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation).

2006) (attached as Carraway Dec. Ex. 17) (denying stay where "the re-examination was instituted over a year after the case was filed" and a "large portion of discovery had been completed when HP filed the present motion").

Unlike the typical decisions denying a stay, discovery in this litigation is only getting started, the claim construction hearing is still months away, and the trial is still over a year out. Here, unlike other cases, the balance between what little has occurred and the great expense ahead decisively favors a stay.

## III.    <u>CONCLUSION</u>

While a stay is not suited for every case, this litigation presents numerous atypical facts that all support the need for a stay to conserve judicial and party resources.  The sheer size and complexity of Anascape's infringement claims makes simplification of issues not only much more likely than the usual case, but also much more beneficial.  And because Anascape has brought most of its assertions to bear against old, legacy products, both cancellation as well as amendment of such claims in reexamination will strip them from the case and render any litigation effort regarding such claims wasted.  Finally, any claims that survive inter partes reexaminations are assured a streamlined litigation due to the inter partes estoppel provision.  All of these unusual facts are supplemented by the lack of prejudice given that, unlike many cases, the plaintiff does not compete with the defendants.  For the foregoing reasons, Microsoft respectfully requests that the Court enter an Order staying all proceedings in this action pending the resolution of the PTO's reexamination of the patents-in-suit.

Respectfully submitted,

Dated:  January 16, 2006              By:    /s/ J. Christopher Carraway
                                             J. Christopher Carraway (admitted *pro hac vice*)
                                             christopher.carraway@klarquist.com
                                             Joseph T. Jakubek (admitted *pro hac vice*)

joseph.jakubek@klarquist.com
Richard D. Mc Leod (Bar No. 24026836)
rick.mcleod@klarquist.com
Derrick W. Toddy (admitted *pro hac vice*)
derrick.toddy@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  503-595-5300

J. Thad Heartfield (Bar No. 09346800)
thad@jth-law.com
Law Offices of J. Thad Heartfield
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: 409-866-3318
Facsimile: 409-866-5789

Clayton E Dark Jr. (Bar No. 05384500)
clay.dark@yahoo.com
Clayton E Dark Jr., Law Office
207 E Frank Ave # 100
Lufkin, TX 75901
Telephone:  936-637-1733

Stephen McGrath, Esq. (admitted *pro hac vice*)
MICROSOFT CORPORATION
One Microsoft Way, Building 8
Redmond, Washington  98052-6399
Telephone:  425-882-8080
Facsimile:  425-706-7329

*Attorneys for Defendant Microsoft Corporation*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 16th day of January, 2007.  Plaintiff has also been served this same day by **<u>hand delivery</u>** and e-mail to its counsel at:

      Luke McLeroy
      McKool Smith
      300 Crescent Court
      Suite 1500
      Dallas, TX 75201
      MSAnascape@mckoolsmith.com

                  /s/ J. Christopher Carraway _____

## <u>CERTIFICATE OF CONFERENCE</u>

      Counsel for Microsoft has conferred with counsel for Anascape in a good faith attempt to resolve without court intervention the matters raised by Microsoft's foregoing Motion to Stay Litigation Pending Reexamination. Counsel for Anascape stated that Anascape opposes the motion.

                  /s/ J. Christopher Carraway _____