# EXHIBIT 3

DECLARATION OF J. CHRISTOPHER CARRAWAY IN SUPPORT
OF DEFENDANT MICROSOFT'S MOTION TO STAY PROCEEDINGS PENDING
COMPLETION OF THE REEXAMINATION OF THE PATENTS-IN-SUIT

```
                                                              Page 1

              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF TEXAS
                   LUFKIN DIVISION

ANASCAPE, LTD            *   DOCKET 9:06CV158
                         *
                         *   10:00 A.M.
V.                       *
                         *   DECEMBER 13, 2006
                         *
MICROSOFT CORP., ET AL   *   BEAUMONT, TEXAS

----------------------------------------------------------


       VOLUME 1 OF 1, PAGES 1 THROUGH 76

   REPORTER'S TRANSCRIPT OF CASE MANAGEMENT CONFERENCE

           BEFORE THE HONORABLE RON CLARK
            UNITED STATES DISTRICT JUDGE

----------------------------------------------------------



FOR THE PLAINTIFF:        ROBERT CHRISTOPHER BUNT
                          PARKER, BUNT & AINSWORTH
                          100 EAST FERGUSON, SUITE 1114
                          TYLER, TEXAS  75702

                          LUKE FLEMING MCLEROY
                          THEODORE STEVENSON, III
                          MCKOOL SMITH - DALLAS
                          300 CRESCENT COURT, SUITE 1200
                          DALLAS, TEXAS  75201

                          BRAD ARMSTRONG
                              (CLIENT REPRESENTATIVE)


FOR THE DEFENDANT MICROSOFT CORP.:
                          J. CHRISTOPHER CARRAWAY
                          KLARQUIST SPARKMAN, LLP
                          121 SW SALMON ST., SUITE 1600
                          PORTLAND, OREGON  95204

                          STEPHEN P. MCGRAPH
                          MICROSOFT CORPORATION
                          ONE MICROSOFT WAY
                          REDMOND, WASHINGTON  98052-6399
```

```
                                                              Page 2
 1  FOR THE DEFENDANT MICROSOFT CORP. (CONT'D):

 2                          J. THAD HEARTFIELD
                            LAW OFFICE OF J. THAD HEARTFIELD
 3                          2195 DOWLEN ROAD
                            BEAUMONT, TEXAS   77706
 4

 5
    FOR THE DEFENDANT NINTENDO OF AMERICA, INC.:
 6
                            LAWRENCE LOUIS GERMER
 7                          CHARLES W. GOEHRINGER, JR.
                            GERMER GERTZ
 8                          550 FANNIN, SUITE 500
                            BEAUMONT, TEXAS   77701
 9
                            JOSEPH S. PRESTA
10                          NIXON & VANDERHYE, PC
                            901 N. GLEBE ROAD, 11TH FLOOR
11                          ARLINGTON, VIRGINIA   22203

12                          ROBERT J. GUNTHER, JR.
                            LATHAM & WATKINS, LLP
13                          885 THIRD AVENUE
                            NEW YORK, NEW YORK
14
                            RICHARD MEDWAY
15                               (CLIENT REPRESENTATIVE)

16

17

18

19

20       PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
         TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
21

22

23

24

25
```

Electronically signed by Christina Bickham (401-027-374-9647) for Microsoft         12bff29b-26a2-489f-bd7f-3cffd542e5be

1  having a motor with a weight on it to give you vibration
2  feedback as you play the game.
3          Mr. Armstrong, in fact, has a prototype, one of his
4  early models of a pressure-sensitive switch game controller.
5  It doesn't have all the features. But what's interesting about
6  it is, he actually demonstrated it to Microsoft, I think, more
7  than a year before they came out with their Xbox controller.
8  The Xbox controllers, as well as the Nintendo controllers,
9  infringe various of Mr. Armstrong's patents; and we're suing
10 for infringement, obviously, here in this court.
11          THE COURT: All right. Now, does Anascape
12 manufacture any of these products right now; or have they ever
13 manufactured any of these products?
14          MR. STEVENSON: No. It's not a manufacturing
15 company, your Honor.
16          THE COURT: All right. Have you licensed any of
17 these products to anybody?
18          MR. STEVENSON: Yes.
19          THE COURT: Whom?
20          MR. STEVENSON: Anascape has licensed Sony. That's
21 a license agreement that Mr. Armstrong reached around the time
22 he was also talking to Microsoft. I believe he may have been
23 talking to Nintendo, as well, and Sony. Sony took a license.
24 Mr. Armstrong wasn't represented by lawyers in that. He went
25 out and did it himself.



1            All right.  And then given that -- and you've got
2 these total number of units -- what kind of litigation budget
3 do you have in this case?
4            MR. CARRAWAY:  Well, your Honor, with a one-patent
5 case, one-Defendant case, those typically are -- I would
6 estimate, you know, a 2 million-dollar budget.  We're talking
7 12 here.  Now, it is not going to cost 12 times that; but I
8 think we are looking at a multiple of 2 million.  So, anywhere,
9 you know, 4 to 6 to 8 million, just depending on how litigious
10 the parties become.  We hope that we can make this as efficient
11 as possible.
12           And then there are, of course, alternative ways
13 that might be able to resolve this litigation in a much less
14 costly manner which -- we flagged in our 26(f) report about
15 reexamination, but that is a different topic.
16           THE COURT:  Okay.  And then let me ask Nintendo the
17 same question.  Assuming, just for the purposes of argument,
18 that a jury or the Court was to find infringement and reject
19 the various defenses, what range of products or total sales,
20 total dollars, whatever, are we talking about as to what you
21 understand they are accusing?
22           MR. GUNTHER:  Yes, sir.  The product that has been
23 accused so far is the Nintendo GameCube, and that's a product
24 that was introduced early in the 2000s.  And that product has
25 sold consoles -- I'll give you a console figure, Judge.  It has

