# EXHIBIT 12

DECLARATION OF J. CHRISTOPHER CARRAWAY IN SUPPORT
OF DEFENDANT MICROSOFT'S MOTION TO STAY PROCEEDINGS PENDING
COMPLETION OF THE REEXAMINATION OF THE PATENTS-IN-SUIT

Dockets.Justia.com

United States District Court, D. Delaware.

ABBOTT DIABETES CARE, INC., Plaintiff,
v.
DEXCOM, INC., Defendants.
**C.A. No. 05-590 GMS.**

Aug. 16, 2006.

Mary B. Graham, James Walter Parrett, Jr., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, James F. Hurst, Stephanie S. McCallum, Pro Hac Vice, for Plaintiff.
John W. Shaw, Melanie K. Sharp, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Brian M. Kramer, David C. Doyle, M. Andrew Woodmansee, Morgan S. Adessa, Pro Hac Vice, for Defendants.

*MEMORANDUM*
GREGORY M. SLEET, District Judge.

# I. INTRODUCTION

**\*1** On August 11, 2005, Abbott Diabetes Care, Inc. ("Abbott") brought this declaratory judgment (Count I) and patent infringement (Count II) action against DexCom, Inc. ("DexCom"). Presently before the court are the following motions: (1) DexCom's Motion to Dismiss Abbott's Complaint (D.I.5); (2) DexCom's Motion to Strike the "Amended Complaint" and Renewed Motion to Dismiss Abbott's Complaint (D.I.61); and (3) DexCom's Motion to Stay Pending Reexamination of the Patents-in-suit (D.I.25). For the reasons that follow, the court will grant in part and deny in part DexCom's motion to dismiss. The court will grant the motion to dismiss Abbott's declaratory judgment count and will deny the motion to dismiss the infringement count. Additionally, the court will grant DexCom's motion to strike the "amended complaint," deny the renewed motion to dismiss the complaint as moot, and grant the motion to stay pending reexamination of Abbott's patents.

# II. BACKGROUND

Abbott owns U.S. Patent Nos. 6,175,752 (the " 752 patent"), 6,284,478 (the " 478 patent"), 6,329,161 (the " 161 patent"), and 6,565,509 (the " 509 patent") (collectively, the "patents-in-suit"). The patents-in-suit are directed to methods, systems, and devices for continuously monitoring glucose levels in humans. (Compl.¶ 7.) The patented technology at issue offers an alternative monitoring system for diabetics, who currently monitor their glucose levels by pricking their fingers to draw blood several times a day. (D.I. 32, at 3; see 752 patent, Col. 1, ll. 21-26; 509 patent Col. 1, ll. 21-26.) According to the background of the invention sections of the 752 and 509 patents, the pricking technique does not permit the continuous monitoring of glucose, is painful and inconvenient, and results in inconsistencies in monitoring among individuals with diabetes. (See 752 patent, Col. 1, ll. 26-38; 509 patent, Col. 1. ll. 26-38.) Therefore, the technology described in the patents-in-suit was invented to address the need for a small and comfortable device that could continuously monitor glucose levels for days at a time, while permitting a patient to engage in normal activities. ( 752 patent, Col. 2, ll. 1-4; 509 patent, Col 2., ll. 5-8.) Each of the patents-in-suit relate to an aspect of the continuous glucose monitor, which involves implanting a glucose sensor in a patient and monitoring signals over the life of the sensor.[FN1] (D.I. 32, at 3.) The monitoring device provides patients with feedback regarding their glucose levels, and may even include an alarm to warn patients of dangerous glucose levels. (*Id. at 3-4.*)

> FN1. The 752 and 509 patents relate to glucose monitoring devices and their methods of use, while the 478 and 161 patents relate to subcutaneous glucose sensors.

Abbott alleges that DexCom intends to market its STS ™ Continuous Glucose Monitoring System, which will infringe one or more claims of the patents-in-suit. The complaint states that DexCom filed a premarket approval application with the Food and Drug Administration (the "FDA") in March 2005, seeking approval to sell its product. (Compl.¶ 12.) The complaint further states that DexCom expects FDA approval by the second quarter of 2006.[FN2] (*Id.* ¶ 15.) In Count I, Abbott seeks declaratory relief in the form of a judicial declaration that DexCom's product will infringe one or more claims of each of the patents-in-suit. (*Id.* ¶ 25.)

> FN2. As previously mentioned, Abbott filed its complaint on August 11, 2005. The FDA subsequently approved DexCom's glucose monitoring product, in March 2006.

**\*2** Further, Abbott alleges that, prior to filing its premarket approval application with the FDA, DexCom attended two "trade shows" where it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

publicized and displayed its glucose monitoring product. (Compl.¶ 16.) The complaint alleges that the products DexCom displayed at the trade shows were manufactured for the purpose of showcasing rather than for gathering information for submission to the FDA. (*Id.* ¶ 17.) Abbott alleges that DexCom's manufacture and display of its product constitutes an act of patent infringement. (*Id.* ¶ 28.)

On August 31, 2005, DexCom filed a motion to dismiss Abbott's complaint for lack of subject matter jurisdiction and failure to state a claim. Additionally, on February 22, 2006, DexCom filed a motion to stay the litigation pending reexamination of the patents-in-suit. On June 27, 2006, Abbott filed an amended complaint, which alleges further infringing acts on the part of DexCom and adds several patents to the suit. On July 12, 2006, DexCom filed a motion to strike the "amended complaint" and renewed motion to dismiss.

### III. DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dexcom first contends that the court should dismiss Abbott's declaratory judgment claim because there is currently no "accused device" to compare against the claims of the patents-in-suit and, therefore, Abbott's claim is premature. In other words, DexCom contends the court lacks subject matter jurisdiction over Count I of Abbott's Complaint.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure contests the jurisdiction of the Court to address the merits of a plaintiff's complaint. Such a challenge may present either a facial or a factual contest to subject matter jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would be insufficient to establish the Court's jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). The present motion presents a facial challenge to the complaint because the jurisdictional facts are not in dispute. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiff's favor. *See id.* Additionally, the court must test the existence of jurisdiction as of the time the complaint was filed. *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990).

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy ... [a court of competent jurisdiction] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Thus, before a court may exercise jurisdiction over a declaratory judgment action, the Act requires an "actual controversy between the parties ." *Medimmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378-79 (Fed.Cir.2005) (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1331 (Fed.Cir.2005)). "If the controversy requirement is met by a sufficient allegation of immediacy and reality ... a patentee [is able] to seek a declaration of infringement against a future infringer ... [just as] a future infringer is able to maintain a declaratory judgment action of noninfringement under the same circumstances." *Telectronics Pacing Sys., Inc v. Ventritrex, Inc.,* 982 F.2d 1520, 1526 (Fed.Cir.1992) (citing *Lang,* 895 F.2d at 764).

**\*3** However, a district court does not have jurisdiction to hear the action when there is no actual controversy. *Spectronics Corp. v. H .B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.1991), *cert. denied,* 112 S.Ct. 658 (1991). Moreover, "even assuming [the existence of] an actual controversy, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary." *Telectronics,* 982 F.2d at 1526 (citations omitted).

Two elements must be present in order to meet the controversy requirement in a declaratory judgment action brought by a patentee against an alleged future infringer: (1) the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a), or be making meaningful preparation for such activity; and (2) acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming. *Lang,* 895 F.2d at 764. In addition, the declaratory judgment plaintiff bears the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. *Jervis B. Webb Co. v. S. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984).

Applying the above-discussed elements to the present case, it is clear to the court from the record before it that Abbott's complaint did not present an actual controversy under the Act at the time it was filed. That is, Abbott has not demonstrated that DexCom

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

produced or has prepared to produce a product that would be subject to an infringement charge under 35 U.S.C. § 271. At the time Abbott filed its complaint, the FDA had not approved DexCom's product and Abbott could not predict when, or if, the FDA would approve the product. Indeed, Abbott states as much in its complaint, alleging that "DexCom ... *expects* FDA approval for marketing by the second quarter of 2006...." (Compl.¶ 15) (emphasis added).[FN3] Additionally, Abbott did not, and could not, allege with any certainty that "the device when approved would be the same device that began clinical trials[,]" as "product changes during testing are contemplated by statute, 21 U.S.C. § 360j(g)(2)(C)(iii) (1988)." *Telectronics, 982 F.2d at 1527.* Most important, Abbott did not allege nor does it now contend that DexCom has distributed sales literature, prepared to solicit orders, or engaged in any sales or marketing activity with regard to its glucose monitoring product. *See Lang, 895 F.2d at 765; Benitec Australia Ltd. v. Nucleonics, Inc.,* Civil Action No. 04-0174 JJF, 2005 U.S. Dist. LEXIS 22008, at *9 (D.Del. Sept. 29, 2005); *Interdigital Tech. Corp. v. OKI Am., Inc., 845 F.Supp. 276, 284 (E.D.Pa.1994)* ("Activity directed towards advertising or marketing the accused device is particularly important to a finding of a justiciable controversy.") Therefore, the court concludes that no controversy of sufficient immediacy and reality existed, at the time Abbott filed its complaint, to support declaratory judgment jurisdiction in the present case. As such, the court will dismiss Count I of Abbott's complaint.

> **FN3.** The court agrees with the argument Abbott makes in its answering brief, namely that FDA approval is not the standard by which it should evaluate whether an actual controversy existed at the time the complaint was filed. However, the court finds that the absence of FDA approval is evidence that the dispute between the parties is neither real nor immediate.

## B. Motion to Strike Abbott's "Amended Complaint"

**\*4** DexCom next argues that the court should strike the "Amended Complaint" because Abbott failed to seek leave of court to file what correctly should be termed a "supplemental pleading." Conversely, Abbott asserts that it properly amended its complaint under Federal Rule of Civil Procedure 15(a) to allege additional acts of infringement that occurred prior to and after it filed the initial complaint. The court is unpersuaded by Abbott's argument and will,

therefore, strike its "Amended Complaint."

As Abbott points out in its briefing, "[a]n amended pleading generally is a modification to incorporate events that were unknown but occurred *prior* to the filing of the original pleading." (D .I. 66, at 7) (emphasis added) (citing 3 James Wm. Moore et al., Moore's Federal Practice § 15.02 (3d ed.1999)). On the other hand, "a supplemental pleading refers to additions to include transactions or occurrences that take place after the filing of the original pleading." (D.I. 66, at 7.) By Abbott's own words, it amended its complaint "to allege additional acts of infringement that occurred prior to and *after* " its initial complaint. (*Id* .) Because Abbott's "Amended Complaint" contains allegations regarding events that occurred after August 11, 2005-the filing date of the original complaint-it is governed by Federal Rule of Civil Procedure 15(d). Pursuant to Rule 15(d), "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Fed.R.Civ.P. 15(d); *see GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 483 (Fed.Cir.1996) (holding that district court did not abuse its discretion when "adhering to the motion requirement of Rule 15"); *Bronson v. Horn,* Civil Action No. 02-663, 2006 U.S. Dist. LEXIS 38791, at *5 (W.D. Pa. June 12, 2006) (dismissing supplemental complaint because it was not filed pursuant to a motion). Accordingly, because Abbott did not file a motion to supplement its complaint in the present case, the court will strike it from the docket for failure to comply with Rule 15(d).

## C. Motion to Dismiss for Failure to State a Claim

Finally, with respect to dismissal, DexCom contends that Count II of Abbott's complaint fails to state a claim for which relief can be granted. According to DexCom, its display of glucose monitoring products at two scientific conferences is exempt under 35 U.S.C. § 271(e)(1).[FN4] Therefore, DexCom argues that Abbott has failed to state a claim for patent infringement.

> **FN4.** Section 271(e)(1) states, in pertinent part:
> It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention ... solely for uses

reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

35 U.S.C. 271(e)(1).

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir.1993). Thus, in deciding a motion to dismiss, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery,* 117 F .3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss ." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley,* 355 U.S. at 45-46.

**\*5** After having reviewed Abbott's complaint, the parties' submission and relevant case law, the court concludes that DexCom cannot show that "beyond doubt" there exists "no set of facts" in support of Abbott's patent infringement claim. The language of section 271(e)(1) exempts potentially infringing activities "if performed solely for uses reasonably related to the development of information for FDA approval." *Telectronics,* 982 F.2d at 1523. Here, Abbott's complaint alleges that "[u]pon information and belief, the [DexCom] products displayed at the [two] trade shows were manufactured for the purpose of showcasing at the trade shows rather than for the purpose of gathering information." (Compl.¶ 17.) Abbott's complaint, therefore, alleges that DexCom's manufacture and display of products at scientific conferences or trade shows falls outside the safe harbor of section 271(e)(1). Based upon this allegation, and viewing the complaint in the light most favorable to Abbott, the court is unwilling to conclude at this juncture that no relief could be

granted under any set of facts that Abbott could prove consistent with its patent infringement allegations.[FN5] Therefore, the court will deny DexCom's motion to dismiss Count II of the complaint.

FN5. DexCom contends that the facts of the present case are on "all fours" with the facts of *Telectronics.* The court, however, finds that DexCom's reliance is misplaced because, in *Telectronics,* the Federal Circuit reviewed a district court's grant of summary judgment for the defendant, while here the court must decide a motion to dismiss. As DexCom well knows, the standard for granting a motion to dismiss is markedly different from the summary judgment standard. When deciding a Rule 56 motion, the court reviews "the pleadings, *depositions, answers to interrogatories,* and *admissions on file,* together with [any] affidavits," to determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). In contrast, when deciding a motion to dismiss, the scope of the court's review is limited to the complaint. *See Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002) ("As a general rule, the court may only consider the pleading that is attacked by an FRCP 12(b)(6) motion in determining its sufficiency.") Therefore, *Telectronics* is distinguishable in that the court made its determination after reviewing a more complete record than that which the court is permitted to review here. That is not to say that DexCom could not successfully attack Abbott's claim at a later stage of these proceedings. For example if, through discovery, DexCom adduces facts indicating that its conduct at the scientific conferences or trade shows falls within the section 271(e)(1) safe harbor, the court will likely entertain a motion for summary judgment at the appropriate time.

### D. Motion to Stay

DexCom has also filed a motion to stay the litigation pending reexamination of the patents-in-suit by the Patent and Trademark Office (the "PTO"). The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir.1985). This authority

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Com Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)* (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (stating a similar test).

In opposing DexCom's motion, Abbott maintains that a stay would prevent it from seeking a preliminary injunction and enforcing its patent rights, thereby unduly prejudicing it and presenting it with a clear tactical disadvantage in the marketplace. The court is not persuaded. First, Abbott's argument is premised on its filing of a motion for preliminary injunction. Abbott, however, did not, and has not, filed any such motion, even though the FDA has recently approved DexCom's glucose monitoring product for marketing. Because Abbott has not filed a motion for preliminary injunction, its arguments relating to the court's rendering of an opinion on such a motion are moot. As such, the only other argument Abbott asserts with respect to undue prejudice is that it will be unable to enforce its patents while in reexamination. Abbott's position, however, assumes that the PTO will leave all of the more than 200 claims of the four patents-in-suit unaltered after reexamination. *See Applera Corp. v. Thermo Electron Corp.,* No. C.A. 04-1230 GMS, (D.Del. Dec. 28, 2005) (04-1230 D.I. 81 ¶ 6). Further, while Abbott may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice Abbott, or present any clear tactical disadvantage. Accordingly, the first factor militates in favor of granting the requested stay.

**\*6** With respect to the second factor, Abbott argues that a stay will not simplify the issues, but prolong the litigation. According to Abbott, the only way to avoid prolonging the litigation would be if the reexamination resulted in the PTO invalidating all of the asserted claims of all of the patents-in-suit. The court cannot agree. Contrary to Abbott's position, the court finds that granting the stay will simplify the

issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the of the four patents undergoing reexamination are invalid, then many of the issues in the litigation will become moot. Additionally, it is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency. Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions. *See Gioello Enters. Ltd. v. Mattel, Inc.,* No. C.A. 99-375 GMS, 2001 WL 125340, at \*1 (D.Del. Jan. 29, 2001). The second factor, therefore, weighs in favor of granting the motion to stay.

Finally, the court finds that the third factor it must consider in its determination, i.e. whether discovery is complete and whether a trial date has been set, weighs in favor of granting the motion. In the present case, fact discovery is not scheduled to close until January 31, 2007 and, although already set, the trial is not scheduled to begin until October 9, 2007. [FN6] Thus, given its findings with respect to the first two factors, the court concludes that the balance of harms weighs in favor of granting a stay of this action. Accordingly, the court will grant DexCom's motion to stay.

FN6. See Amended Scheduling Order, D.I. 71 ¶¶ 2, 8.

### *ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Dismiss Abbott's Complaint (D.I.5) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Count I of Abbott's complaint and DENIED with respect to Count II of Abbott's complaint.

2. The court shall dismiss Count I of Abbott's complaint without prejudice.

3. The plaintiff's Motion For Limited Jurisdictional Discovery and for a Corresponding Extension of the Briefing Schedule on DexCom's Motion to Dismiss (D.I.9) is DENIED as moot.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4. The defendant's Motion to Strike the "Amended Complaint" and Renewed Motion to Dismiss Abbott's Complaint (D.I.61) is GRANTED in part and DENIED in part. The motion to strike the "amended complaint" is GRANTED and the renewed motion to dismiss is DENIED as moot.

5. The plaintiff's Amended Complaint (D.I.55) shall be stricken from the court's docket.

6. The defendant's Motion to Stay Pending Reexamination of the Patents-in-suit (D.I.25) is GRANTED.

D.Del.,2006.
Abbott Diabetes Care, Inc. v. DexCom, Inc.
Slip Copy, 2006 WL 2375035 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, E.D. Texas, Lufkin Division.

ALZA CORPORATION Plaintiff,

v.

WYETH and Wyeth Pharmaceuticals, Inc. Defendant.

**No. Civ.A. 9:06-CV-156.**

Nov. 21, 2006.

Jenner & Block LLP, Chicago, IL, for Plaintiff. David J. Beck, William Bradley Coffey, Beck Redden & Secrest, Houston, TX, Amy Kreiger Wigmore, Thomas F. Connell, William G. McElwain, Wilmer Cutler Pickering Hale & Dorr, Washington, DC, William F. Lee, Wilmer Cutler Pickering Hale & Dorr, Boston, MA, for Defendants.

*ORDER GRANTING DEFENDANT'S MOTION TO STAY*

CLARK, J.

**\*1** Before the court is Defendant's Motion to **Stay** [Doc. # 15] seeking to **stay** this case until the United States Patent and Trademark Office ("PTO") concludes its **reexamination** of the patent-in-suit.

### I. Facts and Procedural History

Plaintiff Alza Corporation ("Alza") is the owner of United States Patent No. 6,440,457 B1 ("the '457 patent"). On July 26, 2006, Alza filed a suit against Defendants Wyeth and Wyeth Pharmaceuticals, Inc. (collectively, "Wyeth") alleging that Wyeth infringed Claim 1 of the '457 patent by selling Effexor® XR, a pharmaceutical product which Wyeth has sold since 1997.

On July 28, 2006, Wyeth filed a request for reexamination with the PTO of the '457 patent. On October 2, 2006, the PTO granted the request and ordered **reexamination** of the '457 patent. **Reexamination** is a procedure that allows the PTO to reconsider the validity of an existing patent. 35 U.S.C. § § 301, *et seq.* Wyeth now moves to **stay** this litigation pending the outcome of the **reexamination** proceeding.

### II. Analysis

**Reexamination** of patent validity in the PTO is a "useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive

manner." H.Rep. No. 96-1307(I), at 4. As the Federal Circuit has explained, "[o]ne purpose of the **reexamination** procedure is to eliminate trial of that issue ... or to facilitate trial of that issue." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.1983).

This court has the inherent power to control its own docket, including the power to **stay** proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed.Cir.1988). In deciding whether to **stay** litigation pending **reexamination**, this court considers: 1) whether a **stay** would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; 2) whether a **stay** will simplify the issues in question and trial of the case; and 3) whether discovery is complete and whether a trial date has been set. EchoStar Technologies Corp. v. Tivo, Inc., 2006 WL 2501494 (E.D.2006).

#### 1. Prejudice or Disadvantage to Plaintiff

Plaintiff argues that "the PTO **reexamination** proceeding cannot resolve the entire dispute between the parties and will take years to resolve." In addition, Plaintiff contends that a **stay** is not warranted because certain evidence of the non-obviousness of the '457 patent is in Defendants' possession and discovery would be unavailable to Plaintiff in the **reexamination** proceeding.

**Reexamination** does not threaten protracted or indefinite delay. The **reexamination** statute directs the PTO to conduct **reexamination** proceedings with "special dispatch." 35 U.S.C. § 305. Additionally, because the patent is involved in litigation, the reexamination proceeding will "have priority over all other cases." Manual of Patent Examining Procedures § 2261.

This case is still in its infancy. Discovery has not begun and the scheduling conference is set for December 8, 2006. The parties have not yet submitted a Rule 26(f) Joint Conference Report. Therefore, this is not a case in which the parties have already invested substantial time and resources in litigation. Cf. Soverain Software LLC v. Amazon.com, 356 F.Supp.2d 660, 662 (E.D.Tex.2005)(denying stay where the case was a year old and the court had already held a *Markman* hearing). Furthermore, if the parties continue to litigate the validity of claims in this court and the PTO subsequently finds that the claim in issue is invalid, this action would be moot and the parties will have wasted all of its time and resources. Thus, granting the **stay** will maximize the likelihood that assets need not be expended to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

address invalid claims.

**\*2** Although Plaintiff claims that it will be prejudiced because the PTO does not allow discovery in its **reexamination** proceeding, this court will not second-guess a system designed by Congress that has operated without discovery for many years. Therefore, this factor weighs in favor of granting a **stay**.

### 2. Simplification of Case

Plaintiff contends that **reexamination** will not simplify issues for trial because the PTO will address only the obviousness of the '457 patent whereas this court is able to resolve this dispute in its entirety.

Plaintiff fails to consider the potential positive effects a PTO reexamination. Allowing issues of validity to be evaluated by the PTO makes sense because "the PTO may be in a better position than the Court to evaluate the validity of a patent in view of prior art references. *GPAC v. D.W.W. Enterprises, Inc.,* 144 F.R.D. 60, 63 (1992). Also, regardless of the reexamination result, allowing the PTO to reexamine first should simplify and streamline the issues in this litigation. Put simply, "courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated or lucidly narrowed by the patent reexamination process and the expertise of its officers." *Hewlett-Packard Co. v. Acuson Corp.,* 1993 WL 149994, at \*2 (N.D.Cal. May 5, 1993). Statistically, 71% of **reexamination** proceedings result in amended or cancelled claims. Therefore, as a matter of judicial efficiency and economy, it makes sense to await the conclusion of a **reexamination** before resuming the instant litigation.

Furthermore, the issue of claim construction will be simplified if a **stay** is granted. Because statements made during the **reexamination** proceedings become part of the prosecution history, a **stay** will allow the intrinsic evidence to be fully developed before this court begins the claim construction process. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1439 (Fed.Cir.1988)(holding that statements made during **reexamination** proceeding are relevant prosecution history when interpreting claims .) Therefore, this factor weighs in favor of granting a **stay**.

### 3. Completion of Discovery and Trial Date

Plaintiff admits that this case is in the early stages of litigation. However, Plaintiff argues that because this court has set a trial date, the factor weighs heavily in its favor. Here, the scheduling conference has not been held and discovery proceedings have not commenced. No dispositive motions have been submitted and no significant issues have been resolved.

Perhaps most importantly, the claim construction process has not begun. None of the parties have proposed claim construction definitions or submitted claim construction briefs and a *Markman* hearing is not until October 26, 2007. Although a trial date has been proposed to the parties, it is March 10, 2008, about sixteen months from now. Therefore, this factor also weighs in favor of granting a **stay**.

### III. Conclusion

**\*3** Based on the foregoing, this court finds that the benefits of granting Defendant's Motion to **stay** outweigh the burdens of delay caused by a **reexamination** proceeding in this case.

IT IS THEREFORE ORDERED that Defendant's Motion to **Stay** is GRANTED. The case shall be stayed pending a decision by the PTO or until further order of this court. The parties shall notify this court of any significant change in the status of the proceeding before the PTO, and of any decision by the PTO.

IT IS FURTHER ORDERED that the Case Management Conference scheduled for December 8, 2006 is CANCELLED.

E.D.Tex.,2006.
Alza Corp. v. Wyeth
Slip Copy, 2006 WL 3500015 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, D. Colorado.

BROADCAST INNOVATION, L.L.C., and IO
Research Pty, Ltd., Plaintiffs and Counter-
Defendants,
v.
CHARTER COMMUNICATIONS, INC., Defendant
and Counter-Plaintiff.
**Civil Action No. 03-CV-2223-ABJ-BNB.**

July 11, 2006.

Barry Alan Schwartz, Kamlet, Shepherd, & Reichert,
LLP, Denver, CO, Corby R. Vowell, Edward W.
Goldstein, Goldstein & Faucett, LLP, Houston, TX,
Edward R. Nelson, III, Jonathan Tad Suder,
Friedman, Suder & Cooke, Fort Worth, TX, for
Plaintiffs and Counter-Defendants.
David C. Doyle, Jose L. Patino, Morrison & Foerster,
LLP, San Diego, CA, J. Eric Elliff, Morrison &
Foerster, LLP, Denver, CO, Robert M. Harkins,
Morrison & Foerster, San Francisco, CA, for
Defendant and Counter-Plaintiff.

