.

# EXHIBIT 19

DECLARATION OF J. CHRISTOPHER CARRAWAY IN SUPPORT
OF DEFENDANT MICROSOFT'S MOTION TO STAY PROCEEDINGS PENDING
COMPLETION OF THE REEXAMINATION OF THE PATENTS-IN-SUIT

Dockets.Justia.com

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000065 | 12/08/2004 | 6155906 | |

Mark Kammer
KAMMER BROWNING PLLC
7700 Broadway, Suite 202
San Antonio TX  78209

| EXAMINER |
|---|
| Amy B. Vanatta |

| ART UNIT | PAPER |
|---|---|
| 3765 | |

DATE MAILED:

03/15/05

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Barry E. Bretschneider
MORRISON & FOERSTER LLP
1650 Tysons Boulevard
Suite 300
McLean VA  22102

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,065*.

PATENT NUMBER *6,155,906*.

TECHNOLOGY CENTER *3700*.

ART UNIT *3765*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| OFFICE ACTION IN INTER PARTES REEXAMINATION | Control No.
95/000,065 | Patent Under Reexamination
6155906 |
| | Examiner
Amy B. Vanatta | Art Unit
3765 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on _____

## RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:

*For Patent Owner's Response*:
    2 MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response*:
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

## PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1.☒ Notice of References Cited by Examiner, PTO-892
2.☒ Information Disclosure Citation, PTO-1449 or PTO/SB/08
3.☐ _____

## PART II. SUMMARY OF ACTION:

1a. ☒ Claims 1-14 are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims 1-14 are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____        ☐ are acceptable.        ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:    ☐ approved.    ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No _____.
10. ☐ Other _____

Application/Control Number: 95/000,065                                    Page 2
Art Unit: 3765

### *Reexamination*

1.     This first Office action on the merits is being mailed subsequent to the order
granting reexamination.  37 CFR 1.935.

### *Issues Raised by the Requestor*

2.     It is requested that the Patent Owner and the Third Party Requestor refer to
these Issue numbers in future correspondence.

**Issue 1**:  The requestor submits that claims 1-7, 12, and 14 of the May patent are
unpatentable under 35 U.S.C. 102(b) over JP 58-110006.

**Issue 2**:  The requestor submits that claims 8 and 10 of the May patent are
unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of Woods (US
4,638,513).

**Issue 3**:  The requestor submits that claims 9 and 13 of the May patent are
unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of Erwin (US
5,772,492).

**Issue 4**:  The requestor submits that claims 11 and 12 of the May patent are
unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of the Elle reference.

**Issue 5**:  The requestor submits that claim 14 of the May patent is unpatentable
under 35 U.S.C. 103(a) over JP 58-110006 in view of Fernandes (US 6,086,451).

**Issue 6**:  The requestor submits that claims 1-7, 11, and 12 of the May patent are
unpatentable under 35 U.S.C. 102(b) over the Elle reference.

Application/Control Number: 95/000,065                                    Page 3
Art Unit: 3765

**Issue 7**: The requestor submits that claim 8 of the May patent is unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of Woods (US 4,638,513), Fernandes (US 6,086,451), and/or Erwin (US 5,772,492).

**Issue 8**: The requestor submits that claim 9 of the May patent is unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of Woods (US 4,638,513), Fernandes (US 6,086,451), and/or Erwin (US 5,772,492).

**Issue 9**: The requestor submits that claim 10 of the May patent is unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of Woods (US 4,638,513), Fernandes (US 6,086,451), and/or Erwin (US 5,772,492).

**Issue 10**: The requestor submits that claim 13 of the May patent is unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of Woods (US 4,638,513), Fernandes (US 6,086,451), and/or Erwin (US 5,772,492).

**Issue 11**: The requestor submits that claim 14 of the May patent is unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of Woods (US 4,638,513), Fernandes (US 6,086,451), and/or Erwin (US 5,772,492).

**Issue 12**: The requestor submits that claims 1-7 of the May patent are unpatentable under 35 U.S.C. 102(b) over Fridolph (US 1,544,386).

**Issue 13**: The requestor submits that claims 1-7 of the May patent are unpatentable under 35 U.S.C. 102(e) over Flaherty (US 6,186,861).

**Issue 14**: The requestor submits that claim 8 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

Application/Control Number: 95/000,065                    Page 4
Art Unit: 3765

**Issue 15**: The requestor submits that claim 9 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 16**: The requestor submits that claim 10 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 17**: The requestor submits that claim 11 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 18**: The requestor submits that claim 12 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 19**: The requestor submits that claim 13 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 20**: The requestor submits that claim 14 of the May patent is unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 21**: The requestor submits that claims 1-7 of the May patent are unpatentable under 35 U.S.C. 102(a) over Collins (GB 2,339,139).

**Issue 22**: The requestor submits that claim 8 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 23**: The requestor submits that claim 9 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 24**: The requestor submits that claim 10 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 25**: The requestor submits that claim 11 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 26**: The requestor submits that claim 12 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 27**: The requestor submits that claim 13 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

**Issue 28**: The requestor submits that claim 14 of the May patent is unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of the Elle reference, Woods (US 4,638,513), and/or Erwin (US 5,772,492).

Application/Control Number: 95/000,065                               Page 6
Art Unit: 3765

**Issue 29**: The requestor submits that claims 1, 2, 4-7, 11, and 14 of the May

patent are unpatentable under 35 U.S.C. 102(b) over the Wacoal Corporation Product

Catalog.

### Additional Issues

**Issue 30**: The examiner has rejected claim 14 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of

Fernandes (US 6,086,451).

**Issue 31**: The examiner has rejected claim 14 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Collins (GB 2,339,139) in view of Fernandes

(US 6,086,451).

**Issue 32**: The examiner has rejected claims 8 and 9 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861).

**Issue 33**: The examiner has rejected claim 13 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of Murray

(US 3,311,112).

**Issue 34**: The examiner has rejected claims 8 and 9 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of LoCascio

(US 3,227,185).

**Issue 35**: The examiner has rejected claim 13 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Flaherty (US 6,186,861) in view of LoCascio

in further view of Murray (US 3,311,112).

Application/Control Number: 95/000,065                               Page 7
Art Unit: 3765

**Issue 36:** The examiner has rejected claims 8 and 9 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of LoCascio (US

3,227,185).

**Issue 37:** The examiner has rejected claim 13 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over the Elle reference in view of LoCascio in

further view of Murray (US 3,311,112).

**Issue 38:** The examiner has rejected claims 8 and 9 of the May patent as being

unpatentable under 35 U.S.C. 103(a) over Fridolph (US 1,544,386).


### *Claim Rejections - 35 USC § 102 and 35 USC § 103*

3.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

4.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the

Application/Control Number: 95/000,065                          Page 8

Art Unit: 3765

invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

**Issue 1**:

5.      Claims 1, 4, and 5 of the May patent are unpatentable under 35 U.S.C. 102(b) as

being anticipated by JP 58-110006.

