IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD. | § | |
| | § | Hon. Ron Clark |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 9:06-CV-00158-RC |
| | § | |
| MICROSOFT CORPORATION, and | § | |
| NINTENDO OF AMERICA, INC., | § | ORAL HEARING REQUESTED |
| | § | |
| Defendants. | § | |

**DEFENDANT MICROSOFT CORPORATION'S REPLY IN
SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING
<u>REEXAMINATION OF THE PATENTS-IN-SUIT BY THE PATENT OFFICE</u>**

I.  **Introduction**

As Microsoft promised at the Case Management Conference, the last of the requests for reexamination of the twelve patents-in-suit was completed and filed by January 31, 2007. (Docket No. 63).  To avoid tremendous waste of resources litigating patents at such serious risk in light of new invalidating prior art, Microsoft moved for a stay pending the reexaminations.

Anascape's chief argument opposing this motion boils down to a "sky is falling" claim that granting a stay here would amount to "a per se rule that a patent action in its early stages will be stayed," which Anascape posits will "encourage <u>all</u> defendants to file for reexamination as a dilatory tactic … and stagnate the efficient patent docket for which this Court is well known." (Opp. at 1 (emphasis original)).  Far from arguing for such a per se rule, Microsoft's motion could not have been clearer that stays are not suited for all cases, but that *this case* is the unusual one in which many compelling facts collectively make a stay the more economical course than proceeding with full-scale litigation on 191 claims and twelve patents.  These factors include:

- The case is in its infancy, before claim construction and any significant discovery;
- Simplification is much more likely than the typical case because:
    - Inter partes proceedings include an estoppel provision to preclude re-litigation;
    - For most of the claims (those 141 claims asserted *only* against former products no longer manufactured), even amendments will eliminate them from the litigation;
    - The PTO has an unusual expertise with Anascape's patents and applications;
    - Anascape has made the case staggeringly complex and expensive to litigate;
- There is no "undue prejudice" given the lack of competition, sufficiency of money damages, and Anascape's own lack of urgency in bringing this lawsuit.

As illustrated below, the cases in the Eastern District that have granted stays have had *some* of these atypical facts, but this case has them *all*:

| Factors Favoring Stay | Anascape | Alza | Echostar | Antor |
|---|---|---|---|---|
| Early in case, before claim construction begins | YES | YES | NO | NO |
| Inter partes proceedings for some patents | YES | NO | YES | NO |
| Amendments will eliminate claims from litigation | YES | NO | NO | NO |
| PTO experience with dozens of related applications | YES | NO | NO | NO |
| Complex case, with multiple patents or defendants | YES | NO | YES | YES |
| No competition, so money damages will suffice | YES | YES | NO | YES |
| **Stay Granted?** | | YES | YES | YES |

Anascape studiously avoids discussing the facts of these cases in its brief; it certainly cannot distinguish them. In view of all these factors present here, if this case does not merit a stay, it seems that no case ever would—which apparently is Anascape's bottom-line, per se position.

This district is known not just for a patent docket that moves quickly, but more generally for focusing heavily on the most efficient and economical way to administer justice. Far from opening up the floodgates to any defendant in a patent case, as Anascape warns, a stay in this case would merely recognize how all of the above factors present in *this* particular case make a stay here the most efficient, most economical, fairest, and least prejudicial course.

## II.    The Very Early Stage Of The Case Heavily Supports A Stay

Although Anascape claims that "none" of the stay factors supports a stay (Opp. at 3), it does not disagree that the stay has been sought early in the litigation, which necessarily means that the "early in the case" factor does indeed support a stay. Instead, citing no authority, Anascape argues that the motion was filed *too early*, suggesting that Microsoft should have delayed for three months for the PTO to issue its formal orders granting the requests (which is all but a given in light of the 90-95% rate). During those three months, however, the parties will spend enormous resources on claim construction and discovery for 191 claims that are likely to be eliminated by reexamination. If Microsoft waited those three months, the efficiencies of a stay would be significantly lessened. Essentially, Anascape wants to place Microsoft in a Catch-22, arguing now that the motion is premature, but arguing unfair delay if Microsoft waited.

