IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| ANASCAPE, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORP. and <br> NINTENDO OF AMERICA INC., <br><br> Defendants. | § <br> § <br> § <br> § <br> § Hon. Ronald Clark <br> § <br> § Civil Action No.: 9:06-CV-00158-<br> § RC <br> § <br> § <br> § <br> § |

**NINTENDO'S REPLY IN SUPPORT OF ITS MOTION TO STAY LITIGATION
PENDING PTO REEXAMINATION OF THE ASSERTED PATENTS**

Far from asking the Court to announce a *per se* rule that a stay should always be granted in every case, Nintendo's position is that the unique facts of this particular case warrant a stay pending reexamination. In this case, Anascape has deliberately chosen to take overbroad infringement positions in order to make this litigation as onerous as possible for Defendants. It has charged Microsoft with infringement of 191 claims of twelve patents and Nintendo with infringement of 44 claims of five patents. Anascape's approach is the exact opposite of a targeted infringement case and appears far more consistent with an effort to pressure Defendants into a settlement rather than an attempt to resolve claims of infringement in a litigated proceeding. Further, many additional, related pending Anascape patent applications continue to work their way through the PTO (*see* Carraway Decl. Ex. 1 at p. 5) and a number of these applications have recently been rejected by the PTO in view of prior art, including prior art relied upon in Nintendo's reexamination petitions (*see id.* and Exs. 23-25). Given the foregoing, it simply cannot be denied that awaiting the results of the reexamination will streamline this case.

To the extent that the Court is concerned with any "signal" that a stay in this case would

send to other litigants, we respectfully suggest that such a signal would be along the following lines: if a litigant chooses to bring a sprawling, unfocused infringement case involving dozens of claims of multiple patents, the Court may well be amenable to allowing the PTO in the first instance to cut down the scope of the asserted claims rather than placing that burden on the Court or the defendant. In short, this is the exceptional case in which the most efficient course is for the Court and the parties to stay the litigation while the PTO does its job, which will, if past reexamination results are any indicator, in all likelihood result in a radically different picture of Anascape's patent portfolio upon completion of the reexamination process.

Anascape's opposition to Nintendo's stay motion is, to a large extent, predicated on the erroneous assumption that Nintendo would not follow through on its commitment to file by January 31 *inter partes* reexamination requests for three of the five patents asserted against it in this litigation – namely, U.S. Patent Nos. 6,563,415, 6,334,791 and 6,351,205. In fact, Nintendo filed all three of these *inter partes* reexaminations with the PTO on January 31. *See* Docket No. 65. These filings moot Anascape's repeated assertion that Defendants' stay motion is "premature" since neither it nor the Court can evaluate the reexamination requests. *See* Opp. at 1, 5, 8-9.

Nintendo's reexamination requests – all which are *inter partes* – demonstrate, also contrary to Anascape's speculation, that they are based on material prior art that was not before the PTO during the prosecution of Anascape's patents. Specifically, for each of the '205, '791 and '415 patents, ten of the twelve patents and publications that form the basis for each of these reexamination requests were never cited during prosecution of these patents.[1] Anascape's

---

[1] The references which were never considered by the PTO include: U.S. Patent Nos. 3,643,041 (Jackson); Re. 34,095 (Padula); 5,231,386 (Brandenburg); 3,590,195 (Driver); 4,353,552 (Pepper); 5,046,739 (Reichow); Japanese Laid Open Patent Application Nos. JP S61-100844 (Kaneko); JP S61-103836 (Matsumoto); JP H5-304007 (Tanami); JP H3-61304 (Kawashima); JP H6-56740 (Furukawa); Japanese Patent JP 553-128861 (Amase); UK Published Patent App. No. 2 156 588 A (Meleard); and, UK Published Patent Specification No. 1 412 298 (Knox). Nintendo's reexamination requests are attached to Nintendo's Notice of Filing Reexamination Requests for U.S. Patent Nos. 6,563,415, 6,334,791 and 6,351,205. *See* Docket No. 65.

