IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:06-CV-158 |
| v. | § | |
| | § | |
| MICROSOFT CORP. AND | § | JUDGE RON CLARK |
| NINTENDO OF AMERICA, INC. | § | |
| | § | |
| *Defendant.* | § | |

## ORDER ON DEFENDANTS' MOTIONS TO STAY

Before the court are Defendants' Motions to Stay [Doc. Nos. 56 and 60] seeking to stay this case until the United States Patent and Trademark Office ("PTO") concludes its reexaminations of the twelve patents-in-suit.

### I. Facts and Procedural History

Anascape, Ltd. has filed for a declaratory judgment seeking a declaration of infringement by Microsoft Corporation (Microsoft) of U.S. Patent Nos. 5,999,084 (the `084 patent), 6,102,802 (the `802 patent), 6,135,886 (the `886 patent), 6,208,271 (the `271 patent), 6,343,991 (the `991 patent), 6,344,791 (the `791 patent), 6,347,997 (the `997 patent), 6,351,205 (the `205 patent), 6,400,303 (the `303 patent), 6,563,415 (the `415 patent), and 6,906, 700 (the `700 patent). Anascape, Ltd. has also filed for a declaratory judgment seeking a declaration of infringement by both Microsoft and Nintendo of America, Inc. (Nintendo) on patents 6,222,525 (the `525 patent), 6,344,791 (the `791 patent), 6,352,205 (the `205 patent), 6,563,415 (the `415 patent), and 6,906, 700 (the `700 patent). These patents involve video game consoles and video game controllers.

Both Microsoft and Nintendo have filed requests for reexaminations with the PTO. Set forth below is a chart listing the patents-in-suit, whether the request was filed as an *inter partes*

1

or *ex parte* proceeding, and the date the request was filed.

| Patent-in-Suit | Procedure | Date Filed |
|---|---|---|
| 5,999,084 | *Ex Parte* | 12/15/2006 |
| 6,102,802 | *Ex Parte* | 12/13/2006 |
| 6,135,886 | *Ex Parte* | 1/29/2007 |
| 6,208,271 | *Ex Parte* | 1/31/2007 |
| 6,222,525 | *Ex Parte* | 1/31/2007 |
| 6,343,991 | *Inter Partes* | 1/29/2007 |
| 6,344,791 | *Inter Partes* | 1/31/2007 |
| 6,347,997 | *Inter Partes* | 1/12/2007 |
| 6,351,205 | *Inter Partes* | 1/31/2007 |
| 6,400,303 | *Inter Partes* | 1/31/2007 |
| 6,563,415 | *Inter Partes* | 1/31/2007 |
| 6,906,700 | *Inter Partes* | 1/31/2007 |

The court is not yet aware of any decision by the PTO granting any of Defendants' requests for reexamination. Defendants now move to stay this litigation pending the outcome of the reexamination proceedings.

## II. Analysis

Reexamination is a procedure that allows the PTO to reconsider the validity of an existing patent. 35 U.S.C. §§ 301, *et seq.* Reexamination of patent validity in the PTO is a "useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner." H.Rep. No. 96-1307(I), at 4. As the Federal Circuit has explained, "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue . . . or to facilitate trial of that issue." *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983). Courts need not expend unnecessary judicial resources by attempting to

resolve claims which may be amended, eliminated or lucidly narrowed by the patent reexamination process and the expertise of its officers. *See Hewlett-Packard Co. v. Acuson Corp.,* 1993 WL 149994, at *2 (N.D. Cal. May 5, 1993).

This court has the inherent power to control its own docket, including the power to stay proceedings. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In deciding whether to stay litigation pending reexamination, this court considers: 1) whether discovery is complete and whether a trial date has been set, 2) whether a stay will simplify the issues in question and trial of the case; and 3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *EchoStar Technologies Corp. v. Tivo, Inc.,* 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

The court must also balance competing goals set by Congress. The reexamination procedure, especially the newer *inter partes* procedure, was intended to provide an alternative method of resolving disputes, utilizing the expertise of the examiners of the Patent Office. Courts are also required to administer cases to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. While the reexamination procedures can simplify a case by determining the validity of some claims, data indicates that reexamination may take two to three years, and frequently longer. Even more than in other types of litigation, in patent litigation, "time is money."

Finally, the court must be aware that a request for examination can be used as a tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved.[1] This is especially true of the *ex parte* procedure, which may be a reason Congress enacted the *inter partes* reexamination.

Defendants contend that reexamination will simplify issues for trial because the PTO may invalidate all of the asserted claims and dispose of this case in its entirety. This assumes that the reexaminations will all be successful, but the reexamination requests have not even been granted yet. Furthermore, in reexamination proceedings, the PTO only considers invalidity based on prior art. 35 U.S.C. §§ 301 and 311(b)(2). This means that the PTO does not consider infringement issues, or other grounds for invalidity. Defendants' answers contain inequitable conduct defenses. *See Enprotech Corp. v. Autotech Corp.*, 1990 WL 37217, at *1, 15 U.S.P.Q. 1319, 1320 (N.D. Ill. March 16, 1990)(denying stay partly because PTO would not consider inequitable conduct).

