# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,379 | 12/18/2006 | 5999084 | 6620-76454-03 | 3933 |

7590   02/23/2007

BRAD A. ARMSTRONG
P.O. BOX 1419
PARADISE, CA  95967

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 02/23/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

2/24/07

Jared S. Goff, Esq.

Klarquist Sparksman, LLP

121 SW Salmon Street, Suite 1600

Portland, OR  97204

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008379
PATENT NO.   5,999,084
ART UNI   3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,379 | Patent Under Reexamination 5999084 |
|---|---|---|
| | Examiner Margaret Rubin | Art Unit 3992 |

**--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

The request for *ex parte* reexamination filed *18 December 2006* has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒  The request for *ex parte* reexamination is GRANTED.

    RESPONSE TIMES ARE SET AS FOLLOWS:

    For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

    For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

    This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

    In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐ by Treasury check or,

    b) ☐ by credit to Deposit Account No. _____, or

    c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)   Office Action in *Ex Parte* Reexamination   Part of Paper No. 20070220

Application/Control Number: 90/008,379 Page 2
Art Unit: 3992

### DECISION ON REQUEST FOR REEXAMINATION

A substantial new question of patentability affecting U.S. Patent No. 5,999,084 (hereinafter "the '084 patent") is raised by the request for *ex parte* reexamination.

### *References*

U.S. Patent No. Re. 34,095 to Padula et al. (hereinafter "Padula").

U.S. Patent No. 5,164,697 to Kramer (hereinafter "Kramer").

Japanese Laid-Open Utility Model S61-103836 (hereinafter "Matsumoto").

Admitted prior art from the '084 patent (hereinafter "APA").

### *Prosecution History*

During prosecution, the claims of the '084 patent were twice rejected by the examiner, before being allowed with an examiner's amendment. The examiner amended all claims to limit the sensor or variable-conductive material as "analog." *See* Ser. No. 09/106,825, Office Action mailed 8/4/1999. The examiner stated the reasons for allowance as follows:

> The claimed analog pressure sensor is not disclosed by the prior art of record. Kambic discloses digital sensors. While digital and analog sensors are disclosed in Mitchell, there is no suggestion to employ such a sensor with a snap through dome cap where same is employed in digital bistate/on-off devices in the prior art.

*Id.* It is admitted in the specification of the '084 patent that "sensors which utilize pressure-sensitive variable-conductance material to produce analog outputs" are known. Col. 2 lines 16-17. It is apparent that Kambic discloses a digital sensor having a snap through dome

Application/Control Number: 90/008,379 Page 3
Art Unit: 3992

cap.[1] It is also apparent, in comparing prior art Figure 3 with the rest of the '084 patent, that the only new feature in the '084 patent is the inclusion of the pressure-sensitive variable-conductance material 30. All of the claims of the '084 patent require either an analog sensor or a pressure-sensitive analog variable-conductance material. Thus, the claims were allowed because of the inclusion of a pressure-sensitive variable-conductance material that is analog, or that forms an analog sensor, in a snap through dome cap type of sensor configuration. A substantial new question of patentability is raised by prior art that teaches such features.

### *Substantial New Question of Patentability*

The requester alleges that a substantial new question of patentability is raised because the claims of the '084 are unpatentable as follows:

Claims 1-11 are anticipated by Padula.

Claims 1-3, 5-6, and 11 are anticipated by Kramer.

Claims 2-3 are alternatively obvious over Padula in view of APA.[2]

Claims 1-3, 4, and 7-10 are alternatively obvious over Kramer in view of APA.

Claims 1-11 are obvious over Matsumoto in view of APA.

---

[1] As noted by the examiner during prosecution of the '084 patent, Kambic discloses only a digital sensor; that is, while Kambic discloses a similar system as the '084 patent, its pressure-sensitive variable-conductance material 7 apparently only turns on/off (conductive/non-conductive) due to the application of pressure. This on/off action cannot be said to be analog as claimed. The analog nature allows for differing outputs dependent on the pressure exerted by the user, rather than a mere on/off output. *See, e.g.*, col. 2 line 66 – col. 3 line 6

[2] It is noted that "an admission, *per se*, may not be the basis for establishing a substantial new question of patentability. However, an admission by the patent owner of record in the file or in a court record may be utilized in combination with a patent or printed publication." MPEP 2217. Here, the alleged admissions are utilized in combination with patents or printed publications, and therefore may properly sustain a substantial new question of patentability.

Application/Control Number: 90/008,379 Page 4
Art Unit: 3992

The examiner agrees that the references raise a substantial new question of patentability as set forth below.

*Padula*

The Request alleges that Padula raises a substantial new question of patentability with respect to claims 1-11, either alone or in combination with APA. Request 8-10, 16, 18, 21-44. The examiner agrees.

