# EXHIBIT 5

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent No:  6,906,700

Currently in Litigation Styled:
   *Anascape, Ltd.  v. Microsoft Corporation and Nintendo of America, Inc.,*
   No:  9:06-CV-06-00158-RC (E.D. Tex.)

Issued:  June 14, 2005

Filed:  November 16, 2000

Applicant:  Brad A. Armstrong

Title:  3D Controller With Vibration

### Request for *Inter Partes* Reexamination of Patent

MAIL STOP *INTER PARTES* REEXAMINATION
COMMISSIONER FOR PATENTS
P.O. BOX 1450
ALEXANDRIA, VA  22313-1450

Sir:

      Reexamination under 35 U.S.C. §§ 311-316 and 37 C.F.R. § 1.902 *et seq.* is requested of claims 1 through 33 of United States Patent No. 6,906,700 ("the '700 Patent" or "the Patent" attached as Exhibit 1.)  The '700 Patent issued on May 13, 2003, to Brad A Armstrong.  The Requester is Microsoft Corporation ("Requester").  This is a new reexamination request ("Request").  The '700 Patent has not been previously reexamined.

      In accordance with 37 C.F.R. § 1.985, Requester hereby provides notice that the '700 Patent is asserted against Microsoft in litigation styled Anascape, Ltd. v. Microsoft Corporation, and Nintendo of America, Inc., 06-CV-00158-RC, in the United States District Court for the Eastern District of Texas (the "Litigation").

1

As set forth below, the '700 Patent is not entitled to an early priority date for its claims, because its parent applications fail to meet the written description requirements of 35 U.S.C. § 112 for the claims of the '700 Patent.

### B. Applicant Fundamentally Changed The Specification Of The '700 Patent From What Was Previously Disclosed In The 1996 Application

Applicant claims priority to U.S. Pat. Appl. No. 08/677,378, filed on July 5, 1996 (Exhibit 17, hereinafter "the 1996 Application"), which issued as U.S. Patent No. 6,222,525. (Exhibit 18, hereinafter "the '525 Patent.")  In 2000, when he initially filed the '700 Patent Application as a "continuation" of the 1996 Application, Applicant changed his disclosure substantially, deleting large sections that had been present in the 1996 Application, and including at least two new concepts that were not previously disclosed in that parent application, namely:  1) use of multiple input members to provide six degrees of freedom, or 3-D control,[1] 2) using a motor and offset weight to provide active tactile feedback.[2]

#### 1. Applicant Deleted All Language Requiring A Single Input Member When He Filed The '700 Patent Application

As shown below, every reference from the 1996 Application to a single input member providing six degrees of freedom was either removed or replaced with broadening language in the specification for the '700 Patent:[3]

---

[1] Applicant has filed infringement contentions in the Litigation which seek to read the '700 Patent's claims on game controllers lacking a single input member to provide six degrees of freedom.

[2] Requester does not admit that any interpretations of the claims that may be set forth herein would also be proper in the Litigation or in other court proceedings that do not apply the "broadest reasonable interpretation" standard applied during reexamination.  See MPEP § 2258.I.G.

[3] Requester does not admit that the '700 Patents claims are proper pursuant to 35 U.S.C. § 112 generally, and/or specifically as to the type of input members disclosed.

Therefore, Applicant is not entitled to a priority date before 2000 for his tactile feedback claims based on the unexplained broken lines on Figure 21 in the 1996 Application. Applicant could have included a full written description of means for providing active tactile feedback, including an explanation of Figure 21 as he later did in the '700 Patent. He elected to omit this from the 1996 Application.

### C. In 2002, Applicant Cancelled All Original Claims of the '700 Patent Application And Inserted New Claims With New Subject Matter Not Disclosed in the 1996 Application

On July 15, 2002, Applicant cancelled all of the claims originally filed with the application for the '700 Patent, and submitted new claims including new matter not previously disclosed. It is expected that Applicant will argue in the Litigation that the new claims allow for multiple input members (as opposed to a single member) to provide six degrees of freedom and that most of the claims include means for tactile feedback in various forms. As seen below, Applicant was less than precise in his use of language to refer to the tactile feedback claimed in the '700 Patent, but he is bound by his admissions during prosecution as to the type of feedback claimed.

#### 1. The '700 Patent's New Claims Purportedly Allow For Multiple Input Members to Provide Six Degrees of Freedom

In contrast to the 1996 Application to which Applicant claims priority, Applicant is expected to argue that the 33 challenged '700 Patent claims do not require a single input member to provide six degrees of freedom. (*See* Footnote 1, above.) As seen above, the '700 Patent specification specifically modifies the prior specification, replacing references to a "single input member" with broader references (e.g. "at least one hand operable input

member.") None of Claims 1-33 of the '700 Patent has the limitation of a single input member to provide six degrees of freedom.[9]

To the contrary, Applicant contends that the claims of the '700 Patent refer to *multiple structures* in a 3-D graphics controller to activate various sensors to purportedly provide up to six degrees of freedom. See, e.g., claim 1:

> 1. A 3-D graphics controller used with a television based game, comprising:
>
> a game, said game at least in part controlled by
>
> circuitry, said circuitry located on
>
> at least one sheet, said at least one sheet comprising:
>
> a circuit board sheet connected to a flexible membrane sheet;
>
> **a first element structured** to activate
>
> four unidirectional sensors, said four unidirectional sensors at least in part connected to said at least one sheet, said four unidirectional sensors useful to control said game,
>
> **a second element with structure to activate**
>
> a first two rotary potentiometers, said first two rotary potentiometers at least in part connected to said at least one sheet, said first two rotary potentiometers useful to control said game;
>
> **a third element with structure to activate**
>
> a second two rotary potentiometers, said second two rotary potentiometers at least in part connected to said at least one sheet, said second two rotary potentiometers useful to control said game . . .

Exhibit 1, '700 Patent, Col. 30, lines 8-30.

---

[9] Indeed, Applicant states that the '700 Patent does not require six degrees of freedom, but rather provides "up to" six degrees of freedom, another departure from the scope of the 1996 Application: "The controllers in preferred embodiments, **while not restricted or required to be full six degrees of freedom (6DOF)**, provide structuring for converting full six degrees of freedom physical input provided by a human hand on a band operable input member(s) into representative outputs or signals useful either directly or indirectly for controlling assisting in controlling graphic image displays." ('700 Patent, Col. 2, lines 18-24.)