# Exhibit 8

Westlaw.

208 Fed.Appx. 861                                                                                                    Page 1
208 Fed.Appx. 861
(Cite as: 208 Fed.Appx. 861)

**H**
This case was not selected for publication in the Federal Reporter.

NOTE: This disposition is nonprecedential.

United States Court of Appeals,
Federal Circuit.
AKEVA L.L.C., Plaintiff-Appellant,
v.
ADIDAS-SALOMON AG, Defendant,
and
Adidas America, Inc., Defendant-Appellee.
**No. 06-1090.**

Nov. 13, 2006.
Rehearing and Rehearing En Banc Denied Jan. 12, 2007.

**Background:** In suit alleging infringement of patents describing improvements to athletic shoe heels, the United States District Court for the Middle District of North Carolina entered a summary judgment of non-infringement, and patentee appealed.

**Holdings:** The Court of Appeals, Rader, Circuit Judge, held that:
(1) patent directed to athletic shoes with interchangeable soles covered shoes with detachable heels, and
(2) "secured," as used in patent, meant shoes with rear soles that were secured to the shoe, but not permanently fixed.
Affirmed.

West Headnotes

[1] Patents ⇌235(2)
291k235(2) Most Cited Cases
Patent directed to athletic shoes with interchangeable soles, which provided extended and more versatile life and better performance in terms of cushioning and spring, covered shoes with detachable heels.

[2] Patents ⇌101(2)
291k101(2) Most Cited Cases
"Secured," as used in patent describing improvements to athletic shoe heels, meant shoes with rear soles that were secured to the shoe, but not permanently fixed.

Patents ⇌328(2)
291k328(2) Most Cited Cases
6,604,300, 6,662,471. Not Infringed.
*862 Douglas J. Kline, Richard Myrus, William A. Meunier, James H. Kelly, Jr., Goodwin Procter LLP, Boston, MA, for Defendant-Appellee.

Dirk D. Thomas, Robert A. Auchter, Munir R. Meghjee, Andre J. Bahou, Jason R. Buratti, Robins, Kaplan, Washington, DC, Danielle Avolio, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, for Plaintiff-Appellant.

Before MICHEL, Chief Judge, PLAGER, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

Akeva L.L.C. (Akeva) is a company which has been assigned and licenses a portfolio of footwear patents. Akeva sued adidas America, Inc. (adidas) for infringement of certain claims of two of its patents: U.S. Patent No. 6,662,471 (the '471 patent) and U.S. Patent No. 6,604,300 (the '300 patent). [FN1] These patents describe improvements to athletic shoe heels. According to Akeva, the specifications of the '300 and '471 patent describe a "flexible member" [FN2] improvement that can be incorporated in rear soles that are detachable, or rotatable, or permanently secured. The district court construed these patents as covering shoes with rotatable or detachable rear soles only. *See Akeva L.L.C. v. adidas Am., Inc.,* 1:03-CV-01207 (M.D.N.C. May 17, 2005) *(Claim Construction Decision); Akeva L.L.C. v. Adidas Am., Inc.,* 385 F.Supp.2d 559 (M.D.N.C.2005) *(Reconsideration Decision)* ) [FN3]. Because adidas shoes have permanently-fixed rear soles that do not rotate, Akeva accepted entry of summary judgment of non-infringement and appealed the district court's claim construction to this court. *Akeva L.L.C. v. adidas* Am., Inc., 1:03-CV-01207 (M.D.N.C. Oct. 28, 2005) *(Final Judgment).* Because the district court correctly construed the term "secured," the summary judgment of non-infringement is *affirmed.*

FN1. Akeva asserted claims 93, 94, 100-106, 109, 117, 118, 121-154, 192-194, and 204-232 of the '300 patent, and claims 1-32 of the '471 patent against adidas.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

208 Fed.Appx. 861
208 Fed.Appx. 861
(Cite as: 208 Fed.Appx. 861)

Page 2

FN2. "Flexible member" is an inclusive term given to describe the U-shaped member of the '471 patent and the flexible plate of the '300 patent.

FN3. The district court reconsidered its claim construction decision in light of this court's intervening decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc), but did not deviate from its original construction.

I.

