# Exhibit 9

Dockets.Justia.com

LEXSEE 2006 US APP. LEXIS 18933



Analysis
As of: May 21, 2007

## WIRELESS AGENTS LLC, Plaintiff-Appellant, v. SONY ERICSSON MOBILE COMMUNICATIONS AB and SONY ERICSSON MOBILE COMMUNICATIONS (USA), INC., Defendants-Appellees.

### 06-1054

### UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### 189 Fed. Appx. 965; 2006 U.S. App. LEXIS 18933

### July 26, 2006, Decided

**NOTICE:** **[*1]** THIS DECISION WAS ISSUED AS UNPUBLISHED OR NONPRECEDENTIAL AND MAY NOT BE CITED AS PRECEDENT. PLEASE REFER TO THE RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS FOR RULES GOVERNING

**SUBSEQUENT HISTORY:** Reconsideration denied by *Wireless Agents L.L.C. v. Sony Ericsson Mobile Communs. AB, 2006 U.S. Dist. LEXIS 54370 (N.D. Tex., Aug. 4, 2006)*

**PRIOR HISTORY:** *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communs. AB, 390 F. Supp. 2d 532, 2005 U.S. Dist. LEXIS 21325 (N.D. Tex., 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a patent infringement case, appellant corporation challenged a judgment of a district court, which denied it a preliminary injunction to prevent appellee communications corporation from selling mobile phones, which appellant alleged infringed its hand-held, electronic computing device, whose patent was assigned to appellant.

**OVERVIEW:** The district court found that appellant had not demonstrated a likelihood of success on the merits of its infringement claim under its construction of the term "alphanumeric keyboard" because appellee's devices did not have an "alphanumeric keyboard" like appellant's devices to render it liable for infringement. The court affirmed. Because the phrase "alphanumeric keyboard" was not readily apparent, the court looked to the claim specification and agreed with the district court's interpretation. The court opined that to allow appellant to claim a keyboard with less than a full set of keys, such as appellee's, would injure the public's right to take the patentee at his word. Although the claim specification contained boilerplate language that the claim's description was not meant to be limited, the court saw nothing that contradicted its reading of the specification. Additionally, because the claim specification was clear, expert testimony and extrinsic evidence could not be used to contradict it. Finally, the court ruled that the claim's specification made clear that the invention did not include the particular feature, a twelve-digit keypad, found on appellee's product.

**OUTCOME:** The court affirmed the judgment.

**CORE TERMS:** alphanumeric, keyboard, layout, specification, keypad, invention, twelve-digit, phone, embodiment, patent, display, mobile, alphabetic, preliminary injunction, quotation, fibers, disadvantage, alphabet, numeric, user, derogatory statements, regular arrangement, extrinsic evidence, readily apparent, configuration, modifications, hand-held, repeated, carbon, input

**LexisNexis(R) Headnotes**

**Patent Law > Infringement Actions > Claim Interpretation > General Overview**

189 Fed. Appx. 965; 2006 U.S. App. LEXIS 18933, *

***Patent Law > Jurisdiction & Review > Standards of Review > De Novo Review***
[HN1] A reviewing court construes a patent term without deference to the district court's claim construction.

***Patent Law > Infringement Actions > Claim Interpretation > Aids***
[HN2] A patent term must be read in view of the specification, of which it is a part. The specification is the single best guide to the meaning of a disputed term.

***Patent Law > Infringement Actions > Claim Interpretation > Aids***
[HN3] Where the meaning of a claim term is readily apparent, claim construction involves little more than the application of the widely accepted meaning of commonly understood words and, in such cases, general purpose dictionaries may be helpful.

***Patent Law > Infringement Actions > Claim Interpretation > Aids***
[HN4] A claim description that is part of the "Summary of the Invention," is commensurate with the invention as claimed. *37 C.F.R. § 1.73 (2004).*

***Patent Law > Claims & Specifications > Claim Language > General Overview***
***Patent Law > Infringement Actions > Claim Interpretation > Aids***
[HN5] Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

***Patent Law > Infringement Actions > Claim Interpretation > Aids***
[HN6] When a specification is clear expert testimony and other extrinsic evidence cannot be used to contradict it.

**JUDGES:** Before RADER, GAJARSA, and DYK, Circuit Judges.

**OPINION BY:** DYK

**OPINION:** DYK, Circuit Judge.

In this patent infringement case, Wireless Agents LLC ("Wireless") appeals from the district court's denial of a preliminary injunction to prevent Sony Ericsson

Mobile Communications (USA) Inc. ("Sony") from selling the accused products. We affirm.

