# Exhibit 16

Westlaw.

2007 WL 1226740                                                                                                           Page 1
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))

H

United States Court of Appeals,
Federal Circuit.
PODS, INC., Plaintiff-Appellee,
v.
PORTA STOR, INC., Defendant-Appellant,
and
Christopher E. Neuguth, Defendant.
No. 2006-1504.

April 27, 2007.

**Background:** Storage and moving company brought action against competitor alleging patent and copyright infringement. Parties consented to final disposition by magistrate judge. The United States District Court for the Middle District of Florida, Mark A. Pizzo, United States Magistrate Judge, 2006 WL 1699886, granted judgment for plaintiff. Competitor appealed.

**Holdings:** The Court of Appeals, Dyk, Circuit Judge, held that:
(1) competitor's prior but premature notice of appeal could be treated as being filed on date that district court subsequently entered permanent injunction on patent claims to which appellant did not file notice of appeal;
(2) judgment as to patent claims that was still subject to enhancement of damages did not bar immediate appeal;
(3) pending motion for attorney's fees in patent case did not render judgment non-appealable;
(4) competitor could not appeal jury's finding of violation of Florida Deceptive and Unfair Trade Practices Act (DUTPA) for lack of standing;
(5) term, "carrier frame," required four-sided or rectangular shape;
(6) term, "around," required frame to be on all sides of container;
(7) accused device, which embodied u-shaped or open-ended carrier frame, could not have literally infringed upon method claim in storage container patent, which described four-sided or rectangular-shaped carrier frame; and
(8) rectangular-frame arguments made by patentee during prosecution barred it from asserting that competitor's device, which embodied u-shaped or open-ended carrier frame, infringed by equivalents.

Affirmed in part, reversed in part, and remanded in part.

[1] Federal Courts ⟲668
170Bk668 Most Cited Cases
Appellant's prior but premature notice of appeal could be treated as being filed on date that district court subsequently entered permanent injunction on patent claims to which appellant did not file notice of appeal, and thus Court of Appeals had jurisdiction over appeal of amended judgment, where district court's initial entry of formal "Judgment in a Civil Case" appeared to be appealable. F.R.A.P.Rule 4(a)(2), 28 U.S.C.A.

[2] Patents ⟲324.2
291k324.2 Most Cited Cases
Judgment as to patent claims that was still subject to enhancement of damages did not bar immediate appeal, since Court of Appeals could have jurisdiction over judgment of patent infringement that was final except for accounting. 28 U.S.C.A. § 1292(c)(2).

[3] Patents ⟲324.2
291k324.2 Most Cited Cases
Pending motion for attorney fees in patent case did not render judgment non-appealable.

[4] Federal Courts ⟲544
170Bk544 Most Cited Cases
Competitor lacked standing to appeal jury's finding of violation of Florida Deceptive and Unfair Trade Practices Act, as district court's judgment did not award damages, injunction, or attorney's fees based on Florida statutory claim, and plaintiff did not seek declaratory judgment on that claim. West's F.S.A. § 501.201 et seq.

[5] Federal Courts ⟲543.1
170Bk543.1 Most Cited Cases
A party lacks standing to appeal from a judgment by which it is not aggrieved.

[6] Patents ⟲101(3)
291k101(3) Most Cited Cases
Term, "carrier frame," in claim of patent directed toward apparatus and method for lifting storage container from ground onto transport vehicle or vice versa, required four-sided or rectangular shape.

[7] Federal Courts ⟲764
170Bk764 Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 9:06-cv-00158-RHC   Document 96   Filed 05/22/2007   Page 3 of 11

2007 WL 1226740                                                                                    Page 2
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))

The grant or denial of judgment as a matter of law (JMOL) is reviewed without deference.

[8] Patents ⚷314(5)
291k314(5) Most Cited Cases

[8] Patents ⚷324.5
291k324.5 Most Cited Cases
Patent claim construction is a question of law which is reviewed without deference.

[9] Patents ⚷165(5)
291k165(5) Most Cited Cases
A presumption exists that the same terms appearing in different portions of the patent claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.

[10] Patents ⚷101(3)
291k101(3) Most Cited Cases
Term, "around," in claim of patent directed toward apparatus and method for lifting storage container from ground onto transport vehicle or vice versa, required frame to be on all sides of container.

[11] Patents ⚷229
291k229 Most Cited Cases
Accused device, which embodied u-shaped or open-ended carrier frame, could not have literally infringed upon method claim in storage container patent, which described four-sided or rectangular-shaped carrier frame, where patent holder conceded that accused device did not literally read on apparatus claim that described apparatus that also used four-sided or rectangular-shaped carrier frame.

