IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| Anascape, Ltd., | |
|        Plaintiff, | |
|    v. | Civil Action No. 9:06-cv-158-RC |
| Microsoft Corp., and Nintendo of America, Inc., | JURY TRIAL REQUESTED |
|        Defendants. | |


# ANASCAPE'S REPLY CLAIM CONSTRUCTION BRIEF – PART I

## PART I – MICROSOFT-INFRINGED PATENTS

*U.S. Patent No. 5,999,084*

*U.S. Patent No. 6,102,802*

*U.S. Patent No. 6,135,886*

*U.S. Patent No. 6,343,991*

Dockets.Justia.com

# TABLE OF CONTENTS

I. MICROSOFT ARBITRARILY LIMITS THE "PRESSURE-SENSITIVE . . ." TERMS TO ONE OF THE TWO DISCLOSED EMBODIMENTS ...................................................................................1

    A. Pressure-Sensitive Variable Conductance Material Is Not a Limitation Of Every Asserted Claim ........................................................1

        1. Microsoft Improperly Proposes Constructions Without Consulting the Claim Language ....................................1

        2. The Microsoft-Infringed Patents' Multiple Descriptions of the "Present Invention" Do Not Limit the Asserted Claims ...........................................................3

        3. Microsoft's Universal Construction Violates the Doctrine of Claim Differentiation.................................................5

    B. "Pressure-Sensitive Variable Conductance Material" Should Not Be Construed to Exclude One of the Two Disclosed Embodiments........................................................................6

        1. The Microsoft-Infringed Patents Disclose Two Embodiments ....................................................................6

        2. Microsoft's Proposed Constructions Exclude the Increasing Surface Area Embodiment ........................................7

        3. No Case Law Supports Microsoft's Attempt to Exclude Disclosed Embodiments ..............................................8

        4. Pressure-Sensitive Variable-Conductance Material Does Not Require a "Volume Effect"........................................9

    C. Microsoft's Proposed Constructions Present Additional Problems When Considered Individually .............................................10

        1. Claim Differentiation Precludes Microsoft's Proposed Construction of "Pressure-Sensitive Variable-Conductance of One of Said Buttons"........................................10

        2. The "Depressing . . ." Terms Do Not Require a Pressure-Sensitive Variable-Conductance Sensor .....................................11

        3. The "Flexible Material" and "Surface With an Apex . . ." Terms Do Not Require Pressure-Sensitive Variable-Conductance Material ...............................................11

II.     MICROSOFT PROPOSED FAULTY CONSTRUCTIONS FOR
        THE   OTHER   DISPUTED   CLAIM   TERMS   OF   THE
        MICROSOFT-INFRINGED PATENTS ...........................................................................12

        A.     The Term "Sheet" Is Not Limited to "Single Disks of
               Material Adhered to a Single Dome Cap or on Top of a
               Single Circuit Trace" ............................................................................................12

        B.     The "Surface Area Effect" Embodiment Can Perform the
               Function of the "Means for Creating . . ." Terms ..................................................13

        C.     "Electronic Means" and "Active Electronic Means" Do Not
               Invoke § 112 ¶ 6.....................................................................................................13

        D.     A "Snap-Through" Dome-Cap Produces a Snap or Click
               that Could Be Discerned by a User...........................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800, 2007 U.S. App. LEXIS 8375 (Fed. Cir. 2007) ................................3, 5, 7, 8

*Andersen Corp. v. Fiber Composites, LLC*,
   474 F.3d 1361 (Fed. Cir. 2007)................................................................................4, 10

*Bancorp Servs., L.L.C. v Hartford Life Ins. Co.*,
   359 F.3d 1367 (Fed. Cir. 2004)................................................................................15

*Cole v. Kimberly-Clark Corp.*,
   102 F.3d 524 (Fed. Cir. 1999)................................................................................14

*Contessa Foods Prods. v. ConAgra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002)................................................................................15

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) ................................................................................15

*DESA IP, LLC, v. EML Techs., LLC*,
   No. 06-116, 2007 U.S. App. LEXIS 256
   (Fed. Cir. Jan. 4, 2007) (non-precedential)................................................................14

*Envirco Corp. v. Clestra Cleanroom, Inc.*,
   209 F.3d 1360 (Fed. Cir. 1999)................................................................................14

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004)................................................................................4

*Goss Int'l Ams., Inc. v. K&M Newspaper Servs.*,
   469 F. Supp. 2d 547 (N.D. Ill. 2006) ................................................................................14

*Greenberg v. Ethicon Endo-Surgery*,
   91 F.3d 1580 (Fed. Cir. 1996)................................................................................4

*Haberman v. Playtex Prods.*,
   403 F. Supp. 2d 708 (W.D. Wis. 2006) ................................................................................14

