**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | |
|---|---|
| Anascape, Ltd., | |
|          Plaintiff, | |
| v. | Civil Action No. 9:06-cv-158-RC |
| Microsoft Corp., and | JURY TRIAL REQUESTED |
| Nintendo of America, Inc., | |
|          Defendants. | |

# ANASCAPE'S REPLY CLAIM CONSTRUCTION BRIEF – PART II

## PART II – MICROSOFT & NINTENDO-INFRINGED PATENTS

*U.S. Patent No. 6,222,525*
*U.S. Patent No. 6,906,700*

Dockets.Justia.com

# TABLE OF CONTENTS

I.    THE ASSERTED CLAIMS ARE NOT LIMITED TO CONTROLLERS WITH A "SINGLE INPUT MEMBER MOVEABLE IN 6 DEGREES OF FREEDOM" ...............................................1

    A.    The Claims of the '525 Patent Expressly Permit Less Than Six Degrees Of Freedom .......................................................................1

    B.    Defendants Fail To Identify A "Textual Hook" In The Claims That Requires A Single Input Member With Six Degrees of Freedom ...........................................................................4

    C.    Microsoft Has Represented To The Patent Office That The Claims Are Not Limited To Six Degrees Of Freedom ...........................5

    D.    The Descriptions of the Preferred Embodiments Cited By Defendants Do Not Rise To The Level Necessary To Override The Express Language Of The Claims ....................................6

    E.    Embodiments of the '525 and '700 Patents Show Multiple Input Members and Input Members with Fewer than Six Degrees of Freedom ........................................................................10

    F.    There Is No Disavowal Of Claim Scope In The Prosecution History ...............................................................................................11

    G.    The Discussion Of The *Chang* Patent Does Not Limit The Claims ...............................................................................................12

II.   IN MANY CASES, THE PREAMBLES ARE NOT LIMITATIONS OF THE ASSERTED CLAIMS .................................................14

III.  NONE OF THE OTHER DISPUTED CLAIM TERMS REQUIRE A "SINGLE INPUT MEMBER" .....................................................................15

IV.   "MOVEABLE ON TWO AXES" IS NOT LIMITED TO LINEAR MOVEMENT .......................................................................................16

V.    "FLEXIBLE MEMBRANE SHEETS" MAY CONTAIN SENSORS AND/OR CIRCUITRY .......................................................17

VI.   THE TERM "AT LEAST ONE SHEET" IS NOT LIMITED TO FLEXIBLE MEMBRANE SHEETS ...........................................................18

VII.  THE OTHER "SHEET" PHRASES DO NOT REQUIRE CONSTRUCTION ..............................................................................19

VIII.    THE "CONDUCTIVE TRACES" ARE NOT LIMITED TO CONDUCTIVE INK ..........................................................................................19

IX.    "NAVIGATING A VIEWPOINT" MAY OCCUR SIMULTANEOUSLY WITH "CONTROLLING AN OBJECT" ...................................20

X.    THE PHRASES "DETECTABLE BY A USER" AND "ECONOMICAL COMBINATION OF ELEMENTS" ARE DEFINITE....................................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acumed LLC v. Stryker Corp.*,
483 F.3d 800, 2007 U.S. App. LEXIS 8375 (Fed. Cir. 2007) .....................................13, 14

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
262 F.3d 1258 (Fed. Cir. 2001).................................................................................16, 17

*Catalina Mktg. Int'l, Inc. v. CoolSavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)...................................................................................14, 15

*E-Pass Techs., Inc. v. 3COM Corp.*,
343 F.3d 1364 (Fed. Cir. 2003).......................................................................................12

*Ekchian v. Home Depot*,
104 F.3d 1299 (Fed. Cir. 1997).......................................................................................13

*Honeywell, Inc. v. Victor Co.*,
298 F.3d 1317 (Fed. Cir. 2002).......................................................................................12

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
452 F.3d 1312 (Fed. Cir. 2006).......................................................................................13

*Johnson Worldwide Assocs. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999)...........................................................................................5

*Kim v. ConAgra Foods, Inc.*,
465 F.3d 1312 (Fed. Cir. 2006)...................................................................................9, 17

*Laitram Corp. v. Morehouse Indus., Inc.*,
143 F.3d 1456 (Fed. Cir. 1998).........................................................................................5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir.  2004)......................................................................................2, 3

*MBO Labs, Inc. v. Becton, Dickson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007)...............................................................................4, 5, 11

*McCarty v. Lehigh Valley R.R.*,
160 U.S. 110 (1895)...........................................................................................................5

*Medtronic AVE Inc. v. Cordis Corp.*,
No. 2-03-CV-212-TJW, 2007 U.S. Dist. LEXIS 29699 (E.D. Tex. Apr. 23, 2007) ...12, 18

*Modine Mfg. Co. v. U. S. Int'l Trade Comm'n,*
   75 F.3d 1545 (Fed. Cir. 1996)..............................................................................3

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..........................................4, 6, 7, 9, 18

*SRAM Corp. v. AD-II Eng'g, Inc.,*
   465 F.3d 1351 (Fed. Cir. 2006)............................................................................4

*Salazar v. Procter & Gamble Co.,*
   414 F.3d 1342 (Fed. Cir. 2005)..........................................................................12

*SanDisk Corp. v. Memorex Prods., Inc.,*
   415 F.3d 1278 (Fed. Cir. 2005) ..........................................................................16

*Scimed Life Sys. v. Adv. Cardiovascular Sys.,*
   242 F.3d 1337 (Fed. Cir. 2001)...............................................................7, 12, 13

*Seven Networks Inc. v. Visto Corp.,*
   No. 2:05-CV-365, 2006 U.S. Dist. LEXIS 93870 (E.D. Tex. Dec. 29, 2006)....................7

