EXHIBIT A

Dockets.Justia.com



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,373 | 12/13/2006 | 6,102,802 | 6620-76454-02 | 2872 |

7590   07/12/2007

BRAD A ARMSTRONG
P.O. BOX 2048
CARSON CITY, NV  89702

| EXAMINER |
|---|
| FLANAGAN, B. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

DATE MAILED: 07/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

COURTESY COPY ALSO
MAILED TO
ANASCAPE LTD.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

7/12/2007

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

Microsoft Corporation
One Microsoft Way
Building 8
Redmond, WA 98052

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008373
PATENT NO.   6,102,802
ART UNI    3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a replly has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| Office Action in Ex Parte Reexamination | Control No. 90/008,373 | Patent Under Reexamination 6,102,802 |
|---|---|---|
| | Examiner Beverly M. Flanagan | Art Unit 3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on _____ .   b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter. Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims <u>1-19</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2.  ☐ Claims _____ have been canceled in the present reexamination proceeding.
3.  ☐ Claims _____ are patentable and/or confirmed.
4.  ☒ Claims <u>1-19</u> are rejected.
5.  ☐ Claims _____ are objected to.
6.  ☐ The drawings, filed on _____ are acceptable.
7.  ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8.  ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have
    1☐ been received.
    2☐ not been received.
    3☐ been filed in Application No. _____ .
    4☐ been filed in reexamination Control No. _____ .
    5☐ been received by the International Bureau in PCT application No. _____ .
    * See the attached detailed Office action for a list of the certified copies not received.

9.  ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/008,373　　　　　　　　　　　　　　　　　　Page 2
Art Unit: 3993

## DETAILED ACTION

### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 C.F.R. 1.116, after final rejection and 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 6,102,802 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability of similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must

Application/Control Number: 90/008,373 Page 3
Art Unit: 3993

be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by 37 C.F.R. 1.20(c).

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requested must be served on the other party (or parties where two or more third party requested proceedings are merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248. See 37 C.F.R. 1.550(f).

### Patent Owner's Statement

No patent owner's statement has been filed. A telephone call was made to patent owner Brad Armstrong at a listed telephone number in Carson City, Nevada on June 15, 2007 to confirm that no patent owner's statement had been filed. However, there was no answer and a short message indicated that the memory for the associated answering machine was full.

### Correspondence with Patent Owner

It is noted that in the request for reexamination filed by the third party, the address of an assignee, Anascape, Ltd., and counsel for the assignee, Luke Fleming McLeroy, is listed. However, until such time as a properly executed power of attorney and/or change of correspondence address is filed by the patent owner, all correspondence will be mailed to the patent owner at the address of record with the U.S. Patent and Trademark Office. See MPEP § 2224 and 37 CFR 1.33(c).

Application/Control Number: 90/008,373                                                      Page 4
Art Unit: 3993

A courtesy copy of this communication is being sent to Anascape Ltd., c/o Brad Armstrong, 16487 Joseph Road, Tyler TX 75707. All further communications will be directed solely to the address of record.

### *References Applied*

The following references are applied in the rejections set forth below:

- Furukawa, Japanese Patent Application Laid-Open Disclosure No. H5-87760 and its accompanying translation (hereinafter "Furukawa");
- Mitchell, U.S. Patent No. 3,806,471 (hereinafter "Mitchell");
- Inoue, U.S. Patent No. 5,207,426 (hereinafter "Inoue");
- Kramer, U.S. Patent No. 5,164,697 (hereinafter "Kramer");
- Furukawa, Japanese Patent Application Laid-Open Disclosure No. H05-326217 and its accompanying translation (hereinafter "Furukawa '217");
- Kawashima, Japanese Patent Application Laid-Open Disclosure No. H1-40545 and its accompanying translation (hereinafter "Kawashima");
- Yamaoka, Japanese Patent Application Laid-Open Disclosure No. H7-112073 and its accompanying translation (hereinafter "Yamaoka"); and
- Eventoff, U.S. Patent No. 4,489,302 (hereinafter "Eventoff").

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

Application/Control Number: 90/008,373    Page 5
Art Unit: 3993

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 1-3, 5, 6, 9 and 11-17 are rejected under 35 U.S.C. 102(b) as being anticipated by Furukawa.