1  sold about 11.3 million in the United States during that
2  period. Some of those consoles have one controller packed in
3  them. A smaller number, as I understand it, have two
4  controllers packed in.
5        And the Plaintiff has told us that -- Nintendo just
6  introduced in November of this year their next generation
7  system. It is called the Wii, W-I-I. And the Plaintiff has
8  told us that they are looking at the controllers with respect
9  to that system but have not yet made a specific allegation of
10 infringement one way or the other.
11       So, I think that's the state of play, sir, with
12 respect to our products.
13       THE COURT: And in terms of -- and, again, I'm not
14 asking whether you are interested in settlement at this point
15 or not; but do you foresee any problems in providing some of
16 the basic preliminary sales figures if you are going to get
17 into settlement?
18       MR. GUNTHER: Your Honor, I think that -- leaving
19 the issue of whether we're interested in discussing settlement
20 aside, I don't think we would have any problem -- I mean,
21 ultimately I've given you -- you know, obviously this is a
22 little bit of a ballpark -- but the numbers already; and we
23 would be willing to sort of, you know, sharpen the pencil a
24 little bit on that and give them the units in dollars, as long
25 as it didn't require us to go through a lot of work at this

1  stage.

2          THE COURT: Well, and, again, everybody understands
3  that without some basic information, it is almost impossible to
4  arrive at a settlement.

5          And then what litigation budget range do you have?

6          MR. GUNTHER: Your Honor, I've talked with the
7  client; and I've used the AIPLA statistics with respect to
8  patent cases. And, so, in terms of the budget, I've told them,
9  you know, that sort of the median of 2 to 3 million for a
10 one-patent case is sort of the median right now and that we
11 have a lot more patents than that; although, we're dealing with
12 five here.

13         THE COURT: Okay. And then let me ask on
14 Plaintiff's side. What kind of budget estimates are you giving
15 your client?

16         MR. STEVENSON: From our standpoint, we think about
17 the average patent cost is what we would expect to arrive at.

18         THE COURT: Which is?

19         MR. STEVENSON: I would say in the 3 million-dollar
20 range would probably be about where we benchmark this. We
21 don't have any desire, obviously, to make this into any more
22 than it absolutely needs to be in terms of discovery, in terms
23 of depositions. We are very cost conscious in general, and we
24 will be especially so in this case.

25         THE COURT: All right. Well, that gets into the --

Page 73

1 in there.

2          MR. CARRAWAY:  Your Honor, we would just ask that
3 it be after the Claim Construction Hearing.

4          THE COURT:  Okay.  All right.  Anything else from
5 Anascape's point of view?

6          MR. McLEROY:  No, your Honor.

7          THE COURT:  From Nintendo?

8          MR. GUNTHER:  No, your Honor.  Thank you.

9          THE COURT:  And from Microsoft?



10          MR. CARRAWAY:  One point, your Honor.  I would just
11 raise with the Court that we did put in our 26(f) report and
12 we've been upfront with Anascape from the very beginning of
13 this case that we started filing re-exams on these patents.
14 The first is being filed today; and the remaining 11 patents
15 will be in re-exam, we expect.  We'll file all of those by the
16 end of January.

17          The reason why we're doing this is that we believe
18 it is a much more efficient course to let the Patent Office see
19 all of the prior art that it never had the benefit of seeing in
20 the first place.  We believe that given just the inordinate
21 size of this case, even if the Patent Office doesn't get rid of
22 all of the patents, which we believe is very likely, then it
23 would come back a very small patent case, if anything.  And
24 that would make this case much cheaper, much more efficient to
25 try; and it could very well end the case against Nintendo.  It

Electronically signed by Christina Bickham (401-027-374-9647) for Microsoft                    12bff29b-26a2-489f-bd7f-3cffd642e5be

1 could wipe out all five patents against Nintendo and make this
2 a much simpler case.
3        The only reason we are bringing this to your
4 attention today is that we have been diligently working on
5 these re-exams since the day we got sued and are in the process
6 now of filing them now that we've tracked down all of the prior
7 art. We will bring a Motion for Stay before the Court so that
8 the Court will have benefit of full briefing. But we believe
9 that that will be the most efficient course, and we'll bring
10 that motion as soon as we get a re-exam started and get it on
11 file.
12        THE COURT: All right. Well, without a motion
13 before me, obviously, there is no ruling that I can make at
14 this point; but I appreciate your bringing that to my
15 attention.
16        All right. And if there is nothing else -- and I
17 appreciate very much the corporate representatives being here.
18 I realize it is an imposition.
19        Again, I would stress the disclosure. And one
20 other problem that sometimes comes up -- and I don't think I
21 mentioned it in this hearing -- is that we've run into the
22 situation where counsel are going to your engineers who are
23 obviously -- and technical people who are in the business of
24 making a product and making a profit and could really care less
25 about the lawsuit. But then a week or two before trial, they