**ORDER GRANTING DEFENDANT'S MOTION
FOR STAY PENDING REEXAMINATION OF
U.S. PATENT 6,076,094 BY UNITED STATES
PATENT AND TRADEMARK OFFICE**
ALAN B. JOHNSON, District Judge.
**\*1** The above-captioned matter comes before the
Court on Defendant Charter Communications, Inc.'s
Motion to **Stay** Pending **Reexamination** of the U.S.
Patent 6,076,094 By United States Patent and
Trademark Office. Plaintiffs Broadcast Innovation,
LLC and IO Research Pty, Ltd. have resisted this
motion, timely filing a response on June 29, 2006.
After careful consideration of the motion, briefs and
governing authorities, and being otherwise fully
advised in the premises, the Court **FINDS** and
**ORDERS** as follows:

## Background

### I. Procedural History

In this patent infringement and validity action,
Plaintiffs Broadcast Innovation, LLC and IO
Research Pty, Ltd. (hereinafter "Plaintiffs") allege
that Charter Communications, Inc. (hereinafter
"Charter") infringed directly or indirectly claims 8,
15, 22, 29 of United States Patent No. 6,076,094
(hereinafter " 094 patent"), a patent Charter claims is
invalid for numerous reasons, not the least of which

being anticipation and obviousness based on prior
art.[FN1] The 094 patent claims a complex distributed
database system with applicability to data
broadcasting and data casting communications
media.[FN2]

> FN1. The Court also notes that Charter has
> joined in and adopted a host of pleadings
> filed both in the present action and in the
> case of *Broadcast Innovation, L.L. C. v.
> Echostar Communication Corp.,* 01-cv-
> 2201-ABJ-BNB (D.Colo), a case also
> involving the 094 patent which has been
> stayed pending final resolution of the
> present case.

> FN2. The Court eschews an exhaustive
> recitation of the adjudicative facts
> surrounding the merits of this case, focusing
> instead on the posture of the present motion
> and response.

On June 8, 2006, Charter requested that the United
States Patent and Trademark Office (PTO) reexamine
the 094 patent to determine whether the four asserted
claims in the present case-claims 8, 15, 22 and 29-are
invalid. The information provided to the PTO as a
basis for **reexamination** includes, among other
materials, three prior art references that form the
basis of Charter's summary judgment motion before
this Court: (1) the 1989 World System Teletext and
Data Broadcasting Technical Specification; (2) a
1986 article entitled *"BBC Datacast-A New
Generation of Data Transmission Networks Using
Broadcast Video";* and (3) a 1988 article authored by
John Lilley entitled *"Can Data Broadcasting
Actually Sell Itself?"* It is undisputed that this art was
not before the PTO during its original examination of
the application that eventually issued the 094 patent.
Unsurprisingly, Charter asks this Court to **stay** the
case awaiting the fully-informed, expert view of the
PTO.

## II. Patent Reexamination

### A. Overview

Reexamination is a procedure by which any person
can request that the PTO reexamine or reevaluate the
patentability of an unexpired U.S. patent. 35 U.S.C. §
302. A request for patent reexamination must be
based upon prior art patents or publications which
raise "a substantial new question of patentability." *Id.*
§ 303(a). Typically, the cited prior art patents or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination. The examiner is obligated to do so "with special dispatch." 35 U.S.C. § 305; 37 C.F.R. § 1.550(a).

*2 Within approximately three months of the filing of the reexamination petition, the PTO will determine whether the request raises a "substantial new question of patentability" affecting any claim or claims of the patent. _Kaufman Co. v. Lantech Inc., 807 F.2d 970, 976 (Fed.Cir.1986)_. The examiner, utilizing his expertise, determines if such a "new question" exists by comparing the prior art of record in the original patent application with the prior art cited in the request for reexamination (although the examiner is not limited to that information). 35 U.S.C. § 303(a). If the prior art patents and/or printed publications are "material" to the reexamination of at least one claim of the patent, a substantial new question of patentability exists. [FN3] Thereafter, the parties are given the opportunity to provide position statements to the PTO, and the PTO reexamines the patent claims in _ex parte_ fashion. If the Commissioner decides _not_ to institute a reexamination proceeding, the decision is final and nonappealable.

> FN3. The materiality standard is fairly deferential to the PTO. Prior art is "material" to the examination of a claim of the patent if "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication _important_ in deciding whether or not the claim is patentable." United States Patent and Trademark Office, _Manual of Patent Examination Procedure_ § 2294 (8th ed., rev.1, October 2005) (emphasis added).

Importantly, a decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes. 35 U.S.C. § 307(a). Cancellation through reexamination, however, is available only when the claims at issue are unpatentable over prior art patents and publications. 35 U.S.C. § 301-02. Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has

met its burden of clear and convincing evidence. _Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc., 807 F.2d 955, 961 (Fed.Cir.1986)_. After a decision sustaining the validity of the claims, this burden becomes more difficult to satisfy. _Id._[FN4]

> FN4. Relevant are the Federal Circuit's comments in _American Hoist v. Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350 (Fed.Cir.1984)_:
> [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become _more difficult_ to sustain-a fact likewise to be taken into account by the trial judge.
> _Id._ at 1354.

During the course of a **stay**, the court retains jurisdiction to respond to changing factual circumstances with appropriate orders. Thus, if a **stay** is granted prior to the decision from the Patent Office as to whether a substantial new question of patentability exists, the court can issue an order lifting the **stay** upon a negative determination, thereafter deciding all pending motions and, if necessary, proceeding to trial. _See, e.g., Grayling Indus. v. GPAC Inc., 19 U.S.P.Q.2d 1872, 1874 (N.D.Ga.1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2d 1496, 1496 (C.D.Cal.1991)_. Similarly, the court may dissolve the **stay** when preliminary reports from the Patent Office reveal that some of the claims at issue will survive **reexamination**. The court would then await the PTO's decision for guidance on pending motions and, if necessary, trial. _See, e.g ., Purolite Int'l, Ltd. v. Rohm and Haas Co., 24 U.S.P.Q.2d 1857, 1860 (E.D.Pa.1992); Rohm and Haas Co. v. Brotech Corp., 24 U.S.P .Q.2d 1369, 1372 (D.Del.1992)_. If no claims survive, neither does the court's work.

### B. Scope and Purpose: Expertise

*3 "Congress instituted the **reexamination** process to shift the burden or **reexamination** of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." _Canady v. Erbe Elektromedizin GmbH, 271 F.Supp.2d 64, 78 (D.D.C.2002)_ (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1980), *reprinted in* 1980 U.S.C.C.A.N. 6460)); *see also* Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach A Motion to Stay Litigation Pending the Outcome of Reexamination, 66 Geo. Wash. L.Rev. 172, 172 (1997)* ("Congress decided that the often-asserted validity issue, which can involve intricate technological questions, deserved special treatment. Thus, Congress established a patent **reexamination** procedure that allows the Patent and Trademark Office, instead of a district court, to consider validity issues that the PTO overlooked during the initial examination.").

Shifting the patent validity issue to the PTO has many advantages, including:
1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
4. The outcome of the reexamination many encourage a settlement without the further use of the Court.
5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987).*

Early drafts of the **reexamination** statute expressly provided for a **stay** of court proceedings during all **reexamination** proceedings. *See* S. Rep. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. Rep. 5075, 96th Cong., 1 st Sess. § 310 (1979); S. Rep. 2446, 96th Cong., 2d Sess. § 310 (1980). However, an express provision was ultimately deemed unnecessary because courts already had the power to **stay** civil actions "to prevent costly pretrial maneuvering which attempts to circumvent the **reexamination** procedure." *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.), cert. denied, 464 U.S. 935 (1983).*[FN5] "When a district court **stays** patent validity proceedings before it until completion of a **reexamination** proceeding, that **stay** must be accepted if the purpose of the **reexamination** statute is to be preserved." *Id.* To no surprise, courts frequently note that "[t]he legislative history surrounding the establishment of the **reexamination**

proceeding evinces congressional approval of district courts liberally granting **stays**." *Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q.2d 1786, 1788 (E.D.Ark.1991).*

> [FN5]. The pertinent House report explained as follows:
> The bill [35 U.S.C. § § 301-07] does not provide for a **stay** of court proceedings. It is believed by the committee that **stay** provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the **reexamination** procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.
> H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463).

**C. Relevant Factors Weighing For Or Against A Stay**

**\*4** "A motion to **stay** an action pending the resolution of a **reexamination** proceeding in the United States Patent and Trademark Office is directed to the sound discretion of the court." *Braintree Laboratories, Inc. v. Nephro-Tech, Inc., 1997 WL 94237 (D.Kan.1997); see also Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* ("Courts have inherent power to manage their dockets and **stay** proceedings, including the authority to order a **stay** pending conclusion of a PTO **reexamination**.") (internal citations omitted). As mentioned above, there exists a "liberal policy in favor of granting motions to **stay** proceedings pending the outcome of **reexamination** proceedings." *Whatley v. Nike, 54 U.S .P.Q.2d 1124, 1125 (D.Or.2000); see also In re Laughlin Products, Inc., 265 F.Supp.2d 525, 530 (E.D.Pa.2003)* (same).

"In deciding whether to grant a **stay**, the court must weigh the benefits of the **stay** against the costs." *Motson v. Franklin Covey Co., 2005 WL 3465664, *1 (D.N.J.2005).* Courts consider a number of factors in determining whether to **stay** litigation pending PTO **reexamination**, including: (1) whether a **stay** will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a **stay** would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"whether a **stay** will reduce the burden of litigation on the parties and on the court ." *Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004); *Nexmed Holdings, Inc. v. Block Inv., Inc.,* 2006 WL 149044, *1 (D.Utah Jan. 19, 2006) (citing *In re Laughlin Prods.,* 265 F.Supp.2d at 530); *Brown,* 18 U.S.P.Q.2d at 1496 (detailing the expertise factor).[FN6] No one factor is controlling-the totality of the circumstances governs.

> FN6. While the *Tap Pharmaceuticals* court created a fourth category examining the "burden of litigation on the parties and on the court," see 70 U.S.P.Q.2d at 1320, most courts merge this inquiry with the "simplification of issues" factor. *Accord Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (collecting cases); *Versa Corp. v. Ag-Bag Intern. Ltd.,* 2001 WL 34046241, *1 (D.Or.2001) (describing this factor as "the orderly course of justice measured in terms of the *simplifying or complicating of issues,* proof, and questions of law which could be expected to result from a stay") (emphasis added).

**Analysis**

**I. Will A Stay Simplify the Issues Before the Court?**

Courts routinely consider the expertise of the Patent Office, under which claim validity will be rigorously reevaluated, as an important factor in determining whether to **stay** its proceedings. *Accord Gould,* 705 F.3d at 1342; *Middleton, Inc. v. Minn. Mining & Mfg. Co.,* 2004 WL 198669, at *3 (S.D.Iowa 2004); *GPAC Inc. v. D. W.W.Enter. Inc.,* 23 U.S.P.Q.2d 1129, 1134 (D.N.J.1992); *see also Bausch & Lomb Inc. v. Alcon Labs., Inc.,* 914 F.Supp. 951, 953 (W.D.N.Y.1996) ("Because the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it."). The technical nature of the patent claims in question increases the utility of PTO expertise, which is further amplified by the need to examine prior art and publications not before the PTO during its original patent examination. *See Brown,* 18 U.S.P.Q.2d at 1496 ("[**R**]eexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise."). In turn, patent cases *not* hinging upon the consequences of prior art references have less of a need for the PTO's expertise. *See Emhart Indus., Inc.,* 3 U.S.P.Q.2d at 1892 n. 3 (distinguishing the matter before it on such grounds, explaining that if "the issue of prior art was involved, the PTO's opinion [would] be invaluable.") (quotation omitted).

**\*5** Confronted with a motion to **stay** pending PTO **reexamination** after significant discovery, pretrial conference and trial dates set, a neighboring district court concluded as follows:
The technical expertise provided by the **reexamination** proceeding ... will be extremely helpful to this Court should further consideration of this matter be necessary. Indeed, the Court invites a final determination by the PTO as to the validity of plaintiff's patent claims. The **reexamination** procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld, or to be narrowed in some degree. In any event, the expert view of the Patent Office examiner will certainly benefit this Court. Thus, the Court is of the opinion that a **stay** of the trial of this matter should be granted to allow the PTO to complete the **reexamination** proceeding.

*Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 887 (W.D.Okla.1985) (staying trial pending conclusion of the **reexamination** proceedings).[FN7]

> FN7. Also interesting to note is that the patent at issue in *Loffland* appears quite simple when compared to the 094 patent presently before the Court-the technology in *Loffland* consisted of patent covering an elevating catwalk used on drilling rigs. *See Loffland Bros.,* 225 U.S.P.Q. at 886.

Indeed, some courts consider this factor of primary importance. *See, e.g., Dresser Indus., Inc. v. Ford Motor Co.,* 530 F.Supp. 309, 316 (N.D.Tex.1981) ("The major benefit of staying litigation pending reconsideration of a patent under [reexamination] is that it affords the Court the assistance of the Patent Office's specialized expertise on technical questions of validity."); *cf. Pegasus Development Corp. v. Directv, Inc.,* 2003 WL 21105073, *2 (D.Del.2003) (deciding that by staying a highly technical case involving computer programming communication systems, "the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that

agency").

The *Loffland Bros.* court also understood the PTO's expertise to have benefits beyond educating the court. That is, simplification may occur by the very nature of the **reexamination** procedure itself, as claims, arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the parties and the court. The Federal Circuit has explained that a major "purpose of the **reexamination** procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the **reexamination** proceedings)." *Gould, 705 F.2d at 1342* (Markey, C.J.); *see also Canady, 271 F.Supp.2d at 68* ("[C]ourts often **stay** proceedings, such as in the instant case, to wait for **reexamination** results that will simplify litigation by eliminating, clarifying, or limiting the claims."). "If not found invalid, the **reexamination** will at least likely result in a narrowing and simplifying of the issues before the Court." *Middleton, Inc., 2004 WL 1968669 at *3*. "This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis." *Id.; see also, e.g., Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed.Cir.2002).*

**\*6** Combining these benefits, countless courts have touted the value of streamlining voluminous and complicated patent cases. For example, the court in *Motson* found that the benefits derived from the PTO's **reexamination** outweighed the fact that much effort had already been expended by the parties:

[E]ntry of a **stay**, pending **reexamination** by the PTO, may simplify or even eliminate the need for trial on the remaining validity challenge in this matter. The **reexamination** procedure has the potential to either uphold or narrow the claims in the plaintiff's patent. In any event, the technical expertise of the PTO examiner may be helpful to the Court should further consideration of the matter be necessary after **reexamination**.... Although discovery and briefing expenses have already been incurred, a trial at this point on the sole remaining issue in the case may compound those costs unnecessarily if the PTO **reexamination** eliminates the need for a trial or creates a need to relitigate other issues.

*Motson, 2005 WL 3465664 at *1-2.*

Despite being less than two-and-a-half months from trial and despite the substantial monetary expenditures by each party, the court in *Gioello*

*Enterprises* provided a similar explanation for granting a **stay**:

Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for **reexamination**, it is possible that submission of statements will not be complete until April 12, 2001. Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions.

*Gioello Enterprises, Ltd., 2001 WL 125340 at *1.*

This question of "resources" was detailed by the Southern District of New York in *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc., 56 U.S.P.Q.2d 1633 (S.D.N.Y.2000)*, a case bearing many resemblances to the matter *sub judice.* There, the court addressed a **stay** pending PTO **reexamination** of allegedly relevant prior art. While the motion was brought by the *plaintiff* in that case, the instructiveness of the court's language applies equally to the present matter:

Although [defendant] correctly notes that plaintiffs have not acted with dispatch in seeking **reexamination** and that plaintiffs have pursued an extremely burdensome discovery program, the cost to [defendant] of the litigation to date will not be affected by the grant or denial of a **stay**; denying the **stay** will not, without more, entitle [defendant] to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, although the denial of a **stay** can have no effect whatsoever on past events, the grant of a **stay** will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

**\*7** Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served ... and the Pretrial Order has not yet been prepared. I[t] would be a serious waste of both the parties' and the Court's resources if the ... summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the **reexamination** proceeding.

Third, a **stay** will necessarily simplify the issues. If

the **reexamination** proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the **reexamination** proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.

*Softview Computer Prods. Corp.,* 56 U.S.P.Q.2d at 1636; *see also Bausch & Lomb Inc.,* 914 F.Supp. at 953 ("If this Court were to deny the **stay** and proceed to trial, it is possible that the time, resources, and significant efforts of all those involved in such a trial would be wasted. Because a finding by this Court that the 607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. Not only would such a scenario cause Alcon significant harm[,] but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the **reexamination** is to be conducted "with special dispatch" (35 U.S.C. § 305), I find that a **stay** of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.").

In the present matter, Charter argues that a stay "will simplify the issues, avoid inconsistent rulings and conserve the resources of the Court and the parties." *Defendant's Motion,* at 7. Broadcast and IO Research, on the other hand, summarily state that the possibility of simplification is "equivocal." *Plaintiff's Response,* at 3. For the reasons detailed above as well as those to follow, the Court finds that this factor weighs heavily in favor of granting a stay.

The heart of this complicated patent case involves the impact of several prior art references-an issue the PTO is far better suited to address given the technology at issue in this case. *Ethicon, Inc.,* 849 F.2d at 1427. Moreover, because this prior art was not before the PTO during its original patent examination, the Court would benefit immensely from the PTO analysis of it. *Accord Softview Computer Prods. Corp.,* 56 U.S.P.Q.2d at 1636; *Emhart Indus., Inc.,* 3 U.S.P.Q.2d at 1890, 1892 n. 3; *Indust Wireless Spectrum Techs., Inc. v. Motorola Corp.,* 57 U.S.P.Q.2d 1662, 1663 (N.D.Ill.2001); *Brown,* 18 U.S.P.Q.2d at 1496 (noting that "[t]he PTO is in a better position than the Court to evaluate the validity of the patent [at issue] in view of the prior art references.").

**\*8** Judged solely by this factor, a **stay** would further the interests of judicial economy and the conservation of the parties' resources, as well as that of the court.

Charter's pending **reexamination** petition involves the same issues currently before this Court. If the PTO, utilizing its unique expertise, determines that all or some of the 094 claims are invalid, that determination will either dispose of this litigation entirely or at least aid the Court in adjudicating this case. *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.,* 385 F.Supp.2d 1022, 1023 (N.D.Cal.2005) ("A **stay** is particularly justified where the outcome of the **reexamination** would be likely to assist the court in determining patent validity and, if the claims were canceled in the **reexamination**, would eliminate the need to try the infringement issue."). Moreover, "[s]ince the PTO cannot **stay** the **reexamination** once a request has been granted, the court's issuance of a **stay** is the only way to avoid the potential for conflict." *Gioello Enterprises, Ltd.,* 2001 WL 125340 at *2; see also Bayer AG v. Novartis Crop Prot. Inc.,* 55 U.S.P.Q.2d 1509, 1511 (M.D.La.2000) (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice"); *Hewlett-Packard Co. v. Acuson Corp.,* 1993 WL 149994, *2 (N.D.Cal.1993) ("Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent **reexamination** process and the expertise of its officers."); *Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.,* 203 F.Supp. 794, 796 (D.Va.1962) (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar). The Court, unlike the PTO, can exercise its direction to avoid this conflict and potential for waste.[FN8]

FN8. The Court is also cognizant of the fact that the PTO grants more than nine of every ten petitions for reexamination. *See* United States Patent and Trademark Office, *Ex Parte Reexamination Filing Data,* at 1, ¶ 5 (Sept. 30, 2005) (noting 91% acceptance out of 7,510 requests). If and when the PTO grants Charter's petition, history also teaches that there is a 74% likelihood that the PTO will eliminate, amend or otherwise limit the claims at issue, which will significantly alter the nature and amount of work for the attorneys, the court and the jury. *See id.* at 2, ¶ 9; *Tap Pharm. Prods. Inc.,* 70 U.S.P.Q.2d at 1320.

## II. Time and Timing

Broadcast and IO Research argue that this factor "is decidedly pro-Plaintiffs," as "[t]rial is less than three months away. *Plaintiffs' Response,* at 5.[FN9] Charter acknowledges the trial setting, but insists that the proximity of trial, standing alone, is not a reason to blindly deny an otherwise appropriate stay.

> FN9. Indeed, Plaintiffs' entire argument regarding this factor consists of that single statement.

This factor, at first glance, likely weighs in favor of the Plaintiffs and thus against a stay. Although discovery is not complete, see *Stipulation Regarding Additional Discovery* at 2, a trial date has been set for September 11, 2006. If these two litigation aspects were all that courts considered when assessing this factor, it might lean towards Broadcast and IO Research. However, courts considering this factor do not stop at discovery and trial settings, but rather, routinely inquire as to the occurrence summary judgment arguments, rulings on summary judgment, and the status of the final pretrial order, among other elements. *See, e.g., Gioello Enterprises, Ltd., 2001 WL 125340 at *1* (noting trial was set, but expressing concern for pending summary judgment motions); *Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636* (same concern as to "extremely voluminous summary judgment motions" and unfinished final pretrial order); *Bausch & Lomb Inc., 914 F.Supp. at 953* (same); *Middleton, Inc., 2004 WL 198669 at *4* (same).

**\*9** In sum, the proximity of the trial date does not preclude entry of a stay. "Courts have granted stays even where discovery has been completed, and even when a trial date has been scheduled or is forthcoming." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc., 68 U.S.P.Q.2d 1755, 1757 (E.D.Mich.2003); see also Perricone v. Unimed Nutritional Services, Inc., 2002 WL 31075868, *3 (D.Conn.2002)* (noting that courts "have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation"). For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors-be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court. Put simply, trial time doesn't always tell the tale. *See, e.g., Gould, 705 F.2d at 1342* (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc., 2004 WL 198669 at *10* (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Lofland Bros., 225 U.S.P.Q. at 887* (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *see also Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636* (granting stay; noting that "although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served ... and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., 19 U.S.P.Q.2d at 1789* (granting stay despite the fact that case was set for trial in less than a month); *Motson, 2005 WL 3465664 at *2* (granting stay despite discovery being complete and summary judgment decided).[FN10]

> FN10. A more detailed balancing process was explained by the court in *Ralph Gonnocci Revocable Living Trust,* who ultimately ruled in favor of a stay:
> Undoubtably the parties have spent considerable time and resources thus far-substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial.
> *Id.* at 1758.

In the present case, although trial is set for mid-September, significant work remains for the parties and the Court. First, numerous voluminous dispositive motions are pending, including, but not limited to, Broadcast and IO Research's motion for summary judgment of infringement, Charter's motion for summary judgment of non-infringement and Charter's motion for summary judgment of invalidity. Furthermore, the parties have recently stipulated to additional discovery, including supplemental document production, supplemental responses to written discovery, supplemental expert reports, rebuttal expert reports, and expert depositions related to those supplemental expert reports. *Stipulation Regarding Discovery And Expert Report Supplementation,* at 2 (filed June 22, 2006). According to this stipulation, the parties hope to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conclude this work in late August. Id.FN11 In addition to preparing their final pretrial memorandums and other trial presentations, numerous pretrial filings remain for both parties, including submission of deposition designations, oppositions to more than forty motions *in limine* (according to Charter, and not disputed by Broadcast or IO Research), as well as proposed jury instructions and special verdict forms. Charter argues that

> FN11. To this end, the Court fails to see the significance of Plaintiffs' argument that *Charter* acted as the initiator of the stipulation, for the fact remains that *both* parties stipulated to additional discovery.

*\*10* Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the four asserted claims will survive the reexamination process. The reexamination proceedings before the PTO may well [alter], moot or resolve the issues set for trial in less than three months, and staying the trial pending conclusion of the PTO's review will eliminate the ... additional expense of trial preparation [and the] risk of inconsistent rulings.
*Defendant's Motion,* at 13.

The Court agrees. *See Tap Pharm. Prods. Inc., 70 U.S.P.Q.2d at 1320* (noting similarly, i.e., "There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of the issues will allow both parties to conserve time and resources."). A more detailed glance at the timing factor reveals, beyond any peradventure of doubt, that a stay is appropriate in this case.

### III. Will A Stay Unduly Prejudice the Nonmoving Party or Present a Clear Tactical Advantage for the Moving Party?

This factor is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?* Because they do, this factor weighs heavily in favor or staying the case. The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits. *See, e.g., Robert H. Harris Co., 19 U.S.P.Q.2d at 1788.*

Plaintiffs make the vague argument that a delay in trial is unfair. However, this argument fails to address the crucial question of the prejudice factor-i.e., will a

stay unduly prejudice the legal remedy sought by the nonmovants? *Softview Computer Prods. Corp., 56 U.S.P.Q.2d at 1636; Ingro v. Tyco Indus., Inc., 227 U.S.P.Q. 69, 70 (N.D.Ill.1985).* Clearly it will not. If the PTO does not invalidate or otherwise alter the claims of the 094 patent, the Plaintiffs' legal remedy remains unaffected, and they will have over a decade to exploit the 094 patent. Moreover, if the claims are narrowed, *both* sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Motson, 2005 WL 3465664 at \*1* ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.' ") (quoting *Pegasus Dev. Corp., 2003 WL 21105073 at \*2).* Indeed, the only possibility of irreparable harm to Broadcast and IO Research would exist if the Court chose *not* to stay the case. That is, if the Court finds that the 094 patent is valid and that Charter has infringed it, and orders Charter to pay damages to Broadcast and IO Research, then Broadcast and IO Research "would have no ability to recover those damages if at a later date the PTO determine[s] that the ['094] patent is invalid." *Bausch & Lomb Inc., 914 F.Supp. at 952.* The Court finds such a possibility unacceptable.

*\*11* In sum, this factor weighs in favor staying the case because monetary relief-the only relief Plaintiffs seek-is fully capable of restoring Plaintiffs to the *status quo ante.* Accord *Brown, 18 U.S.P.Q.2d at 1496* ("While the Court recognizes that the reexamination could cause significant delay in the proceedings, the complexity of the case and the fact that Mr. Brown can be fully compensated should he prevail at the reexamination and trial support staying this action.").FN12

> FN12. Moreover, a **stay** would not affect the issue of damages accruing during the pendency of the **reexamination** period should Plaintiffs ultimately prevail at trial. The Federal Circuit has considered the impact of a completed **reexamination** upon the viability of infringement claims relating to the reexamined patent. *See, e.g., Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed .Cir.1998).* The general rule is that the owner of a reexamined patent "is entitled to infringement damages, *inter alia,* for the period between the date of issuance of the

original claims and the date of issuance of the reexamined claims if the original and reexamined claims are 'identical.' " *Id.* (citing 35 U.S.C. § 252 and 307(b); *Tennant Co. v. Hako Minuteman, Inc.,* 878 F.2d 1413, 1417, (Fed.Cir.1989)).

### IV. Conclusion

A future trial date, standing alone, does not obviate otherwise unassailable reasons to **stay** these proceedings. At the very least, awaiting outcome of **reexamination** will facilitate motion disposition and trial, as valuable efficiencies will be gained by awaiting the input of the PTO on the scope of the claims in light of the prior art that will be considered during the **reexamination** proceedings.