        JP 58-110006 discloses an undergarment article of clothing (1) configured to

receive and retain at least one strap (3) at a plurality of strap attachment points (2) as in

claims 1 and 5. The '006 reference discloses a plurality of strap sets (see Fig. 2), each

of the strap sets comprising at least one strap (3). Each of the straps (3) have first and

second strap connectors (7) at first and second ends of the straps, which are removably

attachable to the strap attachment points (2) on the undergarment. Each of the strap

sets comprise a material characteristically distinct from a material of every other strap

set;  see Fig. 2, which shows three straps, each strap forming a strap set within the

meaning of claims 1 and 5, and each strap ("strap set") shown in Fig. 2 differs from the

material of the other two straps ("strap sets") as in claims 1 and 5. The straps are

interchangeable and provide a distinct exposed portion of the undergarment as in claim

1. Regarding claim 4, the '006 reference discloses that the straps are made of leather,

plaited cord, enamel, beads, precious metal, or other materials. As shown in Fig. 2, the

characteristically distinct materials comprise distinctions in color, composition, width,

and/or texture.

6.      This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 2-6 of the request, and it is being adopted

essentially as proposed in the request regarding claims 1, 4, and 5.

Application/Control Number: 95/000,065                                    Page 9
Art Unit: 3765

7.      The third party requestor's proposal that claims 2, 3, 6, 7, 12, and 14 are

unpatentable under 35 U.S.C. 102(b) over JP 58-110006 is not adopted because the

'006 reference does not disclose that each strap set comprises two straps. The '006

reference merely shows individual straps which are distinct from one another, as shown

in Fig. 2. There is no disclosure in the English language translation of the document or

the figures of the document of there being a pair of straps in each strap set, with the

strap sets being distinct from other sets and interchangeable with the other pairs.


**Issue 2**:

8.      The third party requestor's proposal that claims 8 and 10 of the May patent are

unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of Woods is not

adopted because claims 8 and 10 depend from claim 6, and the rejection of claim 6

over JP 58-110006 is not being adopted for the reasons set forth above.


**Issue 3**:

9.      The third party requestor's proposal that claims 9 and 13 of the May patent are

unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of Erwin is not adopted

because claims 9 and 13 depend from claim 6, and the rejection of claim 6 over JP 58-

110006 is not being adopted for the reasons set forth above.

Application/Control Number: 95/000,065                                      Page 10

Art Unit: 3765

**Issue 4:**

10.    The third party requestor's proposal that claims 11 and 12 of the May patent are

unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of the Elle reference is

not adopted because claims 11 and 12 depend from claim 6, and the rejection of claim

6 over JP 58-110006 is not being adopted for the reasons set forth above.


**Issue 5:**

11.    The third party requestor's proposal that claim 14 of the May patent is

unpatentable under 35 U.S.C. 103(a) over JP 58-110006 in view of Fernandes is not

adopted because claim 14 depends from claim 6, and the rejection of claim 6 over JP

58-110006 is not being adopted for the reasons set forth above.


**Issue 6:**

12.    Claims 1-7, 11, and 12 of the May patent are unpatentable under 35 U.S.C.

102(b) over the Elle reference.

       The Elle reference discloses an undergarment article of clothing in the form of a

brassiere which is configured to receive and retain at least one strap at a plurality of

strap attachment points as in claims 1 and 5 (see figures and text on page 4 of the Elle

reference, text on page 9 of the Elle reference, and figures and text on page 10 of the

Elle reference).  The Elle reference discloses a plurality of strap sets (see pages 4, 9,

and 10 of Elle), each of the strap sets comprising at least one strap as in claims 1 and

5.  The strap sets are clearly shown on page 10 of Elle as each comprising two straps

(see figure in lower left portion of page and three small figures on right side of page), as

in claims 2, 3, and 6.  Each of the straps have first and second strap connectors at first

and second ends of the straps, which are removably attachable to the strap attachment

points on the front and back of the undergarment.  Each of the strap sets comprise a

material characteristically distinct from a material of every other strap set;  see page 10,

which shows three strap sets in the small photos and four strap sets in the large photo,

with each strap set differing from the material of the other strap sets as in claims 1, 5,

and 6.  The straps are interchangeable and provide a distinct exposed portion of the

undergarment when worn in conjunction with an outer garment (see pages 4, 6, and 9

of Elle), as in claims 1 and 6.  Regarding claims 4 and 7, the Elle reference discloses on

page 10 that the straps are made of transparent material, sparkly material, and two-

color material, thus being distinct in color, material composition, and/or texture.  Also

see the sets shown in the large photo on page 10, which differ in color, material

composition, texture and/or strap width, and see strap descriptions of pages 4 and 9,

disclosing interchangeable straps made of pearl chains, gold and silver chains, diamond

chains, and various different colors.  Regarding claim 11, the Elle reference discloses

that one of the strap sets has straps comprising transparent material (see pages 4, 9,

and 10).  On pages 5, 6, and 10, the Elle reference shows a strap set having straps

comprising multiple strands of material connected together at first and second ends

thereof, as in claim 12.

Application/Control Number: 95/000,065                                    Page 12
Art Unit: 3765

13.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 11-13 of the request, and it is being adopted

essentially as proposed in the request regarding claims 1-7, 11, and 12.


**Issue 7**:

14.    Claim 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over the Elle

reference in view of Woods.

       The Elle reference discloses a brassiere with detachable and interchangeable

straps, and at least some of the strap sets comprise straps made of flat lengths of fabric

as in claim 8. The Elle reference does not specifically disclose a strap width in the

range of 0.5 to 1.0 inch, however such a strap width is conventional in the art and

provides for a desirable combination of support and wearer comfort. Woods discloses a

bra having straps which "preferably are ¾ to 1 inch in width" (col. 4, line 6). Such a

range meets the limitation of claim 8. It would have been obvious to one having

ordinary skill in the art at the time the invention was made to provide at least one of the

strap sets of the brassiere shown in the Elle reference to have straps of a width of ¾ to

1 inch, such as taught by Woods, in order to provide straps that are both comfortable

and supportive, and furthermore since it has been held that where the general

conditions of a claim are disclosed in the prior art, discovering the optimum or workable

range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.

15.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 11 and 13-14 of the request, and it is being

adopted as proposed in the request regarding claim 8.

16.    The third party requestor's proposal that claim 8 is alternatively unpatentable

under 35 U.S.C. 103(a) over the Elle reference in view of Fernandes and/or Erwin is not

adopted because neither Fernandes nor Erwin disclose a strap width in the range of 0.5

to 1 inch.


**Issue 8:**

17.    The third party requestor's proposal that claim 9 is unpatentable under 35 U.S.C.

103(a) over the Elle reference in view of Woods, Fernandes, and/or Erwin is not

adopted because these references do not disclose a brassiere strap width in the range

of 1 to 3 inches.  The requestor does not elaborate as to how Woods, Fernandes,

and/or Erwin render claim 9 obvious over the Elle reference in view of these references

(see pages 13-14 of the request), however the Erwin reference is discussed in the

proposed rejection of claim 9 as obvious over JP 58-110006  in view of Erwin (see page

8 of request).  Here, the requestor states that Erwin explicitly discloses strap widths of

one inch and greater.  The examiner notes that Erwin discloses strap widths of about 1

inch to about 13 inches for the straps 34,36 of the undergarment 2 (col. 6, lines 46-48),

while the straps 21,23 of the brassiere 1 are shown as much thinner than straps 34,36

(see Fig. 1(c)).  Thus, Erwin does not provide a teaching as to brassiere strap widths in

the range of 1-3 inches and would not motivate one of ordinary skill in the art to

Application/Control Number: 95/000,065                                Page 14

Art Unit: 3765

construct the straps of the brassiere shown in the Elle reference to be in the range of 1-

3 inches.