The Court should reject Anascape's "too early" argument—which turns this factor upside down—and should instead rule that a stay now will best conserve the resources of the Court and the parties. Other courts have recognized this and, in order to avoid wasting time and money, stayed the case before the PTO formally ordered the reexamination.[1] Anascape's professed concern regarding the tiny risk that the PTO might deny a request over the next few months can easily be avoided by allowing it to seek reconsideration if that very unlikely event transpires.

### III. While Reexamination Is Always Likely To Simplify The Litigation, Several Atypical Facts Make Simplification In This Case Even More Certain

As this Court has recognized, reexamination will likely simplify a litigation by allowing the PTO to first evaluate new prior art, avoid the expense of "resolv[ing] claims which may be amended, eliminated or lucidly narrowed," and "allow the intrinsic evidence to be fully developed before this court begins the claim construction process." *Alza*, at *2; *see also Echostar*, at *2; *Antor*, at 6. Furthermore, this Court has also relied on the statistics published by the PTO showing that the overwhelming majority (currently 74%) of ex parte reexaminations have resulted in the cancellation or amendment of the claims and that 86% of inter partes reexaminations have resulted in cancellation of all claims. *Alza*, at *2; *Antor*, at 8.[2]

Anascape asks this Court to ignore all of these reasons the Court relied on in the past because they are mere "speculation." (Opp. at 3). Clearly, those reasons are no more speculative here than they are in any case. More important, however, simplification is considerably more likely here than the already-high statistics alone suggest due to at least the following four facts:

---

[1] *See, e.g., Ralph Gonnocci Trust v. Three M Tool & Mach.*, 2003 WL 22870902, n.6 (E.D. Mich. 2003) (granting stay before PTO granted request, with leave for patentee to seek lifting of stay if request denied); *Pegasus Dev. Corp. v. Directv, Inc.*, 2003 WL 21105073, at *1 (granting stay before PTO had ruled on all requests) (D. Del. May 14, 2003) Likewise, in *May v. Wacoal*, Anascape's attorneys, McKool Smith, filed a successful motion to stay on behalf of defendant Wacoal just days after filing the request for inter partes reexamination. (Ex. C).

[2] While Anascape suggests that invalidity is unlikely because of the presumption of validity (Opp. at 3), the presumption does ***not*** apply to the PTO in reexaminations. *Ethicon v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1989).

*(a) Inter Partes Proceedings*:  Seven of the twelve patents are eligible for and have been filed as inter partes reexaminations, which the Court in *Echostar* found to be a "compelling" factor in favor of a stay because of its estoppel provisions.  *Echostar*, at *3.  In fact, this case is even more compelling, because the majority of the patents (seven of twelve) are inter partes, compared with only one of three patents in *Echostar* being inter partes.

*(b) Both Cancellations <u>and Amendments</u> Will Eliminate Issues In This Case*:  Anascape does not deny that for the 141 claims asserted only against the old Xbox controllers no longer being manufactured, any cancellation *or amendment* would eliminate the claim from this litigation, while in most cases only cancellation will do so.  This atypical fact necessarily makes the chance of eliminating claims from this litigation substantially higher than in the typical case.

*(c)  The PTO's Special Expertise In This Case and New Prior Art*:  Anascape does not dispute that dozens of its related applications are either pending before the PTO or have been abandoned.  (Motion, at 9-10).  Thus, particularly for this case, the PTO is the most efficient forum to address the significant prior art not previously considered for each patent-in-suit.[3]

Contrary to Anascape's suggestion, this Motion does not present a choice between forums—the reexaminations will go forward regardless of whether a stay is granted or denied. This Motion instead asks the Court to conclude, given all the factors supporting a stay in this particular case, that it is best to avoid wasting "unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated or lucidly narrowed by the patent reexamination process and the expertise of its officers." *Alza*, at *2.

*(d)  Anascape's Choice To Bring An Unusually Complex Case*:  Anascape chose to bring 191 claims and eight accused products into this lawsuit, which will require multiple

---

[3] Attached as Exhibit B is a chart identifying, for each patent, the "new" prior art raised in the reexaminations.