2

flawed argument that the Court cannot grant a stay until it reviews all of these reexamination requests and determines that they are meritorious directly conflicts with one of the central purposes of the reexamination process, *i.e.*, to avoid courts having to address invalidity issues that are squarely before the PTO. See *Alza Corp. v. Wyeth*, 2006 WL 3500015, at *2 (E.D. Tex. Nov. 21, 2006).

Anascape has also not demonstrated that it will suffer any economic or evidentiary prejudice as a result of a stay, and has no answer to its undisputed delay in pursuing claims against Nintendo for more than four years, a fact that essentially obviates any argument relating to the time it will take for the reexamination process to run its course. Indeed, given inventor Armstrong's personal experience and expertise in prosecuting his own patent cases before the PTO, he will be able to substantially control the timing and length of the reexamination proceedings, *e.g.*, by cancelling rejected or challenged claims that are overbroad in view of the prior art. Since Mr. Armstrong has many other pending related continuation applications that he continues to prosecute in the PTO, the reexamination proceedings will only incrementally add to what he is already doing by way of prosecution in the PTO.

### I. A STAY WILL UNQUESTIONABLY STREAMLINE THE LITIGATION AND SIMPLIFY THE ISSUES FOR TRIAL

Anascape's argument that the reexaminations will not streamline the litigation and simplify the case for trial (Opp. at 2-3) is belied by Anascape's own stated approach to this litigation. Tellingly, Anascape acknowledges the close nexus between the prior art and the elimination and narrowing of the claims and defenses of the parties in this litigation. In particular, Anascape expressly states that *"[a]fter analyzing Defendants' prior art*, Anascape expects the parties to narrow and focus the claims for claim construction, and to further narrow the claims and defenses for trial after the *Markman* ruling." Opp. at 4 (emphasis added). Given Anascape's recognition that the prior art presented by Defendants will result in a streamlining of

3

this case, there can be no doubt that reexamination of the twelve asserted patents by objective PTO examiners with special expertise will result in significant streamlining, if not the elimination of entire patents or the whole case.

Anascape's claim that all of the same discovery will need to be taken and all of the same work will need to be done by the Court even in the event of a stay is simply not correct. *See* Opp. at 4. As explained in Nintendo's and Microsoft's opening briefs and below, it is very likely reexamination could result in the elimination of at least two of the four accused console products (and associated controllers) from the case (namely, the X-Box and GameCube systems), which would eliminate the need for any discovery on those products and radically change the dynamic of this case. It is indisputable that fewer patents, fewer claims, and fewer accused products *ipso facto* make the case simpler, easier to manage, and less costly for all of the parties. It was within Anascape's power to bring a concise and focused case. Having chosen to do the opposite, Anascape must live with the consequences, one of which is the efficiency and economy that would be engendered by having the PTO review the myriad asserted claims in the first instance.[2]

## II.   ANASCAPE WILL NOT BE UNDULY PREJUDICED BY A STAY OR SUBJECT TO AN UNFAIR TACTICAL ADVANTAGE

Anascape has made no showing whatsoever that it will be unduly prejudiced by a stay or subject to an unfair tactical advantage. There is no dispute that Anascape does not make