While the newer *inter partes* procedure is more likely to result in simplification, because both parties are bound by the result, at least one report indicates that reexamination will not begin until at least seven months after the application is filed. *See* 35 U.S.C. §§ 303(a) and 312(a). Since the enactment of the *inter partes* procedure in 2000, very few, (only nine according to a recent report), have concluded. Anascape's Response to Motion to Stay, Exhibit B, [Doc. #62, Attachment #3, p. 2-4]; *see* United States Patent and Trademark Office, Fiscal Year 2005 USPTO Workload Tables (2005), http://www.uspto.gov/web/offices/com/annual/2005/0604_workloadtables.html. Therefore, in multiple patent cases like this one, the court must examine

---

[1]Reexamination "opens up a new front in the case that can create additional levels of uncertainty for the plaintiff-patentee in terms of time to trial, estoppels, claim construction, and intervening rights." David L. McCombs & David M. O'Dell, *The New Role of Reexamination In Patent Litigation*, University of Texas School of Law 11th Advanced Patent Law Inst. §13, at 1.

4

each patent, and each request for reexamination, individually with an eye toward balancing simplification of issues against speedy resolution of the disputes between the parties.

*1. Completion of Discovery and Trial Date*

Plaintiff admits that this case is in the early stages of litigation. Plaintiff argues that because the PTO has not yet decided whether to grant Defendants' requests for reexamination, it is too early for the court to stay the case. Defendant argues that the early posture of the litigation heavily favors a stay.

Any stay granted by the court will remain in effect only if the PTO decides to proceed with reexamination. Although the parties have already exchanged interrogatories, the claim construction process has not yet begun. None of the parties has proposed claim construction definitions or submitted claim construction briefs and a *Markman* hearing is set for August 22, 2007. A trial date of March 3, 2008 has been proposed to the parties. While the reexamination process usually takes longer, the court is mindful of Congressional intent, as expressed in the adoption of the *inter partes* procedure. Therefore, this factor weighs in favor of granting a stay of the patents where reexamination is likely to simplify issues and significantly conserve the court's limited time and resources.

*2. Simplification of Case*

Nothing in the record convinces the court that the twelve patents in this case are so closely related that they should be lumped together for analysis. *Ex parte* reexamination has been requested for five of the patents, which is the form of reexamination less likely to simplify issues. These are also the older patents, which have been a matter of public record for a longer period of time without a request for reexamination having been made. The "simplification" factor weighs against staying proceedings as to these patents.

Requests for *inter partes* reexamination are pending for the remaining patents. The `791, `205 and `415 patents can logically be grouped together. The `205 and `415 patents share the same specification, are part of the same patent family, and their claims are directed to variable (analog) sensors providing snap-through tactile feedback to a human finger. All parties agree that the `205 and `415 patents should be grouped together. As suggested by Defendants, the claims of the `791 patent, like the claims of the `205 and `415 patents, are also directed to variable (analog) sensors providing snap-through tactile feedback to a human finger.

Plaintiff has proposed that the `084 patent should be grouped together with the `205 and `415 patents, and the `886 patent should be grouped with the `791 patent. However, the `084 patent is a much earlier and simpler version of the variable-conductance sensor. The `791 patent is a continuation-in-part of the `886 patent, but it describes a more sophisticated version of a sensor with user-discernible snap-through threshold feedback. While all of the patents are related to the broad field of sensors and controllers, they are not patents for the same device or method.

The requests for reexamination of the `791, `205 and `415 patents are *inter partes,* so decisions in those cases will be binding on the parties, which will result in simplification. The *ex parte* requests for reexamination of the `886 and `804 patents are less likely to clarify issues.

The court recognizes that various other logical groupings can be made. However, it appears to the court that grouping the `791, `205 and `415 patents is a logical way to simplify the case and conserve resources. All of these are involved in *inter partes* reexamination, and comprise 62 of the claims asserted against Microsoft (nearly 1/3 of all claims asserted against Microsoft) and 24 (or more than ½) of the claims asserted against Nintendo.

*3. Unfair Prejudice to Plaintiff*

The preceding analysis of the '791, '205, and '415 could apply to the other patents for which *inter partes* reexamination has been requested.  However the factor of unfair prejudice to plaintiff is an important competing concern. Microsoft has expressed difficulty in finding corporate representatives with knowledge as to the design of its Xbox games controllers, because those controllers "were developed well over five years ago." Anascape's Response to Motion to Stay, Exhibit G, [Doc. #62, Attachment #8, p. 2]. Nintendo states that its accused GameCube console was introduced several years ago and is in the late stage of its product life cycle, with sales on the decline. It does seem that crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later.  Anascape would be at a severe tactical disadvantage if the entire case were stayed.

On the other hand, even if proceedings as to the `791, 205 and `415 patents are stayed, the same accused products are involved with the other patents. Presumably all necessary witnesses will be located,  and may be questioned about all the patents, so Anascape should not be unfairly prejudiced.

### III. Conclusion

Based on the foregoing, this court finds that the possibility of simplification of issues resulting from reexamination weigh in favor of granting stays as to the `791, `205 and `415 patents.  These benefits are outweighed by the burdens of delay and potential unfair prejudice to Plaintiff as to the other patents. Additionally, as to the patents for which *ex parte* reexamination has been requested, the likelihood of simplification is much less.

IT IS THEREFORE ORDERED that the Motions to Stay are **GRANTED** as to U.S. Patent Nos. 6,344,791, 6,351,205 and 6,563,415 and **DENIED** as to the remaining patents.

So **ORDERED** and **SIGNED** this **23** day of **February, 2007.**

_____
Ron Clark, United States District Judge