As noted in the Request, Padula discloses a stylus having a force sensitive resistive (FSR) transducer 26 that is pressed by contact with a plunger 20. Padula Fig. 3. The FSR transducer is composed of a pressure-sensitive variable-conductance material, and the pressing action noted above varies the resistance of the FSR transducer in dependence on the applied force, producing a variable analog output signal as shown in Fig. 10. Padula col. 8 lines 1-18, col. 6 lines 26-44. The variable output from the sensor allows for varying outputs from the device, for example allowing for varying line thicknesses to be drawn on a drawing program depending on the pressure applied by the user to the stylus. Padula col. 3 lines 29-37. Thus Padula's pressure-sensitive variable-conductance material and sensor, rather than merely being used for on/off operation as a digital sensor, is used in an analog nature similar to the manner described above under "Prosecution History."

Padula additionally discloses, as noted in the Request, that the device may employ a snap through dome cap type configuration:

> FIG. 12 indicates another embodiment of a pressure transducer in which a layer 100 of flexible material, for example, a thin sheet of silver or other metal, formed with a dome 102 is positioned between, for example, the refill interface plug 12

and the plunger 20. The dome 102 is surrounded by a planar annular portion 106 which is seated on the radial end face of refill interface plug 12. When a predetermined pressing force is applied to the dome by refill interface plug 12 and plunger 20, the dome undergoes reversible collapse. The metal dome is designed so that the collapse of the bubble takes place at a pressure which is substantially equal to the pressure at which the processing of data from the stylus is enabled, as previously described. The snap action during collapse of the dome can be sensed by the stylus user, providing a definite tactile feedback indicating to the user that the digitizing apparatus has switched from the disabled state to the enabled state. When pressure is removed from the stylus tip, the dome snaps back to its original undeformed state, ready for the next operation.

Padula col. 9 lines 12-32. Thus, Padula appears to disclose the very features over which the claims were deemed to be allowable in the original prosecution. The detailed item matching in the claim charts of the Request additionally indicate that Padula and APA at least facially describe all of the limitations of the claims. Given that the remaining features of the claims are apparently conventional, as illustrated in APA Fig. 3, a reasonable examiner would find Padula's teachings to be important in determining the patentability of the claims. The teachings of Padula discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

*Kramer*

The Request alleges that Kramer raises a substantial new question of patentability with respect to claims 1-11, either alone or in combination with APA. Request 11-13, 17, 19, 44-70. The examiner agrees.

Kramer is drawn generally to "providing pushbutton switching devices in an input keyboard that can be used to produce not only a switching process but also an adjustment

Application/Control Number: 90/008,379 Page 6
Art Unit: 3992

process." Col. 1 lines 45-49. Kramer utilizes a pressure-sensitive variable-conductance material: "The contact resistance Rk(P) between the contact surface 18 of the countercontact 16 and the contact surfaces 15.1 and 15.2 in the switching condition depends on the operating pressure applied to the pushbutton 22." Col. 4 lines 17-21. "The pressure-dependent contact resistance between the contact surface 18 of the carbonized plastic foil and the contact surfaces 15.1 and 15.2 . . . diminish[es] linearly as the contact pressure increases." Col. 4 line 63 – col. 5 line 3. The varying resistance is "used to cause a control circuit arrangement (6) to generate a control command (Bf) for setting a particular function and an adjustment command (Bw) for setting a particular value or adjustment rate." Abstract. Thus Kramer's pressure-sensitive variable-conductance material and sensor, rather than merely being used for on/off operation as a digital sensor, is used in an analog nature similar to the manner described above under "Prosecution History."

Kramer additionally discloses, as noted in the Request, that the device may employ a snap through dome cap type configuration:

> In another advantageous embodiment of such an input keyboard that is not illustrated n the drawing attached hereto, the spring element 20 is attached to the ceiling surface of a <u>rubber dome</u> of a contact mat that is arranged between the bottom 27 of a pushbutton 22 and the said spring element 20. Like the thin insulating plate in the previous embodiment, the rubber dome bears against the printed circuit board 10 and, upon the depression of the appropriate pushbutton 22, will first actuate a switching process with a <u>snap effect</u> and subsequently permit pressure-dependent adjustment of a function variable.

Col. 5 lines 36-48 (emphasis added). Thus, Kramer appears to disclose the very features over which the claims were deemed to be allowable in the original prosecution. The detailed item matching in the claim charts of the Request additionally indicate that Kramer and APA at

Application/Control Number: 90/008,379 Page 7
Art Unit: 3992

least facially describe all of the limitations of the claims. Given that the remaining features of the claims are apparently conventional, as illustrated in APA Fig. 3, a reasonable examiner would find Kramer's teachings to be important in determining the patentability of the claims. The teachings of Kramer discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

The above substantial new question is based solely on patents already cited in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a): "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination, or in view of a material new argument or interpretation presented in the request.

Application/Control Number: 90/008,379                                                                 Page 8
Art Unit: 3992

During prosecution, Kramer was cited only as being "pertinent to applicant's disclosure" for "disclos[ing] variable resistors or switches." Ser. No. 09/106,825, Office Action mailed 4/26/1999. Kramer was neither applied against the claims in a rejection, nor even discussed in relation to the claims. Thus, any application of Kramer to the claims is a presentation of the reference in a new light, viewing the reference in a new way as compared to its use in the earlier examination. The SNQ presented herein thus does not fail due to Kramer being old art.