A district court's claim construction findings are reviewed de novo on appeal. Cybor Corp. v. FAS Techs. Inc., 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). A grant of summary judgment is also reviewed de novo. Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1266-67 (Fed.Cir.2001). This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

*863 The central issue of this appeal is the meaning of the term "secured" as it is used in the '300 and '471 patents. Claim 93 of the '300 patent, for example, claims:

A shoe comprising:
an upper having a heel region;
a rear sole *secured* below the heel region of the upper; and
a flexible plate having upper and lower surfaces and positioned between at least a portion of the heel region of the upper....
'300 patent, col. 20 ll.29-43 (emphasis added).

The '471 patent also uses the term "secured." For example, claim 1 states:

A shoe comprising:
an upper, and
a rear sole *secured* below a portion of the upper, the rear sole comprising:
a member having a top wall with a lower surface ... the member having a bottom wall ... the forward regions of the top and bottom walls being connected at a close end by a curved wall....
'471 patent, col. 13 ll.6-50 (emphasis added).

Akeva argues that the ordinary meaning of the claim should be given to the term and that the ordinary meaning would encompass permanent, removable, and rotatable soles to athletic shoes. adidas argues that the specifications of the '300 and '471 patents disavow rear soles that are not detachable or rotatable.

This court construes claims in accordance with the principles set forth in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc). Claim language governs claim interpretation. Id. at 1312. Claim terms, however, are construed in light of the specification. Id. at 1315. The ordinary meaning of a term may be narrowed when interpreted in light of the specification. Id. at 1316.

A. The '471 Patent

[1] The '471 patent is directed to athletic soles with interchangeable soles which "provide extended and more versatile life and better performance in terms of cushioning and spring." Col. 1 ll.13-17. The '471 patent states that "an athletic shoe can be changed dramatically if it is simply given interchangeable rear soles." Id. at col. 2 ll.54-55. In particular, the specification describes shoes with "interchangeable/detachable rear soles" to address problems with uneven wear patterns. Id. at ll.14-15, 26-27. While Akeva argues that the invention of the '471 patent is the flexible membrane, the language of the '471 specification specifically states that the invention of the '471 patent is an athletic shoe with a detachable heel: "However, in a radical departure from conventional shoes, the shoe of the present invention incorporates a heel structure, including *a detachable rear sole,* that significantly alleviates heel wear problems associated with conventional soles and provides enhanced cushioning and/or spring.". Id. at col. 4 ll.56-61 (emphasis added).

Akeva argues that the catch-all phrase at the end of the '471 patent specification, which states "[t]hus, it is intended that the present invention cover all possible combinations of the features shown in the different embodiments, as well as modifications and variations of this invention, provided they come within the scope of the claims and their equivalents," precludes a claim construction which comprises only detachable heels. Col. 13 ll.1-5. No embodiments, however, of the '471 patent include permanently attached heels. Of course, the absence of an embodiment does not necessarily exclude that embodiment from the scope of the invention. *864Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed.Cir.2004). But here, the specification when read as a whole clearly demonstrates that the scope of the invention is athletic shoes with detachable heels which may include an optional flexible plate. See '471 patent, col. 4 ll.62-col. 5 ll.4 ("An embodiment of the heel structure ... includes ... a rear sole detachable secured to the rear sole support.... In addition, the heel structure may include a flexible plate for providing spring to the heel of the user and reducing wear caused by midsole compression."). Akeva cites Golight, Inc. v. Wal-Mart

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Stores, Inc., 355 F.3d 1327, 1331 (Fed.Cir.2004), in which the court found no disclaimer where the specification states the invention "includes" some feature where it is only one of several features described as significant or important. However, this case is distinguishable because the detachable sole of the '471 patent is not one of several features, it is the primary feature of the invention.

Indeed, when the '471 patent uses the term "secured," it uses it to describe a rear sole which is "detachably secured." Col. 3 ll.14-17. Finding that the term "secured" applies only to shoes with detachable heels does not take the term outside its ordinary meaning. Rather, the term is interpreted as it is used in accordance with the specification; "secured" does allow for removablity. As this court has stated in Phillips, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." 415 F.3d at 1316. In other words, an inventor cannot get more than he or she invents. On Demand Mach. Corp. v. Ingram Indus. Inc., 442 F.3d 1331, 1344 (Fed.Cir.2006) (citing Phillips, 415 F.3d at 1316 and Autogiro Co. of Am. v. United States, 181 Ct.Cl. 55, 384 F.2d 391, 397-98 (1967)) ("[while] each term standing alone can be construed as having varying degrees of breadth, each term must be construed to implement the invention described in the specification"). The district court construed this term as used in the '471 patent to mean "a rear sole detachably secured below a portion of the upper." Claim Construction Decision at 28. As such, this court will not disturb the district court's claim construction that the '471 patent covers shoes with detachable heels.