BACKGROUND

Wireless is the assignee of *U.S. Patent No. 6,665,173 B2* (filed Dec. 20, 2000) ("the *'173 patent*"), entitled "Physical Configuration of a Hand-Held Electronic Communication Device." Claim 1, the sole independent claim of the *'173 patent*, recites:

> A hand-held, electronic computing device having a physical configuration comprising:
>
> a body portion;
> a display portion pivotally coupled to the body portion;
> a constantly visible display carried by the display portion;
> an alphanumeric keyboard carried by the body portion;
> wherein the alphanumeric keyboard is at least partially concealed by the display portion when not in use; and
> wherein the [*2] display portion pivots relative to the body portion in a plane that is generally parallel with the alphanumeric keyboard.

*'173 patent*, col. 13, ll. 30-41 (emphasis added).

On February 10, 2005, Wireless sued Sony n1 alleging that Sony's S700i and S710a mobile phones literally infringed claim 1 and several dependent claims. The accused phones have twelve keys - ten keys representing the numbers 0-9 as well as "*" and " # " keys. Each letter of the alphabet is assigned to one of the keys representing the numbers 2 to 9. Thus, approximately 3-4 alphabetic characters are associated with each number key. To select the alphabetic characters, the user switches to text-entry mode and presses a numeric key repeatedly until the desired alphabetic character is selected. The accused phones are also equipped with predictive text software which uses a built-in dictionary to predict common words' being entered by the user after a certain sequence of key presses.

n1 Wireless included Sony Ericsson Mobile Communications AB (a Swedish company) in its infringement suit but not in its preliminary injunction motion.

On April 28, 2005, Wireless filed a motion for a preliminary [*3] injunction seeking to enjoin Sony from

selling the accused products in the United States. The district court (Judge Sidney A. Fitzwater) denied Wireless's motion, finding that Wireless had not demonstrated a likelihood of success on the merits of its infringement claim under the district court's construction of the term "alphanumeric keyboard." *Wireless Agents, LLC v. Sony Ericsson Mobile Commc'ns AB, 390 F. Supp. 2d 532, 540 (N.D. Tex. 2005).* The district court construed "alphanumeric keyboard" to mean an "input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys." *Id. at 538-39* (internal quotation marks omitted). The "QWERTY" layout is the standard keyboard arrangement which includes a key for each letter of the alphabet, and the "FITALY" and "Dvorak" layouts are other arrangements which also include a full set of keys. The district court concluded that "[t]he Sony devices do not have an 'alphanumeric keyboard,' as the term is properly construed." *Id. at 539.* Wireless timely appealed. We have jurisdiction pursuant to *28 U.S.C. §§ 1292(a)(1)* [*4] and *1292(c)(1).*

DISCUSSION

This appeal turns entirely on the correct construction of the term "alphanumeric keyboard." [HN1] We construe the term "alphanumeric keyboard" without deference to the district court's claim construction. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1347 (Fed. Cir. 2005).*

The scope of the term "alphanumeric keyboard" is not readily apparent from the face of the claim, and there is no common dictionary definition of this term. n2 However, [HN2] the term "alphanumeric keyboard" "must be read in view of the specification, of which [it is] a part." *Phillips, 415 F.3d at 1315* (internal quotation marks and citation omitted). The specification is "the single best guide to the meaning of a disputed term." Id. (internal quotation marks omitted). Here, it is clear to us, as it was to the district court, that an "alphanumeric keyboard' is an input device having a QWERTY, FITALY, or Dvorak layout or any other alphanumeric layout that includes a substantially full set of alphabetic and numeric keys, and that it does not include a twelve-digit keypad.

n2 See *Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005)* (en banc) (noting that [HN3] where the meaning of a claim term is readily apparent, claim construction involves "little more than the application of the widely accepted meaning of commonly understood words" and, in such cases, "general purpose dictionaries may be helpful").

[*5]

First, the description of the invention in the "Summary of the Invention" section of the specification states:

> The keyboard may be a keyboard with a layout such as the common "QWERTY" layout, but need not be limited to this particular layout. Other layouts may include the "FITALY" layout, the "Dvorak" layout or any other alphanumeric layout that includes a substantially full set of alphanumeric keys.