[12] Patents ⚷230
291k230 Most Cited Cases

[12] Patents ⚷237
291k237 Most Cited Cases
Even if a product or process does not literally infringe upon the express terms of a patent claim, it may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention.

[13] Patents ⚷168(2.1)
291k168(2.1) Most Cited Cases
Prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent.

[14] Patents ⚷168(2.1)
291k168(2.1) Most Cited Cases
Where a patent applicant sets forth multiple bases to distinguish between its invention and the cited prior art, the separate arguments can create separate estoppels as long as the prior art was not distinguished based on the combination of those various grounds.

[15] Patents ⚷168(2.1)
291k168(2.1) Most Cited Cases
To invoke argument-based estoppel, the patent prosecution history must evince a clear and unmistakable surrender of subject matter.

[16] Patents ⚷168(3)
291k168(3) Most Cited Cases

[16] Patents ⚷237
291k237 Most Cited Cases
Rectangular-frame arguments made by patentee during prosecution barred it from asserting that competitor's device, which embodied u-shaped or open-ended carrier frame, infringed by equivalents, since examiner rejected claim of patent during prosecution as obvious in light of prior art reference and another reference and patentee argued in response that "Applicants' invention is decidedly different from the teachings of the [prior art] patent" because of its rectangular-based frame.

[17] Patents ⚷168(2.1)
291k168(2.1) Most Cited Cases
Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may create an estoppel, because the relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.

[18] Patents ⚷168(2.1)
291k168(2.1) Most Cited Cases
Once an argument is made regarding a patent claim term so as to create an estoppel, the estoppel will apply to that term in other claims.

[19] Copyrights and Intellectual Property ⚷41(3)
99k41(3) Most Cited Cases
Mere participation in, contributions to, and review of work of an independent contractor does not necessarily create copyright co-ownership of a joint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1226740                                                                                                         Page 3
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

work. 17 U.S.C.A. §§ 101, 201(a, b).

**[20] Courts ⚿96(7)**
106k96(7) Most Cited Cases
Court of Appeals for the Federal Circuit applies copyright law as interpreted by the regional circuits.

**[21] Copyrights and Intellectual Property ⚿51**
99k51 Most Cited Cases
In the Eleventh Circuit, a plaintiff establishes a prima facie case of copyright infringement by proving by a preponderance of the evidence that it owns a valid copyright in the work allegedly infringed, and the defendant copied that work.

**[22] Copyrights and Intellectual Property ⚿88**
99k88 Most Cited Cases
Jury should have been permitted to determine whether corporate employer carried its burden of establishing joint ownership of copyright, and thus district court should not have granted judgment as matter of law (JMOL) on copyright infringement issue, where jury could have believed that contributions of corporation's employees were sufficiently significant to find that employees were joint authors of work. 17 U.S.C.A. §§ 101, 201(a, b); Fed.Rules Civ.Proc.Rule 50(a)(1), 28 U.S.C.A.

**[23] Copyrights and Intellectual Property ⚿10.4**
99k10.4 Most Cited Cases
Mere fact that a document has a utilitarian purpose does not render it non-copyrightable.

**Patents ⚿328(2)**
291k328(2) Most Cited Cases
3,541,598. Cited as Prior Art.

**Patents ⚿328(2)**
291k328(2) Most Cited Cases
6,071,062. Not Infringed.

Richard H. An, Jenner & Block LLP, of New York, New York, argued for plaintiff-appellee. With him on the brief was Joseph Diamante.

Edward P. Dutkiewicz, of Dunedin, Florida, argued for defendant-appellant.

Before LOURIE and DYK, Circuit Judges, and O'MALLEY, District Judge. [FN*] DYK, Circuit Judge.

DYK, Circuit Judge.

*1 Appellant Porta Stor, Inc. ("Porta Stor") appeals a judgment in favor of appellee PODS, Inc. ("PODS") for, among other things, patent and copyright infringement. We conclude that the district court erred in its patent claim construction; that no literal infringement occurred under the correct construction; and that infringement under the doctrine of equivalents is barred by prosecution history estoppel. Therefore, we reverse the judgment of patent infringement. In addition, since we hold that a reasonable jury could have concluded that PODS did not own the asserted copyright, we reverse the district court's grant of judgment as a matter of law on copyright infringement and remand for a new trial on this issue. In other respects, we affirm.

BACKGROUND
I

PODS and Porta Stor are both storage and moving companies that operate by delivering storage containers to customers. After loading the container, the customer either uses it for on-site storage or requests that the container be picked up and transported to warehouse storage or a destination of the customer's choosing.