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
   452 F.3d 1312 (Fed. Cir. 2006)................................................................................4

*Johnson Worldwide Assocs. v. Zebco Corp.*,
   175 F.3d 985 (Fed. Cir. 1999)................................................................................2

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006)...........................................................................3, 4, 5, 10

*Kwiktek v. Pilot Corp.*,
    No. 2:05-CV-533, 2007 U.S. Dist. LEXIS 26407 (E.D. Tex. Apr. 10, 2007)..................10

*Liebel-Flarsheim v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004).........................................................................................3

*Lottotron, Inc. v. Sci. Games Corp.*,
    1:03-CV-920, 2003 U.S. Dist. LEXIS 15007 (S.D.N.Y. Sept. 8, 2003) ..........................14

*MBO Labs, Inc. v. Becton, Dickson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007).......................................................................................2

*McCarty v. Lehigh Valley R.R.*,
    160 U.S. 110 (1895).........................................................................................................2

*Medtronic AVE, Inc. v. Cordis Corp.*,
    No. 2:03-CV-212, 2007 U.S. Dist. LEXIS 29699 (E.D. Tex. Apr. 23, 2007)....................3

*Nystrom v. TREX Co., Inc.* ("*Nystrom II*")
    424 F.3d 1136 (Fed. Cir. 2005).....................................................................................8, 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..................................................................1, 13

*Source Search Techs., LLC v. Lending Tree, LLC*,
    No. 04-4420, 2006 U.S. Dist. LEXIS 79651 (D.N.J. Oct. 16, 2006) ...............................14

*Sunrace Roots Enter. Co. v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003).....................................................................................9, 10

*TGIP v. AT&T Corp.*,
    No. 2:06-CV-105, 2007 U.S. Dist. LEXIS 17381 (E.D. Tex. Mar. 12, 2007) .................11

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997).......................................................................................11

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996).......................................................................................6, 8

## FEDERAL STATUTES

35 U.S.C. § 112 ¶ 6.............................................................................................................4

## MISCELLANEOUS

Federal Circuit Rule 47.6(b)  .......................................................................................14

## INDEX TO EXHIBITS

Ex. 1.   U.S. Patent No. 5,164,879

## I.    MICROSOFT ARBITRARILY LIMITS THE "PRESSURE-SENSITIVE . . ." TERMS TO ONE OF THE TWO DISCLOSED EMBODIMENTS

As described in Anascape's opening brief, the Microsoft-Infringed Patents disclose two embodiments for building a pressure-sensitive variable conductance sensor: an increasing surface area embodiment and a volume-effect embodiment.  Microsoft's constructions of the terms "pressure-sensitive variable conductance sensor," "pressure-sensitive variable conductance material," "pressure-sensitive variable conductance of one of said buttons," "depressing . . .," "flexible material," and "said surface with an apex . . ." are based on two fundamental errors that, together, exclude the "increasing surface area" embodiment.  First, Microsoft reads a "pressure-sensitive variable conductance material" limitation into every asserted claim, even though Microsoft admits that the term only appears in some of the claims.  Second, Microsoft proposes a two-paragraph construction for the term "pressure-sensitive variable conductance material" that explicitly excludes the "increasing surface area" embodiment.

### A.  Pressure-Sensitive Variable Conductance Material Is Not a Limitation Of Every Asserted Claim

Microsoft acknowledges that only some of the asserted claims explicitly require "pressure-sensitive variable conductance material."  (Microsoft Br. at 7.)  Nonetheless, Microsoft incorrectly argues that every claim should be construed to require such a limitation.

#### 1.  *Microsoft Improperly Proposes Constructions Without Consulting the Claim Language*

Microsoft proposes this universal claim limitation without consulting the claim language, violating the foremost tenet of patent law—that the claims define the scope of the patent.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Microsoft's effort to avoid the claim language exposes a significant weakness in its proposed constructions – nothing in the

language of the disputed claim terms, such as "flexible material" or "said surface with an apex is flexible . . ." explicitly or implicitly requires pressure-sensitive variable conductance material.