*Sunrace Roots Enter. Co. v. SRAM Corp.,*
   336 F.3d 1298 (Fed. Cir. 2003)............................................................................7

*Synopsys, Inc. v. Magma Design Automation,*
   No. C-04-3923-MMC, 2007 U.S. Dist. LEXIS 6814 (N.D. Cal. Jan. 31, 2007)................5

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
   247 F.3d 1316 (Fed. Cir. 2001)............................................................................4

*Tessera, Inc. v. Micron Tech., Inc.,*
   423 F. Supp. 2d 624 (E.D. Tex. 2006) ...............................................................4

*Tronzo v. Biomet,*
   156 F.3d 1154 (Fed. Cir. 1998)..........................................................................13

*Ventana Med. Sys. v. Biogenix Labs.,*
   473 F.3d 1173 (Fed. Cir. 2006)...............................................................8, 9, 12, 17, 18

*Vitronics Corp. v. Conceptronic Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996)..............................................................................5

*Wireless Agents, LLC v. Sony Ericsson Mobile Commc'ns AB,*
   No. 06-1054, 2006 U.S. App. LEXIS 18933 (Fed. Cir. July 26, 2006) ............................13

# FEDERAL STATUTES

35 U.S.C. § 112 ¶ 2 ........................................................................................................6

## INDEX TO EXHIBITS

Ex. 1          U.S. Patent No 5,589,828

Ex. 2          U.S. Patent No. 5,472,444

I.    **THE ASSERTED CLAIMS ARE NOT LIMITED TO CONTROLLERS WITH A "SINGLE INPUT MEMBER MOVEABLE IN 6 DEGREES OF FREEDOM"**

Defendants pick and choose portions of the '525 and '700 patents describing the preferred embodiments to argue that all of the asserted claims are limited to a single input member moveable in six degrees of freedom, regardless of whether the claims contain a textual hook for that limitation.  The Court should reject the Defendants' argument for seven reasons: (1) the express language of certain claims requires an input member with *only two degrees of freedom*, thus proving that the claims do not inherently incorporate a six degree of freedom requirement; (2) many, if not all, of the claims lack a "textual hook" for incorporating a single input member limitation, in violation of the Federal Circuit's *MBO Laboratories* opinion; (3) Microsoft represented to the Patent Office that the claims *do not* require six degrees of freedom; (4) the statements in the specification regarding input members cited by the Defendants do not rise to the level necessary to justify wholesale incorporation of a single input member limitation; (5) the specification discloses an embodiment including the combination of a trackball and collet, which comprises two separate input members; (6) the prosecution history does not require a single input member with six degrees of freedom; and (7) the discussion in the specification of the *Chang* patent does not create an estoppel that requires six degrees of freedom in a single input member.

### A.  The Claims of the '525 Patent Expressly Permit Less Than Six Degrees Of Freedom

Independent claims 1, 5, and 12 of the '525 require that the input member only be "moveable on at least two axes."  For example, claim 5 of the '525 patent states:

> 5.  An image controller comprising:
>
> > <u>***an input member movable on at least two axes***</u>, said input member having associated sensors; and

> a plurality of finger depressible buttons, said finger depressible buttons having associated sensors; and
>
> at least one sheet connecting to the sensors of said input member, and said at least one sheet connecting to the sensors of said finger depressible buttons;
>
> said at least one sheet includes electrically conductive traces, said traces engaging the sensors;
>
> at least one of the finger depressible buttons is structured with a resilient dome cap;
>
> said resilient dome cap is structured to provide a tactile feedback to a human hand; said at least one sheet comprises
>
> a flexible membrane sheet connected to a rigid circuit board sheet.

These claims contradict the Defendants' assertion that, because a single input member with six degrees of freedom is the crux of the invention, it must be inferred as an implicit limitation in every claim. Neither the applicant nor the Patent Office viewed the patents as including such a limitation; instead, the '525 patent explicitly covers a controller moveable on only two axes.

The claims of U.S. Patent No. 5,589,828 patent, a separate Armstrong patent to which the '525 and '700 patents claim priority, further demonstrate that the patentee was capable of explicitly claiming a single input member capable of six degrees of freedom when he intended that result. For example, claim 1 of the '828 patent recites "A hand-operated controller allowing six degrees of freedom of hand input force into a single handle . . . ." ('828 patent, claim 1, attached as Ex. 1.) In contrast, the asserted claims of the '525 and '700 patents do not require a single input member moveable in six degrees of freedom.

Moreover, the doctrine of "claim differentiation" prohibits this result; generally, dependent claims must be narrower than the independent claims upon which they are based. As a result, if a dependent claim contains a limitation (such a requiring six degrees of freedom), then there is a strong presumption that the limitation in the dependent claim is not present in the independent claim. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (holding that the doctrine of claim differentiation is at is strongest when, as here, "the

limitation that is sought to be 'read into' an independent claim already appears in a dependent claim.") "When a limitation is included in several claims but is stated in terms of apparently different scope, there is a presumption that a difference in scope is intended and is real. Such a presumption can be overcome, but the evidence must be clear and persuasive." *Modine Mfg. Co. v. U. S. Int'l Trade Comm'n*, 75 F.3d 1545, 1551 (Fed. Cir. 1996).

Applying the claim differentiation doctrine, dependent claims 4, 9, and 10 of the '525 patent show that the independent claims do not require six degrees of freedom.

> 9. An image controller according to claim 7 in which said input member is ***operable on at least six axes***.

('525 patent, claim 9.) This dependent claim, like the others, requires that the input member be "operable on at least six axes." If, as Defendants suggest, the term "controller" already implied a single input member moveable on six axes, these dependent claims would impermissibly be rendered superfluous. *See Liebel-Flarsheim*, 358 F.3d at 910.