**In regard to claims 1-3, 5, 6, 9, 11-17**, Furukawa teaches a game controller of the type held in two hands simultaneously for controlling electronic game imagery, specifically, the operation of a character in a video game (see Fig. 1 of Furukawa and page 3 of the accompanying translation). The game controller comprises a housing 10 with left-hand and right-hand depressible surfaces positioned oppositely disposed from one another (a four way rocker shown as cross shaped key 12 and trigger keys 19 and 20, respectively) exposed on the housing where the depressible surfaces act on electrically manipulating devices contained within the housing and are controlled by depression of the surfaces for manipulating electrical outputs for controlling the electronic game imagery (see Figs. 1-3 of Furukawa and pages 3 and 4 of the accompanying translation). Figure 1 shows that the cross shaped key 12 is positioned in the hand area oppositely disposed from the location of the trigger keys 19 and 20. A dome-shaped rubber contact point 29 formed from an elastic rubber material and a moving part 30 are formed on the center of each part of cross-shaped key 12 (see Fig. 2 of Furukawa). Moving contact 32 formed from conductive rubber, which is formed on the bottom end of moving part 30 and conductive part 33, whose resistance varies with pressure is, in turn, attached to the bottom end of moving contact 32 (see Fig. 2 of Furukawa and page 5 of the accompanying translation). By applying depressing force

Application/Control Number: 90/008,373                                                         Page 6
Art Unit: 3993

to moving part 30, moving part 30 is lowered so that it is electrically connected to fixed contacts 7 and 7 on a wiring pattern disposed on a substrate 5 (see Fig. 3 of Furukawa and page 5 of the accompanying translation). More specifically, the depressing force applied by a fingertip to each moving part 30 on the cross-shaped key 12 changes the electrical resistance through conductive part 33, whose resistance changes according to the pressing force and thus, the operation of a character in a video game can be freely controlled by the pressing force applied by the fingertip of the operator (see page 5 of the accompanying translation). Furukawa also teaches an output cable 11 for outputting a signal to an image generation machine and the signal is representative of the analog electrical output (see Fig. 1 of Furukawa). Furukawa also teaches placement of the cross key 12 on the right hand area of the housing 10 because the housing 10 can be rotated 180 degrees from what is shown in Figure 1 and still be operable (see also page 5 of the accompanying translation). **With further respect to claims 12-15**, inherent in the structure disclosed by Furukawa, as set forth above, is the method of using the device, including the steps of depressing the contact point 29 with varying degrees of pressure, increasing and decreasing the pressure for increasing and decreasing the action intensity of the imagery (see also page 5 of the accompanying translation) and grasping the housing in two hands. **With further respect to claims 16 and 17**, inherent in the structure disclosed by Furukawa, as set forth above, is the method of manufacturing the device, including the steps of installing at least one pressure sensitive variable-conductance sensor and forming the housing into a single structure that can be held by two hands.

Application/Control Number: 90/008,373                                         Page 7
Art Unit: 3993

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-6, 9 and 11-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa.

**In regard to claims 1-6, 9, 11-17**, Furukawa teaches a game controller of the type held in two hands simultaneously for controlling electronic game imagery, specifically, the operation of a character in a video game (see Fig. 1 of Furukawa and page 3 of the accompanying translation). The game controller comprises a housing 10 with left-hand and right-hand depressible surfaces positioned oppositely disposed from one another (a four way rocker shown as cross shaped key 12 and trigger keys 19 and 20, respectively) exposed on the housing where the depressible surfaces act on electrically manipulating devices contained within the housing and are controlled by depression of the surfaces for manipulating electrical outputs for controlling the electronic game imagery (see Figs. 1-3 of Furukawa and pages 3 and 4 of the accompanying translation). Figure 1 shows that the cross shaped key 12 is positioned in the hand area oppositely disposed from the location of the trigger keys 19 and 20. A dome-shaped rubber contact point 29 formed from an elastic rubber material and a moving part 30 are formed on the center of each part of cross-shaped key 12 (see Fig.

Application/Control Number: 90/008,373                                                                Page 8
Art Unit: 3993