The Court's decision mirrors, in many respects, that made in *Middleton* by the Honorable James E. Gritzner of the United States District Court for the Southern District of Iowa. By the time Judge Gritzner ruled on the defendant's motion to **stay**, the "long and convoluted" case before him was eight years old-"proceeding from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times." *Middleton, Inc.,* 2004 WL 1968669 at * 1. Like this Court, Judge Gritzner was faced with the choice of ruling on numerous motions for summary judgment-in fact, three motions presenting legal questions nearly identical to the motions presently before this Court-or staying the case pending PTO **reexamination**. *Id.* The case was set for trial in less than two months. *Id.* The plaintiff in *Middleton*-much like Broadcast and IO Research-resisted the motion to **stay** "based primarily on the short time left before trial and the delay in seeking reconsideration." *Id.* Judge Gritzner's thorough and thoughtful explanation warrants repeating:

In the present case, the litigation has been ongoing for over eight years. The trial date is set and is scheduled for the week of October 12, 2004 [i.e., less than two months away]. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a **stay**.

However, these facts should be weighed against the benefits of issuing a **stay**. As argued by [the defendant], the following factors weigh in favor of issuing a **stay**: (1) a **stay** will be the most efficient use of judicial resources by preventing duplication of effort; (2) the **reexamination** may simplify and

narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a **stay** issued pending **reexamination** "is not for such a protracted or indefinite period" as **reexamination** proceedings are to " 'be conducted with special dispatch." ' *Gould,* 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a **stay** based on the end of discovery and the proximity of trial, *see Toro Co. [v. L.R. Nelson Corp.],* 223 U.S.P.Q. [636,] 638 [ (C.D.Ill.1984) ]; the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a **stay** versus any added expenses resulting from the **stay**.

**\*12** In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to **stay**. First, a **stay** would preserve the costs of a trial on the merits that may be obviated by the results of the **reexamination**. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the **reexamination** decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the **reexamination** and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a **stay** and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the **reexamination**. In addition, the Court disagrees with [Plaintiff's] contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the **reexamination**, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the **reexamination**. The judicial efforts that a **stay** would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

*Id.* at \*5-6.

This Court finishes where the Southern District of Iowa did two short years ago.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that Defendant Charter Communications, Inc.'s Motion to **Stay** Pending **Reexamination** of the U.S. Patent 6,076,094 By United States Patent and Trademark Office shall be, and now is, **GRANTED.** It is further

**ORDERED** that the proceedings in the above-captioned case are **STAYED** from the date of this Order until further notice. It is further

**ORDERED** that the parties shall immediately advise the Court of the PTO's decision to grant or deny Defendant's petition for **reexamination** of the 094 patent, this Court continuing or lifting the present **stay** pending that initial determination. It is further

**ORDERED** that the parties shall advise the Court of any final decision that results from the PTO's reexamination of the 094 patent.

D.Colo.,2006.
Broadcast Innovation, L.L.C. v. Charter Communication, Inc.
Slip Copy, 2006 WL 1897165 (D.Colo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, D. Minnesota.

CNS, INC., and Creative Integration & Design, Inc.,
Plaintiffs,
v.
SILVER EAGLE LABS, INC., Defendant.
**No. Civ.04-968(MJD/JGL).**

Nov. 29, 2004.

David Allgeyer, Lindquist & Vennum, P.L.L.P, for
Plaintiffs CNS, Inc. and Creative Integration &
Design, Inc.
Eric P. Jacobs, Townsend & Townsend & Crew,
LLP., for Defendant Silver Eagle Labs, Inc.

MEMORANDUM OF LAW & ORDER
DAVIS, J.
**\*1** This matter is before the Court on Defendant
Silver Eagle Labs' Motion to Stay pending the
reexamination of the patents at issue, U.S. Patent No.
5,533,503 and U.S. Patent No. 6,318,362. Plaintiffs
CNS, Inc., and Creative Integration & Design, Inc.,
("CNS") oppose the stay, but request a bond in the
amount of $1,000,000 if a stay is imposed. The Court
heard oral argument on this Motion on November 5,
2004. On November 15, 2004, the Patent Office
ordered reexamination of both patents.

I. BACKGROUND

CNS designs, manufactures, markets, and sells the
Breathe Right nasal strips, an external, disposable
nasal dilator. These nasal strips are the subject of
U.S. and international patents, including the '362
Patent and the '503 Patent.

Silver Eagle manufactures and sells external nasal
dilators for private label products. CNS filed this case
on February 18, 2004, asserting that Silver Eagle's
nasal dilator strips infringe claims of the '362 and the
'503 Patents.

Since the case was filed, the parties have engaged in
some pretrial proceedings and discovery. For
example, CNS sought a preliminary injunction
shortly after filing the case, but the Court denied that
Motion. Order of April 2, 2004. After the Court
denied CNS's Motion, the parties completed the Rule
26(f) Planning Meeting, exchanged written
discovery, and have scheduled but not yet taken
depositions.

Silver Eagle filed Petitions for Reexamination on
both patents on August 23, 2004 as to some, but not
all claims, of both patents. The Patent Office granted
those petitions on November 15, 2004.

II. DISCUSSION

Given the Court's inherent authority to manage and
control its own docket, the decision to grant or deny a
stay motion rests within the Court's broad discretion.
*Pacesetter Inc. v. Cardiac Pacemakers, Inc.,* 2004
U.S. Dist LEXIS 2699 at 2 (D.Minn., Feb. 19, 2004)
(citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-
27 (Fed.Cir.1988)). This case is in the early stages of
discovery and there are obvious efficiencies to be
gained by focusing discovery and trial on the asserted
patents as they exist after reexamination. Thus, as
explained below, the Court is convinced that the
exercise of its discretion calls for a stay of these
proceedings.

A stay pending reexamination is routinely ordered,
particularly where discovery has not progressed past
the early stages. *See, e.g ., Tap Pharm. Prods., Inc. v.
Atrix Labs., Inc.,* No. 03 C 7822, 2004 U.S. Dist
LEXIS 3684 at \*4 (N.D.Ill., Mar. 4, 2004) ("Since
the litigation is at such an early stage and Plaintiff
had notice of the pending reexaminations," stay
should be granted); *Thomas & Betts Corp. v.
Tishman Research Corp.,* No. 86 Civ.1926, 1986
U.S. Dist. LEXIS 17829 (S.D.N.Y., Nov. 17, 1986)
(granting stay where reexamination sought within
three months after case started). Here, the parties
have exchanged written discovery, but have not yet
taken depositions. Even though some discovery has
taken place, it has not been an extensive amount such
that the work will be duplicated once the
reexamination is completed. Rather, the bulk of the
discovery will be sought or pursued after, and with
the benefit of, the reexamination.

**\*2** The Court is further convinced that efficiencies
will be gained by awaiting the input of the Patent
Office on the scope of the claims in light of the prior
art that will be considered in the reexamination
proceedings. For example, the parties have yet to
present the Court with proposed claim constructions,
with admissible evidence to support asserted
invalidity defenses, or with admissible evidence to
support the infringement claims. While some of these
issues have been addressed in the motion papers filed
in this case, the parties have not, as yet, had the
opportunity to fully explore or develop the admissible

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

evidence necessary to meet the relevant burdens of proof for these issues. It is reasonable to expect that the nature and scope of all of these arguments will be framed by the patent examiner's treatment of the claims and the prior art in the reexamination proceedings. It is also reasonable to expect that some of these claims, defenses, or arguments may be rendered moot by the reexamination. *See Alloc, Inc. v. Unilin Decor, N.V.,* 2003 U.S. Dist. LEXIS 11917 *7 (D.Del., July 7, 2003) (prior art discovery issues may be alleviated, reexamination record could be admitted at trial, infringement and validity issues could be narrowed). Thus, the Court and the parties will benefit from the input of the Patent Office on several relevant issues that will aid the management of this case.

CNS argues that a stay should not be issued because the patents will almost certainly emerge from reexamination with the claims intact, or at least some viable, valid claims. The Court recognizes that the patents could be unchanged by the reexamination proceedings. However, the more likely scenario is that the Court will revisit issues, prior art, and claim differences addressed in the reexamination proceedings, regardless of the outcome of those proceedings. While different evidentiary standards may apply before the Patent Office and before this Court, *see Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 407 (W.D.N.Y.1999), the Court concludes that the input of the Patent Office will assist in shaping, refining, and guiding this case through the issues that will remain after reexamination.

CNS also points out that a stay is inappropriate particularly with respect to the '362 Patent because the reexamination will not re-consider two claims of that patent that are asserted to be infringed. The Court notes that CNS has not offered any solutions for an efficient and effective division of the case between its proposed stayed and non-stayed portions. There are few efficiencies to be found in engaging in discovery and trial on one patent, while staying the case on a second patent, particularly where there is only one accused product and where the patents share some common prosecution history. Notwithstanding the absence of two claims from the '362 Patent reexamination, the Court concludes that deference to that proceeding is the best use of the judicial and party resources in this case. *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed Cir.1983) (recognizing that awaiting outcome of reexamination can facilitate trial).

**\*3** Finally, the Court denies CNS's bond request. Two courts have considered, but rejected, bond

requests in connection with stay motions filed in light of reexamination proceedings. *See Gonnocci v. Three M Tool & Machine, Inc.,* No. 02-74796, 2003 U.S. Dist. LEXIS 24423 at *11, n. 5 (E.D.Mich., Oct. 7, 2003) (bond request under Fed.R.Civ.P. 11 denied since the rule does not support ordering "Defendants to post a bond now, in the event Defendants are unable to pay a potential judgment in this matter."); *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.,* No. CV 97-7681, 1998 U.S. Dist. LEXIS 16553 at *8-9 (C.D.Cal.1998) (rejecting analogy to bond requirements under Fed.R.Civ.P. 65). The Court is satisfied that the harm that CNS predicts will occur if a stay is granted can be addressed as necessary as part of any damages case.

IT IS HEREBY ORDERED THAT:

1. Defendant Silver Eagle Labs, Inc.'s Motion to Stay Proceedings Pending Reexamination of U.S. Patent Nos. 5, 533,503 and 6,318,362 [Docket No. 35] is GRANTED; and,

2. Counsel for the parties are directed to notify the Court of the status of the reexamination proceedings at six month intervals while this Stay Order is in effect.

D.Minn.,2004.
CNS, Inc. v. Silver Eagle Labs, Inc.
Not Reported in F.Supp.2d, 2004 WL 3631121 (D.Minn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, E.D. Texas, Texarkana Division.

ECHOSTAR TECHNOLOGIES CORP., Plaintiff,
v.
TIVO, INC., et. al., Defendant.
**No. 5:05 CV 81 DF.**

July 14, 2006.

Charles S. Barquist, Martin M. Noonen, Morrison & Foerster LLP, Los Angeles, CA, Damon Michael Young, John Michael Pickett, Young Pickett & Lee, Texarkana, TX, Harold J. McElhinny, Rachel Krevans, Morrison & Foerster LLP, San Francisco, CA, Karl J. Kramer, Marc J. Pernick, Timur S. Engin, Morrison & Foerster, Palo Alto, CA, for Plaintiff.

Christine W. S. Byrd, Crawford Maclain Wells, Adam S. Hoffman, Jeffrey L. Arrington, Morgan Chu, Perry M. Goldberg, Richard M. Birnholz, Irell & Manella, Los Angeles, CA, Samuel Franklin Baxter, Attorney at Law, Marshall, TX, Babak Redjaian, Irell & Manella, Newport Beach, Newport Beach, CA, Garret Wesley Chambers, Kristi Jean Thomas, McKool Smith, Dallas, TX, for Defendant.

*ORDER*

CRAVEN, Magistrate J.

**\*1** Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Defendants' Motion to Stay (Docket Entry # 120) was referred to the Honorable Caroline M. Craven for the purposes of hearing and determining said motion. The Court, having considered the motion, response, and all relevant pleadings, is of the opinion the motion should be GRANTED.

I.

BACKGROUND

Plaintiff EchoStar Technologies Corporation ("Plaintiff") brings this cause of action against Defendants TiVo, Inc. ("TiVo") and Humax USA, Inc. ("Humax") (collectively "Defendants") alleging infringement, contributory infringement and/or inducement to infringe U.S. Patent No. 5,774,186 ("the '186 patent"), U.S. Patent No. 6,529,685 ("the '685 patent"), and U.S. Patent No. 6,208,804 ("the '804 patent"). Defendants generally deny these

allegations and assert various affirmative defenses, which include non-infringement, invalidity and inequitable conduct. Additionally, Defendants assert counterclaims against Plaintiff for a declaratory judgment of non-infringement and invalidity of the patents-in-suit.

In the present matter before the Court, Defendants move the Court for a **stay** of this action in light of patent **reexamination** proceedings before the United States Patent & Trademark Office ("PTO"). According to Defendants, on May 25 and 26, June 9, 2006, they filed requests for **reexamination** asking the PTO to reexamine and assess the patentability of all asserted claims of the three patents-in-suit. Defendants have requested an *ex partes* reexamination of the '186 and '804 patents and an *inter partes* **reexamination** of the '685 patent. Defendants assert substantial time and resources will be saved by staying the current proceedings in light of **reexamination** by the PTO.

II.

APPLICABLE LAW

"The district court has the inherent power to control its own docket, including the power to **stay** proceedings." *Soverain Software LLC v. Amazon.Com,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005). "The power to **stay** proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. In deciding whether to **stay** litigation pending **reexamination**, courts typically consider: "(1) whether a **stay** will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a **stay** will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Soverain,* 356 F.Supp.2d at 662. Essentially, courts determine whether the benefits of a **stay** outweigh the inherent costs based on these factors.

**\*2** Additionally, a **stay** has been found to benefit the district court proceedings upon the completion of a **reexamination**:
1. All prior art presented to the Court will have been first considered by the PTO, with its particular

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expertise[;]

2. Many discovery problems relating to prior art can be alleviated by the PTO examination[;]

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed[;]

4. The outcome of the reexamination may encourage a settlement without the further use of the Court[;]

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation[;]

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination[; and]

7. The cost will likely be reduced both for the parties and the Court.

*Fisher Controls Co.,* 443 F.Supp. at 582 (S.D.Iowa 1977); *accord Emhart Industries v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890, 1987 WL 6314 (N.D.Ill.1987); *GPAC, Inc. v. D.W.W. Enterprises, Inc.,* 144 F.R.D. 60, 63 (D.N.J.1992). As noted by the Federal Circuit, reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. *See Gould,* 705 F.2d 1340 (Fed.Cir.1983), *cert. denied* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court. *See Loffland Bros. Co. v. Mid-Western Energy Corp.,* 225 U.S.P.Q. 886, 887, 1985 WL 1483, at *2 (W.D.Okla. Jan.3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. *See Gould,* 705 F.2d at 1342.

III.

DISCUSSION

This case is the second patent infringement case concerning DVR technology to come before this Court involving the same parties. The first case, *TiVo, Inc. v. EchoStar Communications, et. al.,* C.A. No. 2:04-CV-1, was an infringement action in which Defendent TiVo sued Plaintiff for allegedly infringing on its patents covering DVR technology. That matter was tried before a jury and resulted in a verdict in favor of the plaintiff, Defendant TiVo. Notwithstanding, many issues remain unresolved in that case. To this end, Plaintiff asserts that "[a] stay would put [it] at a *huge tactical disadvantage* in the context of the overall litigation between the parties, and there is no just reason why this Court should not adjudicate [Plaintiff's] claims as expeditiously as it did [Defendant's]." Plaintiff's Response at 4 (emphasis original). In addition, Plaintiff contends

that a **stay** is not warranted based on the following: 1) Defendants failed to filed their requests for **reexamination** in a timely fashion; 2) the possibility of issue simplification is remote; and 3) discovery in this matter is near completion. Moreover, Plaintiff asserts that granting a **stay** is contrary to the law in this District.

**\*3** While recognizing the merits of Plaintiff's position, on balance, the Court finds that the equities weigh in favor of staying this matter pending **reexamination**. First, the Court is not persuaded that a **stay** would unduly prejudice Plaintiff. Although Plaintiff correctly notes that Defendants have not acted with dispatch in seeking **reexamination** and that Plaintiff has undoubtedly pursued an extremely burdensome discovery program, Plaintiff cannot say that its future costs associated with this litigation will be affected by the grant or denial of a **stay**. Further, the Court does not weigh in on the tactical effects on separate litigation. This matter stands on its own. Moreover, Plaintiff's argument is replete with one-sided supposition; it fails to consider the potential positive effects of a **stay**. To this end, Plaintiff's "tactical disadvantage argument" is without merit. The Court finds that staying this matter presents no clear tactical advantage for either party.

Further, Plaintiff fails to consider the potential effect of Defendants' *inter partes* **reexamination** request. The statute governing *inter partes* **reexamination** provides for full participation by a third party at all stages of the proceedings. *See* 35 U.S.C. § 311, *et. seq.* Unlike an *ex partes* reexamination, an *inter partes* reexamination allows the third-party requester "to file written comments addressing issues raised by the action of the Office or the patent owner's response thereto[.]" *Id.* at § 314(b)(2). In addition, the third-party requester may appeal to the Patent Board of Appeals and may appeal from the Board's decision to the Federal Circuit if the Board affirms a finding of patentability or reverses an examiner's finding of unpatentability. *Id.* at § 315(b)(1). Moreover, the third-party requester may participate as a party if the patent owner appeals to the court from an unfavorable decision regarding patentability. *Id.* at § 315(b)(2).

However, and of particular import here, the statute imposes estoppel restraints on a third-party requester. That is, a third-party requester is estopped from relitigating the same issue "which the third-party requester raised or could have raised during the *inter partes* reexamination proceedings." *Id.* § 315(c); *see also Middleton, Inc. v. Minnesota Mining and Mfg. Co.,* 2004 WL 1968669, *10 (S.D.Iowa, 2004). In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

addition, the third-party requester will be estopped from seeking review of factual determinations made in the *inter partes* **reexamination**. *Id.* Thus, an *inter partes* **reexamination** can have no other effect but to streamline ongoing litigation. For these reasons, courts have an even more compelling reason to grant a **stay** when an *inter partes* **reexamination** is proceeding with the same parties, which is precisely the case here.

In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, the grant of a **stay** will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims. And to the extent that claims survive the *inter partes* **reexamination**, Defendants will be precluded from challenging their validity in the same regard.

**\*4** Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, summary judgment motions have not been filed, and the Court has not completed its claim construction. It would be an egregious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the **reexamination** proceeding.

Third, a **stay** will simplify the issues. As previously alluded to, the Court finds this issue is the predominate consideration in this case. Having the benefit of a *Markman* hearing under its belt, the Court finds that **reexamination** in this case will greatly influence the proceedings going forward. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. But more importantly in light of the asserted scope of the claims at issue in this case, to the extent the reexamination proceeding reaffirm the claims at issue, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims. *See GPAC Inc., 144 F.R.D. at 63* (noting that the PTO "is in a better position to evaluate the [patent at issue]" and the prior art due to its "requisite technical acumen"); *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (underscoring the PTO's expertise in dealing with **reexamination**); *Loffland Bros., 225 U.S.P.Q. (BNA) 886, 887, 1985*

*WL 1483, at \*2 (W.D.Okla.1985)* (granting a **stay** and stating that the "expert view of the Patent Office examiner will certainly benefit this Court"); *see also Gould, 705 F.2d at 1342 (Fed.Cir.1983)* (noting that **reexamination** procedures provide the court with "the expert view of the PTO").

The Court is cognizant that a **stay** may cause considerable delay in a case set for trial in February 2007 and sensitive to Plaintiff's right to have its day in court. Nevertheless, for the reasons previously expressed, the Court is convinced that a **stay** is appropriate in this particular case. Further, the Court reminds Plaintiff that each motion to **stay** pending **reexamination** filed in this Court is considered on a case by case basis with each cause of action presenting distinct circumstances; there exists no policy or rule in this District to "routinely" deny such motions. What is more, this case presents an issue which distinguishes it from those cases cited by Plaintiff in that Defendants have requested an *inter partes* reexamination of one the patents at issue in this case. As the Court has pointed out, this will have a dramatic effect on future litigation. Lastly, the Court notes that if, after reexamination, Plaintiff's patents are again upheld, Plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed.Cir.1986)* (holding that upon reissue, the burden of proving invalidity is "made heavier") (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed.Cir.1985)*). To this end, and given the particular circumstances of this case, the court cannot find any undue prejudice to Plaintiff.

IV.

CONCLUSION

**\*5** Based on the foregoing, the Court finds that Defendants' motion to **stay** these proceedings pending **reexamination** of the patents-in-suit (Docket Entry # 120) should be granted. The Court finds a high likelihood that results of the PTO's **reexamination** will have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on **reexamination**, and Plaintiff will not be unduly prejudiced by the **stay**. Therefore, it is hereby

ORDERED that Defendants' Motion to **Stay** (Docket Entry # 120) is GRANTED. It is further

ORDERED that the Clerk of the Court shall remove this matter from the active docket of the Court until the conclusion of the PTO's **reexamination** proceeding, and Defendants shall promptly advise the Court of the conclusion of the **reexamination** proceedings. It is further

ORDERED that all pending motion not addressed herein are DENIED WITHOUT PREJUDICE subject to refiling.

E.D.Tex.,2006.
EchoStar Technologies Corp. v. TiVo, Inc.
Slip Copy, 2006 WL 2501494 (E.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, D. Arizona.

EVERYTHING FOR LOVE.COM, INC., a Nevada
corporation, Plaintiff,
v.
TENDER LOVING THINGS, INC., d/b/a The
Happy Company, a California corporation,
Defendant.
Tender Loving Things, Inc., d/b/a The Happy
Company, a California corporation, Counter-
claimant,
v.
Everything for Love.Com, Inc., a Nevada
corporation, Counter-defendant.
**No. CIV 02-2605-PHX-EHC.**

July 21, 2006.

Donald John Lenkszus, Donald J. Lenkszus PC,
Carefree, AZ, Victoria Gruver Curtin, Victoria
GruverCurtin PLC, Scottsdale, AZ.
A. Peter Rausch, Jr., Law Offices of a Peter Rausch
Jr., Stockton, CA, for Defendant and Counter-
claimant.
Peter Neil Greenfeld, Greenfeld Law Group, Francis
J. Burke, Paul E. Burns, Peter Burgess Swann,
Steptoe & Johnson LLP, Phoenix, AZ, David Hadi
Youssefi, Best Western INternational Inc. Corporate
Intellectual Property Counsel, for Counter-claimant.
EARL H. CARROLL, District Judge.
**\*1** Pending before the Court is Defendant Tender
Loving Things, Inc.'s (TLT) Motion to **Stay** Pending
**Reexamination** (Dkt.184) and Defendant TLT's
Motion to Set Mandatory Settlement Conference
(Dkt.197). The Motions are fully briefed.

### *Factual Background*

Plaintiff / Counter-defendant ("Plaintiff") is in the
business of selling, among other things, a head
massaging device as described in Patent 6,450,980
("Patent '980"), a patent held by Plaintiff. Plaintiff
alleges that Defendant / Counter-claimant
("Defendant") had infringed on Patent '980 by selling
the same device.

Plaintiff and Defendant, through their principals,
originally met at a trade show in July of 2000.
Plaintiff showed Defendant a massage device at the
trade show. Plaintiff told Defendant that a patent was
pending on the device, and asked if Defendant would
be willing to produce the device so that Plaintiff
could sell it. The parties entered into such an
arrangement: Defendant produced the massage

device and Plaintiff sold it.

Before Plaintiff met Defendant at the trade show,
Plaintiff had met third party Dwayne Lacey in 1999.
In 1998, Lacey had created and produced a head
massaging device and had obtained an Australian
patent for one incarnation of the device. In March of
1999, Plaintiff met with Lacey. Plaintiff proposed
that Plaintiff purchase Lacey's product for resale.
Lacey agreed. Plaintiff purchased 702 units of
Lacey's massage device on May 16, 1999 and another
702 units on May 29, 1999. On June 18, 1999, Lacey
filed a patent application with the United States
Patent and Trademark Office ("PTO") for a head
massage device.[FN1] On October 30, 2001, Lacey
acquired a U.S. patent on the device under Patent #
6,309,365 ("Patent '365").

> FN1. The parties dispute whether this device
> is similar to or the same as the device under
> the Australian patent.

On July 21, 2000, during the same month Defendant
met Plaintiff at the trade show, Defendant submitted
an application to the PTO for a patent on a head
massage device.

After Plaintiff and Defendant met at the trade show
and entered into their arrangement, various disputes
arose. The disputes devolved into three legal actions.
During this time, Defendant entered into a
relationship with Lacey, whose U.S. patent issued on
October 30, 2001, whereby Defendant began to
manufacture and sell a similar head massage device
under its own trademark under an exclusive patent
license arrangement with Lacey.

Plaintiff continued to sell its own device through
another manufacturer.

On January 23, 2002, Plaintiff, Defendant, and Lacey
entered into a settlement agreement. The agreement
provided that "[Defendant] will be the exclusive
manufacturer of head massage devices under U.S.
Patent # 6309365 ['365 Patent], for delivery to and
sale by [Plaintiff]." Plaintiff was to pay royalties to
both Defendant and Lacey.

After multiple applications (beginning on July 21,
2000),[FN2] Plaintiff was granted a U.S. patent on its
head massaging device. The patent issued on
September 17, 2002 under Patent # 6,450,980
("Patent '980"). The patent examiner had the 365
patent before him in considering Plaintiff's
application. Plaintiff is now suing for patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

infringement of the 980 patent.

FN2. On November 29, 2001, the Patent Examiner rejected claim 1 of the Plaintiff's application as "generic to a plurality of disclosed patentably distinct species" and required Plaintiff to elect a particular embodiment of the device.
On January 25, 2002, the Patent Examiner rejected most of the claims as anticipated by the 365 patent, or obvious in light of another patent unrelated to this case, stating that the 365 patent "shows all the structural and functional limitations [of Plaintiff's device] ... except for the particulars of the handle ."
On March 20, 2002, Plaintiff resubmitted the application, amending several claims, and stating that "the so-called handle portion shown and described in Lacey does not include a hollow body or an apertured end cap that is affixed to a hollow body."
On June 3, 2002, the Patent Examiner again reject the claims. Plaintiff submitted an amendment on June 11, 2002.
On June 24, 2002, the Patent Examiner issued his Notice of Allowance, which stated in an Amendment that the patent was allowed because "the prior art of record does not show flexible finger end portions being secured in the tubular body and the means for securing as substantially claimed by the applicant."
On September 17, 2002, the PTO issued the 980 patent to Plaintiff.