**Issue 9**:

18.     Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over the Elle

reference in view of Woods.

        The Elle reference discloses a brassiere with detachable and interchangeable

straps, however none of the straps are specifically disclosed as comprising tubular

lengths of fabric having a diameter in the range of 0.1 inch to 0.5 inch. Woods discloses

a bra having straps comprising tubular lengths of fabric which are formed by folding

over the edges of the length of fabric and joining the edges to form a tubular fabric, as

shown Figs. 1-3. Woods discloses that the straps may have a width of a ½ inch or

greater (col. 4, lines 4-5). One having routine skill in the art would be motivated to

choose a strap having a width of ½ inch since straps having such a width are well

known, as disclosed by Woods, and since one having ordinary skill in the art would

recognize that a narrow ½ inch strap would be more aesthetically pleasing with certain

styles of shirts, such as shirts having narrow straps. A strap having a width of ½ inch

would meet the limitation of being in the range of 0.1 inch to 0.5 inch, as in claim 10. It

would have been obvious to one having ordinary skill in the art at the time the invention

was made to provide one of the strap sets of the brassiere shown in the Elle reference

to have straps made out of tubular fabric, since straps are conventionally formed out of

tubular fabric, such as shown by Woods, in order to provide finished edges which resist

Application/Control Number: 95/000,065                                   Page 15
Art Unit: 3765

fraying. Additionally, it would have been obvious to one having ordinary skill in the art at

the time the invention was made to construct the straps of one of the strap sets of the

brassiere shown in the Elle reference out of tubular fabric having a width of ½ inch, such

as taught by Woods, in order to provide straps that are aesthetically pleasing when

outer garments with thin straps are worn, and furthermore since it has been held that

discovering an optimum value of a result effective variable involves only routine skill in

the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

19.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 11 and 13-14 of the request, and it is being

adopted as proposed in the request regarding claim 10.

20.    The third party requestor's proposal that claim 10 is alternatively unpatentable

under 35 U.S.C. 103(a) over the Elle reference in view of Fernandes and/or Erwin is not

adopted because neither Fernandes nor Erwin disclose a strap width in the range of 0.1

to 0.5 inch.


**Issue 10:**

21.    The third party requestor's proposal that claim 13 is unpatentable under 35

U.S.C. 103(a) over the Elle reference in view of Woods, Fernandes, and/or Erwin is not

adopted because none of these references disclose strap connectors which each

comprise two component connectors adjacent each other on the ends of the straps, and

four strap attachment points which each comprise two receptors for receiving the two

component connectors.

Application/Control Number: 95/000,065                                    Page 16

Art Unit: 3765

**Issue 11:**

22.    Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over the Elle

reference in view of Fernandes.

The Elle reference discloses a brassiere with detachable and interchangeable

decorative straps, including strap attachment points on the front and back of the

brassiere. The strap attachment points of the brassiere disclosed in the Elle reference

are designed to secure the hook which is at the end of each strap (see hooks shown on

page 10). The Elle reference does not disclose strap attachment points which comprise

at least two groups of adjacent attachment points as in claim 14. Fernandes discloses a

brassiere having detachable decorative straps which attach to at least two strap

attachment points (70 and 69). The strap attachment points comprise at least two

groups of adjacent strap attachment points (see the loops shown in Fig. 1 on each side

of both the front and back of the brassiere, and see loops 68, 70, and 72 shown in Fig. 5

and loops 69, 71, and 73 as shown in Fig. 6.). These groups of adjacent attachment

points allow placement of the straps at offset alternative positions, as in claim 14.

Fernandes discloses that this configuration of plural adjacent loops provides a variety of

attachment positions at the option of the user, so that the strap positioning is adjustable

depending upon the location of the straps in the outer garment and depending upon the

preferences of the wearer (col. 2, lines 31-39). It would have been obvious to one

having ordinary skill in the art at the time the invention was made to provide plural

groups of adjacent strap attachment points on the brassiere disclosed in the Elle

reference in order to permit adjustability of the strap position depending upon the

Application/Control Number: 95/000,065                                    Page 17
Art Unit: 3765

location of the straps in the outer garment and depending upon the preferences of the

wearer, as taught by Fernandes.

23.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on pages 11 and 13-14 of the request, and it is being

adopted as proposed in the request regarding claim 14.

24.    The third party requestor's proposal that claim 14 is alternatively unpatentable

under 35 U.S.C. 103(a) over the Elle reference in view of Woods and/or Erwin is not

adopted because neither Woods nor Erwin disclose at least two groups of strap

attachment points allowing placement of the straps at offset alternative positions on the

brassiere.


**Issue 12:**

25.    Claims 1-7 are rejected under 35 U.S.C. 102(b) as being unpatentable over

Fridolph.

        Fridolph discloses an undergarment article of clothing (1) configured to receive

and retain at least one strap (2 and 3) at a plurality of strap attachment points (4) as in

claims 1 and 5.  Fridolph discloses that the undergarment may be a brassiere (p. 1, line

21), and includes at least two strap attachment points (4) as claimed.  Fridolph

discloses a plurality of strap sets which comprise a pair of straps each, the sets being

interchangeable to provide shoulder straps of a color which matches the outer garments

(p. 1, lines 28-39).  Each of the straps (2,3) have first and second strap connectors (6,7)

at first and second ends of the straps, which are removably attachable to the strap

Application/Control Number: 95/000,065                                    Page 18

Art Unit: 3765

attachment points (4) on the undergarment.  Fridolph discloses that "different colored

shoulder straps may be interchanged".  These different colored straps form at least two

sets of strap pairs, thus meeting the limitation that each of the sets comprises a material

distinct from every other strap set.  The straps provide a distinct exposed portion of the

undergarment as in claim 1.  The undergarment has two attachment points (4) on the

front and two attachment points (4) on the back, as in claim 3.  The strap sets differ in

color, as in claims 4 and 7.

26.     This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 14  of the request, and it is being adopted

essentially as proposed in the request for claims 1-7.


**Issue 13**:

27.     Claims 1-7 are rejected under 35 U.S.C. 102(e) as being unpatentable over

Flaherty.

        Flaherty discloses an undergarment article of clothing in the form of a brassiere

(200) having detachable straps (see Fig. 4).  The brassiere body (212) is configured to

receive and retain at least one strap (214) at a plurality of strap attachment points (220)

as in claims 1 and 5.  The brassiere includes at least two strap attachment points (220)

as recited in claim 6.  Flaherty discloses a plurality of strap sets (214, 314, and 414)

which comprise a pair of straps each, the sets being interchangeable to provide

shoulder straps of a desired design or color (col. 5, line 64 through col. 6, line 5).  Each

of the straps have first and second strap connectors (hooks 222,322, and 422) at first

Application/Control Number: 95/000,065                    Page 19
Art Unit: 3765

and second ends of the straps, which are removably attachable to the strap attachment

points (loops 220) on the undergarment.  The undergarment has two attachment points

(220) on the front and two attachment points (220) on the back, as in claim 3.  The

material of the straps of each strap set is characteristically distinct from a material of

every other strap set, as shown in Fig. 4 (see strap sets comprising straps 214, 314,

and 414, which differ from one another as illustrated in the figure).  Flaherty discloses

that the strap sets may differ in color (col. 6, lines 1-14), as in claims 4 and 7.  The

straps are interchangeable and provide a distinct exposed portion of the undergarment

when worn in conjunction with an outer garment (col. 4, lines 25-31) as in claims 1

and 6.