Markman hearings and trials. Courts have found such unusual complexity to increase the opportunity and need for simplification. (*See* Motion at 10). Anascape now hints (but, tellingly, never promises) that it might shrink that number by some unstated amount for the two trials. (Opp. at 4). In fact, Anascape's speculation demonstrates why the complexity of this case supports a stay: it is not efficient, economical, or fair to make the defendants and this Court go through the extraordinary expense of prior art disclosures, claim construction, discovery, expert reports, and summary judgment on 191 claims and eight accused products when Anascape clearly only intends to take an unknown subset to trial. Reexamination is likely to end the dispute or, at the very least, whittle it down to a much smaller and more economical size.[4]

### IV.     Anascape Has Not Identified Any "Undue Prejudice"

Anascape does not compete with the defendants and can be completely made whole by money damages. This fact obviates any prejudice. (*See* Motion at 11).[5] Anascape's argument that the time it takes the PTO to conduct the reexaminations is "inherently prejudicial" (Opp. at 6) is routinely rejected by courts because it would make every stay unduly prejudicial, amounting to a per se rule against stays. In any event, the lack of prejudice is demonstrated by Anascapes's own many-year delay in bringing the case.[6] (*See* Motion at 12).

### V.     Conclusion

Given all of the atypical facts that are collectively present in this case, Microsoft respectfully asks that the Court grant a stay to avoid an unnecessary waste of resources.

---

[4] Far from ***reducing*** the complexity of the case, Anascape has announced that it plans an onerous fishing expedition in discovery, asking for all documents regarding design, development, and operation of "all Microsoft video game or PC game controllers," which amounts to at least eighteen products ***not accused*** in this case. (Ex. D, E).

[5] Anascape's claim of prejudice regarding Microsoft witnesses (Opp. at 6-7) is simply inaccurate. Anascape failed to tell the Court that Microsoft in fact did identify witnesses and scheduled the requested deposition. (Ex. F).

[6] Anascape denies that it delayed filing suit. (Opp. at 7). This is surprising given that when the Xbox controllers went on sale in late 2001, some patents-in-suit had already issued. While a patentee may file a lawsuit whenever it wants, its lack of urgency in filing undermines the claim that a stay ***now*** will cause harm. (Motion at 12-13).

- 6 -

                                                Respectfully submitted,

Dated: February 5, 2006       By: /s/ J. Christopher Carraway
                                      J. Christopher Carraway (admitted *pro hac vice*)
                                      christopher.carraway@klarquist.com
                                      Joseph T. Jakubek (admitted *pro hac vice*)
                                      joseph.jakubek@klarquist.com
                                      Richard D. Mc Leod (Bar No. 24026836)
                                      rick.mcleod@klarquist.com
                                      Derrick W. Toddy (admitted *pro hac vice*)
                                      derrick.toddy@klarquist.com
                                      KLARQUIST SPARKMAN, LLP
                                      121 S.W. Salmon Street, Suite 1600
                                      Portland, Oregon 97204
                                      Telephone: 503-595-5300

                                      J. Thad Heartfield (Bar No. 09346800)
                                      thad@jth-law.com
                                      Law Offices of J. Thad Heartfield
                                      2195 Dowlen Road
                                      Beaumont, Texas 77706
                                      Telephone: 409-866-3318
                                      Facsimile: 409-866-5789

                                      Clayton E Dark Jr. (Bar No. 05384500)
                                      clay.dark@yahoo.com
                                      Clayton E Dark Jr., Law Office
                                      207 E Frank Ave # 100
                                      Lufkin, TX 75901
                                      Telephone: 936-637-1733

                                      Stephen McGrath, Esq. (admitted *pro hac vice*)
                                      MICROSOFT CORPORATION
                                      One Microsoft Way, Building 8
                                      Redmond, Washington 98052-6399
                                      Telephone: 425-882-8080
                                      Facsimile: 425-706-7329

                                      *Attorneys for Defendant Microsoft Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 5th day of February, 2007.

                                            /s/ J. Christopher Carraway _____