---

[2] Anascape's accusation that Defendants will select a subset of prior art references to present to the PTO and hold a second subset in reserve to present to the jury if a stay is granted prior to the service of Defendants' Invalidity Contention can be summarily dismissed. *See* Opp. at 10. Defendants' Invalidity Contentions are due six days from today on February 12, before Anascape's sur-reply is even due. Thus, it is highly likely that those contentions will be served prior to any ruling by the Court on this motion. Moreover, there is no basis for Anascape's speculation that any stay may be indefinite because other video game companies might file their own reexaminations. *See* Opp. at 9. The only other major player in the U.S. video game industry, Sony, is licensed under the asserted patents and thus has no reason to file for reexamination. Anascape's claim that reexamination will not streamline the case because the PTO can only consider certain forms of prior art during reexamination and, therefore, there might be two separate bodies analyzing invalidity issues is misplaced. *See* Opp. at 5. To begin with, the reexaminations cannot be withdrawn and are going to continue irrespective of whether this Court grants a stay; thus, denying a stay will not terminate the reexaminations. Moreover, in view of the estoppel effect of *inter partes* reexamination, Defendants will be foreclosed from relying on the prior art references considered by the PTO during reexamination; thus, at a minimum, the Court and the jury will have far less prior art to digest if and when the stay is lifted, thereby greatly streamlining the case. *See, e.g., Echostar Tech. Co. v. TiVo, Inc.* 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006) ("[A]n inter partes reexamination can have no other effect but to streamline ongoing litigation.")

4

any products, does not compete with Nintendo or Microsoft, will not be entitled to injunctive relief, and that monetary damages will be sufficient to make it whole in the event it were to prevail. Thus, no economic prejudice will befall Anascape in the event of a stay. Moreover, Anascape has not even argued that it will suffer any evidentiary prejudice vis-à-vis Nintendo in the event of a stay. Nor could it. Nintendo has already collected a large majority of documents responsive to this Court's patent rules and the local rules, all of which will remain with Nintendo's counsel during the pendency of any stay. With Initial Disclosures due in less than a week, this process is ongoing and will continue. In addition, in its already served interrogatory responses and forthcoming initial disclosures (due on February 12), Nintendo has identified persons most knowledgeable about the subject matter of this litigation, and there is no reason (let alone a showing by Anascape) that testimony from these witnesses will not be available upon the lifting of any stay.

Anascape's prejudice argument boils down to nothing more than reexamination will take a long time and is thus "inherently prejudicial." *See, e.g.*, Opp. at 6, 10-12. This argument has been repeatedly rejected by courts (*see* Microsoft Opening Br. at 12), and is particularly inappropriate given Anascape's decision, after more than four years of silence, to bring a sprawling, unfocused case against Nintendo and Microsoft.[3]

                                                                          Respectfully submitted,

                                                                  By:    /s/ James S. Blank

---

[3] Anascape's claim that Defendants could have filed reexamination requests before this case was filed is specious. *See* Opp. at 12. Prior to the filing of the Complaint in this case, Nintendo had no reason to expend the time and resources to file for reexaminations because it had not been put on notice of infringement. Prior to the filing of the Complaint, the last time Nintendo had heard from Anascape was more than four years ago in 2002, at which time Anascape simply offered to license certain of the asserted patents; no infringement was alleged and no products or categories of products were identified by Anascape at that time. *See* Ex. 1. For this reason, Anascape will not be able to recover any damages prior to the filing of the Complaint. *See* 35 U.S.C. § 286. This fact, coupled with the fact that Microsoft's X-Box has been discontinued and Nintendo's GameCube is at the end of its life cycle, provides a further reason to stay this case. As to Anascape's reliance on Nintendo's existing GameCube controllers sales (Opp. at n.8), there can be no serious dispute that those products, which were first introduced over five years ago (*see* Ex. 2), will have been superseded by its Wii system by the time the reexaminations will be completed.

Robert J. Gunther, Jr.
(robert.gunther@lw.com)
James S. Blank
(james.blank@lw.com)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY  10022
Tel.: (212) 906-1200
Fax: (212) 751-4864

Robert W. Faris
(rwf@nixonvan.com)
Joseph S. Presta
(jsp@nixonvan.com)
NIXON & VANDERHYE, P.C.
1100 North Glebe Road
8th Floor
Arlington, VA  22201
Tel.: (703) 816-4000
Fax: (703) 816-4100

Lawrence L. Germer
(llgermer@germer.com)
Texas Bar No. 07824000
GERMER GERTZ L.L.P.
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas  77704
Tel.: (409) 654-6700
Fax: (409) 835-2115

Attorneys for Defendant and
Counterclaimant Nintendo of America Inc.