*Matsumoto*

The Request alleges that Matsumoto raises a substantial new question of patentability with respect to claims 1-11 when combined with APA. Request 13-15, 19-21, 70-99. The examiner agrees.

Matsumoto is drawn to a "variable resistance switch of which the on/off switching can be easily recognized through the feeling of pressure on a fingertip and the resistance between two terminals can be changed depending on how much the push button of the switch is pressed." Matsumoto p. 359. Matsumoto discloses that when push button 1 is pressed downward, it causes curved plate 3 to move downward, ultimately pressing electro-conductive rubber 6. Matsumoto p. 365. Rubber 6 is a pressure-sensitive variable-conductance material, as the resistance is altered due to the amount of pressure applied. Matsumoto p. 363 ("It has a variable resistance depending on the pressure."); 366. The varying resistance can be used to alter features such as motor speed. Matsumoto p. 368. Thus, Matsumoto's pressure-sensitive variable-conductance material and sensor, rather than merely being used for on/off operation as a digital sensor, is used in an analog nature similar to the manner described above under "Prosecution History."

Application/Control Number: 90/008,379 Page 9
Art Unit: 3992

    Matsumoto additionally discloses that the sensor is of snap-through type and creates a tactile feedback due to curved plate 3. Matsumoto p. 365 (describing a "click action" when curved plate 3 is pressed); 360 ("[A] switchover point (click point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes switching."). It is arguable that Matsumoto discloses the curved plate as a domed cap; while the figures and description generally describe the plate 3 as having longitudinal ends curved upward, i.e. the inverse of a domed cap, Matsumoto additionally notes: "In this embodiment, the elastic electro-conductive curved plate 3 has the longitudinal ends curved upward. However, the longitudinal ends curved downward yield the same click action." Matsumoto p. 364.

    Even if Matsumoto does not disclose such a dome cap, this is certainly present in APA Fig. 3. The description in Matsumoto of an analog sensor with tactile feedback is furthermore much closer to the invention of the '084 patent than the description of the prior art of known analog sensors, which purportedly lack snap through action and tactile feedback. *See* '084 patent col. 2 lines 13-22 (describing that prior art analog sensors lack tactile feedback). The Request additionally notes reasons for combining Matsumoto and the prior art. Request 71-72. On its face, the motivation is at least reasonable, thus leading a reasonable examiner to at least find Matsumoto's teachings important to determining the patentability of the claims.

    Thus, Matsumoto, either alone or in combination with APA, appears to disclose the very features over which the claims were deemed to be allowable in the original prosecution. The detailed item matching in the claim charts of the Request additionally indicate that Matsumoto and APA at least facially describe all of the limitations of the claims. Given that the remaining features of the claims are apparently conventional, as illustrated in APA Fig. 3, a reasonable

Application/Control Number: 90/008,379                                                                 Page 10
Art Unit: 3992

examiner would find Matsumoto's teachings to be important in determining the patentability of the claims. The teachings of Matsumoto discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

Application/Control Number: 90/008,379                                                                                       Page 11
Art Unit: 3992

### Conclusion

For the reasons stated above, a substantial new question of patentability affecting claims 1-11 of the '084 patent is raised by the request for *ex parte* reexamination. Claims 1-11 will be reexamined.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '084 patent throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity of proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282, and 2286.

All correspondence relating to this *ex parte* reexam proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

> Mail Stop *Ex Parte* Reexam
> ATTN: Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA 22313-1450

Application/Control Number: 90/008,379                                          Page 12

Art Unit: 3992

By FAX to:   (571) 273-9900
             Central Reexamination Unit

By hand to:  Customer Service Window
             Randolph Building
             401 Dulany St.
             Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Margaret Rubin
Primary Examiner
Central Reexamination Unit 3992
(571) 272-1756

February 21, 2007

Conferees:

*IN RE: US PATENT NO.5,999,084*

| | |
|---|---|
| Attorney Docket Number | 6620-76454-01 |
| Application Number | 5,999,084 (09/106,825 App. No.) |
| Filing Date | June 29, 1998 |
| First Named Inventor | Brad A. Armstrong |
| Art Unit | Not assigned yet |
| Examiner Name | Not assigned yet |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**

## U.S. PATENT DOCUMENTS

Copies of U.S. Patent documents do not need to be provided, unless requested by the Patent and Trademark Office. For patents, provide the patent number and the issue date. For published U.S. applications, provide the publication number and the publication date. For unpublished pending patent applications, provide the application number and the filing date.

| Examiner's Initials* | Cite No. (optional) | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|
| ✓ | | RE. 34,095 | 10/1992 | Padula et al. |
| ✓ | | 5,164,697 | 11/1992 | Kramer |
| | | | | |
| | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| ✓ | | JP | 61-103836 | 2/1986 | Matsumoto |
| | | | | | |
| | | | | | |

## OTHER DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

EXAMINER SIGNATURE: [signature]    DATE CONSIDERED: 2/21/07

* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.