B. The '300 Patent

[2] The '300 patent specification also discloses athletic shoes with extended life by improving the rear sole such that the rear sole is rotatable, detachable, or both. The '300 patent notes that the soles of prior art athletic shoes tend to wear out faster than the shoe itself. Col. 1 ll.2-42. Further, athletic shoe performance cushioning also tends to wear out faster than the shoe itself. Id. at ll. 44-46. In order to solve this problem, the '300 patent specification discloses shoes that can be rotated into different positions to allow for more even wear to the sole of the athletic shoe. Col. 6 ll.56-59. Or, in a preferred embodiment, the rear sole can be detached, allowing the athletic shoe owner to change the sole depending on the cushioning and other features desired for a particular activity. Col. 4 ll.42-46.

The district court construed the term "secured" in the '300 patent to mean "selectively or permanently fastened, but not permanently-fixed into position." Claim Construction Decision at 25. Akeva argues on appeal that the invention of the '300 patent is a flexible plate that can be used in shoes with rotatable, detachable, or permanently fixed heels. To support its argument for this claim interpretation here, Akeva points to language in the '300 patent specification which states "[t]he *865 flexible region also need not be used only in conjunction with a detachable rear sole, but can be used with permanently attached rear soles as well." Col. 10 ll.12-16. Akeva also argues that a related patent, U.S. Patent 5,560,126 (the '126 patent), claims a "detachably secured" rear sole and a rear sole that allows for "selective rotation" and that this supports its claim that such soles are not the claimed invention of the '300 patent. Thus, Akeva argues, the asserted claims of the '300 patent cover permanently-fixed soles that will or will not rotate and which contains a flexible plate.

In SciMed Life Systems Inc. v. Advanced Cardiovascular Systems Inc., 242 F.3d 1337, 1341 (Fed.Cir.2001), this court stated "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." In SciMed, the language of the specification contained a "broad and unequivocal" disclaimer of dual lumens in catheters. 242 F.3d at 1344. The language of the '300 patent specification is less equivocal than that in SciMed. Here, the '300 patent states contains the "all embodiments" language discussed in SciMed: "[i]n all embodiments, the invention includes mechanical means for selectively locking the rear sole relative to the rear sole support and upper of the shoe." Col 7 ll.17-20. The "all embodiments" language of the '300 patent specification however, appears at first blush to conflict with the "permanently attached rear soles" language, creating a less equivocal disclaimer than that of SciMed. Col. 7 ll.17-20; col. 10 ll.12-16.

Nevertheless, the "permanently attached" language, when read in the context of the specification, supports a finding that the '300 patent specification disclaims permanently attached rear soles that do not at least rotate. Phillips, 415 F.3d at 1316. The "permanently attached" language in the specification contemplates shoes with heels that are permanently fixed (cannot be interchanged) but are rotatable. For example, the '300 patent specification states that "the rear sole may not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

208 Fed.Appx. 861
208 Fed.Appx. 861
**(Cite as: 208 Fed.Appx. 861)**

Page 4

be removable but only rotatably positionable." Col. 7 ll.42-43, see also col 6:58-63, col. 7 ll.35- 44; Fig. 3 of the '300 patent. In addition, the '300 patent specification discusses as a problem of prior art shoes with heels the shoe owner is "stuck" with. Col. 2 ll.2-3. In order to solve this problem and other problems, the '300 patent contemplates athletic shoes with rear soles that can be rotated or replaced. Col. 6 ll.33-45.

As the district court noted: "Akeva has cited no statement in the '300 Patent's specification, and this court has found none, that would contemplate a rear sole that is permanently locked into position." *Claim Construction Decision* at 25. Accordingly, one skilled in the art reading the specification of the '300 patent specification would understand the term "secured" as used in the '300 patent to mean shoes with rear soles that are secured to the shoe, but not permanently fixed.

Further, while this court has considered prosecution of earlier patents in the construction of claim terms used in later issued patents, see *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-50 (Fed.Cir.2004), in those cases, the patents had the same specification. Here, the '126 patent on which Akeva relies has a different disclosure than the '300 patent.

Therefore, this court construes the term "secured" in accordance with the district court.

**\*866 II. Infringement**
Akeva concedes that if the claims are construed to only cover detachable or rotatable heels, adidas does not infringe its claims. Thus, this court affirms the district court's entry of summary judgment of non-infringement in favor of adidas.

208 Fed.Appx. 861

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.