*'173 patent*, col. 5, ll. 6-11 (emphasis added). The description clearly depicts the claimed invention as having "the common 'QWERTY' layout" or "any other alphanumeric layout that includes a substantially full set of alphanumeric keys." This description is not merely referring to a preferred embodiment; rather, [HN4] as part of the "Summary of the Invention," it is "commensurate with the invention as claimed." *37 C.F.R. § 1.73 (2004).* Therefore, to allow Wireless to claim a keyboard with less than a substantially full set of keys would injure the public's right "to take the patentee at [his] word." *Honeywell Int'l, Inc. v. ITT Indus. Inc., 452 F.3d 1312, 2006 U.S. App. LEXIS 15553, F.3d , No. 05-1407, 2006 WL 1703376, at *6 (Fed. Cir. June 22, 2006).* [*6]

Wireless argues that the specification cannot be used to define the term "alphanumeric keyboard" because at the end of the specification the *'173 patent* contains the following boilerplate language:

> Although the invention has been described with reference to a particular embodiment, this description is not meant to be construed in a limiting sense. Various modifications of the disclosed embodiments as well as alternative embodiments of the invention will become apparent to persons skilled in the art. . . . It is therefore contemplated that the appended claims will cover any such modifications or embodiments that fall within the scope of the invention.

*'173 patent*, col. 13, ll. 20-28. We see nothing in this language that contradicts our reading of the specification.

Second, the specification explicitly references the disadvantages of keypads that have only twelve digits, such as the accused device. For example, in describing the

disadvantage of the mobile phone twelve-digit keypad, the specification states:

> The mobile phone configuration has the following disadvantages . . . the keypad is typically a twelve-digit keypad designed for numeric data entry, although **[\*7]** the keyboard usually supports alphanumeric character entry . . . whereby the commonly used method of accessing alphanumeric characters is to switch the device into a text entry mode, then press a key repeatedly to access a particular one of a subset of characters available for each key, this method being extremely slow, awkward, error prone, and not appropriate for a device intended to transfer textual data on a regular basis. . . .

*'173 patent*, col. 2, ll. 39-58 (emphasis added). Further, the specification distinguishes the "alphanumeric keyboard" from the keypads on most mobile phones by stating "[t]he alphanumeric keyboard is easier and faster to use and learn than the keypads and touch screens on most mobile phones and personal digital assistants." *'173 patent*, col. 5, ll. 4-6.

We have previously recognized that [HN5] "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001).* **[\*8]** In *Honeywell Int'l, Inc., 2006 U.S. App. LEXIS 15553,    F.3d  *, a case involving similar circumstances, we found that the claim term "electrically conductive fibers" excluded carbon fibers because the specification's "repeated derogatory statements concerning one type of material [(carbon fibers)] [was] the equivalent of disavowal of that subject matter from the scope of the patent's claims." *Id., 2006 U.S. App. LEXIS 15553, 2006 WL 1703376 at \*7.* Here too, the specification's repeated derogatory statements about the twelve-digit keypad convince us that the "alphanumeric keyboard" does not include a twelve-digit keypad. n3

> n3 This is not a case like *Gemstar-TV Guide Int'l, Inc. v. ITC, 383 F.3d 1352 (Fed. Cir. 2004)*, where the references to problems with the prior art appear only in the description of the preferred embodiment. *Id. at 1365.*

Wireless also urges that we look to extrinsic evidence, including a statement by its expert witness that "an 'alphanumeric keyboard' is a regular arrangement of keys." J.A. at 407 (emphasis added). Wireless's expert concluded that the accused device "includes a regular arrangement **[\*9]** of keys, i.e., a keyboard, which allows users to generate all the letters of the alphabet and the numbers 0 through 9." J.A. at 415. We find that the expert's statement is conclusory and is unsupported by reference to any contemporaneous document and therefore of no value in our claim construction analysis. *Phillips, 415 F.3d at 1318.*

Wireless also points to the fact that the Patent and Trademark Office allowed certain claims of Wireless's related patent application ("the '802 application") to cover a twelve-digit keyboard. The allowed claims of the '802 application do not include an "alphanumeric keyboard." That allowance has no bearing on the construction of the term "alphanumeric keyboard." Wireless also cites to various patent applications filed by Sony, arguing that Sony's patents describe a twelve-digit keypad as an alphanumeric keyboard. None of the references cited by Wireless contains a definition of alphanumeric keyboard that is contrary to the district court's claim construction here. In any event, [HN6] the specification here is clear and the expert testimony and other extrinsic evidence cannot be used to contradict it.

For the foregoing reasons, we conclude **[\*10]** that the district court's claim construction was correct. The undisputed evidence established that the accused device utilized twelve keys rather than a substantially full set of alphanumeric keys. The preliminary injunction was therefore properly denied. We affirm.

No costs.