PODS is the assignee of United States Patent No. 6,071,062 (filed June 6, 2000) ("'062 patent"), which claims an apparatus and method for lifting a storage container from the ground onto a transport vehicle or vice versa. ' 062 patent col.1 ll.5-10. Claim 1 claims "[a]n apparatus for lifting, handling and transporting a container" that includes, in relevant part:

> a carrier frame including right and left longitudinal elements juxtaposed with the right and left sides, respectively, of the container to be handled and transported, *each longitudinal element extending between opposite first and second ends,* the carrier frame having *front and rear transverse elements* juxtaposed with the front and rear ends, respectively, of the container to be handled and transported, each transverse element extending between opposite right and left ends, *the left ends of the front and rear elements being adjacent to the first and second ends, respectively, of the left longitudinal element,* and the *right ends of the front and rear elements being adjacent to the first and second ends, respectively, of the right longitudinal element.*

Id. col.6 l.61-col.7 l.11 (emphases added). Claim 1 also requires that "the carrier frame ... is capable of being lowered *around* the container." Id. col.7 ll.31-33 (emphasis added). It is undisputed that claim 1 discloses a four-sided rectangular carrier frame, with the right and left longitudinal elements defining the length of the rectangle and the front and rear elements

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 9:06-cv-00158-RHC    Document 96    Filed 05/22/2007    Page 5 of 11

2007 WL 1226740                                                                                Page 4
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))

defining its width. [FN1] Apparatus claim 32 is identical to claim 1 in all relevant respects. [FN2] Claim 29 claims "[a] method of lifting, handling and transporting a container on to and off from a transport vehicle." *Id.* col.10 ll.47-48. Two limitations of claim 29 are relevant to this appeal: "positioning a *carrier frame around* the container on the transport vehicle platform" and "moving and positioning the *carrier frame around* the container." *Id.* col. 10 ll.50-51, col. 11 ll.29-30. [FN3]

II

*2 On September 16, 2004, PODS filed a complaint in the United States District Court for the Middle District of Florida, and later amended it. The amended complaint alleged that Porta Stor's apparatus for lifting, handling, and transporting storage containers--a three-sided structure with two long sides, one shorter side, and an open-end so as to form a u-shape--infringed the '062 patent. PODS also alleged copyright infringement, asserting that Porta Stor copied a rental agreement for portable storage units of which PODS was the copyright owner.

The parties consented to have the entire proceeding conducted before a magistrate judge. *See* 28 U.S.C. § 636(c)(1) (2006). On November 10, 2004, the district court issued a preliminary injunction barring Porta Stor from, inter alia, selling or marketing "their method and apparatus for lifting, handling, and transporting a storage container." On appeal we affirmed the grant of a preliminary injunction, finding that "the magistrate judge was correct in holding that Porta Stor's motion did not present sufficient grounds for dissolving the preliminary injunction." *PODS, Inc. v. Porta Stor, Inc.,* 177 Fed.Appx. 73, 75 (Fed.Cir.2006).

After the final pretrial conference, the district court resolved issues of claim construction. The parties apparently agreed that the terms "carrier frame" and "around" in claims 1 and 32 required "an apparatus that uses a four-sided or rectangular-shaped carrier frame." *PODS, Inc. v. Porta Stor, Inc.,* No. 04-CV-2101, slip op. at 2, 2006 WL 1540347 (M.D.Fla. June 5, 2006) ("*Claim Construction Order*"). Porta Stor argued that the terms in claim 29 should be given the same meaning. *Id.* at 3. Instead, the district court, agreeing with PODS, construed "carrier frame" in claim 29 as "not limited to a four-sided, rectangular shaped frame" and "around" to mean "on all four sides or on less than all four sides." *Id.* at 4, 9. The district court apparently agreed with PODS's argument that the omission in claim 29 of the detailed description of a four-sided carrier frame found in claim 1 "presumably carries consequences" and that "the carrier frame described in claim 29 is less precise and limited." *Id.* at 4.

A jury trial began on June 12, 2006. At the close of the evidence, the district court granted judgment of infringement as a matter of law ("JMOL") for PODS on the patent and copyright infringement claims. It found that independent claim 29 of the '062 patent was literally infringed and that independent claims 1 and 32 (and their dependent claims) were infringed under the doctrine of equivalents. The district court also found, as a matter of law, that the ' 062 patent was not invalid, thus effectively rejecting Porta Stor's affirmative defenses and counterclaims of invalidity. Additionally, the district court found that the PODS rental agreement was "subject to valid copyright protection" and, since "Porta's rental agreement[ ] is identical to PODS' rental agreement ... Porta by its rental agreement has infringed" PODS's copyright. The case was then submitted to the jury, which found that Porta Stor's infringement of the '062 patent was willful and awarded $1500 in damages. The jury concluded that the infringement of the copyright was not willful and awarded no copyright damages, though the court allowed damages in the statutory minimum amount of $750.