Microsoft's scatter-shot claim construction approach has been previously rejected by the Federal Circuit, which requires a "textual reference in the actual language of the claim with which to associate a proffered claim construction." *MBO Labs, Inc. v. Becton, Dickson & Co.*, 474 F.3d 1323, 1331 (Fed. Cir. 2007). Case law cautions that "claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989-990 (Fed. Cir. 1999) (citing *McCarty v. Lehigh Valley R.R.*, 160 U.S. 110, 116 (1895) ("If we once begin to include elements not mentioned in the claim in order to limit such claim . . ., we should never know where to stop.")). In *MBO Labs*, statements in the specification required the "present invention," which was an improved hypodermic syringe, to "shield[] the blood-contaminated needle simultaneously with its removal from the donor." 474 F.3d at 1330. In addition, arguments from the prosecution history confirmed the inclusion of a "simultaneous shielding," *i.e.* immediacy, requirement. *Id.* Accordingly, the Federal Circuit found "that [an immediacy requirement] is an essential element of the invention," but held that certain claims were immune from the immediacy requirement because there was no textual hook: "[n]one of the disputed terms found in [those claims] can reasonably be construed to impose [that] requirement upon those claims." *Id.* at 1331.

Moreover, Microsoft attempts to graft the term "pressure-sensitive variable-conductive material" on broader terms, namely, "flexible material" and "said surface with an apex that is flexible. . . ." Microsoft implicitly argues that, notwithstanding the fact that the applicant chose different claim terms, he really *intended* each claim term to include "pressure-sensitive variable-

conductance material." None of the cases relied on by Microsoft support such a conclusion. Instead, the use of broader claim terms addressing the type of material used precludes Microsoft's attempt to import a term with narrower scope.[1] *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 2007 U.S. App. LEXIS 8375 at *21 (Fed. Cir. 2007) ("The fact that the term 'transverse' has a broader scope than 'perpendicular' also distinguishes this case from [*Nystrom II*] . . . . [W]e decline to impose a construction narrower than the term's ordinary meaning."); *Medtronic AVE, Inc. v. Cordis Corp.*, No. 2:03-CV-212, 2007 U.S. Dist. LEXIS 29699, at *14-19 (E.D. Tex. Apr. 23, 2007) (Ward, J.) (refusing to read a length limitation found in a "statement of invention" into a claim term when one claim already contained an explicit length limitation).

### 2. The Microsoft-Infringed Patents' Multiple Descriptions of the "Present Invention" Do Not Limit the Asserted Claims

Microsoft argues that the patents' references to the "present invention" require each of the disputed terms to incorporate a "pressure-sensitive variable conductance material" limitation. Even if Microsoft had characterized these statements correctly, such statements, alone, cannot support the importation of a claim limitation under pre- or post-*Phillips* case law. *See Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) (finding that "the mere fact that one object of the invention is [a particular feature] does not mean that [that] particular feature was adopted as a limitation in each claim of the patent," and disagreeing with the dissent, which suggested that references to the "present invention" in the specification should limit one of the claim terms to that feature); *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir.

---

[1] Because the Court cannot read Microsoft's proposed limitation into "flexible material" and "said surface with an apex that is flexible;" Microsoft's entire argument unravels. The patents obviously do not *require* a "volume effect" throughout if certain claims evince a broader scope.

2004) ("Those passages [describing the 'present invention'] do not disclaim the use of the invention in the absence of a pressure jacket.").

Microsoft, however, did not characterize these statements correctly.  If the Court were *only* to consider the "Background of the Invention" and "Summary of the Invention" sections of *only* the '802 Patent, it would find *sixteen* statements discussing the "present invention."[2] Although the drafter of the specification frequently used the word "invention," it is clear that he did not intend for every statement using that term to be incorporated as a limitation of each and every claim.  *Cf. Greenberg v. Ethicon Endo-Surgery*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (considering the overuse of the term "means" in the specification when determining whether the applicant intended to invoke 35 U.S.C. § 112 ¶ 6).  For instance, one "statement of invention" requires proportional controls applied to a cross-shaped rocker key pad, but this rocker is only recited in dependent claim 4, not independent claim 1.  Moreover, Microsoft has not explained why its chosen "statement of invention" limits the claims, while the many others do not.[3]  Like in *Kim*, "the fact that the patent here discloses the advantages of a [specific feature] does not mean that all the claims are directed to such [a feature]."  *Kim*, 465 F.3d at 1319; *see also Golight, Inc. v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1331 (Fed. Cir. 2004) ("The patentees were not required to include within each of their claims all of these advantages or features described as significant or important in the written description.")

---

[2] Moreover, the '802 patent includes *sixteen* additional uses of the term "present invention" in its other sections.

[3] The two decisions cited by Microsoft are based on significantly different factual scenarios.  In *Honeywell International, Inc. v. ITT Industries, Inc.*, the specification of the asserted patent did not include multiple and diverse references to the "present invention" similar to the 32 references to the "present invention" of the '802 patent.  (*See* U.S. Patent No. 5,164,879 at 1:5-49, attached as Ex. 1.)  Moreover, the asserted patent only described a single embodiment, unlike the Microsoft-Infringed Patents, which describe two embodiments for building a pressure-sensitive analog sensor.  452 F.3d 1312, 1318 (Fed. Cir. 2006).  *Andersen Corp. v. Fiber Composites, LLC* did not address the effect of statements describing the "present invention" in the specification.  Instead, the Federal Circuit relied heavily on limiting statements from the prosecution history in support of its construction.  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).  No such limiting statements are found in the prosecution history of the Microsoft-Infringed Patents.