The Defendants implicitly admit this problem when they try to manufacture a distinction based on the slight difference in wording between the terms "moveable" and "operable" in the independent and dependent claims. Common sense rebuts the Defendants' attempted distinction. The parties agree that "moveable" means that the input member must be moveable along an axis, regardless of whether or not a sensor is activated. (*See* Nintendo Br. at 21-22.) The parties also agree that "operable" means that the input member must be moveable along an axis and also activate a sensor as a result of that movement. *Id.*; *see* '525 Patent at 7:15-22. Therefore, dependent claim 4 also adds the limitation of "moveability" along *six* axes, as opposed to *two* axes; this limitation would be rendered superfluous if the independent claim already required moveability along six axes. Therefore, the distinction does not resolve their conflict with Federal Circuit precedent because their proposed constructions incorporate a limitation of the dependent

claims into the independent claims.[1]  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1325 (Fed. Cir. 2005) ("claim terms should not be read to contain a limitation where another claim restricts the invention in exactly the same manner" (internal citations omitted)).  Claim differentiation aside, the Defendants never address this basic contradiction: on one hand, Defendants make the sweeping claim that every claim is implicitly limited to a single input member with six degrees of freedom, yet on the other hand, the independent claims of the '525 patent explicitly permit two degrees of freedom.  This contradiction shows that the Defendants' position is untenable.

### B.  Defendants Fail To Identify A "Textual Hook" In The Claims That Requires A Single Input Member With Six Degrees of Freedom

The Federal Circuit requires a "textual reference in the actual language of the claim with which to associate a proffered claim construction."  *MBO Labs, Inc. v. Becton, Dickson & Co.*, 474 F.3d 1323, 1331 (Fed. Cir. 2007).  In *MBO Labs*, statements in the specification required the "present invention," which was an improved syringe, to "shield[] the blood-contaminated needle simultaneously with its removal from the donor."  *Id.* at 1330.  Statements from the prosecution also confirmed the importance of a "simultaneous shielding," *i.e.* an immediacy, requirement. *Id.*  Accordingly, the Federal Circuit found "that [an immediacy requirement] is an essential element of the invention," but held that certain claims were immune from this requirement because there was no textual hook: "[n]one of the disputed terms found in [those claims] can reasonably be construed to impose [that] requirement upon those claims."  *Id.* at 1331.

---

[1]  The cases cited by Nintendo are inapposite.  Instead of rendering a limitation from the dependent claims superfluous, the Federal Circuit cases cited by Nintendo found that the limitation alleged to be rendered superfluous by a particular claim construction was not the same limitation as the limitation as contained in the dependent claim. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1325-26 (Fed. Cir. 2001) (finding that the "time" limitation of claim 3 was not negated by a construction of the "communication means" as limited to automatically established communications); *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1358 (Fed. Cir. 2006) (finding that the dependent claim included a limitation regarding a "a series of down-shifts," which was separate from the "precision indexed downshift" required by the independent claim); In the district court case, the Court found that evidence favoring a different construction was clear to overcome the presumption of claim differentiation. *Tessera, Inc. v. Micron Tech., Inc.*, 423 F. Supp. 2d 624, 632-33 (E.D. Tex. 2006).

The terms at issue, which Defendants argue must be limited to a single input member with six degrees of freedom, are "image controller," "3-D graphics controller," and "hand operated controller." None of these terms contain language related to degrees of freedom. None of these terms reference an input member, let alone a single input member. Instead, these terms are general and well-understood terms that simply recite an overall controller. Simply put, none of these terms are an adequate "textual hook" for the limitations related to the number of degrees of freedom, or the structural characteristics of a particular input member. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989-990 (Fed. Cir. 1999) ("claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources"); *McCarty v. Lehigh Valley R.R.*, 160 U.S. 110, 116 (1895) ("If we once begin to include elements not mentioned in the claim in order to limit such claim . . ., we should never know where to stop.")).

## C. Microsoft Has Represented To The Patent Office That The Claims Are Not Limited To Six Degrees Of Freedom

The Defendants' proposed constructions flatly contradict the position Microsoft has taken before the Patent Office in its reexamination request filed on the '700 patent. In that proceeding, Microsoft stated: "None of Claims 1-33 of the '700 Patent has the limitation of a single input member to provide six degrees of freedom." (Microsoft's '700 patent reexamination request at 21, Ex. 3 to Anascape Opening Br.) Microsoft does not even attempt to explain the inconsistent positions it has taken before the Patent Office and this Court.[2] Instead, Microsoft only attempts

---

[2] Judicial estoppel prevents Microsoft from taking a contrary position in this lawsuit. A district court may invoke judicial estoppel when an inconsistent statement is made in front of the Patent Office. *See Synopsys, Inc. v. Magma Design Automation*, No. C-04-3923-MMC, 2007 U.S. Dist. LEXIS 6814, at *74-75 (N.D. Cal. Jan. 31, 2007) ("judicial estoppel is applicable to cases in which the prior statements at issue were made to the PTO"). Microsoft failed to address this case and, instead, cited two cases that do not address judicial estoppel at all, and pre-date the *inter partes* procedure Microsoft instituted against the '700 Patent. *See Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576 (Fed. Cir. 1996). Unlike the *ex*

to divert attention from its contradiction by arguing that Anascape "is trying to have it both ways." Anascape's position, however, is entirely consistent; the patents are not limited to a single input member regardless of whether this Court or the Patent Office is considering the claims.

### D. The Descriptions of the Preferred Embodiments Cited By Defendants Do Not Rise To The Level Necessary To Override The Express Language Of The Claims

The claims, not the specification, contain the legally operative description of the metes and bounds of the invention. *See* 35 U.S.C. § 112 ¶ 2. Conversely, the Patent Act requires an applicant to disclose his preferred embodiments in detail. But, patent law is clear that the claims can, and almost always do, have a broader scope than just the preferred embodiments that are disclosed. As a result, overcoming the express language of the claims based on statements made discussing the preferred embodiment requires clear and unmistakable language.