2 of Furukawa). Moving contact 32 formed from conductive rubber, which is formed on the bottom end of moving part 30 and conductive part 33, whose resistance varies with pressure is, in turn, attached to the bottom end of moving contact 32 (see Fig. 2 of Furukawa and page 5 of the accompanying translation). By applying depressing force to moving part 30, moving part 30 is lowered so that it is electrically connected to fixed contacts 7 and 7 on a wiring pattern disposed on a substrate 5 (see Fig. 3 of Furukawa and page 5 of the accompanying translation). More specifically, the depressing force applied by a fingertip to each moving part 30 on the cross-shaped key 12 changes the electrical resistance through conductive part 33, whose resistance changes according to the pressing force and thus, the operation of a character in a video game can be freely controlled by the pressing force applied by the fingertip of the operator (see page 5 of the accompanying translation). Furukawa also teaches an output cable 11 for outputting a signal to an image generation machine and the signal is representative of the analog electrical output (see Fig. 1 of Furukawa). Since, as noted above, Furukawa teaches placement of the cross key 12 on the right hand area of the housing 10 by rotating the housing 10 180 degrees from what is shown in Figure 1 (see also page 5 of the accompanying translation), it would have been an obvious matter of design choice to also place the cross key 12 in the right hand area of the housing. *In re Japiske*, 181 F.2d 1019, 86 USPQ 70 (CCPA 1950) (Claims to a hydraulicpower press which read on the prior art except with regard to the position of the starting switch were held unpatentable because shifting the position of the starting switch would not have modified the operation of the device.); *In re Kuhle*, 526 F.2d 553, 188 USPQ 7 (CCPA

Application/Control Number: 90/008,373                                                                 Page 9
Art Unit: 3993

1975) (the particular placement of a contact in a conductivity measuring device was held to be an obvious matter of design choice).  **With further respect to claim 4**, Furukawa teaches trigger keys 19 and 20 on the right hand area of the housing (as it appears in Fig. 1) and indicates that although the embodiment of rubber contact of cross shaped key 12 is discussed, it is not limited to this, meaning that the trigger keys 19 and 20 could also include rubber contact points that response to variable pressure (see page 5 of the translation accompanying Furukawa).  **With further respect to claims 12-15**, inherent in the structure disclosed by Furukawa, as set forth above, is the method of using the device, including the steps of depressing the contact point 29 with varying degrees of pressure, increasing and decreasing the pressure for increasing and decreasing the action intensity of the imagery (see also page 5 of the accompanying translation) and grasping the housing in two hands.  **With further respect to claims 16 and 17**, inherent in the structure disclosed by Furukawa, as set forth above, is the method of manufacturing the device, including the steps of installing at least one pressure sensitive variable-conductance sensor and forming the housing into a single structure that can be held by two hands.

Claims 4 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Inoue.

**In regard to claims 4 and 11**, Furukawa teaches a cross shaped key 12 that consists of four separate switches arranged in a spatial north-south-east-west orientation for vertically and horizontally moving characters on the screen (see Fig. 1 of

Application/Control Number: 90/008,373                                                      Page 10
Art Unit: 3993

Furukawa and page 4 of the accompanying translation). Each portion of the cross shaped key 12 is provided with a rubber contact point 29, as outlined above. Assuming, *arguendo*, that the cross shaped key 12 is not a rocker switch, Inoue discloses a four-way rocker switch 121 for control functions having four separate contacts under the rocker, in the same manner as each portion of cross key 12 is provided with a rubber contact point (see Figs. 1 and 3 and col. 4, lines 18-37 of Inoue). Inoue also discloses that rocker switch 12 provides for four directional movement of a character in a video game (see col. 7, lines 9-31). Inoue thus demonstrates that rocker switches are well known in the art as an alternative type of key or switch having individual contact points under each of the four areas of the switch for providing four directional movement in a video game. Accordingly, it would have been obvious for one of ordinary skill in the art at the time the invention was made to substitute the cross shaped key 12 of Furukawa with the rocker switch 121 of Inoue.

Claims 4 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Inoue and further in view of Kawashima.

**In regard to claims 4 and 11**, Furukawa does not explicitly disclose that that trigger keys 19 and 20 are used for firing a simulated gun and jumping of a simulated character. However, Kawashima discloses a game control device that uses pressure-sensitive variable-conductance rubber material in a pushbutton switch for increasing the intensity of firing missiles or pistols (see cols. 1 and 2 of Kawashima). Kawashima thus demonstrates that trigger keys using pressure-sensitive variable-conductance material,

Application/Control Number: 90/008,373                                                                     Page 11
Art Unit: 3993

such as that taught by Furukawa and applied to trigger keys 19 and 20 (see the above rejection for claims 1-6, 9 and 11-17, with attention to the section discussing claim 4) are well known in the art for firing missiles or pistols. Accordingly, it would have been obvious for one of ordinary skill in the art at the time the invention was made to design the trigger keys 19 and 20 of Furukawa to have the function of firing missiles or pistols when depressed.

Claims 4 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Inoue and further in view of Yamaoka.