### Procedural Background

**\*2** On March 25, 2005, the Court granted in part and denied in part the parties' Motions for Summary Judgment. (Dkt.154.) The case was set for trial on August 30, 2005. On August 22, 2005, the Court held a pretrial conference. At that conference, the Court was advised that the parties were continuing to negotiate toward a settlement, and the trial was vacated. (Dkt.176.) When settlement discussions failed (Dkt.178), third party Dwayne Lacey decided to institute **reexamination** proceedings of Plaintiff's 980 patent at the Patent and Trademark Office. Defendant's Motion to **Stay**, p. 2 (Dkt.184.) The proceedings were initiated on February 14, 2006. The **reexamination** proceedings will determine if the 980 patent should be revoked or otherwise be declared invalid. On March 3, 2006, Defendant filed a Motion to **Stay** Pending **Reexamination**.

(Dkt.184.) The Motion is fully briefed.

### Discussion

Defendant argues that "if the PTO determines that the ['980] patent is invalid, there is no basis for the instant patent infringement suit." Motion to **Stay**, p. 5 (Dkt.184.) Plaintiff argues that the motion should be denied because it "is a tit-for-tat, part of a long-running dispute between [Plaintiff], [Defendant] and Mr. Lacey over the marketing of head massaging devices." Response, p. 1 (Dkt.187.) Plaintiff argues that the **reexamination** request is part of Defendant's effort "to evade its wholesale abdication of responsibility under this Court's scheduling orders by moving the dispute to a new forum, the PTO." Id. at 4. Further, Plaintiff argues, this case is four years old, discovery ended approximately two years ago, and delay will only advantage Defendant. Id. at 3. Defendant filed a Reply to the Motion arguing that, despite the delay it causes, **reexamination** will result in the ultimate simplification of issues when the 980 patent is declared invalid. Reply, p. 1 (Dkt.188.)

### Relevant Law

### Reexamination

Reexamination is a procedure, added in 1980,FN3 to provide a means whereby a patentee, or any member of the public, may ascertain whether a substantial new question of patentability can be raised against an issued patent on the basis of documentary prior art. Robert L. Harmon, Patents and the Federal Circuit, § 18.4 at 1067 (7th ed.2005). At the conclusion of reexamination, "the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307. Sections 307 and 252 of Title 35 shield those who have infringed on a patent later to be held invalid. If, during reexamination, the holder of the patent makes substantive changes to the original claims of the patent so that it may pass reexamination, there is an irrebuttable presumption that the original claims were materially flawed. Harmon, *supra at 1068.* Therefore, "the statute relieves those who may have infringed the original claims from liability during the period before the claims are validated." Id. However, "[u]nless a claim granted or confirmed upon reexamination is identical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Id.* Thus, if a claim is not changed during reexamination, and is later validated, then an infringer may still be liable for previous infringement. *Fortel Corp. v. Phone-Mate, Inc.,* 825 F.2d 1577, 1579-80 (Fed.Cir.1987). When reexamined claims are substantively identical, the claims have a " 'continuous effect' from the date of the original patent." *Id.* (internal citations omitted); *see also Laitram Corp v. NEC Corp.,* 163 F.3d 1342, 1346-47 (Fed.Cir.1998).

FN3. 35 U.S.C. § § 301-307.

**\*3** The Federal Circuit notes that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983).

The courts have inherent power to manage their dockets and **stay** proceedings, including the authority to order a **stay** pending conclusion of a PTO **reexamination**. Ethicon, *Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988). On the other hand, the Director does not have authority to **stay reexamination** proceedings pending the outcome of the district court infringement litigation. *Id.* Once the PTO undertakes to reexamine a patent, it shall do so with "special dispatch" (35 U.S.C. § 305) and cannot otherwise be compelled to cease **reexamination**.

### Effect on this case

If this Court finds that Defendant infringed on Plaintiff's 980 patent and the PTO later holds that the 980 patent is invalid, Defendant might nevertheless be left with an outstanding court judgment. In *Standard Havens Products Inc. v. Gencor Industries, Inc.,* the court addressed this issue:

Defendant argues that if the PTO's reexamination determination [that the patent is invalid], which is on appeal in a parallel action being prosecuted in another district, is affirmed in the form of a final judgment then the patent at issue in this case would be void ab initio, thereby removing the basis for this Court's judgment on the patent infringement. As a result, defendant urges this Court's judgment would become a nullity. Such a result would squarely confront the traditional concepts of res judicata, collateral estoppel, law of the case and finality, as

understood by this Court. Indeed, defendant does not cite, and this Court could not find, a single controlling case that would compel such a result. In this case, this Court returned a plaintiff's verdict. The appellate court affirmed this Court as to the issues of patent validity and infringement. It remanded the matter to this Court solely for the purpose of determining the appropriate amount for damages. The issues of patent validity and infringement have been finally decided as to this case. This Court apprehends of no case or rule of law that holds that a final judgment in a separate lawsuit, in a separate jurisdiction, which may or may not be rendered at some undetermined point in the future would control and, indeed, void this Court's judgment in this case.

810 F.Supp. 1072, 1075-76 (W.D.Mo.1993).

The Federal Circuit reversed in a non-precedential opinion:

The district court incorrectly concluded that the **reexamination** decision can have no effect on this infringement suit even if the **reexamination** decision becomes final. As a matter of law, however, and as both parties agree, if the **reexamination** decision of unpatentability is upheld in the court action under 35 U.S.C. § 145 (1988), the injunction would thereby immediately become inoperative. In addition, if a final decision of unpatentability means the patent was void ab initio, then damages would also be precluded. Therefore, the injunction should have been stayed. Thus in either event, contrary to the assumption of the trial court, the **reexamination** proceeding "would control" the infringement suit.

**\*4** *Standard Havens Prods. v. Gencor Indus.,* 27 U.S.P.Q.2d 1959, 1960 (Fed.Cir.1993). In *Ultrak Inc. v. Radio Engineering Industries, Inc.,* in the Northern District of Texas, an accused infringer (the defendant) moved for a **stay** of proceedings. The defendant argued that even though the judgment was final, it should be stayed pending the **reexamination**. The accused infringer cited "two cases where courts have granted **stays** of litigation pending resolution of **reexamination** proceedings-*Bausch & Lomb, Inc. v. Alcon,* 914 F.Supp. 951 (W.D.N.Y.1996) and *Standard Havens Prods ., Inc. v. Gencor Inds., Inc.,* 996 F.2d 1236 (Fed.Cir.1993) (non-precedential opinion)." 52 U.S.P.Q.2d 1530 (N.D.Tex.1999). The Texas court distinguished those cases: "However, in both cases the infringement litigation was then pending and the validity of the patents was directly in issue. Furthermore, Standard Havens, is a non-precedential opinion and only addressed the issue in *dicta.* In contrast, in the instant case there is no pending validity or infringement litigation...." *Id.* In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Bausch & Lomb, Inc. v. Alcon,* the Western District of New York stayed court proceedings pending the PTO's **reexamination** of a patent, noting that "one possible scenario could result in irreparable harm to Alcon: if this Court finds that the 607 [patent] is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B & L for such infringement, then Alcon would have no ability to recover those damages if at a later date the PTO determined that the 607 patent is invalid." 914 F.Supp. at 952. The *Bausch & Lomb* court continued:Because a finding by this Court that the 607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. No only would such a scenario cause Alcon significant harm (as noted above) but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the **reexamination** is to be conducted "with special dispatch" (35 U.S.C. § 305), I find that a short **stay** of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.

914 F.Supp. at 953.

In this case, the issue to be decided by the Court is whether Defendant infringed on Plaintiff's 980 patent and whether the 980 patent should otherwise be declared invalid.[FN4] If Plaintiff acquires a judgment against Defendant for infringement, and the 980 patent is subsequently held invalid by the PTO, there exists the possibility of irreparable harm to Defendant as noted above. The PTO is considered to have expertise in deciding issues of patentability and is in a better position to evaluate the validity of the 980 patent. Other courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.[FN5] While this case is mature, the Court finds that Defendant has not abused the **reexamination** process in an attempt to delay trial proceedings. Because of the potential for irreparable injury to Defendant, and because of the PTO's expertise in the matter, the Court will grant the **stay**.

FN4. *See* Defendant's Answer / Counterclaim, p. 15 (Dkt.13), Order on Motions for Summary Judgment (Dkt.154.)

FN5. *See, e.g., Bausch & Lomb Inc.,* 914 F. *American,* 18 U.S.P.Q.2d 1496, (C.D.Cal.1991); (N.D.Ga.1991); *Emhart Indus. v. Sanky Seik Mfg.,* 3 U.S.P.Q.2d 1889 (N.D.Ill.1987).

### *Defendant TLT's Motion to Set Mandatory Settlement Conference*

**\*5** On April 25, 2006, Defendant filed a Motion to Set Mandatory Settlement Conference. (Dkt.197.) Defendant argues that despite the fact that there has already been a settlement conference in this case, a mandatory settlement conference should be ordered nevertheless. Defendant argues that because circumstances have changed since the last settlement conference, settlement would more likely be achieved in another settlement conference. Motion, p. 2 (Dkt.197.) On May 10, 2006, Plaintiff filed its Response to the Motion. (Dkt.199.) Plaintiff "does not oppose the request for a settlement conference by defendant if said request does not further delay a trial setting in this matter." Response, p. 1 (Dkt.199.) Plaintiff stated further that "[t]he parties are presently engaged in serious settlement negotiations without the assistance of the Court." *Id.*

The Court will accommodate parties who are willing to engage in a settlement conference. If the parties wish to participate in a settlement conference, they are advised to file a Notice with the Court indicating as much, and a District or Magistrate Judge will be assigned for those purposes.

Accordingly,

**IT IS ORDERED GRANTING** Defendant's Motion to **Stay** Pending **Reexamination**. (Dkt.184.) The parties are to advise the Court when **reexamination** proceedings have concluded.

**IT IS FURTHER ORDERED DENYING** Defendant's Motion for Mandatory Settlement Conference. (Dkt.197.)

**IT IS FURTHER ORDERED DENYING** Plaintiff's pending Motion in Limine without prejudice. (Dkt.173.)

D.Ariz.,2006.
Everything For Love.com, Inc. v. Tender Loving Things, Inc.
Slip Copy, 2006 WL 2091706 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, D. Delaware.

GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
**No. C.A. 99-375 GMS.**

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon LLP, Wilmington, DE, James G. Goggin, Verrill & Dana LLP, Portland, Maine, for Plaintiff, of counsel.
Robert W. Whetzel, Chad M. Shandler, Richards, Layton & Finger, Wilmington, DE, Peter E. Heuser, David A. Fanning, Charles H. DeVoe, Kolisch, Hartwell, Dickinson, McCormick, & Heuser, Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.

**\*1** On June 11, 1999, the plaintiff, Gioello Enterprises Ltd. ("Gioello"), filed a complaint against Mattel, Inc. ("Mattel") claiming infringement of U.S. Patent 4,546,434 (the " '434 patent"). Mattel answered and filed a counterclaim which Gioello, in turn, answered. Both parties filed motions which are currently pending. Mattel filed a request with the U.S. Patent and Trademark Office (the "PTO") on November 9, 2000 for a reexamination of claims 1-3 of the '434 patent. The PTO granted Mattel's request on December 21, 2000, and issued a schedule for statements from the parties (D.I.104). Currently before the court is Mattel's motion to stay proceedings pending reexamination (D.I.84).[FN1] Upon consideration of the parties' submissions, the court will grant Mattel's motion and stay the proceedings until further notice.

> FN1. Although Mattel filed its motion before the PTO granted its request, the court will consider the PTO's actions.

In deciding whether to stay the proceedings, the court's discretion is guided by the following factors: (1) whether a stay would unduly prejudice Gioello or present a clear tactical advantage for Mattel, (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set. *See Xerox Corp v. 3Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (stating a similar test).

The PTO's recent decision to reexamine the '434 patent will simplify the issues in this case and focus the litigation. Numerous courts have cited a number of advantages of granting a stay pending PTO reexamination: (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court. *See, e.g., Braintree Laboratories, Inc., Civ. A. No. 96-2459-JWL, 1997 WL 94237,* at \*9 (D.Kan. Feb. 26, 1997); *Hamilton Indus. v. Midwest Folding Products Mfg., Civ. A. No. 89-C-8689, 1990 WL 37642,* at \*1- \*2 (N.D.Ill. March 20, 1990) (citing cases). All of these potential advantages are present, to some degree, if the court imposes a stay of the proceedings pending the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions. Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001.[FN2] Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions. As one court noted:

> FN2. The PTO's order of December 21, 2000 states that Gioello has up to two months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001-16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

**\*2** ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims. *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See* Hamilton, 1990 WL 37642, at *2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. § § 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice.[FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on

invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

D.Del.,2001.
Gioello Enterprises Ltd. v. Mattel, Inc.
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

END OF DOCUMENT

United States District Court, D. South Carolina, Spartanburg Division.

HUBBELL INCORPORATED, Plaintiff,
v.
GENLYTE GROUP INCORPORATED and Genlyte Thomas Group LLC, Defendants.
**C.A. No. 7:05-2765-HMH.**

May 22, 2006.

William Y. Klett, III, Nexsen Pruet Jacobs and Pollard, Columbia, SC, for Plaintiff.

William Alexander Coates, Roe Cassidy Coates and Price, Greenville, SC, George P. McAndrews, James R. Nuttall, Matthew A. Anderson, McAndrews Held and Malloy, Chicago, IL, for Defendants.

### OPINION AND ORDER

HENRY M. HERLONG, JR., District Judge.

**\*1** This matter is before the court on the Defendants' motion to **stay** this action pending **reexamination** of the patent in suit by the United States Patent and Trademark Office ("PTO"). After careful review of the record and the applicable law, the court grants the Defendants' motion to **stay**. *See, e.g., Slip Track Sys., Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1340 (Fed.Cir.1998) ("In many instances it is appropriate for a district court to **stay** a patent case pending the outcome of a PTO proceeding."); *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and **stay** proceedings, including the authority to order a **stay** pending conclusion of a PTO **reexamination**." (Internal citation omitted)).

It is therefore

**ORDERED** that the Defendants' motion to stay, docket number 19, is granted.

**IT IS SO ORDERED.**

D.S.C.,2006.
Hubbell Inc. v. Genlyte Group Inc.
Slip Copy, 2006 WL 1431967 (D.S.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, N.D. Illinois, Eastern Division.

BEN INGRO, Plaintiff,

v.

TYCO INDUSTRIES, INC., SEARS ROEBUCK AND CO., MONTGOMERY WARD & CO., INC., SPIEGEL ORDER STORES, INC., VENTURE STORES, INC., OSCO DRUG, INC., TOYS 'R' US, INC., K MART CORPORATION, CIRCUS WORLD TOY STORES, INC., SERVICE MERCHANDISE COMPANY, INC., ZAYRE CORP., WIEBOLDT STORES, INC., CHILDREN'S PALACE, INC., J. C. PENNEY COMPANY, INC., HOUSEHOLD MERCHANDISING, INC., and McDADE & COMPANY, Defendants.
**No. 84 C 10844.**

May 31, 1985.

MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

**\*1** In December of 1984, plaintiff Ben Ingro filed a complaint against Tyco Industries, Inc. and fifteen of its customers alleging infringement of plaintiff's patent, U. S. Patent 3,810,515. On or about January 23, 1985, Tyco filed a request for reexamination of the patent with the U. S. Patent and Trademark Office (PTO); on April 5, 1985, the PTO granted the request on the grounds that it raised a substantial new question of patentability affecting all claims of the patent. In the meantime, on February 12, 1985. Tyco filed a motion to stay the proceedings in this litigation pending a final determination in the reexamination proceedings. For the following reasons, Tyco's motion will be granted.

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U. S. patent. A request for such a reexamination must be based upon prior art patents or publications which raise 'a substantial new question of patentability.' Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to

do so 'with special dispatch.' 37 C.F.R. § 1.550(a).

Determining the desirability of staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO an issue, patent claim validity, involved in the dispute before the district court. As Chief Judge Markey, writing for the Court of Appeals for the Federal Circuit noted:

One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding). Early versions of what became the reexamination statute (citation omitted) expressly provided for a stay of court proceedings during reexamination (citation omitted). An express provision was deemed unnecessary, however, as explained in the House report:

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner. (Original emphasis) (Citations omitted)

Gould v. Control Laser Corp., 705 F.2d 1340 (F. Cir. 1983).

**\*2** Moreover, as an Oklahoma district court has noted:

Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts. Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation. Yet, in cases . . . which have not progressed beyond the initial litigation stages and in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized.

Digital Magnetic Systems, Inc. v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982). Although the present case is in its initial stages (only a single interrogatory and three production requests have been served), and plaintiff has the adequate remedy of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

money damages if his patent is found to be valid and infringed, plaintiff objects to a stay of the proceedings on nine grounds.

Three of plaintiff's objections to a stay have recently been considered and rejected by the Federal Circuit Court of Appeals, which, as of October 1, 1982, has had exclusive appellate jurisdiction over all patent infringement cases; a fourth objection has been rendered moot by the PTO's granting Tyco's request for reexamination. Three of plaintiff's objections allege constitutional infirmities with the reexamination proceedings; these objections have now been answered by the Federal Circuit Court of Appeals' holding in Patlex Corp. v. Mossinghoff, No. 84-699 (F. Cir. March 7, 1985). There, the Federal Circuit affirmed the decision of the district court that 35 U.S.C. § § 301-307, the reexamination statutes, do not violate the Fifth Amendment, the Seventh Amendment, or Article III. Plaintiff has also protested that Tyco's requested stay is premature, since the request for reexamination had not been granted as of the time plaintiff responded to the motion. Defendants' request was granted on April 5, 1985, however, and thus, plaintiff's objection of prematurity is now moot.

A fifth objection plaintiff makes to the motion for a stay is the allegation that Tyco made the request for reexamination to harass plaintiff and to delay the litigation unduly and unreasonably. The evidence does not support plaintiff's allegation. Tyco explains that although plaintiff invited Tyco on April 5, 1984, to institute reexamination proceedings and indicated that plaintiff would then defer to the PTO, Tyco chose not to institute reexamination proceedings at that time since additional negotiations continued to occur between the parties. Tyco also contends that it had hoped plaintiff would be persuaded by Tyco's position that the new prior art not previously considered by the PTO invalidated the patent, and Tyco had hoped to avoid the expenses involved in a request for reexamination. Tyco's explanation is buttressed by the fact that after Tyco initially identified to plaintiff the prior art not previously considered by the PTO, plaintiff later disclaimed claims 1 and 2 of his patent.

**\*3** Tyco also points out that in response to K Mart Corporation's Interrogatory No. 1, plaintiff indicated that it 'became aware of K Mart's infringing use and sale of his patented magnetic car' as early as 1977 and confirmed such sales each year since 1977. Nevertheless, plaintiff waited to commence litigation almost seven years after his first knowledge of alleged infringement and almost six years after the alleged first contact between plaintiff and Tyco. The court agrees that especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings, which on the average involve 15.9 months from filing date to termination in the PTO, will constitute neither undue nor unreasonable delay. (Reexamination Filing Data, Defendant's Exhibit B). Plaintiff's concern that Tyco or the other defendants may file multiple requests for reexamination for the purpose of delay if the current request is denied is also unwarranted; this court can later modify or vacate the stay if it is abused.

Plaintiff's initially most appealing argument against a stay is entitled 'Proof of Damages Becomes Stale' and alleges that if discovery must wait until the termination of the reexamination proceedings, Ingro 'will have lost the opportunity to collect necessary documents from the various defendants and third parties.' However, as Tyco points out, seeking discovery relating to proof of damages from defendants at this point in the litigation would be premature until after discovery on liability has been conducted. Plaintiff's claimed need 'to go back to 1970 to prove prior invention over some of the cited patents' will probably not require discovery of others, and defendants have pledged to make every effort to retain existing records relating to the manufacture, use, and sale of the products involved in this litigation. Tyco has also indicated that because of Aurora Products of Canada, Ltd.'s alleged liquidation, Tyco would not object to plaintiff's attempt to obtain from Aurora relevant documents and the identification of prospective witnesses. Because of the time, effort, and expense involved in discovery of damages and other issues involving the named defendants and third parties other than Aurora, however, such other discovery should await the outcome of the reexamination proceedings.

Plaintiff's next argument, that summary judgment would be a superior alternative to a stay of the proceedings, makes little sense. As Tyco points out, plaintiff argues inconsistent positions; on one hand, he argues that the obviousness test as applied to the patented invention is simple, indicating that no genuine issues of material fact exist; on the other hand, he contends that experts may be necessary to set forth or assess the facts and seeks a trial by jury of the 'difficult issues of obviousness.' Moreover, a motion for summary judgment is neither pending nor believed to be appropriate at the present time.

Contrary to plaintiff's next argument against a stay, that only patent holders lose during reexamination

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceedings, plaintiff's patent probably will be enhanced if it is recertified in the reexamination proceedings. As the Federal Circuit has stated with respect to a successful reissue application:
**\*4** [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain-a fact likewise to be taken into account by the trial judge.

American Hoist v. Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1354 (Fed. Cir. 1984). Futhermore, if the patent is upheld upon reexamination, plaintiff may recover from any who have infringed in the interim.

Finally, rather than a stay pending reexamination running counter to the reexamination statutes' legislative history, such legislative history indicates Congress and the testifying witnesses approved of courts liberally granting stays within their discretion. As the Federal Circuit recently stated:
The bill's proponents foresaw three principal benefits [of the reexamination legislation]. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. See Senate Hearings at 1, wherein Senator Bayh said that reexamination would be 'an aid' to the trial court 'in making an informed decision on the patent's validity'. Third, reexamination would reinforce 'investor confidence in the certainty of patent rights' by affording the PTO a broader opportunity to review 'doubtful patents'. 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).
When Congress voted the reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve. Congress, without apparent objection, applied the legislation to all unexpired patents.

Patlex Corp., v. Mossinghoff, No. 84-699, slip. op. at 15-16 (F. Cir. March 7, 1985).

Accordingly, for the foregoing reasons, Tyco's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, will be granted.

It is so ordered.

Ingro v. Tyco Industries, Inc.
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, N.D. California.

KLA-TENCOR CORPORATION, a Delaware
corporation, Plaintiff,

v.

NANOMETRICS, INC., a California corporation,
Defendant.
**No. C 05-03116 JSW.**

March 16, 2006.

Michael N. Edelman, Michael H. Kalkstein, Ben S.
Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto,
CA, for Plaintiff.
Peter H. Kang, Matthew Laurence McCarthy, Teague
I. Donahey, Sidley Austin LLP, San Francisco, CA,
for Defendant.

ORDER GRANTING DEFENDANT'S MOTION
TO STAY ALL PROCEEDINGS PENDING
REEXAMINATION OF PATENTS-IN-SUIT
JEFFREY S. WHITE, J.

**\*1** Now before the Court is Defendant Nanometrics,
Inc.'s ("Nanometrics") Motion to Stay Proceedings
Pending Reexamination of Patents-in-Suit. Having
considered the parties' pleadings, relevant legal
authority, and the parties' arguments at the hearing on
this matter, the Court HEREBY GRANTS
Defendant's motion and STAYS ALL
PROCEEDINGS with respect to all patents-in-suit.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"),
the assignee of United States Patents Nos. 6,483,580
("the '580 patent") and 6,590,656 ("the '656 patent"),
brought this action claiming that Nanometrics had
infringed these patents by manufacturing, offering for
sale and/or selling six devices, including but not
limited to the Atlas metrology system and/or other
metrology systems. (Declaration of Michael N.
Edelman in Support of KLA-Tencor's Opposition to
Stay ("Edelman Decl."), Ex. A at 2-3; Declaration of
Edward V. Anderson in Support of Motion to Stay
Pending Reexamination ("Anderson Decl. 1"), Ex. A
at 1.) KLA-Tencor then filed a first amended
complaint adding a cause of action for infringement
of United States Patent No. 6,611,330 ("the '330
patent"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have
propounded, and one has responded to, their first set
of requests for production of documents. (*See*

Declaration of Edward V. Anderson in Support of
Motion to Stay and *Ex Parte* Motion to Shorten Time
("Anderson Decl. 2"), Ex. 4; *see also* Edelman Decl.,
Exs. L-N.) The tutorial has been set for August 22,
2006, but no trial date has yet been set. Magistrate
Judge Spero has established a schedule for an
exchange of discovery plans and a date and time for a
discovery conference. Neither claim construction
briefing nor discovery has occurred on the '330 patent
infringement cause of action that KLA-Tencor has
recently added.

On December 21, 2005, the United States Patent &
Trademark Office ("PTO") granted Nanometrics's
requests for reexamination of the '580 patent and the
'656 patent. (Anderson Decl. 2, Exs. 1, 2.) On
February 21, 2006, Nanometrics filed a request for
reexamination of the '330 patent with the PTO.
(Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant
motion. Nanometrics moves the Court for a stay of
all proceedings, including the litigation as to the '330
patent infringement cause of action, pending the
reexamination of the '580 and '656 patents. (Mot. at
2.) KLA-Tencor urges this Court to deny
Nanometrics's motion on the following grounds: (1) a
stay should not be entered where the reexamination
does not implicate all patents-in-suit; (2)
considerations of judicial efficiency militate in favor
of permitting discovery on the infringement of all
patents-in-suit; (3) a stay would substantially
prejudice KLA-Tencor and unnecessarily delay the
action given the slow pace of PTO reexamination
proceedings; and (4) a stay would put KLA-Tencor at
a clear tactical disadvantage.