28.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 14  of the request, and it is being adopted

essentially as proposed in the request for claims 1-7.


**Issue 14**:

29.    Claim 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of Woods.

Flaherty discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claim 8.  Flaherty does not specifically

disclose a strap width in the range of 0.5 to 1.0 inch, however such a strap width is

conventional in the art and provides for a desirable combination of support and wearer

comfort.  Woods discloses a bra having straps which "preferably are ¾  to 1 inch in

Application/Control Number: 95/000,065                    Page 20
Art Unit: 3765

width" (col. 4, line 6). Such a range meets the limitation of claim 8. It would have been

obvious to one having ordinary skill in the art at the time the invention was made to

provide at least one of the strap sets of the brassiere of Flaherty to have straps of a

width of ¾ to 1 inch, such as taught by Woods, in order to provide straps that are both

comfortable and supportive, and furthermore since it has been held that where the

general conditions of a claim are disclosed in the prior art, discovering the optimum or

workable range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.

30.     This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 14 of the request, and it is being adopted as

proposed in the request regarding claim 8.

31.     The third party requestor's proposal that claim 8 is alternatively unpatentable

under 35 U.S.C. 103(a) over Flaherty in view of the Elle reference and/or Erwin is not

adopted because neither the Elle reference nor Erwin specifically disclose a strap width

in the range of 0.5 to 1 inch.


**Issue 15:**

32.     The third party requestor's proposal that claim 9 is unpatentable under 35 U.S.C.

103(a) over Flaherty in view of the Elle reference, Woods, and/or Erwin is not adopted

because these references do not specifically disclose a brassiere strap width in the

range of 1 to 3 inches. The requestor does not elaborate as to how Elle, Woods, and/or

Erwin render claim 9 obvious over Flaherty in view of these references (see page 14 of

the request), however the Erwin reference is discussed in the proposed rejection of

Application/Control Number: 95/000,065                                    Page 21
Art Unit: 3765

claim 9 as obvious over JP 58-110006 in view of Erwin (see page 8 of request). Here,

the requestor states that Erwin explicitly discloses strap widths of one inch and greater.

The examiner notes that Erwin discloses strap widths of about 1 inch to about 13 inches

for the straps 34,36 of the undergarment 2 (col. 6, lines 46-48), while the straps 21,23 of

the brassiere 1 are shown as much thinner than straps 34,36 (see Fig. 1(c)). Thus,

Erwin does not provide a teaching as to brassiere strap widths in the range of 1-3

inches and would not motivate one of ordinary skill in the art to construct the straps of

the brassiere of Flaherty to be in the range of 1-3 inches.


**Issue 16:**

33.    Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of Woods.

Flaherty discloses a brassiere with detachable and interchangeable straps,

however the straps are not disclosed as tubular lengths of fabric having a diameter in

the range of 0.1 inch to 0.5 inch. Woods discloses a bra having straps comprising

tubular lengths of fabric which are formed by folding over the edges of the length of

fabric and joining the edges to form a tubular fabric, as shown Figs. 1-3. Woods

discloses that the straps may have a width of a ½ inch or greater (col. 4, lines 4-5). One

having routine skill in the art would be motivated to choose a strap having a width of ½

inch since straps having such a width are well known, as disclosed by Woods, and

since one having ordinary skill in the art would recognize that a narrow ½ inch strap

would be more aesthetically pleasing with certain styles of shirts, such as shirts having

narrow straps. A strap having a width of ½ inch would meet the limitation of being in the range of 0.1 inch to 0.5 inch, as in claim 10. It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide at least one of the strap sets of the brassiere of Flaherty out of tubular fabric, since straps are conventionally formed out of tubular fabric, such as shown by Woods, in order to provide finished edges which resist fraying. Additionally, it would have been obvious to one having ordinary skill in the art at the time the invention was made to provide at least one of the strap sets of the brassiere of Flaherty to have tubular fabric straps of a width of ½ inch, such as taught by Woods, in order to provide straps that are aesthetically pleasing when outer garments with thin straps are worn, and furthermore since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

34. This rejection was proposed by the third party requestor in the request for reexamination, as set forth on page 14 of the request, and it is being adopted as proposed in the request regarding claim 10.

35. The third party requestor's proposal that claim 10 is alternatively unpatentable under 35 U.S.C. 103(a) over Flaherty in view of the Elle reference and/or Erwin is not adopted because neither the Elle reference nor Erwin specifically disclose a strap of tubular fabric having a width in the range of 0.1 to 0.5 inch.

Application/Control Number: 95/000,065                                      Page 23
Art Unit: 3765

**Issue 17:**

36.     Claim 11 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of the Elle reference.

        Flaherty discloses a brassiere with detachable and interchangeable decorative

straps, however Flaherty does not disclose straps comprising transparent material.  The

Elle reference discloses a brassiere having detachable and interchangeable decorative

straps, and teaches that one of the strap sets comprises transparent straps (see pages

4, 6, 9, and 10 of the Elle reference).  Transparent straps are known in the art in order

to minimize the appearance of the brassiere straps when worn.  It would have been

obvious to one having ordinary skill in the art at the time the invention was made to

provide straps made of transparent material in one of the strap sets of Flaherty, in order

to minimize the appearance of the straps when worn, as shown by Elle.

37.     This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 14 of the request, and it is being adopted as

proposed in the request regarding claim 11.

38.     The third party requestor's proposal that claim 11 is alternatively unpatentable

under 35 U.S.C. 103(a) over Flaherty in view of Woods and/or Erwin is not adopted

because neither Woods nor Erwin discloses a strap made of transparent material.


**Issue 18:**

39.     Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of the Elle reference.

Application/Control Number: 95/000,065                                    Page 24
Art Unit: 3765

Flaherty discloses a brassiere with detachable and interchangeable decorative
straps, however Flaherty does not disclose straps comprising multiple strands of
material connected together at first and second ends thereof.  The Elle reference
discloses a brassiere having detachable and interchangeable decorative straps, and
teaches that one of the strap sets consists of straps each comprising multiple strands of
material, the strands being shown as connected at their first and second ends  (see
pages 4-7 and 10 of the Elle reference).  Such a strap design provides a pleasing
decorative appearance and is known in the art.  It would have been obvious to one
having ordinary skill in the art at the time the invention was made to provide straps
made of multiple strands of material connected at the ends in one of the strap sets of
Flaherty, in order to provide a decorative and aesthetically pleasing appearance, as
shown by Elle.

40.    This rejection was proposed by the third party requestor in the request for
reexamination, as set forth on page 14 of the request, and it is being adopted as
proposed in the request regarding claim 12.