*3 The jury also found a willful violation of the Lanham Act, 15 U.S.C. § 1125, but only awarded $1. The jury also found that Porta Stor willfully violated the Florida common law of unfair competition and awarded $15,000. Finally, the jury found a willful violation of the Florida Deceptive and Unfair Trade Practices Act, but awarded no damages.

On June 16, 2006 (the day of the jury verdict), the court entered a judgment ordering Porta Stor to pay PODS a total of $17,251. The court noted in an order accompanying the judgment that it would still consider a motion from PODS to increase the patent damages under 35 U.S.C. § 284. On August 25, 2006, the district court doubled the patent damages and entered a permanent injunction that bars Porta Stor from infringing the '062 patent. On the same day, it also awarded attorney's fees and expenses to PODS on the patent claim under 35 U.S.C. § 285 (based on willful infringement) but declined to do so on the non-patent claims.

Porta Stor appealed on July 3, 2006.

DISCUSSION
I
[1][2][3] We have an obligation to assure ourselves of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1226740                                                                                                                Page 5
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

our jurisdiction before considering the merits of an appeal. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). This case represents another example of the litigants' failure to address potential problems concerning the finality of the judgment. The district court entered a formal "Judgment in a Civil Case" on June 16, 2006, that appeared to be appealable. [FN4] However, on August 25, 2006, the court also entered a permanent injunction on the patent claims. Porta Stor filed a notice of appeal on July 3, 2006, from the June 16, 2006, judgment but apparently did not file a notice of appeal from the August 25, 2006 amended judgment.

Under Federal Rule of Appellate Procedure 4(a)(2), "[a] notice of appeal filed after the court announces a decision or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry." This situation falls within the scope of Rule 4(a)(2). This provision is designed for situations in which "the unskilled litigant ... files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment." FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 276, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991). We believe it applies equally where the formal judgment appears to be appealable even though not final. Thus, Porta Stor's premature notice of appeal should be treated as being filed on August 25, 2006, the date that the district court entered the amended judgment. We thus conclude that we have jurisdiction over this appeal.

[4][5] Because Article III standing is jurisdictional, we must also consider Porta Stor's standing to bring this appeal before considering the merits. Pandrol USA, LP v. Airboss Ry. Prods., Inc., 320 F.3d 1354, 1367 (Fed.Cir.2003). We conclude that Porta Stor lacks standing to appeal the jury's finding of a violation of the Florida Deceptive and Unfair Trade Practices Act. "[T]he law is well-settled that a party lacks standing to appeal from a judgment by which it is not aggrieved." See Penda Corp. v. United States, 44 F.3d 967, 971 (Fed.Cir.1994). The district court's judgment in this case did not award damages, an injunction, or attorney's fees based on the Florida statutory claim, nor did PODS seek a declaratory judgment on this claim. Porta Stor has identified no other basis to conclude that it was aggrieved by the district court's judgment, and therefore it lacks standing to appeal the jury's verdict on the Florida Deceptive and Unfair Trade Practices Act. See id. at 972 ("Courts ... have not recognized standing to appeal where a party does not seek reversal of the judgment but asks only for review of unfavorable findings.").

II

*4 [6][7][8] Addressing the merits, Porta Stor asserts that the district court erred when it granted JMOL on the issue of patent infringement, finding infringement as a matter of law. We review the grant or denial of JMOL without deference. Go Med. Indus. Pty., Ltd. v. Inmed Corp., 471 F.3d 1264, 1272 (Fed.Cir.2006). Claim construction is a question of law which we review without deference. Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1455 (Fed.Cir.1998) (en banc).

A

Porta Stor argues that the district court erred in not construing the phrases "carrier frame" and "around" in claim 29 to have the same meaning as they undisputedly have in claim 1, namely a four-sided rectangular shaped frame that completely surrounds the container on all four sides.