### 3. Microsoft's Universal Construction Violates the Doctrine of Claim Differentiation

Microsoft's attempt to read a "pressure-sensitive variable-conductance material" limitation into every asserted claim must fail because it violates the doctrine of claim differentiation. "The doctrine of claim differentiation suggests that the independent claims here should not include explicit limitations of a dependent claim." *Kim*, 465 F.3d at 1319. Microsoft's proposed constructions attempt to bring the limitations of multiple dependent claims '991 patent[4] into every other asserted claim, including the independent claim from which they depend. For example, claim 23 states:

> 23. A game control comprising:
>
> a housing . . .;
>
> a plurality of depressible electricity manipulating devices . . . ;
>
> **at least one of said electricity manipulating devices is a pressure-sensitive variable-conductance sensor** . . . ;
>
> at least one of said electricity manipulating devices . . .
>
> electronics means . . ..

In comparison, claim 31 of the '991 patent, which depends from claim 23, states:

> 31. A game control according to claim 30 wherein said electronic means includes an ASIC, and said **sensor includes pressure-sensitive variable-conductance material**.

Because dependent claim 31 of the '991 patent explicitly states that sensor should include pressure-sensitive variable conductance material, the Court should find that the other disputed terms, such as pressure-sensitive variable conductance sensor, do not require pressure-sensitive variable conductance material. *See Acumed, LLC,* 2007 U.S. App. LEXIS 8375, at *12 (finding

---

[4] There are many examples in which the term "pressure-sensitive variable conductance material" appears only in the dependent claims of the Microsoft-Infringed Patents. *See* '991 patent, claim 12 (depends from claim 11), claim 29 (depends from claim 23), claim 31 (depends from claim 23), claim 50 (depends from claim 44), claim 64 (depends from claim 44), and claim 71 (depends from claim 70).

that the presence of a dependent claim that explicitly required a continuous bend raised a presumption that the independent claim did not contain such a limitation).

### B. "Pressure-Sensitive Variable Conductance Material" Should Not Be Construed to Exclude One of the Two Disclosed Embodiments

Microsoft acknowledges that Anascape's proposed construction of the term pressure-sensitive variable conductance material, "a conductive element that provides for variable electrical flow dependent upon the applied force," captures the plain meaning of the term.  (*See* Microsoft Br. at 8-9 ("The ordinary meaning of these words is that this special 'material' has the property that its conductivity changes with pressure.").)  Moreover, Anascape's construction is supported by citations to the specification, which Microsoft wholly ignores.  (*See* Anascape Opening Br. at 15.)

Despite its apparent agreement with Anascape's proposed construction, Microsoft impermissibly insists on excluding one of the two preferred embodiments of the Microsoft-Infringed Patents from its construction.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (holding that a construction that excludes a preferred embodiment is rarely, if ever correct).

### 1. The Microsoft-Infringed Patents Disclose Two Embodiments

Microsoft does not seriously dispute that the Microsoft-Infringed Patents disclose two embodiments for creating a pressure-sensitive variable conductance sensor: an "increasing surface area" embodiment and a "volume effect" embodiment.  Instead, Microsoft simply ignores the portion of the specification that discusses the "increasing surface area" embodiment.  As described extensively in Anascape's opening brief, the Microsoft-Infringed Patents clearly describe how conductivity changes may be created by increasing surface area contact:

> Also shown in FIGS. 7 and 8 is the surface of material 36 which contacts traces 32 and 34 is convexed which in this particular application provides for the apex of

the surface to first contact across traces 32 and 34 followed by *material 36 which is flexible deforming with additional applied pressure to somewhat flatten-out and contact additional surface area of both traces 32 and 34. This arrangement of relatively lower initial surface area contact followed by additional or a larger surface area contact with further depression can provide additional conductivity changes* due to not only the inherent conductivity changes brought about by pressure applied to material 36 but also *by establishing additional current paths possible by the additional surface contact area.*

('802 Patent, 8:58-9:7 (emphasis added).)[5]  Moreover, claim 41 of the '991 patent recites this embodiment:

> 41.   A game control according to claim 40 wherein said electronics means includes an ASIC, and said pressure-sensitive variable-conductance sensor includes flexible material having a substantially convex surface, said material deforming with additional pressure to flatten causing contact of additional surface area to provide conductivity changes of said sensor.