Such language was not present in the patent-at-issue in *Phillips*. In that case, the Federal Circuit was forced to decide whether or not the term "baffles" was limited only to baffles that were placed at acute or obtuse angles, or also included baffles placed at right angles. 415 F.3d at 1309. The defendant argued for the narrowing construction in light of (1) the uniform disclosure of the specification showing baffles deployed at angles other than 90 degrees to the wall faces, (2) the teaching of the specification that placement of the baffles at such angles creates an important intermediate interlocking, and (3) the specification's explicit discussion of the advantages that acute and obtuse baffle angles provide over the prior art with respect to deflecting projectiles. *Id.* at 1309-1310, 1325. Nevertheless, the Federal Circuit refused to adopt the limiting construction because none of the statements in the specification amounted to a clear

---

*parte* procedure at issue in *Laitram*, the *inter partes* procedure fundamentally requires the PTO to consider statements made by all parties. Microsoft should be held to the statements it made to the PTO.

disclaimer of claim scope. "While [the specification] makes clear the invention envisions baffles that serve that function, it does not imply that in order to qualify as baffles within the meaning of the claims, the internal support structures must serve the projectile-deflecting function [*i.e.* be placed at acute or obtuse angles] in all the embodiments of all the claims." *Id.* at 1325.

In contrast, it is appropriate to consider the cases relied on by the Defendants, such as *Scimed Life Sys. v. Adv. Cardiovascular Sys.*, in which the Federal Circuit has identified a clear disclaimer of claim scope. *Scimed* exemplifies the cases on which Defendants rely; in fact, most of the cases relied on by Defendants cite to *Scimed* in support of their narrowing constructions. In *Scimed*, the Federal Circuit decided that the specification of the patents limited the scope of the asserted claims to catheters with coaxial lumens. 242 F.3d 1337, 1345 (Fed. Cir. 2001). The Court considered one aspect of the specification to be the "most compelling" in favor of its conclusion, a discussion of the mandatory nature of coaxial lumens: the "intermediate sleeve structure defined above is the basic sleeve structure ___*for all embodiments of the present invention*___ contemplated and disclosed herein—namely, an inner core tube bonded to a distal portion of the main catheter shaft, with an outer sleeve forming an annular continuation of the inflation lumen through the main shaft between the core tube and outer sleeve." *Id.* at 1343.

The statements from the '525 and '700 patent relied upon by the Defendants in this case do not amount to a clear disclaimer of claim scope. Instead, the Defendants rely on statements such as: "it is with this type of 6DOF controller that the present invention is ___*primarily concerned*___," and "a ___*primary object*___ of the invention is to provide a 6DOF image controller." These statements do not equate to the mandatory language of the *Scimed* patent and, instead, align closely with that of the *Phillips* patent. *See Seven Networks Inc. v. Visto Corp*., No. 2:05-CV-365, 2006 U.S. Dist. LEXIS 93870, at *13-14 (E.D. Tex. Dec. 29, 2006) ("Unlike *SciMed*,

there are no statements in the specification that expressly state that the invention is limited to [a specific] architecture."); *Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed. Cir. 2003) ("[n]othing in the written description indicates that the invention is exclusively directed toward [a particular feature] or that systems not employing [a particular feature] are outside the scope of the invention).

Moreover, neither Defendant explains how such a universal claim limitation can be justified in light of the specification, which makes clear that:

> The input member of the joystick-type controller may be manipulatable or operable in ***up to*** six degrees of freedom . . .

('525 patent at 7:39-41.)    As pointed out by the Defendants, the '700 patent clarifies this statement, stating that the inventions are not limited to controllers with a single input member capable of six degrees of freedom.[3]    These portions of the specifications undercut the Defendants' arguments.[4]    In every case relied on by the Defendants, the uniform or mandatory language of the specification disclaiming a particular feature supported the importation of a limitation from the specification.    Because the '525 and '700 patents are not so limited – and, in fact, state that the exact opposite – imposing a universal limitation is unwarranted.

---

[3] *See, e.g.*, '700 patent at 2:14-23 ("I have developed improved, low-cost hand operated controllers, providing up to 6 degrees of freedom in preferred embodiments, for use with a computer or computerized television or the like host device.  The controllers in preferred embodiments, while not restricted or required to be full six degrees of freedom (6DOF), provide structuring for converting full six degrees of freedom physical input provided by a human hand on a hand operable input member(s) into representative outputs or signals useful either directly or indirectly for controlling or assisting in controlling graphic image displays.").

[4] In addition, the specifications make references to input members and controllers operable in fewer than six degrees of freedom.  (*See* Anascape Opening Br. at 13-14.)  Although some of these phrases describe the inventions of the '525 and '700 patents and others refer to prior art controllers, the language of the specification makes clear that the patentee did not use the term "controller" to inherently mean "a controller with a single input member moveable or operable in six degrees of freedom," as the Defendants suggest.  *Cf. Ventana Med. Sys. v. Biogenix Labs.*, 473 F.3d 1173, 1180 (Fed. Cir. 2006) (considering citation of prior art covering a number of dispensing techniques in determining that the claim term "dispensing" did not require "direct dispensing").  Nintendo unfairly accuses Anascape of misrepresenting the contents of the specification.  (Nintendo Br. at 17-18.)  Anascape is not relying on these portions of the specification as directly describing the inventions of the '525 and '700 patent.  Instead, the phrases imply that the disputed claim terms, "image controller," "3-D graphics controller," and "hand-operated controller" are broader than controllers having a single input member moveable in six degrees of freedom.