**In regard to claims 4 and 11**, Furukawa does not explicitly disclose that that trigger keys 19 and 20 are used for firing a simulated gun and jumping of a simulated character. However, Yamaoka discloses a game control device that uses pressure-sensitive variable-conductance rubber material in a pushbutton switch for increasing the jump of a video game character (see paragraphs 25, 30 and 35 of Yamaoka). Yamaoka thus demonstrates that trigger keys using pressure-sensitive variable-conductance material, such as that taught by Furukawa and applied to trigger keys 19 and 20 (see the above rejection for claims 1-6, 9 and 11-17, with attention to the section discussing claim 4) are well known in the art for jumping of a video game character. Accordingly, it would have been obvious for one of ordinary skill in the art at the time the invention was made to design the trigger keys 19 and 20 of Furukawa to have the function of jumping of a video game character when depressed.

Application/Control Number: 90/008,373 Page 12
Art Unit: 3993

Claims 7-8, 10 and 18-19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Mitchell.

**In regard to claims 7-8, 10 and 18-19,** Furukawa teaches rubber contact point 29 comprised of moving contact 32, which is formed of conductive rubber disposed on the bottom end of moving part 30 and conductive part 33, whose resistance varies with pressure (see page 5 of the translation accompanying Furukawa). Mitchell discloses the use of tungsten carbide particles 22, which constitute an active material, confined within an elastomeric binder 24, which constitutes a rubbery binder (see col. 7, lines 11-26 of Mitchell). Mitchell thus demonstrates an alternative material combination for forming pressure-sensitive variable conductance switches. Furthermore, it is well settled that the selection of a known material based upon its suitability for the intended use is a design consideration within the skill of the art. In re Leshin, 227 F.2d 197, 125 USPQ 416 (CCPA 1960). Accordingly, it would have been obvious for one of ordinary skill in the art to utilize the tungsten carbide and elastomeric binder combination discloses by Mitchell in the rubber contact point 29 of Furukawa, such as by making the conductive part 33 from the combination of tungsten carbide and an elastomeric binder.

Claims 7-8, 10 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Furukawa '217.

**In regard to claims 7-8, 10 and 18,** Furukawa teaches rubber contact point 29 comprised of moving contact 32, which is formed of conductive rubber disposed on the bottom end of moving part 30 and conductive part 33, whose resistance varies with

Application/Control Number: 90/008,373                                                                Page 13
Art Unit: 3993

pressure (see page 5 of the translation accompanying Furukawa). Furukawa '217 discloses forming a pressure-sensitive variable resistor 1 by mixing an electro-conductive material, such as carbon powder, with an elastic rubber material (see page 3, paragraph 6 and page 4, paragraph 9 of the translation accompanying Furukawa '217). Furukawa '217 thus demonstrates an alternative material combination for forming pressure-sensitive variable conductance switches. Furthermore, it is well settled that the selection of a known material based upon its suitability for the intended use is a design consideration within the skill of the art. In re Leshin, 227 F.2d 197, 125 USPQ 416 (CCPA 1960). Accordingly, it would have been obvious for one of ordinary skill in the art to utilize the carbon powder and elastic rubber material combination disclosed by Furukawa '217 in the rubber contact point 29 of Furukawa, such as by making the conductive part 33 from the combination of carbon powder and an elastic rubber material.

Claims 7, 8, 10, 18 and 19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Furukawa in view of Eventoff.

**In regard to claims 7, 8, 10, 18 and 19**, Furukawa teaches rubber contact point 29 comprised of moving contact 32, which is formed of conductive rubber disposed on the bottom end of moving part 30 and conductive part 33, whose resistance varies with pressure (see page 5 of the translation accompanying Furukawa). Eventoff discloses forming a pressure-sensitive variable conductance sensor having an active material of tungsten carbide within an elastic binder (see col. 5, lines 28-3 of Eventoff). Eventoff

Application/Control Number: 90/008,373   Page 14
Art Unit: 3993

thus demonstrates an alternative material combination for forming pressure-sensitive variable conductance switches. Furthermore, it is well settled that the selection of a known material based upon its suitability for the intended use is a design consideration within the skill of the art. In re Leshin, 227 F.2d 197, 125 USPQ 416 (CCPA 1960). Accordingly, it would have been obvious for one of ordinary skill in the art to utilize the active material of tungsten carbide within an elastic binder of Eventoff in the rubber contact point 29 of Furukawa, such as by making the conductive part 33 from the combination of carbon powder and an elastic rubber material.

Application/Control Number: 90/008,373                                    Page 15
Art Unit: 3993

## Conclusion

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766


Conferee:   /Jeffrey R. Jastrzab/
            Jeffrey R. Jastrzab

Conferee: _____