ANALYSIS

A. Legal Standards Applicable to a Motion to Stay
Proceedings Pending Reexamination.

**\*2** The patent reexamination statute provides in
pertinent part that "[a]ny person at any time may file
a request for reexamination by the [PTO] of any
claim of a patent on the basis of any prior art cited
under the provisions of section 301." 35 U.S.C. §
302. The PTO must "determine whether a substantial
new question of patentability affecting any claim of
the patent concerned is raised by the request...." 35
U.S.C. § 303(a). The reexamination statute further
provides that "[a]ll reexamination proceedings ...
including any appeal to the Board of Patent Appeals
and Interferences, will be conducted with special

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

dispatch." 35 U.S.C. § 305.

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004) (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983)*). When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp.,* No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F.Supp. 1378, 1381 (N.D.Cal.1994).*

B. The Early Stage of the Litigation Weighs in Favor of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F.Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. (*See* Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.) Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the '330 patent-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics,* 33 U.S.P.Q.2d at 2023.

C. A Stay Will Not Unduly Prejudice KLA-Tencor.

**\*3** In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at *7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. *Rohm and Haas Co. v. Brotech Corp.,* 24 U.S.P.Q.2d 1369, 1372 (D.Del.1992). However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework." *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D.Del. May 14, 2003).* Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. *See id.* Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. *See id.* Under such circumstances, the delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *See id.*

As a result, courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at *7. KLA-Tencor has failed to show, beyond the delay implicit in the reexamination process, how it would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. In particular, the Court finds no evidence of dilatory tactics on Nanometrics's part in seeking reexamination at this early stage of the litigation. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F.Supp. 1126, 1128 (S.D.Tex.1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, KLA-Tencor filed its complaint on August 1, 2005, the PTO granted Nanometrics's requests to reexamine the '580 and '656 patents on December 21, 2005, and Nanometrics filed its motion to stay proceedings on January 6, 2006. (Edelman Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In addition, KLA-Tencor filed a stipulation and proposed order seeking to add the '330 patent on January 26, 2006, and Nanometrics filed a request for reexamination of the '330 patent on February 21,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006. (Nanometrics, Inc.'s Notice of New Authorities, Ex. A.) This does not evince dilatory motives. Furthermore, KLA-Tencor will be fully compensated for delays if it prevails at reexamination and trial. *See Brown v. Shimano Am. Corp.,* 18 U.S.P.Q.2d 1496, 1496 (C.D.Cal.1991). Thus, because a stay will not unduly prejudice KLA-Tencor, this factor also weighs in favor of granting a stay.

### D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

**\*4** The PTO is currently reexamining two of the three patents-in-suit and reviewing Nanometrics's request for reexamination of the third patent-in-suit. (Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of New Authorities, Ex. A.) Statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases. *Rohm and Haas,* 24 U.S.P.Q.2d at 1372. These statistics "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *Id.* This is because "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the court with the opinion of the PTO and clarifying the scope of the claims." *Target Therapeutics,* 33 U.S.P.Q.2d at 2023; *see also Pegasus,* 2003 WL 21105073, at * 1-2 (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted. In *Methode,* for example, the court stayed the litigation of both the reexamined and non-reexamined patents because the issues regarding the non-reexamined patent "may be narrowed or amended as a result of the PTO's decision." *Id.* Moreover, the *Methode* court stayed the litigation of both the reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action of the two patents. *Id.* If the court stayed the litigation with respect to the reexamined patents-in-suit only, duplicative discovery could have resulted because

there were likely to be common documents and witnesses in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determined yet whether it will reexamine the '330 patent, a stay of the entire suit is warranted because the reexamination of the '580 and '656 patents may significantly affect the litigation of the '330 patent. First, at the hearing on the instant motion, KLA-Tencor conceded that it accuses the same Nanometrics products of infringement of all three patents-in-suit. Second, Nanometrics argued at the hearing on this matter, and KLA-Tencor did not dispute, that the only real difference in discovery would involve the deposition of the different inventor of the '330 patent. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface of the sample" language of claim 28 of the '330 patent overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the '580 patent. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

**\*5** Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a stay would not preserve many resources." *Id.* at 6.

Here, the only claims in the case are for patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the '580 and '656 is warranted.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending

reexamination of the '580 and '656 patents.

CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the '580 and '656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the '330 patent and the reexamination proceedings for the '330 patent extend beyond those for the '580 and '656 patents, the Court will entertain a motion extend the stay at that time.

IT IS SO ORDERED.

N.D.Cal.,2006.
KLA-Tencor Corp. v. Nanometrics, Inc.
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, S.D. Iowa, Central Division.

MIDDLETON, INC., Plaintiff,
v.
MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant.
**No. 4:03-CV-40493.**

Aug. 24, 2004.

Donald William Rupert, Mayer Brown Rowe & Maw LLP, Joseph A. Grear, George C. Summerfield, Keith A. Vogt, Stadheim & Grear, Jonathan G. Bunge, Bunge Law Firm PC, Chicago, IL, Suzanne J. Levitt, Des Moines, IA, for Plaintiff and Counter-Defendant. Daniel L. Hartnett, Crary Huff Inkster Hecht & Sheehan PC, Soux City, IA, David M. Swinton, Ahlers & Cooney PC, Des Moines, IA, William A. Streff, Jr., David Kenneth Callahan, Mary E. Zaug, Karen J. Nelson, Kirkland & Ellis LLP, Chicago, IL, Kevin H. Rhodes, 3M Innovative Properties Company, St. Paul, MN, for Defendant and Counter-Claimant.

ORDER GRANTING DEFENDANT'S MOTION TO STAY

GRITZNER, J.

**\*1** This matter is before the Court on Defendant's Motion to Stay (Clerk's No. 170). Defendant brought the motion as a result of a recently granted reexamination [FN1] of the patent-in-suit by the Patent and Trademark Office ("PTO"). Based on Defendant's request for expedited relief, an oral hearing was held on Friday, August 13, 2004, via telephone. Attorney George C. Summerfield appeared on behalf of the Plaintiff; attorneys David Callahan and Karen Nelson appeared on behalf of the Defendant. Following the hearing, the Court took the matter under advisement and finds Defendant's motion is now fully submitted and ready for ruling.

> [FN1.] While the PTO officially granted an *inter partes* reexamination, counsel for Defendant noted at the hearing that this was clerical error, and the PTO is in the process of rectifying the mistake. The reexamination must necessarily be *ex parte* due to the age of the patent at issue. This change has no effect on the parties' arguments or the Court's analysis of the motion to stay.

PROCEDURAL HISTORY AND BACKGROUND

FACTS

The Plaintiff, Middleton, Inc. ("Middleton"), commenced this action against the Defendant, Minnesota Mining and Manufacturing Co. ("3M"), in the United States District Court for the Northern District of Illinois, Chicago Division, on October 17, 1996. After much litigation activity in that district, the Honorable James F. Holderman of the Northern District of Illinois transferred the action to this Court on August 29, 2003. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1338(a), as this case arises under the federal patent laws, 35 U.S.C. § § 101 et seq.

The lawsuit alleges infringement of a patent held by Middleton, specifically, U.S. Patent No. 4,944,514 ("the '514 patent"), by 3M. Trial is scheduled for the week beginning October 12, 2004. The Court also has three summary judgment motions pending. The first motion was filed by Middleton and pertains to infringement. The second and third motions, filed by 3M, pertain to validity and infringement, respectively. 3M filed an application for reexamination [FN2] and learned on July 26, 2004, that the PTO had granted the request. The pending reexamination prompted the current motion to stay, which Middleton has resisted.

> [FN2.] Out of courtesy, 3M made the Court aware of its pending application for reexamination. While the PTO was making its decision, the present action moved forward in accordance with the scheduling order.

ANALYSIS

3M has moved to stay this matter based on the PTO's granted reexamination of the patent-in-suit. This case has a long and convoluted history even before the present circumstances giving rise to this motion. Prior to even coming to rest before this Court, this action proceeded from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times. Now, the present motion comes after eight years of litigation and with just over two months remaining before trial. Middleton resists the motion based primarily on the short time left before trial and the delay in seeking reexamination. Middleton also contends 3M lacks the authority to even bring the pending motion.

Briefly, the PTO recently granted [FN3] 3M's request for

reexamination of the '514 Patent based on the determination that the multiple independent prior art references identified by 3M in its application "raised substantial new questions of the patentability of claims 4-7," the patent claims at issue in the present infringement action.[FN4] Based upon this determination, 3M contends "[i]t is now highly likely that the PTO will either declare these claims of [the '514 Patent] invalid, or require Middleton to narrow the claims to avoid the prior art references." *See Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.,* 2004 WL 422697, at *2 (N.D.Ill. March 4, 2004) ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope.").[FN5] 3M contends the result of the reexamination could end or dramatically impact the remaining issues in this case, especially considering the PTO found all 13 references cited in the reexamination patent, either alone or in combination, relevant to patentability. Therefore, 3M requests the Court stay all proceedings in this case pending the outcome of the reexamination by the PTO. Specifically, 3M argues the stay should be granted because this will allow for the most efficient use of the Court's resources, it will simplify the issues for trial, and it will not unduly prejudice Middleton.

FN3. The determination was mailed by the PTO on July 19, 2004, and received by 3M on July 26, 2004.

FN4. The prior art references identified by 3M consist of the following: U.S. Patent No. 3,785,102 ("Amos"); U.S. Patent No. 4,151,319 ("Sackoff"); U.S. Patent No. 4,543,765 ("Barrett"); U.S. Patent No. 4,328,274 ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); U.S. Patent No. 3,665,543 ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); U.S. Patent No. 3,788,941 ("Kupits"); U.S. Patent No. 2,987,103 ("Yakubik"); U.S. Patent No. 4,221,620 ("Milne"); U.S. Patent No. 4,095,340 ("Kingsley"); and U.S. Patent No. 4,115,917 ("Charon").

FN5. "Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prods., Inc.,* 2004 WL 422697, at *2.

A. Statutory Authority to Request a Stay

**\*2** Middleton first argues that 3M lacks the statutory authority to request a stay. Middleton bases this assertion on an examination of the statues governing patent reexamination. Pursuant to section 318 of the Patent Statute,

Once an order for *inter partes* reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

35 U.S.C. § 318 (emphasis added).

Middleton claims this section clearly limits the rights set forth to those of the patent owner. In contrast, section 311 of the Patent Statute provides that "*[a]ny person* at anytime may file a request for *inter partes* reexamination...." 35 U.S.C. § 311(a) (emphasis added). When Congress uses different terms in a statute, the presumption is that those terms have different meanings. *See Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 497, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Therefore, according to Middleton, while "any person" may file an *inter partes* reexamination request, only "the patent owner" may seek a stay of litigation once such a request is granted.

Further, courts generally refer to Federal Rule of Civil Procedure 1 ("Rule 1"), allowing for "the just, speedy, and inexpensive determination of every action," when reciting their authority to grant a stay of proceedings. *See, e.g.,* W. *Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis,* 138 F.Supp.2d 1015, 1029 (W.D.Tenn.2000). Regulations cannot, however, trump the plain language of conflicting statutes. *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 709 (11th Cir.1998) (quoting *Robbins v. Bentsen,* 41 F.3d 1195, 1198 (7th Cir.1994)); *see also Caldera v. J.S. Alberici Constr. Co.,* 153 F.3d 1381, 1383 n.* * (Fed.Cir.1998) (finding that "[s]tatutes trump conflicting regulations"). Because the relevant statute provides that "the patent owner" can ask for a stay in the event of an *inter partes* reexamination, Middleton contends that Rule 1 does not give the Court the broader authority to grant such a request by 3M, which is not the patent owner.

This contention is easily resolved as Middleton disregards the Court's inherent discretionary power to issue a stay. *See Softview Computer Prods. Corp. v. Haworth, Inc.,* 2000 WL 1134471, at *2 (S.D.N.Y.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aug.10, 2000) (finding "there is no question that a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding") (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)); *see also Robert H. Harris Co. v. Metal Mfg. Co.*, 1991 WL 217666, at *3 (E.D.Ark. June 21, 1991) ("Whether the action should be stayed pending the outcome of the reexamination proceeding before the PTO resides in the discretion of the court."). The Court has this discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district court proceedings. *Softview Computer Prods. Corp.*, 2000 WL 1134471, at *2 (citations omitted); *see also Grayling Indus., Inc. v. GPAC, Inc.*, 1991 WL 236196, at *1 (N.D.Ga. March 25, 1991) ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place, while not vested expressly in the discretion of the district court by the statute, has been recognized to be within the district court's inherent discretionary power.").

**\*3** As the courts have recognized, "Congress stated its approval of district courts liberally granting stays within their discretion" when the committee stated " '[i]t is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court* ....' " *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 1987 WL 6314, at *2 (quoting H.R.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Ad. News 6460, 6463 (emphasis added)); *see also Fisher Controls Co. v. Control Components Inc.*, 443 F.Supp. 581, 581 (S.D.Iowa 1977) ("The district court's power to stay proceedings has been drawn purposefully broad and is discretionary."). Indeed, "[c]ourts have routinely stayed infringement actions pending the outcome of reexamination proceedings," *Softview Computer Prods. Corp.*, 2000 WL 1134471, at *2 (citations omitted), and Middleton has cited to no authority supporting the limitation it asserts. Accordingly, this Court finds it has the authority to issue a stay in the present matter if the circumstances weigh in favor of staying the proceedings. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341-42 (Fed.Cir.1983).[FN6]

FN6. In addition, as noted in footnote 1, this is an *ex parte* reexamination, while the statutes relied on by Middleton in raising this argument apply to *inter partes* reexaminations.

## B. Standard for Motion to Stay

Generally, courts consider the following factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Softview Computer Prods. Corp.*, 2000 WL 1134471, at *2-3 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted)). In other words, based on these factors the Court determines whether the benefits of a stay outweigh the associated costs.

The advantages that may result from a stay of the district court proceedings pending completion of reexamination by the PTO include,
"1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the Court."

*Emhart Indus., Inc.*, 1987 WL 6314, at *2 (quoting *Fisher Controls Co.*, 443 F.Supp. at 582 (S.D.Iowa 1977)).[FN7] Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. *See Gould*, 705 F.2d at 1342. If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court.[FN8] *See Lofland Bros. Co. v. Mid-Western Energy Corp.*, 1985 WL 1483, at *2 (W.D.Okla. Jan.3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. *See Gould*, 705 F.2d at 1342.

FN7. "Although not binding on the Court, the PTO's determination will be admissible and will carry a presumption of validity." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Co.*, 68 U.S.P.Q.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1755, 1759 (E.D.Mich.2003).

FN8. This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis. *See Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed.Cir.2002) (finding "an assessment of whether an accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device").

**\*4** Plaintiff makes three primary arguments against issuance of a stay. First, Middleton argues the issuance of a stay will not promote judicial economy. Second, Middleton urges the Court to deny the stay based on 3M's delay in filing for reexamination. Third, Middleton contends it will be prejudiced if the stay is granted. In the alternative, if the Court determines a stay is warranted, Middleton requests the Court grant a stay only as to those issues before the PTO. Each of these contentions is summarized and discussed below.

1. Judicial Economy

Both parties accept that one factor in determining the propriety of a stay of proceedings in the face of reexamination is the judicial economy that such stay would promote. Middleton contends that, contrary to 3M's assertions, a stay would not promote judicial economy at all in this case because of the amount of preparation by the parties thus far. This matter has now been pending for eight years, and that fact alone would seem to argue strongly against a stay. However, despite the lengthy pendency of this matter in the Northern District of Illinois, the validity of the '514 patent has only been explored by the parties for a little over a year, in isolation hardly an unusual period of time for development of such issues.

According to Middleton, the court in *Toro Co. v. L.R. Nelson Corp.* ruled a stay was unwarranted under similar circumstances. This suit has been pending in litigation for almost 3 1/2 years. Before the motion for stay was filed, the court had under advisement a motion by defendant for summary judgment, which may well be dispositive of the issue of validity of asserted claims 14 and 15. Those factors militate against a stay at this stage of the proceedings.

The pendency of this suit does not necessarily preclude any further proceedings which the Patent Office may choose to pursue. It is the opinion of the court that its granting of a stay order would accomplish little, other than the delay of disposition of a suit which has, until now, run an overly protracted course.

*Toro Co. v. L.R. Nelson Corp.,* 223 U.S.P.Q. 636, 638 (C.D.Ill.1984).

Middleton contends that the factual circumstances impacting judicial economy in *Toro* and in the present case are vastly different than those involved in the cases cited by 3M. *See Tap Pharm. Prods., Inc.,* 2004 WL 422697, at \*1 ("Plaintiffs have known from the start of this case three months ago that the pending reexaminations could create grounds for a stay. As of yet, this case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions."); *Ralph Gonnocci Revocable Living Trust,* 68 U.S.P.Q.2d at 1758 ("This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far-substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial."); *Softview Computer Prods. Corp.,* 2000 WL 1134471, at \*3 ("[A]lthough there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the *Markman* hearing has not yet been held and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co., Inc.,* 1991 WL 217666, at \*4 ("[T]his action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that a case which has 'run an overly protracted course' ... The parties appear not to have engaged in expensive discovery or extensive pretrial preparation") (citations omitted); *Emhart Indus., Inc.,* 1987 WL 6314, at \*3 (noting that "substantially no trial preparations have been carried out-there is no pretrial order in place and no trial schedule has been set"). Arguably, none of these cases was at the stage of litigation that the present case indicates.

**\*5** In the present action, all summary judgment

motions have been fully briefed, and discovery appears essentially complete. Accordingly, Middleton claims a stay at this point would do little to serve the interests of judicial economy, and would only have the effect of further delaying final resolution of this matter, which has already been pending far too long.

Additionally, Middleton contends 3M's reliance in part on *Standard Havens Products, Inc. v. Gencor Industries, Inc.* is misplaced as Middleton does not base its opposition to the present motion to stay on the proposition found to be faulty. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 996 F. 32d 1236, 1993 WL 172432, at *1 (Fed.Cir. May 21, 1993) (reversing the lower court's decision denying a stay, as such decision was based upon the obviously incorrect proposition that a "reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final.").[FN9]

> **FN9.** Middleton also notes that this decision is unreported and, as such, "shall not be employed as precedent by this court, and may not be cited by counsel, except in support of a claim of res judicata, collateral estoppel, or law of the case." Fed. Cir. R. 47.8. However, the decision is relevant not as precedent but to demonstrate the final result of issues similar to those in the present case.

At least one court found the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial of a motion to stay pending reexamination by the PTO. *See Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, at *1-2 (N.D.Ill. March 16, 1990) (finding these factors the most compelling and concluding the action was "too far along the road to justify halting the journey while the defendant explores an alternate route" in denying the motion to stay). Likewise, this is the most compelling argument made by Middleton in resisting the pending motion to stay.

In the present case, the litigation has been ongoing for over eight years. [FN10] The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

> **FN10.** As indicated in the text, most of the history of this case occurred in the Northern District of Illinois and the Federal Circuit through litigation activities promoted by both parties. The issue now before the Court is of much more recent vintage.

However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to " 'be conducted with special dispatch.' " [FN11] *Gould,* 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, *see Toro Co.,* 223 U.S.P.Q. at 638; *Enprotech Corp.,* 1990 WL 37217, at *2, the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

> **FN11.** One study listed the average pendency of a reexamination to be 19 months. *See* Note, "Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination", 66 Geo. Wash. L.Rev. 172, 192 app. A (Nov.1997). This note is, however, over seven years old, and the parties were unable to indicate to the Court whether this estimate is accurate, though Defendant's counsel thought, but could not state definitively, that the average pendency has been shortened.

**\*6** In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with Middleton's contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

### C. Filing for Reexamination

Middleton also argues that 3M's delay in filing reexamination warrants denying the motion. As noted above, 3M did not seek reexamination of the patent-in-suit until well after the commencement of the litigation. In addition, one of the references upon which 3M relied in seeking reexamination was one of its own patents. Under these circumstances, Middleton contends that it is an inevitable conclusion that 3M delayed unduly in seeking reexamination.[FN12]

> **FN12.** Middleton avers this is not the first time that 3M has used the reexamination procedure to engage in delay. For proof, Middleton cites to the decision in *Freeman v. Minnesota Mining & Mfg. Co.,* in which the court, apparently anticipating a motion to stay from 3M, had the following to say:
> Though not before the Court, it seems worthwhile to state the Court's view on granting a stay of court proceedings pending the PTO reexamination. In *Digital Magnetic,* the court commented that 'parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive

discovery or trial preparation.' ... Discovery was concluded in this case seven months ago, and the first of the two suits was filed two and a half years ago. Moreover, 3M knew about all three of the documents on which its reexamination petition will be based no later than August 8, 1986. To allow 3M to now use the reexamination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic.
*Freeman v. Minnesota Mining & Mfg. Co.,* 661 F.Supp. 886, 888 (D.Del.1987) (citations omitted). However, 3M's actions in another case are not relevant to the present action, especially considering the court's statement in *Freeman* was *anticipatory* and not in reaction to any actual motion to stay filed by 3M, let alone any proof that 3M was so moving for the purpose of delaying or unduly protracting the litigation. 3M's motion in the present case will be analyzed on its own merits and under the circumstances of the present action.

Courts have generally considered a delay in seeking reexamination in evaluating the propriety of a stay in light of such reexamination. Indeed, "[t]he potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent." *Grayling Indus., Inc.,* 1991 WL 236196, at *2. For example, in *Enprotech Corp.,* the defendant first raised the question of reexamination and an associated stay some 18 months after the commencement of litigation and four months before trial. *Enprotech Corp.,* 1990 WL 37217, at *1. That court, in denying the motion to stay, stated "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route." *Id.* at *2; *see also Toro Co.,* 223 U.S .P.Q. at 638 (denying stay given three and a half year delay).

**\*7** Middleton asserts again that the authority cited by 3M in support of granting a stay is inapposite on this issue. In *Emhart Industries, Inc.,* the court found that although there was a delay in filing reexamination, that delay was the fault of the patentee in postponing needed discovery regarding the prior art. *Emhart Indus., Inc.,* 1987 WL 6314, at *3 ("Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

With regard to the other authority cited by 3M, in no instance was the delay between the commencement of the suit and the request for reexamination nearly as long as in this case. *See Tap Pharm. Prods., Inc., 2004 WL 422697, at \*1* (reexamination requests were filed before the lawsuit began); *Ralph Gonnocci Revocable Living Trust,* 68 U.S.P.Q.2d at 1756 (request for reexamination filed within two months of the defendant's counsel's notice of appearance, and within eight months of commencement of suit); *Robert H. Harris Co., 1991 WL 217666, at \*4* (request for reexamination filed within one year of commencement of suit); *Loffland Bros. Co., 1985 WL 1483, at \*1* (request for reexamination filed within one year of commencement of suit); *Gioello Enterprises Ltd. v. Mattel, Inc.,* 2001 WL 125430, at \*1 (D.Del. Jan. 29, 2001) (request for reexamination filed within 18 months of commencement of suit); *Grayling Indus., Inc., 1991 WL 236196, at \*1* (reexamination request filed within two years of commencement of suit).[FN13]

> [FN13.] It is unclear in the *Softview Computer* decision, also relied upon by 3M, how much time elapsed between the commencement of suit and the reexamination request. *Softview Computer Prods. Corp., 2000 WL 1134471, at \*1.*

3M seeks to justify its delay in filing for reexamination by arguing there was a discovery stay in place as to validity that was "implicitly" lifted on March 11, 2003. Middleton counters by stating that, in the first place, the prior art upon which 3M based its request for reexamination was not the result of any discovery efforts engaged in by 3M and that 3M has not taken a single deposition on the subject prior art after such art was identified. Middleton asserts that 3M could have filed for reexamination at the PTO at any time, notwithstanding any discovery stay imposed by a district court. Finally, even if 3M was somehow impeded by a discovery stay, it still took 3M over a year after the stay was "implicitly" lifted to file its reexamination request. Middleton contends that under the circumstances of the present case, a one-year delay is inexcusable, and 3M should not be allowed to benefit from its delay.

Middleton seemingly misses the point in arguing 3M's delay warrants denial of the motion to stay. More important than when the reexamination application was made was the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to the pending

litigation, the Court looks at whether the petition for reexamination was made with a dilatory purpose. *See Grayling Indus., Inc., 1991 WL 236196, at \*2-3; Emhart Indus., Inc., 1987 WL 6314, at \*3.* While the timing of the application is relevant in making this determination, the Court also looks to the proffered reasons for the delay. *See Ralph Gonnocci Revocable Living Trust,* 68 U.S.P.Q.2d at 1758 ("Plaintiff may be correct that [defendant] did not act swiftly in seeking reexamination. Nothing in the record, however, indicates when [defendant] became aware of the prior art which is the basis for his request for reexamination.... Thus the Court cannot conclude that [defendant] unnecessarily delayed seeking a reexamination or that he is doing so now to stall this litigation."); *Grayling Indus., Inc., 1991 WL 236196, at \*3* (finding that "although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiffs have invoked it"). Moreover, if "the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date." *Emhart Indus., Inc., 1987 WL 6314, at \*3.*

**\*8** In the present action, Middleton has presented no evidence, beyond pointing out that one of the prior art references asserted by 3M was its own patent, that indicates 3M had knowledge of the prior art and could have made the request for reexamination much earlier. Due to the stay of discovery on issues related to the validity issue, 3M was not actively pursuing this issue.[FN14] Significantly, 3M had won a judgment of non-infringement on two different occasions in the Northern District of Illinois. Accordingly, 3M may have had little reason to pursue the issue of validity until the stay on discovery was lifted. 3M also argues that under the last decision from the Federal Circuit, the construction of the claims at issue was significantly broadened.

> [FN14.] Middleton argues that 3M did not have its hands tied by the Illinois court but instead put all its eggs into the infringement basket, holding in abeyance any argument on validity even though 3M has alleged validity from the beginning.

The record indicates it was not until this decision, and the subsequent course of the proceeding, that 3M began to actively pursue the validity issue. In May 2003, 3M received information pursuant to discovery

that was relevant to this issue. Based on this information, 3M was able to gather additional information. Upon determining the validity of the '514 patent was an issue, 3M drafted the reexamination application, notified the Court, submitted a motion for summary judgment on validity, and, as soon as the reexamination was granted, moved for a stay. The Court finds it is not unreasonable under all of the unique circumstances of this case that it took 3M nearly a year from this time to file for reexamination, particularly in light of the numerous prior art references discovered, both domestic and foreign.