41.    The third party requestor's proposal that claim 12 is alternatively unpatentable
under 35 U.S.C. 103(a) over Flaherty in view of Woods and/or Erwin is not adopted
because neither Woods nor Erwin discloses a strap comprising multiple strands of
material.

**Issue 19**:

42.    The third party requestor's proposal that claim 13 is unpatentable under 35

U.S.C. 103(a) over Flaherty in view of the Elle reference, Woods, and/or Erwin is not

adopted because none of these references disclose strap connectors which each

comprise two component connectors adjacent each other on the ends of the straps, and

four strap attachment points which each comprise two receptors for receiving the two

component connectors.

**Issue 20**:

43.    The third party requestor's proposal that claim 14 is unpatentable under 35

U.S.C. 103(a) over Flaherty in view of the Elle reference, Woods, and/or Erwin is not

adopted because none of these references disclose at least two groups of strap

attachment points allowing placement of the straps at offset alternative positions on the

brassiere.

**Issue 21**:

44.    Claims 1-7 are rejected under 35 U.S.C. 102(a) as being unpatentable over

Collins.

        Collins discloses an undergarment article of clothing (see Fig. 3) configured to

receive and retain at least one strap (21) at a plurality of strap attachment points (22,24)

as in claims 1 and 5. Collins discloses that the undergarment is a brassiere and

includes at least two strap attachment points (22,24) as claimed. Collins discloses a

Application/Control Number: 95/000,065                                      Page 26
Art Unit: 3765

plurality of strap sets which comprise a pair of straps each, the sets being

interchangeable to provide shoulder straps of a design or color which coordinates with

the outer clothing of the wearer (p. 5, lines 18-29). Each of the straps (21) have first

and second strap connectors (23,26) at first and second ends of the straps, which are

removably attachable to the strap attachment points (22,24) on the undergarment (see

Figs. 3 and 4). Each of the sets of straps comprises a material distinct from every other

strap set (pg. 5, lines 18-22), as claimed. The straps are interchangeable and provide a

distinct exposed portion of the undergarment when worn in conjunction with an outer

garment (see page 3, lines 9-15), as in claims 1 and 6. The undergarment has two

attachment points (22) on the front and two attachment points (24) on the back, as in

claim 3. Collins discloses that the strap sets may differ in  color (pg. 5, line 22), as in

claims 4 and 7.

45.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 15  of the request, and it is being adopted

essentially as proposed in the request for claims 1-7.


**Issue 22**:

46.    Claim 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over Collins in

view of Woods.

Collins discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claim 8. Collins does not specifically

disclose a strap width in the range of 0.5 to 1.0 inch, however such a strap width is

Application/Control Number: 95/000,065                                    Page 27
Art Unit: 3765

conventional in the art and provides for a desirable combination of support and wearer

comfort. Woods discloses a bra having straps which "preferably are ¾ to 1 inch in

width" (col. 4, line 6). Such a range meets the limitation of claim 8. It would have been

obvious to one having ordinary skill in the art at the time the invention was made to

provide at least one of the strap sets of the brassiere of Collins to have a width of ¾ to 1

inch, such as taught by Woods, in order to provide straps that are both comfortable and

supportive, and furthermore since it has been held that where the general conditions of

a claim are disclosed in the prior art, discovering the optimum or workable range

involves only routine skill in the art. *In re Aller*, 105 USPQ 233.

47.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 15 of the request, and it is being adopted as

proposed in the request regarding claim 8.

48.    The third party requestor's proposal that claim 8 is alternatively unpatentable

under 35 U.S.C. 103(a) over Collins in view of the Elle reference and/or Erwin is not

adopted because neither the Elle reference nor Erwin specifically disclose a strap width

in the range of 0.5 to 1 inch.


**Issue 23**:

49.    The third party requestor's proposal that claim 9 is unpatentable under 35 U.S.C.

103(a) over Collins in view of the Elle reference, Woods, and/or Erwin is not adopted

because these references do not specifically disclose a brassiere strap width in the

range of 1 to 3 inches. The requestor does not elaborate as to how Elle, Woods, and/or

Application/Control Number: 95/000,065                                    Page 28
Art Unit: 3765

Erwin render claim 9 obvious over Flaherty in view of these references (see page 15 of

the request), however the Erwin reference is discussed in the proposed rejection of

claim 9 as obvious over JP 58-110006 in view of Erwin (see page 8 of request). Here,

the requestor states that Erwin explicitly discloses strap widths of one inch and greater.

The examiner notes that Erwin discloses strap widths of about 1 inch to about 13 inches

for the straps 34,36 of the undergarment 2 (col. 6, lines 46-48), while the straps 21,23 of

the brassiere 1 are shown as much thinner than straps 34,36 (see Fig. 1(c)). Thus,

Erwin does not provide a teaching as to brassiere strap widths in the range of 1-3

inches and would not motivate one of ordinary skill in the art to construct the straps of

the brassiere of Flaherty to be in the range of 1-3 inches.


**Issue 24:**

50.    Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Collins

in view of Woods.

       Collins discloses a brassiere with detachable and interchangeable straps,

however the straps are not disclosed as tubular lengths of fabric having a diameter in

the range of 0.1 inch to 0.5 inch. Woods discloses a bra having straps comprising

tubular lengths of fabric which are formed by folding over the edges of the length of

fabric and joining the edges to form a tubular fabric, as shown Figs. 1-3. Woods

discloses that the straps may have a width of a ½ inch or greater (col. 4, lines 4-5). One

having routine skill in the art would be motivated to choose a strap having a width of ½

inch since straps having such a width are well known, as disclosed by Woods, and

Application/Control Number: 95/000,065                                    Page 29

Art Unit: 3765

since one having ordinary skill in the art would recognize that a narrow ½ inch strap

would be more aesthetically pleasing with certain styles of shirts, such as shirts having

narrow straps. A strap having a width of ½ inch would meet the limitation of being in the

range of 0.1 inch to 0.5 inch, as in claim 10. It would have been obvious to one having

ordinary skill in the art at the time the invention was made to construct the straps of at

least one of the strap sets of the brassiere of Collins out of tubular fabric, since straps

are conventionally formed out of tubular fabric, such as shown by Woods, in order to

provide finished edges which resist fraying. Additionally, it would have been obvious to

one having ordinary skill in the art at the time the invention was made to construct the

straps of at least one of the strap sets of the brassiere of Collins out of tubular fabric

having a width of ½ inch, such as taught by Woods, in order to provide straps that are

aesthetically pleasing when outer garments with thin straps are worn, and furthermore

since it has been held that discovering an optimum value of a result effective variable

involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA

1980).

51.    This rejection was proposed by the third party requestor in the request for

reexamination, as set forth on page 15 of the request, and it is being adopted as

proposed in the request regarding claim 10.

52.    The third party requestor's proposal that claim 10 is alternatively unpatentable

under 35 U.S.C. 103(a) over Collins in view of the Elle reference and/or Erwin is not

adopted because neither the Elle reference nor Erwin specifically disclose a strap of

tubular fabric having a width in the range of 0.1 to 0.5 inch.