[9] We begin our claim construction analysis with the words of the claims themselves. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc). We are not limited to considering just the language of claim 29 because "[o]ther claims of the patent in question, both asserted and unasserted, [are] valuable sources of enlightenment as to the meaning of a claim term." Id. at 1314. In this case, the term "carrier frame" in claim 29 also appears in claim 1 where it is specifically described as including "right and left longitudinal elements" adjacent to "front and rear transverse elements." '062 patent col.6 ll.64-65, col.7 ll.1-2. The parties agree that the structure described as a "carrier frame" in claim 1 is "a four-sided or rectangular-shaped carrier frame" that surrounds the container on all sides. Claim Construction Order, slip op. at 2. We apply a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." Fin Control Sys. Pty., Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed.Cir.2001); see also, e.g., Phillips, 415 F.3d at 1314; Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed.Cir.2001). PODS has pointed to no evidence in the specification or the prosecution history that the term "carrier frame" in claim 29 has any meaning other than the uncontested meaning in claim 1. To the contrary, the only embodiments disclosed in the specification are four-sided. Also, as discussed in the next section, during prosecution the Dousset prior art patent was distinguished on the ground that the '062 patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 9:06-cv-00158-RHC    Document 96    Filed 05/22/2007    Page 7 of 11

2007 WL 1226740                                                                                         Page 6
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

claimed a rectangular-shaped frame, thus suggesting that all claims were limited to a four-sided device. See *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995) ("[A]rguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary."). We therefore conclude that the term "carrier frame" in claim 29, as in claim 1, requires "a four-sided or rectangular shape." See *Claim Construction Order*, slip op. at 2.

*5 [10] As PODS itself notes, in a claim that "recites a four-sided 'carrier frame'... placing that four-sided carrier frame 'around the container' would result in 'all four sides' of the carrier frame being 'around' the container." Appellee's Br. at 24-25. Thus, since we construe the term "carrier frame" in claim 29 to require a four-sided structure, we necessarily construe the term "around" to require the frame to be on all sides of the container. This construction is confirmed by the ordinary meaning of "around," which in this context is defined as "along the outer edge or boundary of ... on *all sides* of ... so as to encircle or enclose ... about." *Webster's Third New International Dictionary* 120 (2002) (emphases added).

[11] The second step of the infringement analysis is to compare the accused device to the patented invention (as construed) to determine infringement. PODS "conced[ed] [that] the accused device, which embodies a u-shaped or open-ended carrier frame, does not literally read on" claim 1 because "claim 1 describes an apparatus that uses a four-sided or rectangular-shaped carrier frame." *Claim Construction Order*, slip op. at 2-3. Since claim 29 also describes a four-sided or rectangular-shaped carrier frame, there can be no dispute that Porta Stor's device does not literally infringe claim 29. Thus, the district court's finding of literal infringement of claim 29 was erroneous.

B

[12][13][14][15] Even if "a product or process ... does not literally infringe upon the express terms of a patent claim[, it] may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The district court found infringement by equivalents of claims 1 and 32 of the '062 patent. However, "prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent." *Southwall Techs.*, 54 F.3d at 1579. "[W]here a patent applicant sets forth multiple bases to distinguish between its invention and the cited prior art," "the separate arguments [can] create separate estoppels" as long as the prior art was not distinguished based on the combination of these various grounds. *Id.* at 1581-83. "To invoke argument-based estoppel ... the prosecution history must evince a clear and unmistakable surrender of subject matter." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed.Cir.2006) (internal quotation marks omitted).

[16] We conclude that arguments made by PODS during prosecution bar it from asserting that Porta Stor's device infringed by equivalents. During prosecution, the examiner rejected claim 1 of the '062 patent as obvious in light of the Dousset prior art reference, U.S. Patent No. 3,541,598 ("'598 patent"), and another reference. In response, PODS argued that "Applicants' invention is decidedly different from the teachings of the Dousset patent" for three reasons. First, Dousset required specially designed containers, whereas PODS's device was operable with any container. Second, "[a]s the Examiner acknowledges, the Dousset reference clearly lacks the teachings of the singular *rectangular-shaped* frame." J.A. at 65 (emphasis added). Third, PODS's invention "teaches uniformity in the handling, lifting and lowering of a container" whereas "the Dousset reference clearly lacks combined elevating and positioning means as thought by the present invention which allows the carrier frame to be elevated and positioned as a *rectangular-shaped* frame with respect to the container, the vehicle and the ground." J.A. at 65 (emphasis added). The second basis PODS offered for distinguishing Dousset, along with the reference to a rectangular shape in the third basis, clearly and unmistakably shows that PODS limited its claims to a rectangular-based frame and surrendered any claim to a frame that was not rectangular or four-sided. Since PODS offered each argument as a separate basis for distinguishing Dousset, its rectangular-frame argument created a separate estoppel. See *Southwall Techs.*, 54 F.3d at 1582-83.