The patents, therefore, explicitly disclose that a flexible element that flattens with increasing applied pressure may provide a variable electrical output by establishing additional current paths.

### 2. *Microsoft's Proposed Constructions Exclude the Increasing Surface Area Embodiment*

Microsoft attempts to distract the Court from its true objective – excluding one of the two preferred embodiments of the patents – by focusing on a red herring, the *Yaniger* patent, which is only extrinsic evidence to the Microsoft-Infringed Patents.[6]  Microsoft explains how *Yaniger* discloses material that does not compress or decrease in volume with pressure, but can be used to create a variable output switch by using an "increasing surface area" effect.  (*See* Microsoft Br. at 14-15.)  Microsoft calls this a "micro-protrusion surface area effect."  Because the Microsoft-

---

[5] Microsoft failed to address Anascape's contention that the depiction of the increasing surface area embodiment in conjunction with the volume effect embodiment should not limit the claims of these patents to only a single embodiment.  Because either embodiment of the patents-in-suit is capable of varying electrical output in proportion to the varying force applied to the sensor, the claim constructions must capture both embodiments.  (*See* Anascape Br. at 13.)

[6] A patent that is not cited to in the specification is "purely extrinsic evidence, and therefore merits little consideration."  *See Acumed*, 2007 U.S. App. LEXIS 8375, at *22.

Infringed Patents did not reference *Yaniger*, Microsoft argues that its "micro-protrusion surface area effect" cannot be included in the scope of their claims. *Id.* at 16.

*Yaniger* should not affect the Court's construction because Microsoft's inductive reasoning is not persuasive. The Microsoft-Infringed Patents disclose an "increasing surface area" embodiment that provides variable electrical output under increasing pressure through a "surface area effect." According to Microsoft, *Yaniger* is a specific application of an "increasing surface area" embodiment. Even if the Microsoft-Infringed Patents do not describe this specific instance of the "increasing surface area" embodiment, it does not follow that the patentee has abandoned the broader disclosed embodiment. Instead, such a claim construction approach is almost necessarily incorrect.[7] *Vitronics Corp.*, 90 F.3d at 1583 (holding that a construction that excludes a preferred embodiment is rarely, if ever correct).

### 3. No Case Law Supports Microsoft's Attempt to Exclude Disclosed Embodiments

Microsoft relies heavily on the *Nystrom II* decision in support of its narrowing claim construction positions. That decision, however, has little in common with the claim construction disputes of the present case. *Nystrom v. TREX Co., Inc.* ("*Nystrom II*"), 424 F.3d 1136 (Fed. Cir. 2005). In *Nystrom II*, the Court explained that the specification only disclosed one embodiment of a "board" – a piece of wood cut from a log. *Id.* at 1144. Moreover, dictionary definitions indicated that the plain and ordinary meaning of "board" was also a piece of wood cut from a log. *Id.* Additionally, "both parties [acknowledged that] the ordinary meaning of 'board' [is] 'a piece of sawed lumber.'" *Id* at 1145. Finally, the patentee disclaimed anything other than a wooden board during the prosecution history. *Id.* In that case, there was only one logical

---

[7] Microsoft half-heartedly argues that its construction does not rule out any disclosed embodiments. The first paragraph of Microsoft's construction requires material that exhibits a "volume effect." This requirement reads out the "increasing surface area" embodiment.

conclusion, that a "board" must be a piece of wood cut from a log.  Here, the patent discloses

two embodiments for building a pressure-sensitive sensor.  Second, the plain meaning of the

term, as acknowledged by Microsoft's Brief, does not match the limiting construction that

Microsoft has proposed.  Third, Microsoft has failed to identify any limiting statements in the

prosecution history.  Therefore, the *Nystrom II* case is inapplicable.[8]

### 4. *Pressure-Sensitive Variable-Conductance Material Does Not Require a "Volume Effect"*

Microsoft incorrectly argues that the ***permissive*** language, reproduced below, of the

specification describing the pressure-sensitive variable-conductance material compels its

construction.

> Pressure-sensitive variable-conductance material 36 is an important aspect of the present invention. Variable conductance ***can*** be achieved with materials having either variable resistive properties or variable rectifying properties. For the purpose of this disclosure and the claims, variable-conductance means either variably resistive or variably rectifying. Material having these qualities ***can*** be achieved utilizing various chemical compounds or formulas some of which I will herein detail for example. Additional information regarding such materials can be found in U.S. Pat. No. 3,806,471 issued to R. J. Mitchell on Apr. 23, 1974 describing various feasible pressure-sensitive variable-conductance material formulas which ***can*** be utilized in the present invention . . .