Additionally, the specifications make wide use of the terms "invention" and "present invention." Those statements extol other specific features, including sheet-supported sensors and bi-directional interpretation of sensors. ('525 patent at 5:56-6:3, 8:49-56.) Armstrong explicitly noted the multi-faceted aspect of his contributions. (*See* '525 Patent at 1:25-28 ("[N]one [of the prior art references] offer ***all of the advantages*** provided by the present invention." (emphasis added)).) In light of the multiple advantages disclosed, the Court should not burden the "controller" terms with any one of those features. *See Phillips*, 415 F.3d at 1326-1327 ("The fact that the written description of the [patent] sets forth multiple objectives to be served by the baffles recited in the claims confirms that the term "baffles" should not be read restrictively to require that the baffles in each case serve all of the recited functions."); *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) (finding that "the mere fact that one object of the invention is to produce a slow acting oxidant which is functional throughout the entire manufacturing process does not mean that this particular feature was adopted as a limitation in each claim of the patent" and disagreeing with the dissent, who suggested that references to the "present invention" in the specification should limit a claim term); *Ventana*, 473 F.3d at 1181-82 ("[E]ach claim does not necessarily cover every feature disclosed in the specification. . . . Although the preferred embodiments also contain a "direct dispensing" feature, the inventors were not required to claim this feature in the [patent at issue] and, indeed, did not do so.")

The specification shows that Armstrong considered controllers with a single input member providing 6DOF to be superior to those using multiple input members. (*See* '525 Patent at 1:61-2:2 ("[the type of 6DOF controller with hand operable, single input members] is believed to be by far the most easily used for 3-D graphics control").) It is unsurprising, then, that providing such a controller is sometimes included in his description of the "object" of his

invention.  (*See* '525 Patent at 8:18-24.)  However, neither Microsoft nor Nintendo has pointed

to any statement that shows that Armstrong considered controllers employing multiple input

members as being outside the scope of his invention – rather, the defendants have only pointed to

statements that confirm that Armstrong saw single input members providing 6DOF as a preferred

characteristic of his invention, such as the portion of the specification that states that the type of

6DOF controller with hand operable, single input members is the "type of 6DOF controller that

the present invention is ***primarily*** concerned."  ('525 Patent at 1:61-2:2.)  The use of the word

"primarily" shows that this feature is included in the scope of the invention, but is not required.

### E.  Embodiments of the '525 and '700 Patents Show Multiple Input Members and Input Members with Fewer than Six Degrees of Freedom

Contrary to Defendants' characterizations, Figures 1-6 of the '525 and '700 patents show

how the collet can serve as second input member in addition to the trackball.  The specification

makes clear that the collet is an optional feature of this embodiment.  ('525 patent at 12:44-54.)

When the collet is not used, "then the exposed portion of trackball 12 is available for grasping

with the fingers to apply force in any linear direction, much like a basketball player grasps a

basketball in one hand or in the fingers."  ('525 patent at 12:54-58.)  In that scenario, the

trackball "is the hand operable single input member operable in full six degrees of freedom."

(*See* '525 patent at 11:24-25.)  On the other hand, the "[c]ollet [], if utilized, serves as an easily

gripped member allowing the human hand to move carriage 14 and thus trackball 12 in any

linear direction desired."  ('525 patent at 12:49-51.)  Therefore, in this embodiment, the collet

serves as an input member capable of accepting movement along the three linear axes and the

trackball serves as a second input member that accepts inputs along the three rotational axes.

With respect to Figure 47, neither Defendant contends that the Figure shows anything

other than a two degree of freedom input member.  In light of the specification, which makes

clear that the input member of the '525 and '700 patent can be "manipulatable or operable in ***up to*** six degrees of freedom," ('525 patent at 7:39-41), the Defendants' conclusion that this structure can only be used for creating six degree of freedom input members is unwarranted.

The Defendants' proposed constructions would read out these disclosed embodiments of the '525 and '700 patents, which do not include a single input member capable of movement in six degrees of freedom. The Federal Circuit has held that such a claim construction approach is rarely, if ever, correct. *See MBO Labs., Inc.*, 474 F.3d at 1333.

### F.  There Is No Disavowal Of Claim Scope In The Prosecution History

The '828 Patent, to which the '525 claims priority, supports a finding that the claims are not limited to embodiments with a "single input member" under the doctrine of claim differentiation because it specifically claims a "single handle" and "six degrees of freedom" as discussed above.  Nintendo, however, argues that Armstrong's statements in the '828 prosecution history limit the '525 and '700 patents to controllers with a single input member movable in 6 degrees of freedom.  Nintendo presents the statements from the prosecution history to the Court out of context; when this amendment was filed, the application contained four independent claims, three of which explicitly claimed "six degrees of freedom" in relation to a single "handle." (*See* '828 File History, 1/11/96 Amendment at 24-31.)  Not surprisingly, the arguments explaining how the prior art cited by the examiner failed to disclose a "single handle" were directed ***only*** to the claims that explicitly included that limitation.  (*See*, *e.g.*, *id.* at 40-41 ("[T]he thumbwheel 25 of Dzholdasbekov constitutes a second component other than a 'single handle' ***as recited in the present claim 36***.")  Therefore, these statements concerning the '828 patent have no impact on the proper construction of separate terms in the asserted claims of the

'525 and '700 patents.[5]  *See Ventana*, 473 F.3d at 1184 (refusing to give weight to statements from a related application because the patents-in-suit did not contain the same claim language).