The Court finds that any delay in filing for reexamination is not cause to deny the motion to stay. While 3M may be guilty of focusing too much attention on the infringement issue, it was led on that course by the proceedings in the action. As soon as validity became a very real issue, 3M did not unduly delay in moving for reexamination. Moreover, there is no evidence that 3M has moved for a stay solely for a dilatory purpose beyond Middleton's argument to the contrary.

### D. Prejudice to Middleton

Pursuant to section 318 of the Patent Statute, a court is not to issue a stay if it "would not serve the interests of justice." 35 U.S.C. § 318. Middleton contends that because of the prejudice it would incur should a stay be granted, such interests would not be served. When Middleton first filed suit against 3M, the patent in suit had more than a decade of useful life remaining, whereas now it is due to expire in less than three years. If 3M's proposed stay is granted, Middleton claims that it is likely that there will be no life remaining in the patent in suit in the event this matter is revived following reexamination; however, this fact alone is not sufficient to deny the motion to stay. See Tap Pharm. Prods., Inc., 2004 WL 422697, at *1 (dismissing plaintiff's argument that patent may expire thereby depriving them of any injunctive remedy because patent may still expire before trial is completed).

**\*9** 3M answers by stating that monetary compensation is sufficient to remedy infringement. Middleton disagrees and asserts that while it has no intention of commercializing the '514 patent, it would be deprived of its right to exclude others under the patent, stating that 3M's position would be tantamount to a compulsory license for using the patented invention. The Federal Circuit has found this to be an inadequate remedy for infringement.

See, e.g., Reebok Int'l, Ltd. v. Baker, Inc., 32 F.3d 1552, 1557 (Fed.Cir.1994); Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1456-57 (Fed.Cir.1988). According to Middleton, because it stands to lose its ultimate remedy for patent infringement in the event 3M's proposed stay becomes a reality, Middleton will be severely prejudiced by such a stay, and this warrants denial of 3M's motion.

At present Middleton is not, however, selling or marketing products under its patent. Indeed, it has never done so and thus has no market to protect. Under similar circumstances, a district court found "money damages is an adequate remedy for any delay in redress" where the patentee was not "selling or actively licensing goods or services related to" the patent in suit. Gioello Enters, Ltd., 2001 WL 126350, at *2; see also Emhart Indus., Inc., 1987 WL 6314, at *2 (finding that "notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court").

Middleton is not currently selling products related to the patent in issue and would be entitled to any money damages if infringement is ultimately found. Ultimately, the Court finds this is sufficient to protect Middleton from suffering any undue prejudice or a clear tactical disadvantage. Should the action proceed to trial following reexamination, the Court may still order appropriate injunctive relief. In addition, Middleton would be entitled to money damages if proven, and there is no immediate danger of not being able to collect said damages from 3M.

### E. Alternatively, Granting Stay Solely on Issues Before the PTO

In the alternative, if the Court issues a stay in light of the reexamination, Middleton urges that the stay be limited to those issues pending before the PTO as part of the reexamination proceedings, i.e., anticipation and obviousness. Thus, the issues of infringement, willfullness, damages, and inequitable conduct would continue before the Court under Middleton's plan. Under this proposal, any judgment would not become final until the PTO has ruled on the reexamination and the parties' appeal rights have been exhausted unless the Court makes the judgment final as to those issues tried,FN15 thereby entitling the parties to appeal the judgment immediately.

FN15. See Fed.R.Civ.P. 54(b).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As concerns the issue of validity, 3M's request was for a reexamination proceeding pursuant to Chapter 30 of the Patent Statute. Pursuant to section 315 of the Patent Statute,

**\*10** A third party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third party requester raised or could have raised during the *inter partes* reexamination proceeding.

35 U.S.C. § 315(c). In other words, in the event the PTO finds the subject claims patentable, 3M would be estopped from returning to court to re-argue validity of those claims. Therefore, Middleton contends that staying only those issues before the PTO would be a practical solution that would provide Middleton with more timely relief on the remaining issues.

The PTO's reexamination could, however, affect more than just the validity issues before the Court. Indeed, a PTO decision that the '514 Patent is invalid could render moot the issues of validity *and* infringement. *See Gioello Enters. Ltd., 2001 WL 125340, at \*1* (finding the PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment); *ASCII Corp. v. STD Entm't USA, Inc., 844 F.Supp. 1378, 1380-81 (N.D.Cal.1994)* (finding stay was justified because if claims were cancelled in reexamination then the need to try the infringement issue would be eliminated); *Lofland Bros. Co., 1985 WL 1483, at \*2* ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled."). "In addition, if a final decision of unpatentability means the patent was void *ab initio,* then damages would also be precluded." *Standard Havens Prods., Inc., 1993 WL 172432, at \*1.* The issues of inequitable conduct and willfulness may not be impacted by the PTO's determination, *see Enprotech Corp., 1990 WL 37217, at \*1* (finding reexamination would not affect the inequitable conduct claim at issue), though to only proceed on these two issues would not serve the interests of justice. Therefore, the Court finds it would not be appropriate to stay only a portion of the pending issues.

CONCLUSION

For the foregoing reasons, the Court hereby grants Defendant's Motion to Stay the Proceedings Pending Reexamination of U.S. Patent No. 4,944,514 by the Patent and Trademark Office (Clerk's No. 170). The Court finds a high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on reexamination, and Middleton will not be unduly prejudiced by the stay. Thus, under the unique circumstances of this case the Court finds the benefits of issuing the stay outweigh the arguments made by Middleton in resistance to the motion.

**\*11** IT IS SO ORDERED.

S.D.Iowa,2004.
Middleton, Inc. v. Minnesota Mining and Mfg. Co.
Not Reported in F.Supp.2d, 2004 WL 1968669 (S.D.Iowa)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, D. Delaware.

PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics, Inc., and Philips
Electronics North America Corporation, Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.
**\*1**

### I. INTRODUCTION

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the '825 patent was granted on April 10, 2003.[FN1] Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I.459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

> FN1. The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

### II. DISCUSSION

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir.1985).* This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987) ("[I]n passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983) (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The reexamination process will serve this purpose. For example, the court will gain the benefit of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 WL 94237, at *9 (D.Kan.1997); Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 WL 37642, at *1-2 (N.D.Ill.1990).* Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* 213 U.S.P.Q. 290, 290 (W.D.Okla.1982) ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134471, at *3 (S.D.N.Y.2000) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986) (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

**\*3** Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I.460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

### III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Stay Pending Reexamination by the U .S. Patent and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.
**\*4** 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.
4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.
5. Phillips' Motion to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

D.Del.,2003.
Pegasus Development Corp. v. Directv, Inc.
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, N.D. California.

PHOTOFLEX PRODUCTS, INC., Plaintiff,
v.
CIRCA 3 LLC dba Amvona.com, Defendant.
**No. C 04-03715 JSW.**

May 24, 2006.

Alfredo A. Bismonte, Bobby T. Shih, Daniel S. Mount, Mount & Stoelker, San Jose, CA, Michael J. Hughes, Intellectual Property Law Offices, Campbell, CA, for Plaintiff.

Warren J. Krauss, James Yuanxin LI, Sedgwick Detert Moran & Arnold, San Francisco, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION TO STAY LITIGATION**

JEFFREY S. WHITE, District Judge.

**\*1** Now before the Court is Defendant Circa 3 LLC dba Amvona.com's ("Amvona") motion to **stay** litigation during the pendency of **reexamination** of United States Patent 6,076, 935 (the " 935 Patent"). The Court finds that this matter is appropriate for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 26, 2006 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's motion to **stay** litigation. In this action, Plaintiff brings claims for copyright and patent infringement, as well we claims of unfair competition and false designation of origin, related to the manufacture and marketing of high quality photographic equipment. Count two of the second amended complaint for patent infringement is STAYED, but Counts one, three and four for copyright infringement, false designation of origin and unfair competition are NOT STAYED.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301." 35 U.S.C. § 302. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...." 35

U.S.C. § 303(a). The reexamination statute further provides that "[a]ll reexamination proceedings ... including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

The determination of whether to grant a **stay** pending the outcome of the PTO's **reexamination** is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.,* 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004) (citing *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed.Cir.1983)). When ruling on such a **stay**, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a **stay** will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a **stay** will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp.,* No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at \*5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal policy in favor of granting motions to **stay** proceedings pending the outcome of USPTO **reexamination** or reissuance proceedings." *ASCII Corp. v. STD Entertainment,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

**B. Early Stage of Litigation Favors a Stay of the Patent Claim .**

Here, the early stage of this litigation weighs in favor of granting a stay of the patent infringement portion of the case. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp.,* 844 F.Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Amvona has served 14 interrogatories and 29 requests for production of documents and Photoflex has served 16 interrogatories and 5 requests for production of documents. No depositions have been taken or scheduled. (*See* Declaration of James Yuanxin Li ("Li Decl."), ¶ 2.) Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics,* 33 U.S.P.Q.2d at 2023.

**C. A Stay Will Not Unduly Prejudice Plaintiff.**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*2** In determining whether to grant a **stay**, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. Granting a **stay** does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the **reexamination** process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc.,* 2003 WL 21105073, at \*2 (D.Del. May 14, 2003).

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking **reexamination** of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. This is not a case where **reexamination** is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc.,* 983 F.Supp. 1126, 1128 (S.D.Tex.1997) (finding that "courts are inclined to deny a **stay** when the case is set for trial and the discovery phase has almost been completed"). There has been no showing of dilatory motive or tactics.

Accordingly, te Court finds that a stay of the patent claim will not unduly prejudice Plaintiff, and thus this factor also weighs in favor of granting a stay.

### D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

Because the patent-in-suit is currently being reexamined, the Court finds that the patent infringement case should be stayed during the pendency of the **reexamination**. The Court finds that such a **stay** will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

However, in determining whether to grant a **stay** of an entire case, courts consider whether there would remain, after the PTO **reexamination**, issues "completely unrelated to patent infringement" for which a **stay** would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.,* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a **stay** would not preserve many resources." *Id.*

Here, in addition to the patent infringement claim, Plaintiff brings claims for copyright infringement, false designation of origin and unfair competition. Simply arguing these claims have no merit,

Defendant has failed to address whether there are significant overlapping issues between the patent claim and these other claims whereby a stay of the other claims would reduce the burden of litigation on both the parties and the Court. Thus, the Court finds that Defendant has made no showing upon which the Court could find a stay of those separate causes of action would be justified.

Therefore, having considered the factors relevant in determining whether to grant a **stay** pending **reexamination**, the Court hereby GRANTS Amvona's motion to **stay** the patent infringement portion of this case but DENIES the motion as to the remaining claims.

### CONCLUSION

**\*3** For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Amvona's motion to **stay**. Count two for patent infringement is stayed from the date of this Order until further notice with the exception of activities relating to or arising out of the judicial settlement conference currently schedule before Magistrate Judge Wayne D. Brazil on May 25, 2006. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the **reexamination** proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the 935 Patent, until the **stay** of the patent infringement claim is lifted.

The Court DENIES the request for a stay as to counts one, three and four.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Photoflex Products, Inc. v. Circa 3 LLC
Slip Copy, 2006 WL 1440363 (N.D.Cal.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion, this Court remains of the view that the hardship and irreparable harm to defendant, in the form of the confusion that might follow plaintiff's further introduction into the market, as the second user, of a cola labelled "Virgin," substantially outweighs the hardship to plaintiff, the second user, in (if its position is, ultimately, sustained) postponing distribution under the mark "Virgin" of its cola. Indeed, it appears that such hardship can be remedied through security posted by defendant.

### 3.

Plaintiff objects to the second full ordering paragraph on page 2 of the TRO which it reads to be violative of Fed.R.Civ.P. 28(b) and (c). Defendant has, however, explained that the (unartfully worded) ordering paragraph "does not contemplate that [its] counsel will act in any capacity other than [its] attorney in . . . foreign discovery proceedings." (Def. Mem. in Opp. to Pls. Mot. for Reconsideration at 12.) Counsel should agree on appropriate correct language if either side deems it necessary.

### 4.

Defendant is restrained from further distribution of its counsel's letter of January 6, 1995. (Exhibit 2 to plaintiff's Order to Show Cause.) The letter is misleading in that the third paragraph does not make it clear that the TRO was granted only "pending a hearing on [defendant's] Motion for Preliminary Injunctive Relief." (TRO at 2.)

SO ORDERED.

---

### U.S. District Court
### Northern District of California

Target Therapeutics Inc. v. SciMed Life Systems Inc.

No. C-94-20775 RPA (EAI)
Decided January 13, 1995

### PATENTS

**1. Practice and procedure in Patent and Trademark Office — Re-examination — In general (§110.1501)**

**JUDICIAL          PRACTICE          AND PROCEDURE**

**Procedure — Stays — In general (§410.2901)**

Stay of patent infringement action pending re-examination of patent in suit is war-

ranted, since action is in early stages and parties have not engaged in extensive discovery, since awaiting outcome of re-examination could eliminate need for trial or facilitate trial by clarifying scope of claims, and since plaintiff has not shown that it will suffer undue prejudice if action is stayed.

**Particular patents — General and mechanical — Catheter**

4,739,768, Engelson, catheter for guide-wire tracking, action for infringement stayed pending outcome of re-examination proceeding.

---

Action by Target Therapeutics Inc. against SciMed Life Systems Inc. and Cordis Endovascular Systems Inc., for patent infringement. On motion of defendant Cordis Endovascular Systems Inc. to stay action pending outcome of re-examination of patent in suit. Granted.

Jack W. Londen of Morrison & Foerster, San Francisco, Calif., for plaintiff.

Philip S. Johnson, of Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, Pa.; David Eiseman and Kenneth E. Keller, of Bronson, Bronson & McKinnon, San Francisco, for defendant SciMed Life Systems Inc.

George H. Gerstman and Terrence W. McMillin, of Gerstman, Ellis & McMillin, Chicago, Ill.; John W. Keker, Jeffrey Chanin, and Michelle K. Lee, of Keker & Van Nest, San Francisco, for defendant Cordis Endovascular Systems Inc.

Aguilar, J.

Defendant Cordis Endovascular Systems, Inc. ("Cordis") moves for a stay of this patent infringement action pending re-examination of Plaintiff Target Therapeutics, Inc.'s ("Target") United States Patent No. 4,739,768. The court, after reading the moving and responding papers, deemed this motion submitted without oral argument. For the reasons discussed below, Cordis' motion to stay is GRANTED.

### BACKGROUND

This action arises out of defendants' alleged infringement of Target's '768 Patent, which covers a microcatheter device used in the treatment of neurovascular disorders. The '768 patent issued in 1988. In June 1993, Target initiated a reexamination of the

patent based on the discovery of prior art which the United States Patent and Trademark Office ("PTO") had not considered in 1988. During the reexamination, Target voluntarily cancelled several claims of the original patent and submitted revised patent language in their place. On August 4, 1994, the PTO announced that the revised claims were patentable and that it would issue Target a Reexamination Certificate with those revised claims.

On August 22, 1994 Defendant SciMed Life Systems, Inc. ("SciMed") filed a request for a second examination. SciMed based its reexamination petition on two pieces of prior art: the '176 patent, the scope of which SciMed claims Target misrepresented to the PTO during the first reexamination; and a 1967 article describing a catheter which allegedly anticipates the claims of the '768 Patent. The PTO granted SciMed's request for reexamination on October 23, 1994, finding that the newly submitted prior art raised a "substantial new question of patentability." 35 U.S.C. § 305(a). On November 9, 1994, Target filed the instant action against Cordis and SciMed. Cordis now moves for a stay of all proceedings until the PTO has completed reexamination of the '768 Patent.

## ANALYSIS

Cordis argues that this litigation should be stayed because the reexamination may cancel or substantially change the claims of the '768 Patent. A stay of the proceedings, Cordis contends, will result in the simplification of issues and help avoid the possibility of unnecessary litigation.

A district court has the inherent power to control and manage its docket. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 [217 USPQ 985] (Fed. Cir. 1983), *cert. denied,* 464 U.S. 935 [220 USPQ 385] (1983). This power includes the authority to order a stay pending the outcome of reexamination proceedings in the PTO. *Ethicon v. Quigg,* 849 F.2d 1422, 1426 [7 USPQ2d 1152] (Fed. Cir. 1988); *Gould,* 705 F.2d at 1342. "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1381 [30 USPQ2d 1709] (N.D. Cal. 1994). In ruling on a motion to stay, courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether

a trial date has been set. *GPAC, Inc. v. D.W.W. Enterprises, Inc.,* 144 F.R.D. 60, 66 [23 USPQ2d 1129] (D.N.J. 1992); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 [19 USPQ2d 1579] (D. Del. 1991).

[1] In this case, the relevant factors weigh heavily in favor of staying the proceedings pending the conclusion of the reexamination. First, this case is in its incipient stages. The parties have not engaged in expensive discovery and no trial date has been set. Second, waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims. The claims of the patent will likely be amended or narrowed during reexamination. *See Output Tech. Corp. v. Dataproducts Corp.,* 22 U.S.P.Q.2d 1072, 1074 (W.D. Wash. 1991) (noting that 77% of reexaminations lead to cancelled or amended claims). The final form of the claims therefore will remain uncertain until the conclusion of the reexamination procedure. It makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the patent-in-suit. Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination.

Finally, Target has failed to demonstrate that it will suffer undue prejudice if this action is stayed. As mentioned above, this case, filed only two months ago, is brand new. No significant discovery or trial preparation has taken place. As in *GPAC, supra,* "[plaintiff] has not demonstrated that substantial expense and time has been invested in this litigation which would militate against a further delay of disposition of this matter." 144 F.R.D. at 64. Nor is there any merit to Target's suggestion that SciMed initiated reexamination proceedings as a dilatory tactic. SciMed filed its request for reexamination within three weeks of the PTO's announcement that it would issue a reexamination certificate with revised claims and months before Target filed this lawsuit. By contrast, in *Freeman v. Minnesota Mining,* 661 F.Supp. 886 [4 USPQ2d 1574] (D. Del. 1987), a case on which Target relies, the defendant was aware of prior art on which the reexamination was based eight months before filing a petition for reexamination and the reexamination petition was filed more than two years after the plaintiff had filed suit.

For the foregoing reasons, the court concludes that this action should be stayed pending the outcome of the reexamination of the '768 Patent. Cordis' motion to stay is GRANTED.

IT IS SO ORDERED.

---

### U.S. Court of Appeals
### Eighth Circuit

Gold Seal Inc. v. The Scent Shop Inc.

No. 94–2534

Decided March 6, 1995
(Unpublished)

## TRADEMARKS

1. **Infringement; conflicts between marks — Likelihood of confusion — Particular marks — Confusion not likely (§335.0304.05)**

Federal district court's grant of summary judgment (31 USPQ2d 1359) holding that plaintiff's use of "Naturscent," for potpourri and scented oils, is unlikely to cause confusion with defendant's "Scents of Nature," for similar products, is affirmed.

---

Appeal from the U.S. District Court for the Eastern District of Arkansas, Reasoner, C.J.; 31 USPQ2d 1359.

Consolidated actions by Gold Seal Inc. against The Scent Shop Inc., for declaratory judgment of trademark non-infringement, and by The Scent Shop Inc. against Gold Seal Inc. for trademark infringement. From federal district court's grant of Gold Seal Inc.'s motion for summary judgment, The Scent Shop Inc. appeals. Affirmed.

[Editor's Note: The U.S. Court of Appeals for the Eighth Circuit has designated this opinion as "unpublished."]

Before Bowman, Wollman, and Morris Sheppard Arnold, circuit judges.

**Per curiam.**

[1] In this trademark infringement action, The Scent Shop, Inc., appeals the District Court's grant of summary judgment to Gold Seal, Inc. *See Gold Seal, Inc. v. Scent*

---

[1] The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

*Shop, Inc.,* 851 F. Supp. 1283 [31 USPQ2d 1359] (E.D. Ark. 1994). Having reviewed the record and the parties' arguments, we conclude the District Court correctly determined in its thorough and detailed order that The Scent Shop failed to proffer sufficient evidence to demonstrate a likelihood of confusion between its mark and Gold Seal's.

AFFIRMED. *See* 8th Cir. R. 47B.

United States District Court, D. Minnesota.

VDATA, LLC, and Vcode Holdings, Inc.,
Petitioners,
v.
AETNA, INC., PNY Technologies, Inc., Merchant's
Credit Guide Co., The Allstate Corporation, and
American Heritage Life Insurance Co., Respondents.
**Civil No. 06-1701 JNE/SRN.**

Nov. 21, 2006.

Edward E. Casto, Jr., Esq., Jonathan T. Suder, Esq.,
Kurt J. Niederluecke, Esq., on behalf of Plaintiffs.
William F. Stute, Esq. on behalf of Defendant Aetna,
Inc.
Roger D. Taylor, William F. Forsyth on behalf of
Defendant PNY Technologies, Inc.
Eric J. Strobel, Esq., on behalf of Defendant
Merchant's Credit Guide Co.

### ORDER

JOAN N. ERICKSEN, District Judge.

**\*1** The above-entitled matter comes before the Court
upon the Report and Recommendation of United
States Magistrate Judge Susan Richard Nelson dated
October 31, 2006. No objections have been filed to
that Report and Recommendation in the time period
permitted.

Based on the Report and Recommendation of the
Magistrate Judge, and all of the files, records and
proceedings herein,

IT IS HEREBY ORDERED that:

1. Merchant's Motion to **Stay** Litigation Pending
**Reexamination** Proceedings (Doc. No. 22) be
**GRANTED;**

2. Aetna's Motion to Dismiss (Doc. No. 42) be
**DENIED;**

3. Aetna's Motion for Sanctions (Doc. No. 55) be
**DENIED;**

4. Plaintiff's Motion to Strike Exhibits (Doc. No. 59)
be **DENIED as MOOT;**

5. Plaintiff's Motion to Strike Exhibits (Doc. No. 71)
be **DENIED as MOOT.**

SUSAN RICHARD NELSON, United States
Magistrate Judge.

### REPORT AND RECOMMENDATION

The above-captioned matter comes before the
undersigned United States Magistrate Judge on
Defendant Merchant's Credit Guide Co.'s
("Merchant's") Motion to Stay, Consolidate, or
Dismiss (Doc. No. 22), Defendant Aetna, Inc.'s
("Aetna") Motion to Dismiss (Doc. No. 42),
Defendant Aetna's Motion for Sanctions (Doc. No.
55), Plaintiffs' Motion to Exclude Exhibits (Doc. No.
59), and Plaintiffs' Motion to Strike (Doc. No. 71).
This matter has been referred to the undersigned for
resolution of pretrial matters pursuant to 28 U.S.C. §
636 and District of Minnesota Local Rule 72.1.

### I. BACKGROUND

On May 5, 2006, Plaintiff VData, LLC ("VData")
filed this action against Defendants Aetna, PNY
Technologies, Inc. ("PNY"), Merchant's, The Allstate
Corporation ("Allstate"), and American Heritage Life
Insurance Co., alleging patent infringement in
violation of 35 U.S.C. § 271. (Doc. No. 24, Ex. A.)
In its Complaint, VData asserts that Defendants have
infringed United States Patent No. 5,612,524 ("the
524 patent") of which VData is the exclusive rightful
holder. (Id.) The 524 patent, issued by the United
States Patent and Trademark Office ("PTO") on
March 18, 1997, describes an "Identification Symbol
System and Method with Orientation Mechanism."
(Id.) VData claims that Defendants have infringed the
524 patent literally, or under the doctrine of
equivalents, by making, using, selling, or offering for
sale, articles that infringe the 524 patent. (Id.) In
addition, VData asserts that the Defendants will
continue to infringe the 524 patent causing it
immediate and irreparable harm. (Id.) The Complaint
alleges that Defendants' infringement was willful and
seeks treble monetary damages and a permanent
injunction. (Id.)

On May 17, 2006, VData filed its First Amended
Complaint. (Doc. No. 24, Ex. C.) A new Plaintiff,
VCode Holdings, Inc. ("VCode") joined in the action
and VData and VCode assert that Defendants
willfully infringed both the 524 patent and U.S.
Patent No. 4,924,078 ("the 078 patent") of which
Plaintiffs "together own all right, title and interest."
(Id.) The 078 patent issued on May 8, 1990, and like
the 524 patent, covers an "Identification Symbol
System and Method." (Id.) The First Amended
Complaint likewise alleges that Defendants infringed
the 524 and 078 patent literally, or under the
doctrine of equivalents, by making, using, selling or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

offering for sale articles and services that infringe claims in the 524 and 078 patents. In addition, it also alleges willful infringement and demands treble damages as well as a permanent injunction. (*Id.*) The Plaintiffs have not moved for a preliminary injunction.

**\*2** In response to the Amended Complaint, Defendants [FN1] filed a series of motions. On July 14, 2006, Merchant's filed its Motion to Stay, Consolidate, or Dismiss. (Doc. No. 22.) On July 30, 2006 and August 28, 2006, respectively, Aetna filed its Motion to Dismiss and Motion for Sanctions. (Doc. Nos. 42 and 55.) Plaintiffs have objected to the exhibits filed in support of Aetna's Motion to Dismiss and on August 29, 2006 and August 31, 2006, moved to strike them from the record. (Doc. Nos. 59 and 71.)

> FN1. Defendants Allstate and American Heritage Life Insurance Co. were dismissed from this case by Plaintiffs pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Doc. No. 96-1.) Only Defendants Aetna, PNY, and Merchant's remain as defendants in this case.

The current action is not the only ongoing litigation pertaining to the 524 and 078 patents. On March 13, 2006, prior to the Plaintiffs' filing of the current lawsuit, Cognex Corporation ("Cognex") sued Plaintiffs, and others, in a declaratory judgment action alleging that the 524 and 078 patents were invalid and unenforceable ("the *Cognex* litigation"). (Doc. No. 24, Ex. D.) Cognex is a supplier of machine vision systems, including data matrix symbol readers, which enable the automation of manufacturing processes where vision is required. (*Id.*)

In addition to the litigation surrounding the 524 patent, a request for reexamination of the 524 patent was filed with the PTO on March 22, 2006. (Doc. No. 24, Ex. F.) The request sought reexamination of claims 1-5, 8-9, 15, 19-32 and argued that each was either anticipated by, or obvious in light of, prior art. (*Id.*) On April 6, 2006, the PTO granted the request for reexamination.