Application/Control Number: 95/000,065                                    Page 30
Art Unit: 3765

**Issue 25:**

53.    Claim 11 is rejected under 35 U.S.C. 103(a) as being unpatentable over Collins
in view of the Elle reference.

Collins discloses a brassiere with detachable and interchangeable decorative
straps, however Collins does not disclose straps comprising transparent material.  The
Elle reference discloses a brassiere having detachable and interchangeable decorative
straps, and teaches that one of the strap sets comprises transparent straps (see pages
4, 6, 9, and 10 of the Elle reference).  Transparent straps are known in the art in order
to minimize the appearance of the brassiere straps when worn.  It would have been
obvious to one having ordinary skill in the art at the time the invention was made to
provide straps made of transparent material in one of the strap sets of Collins, in order
to minimize the appearance of the straps when worn, as shown by Elle.

54.    This rejection was proposed by the third party requestor in the request for
reexamination, as set forth on page 15 of the request, and it is being adopted as
proposed in the request regarding claim 11.

55.    The third party requestor's proposal that claim 11 is alternatively unpatentable
under 35 U.S.C. 103(a) over Collins in view of Woods and/or Erwin is not adopted
because neither Woods nor Erwin discloses a strap made of transparent material.

**Issue 26:**

56.    Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Collins
in view of the Elle reference.

Application/Control Number: 95/000,065                                    Page 31
Art Unit: 3765

    Collins discloses a brassiere with detachable and interchangeable decorative straps, however Collins does not disclose straps comprising multiple strands of material connected together at first and second ends thereof. The Elle reference discloses a brassiere having detachable and interchangeable decorative straps, and teaches that one of the strap sets consists of straps each comprising multiple strands of material, the strands being shown as connected at their first and second ends (see pages 4-7 and 10 of the Elle reference). Such a strap design provides a pleasing decorative appearance and is known in the art. It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide straps made of multiple strands of material connected at the ends in one of the strap sets of Collins in order to provide a decorative and aesthetically pleasing appearance, as shown by Elle.

57.    This rejection was proposed by the third party requestor in the request for reexamination, as set forth on page 15 of the request, and it is being adopted as proposed in the request regarding claim 12.

58.    The third party requestor's proposal that claim 12 is alternatively unpatentable under 35 U.S.C. 103(a) over Collins in view of Woods and/or Erwin is not adopted because neither Woods nor Erwin discloses a strap comprising multiple strands of material.

**Issue 27:**

59.    The third party requestor's proposal that claim 13 is unpatentable under 35 U.S.C. 103(a) over Collins in view of the Elle reference, Woods, and/or Erwin is not

adopted because none of these references disclose strap connectors which each

comprise two component connectors adjacent each other on the ends of the straps, and

four strap attachment points which each comprise two receptors for receiving the two

component connectors.


**Issue 28**:

**60.**    The third party requestor's proposal that claim 14 is unpatentable under 35

U.S.C. 103(a) over Collins in view of the Elle reference, Woods, and/or Erwin is not

adopted because none of these references disclose at least two groups of strap

attachment points allowing placement of the straps at offset alternative positions on the

brassiere.


**Issue 29**:

61.    Claims 1-7, 11, and 12 are rejected under 35 U.S.C. 102(b) as unpatentable over

the Wacoal Corporation Product Catalog.

The Wacoal reference discloses an undergarment article of clothing in the form

of a brassiere which is configured to receive and retain at least one strap at a plurality of

strap attachment points as in claims 1 and 5 (see figures and text on pages 1 and 6 of

the Wacoal reference).  The Wacoal reference discloses a plurality of strap sets (see

pages 1-6), each of the strap sets comprising at least one strap as in claims 1 and 5.

The strap sets are clearly shown on pages 1, 5, and 6 of Wacoal as each comprising

two straps, as in claims 2, 3, and 6.  Each of the straps have first and second strap

connectors at first and second ends of the straps, which are removably attachable to the

strap attachment points on the front and back of the undergarment (see page 6, which

discloses that each strap is detachably hooked to the front and back of the bra). Each

of the strap sets comprise a material characteristically distinct from a material of every

other strap set; see pages 1 and 5, which show four strap sets, with each strap set

differing from the material of the other strap sets as in claims 1, 5, and 6. The straps

are interchangeable and provide a distinct exposed portion of the undergarment when

worn in conjunction with an outer garment (see pages 5-6), as in claims 1 and 6.

Regarding claims 4 and 7, the Wacoal reference shows on pages 1 and 5 that the

straps are made of materials which differ in color, material composition, texture and/or

strap width. Regarding claim 11, the Wacoal reference discloses that one of the strap

sets has straps comprising transparent material (see page 6). On pages 1, 4 and 6, the

Wacoal reference shows a strap set having straps comprising multiple strands of

material connected together at first and second ends thereof, as in claim 12.

62.    This rejection as applied to claims 1, 2, 4-7, and 11 was proposed by the third

party requestor in the request for reexamination, as set forth on page 15 of the request,

and it is being adopted essentially as proposed in the request regarding claims 1, 2, 4-7,

and 11.

63.    The third party requestor's proposal that claim 14 is unpatentable under 35

U.S.C. 102(b) over the Wacoal reference is not adopted because the Wacoal reference

does not disclose that the strap attachment points comprise at least two groups of

adjacent attachment points allowing placement of the straps at offset alternative

positions on the brassiere.

64.     The examiner has additionally rejected claims 3 and 12 of the May patent as

being unpatentable under 35 U.S.C. 102(b) over the Wacoal reference, as set forth

above, since the Wacoal reference discloses that each of the strap sets comprise two

straps and the straps are attached at two attachment points on a front section of the

brassiere and two attachment points on a back section of the brassiere (see pages 1

and 6 of Wacoal) as in claim 3, and Wacoal shows a strap set comprised of straps each

having multiple strands of material connected together at first and second ends thereof

as in claim 12.


**Issue 30:**

65.     Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of Fernandes.

        Flaherty discloses a brassiere with detachable and interchangeable decorative

straps, including strap attachment points (220) on the front and back of the brassiere.

The strap attachment points (220) shown by Flaherty do not comprise at least two

groups of adjacent attachment points as in claim 14. Fernandes discloses a brassiere

having detachable decorative straps which attach to at least two strap attachment points

(70 and 69). The strap attachment points comprise at least two groups of adjacent

strap attachment points (see the loops shown in Fig. 1 on each side of both the front

and back of the brassiere, and see loops 68, 70, and 72 shown in Fig. 5 and loops 69,

71, and 73 as shown in Fig. 6.).  These groups of adjacent attachment points allow

placement of the straps at offset alternative positions, as in claim 14.  Fernandes

discloses that this configuration of plural adjacent loops provides a variety of attachment

positions at the option of the user,  so that the strap positioning is adjustable depending

upon the location of the straps in the outer garment and depending upon the

preferences of the wearer (col. 2, lines 31-39).  It would have been obvious to one

having ordinary skill in the art at the time the invention was made to provide plural

groups of adjacent strap attachment points on the brassiere of Flaherty in order to

permit adjustability of the strap position depending upon the location of the straps in the

outer garment and depending upon the preferences of the wearer, as taught by

Fernandes.


**Issue 31:**

66.    Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Collins

in view of Fernandes.

Collins discloses a brassiere with detachable and interchangeable decorative

straps, including strap attachment points (22,25) on the front and back of the brassiere.