*6 [17] PODS argues that it was unnecessary to distinguish Dousset on the rectangular-shape ground since the examiner had acknowledged that Dousset "comprises two separate end-fitted units rather than a single rectangular-shaped frame" and relied on another reference to satisfy the rectangular frame limitation of claim 1. J.A. at 45. However, "[c]lear assertions made during prosecution in support of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 9:06-cv-00158-RHC    Document 96    Filed 05/22/2007    Page 8 of 11

2007 WL 1226740                                                                                                                    Page 7
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel," Southwall Techs., 54 F.3d at 1583, because "[t]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter," Conoco, 460 F.3d at 1364 (quoting Cybor, 138 F.3d at 1457). In this case, PODS, in support of its assertion of patentability over Dousset, clearly stated that its claimed frame was rectangular in shape. A competitor would reasonably believe that PODS had surrendered any claim to a frame that was not rectangular or four-sided in shape, such as Porta Stor's three-sided, u-shaped device.

[18] Thus, PODS's arguments during prosecution bar it from asserting that Porta Stor's device infringed claim 1 of the '062 patent under the doctrine of equivalents. Moreover, although the arguments distinguishing Dousset do not directly apply to claim 32, which was added after the obviousness rejection, "once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims." Southwall Techs., 54 F.3d at 1584. Therefore, the district court erred in finding claims 1 and 32 infringed under the doctrine of equivalents. [FN5]

We have no need to consider Porta Stor's arguments related to invalidity, since our finding of non-infringement moots any affirmative defense of invalidity, and Porta Stor has not argued its invalidity counterclaim on appeal.

III

[19][20][21] Porta Stor also argues that the district court erred in granting JMOL on copyright infringement. "This court applies copyright law as interpreted by the regional circuits," in this case the Eleventh Circuit. Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1368 (Fed.Cir.2006). In the Eleventh Circuit, "[t]he plaintiff ... establishes a prima facie case of copyright infringement by proving by a preponderance of the evidence (1) that it *owns* a valid copyright in the work allegedly infringed, and (2) that the defendant copied that work." M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1490 n. 7 (11th Cir.1990) (emphasis in original) (quoting Donald Frederick Evans & Assoc. v. Cont'l Homes, Inc., 785 F.2d 897, 903 (11th Cir.1986)). The key issue here is ownership.

Ownership of a copyright "vests initially in the author or authors of the work," which is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." 17 U.S.C. § 201(a) (2006); see also Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) ( "CCNV"). However, the statute "carves out an important exception ... for 'works made for hire.' If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright." CCNV, 490 U.S. at 737, 109 S.Ct. 2166 (quoting 17 U.S.C. § 201(b)). Two types of works can qualify as a "work made for hire":

> *7 (1) a work prepared by an employee within the scope of his or her employment; or
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101 (2006). In CCNV the Supreme Court explained that "[t]he structure of § 101 indicates that a work for hire can arise through one of two mutually exclusive means, one for employees [the first prong] and one for independent contractors [the second prong]," with the general common law of agency supplying the distinction between employees and independent contractors. 490 U.S. at 742-43, 109 S.Ct. 2166. While all works by employees constitute "works made for hire," "only enumerated categories" of works by independent contractors "may be accorded work for hire status" and, even within these categories, only if there is a written instrument designating the work as a work for hire. Id. at 748, 109 S.Ct. 2166.

On appeal, PODS does not argue that it owned the copyright under the second prong of § 101, that is, that it succeeded to the copyright interest of its outside counsel. There is as well no evidence that PODS's employees were the sole authors of the agreement. Instead, PODS asserted that "the evidence at trial showed that PODS' employees created the rental agreement at issue with the assistance of an outside lawyer." Appellee's Br. at 48. As best we can understand PODS's argument on appeal, it is asserting co-ownership of a joint work. Under 17 U.S.C. § 201(a), "[t]he authors of a joint work are coowners of copyright in the work." A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 9:06-cv-00158-RHC    Document 96    Filed 05/22/2007    Page 9 of 11

2007 WL 1226740                                                                                      Page 8
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))

The only evidence at trial on the issue of joint ownership was the testimony of PODS president and CEO Peter Warhurst. On direct examination, Warhurst testified that PODS "went back to the [outside] *attorney* that helped draft the original mini-storage contract and *he ... modified it* for the uniqueness of ... the PODS business." J.A. at 2109 (emphases added). Likewise, when asked whether a document was "the rental agreement that the *lawyer developed* with your input," Warhurst said "[t]hat's correct." *Id.* (emphasis added). Similarly, he testified on cross-examination as follows:

Q: Who wrote the document for you?
A: The, uh--the lease agreement?
Q: Yes.
A: I believe that it was the *outside counsel* that we had hired.
....
Q: And the *attorney who wrote the original document,* Mr. Silver--Silverman?
A: I believe that's who we used at that time, yes.
*8 Q: He was an attorney who had had [sic] an office, he wasn't an employee of PODS, was he?
A: Correct.