('802 patent at 6:49-65 (emphasis added).)  The repeated use of the word "can" shows that this

description is permissive, not required.[9]  Like in *Sunrace*, "[n]othing in the written description

indicates that the invention is *exclusively directed* toward [a particular feature] or that systems

not employing [a particular feature] are outside the scope of the invention."  *Sunrace Roots*

---

[8] For the same reasons, the *Old Town Canoe Co.*, *On Demand Mach. Corp.*, and *Curtiss-Wright Flow Control Corp.* cases cited by Microsoft are equally inapplicable.

[9] Additionally, Microsoft failed to address Anascape's contention that variable conductance can be achieved by any material having "variable resistive properties." ('802 patent at 6:49-52.)  One way pressure-sensitive material can provide variable resistive properties is through its geometry, as discussed with respect to the increasing surface area embodiment.  ('802 patent at 8:65 ("This arrangement of relatively lower initial surface area contact followed by additional or a larger surface area contact with further depression can provide additional conductivity changes due to not only the inherent conductivity changes brought about by pressure applied to material 36 but also by establishing additional current paths possible by the additional surface contact area.").)

*Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed. Cir. 2003); *see Kwiktek v. Pilot Corp.*, No. 2:05-CV-533, 2007 U.S. Dist LEXIS 26407, at *23 (E.D. Tex. Apr. 10, 2007) (Clark, J.) (refusing to require a lip to be "outwardly extending" because "nothing in the claim or specification, prohibits lips from extending both inwardly and outwardly" and "nothing in the claim states the lips must extend outwardly.").  This case is thus unlike *Andersen*, where the Court noted that "[t]he specification, however, uses language of requirement, not preference . . ." *Andersen Corp.*, 474 F.3d at 1372.

### C.  Microsoft's Proposed Constructions Present Additional Problems When Considered Individually

As described above, Microsoft's universal attempt to import the "volume effect" embodiment into every asserted claim is fundamentally unsound.  There are additional problems associated with specific claim terms.  Anascape addresses these problems below.

#### 1.  *Claim Differentiation Precludes Microsoft's Proposed Construction of "Pressure-Sensitive Variable-Conductance of One of Said Buttons"*

Incorporating a "pressure-sensitive variable conductance material" limitation into the term "pressure-sensitive variable-conductance of one of said buttons" violates the doctrine of claim differentiation.  This claim term only appears in one asserted claim, claim 11 of the '802 patent.  Claim 12 of the '991 patent, which depends from claim 11, states:

> 12. An improved method for controlling game imagery with a game control according to claim 11 wherein said improvement further comprises the step of:
>
> providing variable action intensity of said game imagery at least in part controlled by pressure-sensitive variable depression of a second one of said buttons,
>
> providing for said buttons to **depress pressure-sensitive variable-conductance material**.

Adopting Microsoft's proposed construction of this term would inappropriately import the limitations of claim 12 into claim 11.

### 2. The "Depressing . . ." Terms Do Not Require a Pressure-Sensitive Variable-Conductance Sensor

These terms are readily understandable by the fact-finder, and do not require further construction. Although Microsoft argues that Anascape "invites error by providing no construction," (Microsoft Br. at 22), this Court has recognized that "in patent law, it is well established that 'although every word used in a claim has a meaning, not every word requires a construction.'" *TGIP v. AT&T Corp.*, No. 2:06-CV-105, 2007 U.S. Dist. LEXIS 17381, at *47 (E.D. Tex. Mar. 12, 2007) (Clark, J.); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term . . ."). Thus, the Court need not construe this limitation.

Moreover, Microsoft failed to address the binding Federal Circuit case law that holds that method claims can be infringed by the practice of the method with a device claimed in the patent, described in the specification, or any other device. (Anascape Opening Br. at 19.)

### 3. The "Flexible Material" and "Surface With an Apex . . ." Terms Do Not Require Pressure-Sensitive Variable-Conductance Material

Like the previous claim term, these terms do not require construction because they are readily understandable by the fact-finder in this case. Moreover, Microsoft failed to address the inclusion of embodiments in the Microsoft-Infringed Patents in which the "flexible material" and "said surface with an apex . . ." structures are not comprised of pressure-sensitive variable conductance material. (*See* Anascape Opening Br. at 20-23.)

In addition, Microsoft's arguments make unwarranted jumps in logic. In its argument addressing the "flexible material" term, Microsoft states that claim 41 (which includes that term) describes the embodiment shown in Figures 7 and 8 of the '802 patent. (Microsoft's Br. at 22-

24.)[10]  If Figures 7 and 8 embody claim 41, it supports a finding that pressure-sensitive variable-conductance material *may be* flexible material, but does not require a finding that the term "flexible material" is *coextensive* with pressure-sensitive variable-conductance material.[11]  This is yet another attempt by Microsoft to import limitations from preferred embodiments disclosed in the patent.  *See Phillips*, 415 F.3d at 1320 (defining such as a "cardinal sin[] of patent law").