### G.  The Discussion Of The *Chang* Patent Does Not Limit The Claims

The discussion of the *Chang* prior art in the '525 Patent does not limit the scope of the asserted claims.[6]  First, the '525 patent notes a number of problems with the function and structure of the controller in the *Chang* reference:  (1) it requires that the trackball housing be moved along a surface, (2) it is difficult to use, because the three linear axes are divorced between the roller ball and the thumb wheel, (3) it does not have return-to-center capabilities along the linear axes, (4) it is relatively expensive due to the use of rotary encoders as linear input sensors, (5) it does not have a single input member operable in six degrees of freedom, and (6) it does not have a single input member moveable in six degrees of freedom.  ('525 patent at 3:38-4:30.)  When a patent describes multiple problems with the prior art, each claim need not provide a solution to every problem.  *Honeywell, Inc. v. Victor Co.*, 298 F.3d 1317, 1326 (Fed. Cir. 2002); *see also Medtronic AVE Inc. v. Cordis Corp.*, No. 2-03-CV-212-TJW, 2007 U.S. Dist. LEXIS 29699, at *17-18 (E.D. Tex. Apr. 23, 2007) (refusing to import a "distance" limitation because the patents-in-suit do not distinguish the prior art solely on the basis of having an inner diameter decreased for a "short distance"); *E-Pass Techs., Inc. v. 3COM Corp.,* 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("The court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention.").

---

[5] Even less relevant, the portions of the Notice of Allowability relied on by Nintendo do not affect the proper construction of the disputed claim terms.  Not only was that Notice of Allowance withdrawn more than two and a half years before the patent actually issued, but the Federal Circuit has held that "an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope."  *Salazar v. Procter & Gamble Co*., 414 F.3d 1342, 1345 (Fed. Cir. 2005).

[6] As Defendants tacitly acknowledge, the standard for disclaimer within the specification as described in *Scimed* is different from the standard of a disclaimer in the prosecution history, at which point the patentee is attempting to overcome a rejection issued by the examiner.

Moreover, Defendants assert that Armstrong distinguished *Chang* on the basis that it is missing a single input member moveable in 6DOF, without explaining why that basis should limit the claims, and not any of the other bases.  (*See* Nintendo Br. at 18, Microsoft Br. at 3-4.)  Thus, Armstrong's criticism of *Chang* did not impute a "single input member" limitation.[7]

In addition, the Federal Circuit recently confirmed that statements discussing the disadvantages of prior art do not necessarily require a limiting construction, particularly when the plain language of the claim and the presumption of claim differentiation call for the opposite conclusion.  In *Acumed LLC v. Stryker Corp.*, the accused infringer argued that the term "curved shank" should be limited to curved shanks "with a continuous bend" as opposed to curved shanks "with angled bends or small radius curves."  483 F.3d 800, 2007 U.S. App. LEXIS 8375 at *8-10 (Fed. Cir. 2007).  In support of its limiting construction, the defendant relied on a number of places in the specification, including the "Summary of the Invention" section, that highlighted the benefits of shanks with a continuous bend and discussed the disadvantages of shanks with angled bends or small radius curves.[8]  *Id.* at *10-11.  In response, the patentee argued that the plain meaning of the claim term "curved shank" did not limit the invention to shanks with a continuous bend, and also pointed to dependent claims of the asserted patent that explicitly included a limitation related to a continuous bend.  *Id.* at *11-12.  The Federal Circuit agreed with the patentee, finding that the infringer's reliance on the portions of the specification reciting disadvantages of the non-continuous bend was nothing more than "an attempt to import

---

[7] There is no evidence that any of the cases cited by the Defendants included patents that distinguished prior art on multiple bases and, thus, those cases are distinguishable from the present case.  *See Tronzo v. Biomet*, 156 F.3d 1154, 1159 (Fed. Cir. 1998); *Scimed*, 242 F.3d at 1343; *Wireless Agents, LLC v. Sony Ericsson Mobile Commc'ns AB*, No. 06-1054, 2006 U.S. App. LEXIS 18933, at *7-8 (Fed. Cir. July 26, 2006) (non-precedential); *Honeywell Int'l, Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1319 (Fed. Cir. 2006).  One of the cases cited by Defendants is entirely irrelevant.  *Ekchian v. Home Depot*, 104 F.3d 1299 (Fed. Cir. 1997) (discussing whether or not an Information Disclosure Statement can create a disclaimer).

[8] The patent-in-suit is attached as Exhibit 2.

a feature from the preferred embodiment into the claims." *Id.* at *11. Like *Acumed*, the Defendants' attempt to import a feature from a preferred embodiment should be rejected.

## II.     IN MANY CASES, THE PREAMBLES ARE NOT LIMITATIONS OF THE ASSERTED CLAIMS

As explained in Anascape's opening brief, the "controller" terms appear frequently only in the preamble of the asserted claims. (*See* Anascape Opening Br. at 10-11.)  In these instances, the terms are not limitations of the asserted claims because language in a preamble merely extolling the benefits or features of a claimed invention does not limit claim scope. *Catalina Mktg. Int'l, Inc. v. CoolSavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002).

If the Court were to accept Nintendo's expansive and conclusory arguments to the contrary, the exception would swallow the rule, and there could never be a preamble that does not act as a claim limitation.  For example, consider the *Catalina Marketing* case, in which the Federal Circuit found that the preamble of the following claim was not a limitation:

> 1. A system for controlling the selection and dispensing of product coupons at a plurality of remote terminals located at predesignated sites such as consumer stores wherein each terminal comprises:
>
> activation means for activating such terminal for consumer transactions;
>
> display means operatively connected with said activation means for displaying a plurality of coupons available for selection;
>
> selection means operatively connected with said display means provided to permit selection of a desired displayed coupon by the consumer;
>
> print means operatively connected with said selection means for printing and dispensing the coupon selected by the consumer; and control means operatively connected with said display means for monitoring each consumer transaction and for controlling said display means to prevent the display of coupons having exceeded prescribed coupon limits.