Finally, on September 5, 2006, Defendant PNY filed a request for reexamination of the 078 patent with the PTO. (Doc. No. 82.) The PTO has yet to respond to that request.

## II. MERCHANT'S MOTION TO STAY, CONSOLIDATE, OR DISMISS

### A. Parties' Arguments

Merchant's has moved the Court to **stay** the proceedings pending the outcome of the *Cognex* litigation and/or the PTO **reexamination** of the 524 patent and 078 patents [FN2]. In the alternative, Merchant's seeks either an order consolidating this case with the *Cognex* litigation or an order dismissing it in its entirety. (*Id.* at ¶ ¶ 7, 20, 17.) Aetna joins Merchant's motion to **stay** and its alternative motion to dismiss. (Doc. No. 86.)

> FN2. Merchant's submitted its brief before PNY submitted its request for the **reexamination** of the 078 patent. However, at the motion hearing, Merchant's orally moved to extend the **stay** it seeks to include the 078 patent.

Merchant's argues that a **stay** of the proceedings pending the outcome of the *Cognex* litigation and/or the PTO's **reexamination** of 524 and 078 patents is appropriate because: 1) the **stay** will not cause undue prejudice or present a clear tactical disadvantage to Plaintiffs; 2) the **stay** will likely simplify the issues; and 3) the case is at an early procedural posture, no discovery has been taken nor has a trial date been set. (Def. Merchant's Mem. Supp. Mot. **Stay** at ¶ 9.) Merchant's argues that Plaintiffs will not be prejudiced because it is likely that the validity or enforceability issues related to these patents will be resolved in the *Cognex* litigation or the PTO's **reexamination** process. (*Id.* at ¶ 10.) Merchant's maintains that staying the proceedings pending the outcome of the *Cognex* litigation and/or the PTO's **reexamination** process will simplify the issues because the Court in the *Cognex* litigation could declare the 524 patent invalid or unenforceable, and the PTO **reexamination** could find the 524 and 078 patents invalid. (Def. Merchant's Mem. Supp. Mot. **Stay** at ¶ 9.) at ¶ ¶ 10-11, 14-15.) Conversely, Merchant's notes that if the PTO upholds the validity of the patents at issue, the Plaintiffs' position would become stronger. (*Id.* at ¶ 15.) With either outcome, Merchant's argues, the remaining issues would become "infinitely simplified." (*Id.* at ¶ ¶ 11.) Finally, the **stay** is particularly appropriate, Merchant's contends, because the litigation has yet to emerge from its preliminary stage, the parties have not yet taken discovery and the Court has yet to schedule a trial. (*Id.* at ¶ 12.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** In the alternative, Merchant's asks the Court to dismiss this case under: 1) the abstention doctrine established in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1976); 2) Federal Rule of Civil Procedure 12(b)(1); or 3) Federal Rule of Civil Procedure 12(b)(6). (*Id.* at ¶¶ 17-19.) In its second alternative motion, Merchant's requests that, if the Court neither stays these proceedings nor grants its motion to dismiss, the Court then consolidate this case with the *Cognex* litigation because the two proceedings have common questions of fact and law and the consolidation would save judicial and litigant resources. (*Id.* at ¶¶ 20-23.) Finally, Merchant's urges the Court to use its discretion under District of Minnesota Local Rule 1 .3 to sanction Plaintiffs for not identifying the *Cognex* litigation, or the PTO proceedings, on their civil cover sheet as required by District of Minnesota Local Rule 3.1. Merchant's argues that Plaintiffs' omission deprived the Court of "the knowledge necessary to dismiss, stay, or consolidate the action" and therefore, the Court should take one of these three courses of action as a sanction. (*Id.* at ¶¶ 24-28.) Merchant's does not seek a monetary sanction. (*Id.* at ¶ 28.)

Plaintiffs respond that a **stay** pending the outcome of the *Cognex* litigation and/or the PTO's **reexamination** of the 524 and 078 patents will cause them undue prejudice and fail to simplify the issues in the case. (Pls.' Resp. Opp. Def. Merchant's Mot. **Stay** at 4, 8.) First, Plaintiffs argue that a **stay** will cause them undue prejudice because: 1) it will enable Defendants to "continue their infringing activities unfettered"; 2) it will provide Defendants with multiple opportunities to attack the 524 or 078 patents ("a second (or third) bite at the apple"); and 3) the impending expiration of the patents at issue in November, 2007 may place the PTO in an "all or nothing" situation in which it must validate or invalidate each patent as a whole, given that the PTO may not amend a patent's claims after its expiration. (*Id .* at 8-9.)

Second, Plaintiffs contend that a **stay** would fail to simplify the issues in this case because: 1) neither the *Cognex* litigation nor the PTO's **reexamination** of the 524 and 078 patents will provide the Defendants with a basis for issue preclusion; 2) the PTO **reexamination** process is unlikely to invalidate the 524 patent in its entirety and the PTO has not yet approved **reexamination** of the 078 patent; and 3) the issues in this case are broader than the validity of the 524 and 078 patents. Because the *Cognex* litigation and the PTO **reexamination** proceedings

will not have a preclusive effect on Merchant's, Plaintiffs argue that Merchant's will remain free to assert that the 524 and 078 patents are invalid because they are anticipated by the same prior art references as form the basis for the requests for PTO **reexamination**. In addition, Plaintiffs assert that because the **reexamination** request fails to raise new prior art, the 524 and 078 patents will likely survive **reexamination**. (*Id.* at 5-6.) Finally, Plaintiffs maintain that, in addition to invalidity, this case involves issues of infringement, willfulness, damages, and enforceability and that a **stay** pending either the *Cognex* litigation or the PTO **reexamination** process would resolve none of these issues. (*Id.* at 6.) Therefore, Plaintiffs assert that a **stay** will not promote judicial economy. (Pls.' Resp. Opp. Def. Merchant's Mot. **Stay** at 6-7.) If the Court is inclined to grant a **stay**, however, Plaintiffs move the Court for a partial **stay** of the proceedings only as they pertain to the 524 patent. (*Id.* at 11.)

**\*4** Plaintiffs argue that the Court should deny Merchant's alternative motion to dismiss because: 1) the abstention doctrine created in *Colorado River Water Conservation District,* 424 U.S. at 814, is inapposite as it involved a federal court's abstention in the face of a concurrent state court action which, unlike the *Cognex* litigation, would involve all the issues in the case; 2) under 28 U.S.C. § 1338, the Court has exclusive subject matter jurisdiction over this patent suit; and 3) Plaintiffs' Amended Complaint makes sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss. (*Id.* at 9-10.) In addition, Plaintiffs maintain that Defendants' alternative motion to consolidate should be denied because the *Cognex* litigation involves different products, a different infringement analysis and non-patent claims such as defamation and violation of the Minnesota Uniform Deceptive Trade Practices Act, all of which could complicate the issues, protract discovery, and confuse the jury. (*Id.* at ¶¶ 4-9.) Finally, Plaintiffs maintain that Merchant's motion for sanctions must fail because: 1) the cover sheet required by D.Minn. LR 3.1 is purely administrative; 2) Merchant's has requested inappropriate relief for a violation of D.Minn LR 3.1; 3) the *Cognex* litigation is not a related case within the meaning of D.Minn LR 3.1; 4) D.Minn LR 3.1 does not require a listing of a PTO proceeding because it is not a judicial proceeding; and 5) Merchant's has not suffered prejudice as a result of the omission. (*Id.* at 10-12.)

In addition to the Plaintiffs' arguments against Merchant's alternative motion to consolidate, non-party *Cognex* also submitted a memorandum in opposition to the motion. (Doc. No. 89-1.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**B. Discussion**

This Court recommends that this case be stayed pending the PTO's **reexamination** of the 524 patent, and if it is approved, the **reexamination** of the 078 patent, because the **stay**: 1) would not unduly prejudice or create a clear tactical disadvantage for Plaintiffs; and 2) would potentially simplify the issues in the case and significantly promote judicial economy. In addition, as discovery has not begun and a trial date has not yet been set, a **stay** is particularly appropriate.

A district court possesses the power to **stay** proceedings incidental to the power inherent in every court to control its docket. *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir.1990) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Therefore, the decision to grant or deny a **stay** pending the outcome of a PTO proceeding rests with the sound discretion of the Court. *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp.1378, 1380 (N.D.Cal.1994), *see also, Grayling Ind., Inc., et al. v. GPAC, Inc.*, No. 1:89-cv-451-ODE, 1991 U.S. Dist. LEXIS 16750, at *3 (N.D.Ga. Mar. 25, 1991) ("The decision whether to **stay** proceedings in district court while a **reexamination** by the PTO takes place ... has been recognized to be within the district court's inherent discretionary power."). Courts have adopted a liberal policy in favor of granting motions to **stay** proceedings pending the outcome of **reexamination** proceedings. *ACSII Corp., 844 F.Supp. at 1381*.

**\*5** In determining whether a stay is appropriate, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and whether a trial date has been set. *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citations omitted). The court must weigh the competing interests presented by the facts and balance the hardships to the parties resulting from granting or denying the stay as well as consider "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Gladish v. Tyco Toys, Inc.*, No. Civ. S-92-1666, 1993 U.S. Dist. LEXIS 20211, at * *2-3 (E.D.Cal. Sept. 16, 1993) (citations omitted).

The Court finds that all three factors support ordering a stay of the entire case.

**1. A Stay Will Not Cause Undue Prejudice or a Clear Tactical Disadvantage to Plaintiffs**

The Court finds that a **stay** of the entire proceeding, pending the **reexamination** of the 524 and 078 patents, would not cause Plaintiffs undue prejudice nor would it place Plaintiffs at a clear tactical disadvantage because monetary damages provide Plaintiffs with an adequate remedy.

In considering the undue prejudice or tactical disadvantage that might result from a stay, courts have taken the position that if other remedies are available, undue prejudice is sufficiently ameliorated. For example, the court in *Softview Computer Prods. Corp., et. al v. Haworth, Inc.*, No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 11274, at * *10-11 (S.D.N.Y.2000 Aug. 10, 2000), noted that any prejudice to the party opposing the stay could be ultimately remedied through an injunction and money damages.

Plaintiffs have failed to explain why monetary damages and a permanent injunction would not adequately compensate them for the harm they have suffered. Plaintiffs argue that a stay would enable Merchant's to "continue their infringing activities unfettered," but Plaintiffs have not sought a preliminary injunction. Moreover, Plaintiffs have stated an intention to seek monetary damages for up to six years of past infringement. In addition, as Plaintiffs will suffer no new damages after the 524 and 078 patents expire in November 2007, a stay would not unduly protract the period during which Plaintiffs suffer harm.

Plaintiffs respond that a **stay**, pending the PTO's **reexamination** of the 524 and 078 patents, provides Defendants with "a second ... bite at the apple." This argument is unavailing as courts routinely grant **stays** of litigation pending the PTO's **reexamination** decision. *CNS Inc. v. Silver Labs,* No. Civ-04-968, 2004 U.S. Dist. LEXIS 28960, at *3 (D.Minn. Nov. 29, 2004). Therefore, this type of prejudice cannot meet the criteria established in *Xerox, 69 F.Supp.2d at 406*. In creating the **reexamination** process, Congress countenanced a scheme in which a patent's validity may come under attack in both a courtroom and the PTO. *Ethicon v. Quigg,* 849 F.2d 1422, 1426-1427 (Fed.Cir.1988).

**2. A Stay Will Potentially Simplify the Issues and Promote Judicial Economy**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*6** The Court finds that a **stay** of the entire proceedings, pending a **reexamination** of the 524 and 078 patents, would likely simplify issues pertaining to the validity of the patents at issue, and/or the infringement thereof, because the PTO may find the 524 and 078 patents invalid, or narrow their claims. The former result would potentially eliminate this case and the latter would likely result in a clarification of the infringement issues for trial.

A number of courts have noted the advantages to staying litigation pending **reexamination** proceedings before the PTO, including the following:
1. All prior art presented to the court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
4. The outcome of the **reexamination** may encourage a settlement without the further use of the court.
5. The record of **reexamination** would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a **reexamination**.
7. The cost will likely be reduced both for the parties and the court.

*Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033, \*3-4 (E.D.Ill. Jan. 30, 1987). An obvious benefit to a **stay** in terms of judicial economy is that the PTO could potentially eliminate trial on the issue of validity. *See Robert H. Harris Co. v. Metal Mfg. Co.,* Civ. No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at \*8 (E.D.Ark. Jun. 21, 1991). As courts have noted, if the **reexamination** proceeding invalidates or narrows a claim or claims, issues at trial will be simplified. *Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274 at \*9; *Grayling Ind.,* 1991 U.S. Dist. LEXIS 16750 at \*6 (stating that if the patents are declared unpatentable, the action would be moot, whereas if the patents are deemed valid by the PTO, such a finding would be admissible and carries a presumption of validity.) Courts may benefit from the PTO's expertise if claims are reaffirmed: "if the **reexamination** proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." *Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274 at \* \*9-10; *see also, Hewlett-Packard Co. v. Acuson Corp.,* No. C-

93-0808 MHP, 1993 U.S. Dist. LEXIS 6449, at \*12 (N.D.Cal. May 6, 1993) (finding that the possible hardship for the party opposing **stay** "is outweighed by the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the **stay**."). Particularly in complex cases involving multiple patents and related patents, courts have found that a **stay** would result in simplification. *Pegasus Development Corp., et al. v. Directv, Inc., et. al,* No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at \*6 (D.Del. May 14, 2003).

**\*7** Not only does a stay have the potential to narrow or dispatch claims altogether, it also may minimize the attendant financial costs of litigation to the parties and the courts. As the court in *Softview Computer Prods. Corp., et. al* stated in its decision granting a stay, "although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Softview Computer Prods. Corp .,* et. al, 2000 U.S. Dist. LEXIS 11274 at \*9.

Even in cases in which the patent-in-suit is merely *related* to patents in **reexamination**, courts have found **stays** beneficial for purposes of narrowing issues relating to the claims and streamlining discovery. *See Alloc, Inc. v. Unilin Decor N.V.,* 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at \*7 (D.Del. July 11, 2003). The *Alloc* case involved a motion to **stay** the litigation of the 579 patent pending the completion of both the 621 **reexamination** proceedings and the United States Federal Circuit's decision on three other related patents. 2003 U.S. Dist. LEXIS 11917 at \* \* 1-3. The court held that there was a sufficient correlation among all of the patents, making a **stay** appropriate. *Id.* at \*7.

In this case, it is clear that this factor-simplifying the issues and trial in the case-weighs heavily in favor of granting a **stay**. First, the **reexamination** challenges to both the 524 and 078 patents are based on prior art. Therefore, if the court **stays** the proceedings pending the PTO's **reexamination** decision, "[a]ll prior art presented to the court will have been first considered by the PTO, with its particular expertise" and "many discovery problems relating to prior art can be alleviated by the PTO examination". *Emhart,* 1987 U.S. Dist. LEXIS 15033 at \*3. In addition, "the record of **reexamination** would likely be entered at trial, thereby reducing the complexity and length of the litigation." *Id.* at \* \*3-4. If the PTO invalidates the 524 or 078 patents, or limits their claims so

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

severely that they are effectively invalidated, this suit, which centers on the infringement thereof, will likely be dismissed. However, even if the PTO only narrows some of the claims, "issues, defenses, and evidence will be more easily limited in pre-trial conferences after a **reexamination**." *Id.* at *4. Given that this suit involves infringement claims, the outcome of the **reexamination** may encourage a settlement without the further use of the court. *Id.* at *4. Therefore a **stay** would likely result in a cost reduction for both parties and the court. *Id.* at *4. These benefits outweigh the PTO **reexamination's** lack of a preclusive effect and accrue whether or not the PTO invalidates the 524 patent. The issues present in this case are broader than invalidity, but the possible narrowing of the infringement and enforceability issues represent a substantial benefit.

**\*8** Finally, the Court recognizes that the PTO has not yet approved the reexamination of the 078 patent, however, because these patents are related, the PTO's reexamination of the 524 patent alone will likely narrow issues relating to the claims and streamline discovery. Therefore, this factor weighs strongly in favor of staying the entire case pending the reexamination of only the 524 patent, even if the PTO does not grant reexamination of the 078 patent.

### 3. Status of Discovery

The third factor which courts consider in evaluating whether to **stay** a case pending a PTO **reexamination** is the stage of litigation, namely, whether discovery is complete or whether much remains to be done. *Xerox,* 69 F.Supp.2d at 406. As discovery has not yet begun in the present case, the Court finds that a **stay** would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues. Therefore, a **stay** is particularly appropriate.

Courts granting **stays** during the early phases of discovery have sought to avoid the unnecessary expenditure of resources. As one court has noted: Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the Markman hearing has not yet been held and the Pretrial Order has not yet been prepared. It would be a serious waste of both the parties' and the Court's resources if the Markman and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the **reexamination** proceeding.

*Softview Computer Prods. Corp., et. al,* 2000 U.S. Dist. LEXIS 11274, at * *8-9. Therefore, "[a] **stay** pending **reexamination** is routinely ordered, particularly where discovery has not progressed past the early stages." *CNS Inc. v. Silver Labs,* 2004 U.S. Dist. LEXIS 28960 at *3. In granting a **stay** after the parties had conducted some written discovery, the *CNS* court noted that, "the bulk of the discovery will be sought or pursued after, and with the benefit of, the **reexamination**." *Id.* In contrast, courts which have denied **stays** pending **reexamination** proceedings have generally done so where the request for **reexamination** came late in the litigation, after extensive discovery or trial preparation. *Gladish,* 1993 U.S. Dist. LEXIS 20211 at * *3-4 (citations omitted).

As it is undisputed that neither party has taken any discovery in this case and that a trial date has not been set, the stay's benefit to the discovery process is maximized. Therefore, a stay is particularly appropriate.

### C. CONCLUSION

The Court is persuaded that a **stay** will not prejudice any of the parties, will simplify the issues, and will help promote focused and efficient discovery. As the Court recommends that Merchant's motion for a **stay** pending **reexamination** of the 524 and 078 patents be granted, the Court need not address Merchant's alternative motions to consolidate or dismiss.

**\*9** Plaintiffs have requested that the 078 patent litigation proceed if the Court grants a **stay** with respect to the 524 patent **reexamination**, but have not articulated any reason why separate trials would promote judicial economy. The Court finds that a complete **stay** pending the outcome of the PTO proceedings will advance the goal of simplifying the issues and promoting judicial economy.

Finally, the Court believes that sanctions in this case are not appropriate even if Plaintiffs may have technically violated D.Minn. LR 3. 1, because no harm to Defendants has resulted. Therefore the Court will not exercise its discretion to impose sanctions on Plaintiffs.

### III. AETNA'S MOTION TO DISMISS

Aetna moves for the dismissal of Plaintiffs' Amended Complaint on three grounds. First, Aetna argues that the Court should dismiss Plaintiffs' Amended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Complaint under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over Aetna. Second, Aetna contends that the Court should dismiss Plaintiffs' Amended Complaint under Rules 12(b)(4) and 12(b)(5) alleging that they were served with a defective summons. Third, Aetna maintains that the Court should dismiss Plaintiffs' suit under Rule 12(b)(6), as Plaintiffs have failed to state a plausible infringement claim against Aetna and because Plaintiffs' claims are barred by the doctrine of collateral estoppel. Finally, if the Court denies Aetna's Motion to Dismiss, Aetna moves, in the alternative, pursuant to Federal Rule of Civil Procedure 19(a), for the Court to join third party Source One Direct, Inc. ("Source One") as a necessary and indispensable party on the grounds that Aetna's possible infringement stems from its contractual relationship with Source One.

### A. Personal Jurisdiction over Aetna

### 1. Background

Aetna argues that the Court should dismiss this suit against it for lack of personal jurisdiction because: 1) Minn.Stat. § 543.19, which confers jurisdiction over foreign corporations, will not confer jurisdiction over Aetna directly; and 2) although Minn.Stat. § 543.19 may confer jurisdiction over Aetna's subsidiaries, under *Kling v. ADC Group Long-Term Disability Plan,* No. CV-04-2626-2004 U.S. Dist. LEXIS 21045, at *5 (D.Minn. Oct. 14, 2004), the activities of Aetna's subsidiaries are insufficient to permit the Court to exercise personal jurisdiction over Aetna.

Aetna contends that its business activities will not satisfy Minn.Stat. § 543.19 subd. 1(a)-(d) because: 1) it "does not own, use, or possess any real or personal property in Minnesota"; 2) "[i]t does not transact any business in Minnesota"; 3) it has not committed any act inside Minnesota causing injury or property damage; and 4) it has not committed any act outside Minnesota causing injury or property damage inside Minnesota. (*Id.* at 7.) Aetna characterizes itself "not [as] an operating company that conducts business in Minnesota," but rather as "a holding company of subsidiary companies which provides employee welfare benefits" and whose "business occurs principally in the states of Connecticut and Pennsylvania." (Def. Aetna's Mem. Supp. Mot. Dismiss at 5.)

**\*10** Although Aetna denies engaging in direct contacts with the state of Minnesota, Aetna does not refute that one of its subsidiaries conducts business in the state. Nonetheless, Aetna contends that "in order for personal jurisdiction over a parent corporation to be based on the activities of a subsidiary, there must be 'a close interconnection between the parent and the subsidiary ... such as the consolidation of corporate image and operations.' " (*Id.* at 4. *citing Kling,* 2004 U.S. Dist. LEXIS 21045, at *5 (internal citations omitted).) Aetna asserts that this standard has not been met as Aetna and its subsidiaries are "independent corporate entities." (*Id. citing Kling,* 2004 U.S. Dist. LEXIS 21045, at *5) Therefore, Aetna argues that, like the *Kling* court, this Court should dismiss this case for lack of personal jurisdiction. (*Id.*)

Plaintiffs respond that the Court should deny Aetna's motion because they have made the necessary prima facie showing of general jurisdiction-that Aetna has systematic and continuous contacts with the state of Minnesota, as evidenced by the contents of its *www.aetna.com* web site. (Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 4-5.) Plaintiffs have produced copies of print outs of numerous web pages hosted on its web site. (Doc. No. 52, Ex. 4-15.) Plaintiffs contend that these web pages demonstrate that: 1) Aetna owns and controls the *www.aetna.com* web site as evidenced by the appearance of "Aetna, Inc." in the copyright information located at the bottom of the pages (Doc. No. 52, Ex. 4-5, 8-15); 2) Aetna maintains a "national presence" by providing benefits in "all 50 states" (*Id.,* Ex. 4); 3) Aetna has employees who have "new business responsibilities for ... Minnesota", employees who provide "sales support" for Minnesota and employees who are "sales contacts" for Minnesota (*Id.,* Ex. 5, 6, 7); 4) *www.aetna.com* promotes the health plans and services Aetna provides in Minnesota (*Id.,* Ex. 9); 5) *www.aetna.com* lists three job openings in Minnesota (*Id.,* Ex. 10); 6) there are at least 500 primary care doctors in Minneapolis, Minnesota who participate with Aetna (*Id.,* Ex. 12); and 7) *www.aetna.com* permits Aetna customers to pay their bill by credit card while enrolling in Aetna health plans (*Id.,* Ex. 14.)

Aetna disputes that the information contained at the *www.aetna.com* web site provides a basis for the Court to exercise general jurisdiction over Aetna. (Def. Aetna's Resp. Supp. Mot. Dismiss at 2.) First, Aetna argues that "the only demonstrated link" between Aetna and *www.aetna.com* is the appearance of Aetna's name indicating copyright ownership of the web pages. (*Id* . at 3.) Moreover, Aetna maintains that "just about every, if not every, web-page on" *www.aetna.com* contains a link to the web site's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"Legal Statement" web page, which indicates that "Aetna," as used in the web pages, "is the brand name for products and services provided by one or more of the Aetna group of subsidiary companies." (*Id.* at 2-3.) Therefore, argues Aetna, the services offered at *www.aetna.com* are not provided by Defendant Aetna, who is the parent holding company of these subsidiaries (*Id* . at 2-3) <u>FN3</u>.

> FN3. Finally, Aetna asks the Court to recognize that in *Advantus Capital Management v. Aetna, Inc.,* (D. Minn Civ. No. 06-cv-2855), the only other case in which it has appeared as a defendant in this District, the Court issued a preliminary injunction without addressing Aetna's affirmative defense that the court lacked personal jurisdiction over Aetna.

## 2. Discussion

**\*11** The Court recommends that Aetna's motion to dismiss for lack of personal jurisdiction be denied as the Court finds that Plaintiffs have established a prima facie case of general personal jurisdiction over Aetna.

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie evidence of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992), *cert. denied,* 506 U.S. 908 (1992). In assessing a plaintiff's evidence, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc.,* 89 F.3d at 522. Any "doubt[s] should be resolved in favor of retention of jurisdiction." *V.H. v. Estate of Birnbaum,* 543 N.W .2d 649, 653 (Minn.1996). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings. *Stevens v. Redwing,* 146 F.3d 538, 546 (8th Cir.1998) (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4 (1947) (noting that "when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist" and "the mode of its determination is left to the trial court")) <u>FN4</u>

> FN4. "While in some cases it is more appropriate to test jurisdictional facts upon

the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other exhibits presented on motion and opposition thereto make the issue ripe for early determination." *Block Industries v. DHJ Industries, Inc.,* 495 F.2d 256, 259 n. 3 (8th Cir.1974) (citations omitted).

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would also have jurisdiction. *See Digi-Tel Holdings, Inc.,* 89 F.3d at 522. Minnesota's reach over foreign defendants extends to the fullest extent permitted by the United States Constitution. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991) (citing *Rostad v. On-Deck, Inc.,* 372 N.W.2d 717, 719 (Minn.1985) (en banc), *cert. denied,* 474 U.S. 1006 (1985)). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). For the Court to acquire jurisdiction over a non-resident defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to 'reasonably anticipate being haled into court' " in Minnesota. *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648 (8th Cir.2003) (quoting *World-Wide Volkswagen Corp.,* 444 U.S. 286, 297 (1980)). The contacts with Minnesota must be more than " 'random,' 'fortuitous,' or 'attenuated.' " *Burger King,* 471 U.S. at 475 (citations omitted).

The Eighth Circuit considers the following factors in determining whether personal jurisdiction is proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390 (8th Cir.1991). The first three factors are the primary factors, the remaining two are secondary factors. *Id.* The Court looks to all of the contacts in the aggregate and examines the totality of the circumstances in making its determination. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995.)