The strap attachment points (22,25) shown by Collins do not comprise at least two

groups of adjacent attachment points as in claim 14.  Fernandes discloses a brassiere

having detachable decorative straps which attach to at least two strap attachment points

(70 and 69).  The strap attachment points comprise at least two groups of adjacent

strap attachment points (see the loops shown in Fig. 1 on each side of both the front

and back of the brassiere, and see loops 68, 70, and 72 shown in Fig. 5 and loops 69,

71, and 73 as shown in Fig. 6.). These groups of adjacent attachment points allow

placement of the straps at offset alternative positions, as in claim 14. Fernandes

discloses that this configuration of plural adjacent loops provides a variety of attachment

positions at the option of the user, so that the strap positioning is adjustable depending

upon the location of the straps in the outer garment and depending upon the

preferences of the wearer (col. 2, lines 31-39). It would have been obvious to one

having ordinary skill in the art at the time the invention was made to provide plural

groups of adjacent strap attachment points on the brassiere of Collins in order to permit

adjustability of the strap position depending upon the location of the straps in the outer

garment and depending upon the preferences of the wearer, as taught by Fernandes.


**Issue 32:**

67.    Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Flaherty.

Flaherty discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claims 8 and 9. Flaherty does not

disclose the specific dimensions of the strap width, however it is disclosed that the

straps may be the same width as conventional bra straps, or wider or narrower than

conventional bra straps (col. 5, lines 13-16). Thus, it would be within the routine skill in

the art to construct the straps as having a width in the range of 0.5 to 1.0 inch, or 1.0

inch to 3.0 inches, since Flaherty specifically teaches that the straps may be varied in

Application/Control Number: 95/000,065                                    Page 37
Art Unit: 3765

width as desired. It would have been obvious to one having ordinary skill in the art at

the time the invention was made to construct the straps of at least one of the strap sets

of Flaherty to have a width within the claimed ranges, since Flaherty specifically teaches

that the straps may be of the same width as conventional bra straps, or wider or

narrower than conventional bra straps, and since it has been held that where the

general conditions of a claim are disclosed in the prior art, discovering the optimum or

workable range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.


**Issue 33**:

68.    Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of Murray.

Flaherty discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claim 13. It is noted that claim 13 is

dependent upon claim 8, although this appears to be erroneous, since the range recited

in claim 13 of a strap width of 1.0 inch to 3.0 inches appears to contradict the strap

width range of 0.5 to 1.0 inch which is recited in claim 8. Flaherty does not disclose the

specific dimensions of the strap width, however it is disclosed that the straps may be the

same width as conventional bra straps, or wider or narrower than conventional bra

straps (col. 5, lines 13-16). Thus, it would be within the routine skill in the art to

construct the straps as having a width in the range of 0.5 to 1.0 inch, or 1.0 inch to 3.0

inches, since Flaherty specifically teaches that the straps may be varied in width as

desired. It would have been obvious to one having ordinary skill in the art at the time

Application/Control Number: 95/000,065                    Page 38
Art Unit: 3765

the invention was made to construct the straps of Flaherty to have a width within the

claimed range, since Flaherty specifically teaches that the straps may be of the same

width as conventional bra straps, or wider or narrower than conventional bra straps, and

since it has been held that where the general conditions of a claim are disclosed in the

prior art, discovering the optimum or workable range involves only routine skill in the art.

*In re Aller*, 105 USPQ 233.

Flaherty does not disclose that the first and second strap connectors at the ends

of the strap *each* comprise two component connectors positioned adjacent each other

on the ends of the straps, and the four strap attachment points *each* comprise two

receptors for receiving the two component connectors.  It is noted that this structure is

not described in the May specification or shown in the figures of May.  Murray discloses

a brassiere with a detachable back strap and shoulder straps (24, 16, and 18).  The

back strap is attached to the brassiere front by first and second strap connectors at

each end.  These connectors each comprise two component connectors (eyes 40; see

Fig. 1) positioned adjacent each other on the end of the strap.  They attach to strap

attachment points on the brassiere front, which each comprise two receptors (hooks 36)

for receiving the two component connectors (40), as in claim 13.  One having routine

skill in the art would recognize that this two-connector type of attachment would be

advantageous when the strap is relatively wide, for example 1 inch, so as to more

securely attach the end of the strap and to distribute the weight and forces thereon.

Also, such a connection is more comfortable since the fabric of the strap (24) lies

between the wearer's skin and the connector to form a cushion, as taught by Murray

Application/Control Number: 95/000,065                                    Page 39

Art Unit: 3765

(col. 2, lines 57-61). It would have been obvious to one having ordinary skill in the art at

the time the invention was made to construct the connectors and attachment points of

Flaherty to be two-component connectors which mate with two receptors on the

brassiere, in order to provide a secure attachment which is more comfortable due to the

fabric lying between the connector and the wearer's skin, as taught by Murray.


**Issue 34:**

69.    Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Flaherty in view of LoCascio.

Flaherty discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claims 8 and 9. Flaherty does not

disclose the specific dimensions of the strap width, however it is disclosed that the

straps may be the same width as conventional bra straps, or wider or narrower than

conventional bra straps (col. 5, lines 13-16). Bra straps are known to be constructed to

have a width of 1 inch. LoCascio specifically discloses a bra strap width of 1 inch (col.

2, lines 9-10). Claim 8 recites the strap width as being in the range of 0.5 to 1.0 inch,

while claim 9 recites the width as being in the range of 1.0 inch to 3.0 inch. Thus, a

strap width of 1 inch meets the limitations of both claim 8 and claim 9. It would have

been obvious to one having ordinary skill in the art at the time the invention was made

to construct the straps of at least one of the strap sets of Flaherty to have a width of 1

inch, such as taught by LoCascio, in order to provide straps that are both comfortable

and supportive, and furthermore since it has been held that where the general

Application/Control Number: 95/000,065                                    Page 40
Art Unit: 3765

conditions of a claim are disclosed in the prior art, discovering the optimum or workable

range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.


**Issue 35:**

70.    Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over Flaherty

in view of LoCascio, in further view of Murray.

    Flaherty discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claim 13.  It is noted that claim 13 is

dependent upon claim 8, although this appears to be erroneous, since the range recited

in claim 13 of a strap width of 1.0 inch to 3.0 inches appears to contradict the strap

width range of 0.5 to 1.0 inch which is recited in claim 8.  Therefore, claim 13 as well as

understood appears to read on a strap width of 1 inch, which width is encompassed in

both claim 8 and claim 13.  Flaherty modified in view of LoCascio meets such a

limitation.

    Flaherty also does not disclose that the first and second strap connectors at the

ends of the strap *each* comprise two component connectors positioned adjacent each

other on the ends of the straps, and the four strap attachment points each comprise two

receptors for receiving the two component connectors.  It is noted that this structure is

not described in the May specification or shown in the figures of May.  Murray discloses

a brassiere with a detachable back strap and shoulder straps (24, 16, and 18).  The

back strap is attached to the brassiere front by first and second strap connectors at

each end.  These connectors each comprise two component connectors (eyes 40; see

Application/Control Number: 95/000,065                              Page 41
Art Unit: 3765

Fig. 1) positioned adjacent each other on the end of the strap.  They attach to strap

attachment points on the brassiere front, which each comprise two receptors (hooks 36)

for receiving the two component connectors (40), as in claim 13.  One having routine

skill in the art would recognize that the two connector type of attachment would be

advantageous when the strap is relatively wide, for example 1 inch, so as to more

securely attach the end of the strap and to distribute the weight and forces thereon.