J.A. at 2130-31 (emphasis added). However, on redirect examination, Warhurst testified as follows:

Q: You are the president of Pods, Inc.?
A: I am.
Q: And ... on your executive group are vice-presidents, am I correct?
A: Yes, sir.
Q: Would it be fair to say that all of the executive group had some participation in the creation of that unique rental agreement in conjunction with the lawyer?
A: Uh, *my staff and the lawyers worked together to create the document,* yes, sir.

J.A. at 2135 (emphasis added).

Warhurst's testimony is inconsistent as to whether the outside counsel was the sole author or whether the outside counsel and PODS employees jointly created the work. It is also unclear as to the extent of the employee contributions. Mere participation in, contributions to, and review of the work of an independent contractor by PODS employees would not necessarily create a joint work. *See M.G.B. Homes, 903 F.2d at 1492-93* (finding no co-ownership where home builder reviewed architect's drawings, made suggestions and corrections, and had final approval authority). The evidence is plainly insufficient to warrant JMOL in favor of PODS on the question of joint ownership, and the district court erred in granting JMOL.

[22] The question then becomes whether to direct the award of JMOL in favor of Porta Stor or to remand for a new trial. Despite the somewhat skimpy record as to employee contribution, we cannot say that "a reasonable jury would not have a legally sufficient evidentiary basis to find for [PODS] on [the copyright ownership] issue." Fed.R.Civ.P. 50(a)(1). A jury could have believed that the contributions of the PODS employees were sufficiently significant to find the employees joint authors of the work.

[23] Thus, we conclude that the district court erred in granting JMOL on copyright infringement and that the jury should have been permitted to determine whether PODS had carried its burden to establish ownership of the copyright. We therefore remand the case to the district court for the limited purpose of holding a new trial on the copyright infringement issue solely on the theory of joint ownership. [FN6]

CONCLUSION

Under the proper claim construction (requiring a four-sided, rectangular carrier frame), there is no literal infringement of claim 29 of the '062 patent. Since infringement of claims 1 and 32 under the doctrine of equivalents is barred by prosecution history estoppel, we reverse the district court's judgment of infringement and direct it to enter a judgment of non-infringement in favor of Porta Stor. We also reverse the district court's JMOL on copyright infringement and remand to the district court for a new trial limited to the copyright infringement issue. We see no error as to the jury's $1 verdict on the Lanham Act claim or its $15,000 verdict on the Florida common law claim and affirm those parts of the judgment.

*9 AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED-IN-PART COSTS.

No costs.

> FN* Honorable Kathleen M. O'Malley, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.
>
> FN1. Claim 1 states in full:
> 1. An apparatus for lifting, handling and transporting a container having right and left sides and front and rear ends, the apparatus comprising:
> a carrier frame including right and left longitudinal elements juxtaposed with the

Case 9:06-cv-00158-RHC   Document 96   Filed 05/22/2007   Page 10 of 11

2007 WL 1226740                                                                                                     Page 9
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

right and left sides, respectively, of the container to be handled and transported, each longitudinal element extending between opposite first and second ends, the carrier frame having front and rear transverse elements juxtaposed with the front and rear ends, respectively, of the container to be handled and transported, each transverse element extending between opposite right and left ends, the left ends of the front and rear elements being adjacent to the first and second ends, respectively, of the left longitudinal element, and the right ends of the front and rear elements being adjacent to the first and second ends, respectively, of the right longitudinal element, the carrier frame further including a plurality of generally vertical upright members, each upright member extending between opposite upper and lower ends;
bearing means attached to each upright member lower end, for ground bearing and relative movement of the upright members with the ground;
elevating means for elevating and lowering the carrier frame with respect to the ground;
positioning means connected to the carrier frame for moving and positioning the carrier frame with respect to the container, and for moving and positioning the carrier frame and container together with respect to a transport vehicle having a platform when the container is to be loaded on to and off from said transport vehicle;
supporting means connected to the carrier frame and to the container for supporting the container to the frame; and means for providing hydraulic power to actuators,
wherein the carrier frame is capable of being elevated to be moved over the container and is capable of being lowered around the container for attaching the carrier frame to the container for subsequent lifting, handling and transporting of the container.
'062 patent col.6 l.61-col.7 l.35.