## II. MICROSOFT PROPOSED FAULTY CONSTRUCTIONS FOR THE OTHER DISPUTED CLAIM TERMS OF THE MICROSOFT-INFRINGED PATENTS

### A. The Term "Sheet" Is Not Limited to "Single Disks of Material Adhered to a Single Dome Cap or on Top of a Single Circuit Trace"

Because this term will be easily understood by the fact-finder, it does not require construction.  Microsoft, however, attempts to limit that the term "sheet," notwithstanding its plain meaning, by adding limitations that are not required by the claims or the specification.  Microsoft *only* points to the following excerpt from the '991 to support its narrowing construction:

> *A preferred method of manufacture* for portions of that which is shown in FIG. 3 *is to create a sheet* of pressure-sensitive material 36 adhered to a conductive sheet such as steel, aluminum or copper, for example, by applying a mixture of the still fluid material 36, before the binder material has cured to the conductive sheet in a thin even layer. *After the binder material (material 36) has cured and adhered to the conductive sheet*, *a hole punch is used to create circular disks of the lamination of the conductive sheet (plate 38)* adhered to material 36. *The disks may then be secured to the circuit board* and in contact with circuit traces 32 and 34. Securing may be accomplished with the use of adhesives such as the same binder such as silicone rubber or adhesive as used in the formula to make material 36.

('802 patent at 7:22-36 (emphasis added).)  Microsoft makes three errors in its analysis.  First, the topic sentence explicitly notes that this is a *preferred embodiment*.  Preferred embodiments

---

[10] Those figures disclose two ways for creating conductivity changes in response to applied pressure: a volume effect embodiment or an increasing surface area embodiment.

[11] Microsoft also argues that claim 61, which includes the "surface with an apex. . ." term, embodies Figure 7 and 8 of the '802 Patent.  (Microsoft Br. at 23-24).  This argument fails for the same reasons.

should not be used to limit claim terms. *See Phillips*, 415 F.3d at 1323. Second, as pointed out in the language above, the specification teaches to (1) create a sheet, and *then* (2) use a hole punch to create circular disks of lamination. If the term "sheet" already encompassed the idea of circular disks of material, such instruction would be unnecessary. Third, in *Nystrom II*, the plain meaning of the term "board" – as acknowledged by the parties and described in dictionary definitions – called for a piece of wood cut from a log. Microsoft has not provided any evidence that the plain and ordinary meaning of "sheet" is a disk of material adhered to a single dome cap or on top of a single circuit trace. (*Compare* Oxford American Desk Dictionary and Thesaurus at 767 (2d ed. 2001) attached as Ex. 2 to Anascape Opening Br. (defining "sheet" as a ". . . thin flat piece of material").) Microsoft has not, and cannot, support its proposed construction.

### B. The "Surface Area Effect" Embodiment Can Perform the Function of the "Means for Creating . . ." Terms

As discussed above, the patent discloses two embodiments: the "increasing surface area" embodiment and the "volume effect" embodiment. As detailed in Anascape's opening brief, the "increasing surface area" embodiment, which does not require the use of material that exhibits a "volume effect," can perform the functions associated with these terms. Thus, material that exhibits a "volume effect" is not necessary to perform the functions, as Microsoft claims.

### C. "Electronic Means" and "Active Electronic Means" Do Not Invoke § 112 ¶ 6

The above claim terms provide sufficient structure to avoid application of § 112 ¶ 6. The term "electronics" is used in claim 70 of the '991 Patent, and the term "active electronics" is defined in the specification[12] as an ASIC or micro-controller integrated circuitry. ('802 Patent at

---

[12] Microsoft asks the Court to ignore the teachings of the specification when making a determination as to the applicability of § 112 ¶ 6. (Microsoft Br. at 35.) Because *Phillips* requires that the claims be read in light of the specification, the Court *must* consider the specification when making this determination. 415 F.3d at 1315. Moreover, Microsoft cannot explain why the Court should rely on the extrinsic evidence of dictionary definitions cited by Microsoft, but ignore the explicit definitions provided by the specification.

11:7-14.) Thus, the terms "electronics" and "active electronics" are used in the patent to connote tangible structure. The addition of the word "means" does not change that. Numerous courts have found that the use of the word "means" with such terms – where the disputed term is in the form of "[term that connotes tangible structure] means" – avoids application of § 112 ¶ 6.[13]

*DESA IP*, an unpublished Federal Circuit case,[14] does not compel the opposite conclusion. *DESA* involved the terms "sensor means," "control circuit means," and "switching means" – terms that are not at issue here.[15] *DESA IP, LLC, v. EML Techs., LLC*, No. 06-116, 2007 U.S. App. LEXIS 256, at *10-11 (Fed. Cir. Jan. 4, 2007) (non-precedential). In light of the specification, the terms at issue here – electronics and active electronics – connote sufficient structure to avoid § 112 ¶ 6.