*Id.* at 805.  If this three line claim preamble did not "breathe life and meaning into the claims," or establish a "framework of the invention," then it is impossible for the simple preambles of the asserted claims, *e.g.*, "An image controller comprising," to do so.

Second, Nintendo alleges that the preamble may be a limitation if it is a fundamental feature of the invention.  The fundamental difference between the cases cited by Nintendo and the present dispute, however, is that the limitation was expressly stated in the preambles of the *Poly-America, L.P.* ("blown-film") and *On Demand* ("high speed manufacture") cases, whereas the claim preambles in the present case do not expressly or implicitly include the "single input member" limitation that the Defendants attempt to attach to the asserted claims.[9]

Finally, Nintendo relies on the strained argument that a withdrawn notice of allowance in which the examiner may have implicitly addressed a single input member limitation leads to the conclusion that the preamble of the asserted claims should be a limitation.  This position is contradicted by law cited in Nintendo's own brief, which makes clear that the preamble may only limit a claim if *the patentee* relies on the preamble during prosecution to distinguish prior art.  (*See* Nintendo Br. at 15.)

## III.    NONE OF THE OTHER DISPUTED CLAIM TERMS REQUIRE A "SINGLE INPUT MEMBER"

For the same reasons discussed above, none of the other 17 terms in which the Defendants attempt to read in a "single input member" limitation should be so limited.  First, the prosecution history, including Armstrong's statement from the March 11, 2003 Amendment, does not support any further limitation on the term "element."  Armstrong simply states that an "element" may be "a singular structure" or "a plurality of structures . . ., as disclosed in Applicant's disclosure."  The reference to his disclosure does not limit the claims to the preferred embodiments disclosed in the patents.[10]  Second, the Defendants' arguments that, because the

---

[9] As discussed above, the "single input member" limitation is not a fundamental feature of the invention.

[10] Armstrong's statement makes clear that the element could refer to any combination of the structures disclosed within his applications, including shafts, carriages, collets, carriages, trackballs, handles, joysticks, plates, etc. Moreover, this statement is hardly the clear and unmistakable statement required to create a disclaimer.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005).

rotary potentiometers and bi-directional sensors are only used in conjunction with single input members in the preferred embodiments, a "single input member" limitation is warranted, are: (1) factually and legally inaccurate, as discussed above; and (2) irrelevant, as the claims, not the specification, define the scope of the invention.  In this case, certain claims recite that rotary potentiometers and bi-directional sensors are disclosed for use with two different input elements, while other claims fail to recite any explicit association with input elements.[11]  (*Compare* '700 Patent claim 3 *with* claim 9.)  Moreover, neither Defendant found any faults with Anascape's proposed constructions.  This is not surprising, as Anascape's constructions are faithful to the intrinsic evidence.

## IV.    "MOVEABLE ON TWO AXES" IS NOT LIMITED TO LINEAR MOVEMENT

The Defendants failed to rebut, or even address, the portions of the specification raised in Anascape's brief that show that the term "moveable on two axes" captures both linear and rotational movement, such as "a hand operable, single input member moveable in six degrees of freedom . . . ."  ('525 patent at 1:62-63; *see* Anascape Opening Br. at 20-22.)  The preferred embodiment of the '525 and '700 patents that discloses a single input member moveable in six degrees of freedom must be moveable in three linear directions *and* three rotational directions.  Likewise, the cases cited by the Defendants are inapplicable because, here, the specification does not use the term "moveable on two axes" to exclusively describe linear movement.  *See, e.g., Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (finding that a term is defined by implication only when "a patentee uses a claim term

---

[11]  Additionally, Armstrong's statement about the term "element" does not act to limit the terms "rotary potentiometers" or "bi-directional sensors," because (1) as explained above, that statement does not act to limit any of the claim terms, and (2) the statement does address the terms "rotary potentiometers" or "bi-directional sensors."

throughout the entire specification[] in a manner *consistent with only a single meaning*" (emphasis added)).[12]

Moreover, the Defendants repeatedly recognize that the term "moveable on two axes" is not limited to linear movement in other portions of their briefs. For example, the Defendants frequently characterize Armstrong's inventions as including single input members moveable along both the three rotational and the three linear axes:

- "single input member moveable in 6DOF . . ." (Microsoft Br. at 1.)
- "six degrees of freedom of movement" (Nintendo Br. at 3);
- "single input member that can be moved by a hand in six degrees of freedom" (*Id.*);
- "moveable in six degrees of freedom" (*Id.* at 3-4, 9; Microsoft Br. at 1.)

## V.    "FLEXIBLE MEMBRANE SHEETS" MAY CONTAIN SENSORS AND/OR CIRCUITRY

Despite the statements in the specification confirming that the flexible membrane sheet is not required to contain both sensors and circuitry, *see* Anascape Opening Br. at 23, the Defendants contend that a flexible membrane sheet must include both sensors and circuitry in light of the portions of the specification touting the advantages of flexible membrane sheets including both. As discussed above, however, when a patent, such as the '525 and '700 patents, describes multiple advantages, each claim need not include every advantage. *See Kim*, 465 F.3d at 1319; *Ventana*, 473 F.3d at 1181-82.

The remaining intrinsic evidence cited by the Defendants does not require the flexible membrane sheet to include both sensors and circuitry. The portions of the file history cited by Microsoft and Nintendo simply do not stand for the proposition that a flexible membrane sheet –

---

[12] In addition, Nintendo puts forth strained interpretations of claims 14 and 19 in order to argue that its proposed construction of the term "moveable on two axes" does not exclude the preferred embodiments of the invention. These interpretations of the asserted claims – such as providing multiple inputs for the same axis – should be disregarded.

or any sheet – must include circuitry and sensors.  The portions of the specification that explicitly describe preferred embodiments and preferred methods of manufacture are equally inapposite.  *See Phillips*, 415 F.3d at 1323.