**\*12** Authority over the person may be conferred through either specific or general personal jurisdiction. *Helicopteros Nacionales de Colombia,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*S.A. v. Hall,* 466 U.S. 408, 414-15 & nn. 8-9 (1984). Courts do not examine the third primary factor when conducting a general jurisdiction analysis. *Lakin v. Prudential Sec., Inc,* 348 F.3d 704, 710-713 (8th Cir.2003). Instead, to confer general jurisdiction, federal due process requires that: 1) the nature and quality of the contacts with the forum state are "continuous and systematic"; and 2) the quantity of contacts with the forum state are "substantial." *Lakin,* 348 F.3d at 708.

Courts apply the test developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), to determine when a defendant's web site evidences continuous and systematic contacts with the forum state. *Lakin,* 348 F.3d at 712. The *Zippo* test provides:
At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin,* 348 F.3d at 710 *citing Zippo,* 952 F.Supp. at 1124. However, a web site's mere commercial functionality will not, without more, permit a court to determine if the defendant's quantity of contacts with the forum state are substantial in number. *Id.* Therefore, courts require a showing, separate from the web site's commercial functionality, that the defendant has a substantial number of contacts with the forum state. *Id.*

The Court finds that Plaintiffs have established a prima facie case that the Court may exercise general jurisdiction over Aetna because: 1) the commercial functionality of the *www.aetna.com* web site, Aetna's extensive contacts with Minnesota health care providers, and Aetna's promotion of health plans and services throughout Minnesota establish a prima facie case that the nature and quality of Aetna's contacts with Minnesota are systematic and continuous; and 2)

the number of Minnesota health care providers who participate with Aetna and the extent of its promotion of health plans and services throughout Minnesota constitute a prima facie case that Aetna's contacts with Minnesota are substantial in number.

**\*13** As an initial matter, the Court finds that Aetna has blurred the distinction between itself and its subsidiaries on *www.aetna.com* because the web site uses "Aetna" to refer to Defendant Aetna, Inc ., to describe Aetna, Inc.'s subsidiaries and to describe its brand. On the page entitled "Business Profile," under the heading "Aetna, Inc.," the web site notes, "Aetna (N.Y.SE: AET) is one of the nation's leaders in health care, dental, pharmacy, group life, disability and long term care insurance and employee benefits." (Doc. No. 52, Ex. 4.) Finally, the web page containing the "Legal Statement" also displays Aetna, Inc.'s registered trademark in the upper left corner, thereby reenforcing the interpretation that "Aetna," as used on *www.aetna.com,* refers to Aetna, Inc., as well as its subsidiaries. (Doc. 52, Ex. 17.)

Turning to the nature and quality of Aetna's contacts with Minnesota, the Court finds that Plaintiffs have established a prima facie case that Aetna's contacts are continuous and systematic because Plaintiffs have made a prima facie case that: 1) the commercial functionality of the *www.aetna.com* web site satisfies the middle ground of the *Zippo* test; and 2) Aetna actively maintains commercial relationships with Minnesota health care providers and actively promotes health plans and services throughout Minnesota. As set forth in *Lakin,*
The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin,* 348 F.3d at 710. The *www.aetna.com* web site apparently exhibits a high level of interactivity that is commercial in nature because it ostensibly: permits users to download claim forms, enables users to discover, and apply for, jobs online, encourages members to log in to view the status of their claims, and empowers customers to pay bills online when enrolling in health plans.

Apart from the systematic and continuous contacts Aetna maintains with Minnesota through its web site, Aetna also has commercial relationships with hundreds of primary care physicians in Minneapolis, Minnesota who have contracted with Aetna to provide health care services. Moreover, Aetna

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actively promotes its health plans and services throughout Minnesota.

In addition, the scale of Aetna's interactions with Minnesota health care providers is substantial. The list of primary care doctors on its web site ends with those whose last name begins with the letter "G". In addition, the list only includes primary care doctors. Aetna's search functionality permits searches for specialists, behavioral health providers, natural alternatives providers, and dentists. Therefore, the list supports the inference that it probably represents a fraction of the total number of health care professionals in Minneapolis, let alone Minnesota, who have contracted to provide services for Aetna. Moreover, the list of pharmacies that are apparently members of Aetna's Medicare Rx Plan network totals nineteen pages. These lists together constitute a prima facie case that Aetna has a substantial number of contacts with health care providers in Minnesota.

**\*14** Finally, Aetna's citation to *Kling* is unavailing. 2004 U.S. Dist. LEXIS 21045 at \*5-6. First, *Kling* addressed a parent company that had no direct contacts with the state of Minnesota, unlike Aetna which has direct contacts with Minnesota as evidenced in its web site. *Id.* at \*6. In addition, *Kling* acknowledges that a defendant's status as a holding company does not provide an absolute bar to personal jurisdiction where "a close interconnection exists between the parent and subsidiary, such as the consolidation of corporate image and operations". *Kling,* 2004 U.S. Dist. LEXIS 21045 at \*5-6. Here, as discussed above, Plaintiffs have made a prima facie case that Aetna has consolidated its image with that of its subsidiaries. Moreover, Aetna has apparently engaged in marketing operations on behalf of itself and its subsidiaries through the use of its web site.

### B. Sufficiency of Service

Aetna further contends that the Court should dismiss Plaintiffs' suit against it under Federal Rules of Civil Procedure 12(b)(4) and Rule 12(b)(5) because Plaintiffs served Aetna with a faulty summons. Aetna maintains that, under Federal Rule of Civil Procedure 4(a) ("Rule 4(a)"), a summons must, "identify the court and the parties." (Def. Aetna's Mem. Supp. Mot. Dismiss at 7-8.) Because Plaintiffs' summons only listed VData, and not VCode, as a plaintiff, Aetna argues the summons was flawed and the service insufficient. (*Id.*)

Plaintiffs contend that any defect in service was "a technical violation of Rule 4" and does not form the

basis for dismissal because it did not cause Aetna prejudice. (Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 7 *citing FDIC v. Swagger,* 773 F.Supp. 1244, 1249 (D.Minn.1991).) Plaintiffs argue that they served their Amended Complaint along with the defective summons and that the Amended Complaint "clearly identifies" VCode as a Plaintiff. If the Court finds that the error caused Aetna prejudice, Plaintiffs request that the Court exercise its discretion and quash service but retain the case. (*Id.*)

The Court recommends that Defendant's motion to dismiss for improper service and insufficiency of process be denied because Plaintiffs' service error was technical and did not cause Aetna prejudice. In the face of a technical violation of Rule 4(a), "dismissal is not appropriate unless the party has been prejudiced. Rule 4, Fed.R.Civ.P., is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Andersen Windows, Inc. v. Delmarva Sash & Door Co.* No. CV-02-74, 2002 U.S. Dist. LEXIS 12008, at \*9 (D. Minn. June 28, 2002) (internal citations omitted). Whereas in *Anderson,* the Plaintiffs served an additional summons to correct their original defective summons, the Plaintiffs in this case served their Amended Complaint with the defective summons and the Amended Complaint clearly stated that VCode was an additional plaintiff. Aetna has not alleged that it could not determine that VCode was a party to the dispute or that the error has caused it prejudice.

### C. Aetna's 12(b)(6) Motion-Infringement and Collateral Estoppel

**\*15** Aetna urges the Court to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that: 1) it fails to state a plausible infringement claim against Aetna as Plaintiffs have sued the wrong party; and 2) Plaintiffs' claims are barred by the doctrine of collateral estoppel. The Court recommends that Aetna's motion be denied.

### 1. Plaintiffs Have Sufficiently Pled a Claim of Infringement

Aetna contends that the Court should dismiss Plaintiffs' claim of infringement on the grounds that Plaintiffs have failed to sue the real party in interest, Source One Direct, Inc. ("Source One") with whom Aetna contracts to manufacture plastic and paper identification cards. (Def. Aetna's Resp. Supp. Mot.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dismiss at 6-7, 9-10.)

Aetna argues that the mailing attached as Exhibit C to Plaintiffs' Complaint is insufficient evidence to support a claim of infringement under § 271(a) because, even if the envelope bears Aetna's name and an allegedly infringing 2D barcode, there is no proof that the envelope was mailed, or if mailed, that it was mailed by Aetna. (Def. Aetna's Mem. Supp. Mot. Dismiss at 10.) Morever, Aetna alleges that Source One, and not Aetna, affixed the 2D barcode at issue in this case to Exhibit C. (*Id.* at 10-11.) In addition, Aetna disputes that its relationship with Source One can be accurately analogized to *Pelligrini v. Analog Devices, Inc., 375 F.3d 1113, 1118 (Fed.Cir.2004)*, which it contends "dealt with a situation in which a company employs an agent or contractor to *manufacture infringing articles on its behalf.*" (emphasis in original) (Def. Aetna's Resp. Supp. Mot. Dismiss at 6.) [FN5].

FN5. In support of its motion to dismiss, Aetna has submitted copies of: Mr. Kenneth Hewitt's letter of January 30, 2006 to ACACIA Technologies Group (Doc. No. 38, Ex. C), Mr. Hewitt's letter of February 28, 2006 to ACACIA Technologies Group (*Id.,* Ex. D), International Data Matrix's summary judgment motions filed in *Veritec v. International Data Matrix Inc.,* (M.D.Fla.Civ. No. 92-1170-CIV-T23B) ("*Veritec I* "), which respectively allege unenforceablity and invalidity of the 078 patent as grounds for summary judgment (*Id.* 38, Ex. E-F), Judge Steven D. Merryday's order dismissing the *Veritec I* case (*Id.,* Ex. G), a Vericode Identification Systems brochure (*Id.,* Ex. H), a *Newsweek* magazine article of April 21, 1986 entitled "Cracking Down on Counterfeits" (*Id.,* Ex. I), an *Automatic I.D. News* article entitled, "When bar coding can't fit the real estate" (*Id.,* Ex. J), a copy of the October 1986 article "Technologies for Secure Environments" (*Id.,* Ex. K), a copy of the "Master Professional Services Agreement between Aetna Life Insurance Company and Source One Direct, Inc." (Doc. No. 68-2), and a copy of "Schedule No. 1 to the Master Professional Services Agreement between Aetna Life Insurance Company and Source One Direct, Inc." (Doc. No. 68-3.) The Court cannot and will not consider such evidence outside the record on a motion to dismiss under Rule 12(b)(6).

Aetna further argues that Plaintiffs fail to state a claim for inducing infringement under 35 U.S.C. § 271(b) because 35 U.S.C. § 271(b) requires proof of "*actual intent to cause the acts which constitute the infringement,* " and Plaintiffs have failed to plead any such intent. (emphasis in original) (Def. Aetna's Resp. Supp. Mot. Dismiss at 7.)

Plaintiffs respond that their Amended Complaint states a valid claim against Aetna because: 1) it pleads sufficient information to satisfy the criteria established by the Federal Circuit in *Phonometics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed.Cir.2000)* for an infringement claim to withstand a Rule 12(b)(6) motion to dismiss; 2) Aetna's claims regarding Source One are based on evidence contained outside the pleadings and therefore not properly before the Court in its consideration of this motion; and 3) Aetna is a proper Defendant irrespective of Source One's possible infringement.

The Court finds that Plaintiffs' Amended Complaint satisfies the criteria established by the Eighth Circuit for surviving a Rule 12(b)(6) motion to dismiss in that it alleges facts, which if proven true, support a finding of infringement. The Eighth Circuit has held that "[a] complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (2003) citing Conley v. Gibson, 355 U.S. 41 (1957).* When making this determination, courts "accept [ ] as true all factual allegations in the complaint, but giv[e] no effect to conclusory allegations of law." *Id. citing Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir.2002)* (well-pleaded facts, not legal theories or conclusions, determine adequacy of complaint).

**\*16** Plaintiffs' Amended Complaint states valid claims under these criteria when it alleges:
14. Defendants manufacture, make, have made, use, sell, and/or offer for sale articles and/or services that infringe claims in the 524 patent and the 078 patent. In ... having made, using, selling such devices and/or services, Defendants are infringing directly, by inducement, and/or by contributing to the infringement of the 524 parent and 078 patent. Specifically, Defendants are applying and using symbols taught by the claims in the 524 patent and the 078 patent on their respective articles. (See Exhibits C, D, E, and F which are attached and made part of this Complaint.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rule 12(b)(6) requires that the Court accept as true Plaintiffs' allegation that Aetna applied and used the 2D barcode in making Exhibit C and/or that Aetna mailed the envelope with an infringing bar code. The facts alleged in the Amended Complaint, therefore, are sufficient to plead a claim that Aetna infringed the 524 and 078 patents. If these facts prove to be incorrect, Aetna is free to move for summary judgment at the conclusion of discovery in this case.

### 2. Plaintiffs' Claims Are Not Barred by Collateral Estoppel

Finally, Aetna argues that the Court should dismiss Plaintiffs' action against it because Plaintiffs are barred under the doctrine of collateral estoppel from alleging the validity and enforceability of the 524 and 078 patents.

First, according to Aetna, the dismissal order in *Veritec I* bars Plaintiffs from asserting the validity and enforceability of the 078 patent. (Def. Aetna's Mem. Supp. Mot. Dismiss at 21-23.) Moreover, Aetna asserts that the estoppel extends to the 524 patent because an unenforceability finding extends to all patents that, like the 078 and 524 patent, have "an immediate and necessary relationship." (Def. Aetna's Resp. Supp. Mot. Dismiss at 9.)

Plaintiffs argue that the *Veritec I* litigation does not collaterally estop their suit against Aetna because the *Veritec I* court never adjudicated the validity of the 078 patent and did not address the 524 patent. (Pls.' Resp. Opp. Def. Atena's Mot. Dismiss at 20-21.) In support, Plaintiffs contend that the doctrine of collateral estoppel applies only when the "determination of the issue was essential to a valid and final judgment." (*Id.* at 19 *citing Popp Telecom v. Am. Sharecom, Inc.,* 210 F.3d 928, 939 (8th Cir.2000).) As no responses and no replies to the *Veritec I* summary judgment motions were ever filed and the *Veritec I* court never ruled on the motions, Plaintiffs maintain that the *Veritec I* dismissal has no collateral estoppel effect in this case. (*Id.* at 18-19.)

The Court recommends that Aetna's motion to dismiss on the grounds of collateral estoppel be denied as the *Veritec I* case lacks preclusive effect with respect to the current litigation. The *Veritec I* court entered a stipulated dismissal of the case following a settlement of the case and not a stipulated judgment. The issues of the 078 patent's validity and enforceability were never adjudicated by the *Veritec I* court and hence, there was no valid or final judgment on the issue of the validity of the 078 patent in that

case.

### D. Source One Is Not A Necessary Party

**\*17** Aetna moves in the alternative to join Source One as a necessary and indispensable party under Federal Rule of Civil Procedure 19(a). (Def. Aetna's Mem. Supp. Mot. Dismiss at 11-12.) Rule 19(a) reads, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Aetna maintains that Source One meets the criteria for joinder as a necessary party under Rule 19(a), because: 1) "it conducted the allegedly infringing acts"; 2) any judgment against Aetna would have a preclusive effect against Source One; and 3) "any judgment would be inadequate without Source One, as Aetna, Inc. is powerless to prevent Source One from continuing its infringement of the 078 and 524 patents". (*Id.* at 11-12.)

Plaintiffs contend that Aetna's motion should be denied because complete relief can accorded among the current parties and Aetna is free to implead Source One under Federal Rule of Civil Procedure 14 if it wishes to bring Source One into the suit on a theory of indemnity or contribution. (*Id.* at 10-15.)

The Court likewise recommends that Aetna's motion to join Source One as a necessary and indispensable party under Federal Rule of Civil Procedure 19(a) be denied because complete relief can be accorded between Plaintiffs and Aetna without Source One's involvement and Source One's ability to protect its interests will not be impeded by its non-participation in this lawsuit. Aetna is always free to implead Source One into this case.

### IV. AETNA'S MOTION FOR SANCTIONS

Aetna urges the Court to impose Federal Rule of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Civil Procedure Rule 1 1(c) ("Rule 11") sanctions on
Plaintiffs because: 1) Plaintiffs have "failed to
conduct a reasonable pre-filing investigation and
establish a plausible infringement theory" before
filing this suit; and 2) Plaintiffs are attempting to
enforce patents that they know are invalid and
unenforceable as a result of their involvement with
the *Veritec I* litigation and the PTO reexamination
process. (Def. Aetna's Mem. Supp. Mot. Sanctions at
4 *citing Q-Pharma, Inc. v. Andrew Jergens Co.* 360
F.3d 1295 (2004))

Plaintiffs respond that sanctions are not appropriate
because: 1) Aetna's motion is premature; 2) Plaintiffs
have stated valid claims against Aetna for direct
infringement and inducing infringement; and 3) the
524 and 078 patents are valid and enforceable. (Pls.'
Resp. Opp. Def. Aetna's Mot. Sanctions at 2-7, 8,
12.) Plaintiffs acknowledge that Aetna properly
served notice of its intention to file this motion on
August 4, 2006 and dispute Aetna's claims on the
merits. (*Id.* at 2.)

**\*18** The Court recommends that Aetna's motion for
sanctions be denied. First, the Court has found that
Plaintiffs' claims survive Aetna's Rule 12(b)(6)
motion to dismiss. In addition, no court has
adjudicated, nor has the PTO determined, that the
524 and  078 are either invalid or unenforceable.
Therefore, Plaintiffs have engaged in no improper
conduct, let alone conduct sanctionable under Rule
11.

### V. Plaintiffs' Motions to Strike

As Plaintiffs protest Aetna's submission of evidence
outside the pleadings in support of its 12(b)(6)
motion, Plaintiffs have submitted motions to strike
Exhibits C-K to the affidavit of Will Stute in Support
of Aetna's Motion to Dismiss (Doc. No. 38, Ex. C-
K), as well as Exhibits A and B to the affidavit of
Will Stute, submitted in conjunction with the reply
brief in support of the same motion (Doc No. 68, Ex.
1-2). As the Court has excluded these exhibits from
consideration in its examination of the Aetna's
12(b)(6) motion, the Court will deny these motions as
moot.

**THEREFORE,     IT     IS     HEREBY
RECOMMENDED that:**

1. Merchant's Motion to **Stay** Litigation Pending
**Reexamination** Proceedings (Doc. No. 22) be
**GRANTED;**

2. Aetna's Motion to Dismiss (Doc. No. 42) be
**DENIED;**

3. Aetna's Motion for Sanctions (Doc. No. 55) be
**DENIED;**

4. Plaintiff's Motion to Strike Exhibits (Doc. No. 59)
be **DENIED as MOOT;**

5. Plaintiff's Motion to Strike Exhibits (Doc. No. 71)
be **DENIED as MOOT.**

D.Minn.,2006.
VData, LLC v. Aetna, Inc.
Slip Copy, 2006 WL 3392889 (D.Minn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

United States District Court, E.D. Missouri, Eastern Division.

WATLOW ELECTRICAL MANUFACTURING COMPANY, Plaintiff,

v.

OGDEN MANUFACTURING COMPANY, Defendant.
**No. 4:05CV2094 CDP.**

July 10, 2006.

Bryan K. Wheelock, Harness and Dickey, St. Louis, MO, for Plaintiff.

Lisa A. Pake, Haar and Woods, LLP, St. Louis, MO, for Defendant.

*C MEMORANDUM AND ORDER*

CATHERINE D. PERRY, District Judge.

**\*1** This matter is before me on defendant Ogden Manufacturing Company's motion to **stay** this patent infringement suit pending **reexamination** of the patent at issue, U.S. Patent No. 4,934,831, by the Patent and Trademark Office (PTO). Plaintiff Watlow Electric Manufacturing Company contends that the impending expiration of the 831 Patent renders the imposition of a **stay** unduly prejudicial at this time. After reviewing the parties' briefs, I conclude that the benefits of a **stay** outweigh any potential for prejudice. Accordingly, I will grant Ogden's motion.

*Background*

Watlow filed its complaint on November 7, 2005. Watlow withheld service of the complaint for the next four months while it attempted to negotiate a licensing agreement with Ogden. In a letter dated February 17, 2006, Ogden informed Watlow that it did not see any legal or factual basis for the complaint due to the similarity between the 831 Patent and prior art disclosed in U.S. Patent No. 4,018,624. Ogden also stated that should Watlow proceed with the pending litigation, Ogden would seek **reexamination** of the 831 Patent and a corresponding **stay** of the litigation.

Watlow served Ogden with a copy of its complaint on March 7, 2006. Ogden filed its answer and counterclaim on April 13, 2006. Watlow answered Ogden's counterclaim on May 8, 2006. On May 18, 2006, Ogden filed a request for an ex parte **reexamination** of the 831 Patent pursuant to 35 U.S.C. § § 302-307.[FN1] One day later, Ogden filed this motion to **stay** all proceedings pending **reexamination** of the 831 Patent. On June 30, 2006, the PTO granted Ogden's request for an ex parte **reexamination** of the 831 Patent.

> FN1. As Ogden explains in its brief, the request for reexamination relies on U.S. Patent No. 3,942,242. Although this is not the same patent cited in Ogden's February 17, 2006 letter to Watlow, Ogden maintains that the 624 and 242 patents are substantively the same.

*Discussion*

In a patent suit, courts "have inherent power to manage their dockets and **stay** proceedings, including the authority to order a **stay** pending conclusion of a PTO **reexamination**." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citations omitted). In fact, sponsors of the patent **reexamination** legislation favored **stays** by the district courts pending **reexamination** as a means of settling disputes quickly, lowering costs, and providing the courts with the PTO's expertise. *Lentek Int'l, Inc. v. Sharper Image Corp.,* 169 F.Supp.2d 1360, 1362 (M.D.Fla.2001) (citations omitted). Courts consider three factors when determining whether a **stay** should should be granted: (1) whether discovery is complete and whether a trial date has been set; (2) whether a **stay** of litigation will simplify the issues in question and facilitate the trial of the case; and (3) whether a **stay** would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party. *Middleton, Inc. v. Minnesota Mining and Manufacturing Co.,* No. 4:03-CV-40493, 2004 WL 1968669, at \*3 (S.D.Iowa August 24, 2004) (citations omitted).

These first two factors weigh in favor of granting a motion to stay in this case. In fact, Watlow does not even address these two factors in its brief in opposition to Ogden's motion to stay. First, discovery has not begun and a trial date has not been set. *Cf. Soverain Software LLC v. Amazon.com, Inc.,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005) (denying motion to stay that was filed one year after complaint had been filed, one week after the *Markman* hearing, and one month before the scheduled discovery completion date). The parties' Rule 16 conference has been postponed pending resolution of this motion. In sum, the bare minimum amount of resources have been expended in this case thus far. *See See Tap Pharm. Prod., Inc. v. Atrix Labs., Inc.,* No. 0C 3

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7822, 2004 WL 422697, at *1 (N.D.Ill. March 3, 2004) (granting stay where case had not progressed beyond the initial pleadings stage).

*2 Second, there is a high likelihood that granting a **stay** will simplify the issues and facilitate the trial in this case. The validity of the 831 Patent is a central issue before this Court and the PTO. As the Federal Circuit has recognized, "[o]ne purpose of the **reexamination** procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the **reexamination** proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983).

The PTO recently granted Ogden's request for **reexamination**. Statistics show that there is a high likelihood that at least some of the claims of the 831 Patent will be amended.[FN2] By granting a **stay** at this juncture, the parties will save the expense of litigating issues that the PTO's experts may render moot. Additionally, any review of prior art that I must conduct will be enhanced by the PTO's expert opinion. *See In re Etter*, 756 F.2d 852, 857 (Fed.Cir.1985) ("When the patent is concurrently involved in litigation, an auxiliary function [of the **reexamination**] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

> FN2. Both parties present statistics from the PTO indicating that 64% of ex parte reexamination result in changes to the patent claims.

Watlow contends that third factor listed above weighs against granting a **stay** in this case. According to Watlow, a **stay** could effectively prohibit Watlow from enjoining Ogden's alleged infringement due to the impending expiration of the 831 Patent. The 831 Patent expires on March 20, 2009, roughly 32 months from the date of this order. Based on the most recent figures released from the PTO, the average pendency of an ex parte **reexamination** is 22.6 months. Watlow's own statistics suggest that the average patent case in my Court lasts 11.3 months. Together, these two numbers suggest that this matter should be resolved about the time the 831 Patent expires. If the 831 Patent expires before this case is resolved, Watlow would lose the right to enjoin Ogden's infringement and instead only be entitled to monetary damages.

While I am certainly sensitive to the prejudice that Watlow would suffer if it were denied the right to injunctive relief, Watlow's doomsday scenario is speculative, at best. First, Watlow fails to consider that the **reexamination** process will most likely narrow, if not eliminate, the issues that must be decided by this Court. Thus, the PTO's determination is likely to reduce the duration of any subsequent court proceedings. *See Tap Pharm.*, 2004 WL 422697, at *1 (noting that **reexamination** process could simplify any subsequent court proceedings, thus making up for any delay). Second, as Ogden explains, the PTO has specific guidelines which call for the expedited handling of **reexamination** determinations in cases where litigation has been stayed pending **reexamination**. This suggests that the PTO statistics cited by Watlow may not apply in this case. Finally, Watlow underestimates my ability to address issues that may arise during the **reexamination** process. This includes the ability to order expedited discovery once the **reexamination** process is complete, or even lifting the **stay** should the PTO fail to address Ogden's **reexamination** request in a timely manner. In sum, these three factors suggest that Watlow's concern over the impending expiration date of the 831 patent may be premature at this stage of the litigation and **reexamination** process.

*3 For the foregoing reasons, I find the benefits to both parties and the Court that will result from a stay outweigh the potential for prejudice to Watlow.

Accordingly,

IT IS HEREBY ORDERED that defendant Ogden Manufacturing Company's motion to **stay** [# 14] is granted. All proceedings in this suit are stayed pending **reexamination** of U.S. Patent No. 4,934,831 by the United States Patent and Trademark Office.

IT IS FURTHER ORDERED that the parties shall notify the Court within ten (10) days of any action by the PTO on the re-examination.

E.D.Mo.,2006.
Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.
Slip Copy, 2006 WL 1892546 (E.D.Mo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.