Also, such a connection is more comfortable since the fabric of the strap (24) lies

between the wearer's skin and the connector to form a cushion, as taught by Murray

(col. 2, lines 57-61).  It would have been obvious to one having ordinary skill in the art at

the time the invention was made to construct the connectors of Flaherty modified in

view of LoCascio to be two-component connectors which mate with two receptors on

the brassiere, in order to provide a secure attachment which is more comfortable due to

the fabric lying between the connector and the wearer's skin, as taught by Murray.


**Issue 36:**

71.    Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over

the Elle reference in view of LoCascio.

       The Elle reference discloses a brassiere with detachable and interchangeable

straps, and the straps of at least one of the strap sets comprise flat lengths of fabric as

in claims 8 and 9.  The Elle reference does not disclose the specific dimensions of the

strap width, however bra straps are known to be constructed to have a width of 1 inch.

LoCascio specifically discloses a bra strap width of 1 inch (col. 2, lines 9-10).  Claim 8

recites the strap width as being in the range of 0.5 to 1.0 inch, while claim 9 recites the

width as being in the range of 1.0 inch to 3.0 inch. Thus, a strap width of 1 inch meets

the limitations of both claim 8 and claim 9.  It would have been obvious to one having

ordinary skill in the art at the time the invention was made to construct the straps of at

least one of the strap sets of the brassiere disclosed in the Elle reference to have a

width of 1 inch, such as taught by LoCascio, in order to provide straps that are both

comfortable and supportive, and furthermore since it has been held that where the

general conditions of a claim are disclosed in the prior art, discovering the optimum or

workable range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.


**Issue 37:**

72.    Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over the Elle

reference in view of LoCascio, in further view of Murray.

The Elle reference discloses a brassiere with detachable and interchangeable

straps, and the straps of at least one of the strap sets comprise flat lengths of fabric as

in claim 13.  It is noted that claim 13 is dependent upon claim 8, although this appears

to be erroneous, since the range recited in claim 13 of a strap width of 1.0 inch to 3.0

inches appears to contradict the strap width range of 0.5 to 1.0 inch which is recited in

claim 8.  Therefore, claim 13 as well as understood appears to read on a strap width of

1 inch, which width is encompassed in both claim 8 and claim 13.  The Elle reference

modified in view of LoCascio, as set forth in the preceding paragraph, meets such a

limitation.

The Elle reference also does not disclose that the first and second strap connectors at the ends of the strap *each* comprise two component connectors positioned adjacent each other on the ends of the straps, and the four strap attachment points each comprise two receptors for receiving the two component connectors. It is noted that this structure is not described in the May specification or shown in the figures of May. Murray discloses a brassiere with a detachable back strap and shoulder straps (24, 16, and 18). The back strap is attached to the brassiere front by first and second strap connectors at each end. These connectors each comprise two component connectors (eyes 40; see Fig. 1) positioned adjacent each other on the end of the strap. They attach to strap attachment points on the brassiere front, which each comprise two receptors (hooks 36) for receiving the two component connectors (40), as in claim 13. One having routine skill in the art would recognize that the two connector type of attachment would be advantageous when the strap is relatively wide, for example 1 inch, so as to more securely attach the end of the strap and to distribute the weight and forces thereon. Also, such a connection is more comfortable since the fabric of the strap (24) lies between the wearer's skin and the connector to form a cushion, as taught by Murray (col. 2, lines 57-61). It would have been obvious to one having ordinary skill in the art at the time the invention was made to construct the connectors of the brassiere of the Elle reference modified in view of LoCascio to be two-component connectors which mate with two receptors on the brassiere, in order to provide a secure attachment which is more comfortable due to the fabric lying between the connector and the wearer's skin, as taught by Murray.

Application/Control Number: 95/000,065                                    Page 44

Art Unit: 3765

**Issue 38**:

73.    Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Fridolph.

Fridolph discloses a brassiere with detachable and interchangeable straps, and

the straps comprise flat lengths of fabric as in claims 8 and 9. Fridolph does not

disclose the specific dimensions of the strap width, however they are shown in the

figures to be fairly wide and look to be about one inch. It would be within the ordinary

skill in the art to construct the straps as having a width in the range of 0.5 to 1.0 inch, or

1.0 inch to 3.0 inches, since brassiere straps are conventionally provided in such

widths, and it is within the ordinary skill in the art to choose the strap width as

appropriate based on the material of which the straps are made, the size of the intended

wearer, and desired appearance. It would have been obvious to one having ordinary

skill in the art at the time the invention was made to construct the straps of Fridolph to

have a width within the claimed ranges, since the choice of such a strap width is within

the routine skill in the art based upon considerations of material, size of the wearer, and

appearance preferences, and furthermore, since it has been held that where the general

conditions of a claim are disclosed in the prior art, discovering the optimum or workable

range involves only routine skill in the art. *In re Aller*, 105 USPQ 233.


### Other Art Made of Record

74.    On page 16 of the request, requestor notes that the other non-patent literature

documents listed on the Form PTO-1449 (see references 12 and 13 on PTO-1449 filed

Application/Control Number: 95/000,065                    Page 45
Art Unit: 3765

12/8/04) are advertising and promotion material published more than one year prior to the filing date of the application upon which the May patent was granted. The examiner notes that these documents show the same product (brassiere with interchangeable straps) which is advertised and discussed in the Elle reference and the Wacoal reference. The Elle reference and the Wacoal reference were applied in rejections above.

75.    US Patent No. 1,603,915 to Hultz is cited to show another design of a  brassiere which has removable and interchangeable straps. Hultz teaches that the straps are changeable so that the strap color can be chosen to match the outer garment.

76.    US Patent No. 6,240,560 to DeCaro is cited to show a bikini top of a swimsuit which has fasteners for attachment of removable and interchangeable straps, linked chains, and other accessories which alter the style and appearance of the swimsuit.


*Conclusion*

77.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 6,166,906 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

78.    In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be

Application/Control Number: 95/000,065                                    Page 46
Art Unit: 3765

submitted in response to this Office action.  Submissions after the next Office action,

which is intended to be an Action Closing Prosecution (ACP), will be governed by 37

CFR 1.116, which will be strictly enforced.

79.    **All** correspondence relating to this *inter partes* reexamination proceeding should

be directed:


By Mail to:    Mail Stop *Inter Partes* Reexam
              Central Reexamination Unit
              Office of Patent Legal Administration
              United States Patent & Trademark Office
              P.O. Box 1450
              Alexandria, VA 22313-1450

By FAX to:    (571) 273-0100
              Central Reexamination Unit

By hand:      Customer Assistance Window
              Randolph Building, Lobby Level
              401 Dulany St.
              Alexandria, VA 22314


        Any inquiry concerning this communication or earlier communications from the

examiner, or as to the status of this proceeding, should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.


                                        Amy B. Vanatta
                                        Primary Examiner
                                        Art Unit 3765


Litigation, procedural review
MPEP §2286