FN2. Claim 32 is the same as claim 1, except with the following additional limitation (also found in dependent claim 5): "the front and rear transverse elements being selectively adjustable in length to allow expansion of the carrier frame to clear a transport vehicle and the container for positioning and contraction of the carrier frame into close juxtaposition with the transport vehicle and the container."

'062 patent col. 12, ll. 13-18.

FN3. Claim 29 states in full:
29. A method of lifting, handling and transporting a container on to and off from a transport vehicle having a cargo carrying platform, the method comprising the steps of:
positioning a carrier frame around the container on the transport vehicle platform;
releasably attaching the carrier frame to the container;
extending rear and front upright members downward into a ground-engaging position;
elevating the carrier frame with hydraulic means and container above the transport vehicle platform;
expanding the carrier frame with hydraulic means to clear the sides of the transport vehicle platform;
driving the transport vehicle out from under the carrier frame and container;
lowering the carrier frame and container until the container rests upon the ground;
releasing the carrier frame attachment from the container;
activating a steering and mobility means for providing driving power and directional control to wheels at the lower end of the rear upright members;
directing the movement of the carrier frame away from the container;
elevating the carrier frame to an elevation higher than that of the transport vehicle platform;
moving and positioning the carrier frame over the transport vehicle platform;
deactivating the steering and mobility means;
retracting the carrier frame with hydraulic means to align the upright members in close proximity to the transport vehicle platform;
lowering the carrier frame to rest upon the transport vehicle platform; retracting the upright members upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame;
extending the upright members downward into a ground-engaging position;
elevating the carrier frame with hydraulic means above the transport vehicle platform;
expanding the carrier frame with hydraulic means to clear the sides of the transport vehicle platform;
activating a steering and mobility means for providing driving power and directional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 1226740
Page 10
--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553
**(Cite as: 2007 WL 1226740 (Fed.Cir.(Fla.)))**

control to wheels at the lower end of the rear upright members;
directing the movement of the carrier frame away from the transport vehicle platform;
moving and positioning the carrier frame around the container;
lowering the carrier frame adjacent to the ground;
releasably attaching the carrier frame to the container;
elevating the carrier frame and container to an elevation higher than that of the transport vehicle platform;
moving and positioning the carrier frame and container over the transport vehicle platform;
deactivating the steering and mobility means;
retracting the carrier frame with hydraulic means to align the upright members in close proximity to the transport vehicle platform;
lowering the carrier frame and container to rest upon the transport vehicle platform; and
retracting the upright members upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame and container.
'062 patent col. 10 l.47-col. 11 l.47.

FN4. While the judgment as to the patent claims was still subject to enhancement of damages (and enhancement was granted on August 25), that possibility did not bar an immediate appeal pursuant to 28 U.S.C. § 1292(c)(2), which gives this court jurisdiction over a judgment of patent infringement that "is final except for an accounting." See Majorette Toys (U.S.) Inc. v. Darda, Inc. U.S.A., 798 F.2d 1390, 1391 (Fed.Cir.1986) ("[A]n appeal in a patent case can come to this Court under § 1292(c)(2) after validity and infringement are determined but prior to determining damages."). The pending motion for attorney's fees also did not render the judgment non-appealable. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).

FN5. Although PODS has only asserted literal infringement of claim 29, infringement by equivalents of this claim would be barred by prosecution history estoppel for the same reason. Also, PODS does not argue that any of the *Festo* exceptions to surrender by amendment should apply in this context. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).

FN6. On appeal, Porta Stor also asserts that JMOL on copyright infringement was erroneous because legal documents are not copyrightable and the copyrighted work was distributed to the public without a copyright notice. The mere fact that the document has a utilitarian purpose does not render it non-copyrightable. See *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1533 (11th Cir.1994) (finding architectural drawings copyrightable). As a general matter, "[t]here appear to be no valid grounds why legal forms such as contracts, insurance policies, pleadings and other legal documents should not be protected under the law of copyright." Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.18[E] (2006). And under the current statutory provision (in effect since 1989), notice of the copyright on the document is permissive, not mandatory. See 17 U.S.C. § 401(a); see also *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir.1995) ("[S]ince the Berne Convention Implementation Act of 1988 ... notice is no longer a prerequisite to copyright protection." (internal citation omitted)).

--- F.3d ----, 2007 WL 1226740 (Fed.Cir.(Fla.)), 82 U.S.P.Q.2d 1553

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.