### D. A "Snap-Through" Dome-Cap Produces a Snap or Click that Could Be Discerned by a User

The specification requires that the term "snap-through" – as used in the '084 Patent – provide a user discernable snap or click. As noted in Anascape's opening brief, the combination of the specification and prosecution history shows that the prior art attempted to ensure that users depressing actuators *could not discern* any "snaps" or "clicks," while Armstrong realized that such providing tactile feedback would "alert the human user of actuation of the sensor." ('084 patent at 1:50-62; '084 Patent File History, 4/30/1999 Amendment, attached as Ex. 1 to

---

[13] *See Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365 (Fed. Cir. 1999) ("baffle means"); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1999) ("perforation means"); *Goss Int'l Ams., Inc. v. K&M Newspaper Servs.*, 469 F. Supp. 2d 547, 553 (N.D. Ill. 2006) ("article feeder means"); *Source Search Techs., LLC v. Lending Tree, LLC*, Civ. No. 04-4420, 2006 U.S. Dist. LEXIS 79651, at *56 (D.N.J. Oct. 16, 2006) ("storage means" and "communications channel storage means"); *Haberman v. Playtex Prods.*, 403 F. Supp. 2d 708, 718 (W.D. Wis. 2006) ("valve means"); *Lottotron, Inc. v. Sci. Games Corp.*, 1:03-CV-920, 2003 U.S. Dist. LEXIS 15007, at *24-25 (S.D.N.Y. Sept. 8, 2003) ("storage means").

[14] Federal Circuit rules prohibit citation to its unpublished cases. *See* Federal Circuit Rule 47.6(b) ("Any opinion or order [designated as nonprecedential] should not be employed or cited as precedent.").

[15] Likewise, *Overhead Door*, cited by Microsoft, construed the term "memory selection second switch means," also not at issue here.

Anascape Opening Br.)  These disclosures limit the term "snap-through" to objects producing a user-discernable snap or click.

Microsoft does not respond to Anascape's citation of the prosecution history or the specification; rather, Microsoft incorrectly argues that Anascape's proposed construction would render the claim indefinite.  The Federal Circuit, however, has provided a high standard for proving indefiniteness.[16]  *See Bancorp Servs., L.L.C. v Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) ("We have held that a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, *i.e.*, it is not insolubly ambiguous, it is not invalid for indefiniteness.").

The term "user discernible snap or click" does not require a user to discern the snap or click.  This is readily understood by reference to similar terms, such as "visible" and "audible." If two people are looking towards a building, and only one person can see it, the building is *objectively* visible, even if the second person cannot see it.  If one of two people hears a distant siren, the siren is *objectively* audible, even if the second person cannot hear it.  The key to "visible," "audible," and "user discernable," then, is whether a user is *capable* of seeing, hearing, or discerning it.[17]  No subjectivity is introduced by this term.[18]  *Cf. Contessa Foods Prods. v. ConAgra, Inc.* 282 F.3d 1370, 1381 (Fed. Cir. 2002) (considering visibility from an objective frame of reference in performing a *Gorham* analysis for infringement of a design patent).

---

[16] Therefore, at the outset, it is impossible to create an indefiniteness issue by injecting an ambiguity into a claim via claim construction; the claim language, not the claim construction, is judged against the standard of §112, ¶ 2.

[17] Microsoft's argument further suggests that the snap or click must be audible.  (*See* Microsoft Br. at 37 (characterizing Anascape's argument as requiring a "hearing test.").).  The specification does not so limit this term. *See* '084 Patent at 1: 60-62 (disclosing "a snap or click which is user discernable *in the form of a tactile sensation*").

[18] This is in stark contrast to the cases cited by Microsoft, such as *Datamize*, which did not provide an objective anchor for determining which interface screens were "aesthetically pleasing."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350-51 (Fed. Cir. 2005).

DATED:  June 1, 2007.                    Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ Sam Baxter_____
Sam Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Facsimile: (903) 927-2622

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Luke F. McLeroy
Texas State Bar No. 24041455
lmcleroy@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
Charles Ainsworth
Texas State Bar No. 00783521
charley@pbatyler.com
Parker, Bunt & Ainsworth P.C.
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
ANASCAPE, LTD.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF or U.S. Mail on this 1st day of June, 2007.

/s/ Luke F. McLeroy
Luke F. McLeroy