## VI.    THE TERM "AT LEAST ONE SHEET" IS NOT LIMITED TO FLEXIBLE MEMBRANE SHEETS

The Defendants' arguments in favor of requiring the "at least one sheet" to include a "flexible membrane sheet" diverge; each Defendant's argument will be addressed separately. Regardless, neither party rebutted the arguments raised by Anascape that explain how: (1) the plain language of the claims is incompatible with such a limiting construction; and (2) the intrinsic evidence presents the possibility of using different types of "sheets" in conjunction with the inventions of the '525 and '700 patents.  (*See* Anascape Br. at 25-26.)

As Nintendo points out, the term "at least one sheet," as it appears in the '525 patent, is linked by the language of both claims 5 and 12 to a "flexible membrane sheet."  Accordingly, there is no reason – and, in fact it would be superfluous – to construe the separate term, "at least one sheet," to necessarily require a flexible membrane sheet.[13]  This is a critical distinction because the term "at least one sheet" appears in other asserted claims of the '700 patent that do not also include the same "flexible membrane sheet" language.  *See Medtronic*, 2007 U.S. Dist. LEXIS 29699, at *14-19 (refusing to read a length limitation found in a "statement of invention" into a claim term when one claim already contained an explicit length limitation).

Microsoft, on the other hand, argues that Armstrong's statements during the prosecution history of the '525 patent somehow limit the claims of the '700 patent.  While this is dubious at best as a matter of law, *see Ventana*, 473 F.3d at 1184  (refusing to give weight to statements from a related application because the patents-in-suit did not contain the same claim language),

---

[13] Anascape does not dispute that claims 5 and 12 of the '525 patent, as a whole, require a flexible membrane sheet.

Microsoft failed to note that Armstrong amended the claims of the '525 patent to include an explicit "flexible membrane sheet" limitation. Because a similarly explicit "flexible membrane sheet" limitation does not appear in the claims of the '700 patent including the term "at least one sheet," the claims of the '700 patent are not limited in the same way. In other words, it is the explicit "flexible membrane sheet" limitation that limits the claims of the '525 patent, not some special meaning that Armstrong imparted to the term "at least one sheet."

## VII.    THE OTHER "SHEET" PHRASES DO NOT REQUIRE CONSTRUCTION

Microsoft argues that the other "sheet" phrases, "said at least one sheet comprises a flexible membrane sheet connected . . .," "a circuit board sheet connected to a flexible membrane sheet," "the sensors are connected by at least one sheet...comprises a flexible membrane sheet," and "at least one sheet...connecting...to the sensors," require construction.[14] In support of its constructions, Microsoft relies on only (1) the file history of the '525 patent, which does not contain the same terms; (2) a withdrawn notice of allowance issued by the Examiner in the '700 patent; and (3) the descriptions of one preferred embodiment. None of these evidentiary sources are reliable foundations for reading in limitations to the disputed terms as discussed above. Moreover, Microsoft does not even attempt to defend its inclusion of a "single input member" limitation into the phrases, "the sensors are connected by at least one sheet...comprises a flexible membrane sheet" and "at least one sheet...connecting...to the sensors."

## VIII.    THE "CONDUCTIVE TRACES" ARE NOT LIMITED TO CONDUCTIVE INK

Again, the Defendants diverge in their proposed constructions for the "conductive traces" terms. Nintendo asks the Court to read in a limitation from one of the preferred methods of manufacture provided in the specification. Microsoft proposes a construction that would require

---

[14] Nintendo did not join in these claim construction proposals, which could conceivably create non-infringement arguments for its products as well as Microsoft's.

a "single input member," but does not attempt to justify it.  The Court should reject both invitations to read in unwarranted limitations from the specification.

## IX.     "NAVIGATING A VIEWPOINT" MAY OCCUR SIMULTANEOUSLY WITH "CONTROLLING AN OBJECT"

The Defendants attempt to arbitrarily limit the claim term "navigating a viewpoint" by adding an unwarranted negative limitation into its proposed construction.  While the terms "navigating a viewpoint" and "controlling an object" mean different things, nothing in claims 19 or 26 of the '700 patent or the specification of the '700 patent prohibits the claimed controllers from navigating a viewpoint at the same time the controller is used for controlling an object.

## X.     THE PHRASES "DETECTABLE BY A USER" AND "ECONOMICAL COMBINATION OF ELEMENTS" ARE DEFINITE

Only Microsoft contends that these phrases are indefinite.[15]  As explained in Part I of Anascape's reply brief, the term "detectable by a user" is definite for the same reasons that the term "user-discernible" is definite, namely, that it is objectively possible to determine whether a feedback is detectable just like it is objectively possible to determine if a sound is audible.

With respect to the "economical combination of elements," which is only found in the preamble, it is inherently contradictory for Microsoft to argue that the term provides "structural features" and is a touted feature of the invention such that it must be a claim limitation, on one hand, and too ambiguous to be construed, on the other.  Moreover, the terms "first element," "second element," and "third element" do not rely on antecedent support; they are not preceded by the terms "the" or "said," which are the black-letter earmarks of terms which require antecedent support.  Therefore, this term, which does not breathe life or meaning into the claims, cannot be considered a limitation.

---

[15] Nintendo did not join this argument, which, if successful, would render claims asserted against Nintendo invalid.

DATED:  June 1, 2007.                    Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ Sam Baxter_____
Sam Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Facsimile: (903) 927-2622

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Luke F. McLeroy
Texas State Bar No. 24041455
lmcleroy@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
Charles Ainsworth
Texas State Bar No. 00783521
charley@pbatyler.com
Parker, Bunt & Ainsworth P.C.
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
ANASCAPE, LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF or U.S. Mail on this 1st day of June, 2007.

/s/ Luke F. McLeroy
Luke F. McLeroy