# EXHIBIT B

Dockets.Justia.com

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

7/13/07

Joseph T. Jakubek, Esq.

Klarquist Sparkman LLP

121 SW Salmon Street Suite 1600

Portland, OR  97204

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  95/000221

PATENT NO.   6,906,700

ART UNI   3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| Transmittal of Communication to Third Party Requester Inter Partes Reexamination | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/000,221 | 6906700 |
| | Examiner | Art Unit | |
| | Joseph R. Pokrzywa | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| ***ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION*** | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/000,221 | 6906700 |
| | Examiner | Art Unit | |
| | Joseph R. Pokrzywa | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):    ☐ PTO-892    ☒ PTO/SB/08    ☐ Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

    ☐ An Office action is attached with this order.

    ☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,221                                    Page 2
Art Unit: 3992

## DECISION GRANTING INTER PARTES REEXAMINATION

### *Reexamination*

1.     A substantial new question of patentability (SNQ) affecting claims 1-33 of United States

Patent Number 6,906,700 to Armstrong (hereafter "the '700 Patent") is raised by the present

request for *inter partes* reexamination filed on 5/4/07 for the reasons indicated below.


2.     An Office action on merits does not accompany this order for inter partes reexamination.

An Office action on merits will be provided in due course.


3.     Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"

and not to the patent owner in a reexamination proceeding.  Additionally, 35 U.S.C. 314(c)

requires that *inter partes* reexamination proceedings "will be conducted with special dispatch"

(37 CFR 1.937).  Patent owner extensions of time in *inter partes* reexamination proceedings are

provided for in 37 CFR 1.956.  Extensions of time are not available for third party requester

comments, because a comment period of 30 days from service of patent owner's response is set

by statute.  35 U.S.C. 314(b)(3).

Application/Control Number: 95/000,221                                    Page 3
Art Unit: 3992

### *Substantial New Question of Patentability*

4.    For "a substantial new question of patentability" (SNQ) to be present, it is only necessary that:

   A.    The prior art patents and or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; it is not necessary that the prior art establish a prima facie case of unpatentability; and

   B.    The same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

5.    For any reexamination ordered on or after November 2, 2002, reliance on previously Cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. See MPEP 2642.

### *Listing of Prior Art*

6.    In the request for reexamination, the Third Party Requester alleges that the '700 Patent

**claims 1-33** are anticipated or unpatentable in light of the following references:

  a.    Goto *et al.* (European Patent Application Publication EP 0 867 212, hereafter

"Goto");

  b.    Himoto *et al.*, (European Patent Application Publication EP 0 835 676, hereafter

"Himoto")\*;

  c.    Bersheim (U.S. Patent Number 4,491,325, hereafter "Bersheim");

  d.    Chandler (U.S. Patent Number 4,246,452, hereafter "Chandler");

  e.    Furukawa (Japanese Patent Publication H05-87760, hereafter "Furukawa'760")\*;

  f.    Kramer (U.S. Patent Number 5,164,697, hereafter "Kramer")\*;

  g.    O'Mara *et al.* (U.S. Patent Number 5,510,812, hereafter "O'Mara")\*;

  h.    Ledin (U.S. Patent Number 6,002,594, hereafter "Ledin");

  i.    "Sega Saturn 3D Control Pad Instruction Manual", Sega Enterprises, Ltd., 1996,

(hereafter "Sega 3D Control Pad Manual");

  j.    "PlayStation Instruction Manual SCPH-7000", Sony Computer Entertainment

Inc., Sony Publication No. 3-861-343-05(1), 1994-1998, (hereafter "PlayStation Manual");

  k.    Armstrong (U.S. Patent Number 5,565,891, hereafter "Armstrong'891")\*\*;

  l.    Armstrong (U.S. Patent Number 5,589,828, hereafter "Armstrong'828")\*\*.


    \* - The references of Himoto, Furukawa'760, Kramer, and O'Mara were previously cited

during the prosecution of the application that became the '700 Patent, but were not relied on for

Application/Control Number: 95/000,221                                    Page 5
Art Unit: 3992

any rejections of the claims. Thus, in light of the discussion in the Request for Reexamination,

these references are being viewed in a new light or different way as compared to their use in

earlier concluded examination(s).

    ** - The references of Armstrong'891 and Armstrong'828 are both listed as being parent

applications to U.S. Application 08/677,378, now U.S. Patent Number 6,222,525 (hereafter "the

Armstrong'525 patent"), whereby the Armstrong'525 patent is a continuation-in-part to the

Armstrong'891 reference, which is a continuation-in-part of the Armstrong'828 reference.

However, in light of the discussion in the Request for Reexamination, these references are being

viewed in a new light, and are being viewed as prior art, published over one year before the filing

date of the instant '700 Patent.

    The remainder of the references listed above are newly cited by the Third Party Requester

and were not considered during the prosecution of the application that became the '700 Patent.

Application/Control Number: 95/000,221                                          Page 6
Art Unit: 3992

### *Requester's Position*

7.    The Third Party Requester asserts that the cited references raise SNQ's for claims 1-33 of

the '700 Patent in the following manner:

        Issue #1.      Claims 19-21 and 26 of the '700 Patent to be anticipated under 35 U.S.C.

102(b) by Goto;

        Issue #2.      Claims 19-21 and 26 of the '700 Patent to be unpatentable under 35

U.S.C.103(a) over Goto in view of Applicant's Admissions;

        Issue #3.      Claims 1-15 and 27-31 of the '700 Patent to be unpatentable under 35

U.S.C.103(a) over Goto in view of Himoto;

        Issue #4.      Claims 1-15 and 27-31 of the '700 Patent to be unpatentable under 35

U.S.C.103(a) over Goto in view of Himoto, and further in view of Bersheim;

        Issue #5.      Claims 1-13 and 27-31 of the '700 Patent to be unpatentable under 35

U.S.C.103(a) over Goto in view of Himoto, and further in view of Applicant's Admissions;

        Issue #6.      Claims 20-21 and 26 of the '700 Patent to be unpatentable under 35

U.S.C.103(a) over Goto in view of Chandler;

        Issue #7.      Claims 14, 22-25, 27, and 31 of the '700 Patent to be unpatentable under

35 U.S.C. 103(a) over Goto in view of Furukawa'760;

        Issue #8.      Claim 16 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a)

over Goto in view of Furukawa'760, and further in view of Applicant's Admissions;

        Issue #9.      Claims 14 and 22-27 of the '700 Patent to be unpatentable under 35

U.S.C. 103(a) over Goto in view of Kramer;

Issue #10.    Claims 16-18 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a)
over Goto in view of Kramer, and further in view of Applicant's Admissions;

Issue #11.    Claims 12-13, 15, 22-25, 27-31 of the '700 Patent to be unpatentable
under 35 U.S.C. 103(a) over Goto in view of O'Mara;

Issue #12.    Claim 26 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a)
over Goto in view of Ledin;

Issue #13.    Claims 22 and 27-31 of the '700 Patent to be unpatentable under 35
U.S.C. 103(a) over Goto in view of the Sega 3D Control Pad Manual;

Issue #14.    Claims 19-21 and 26 of the '700 Patent to be unpatentable under 35
U.S.C. 103(a) over Goto in view of the PlayStation Manual;

Issue #15.    Claims 6-11, 14, and 32-33 of the '700 Patent to be unpatentable under 35
U.S.C. 103(a) over Goto in view of Chandler and further in view of Furukawa'760;

Issue #16.    Claims 1-11, 13-16, and 27-33 of the '700 Patent to be unpatentable under
35 U.S.C. 103(a) over Goto in view of Chandler, and further in view of Himoto;

Issue #17.    Claim 21 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a)
over Goto in view of Chandler, and further in view of Ledin;

Issue #18.    Claims 1-5 and 13 of the '700 Patent to be unpatentable under 35 U.S.C.
103(a) over Goto in view of Chandler, and further in view of O'Mara;

Issue #19.    Claims 6-11, 14, 21, and 32-33 of the '700 Patent to be unpatentable under
35 U.S.C. 103(a) over Goto in view of Chandler, and further in view of Kramer;

Issue #20.    Claims 27-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a)
over Goto in view of Chandler, and further in view of the Sega 3D Control Pad Manual;

Application/Control Number: 95/000,221                                    Page 8
Art Unit: 3992

Issue #21.    Claims 17 and 18 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Chandler, further in view of Kramer, and further in view of the Sega 3D Control Pad Manual;

Issue #22.    Claims 1-11 and 27-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Himoto, and further in view of Ledin;

Issue #23.    Claims 1-11 and 27-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Himoto, and further in view of Kramer;

Issue #24.    Claims 3 and 4 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Himoto, and further in view of the PlayStation Manual;

Issue #25.    Claims 6-11, 27, and 31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Ledin, and further in view of Kramer;

Issue #26.    Claims 6-11, 27, and 31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Ledin and further in view of Furukawa'760;

Issue #27.    Claims 27-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of Ledin, and further in view of the Sega 3D Control Pad Manual;

Issue #28.    Claims 1-5, 12-13, 15, 22-25, and 27-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of O'Mara, and further in view of Kramer;

Issue #29.    Claims 1-5 and 13 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of O'Mara, further in view of Kramer, and further in view of Chandler;

Issue #30.    Claims 28-31 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Goto in view of the Sega 3D Control Pad Manual, and further in view of Himoto;

Application/Control Number: 95/000,221                                        Page 9
Art Unit: 3992

Issue #31.     Claims 6-11, 14, 16, 19-25 and 32-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Applicant's Admissions;

Issue #32.     Claims 16, 19-20, 22-25, and 32-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828;

Issue #33.     Claim 21 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of Applicant's Admissions;

Issue #34.     Claims 9-11 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Chandler, and further in view of Applicant's Admissions;

Issue #35.     Claim 14 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Furukawa'760;

Issue #36.     Claims 17 and 18 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Kramer, and further in view of Applicant's Admissions;

Issue #37.     Claims 1-5 and 12-18 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of O'Mara, and further in view of Applicant's Admissions;

Issue #38.     Claims 9-11 and 21 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of Chandler;

Issue #39.     Claims 9-11, 17-18, 21-27, and 32-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of Kramer;

Issue #40.    Claims 12-13, 15-16, 22-25, and 32-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of O'Mara;

Issue #41.    Claims 9-11 and 21 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of Ledin;

Issue #42.    Claims 16, 22-25, and 32-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, and further in view of Furukawa'760;

Issue #43.    Claims 9-10 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Chandler, and further in view of Himoto;

Issue #44.    Claim 5 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of O'Mara, and further in view of Chandler;

Issue #45.    Claim 5 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of O'Mara, and further in view of Ledin;

Issue #46.    Claims 1-11 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Chandler, and further in view of O'Mara;

Issue #47.    Claims 1-11 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Ledin, and further in view of O'Mara;

Application/Control Number: 95/000,221                                     Page 11
Art Unit: 3992

Issue #48.    Claims 1-13, 15-18, and 28-33 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Kramer, and further in view of O'Mara;

Issue #49.    Claims 9-11 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Furukawa'760, and further in view of Chandler;

Issue #50.    Claims 9-11 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Furukawa'760, and further in view of Ledin;

Issue #51.    Claims 9-11 and 17-18 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Armstrong'828, further in view of Furukawa'760, and further in view of Kramer;

Issue #52.    Claims 1, 3, 6, and 8-10 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Himoto, further in view of Chandler, and further in view of O'Mara;

Issue #53.    Claims 1, 3, 6, and 8-10 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Himoto, further in view of Ledin, and further in view of O'Mara;

Issue #54.    Claims 1, 3, 6, and 8-10 of the '700 Patent to be unpatentable under 35 U.S.C. 103(a) over Armstrong'891 in view of Himoto, further in view of Kramer, and further in view of O'Mara.

Application/Control Number: 95/000,221                                        Page 12
Art Unit: 3992

### *Prosecution History of the '700 Patent*

8.    The '700 Patent issued from an application with the serial number 09/715,532, filed Nov.

16, 2000.  Said application was a continuation of application No. 08/677,378, filed on Jul. 5,

1996, now Patent Number 6,222,525, which is a continuation-in-part of application Number

08/393,459, filed on Feb. 23, 1995, now Patent Number 5,565,891, which is a continuation-in-

part of application Number 07/847,619, filed on Mar. 5, 1992, now Patent Number 5,589,828.


9.    With this, the examiner notes that it would appear that the effective filing date for the

'700 Patent would be Jul. 5, 1996, being the filing date of the parent continuation, now Patent

Number 6,222,525 (hereafter "Armstrong'525"), with portions even having an effective filing

date of Feb. 23, 1995 and Mar. 5, 1992, being the filing dates of the continuation-in-parts, now

Patent Number 5,565,891 and 5,589,828, respectively.  However, as noted by the Third Party

Requester in the Request for Reexamination on pages 3-13, numerous alterations and additions

appear in the application that matured into the '700 Patent from the parent application of the

Armstrong'525 patent, therein adding new matter and breaking the chain of continuity.


10.    First, as discussed on pages 9-11 of the Request for Reexamination, which is hereby

incorporated by reference, the Third Party Requester points out differences in the Armstrong'525

patent and the instant '700 Patent.  Particularly, in multiple sections, the phrase "...a 6 DOF

image controller, which includes a single input member..." was changed to read "...a 3D image

controller, which includes at least one input member..."  During the prosecution of the '700

Application/Control Number: 95/000,221                                    Page 13
Art Unit: 3992

Patent, the Applicant argued in remarks dated 10/25/02 that the alteration of the term "6 DOF"

so as to read "3D" does not constitute new matter, as copied below:

> In the current specification at numerous locations the language "3D" and
> "three-dimensional" have been used in substitution for "6DOF" and "six degrees
> of freedom" as originally used in the application issued as patent 6,222,525 from
> which the current specification is continued. This substitution of lang[ua]ge does
> not constitute new matter, but has been made to allow the reader easier
> understanding of the subject matter. Any single three-dimensional software object
> moving, for example in an electronic game, is moving in six degrees of freedom.
> This "SDOF" and "six degrees of freedom" lang[ua]ge is not as commonly used
> now as when the '525 patent was filed and the same equivalent product or device
> which was once so called is now commonly called a 3D or three-dimensional
> controller.

11.     However, the Applicant discussed nothing about the difference of "a single input

member", as stated in the Armstrong'525 patent, as opposed to the '700 Patent application's "at

least one input member", which broadens the possibility of having multiple input members.  In

the instant case, the '700 Patent is not seen to have the same disclosure as that of the

Armstrong'525 patent, and the phrase of "at least one input member" can be considered to

constitute new matter.

12.     In this regard, it is noted that MPEP 201.11[R-5], section I, with the heading "Disclosure

Requirement", having the sub-section B, with the heading "B. Claiming the Benefit of

Nonprovisional Applications", states in part that:

> **The disclosure of a continuation application must be the same as the
> disclosure of the prior-filed application. See MPEP § 201.07.** The disclosure of
> a divisional application must be the same as the disclosure of the prior-filed
> application, or include at least that portion of the disclosure of the prior-filed
> application that is germane to the invention claimed in the divisional application.
> See MPEP § 201.06. **The disclosure of a continuation or divisional application
> cannot include anything which would constitute new matter if inserted in the**

prior-filed application. A continuation-in-part application may include matter
not disclosed in the prior-filed application. See MPEP § 201.08. Only the claims
of the continuation-in-part application that are disclosed in the manner provided
by the first paragraph of 35 U.S.C. 112 in the prior-filed application are entitled to
the benefit of the filing date of the prior-filed application. If there is a continuous
chain of copending nonprovisional applications, each copending application must
disclose the claimed invention of the later-filed application in the manner
provided by the first paragraph of 35 U.S.C. 112, in order for the later-filed
application to be entitled to the benefit of the earliest filing date. [Emphasis
added].

13.    Continuing, as further discussed by the Third Party Requester in the Request for

Reexamination, Fig. 21 of the '700 Patent includes the notation of "Tactile Feedback Means,

e.g., Motor, Shaft and Weight", which does not appear in the Armstrong'525 patent.

Additionally, in column 21, lines 42-44 of the '700 Patent, the specification includes a

description, which is not found in the Armstrong'525 patent, which describes a motor with shaft

and weight mounted to offset the shaft as an example of an active tactile feedback means.

Specifically, in column 5, lines 11-29, the '700 Patent states:

Another object of the invention is to provide a 3D controller which is
structured in such a manner as to allow the controller to be made with a relatively
low profile input member, which offers many advantages in packaging for sale,
operation in various embodiments and environments (such as a low profile 3D
handle integrated into a keyboard so that other surrounding keys can still be easily
accessed) and functions of the device such as still allowing room for active tactile
feedback means (electric motor, shaft and weight) within a still small low handle
shape as indicated in the attached Fig. 21 in broken lines. "tactile feedback
means" in reference to the active type as herein used can be an equivalent to or
that which is detailed in the incorporated U.S. Patent 5,589,828 which is shown
and described therein basically as a motor with shaft and weight on the shaft, the
shaft being offset so that when rotated, vibration occurs which can be felt by the
hand(s) operating the controller.

14.    By comparison, the Armstrong'525 patent only states in column 8, lines 25-34:

> Another object of the invention is to provide a 6 DOF controller which is structured in such a manner as to allow the controller to be made with a relatively low profile input member, which offers many advantages in packaging for sale, operation in various embodiments and environments (such as a low profile 6 DOF handle integrated into a keyboard so that other surrounding keys can still be easily accessed) and function of the device (such as still allowing room for active tactile feedback means within a still small low handle shape).

15.     Thus, the specification of the Armstrong'525 patent describes of leaving room in the handle for the placement of active tactile means, but does not specifically describe using a motor with a shaft and weight on the shaft for the tactile feedback means. Further, the Armstrong'525 patent does not specifically describe using a motor with a shaft and weight, with the shaft being offset so that when rotated, vibration occurs which can be felt by the hand(s) operating the controller. The '700 Patent incorporates by reference the active tactile feedback means described in U.S. Patent 5,589,828, but this is not incorporated by reference in the Armstrong'525 patent. Thus, the '700 Patent adds new matter into the Armstrong'525 patent, as these features were not expressly described in the Armstrong'525 patent.

16.     Further, it is noted that the application that matured into the '700 Patent was originally filed on 11/16/2000 with the disclosure stating that the application was a "continuation-in-part", whereby the first paragraph read:

> This application is a continuation-in-part of pending U.S. Non-provisional patent application Serial Number 08/677,378 filed July 5, 1996 of which the positive teachings and disclosures are herein incorporated by reference and the benefit of the filing date claimed. ... U.S. Application 08/677,378 was filed during the pendency of U.S. application 08/847,619 filed March 5, 1992 and also makes claim to the benefit of the filing date of the application 08/847,619, now U.S. Patent 5,589,828. This application is also a continuation-in-part of U.S. patent application serial number 08/847,619, filed March 5, 1992, now U.S. Patent 5,589,828, of which the positive teachings and disclosures are herein incorporated by reference. ... This application also is a

Application/Control Number: 95/000,221                                                    Page 16
Art Unit: 3992

> continuation-in-part of and incorporates herein by reference U.S. patent application serial
> number 08/393,459, filed February 23, 1995, now U.S. Patent 5,565,891, which is a
> continuation-in-part of U.S. patent application serial number 08/847,619 now U.S. Patent
> 5,589,828. ...

17.    Subsequently, in an amendment dated 10/25/02, the first paragraph was amended and

replaced by the following:

> This application is a continuation of U.S. Patent Application Serial No.
> 08/677,378 filed on July 5, 19916, now U.S. Patent 6,222,525. U.S. Patent No.
> 6,222,525 is a continuation-in-part of U.S. Patent Application Serial No. 08/393,459 filed
> on Feb. 23, 1995, now U.S. Patent 5,565,891. U.S. Patent No. 6,222,525 is also a
> continuation-in-part of U.S. Patent Application Serial No. 07/847,619 filed on March 5,
> 1992, now U.S. Patent 5,589,828....

18.    Further, it is noted, that during the prosecution history of the application that matured into

the '700 Patent, the issue if priority was addressed in an Office action dated 5/4/04, whereby the

examiner at the time pointed out that:

> Adding at least a portion "the sensors including spaced components generally
> preventing false activation thereof through vibration" and "motor with shaft and
> offset weight mounted to shaft" to page 3, lines 1-20 of the specification is not
> presented in the prior application. It constitutes a continuation-in-part of the prior
> application, not continuation as applicant amended on amendment filed on
> October 25, 2002.

19.    In response to this action, the applicant amended the claims, removing the limitation of

"the unidirectional sensors including spacing preventing false activation by the vibration", and

argued that the motor with an offset weight is shown in Fig. 21 of the parent application that

became the Armstrong'525 patent. Particularly, in the remarks filed with the amendment dated

6/14/04, the Applicant stated:

> Claims 40, 42, 45, 49-51, 53, 69, 75 and 77 rejection under 35 USC 112
> should all be held allowable with the acceptance that this application is a
> continuation of application 08/677,378 and that a motor with an offset weight
> connected to the motor are in the instant specification as well as in Fig. 21
> in application 08/677,378. Application 08/677,378 is continued from application
> 07/847,619 by the present Inventor now U.S. Patent 5,589,828 wherein figures
> 1,2, 6 and 7 show a motor and offset weight drawn almost identically to figure 21
> of the '378 application and described expressly and clearly in the '619 application
> see column 9 lines 22-24 and column 12 lines 24-26.
>
> The issue of continuation verses continuation-in-part regarding the motor
> and offset weight language in the claims has already been considered in depth by
> Primary Examiner Jeffery Brier during the examination of Application No.
> 09/721,090 now US Patent No. 6,310,606. Primary Examiner Brier found that the
> motor and offset weight was in fact in the '378 application and was not new
> matter. Therefore Examiner Brier correctly issued the '606 Patent as a
> "Continuation of application No. 08/677,378". The Examiner is encouraged to
> review Examiner Brier's decision.

20.     However, the Examiner notes that although Figure 21 of the Armstrong'525 patent shows

a dashed outline, the description explicitly states in col. 23, lines 39-49 that "Such a device still

has all the benefits of a pure mechanically resolved device and with two planer execution

additional benefits are realized, such as: the capability of exceptionally low profile design for

integration into computer keyboards and hand held remote controllers, ready integration of finger

operated buttons on the handle for operating sensors incorporated into the sensor sheet, space to

place active tactile feedback means in a still handle, etc." Thus, Fig. 21 of the Armstrong'525

patent is seen to simply show space to place "active tactile feedback means". However, nowhere

does the Armstrong'525 patent describe this embodiment having the function of "active tactile

feedback means" that would be detectable by a user, and nowhere in the Armstrong'525 patent is

there a description of any active tactile feedback vibration being provided by a "motor with a

shaft and weight on the shaft, the shaft being offset so that when rotated, vibration occurs which

Application/Control Number: 95/000,221                                      Page 18
Art Unit: 3992

can be felt by the hand(s) operating the controller", as read in the '700 Patent in column 5, lines

11-29.


21.    Furthermore, the Armstrong'525 patent discloses using resilient "tactile" return-to-center

parts 226 as rubber dome cap type activators.  Also, the Armstrong'525 patent states that the

rubber dome cap structures that are shown as RTCs 226 in Fig. 13, can be "metallic dome cap

structures (which give an exceptionally strong clear feedback sensation)..."  Continuing, as seen

in Fig. 40, and read in column 29, lines 5-26, the Armstrong'525 patent states:

> Also I believe it is novel to use a metallic "snap-through" resilient dome
> cap 632 with for its excellent tactile turn-on feel properties..., where metallic
> dome cap 632 resides on top of upper membrane layer 620 and is shown held in
> place by silicon adhesive 636adhering dome cap 632 to any generic actuator
> 634....Vibration lines 640 indicate an energetic vibration emanating outward
> either through support 630 or actuator 634 as a mechanical vibration transmitted
> through the connected parts to the user's hand, or as air vibrations perceived by
> the user's ear, and indicating the "snap-through" turn-on/off sensation of resilient
> dome cap 632 as it impinges upon and activates the sensor. With twelve possible
> singular input operations, and a very large number of combined input operations
> the user perceivable tactile sensation indicating sensor activation is of high value
> to the operator of the device.


22.    The examiner notes that this can be interpreted as being "active tactile feedback means

that would be detectable by a user".  Thus, the Armstrong'525 patent describes active tactile

feedback means, being other than a motor, shaft, and offset weight.  With this, it is clear that the

'700 Patent adds new matter to the specification that became the Armstrong'525 patent.

Application/Control Number: 95/000,221                                    Page 19
Art Unit: 3992

23.    As additionally noted in MPEP 201.11[R-5], section I, with the heading "Disclosure

Requirement", having the sub-section B, with the heading "B. Claiming the Benefit of

Nonprovisional Applications", which states:

> **A claim in the later-filed application is not entitled to the benefit of**
> **the filing date of the prior-filed application if the disclosure of the prior-filed**
> **application does not enable one skilled in the art to "use" the claimed**
> **invention.** See In re Hafner, 410 F.2d 1403, 1406, 161 USPQ 783, 786 (CCPA
> 1969) ("[T]o be entitled to the benefits provided by [35 U.S.C. 120 ], the
> invention disclosed in the "previously filed" application must be described therein
> in such a manner as to satisfy all the requirements of the first paragraph of [35
> U.S.C.] 112, including that which requires the description to be sufficient to
> enable one skilled in the art to use the [invention]."). Where the prior application
> (a nonprovisional application) is found to be fatally defective because of
> insufficient disclosure to support allowable claims, a later-filed application filed
> as a "continuation-in-part" of the first application to supply the deficiency is not
> entitled to the benefit of the filing date of the first application. Hunt Co. v.
> Mallinckrodt Chemical Works, 177 F.2d 583, 587, 83 USPQ 277, 281 (2d Cir.
> 1949) and cases cited therein. [Emphasis added].

24.    With this, the disclosure of the '700 Patent is seen to be not the same as the

Armstrong'525 patent. Further, it is seen that the application that matured into the '700 Patent

includes new matter from that of the Armstrong'525 patent, as claimed features of the '700

Patent, which require a motor and offset weight that provides tactile feedback vibration (see, for

instance, claims 2, 4, 7, 11, 12, 13, 15, 25, 31, and 33 of the instant '700 Patent), are not

expressly or adequately described in the Armstrong'525 patent, so as to enable one skilled in the

art to use the claimed invention. Therefore, the '700 Patent is not seen to be entitled to the

priority date of the Armstrong'525 patent. Thus, because the '700 Patent includes new matter

based on the above analysis regarding the disclosure of the parent application of which the '700

Patent claims 35 U.S.C. 120 benefit, the inventions of claims 1-33 of the '700 Patent have only a

critical date for purposes of prior art patents and printed publications of Nov. 16, 2000, being the

filing date of the application that matured into the '700 Patent.

### *Discussion of Issues that Raise an SNQ*

25.     It is agreed that Issues #1, 3, 4, 6-7, 9, 11-30, 32, 35, and 38-54 raise a SNQ regarding

claims 1-33 of the '700 Patent.

26.     It is not agreed that Issues #2, 5, 8, 10, 31, 33-34, and 36-37 raise a SNQ regarding

claims 1-33 of the '700 Patent.

27.     The proposed substantial new questions (SNQ's) of patentability indicated in the Request

for Reexamination by the Third Party Requester are based on numerous variations using two

primary references, being either the primary reference of Goto (Issues #1-30) or the primary

reference of the Armstrong'891 patent (Issues #31-54). The Goto reference was published on

4/23/1998, being after the filing date of the Armstrong'525 patent (7/5/1996), but being before

the filing date of the application that became the '700 Patent (11/16/2000), thus being an

intervening publication. The Armstrong'891 patent was published on 10/15/1996, being over

one year before the filing date of the '700 Patent. However, as discussed above, because claimed

features of the '700 Patent (being the motor and offset weight that provide vibrations for an

active tactile feedback means) are not expressly or adequately described in the Armstrong'525

patent, so as to enable one skilled in the art to use the invention of claims 2, 4, 7, 11, 12, 13, 15,

Application/Control Number: 95/000,221                                      Page 21
Art Unit: 3992

25, 31, and 33 of the '700 Patent, the effective date utilized for the purpose of prior art patents

and printed publications is that of Nov. 16, 2000, being the filing date of the '700 Patent.


28.    In this regard, MPEP 2617 states, in part:

> The statement applying the prior art may, where appropriate, point out that claims
> in the patent for which reexamination is requested are entitled only to the filing date of
> that patent and are not supported by an earlier foreign or United States patent application
> whose filing date is claimed. For example, even where a patent is a continuing
> application under 35 U.S.C. 120, the effective date of some of the claims could be the
> filing date of the child application which resulted in the patent, because those claims were
> not supported in the parent application. Therefore, any intervening patents or printed
> publications would be available as prior art. See In re Ruscetta, 255 F.2d 687, 118 USPQ
> 101 (CCPA 1958), In re van Langenhoven, 458 F.2d 132, 173 USPQ 426 (CCPA 1972).
> See also MPEP § 201.11.


29.    Therefore, with respect to *Issue #1*, the request indicates that the Third Party Requester

considers claims 19-21 and 26 as being anticipated by the reference of Goto.  It is agreed that the

consideration of Goto raises a substantial new question of patentability as to independent claims

19 and 26.  Request page 88, line 22 through page 90, line 6, and the claim chart on pages 69-76

of Appendix A, noted as Elements 114-119, and 124-128, are hereby incorporated by reference

from the request for reexamination for their explanation of the teachings provided in Goto that

was not present in the prosecution of the application which became the '700 Patent.  Further,

there is a substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not the claims are patentable.  Accordingly, Goto raises a

substantial new question of patentability as to claims 19-21 and 26, which question has not been

decided in a previous examination of the '700 Patent.

Application/Control Number: 95/000,221                                    Page 22
Art Unit: 3992

With respect to *Issues #3 and 4*, the request indicates that the Third Party Requester

considers claims 1-15 and 27-31 as being unpatentable over Goto in view of Himoto, and also as

being unpatentable over Goto in view of Himoto, and further in view of Bersheim. It is agreed

that the consideration of Goto in view of Himoto, as well as the consideration of Goto in view of

Himoto, and further in view of Bersheim raises a substantial new question of patentability as to

independent claims 1, 3, 5, 6, 9, and 12-15. Request page 98, line 7 through page 118, line 18,

and the claim chart on pages 1-58 and 77-80 of Appendix A, noted as Elements 1-92, and 129-

133, are hereby incorporated by reference from the request for reexamination for their

explanation of the teachings provided in Goto in view of Himoto that were not present in the

prosecution of the application which became the '700 Patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable. Accordingly, Goto in view of Himoto raises a

substantial new question of patentability as to claims 1-15 and 27-31, which question has not

been decided in a previous examination of the '700 Patent.


With respect to *Issue #6*, the request indicates that the Third Party Requester considers

claims 20-21 and 26 as being unpatentable over Goto in view of Chandler. It is agreed that the

consideration of Goto in view of Chandler raises a substantial new question of patentability as to

claims 20-21 and 26. Request page 128, line 7 through page 131, line 4, and the claim chart on

pages 73-77 of Appendix A, noted as Elements 118-119, and 124-128, are hereby incorporated

by reference from the request for reexamination for their explanation of the teachings provided in

Goto in view of Chandler that were not present in the prosecution of the application which

became the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Goto in view of Chandler raises a substantial new question of patentability as to

claims 20-21 and 26, which question has not been decided in a previous examination of the '700

Patent.


With respect to *Issue #7*, the request indicates that the Third Party Requester considers

claims 14, 22-25, 27, and 31 as being unpatentable over Goto in view of Furukawa'760. It is

agreed that the consideration of Goto in view of Furukawa'760 raises a substantial new question

of patentability as to claims 14, 22-25, 27, and 31. Request page 131, line 5 through page 134,

line 14, and the claim chart on pages 49-55, 74-75, 77-78, and 80 of Appendix A, noted as

Elements 75-83, 120-123, 129, and 133, are hereby incorporated by reference from the request

for reexamination for their explanation of the teachings provided in Goto in view of

Furukawa'760 that were not present in the prosecution of the application which became the '700

Patent. Further, there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not the claims are patentable. Accordingly, Goto in

view of Furukawa'760 raises a substantial new question of patentability as to claims 14, 22-25,

27, and 31, which question has not been decided in a previous examination of the '700 Patent.


With respect to *Issue #9*, the request indicates that the Third Party Requester considers

claims 14 and 22-27 as being unpatentable over Goto in view of Kramer. It is agreed that the

consideration of Goto in view of Kramer raises a substantial new question of patentability as to

Application/Control Number: 95/000,221                                      Page 24
Art Unit: 3992

claims 14 and 22-27. Request page 136, line 20 through page 140, line 11, and the claim chart

on pages 49-55, and 74-78 of Appendix A, noted as Elements 75-83, and 120-129, are hereby

incorporated by reference from the request for reexamination for their explanation of the

teachings provided in Goto in view of Kramer that were not present in the prosecution of the

application which became the '700 Patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable. Accordingly, Goto in view of Kramer raises a substantial new question of

patentability as to claims 14 and 22-27, which question has not been decided in a previous

examination of the '700 Patent.


With respect to *Issue #11*, the request indicates that the Third Party Requester considers

claims 12-13, 15, 22-25, 27-31 as being unpatentable over Goto in view of O'Mara. It is agreed

that the consideration of Goto in view of O'Mara raises a substantial new question of

patentability as to claims 12-13, 15, 22-25, 27-31. Request page 145, line 1 through page 151,

line 3, and the claim chart on pages 43-49, 55-58, 74-75, 77-80 of Appendix A, are hereby

incorporated by reference from the request for reexamination for their explanation of the

teachings provided in Goto in view of O'Mara that were not present in the prosecution of the

application which became the '700 Patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable. Accordingly, Goto in view of O'Mara raises a substantial new question of

patentability as to claims 12-13, 15, 22-25, and 27-31, which question has not been decided in a

previous examination of the '700 Patent.

Application/Control Number: 95/000,221                                    Page 25
Art Unit: 3992

        With respect to *Issue #12*, the request indicates that the Third Party Requester considers

claim 26 as being unpatentable over Goto in view of Ledin.  It is agreed that the consideration of

Goto in view of Ledin raises a substantial new question of patentability as to claim 26.  Request

page 151, line 4 through page 152, line 19, and the claim chart on pages 75-77 of Appendix A,

are hereby incorporated by reference from the request for reexamination for their explanation of

the teachings provided in Goto in view of Ledin that were not present in the prosecution of the

application which became the '700 Patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable.  Accordingly, Goto in view of Ledin raises a substantial new question of

patentability as to claim 26, which question has not been decided in a previous examination of

the '700 Patent.

        With respect to *Issue #13*, the request indicates that the Third Party Requester considers

claims 22 and 27-31 as being unpatentable over Goto in view of the Sega 3D Control Pad

Manual.  It is agreed that the consideration of Goto in view of the Sega 3D Control Pad Manual

raises a substantial new question of patentability as to claims 22, and 27-31.  Request page 153,

line 1 through page 156, line 9, and the claim chart on pages 74 and 77-80 of Appendix A, are

hereby incorporated by reference from the request for reexamination for their explanation of the

teachings provided in Goto in view of the Sega 3D Control Pad Manual that were not present in

the prosecution of the application which became the '700 Patent.  Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable. Accordingly, Goto in view of the Sega 3D Control Pad

Manual raises a substantial new question of patentability as to claims 22, and 27-31, which

question has not been decided in a previous examination of the '700 Patent.

With respect to *Issue #14*, the request indicates that the Third Party Requester considers

claims 19-21 and 26 as being unpatentable over Goto in view of the PlayStation Manual. It is

agreed that the consideration of Goto in view of the PlayStation Manual raises a substantial new

question of patentability as to claims 19-21 and 26. Request page 156, line 10 through page 159,

line 21, and the claim chart on pages 69-77 of Appendix A, are hereby incorporated by reference

from the request for reexamination for their explanation of the teachings provided in Goto in

view of the PlayStation Manual that were not present in the prosecution of the application which

became the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Goto in view of the PlayStation Manual raises a substantial new question of

patentability as to claims 19-21 and 26, which question has not been decided in a previous

examination of the '700 Patent.

With respect to *Issue #15*, the request indicates that the Third Party Requester considers

claims 6-11, 14, and 32-33 as being unpatentable over Goto in view of Chandler, and further in

view of Furukawa'760. It is agreed that the consideration of Goto in view of Chandler, and

further in view of Furukawa'760 raises a substantial new question of patentability as to claims 6-

11, 14, and 32-33. Request page 160, line 1 through page 166, line 11, and the claim chart on

pages 32-43, 49-55, and 80-84 of Appendix A, are hereby incorporated by reference from the

request for reexamination for their explanation of the teachings provided in Goto in view of

Chandler, and further in view of Furukawa'760 that were not present in the prosecution of the

application which became the '700 Patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable. Accordingly, Goto in view of Chandler, and further in view of

Furukawa'760 raises a substantial new question of patentability as to claims 6-11, 14, and 32-33,

which question has not been decided in a previous examination of the '700 Patent.


        With respect to *Issue #16*, the request indicates that the Third Party Requester considers

claims 1-11, 13-16, and 27-33 as being unpatentable over Goto in view of Chandler, and further

in view of Himoto. It is agreed that the consideration of Goto in view of Chandler, and further in

view of Himoto raises a substantial new question of patentability as to claims 1-11, 13-16, and

27-33. Request page 166, line 12 through page 181, line 6, and the claim chart on pages 1-43,

47-62, and 77-84 of Appendix A, are hereby incorporated by reference from the request for

reexamination for their explanation of the teachings provided in Goto in view of Chandler, and

further in view of Himoto that were not present in the prosecution of the application which

became the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Goto in view of Chandler, and further in view of Himoto raises a substantial new

question of patentability as to claims 1-11, 13-16, and 27-33, which question has not been

decided in a previous examination of the '700 Patent.

With respect to *Issue #17*, the request indicates that the Third Party Requester considers claim 21 as being unpatentable over Goto in view of Chandler, and further in view of Ledin. It is agreed that the consideration of Goto in view of Chandler, and further in view of Ledin raises a substantial new question of patentability as to claim 21. Request page 181, line 7 through page 182, line 22, and the claim chart on pages 73-74 of Appendix A, are hereby incorporated by reference from the request for reexamination for their explanation of the teachings provided in Goto in view of Chandler, and further in view of Ledin that were not present in the prosecution of the application which became the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Goto in view of Chandler, and further in view of Ledin raises a substantial new question of patentability as to claim 21, which question has not been decided in a previous examination of the '700 Patent.

With respect to *Issue #18*, the request indicates that the Third Party Requester considers claims 1-5 and 13 as being unpatentable over Goto in view of Chandler, and further in view of O'Mara. It is agreed that the consideration of Goto in view of Chandler, and further in view of O'Mara raises a substantial new question of patentability as to claims 1-5 and 13. Request page 183, line 1 through page 186, line 5, and the claim chart on pages 1-32 and 47-49 of Appendix A, are hereby incorporated by reference from the request for reexamination for their explanation of the teachings provided in Goto in view of Chandler, and further in view of O'Mara that were not present in the prosecution of the application which became the '700 Patent. Further, there is

a substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Goto in view of Chandler, and

further in view of O'Mara raises a substantial new question of patentability as to claims 1-5 and

13, which question has not been decided in a previous examination of the '700 Patent.


With respect to *Issue #19*, the request indicates that the Third Party Requester considers

claims 6-11, 14, 21, and 32-33 as being unpatentable over Goto in view of Chandler, and further

in view of Kramer. It is agreed that the consideration of Goto in view of Chandler, and further in

view of Kramer raises a substantial new question of patentability as to claims 6-11, 14, 21, and

32-33. Request page 186, line 6 through page 193, line 16, and the claim chart on pages 32-43,

49-55, 73-74, and 80-84 of Appendix A, are hereby incorporated by reference from the request

for reexamination for their explanation of the teachings provided in Goto in view of Chandler,

and further in view of Kramer that were not present in the prosecution of the application which

became the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Goto in view of Chandler, and further in view of Kramer raises a substantial new

question of patentability as to claims 6-11, 14, 21, and 32-33, which question has not been

decided in a previous examination of the '700 Patent.


With respect to *Issue #20*, the request indicates that the Third Party Requester considers

claims 27-31 as being unpatentable over Goto in view of Chandler, and further in view of the

Sega 3D Control Pad Manual. It is agreed that the consideration of Goto in view of Chandler,

and further in view of the Sega 3D Control Pad Manual raises a substantial new question of

patentability as to claims 27-31. Request page 193, line 17 through page 196, line 22, and the

claim chart on pages 77-80 of Appendix A, are hereby incorporated by reference from the

request for reexamination for their explanation of the teachings provided in Goto in view of

Chandler, and further in view of the Sega 3D Control Pad Manual that were not present in the

prosecution of the application which became the '700 Patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable. Accordingly, Goto in view of Chandler, and further in

view of the Sega 3D Control Pad Manual raises a substantial new question of patentability as to

claims 27-31, which question has not been decided in a previous examination of the '700 Patent.


        With respect to *Issue #21*, the request indicates that the Third Party Requester considers

claims 17-18 as being unpatentable over Goto in view of Chandler, further in view of Kramer,

and further in view of the Sega 3D Control Pad Manual. It is agreed that the consideration of

Goto in view of Chandler, further in view of Kramer, and further in view of the Sega 3D Control

Pad Manual raises a substantial new question of patentability as to claims 17-18. Request page

197, line 1 through page 200, line 9, and the claim chart on pages 62-69 of Appendix A, are

hereby incorporated by reference from the request for reexamination for their explanation of the

teachings provided in Goto in view of Chandler, further in view of Kramer, and further in view

of the Sega 3D Control Pad Manual that were not present in the prosecution of the application

which became the '700 Patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the claims are

Application/Control Number: 95/000,221                                    Page 31
Art Unit: 3992

patentable. Accordingly, Goto in view of Chandler, further in view of Kramer, and further in

view of the Sega 3D Control Pad Manual raises a substantial new question of patentability as to

claims 17-18, which question has not been decided in a previous examination of the '700 Patent.


       With respect to *Issues #22 and 23*, the request indicates that the Third Party Requester

considers claims 1-11 and 27-31 as being unpatentable over Goto in view of Himoto, and further

in view of Ledin or further in view of Kramer. It is agreed that the consideration of Goto in view

of Himoto, and further in view of Ledin or further in view of Kramer raises a substantial new

question of patentability as to claims 1-11 and 27-31. Request page 200, line 10 through page

215, line 21, and the claim chart on pages 1-43 and 77-80 of Appendix A, are hereby

incorporated by reference from the request for reexamination for their explanation of the

teachings provided in Goto in view of Himoto, and further in view of Ledin or Kramer that were

not present in the prosecution of the application which became the '700 Patent. Further, there is

a substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Goto in view of Himoto, and

further in view of Ledin or Kramer raises a substantial new question of patentability as to claims

1-11 and 27-31, which question has not been decided in a previous examination of the '700

Patent.


       With respect to *Issue #24*, the request indicates that the Third Party Requester considers

claims 3 and 4 as being unpatentable over Goto in view of Himoto, and further in view of the

PlayStation Manual. It is agreed that the consideration of Goto in view of Himoto, and further in

Application/Control Number: 95/000,221                                    Page 32
Art Unit: 3992

view of the PlayStation Manual raises a substantial new question of patentability as to claims 3-

4. Request page 216, line 1 through page 218, line 15, and the claim chart on pages 24-28 of

Appendix A, are hereby incorporated by reference from the request for reexamination for their

explanation of the teachings provided in Goto in view of Himoto, and further in view of the

PlayStation Manual that were not present in the prosecution of the application which became the

'700 Patent. Further, there is a substantial likelihood that a reasonable examiner would consider

these teachings important in deciding whether or not the claims are patentable. Accordingly,

Goto in view of Himoto, and further in view of the PlayStation Manual raises a substantial new

question of patentability as to claims 3 and 4, which question has not been decided in a previous

examination of the '700 Patent.


With respect to *Issues #25 and 26*, the request indicates that the Third Party Requester

considers claims 6-11, 27, and 31 as being unpatentable over Goto in view of Ledin, and further

in view of Kramer or further in view of Furukawa'760. It is agreed that the consideration of

Goto in view of Ledin, and further in view of Kramer or further in view of Furukawa'760 raises

a substantial new question of patentability as to claims 6-11, 27, and 31. Request page 218, line

15 through page 227, line 8, and the claim chart on pages 32-43, 77-78, and 80 of Appendix A,

are hereby incorporated by reference from the request for reexamination for their explanation of

the teachings provided in Goto in view of Ledin, and further in view of Kramer or Furukawa'760

that were not present in the prosecution of the application which became the '700 Patent.

Further, there is a substantial likelihood that a reasonable examiner would consider these

teachings important in deciding whether or not the claims are patentable. Accordingly, Goto in

Application/Control Number: 95/000,221                                    Page 33
Art Unit: 3992

view of Ledin, and further in view of Kramer or Furukawa'760 raises a substantial new question

of patentability as to claims 6-11, 27, and 31, which question has not been decided in a previous

examination of the '700 Patent.

        With respect to *Issue #27*, the request indicates that the Third Party Requester considers

claims 27-31 as being unpatentable over Goto in view of Ledin, and further in view of the Sega

3D Control Pad Manual.  It is agreed that the consideration of Goto in view of Ledin, and further

in view of the Sega 3D Control Pad Manual raises a substantial new question of patentability as

to claims 27-31.  Request page 227, line 9 through page 230, line 12, and the claim chart on

pages 77-80 of Appendix A, are hereby incorporated by reference from the request for

reexamination for their explanation of the teachings provided in Goto in view of Ledin, and

further in view of the Sega 3D Control Pad Manual that were not present in the prosecution of

the application which became the '700 Patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable.  Accordingly, Goto in view of Ledin, and further in view of the Sega 3D

Control Pad Manual raises a substantial new question of patentability as to claims 27-31, which

question has not been decided in a previous examination of the '700 Patent.

        With respect to *Issue #28*, the request indicates that the Third Party Requester considers

claims 1-5, 12-13, 15, 22-25, and 27-31 as being unpatentable over Goto in view of O'Mara, and

further in view of Kramer.  It is agreed that the consideration of Goto in view of O'Mara, and

further in view of Kramer raises a substantial new question of patentability as to claims 1-5, 12-

13, 15, 22-25, and 27-31. Request page 230, line 13 through page 240, line 3, and the claim

chart on pages 1-32, 43-49, 55-58, 74-75, and 77-78 of Appendix A, are hereby incorporated by

reference from the request for reexamination for their explanation of the teachings provided in

Goto in view of O'Mara, and further in view of Kramer that were not present in the prosecution

of the application which became the '700 Patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable. Accordingly, Goto in view of O'Mara, and further in view of Kramer

raises a substantial new question of patentability as to claims 1-5, 12-13, 15, 22-25, and 27-31,

which question has not been decided in a previous examination of the '700 Patent.


       With respect to *Issue #29*, the request indicates that the Third Party Requester considers

claims 1-5 and 13 as being unpatentable over Goto in view of O'Mara, further in view of

Kramer, and further in view of Chandler. It is agreed that the consideration of Goto in view of

O'Mara, further in view of Kramer, and further in view of Chandler raises a substantial new

question of patentability as to claims 1-5 and 13. Request page 240, line 4 through page 243,

line 17, and the claim chart on pages 1-32 and 47-49 of Appendix A, are hereby incorporated by

reference from the request for reexamination for their explanation of the teachings provided in

Goto in view of O'Mara, further in view of Kramer, and further in view of Chandler that were

not present in the prosecution of the application which became the '700 Patent. Further, there is

a substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Goto in view of O'Mara, further

in view of Kramer, and further in view of Chandler raises a substantial new question of

Application/Control Number: 95/000,221                                        Page 35
Art Unit: 3992

patentability as to claims 1-5 and 13, which question has not been decided in a previous

examination of the '700 Patent.

    With respect to *Issue #30*, the request indicates that the Third Party Requester considers

claims 28-31 as being unpatentable over Goto in view of the Sega 3D Control Pad Manual, and

further in view of Himoto.  It is agreed that the consideration of Goto in view of the Sega 3D

Control Pad Manual, and further in view of Himoto raises a substantial new question of

patentability as to claims 28-31.  Request page 243, line 18 through page 245, line 22, and the

claim chart on pages 78-80 of Appendix A, are hereby incorporated by reference from the

request for reexamination for their explanation of the teachings provided in Goto in view of the

Sega 3D Control Pad Manual, and further in view of Himoto that were not present in the

prosecution of the application which became the '700 Patent.  Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable.  Accordingly, Goto in view of the Sega 3D Control Pad

Manual, and further in view of Himoto raises a substantial new question of patentability as to

claims 28-31, which question has not been decided in a previous examination of the '700 Patent.

    With respect to *Issue #32*, the request indicates that the Third Party Requester considers

claims 16, 19-20, 22-25, and 32-33 as being unpatentable over Armstrong'891 in view of

Armstrong'828.  It is agreed that the consideration of Armstrong'891 in view of Armstrong'828

raises a substantial new question of patentability as to claims 16, 19-20, 22-25, and 32-33.

Request page 256, line 11 through page 262, line 2, and the claim chart on pages 58-61, and 67-

75, and 79-82 of Appendix B, are hereby incorporated by reference from the request for

reexamination for their explanation of the teachings provided in Armstrong'891 in view of

Armstrong'828 that were not present in the manner discussed by the Third Party Requester

during the prosecution of the application which became the '700 Patent. Thus, the references are

being viewed in a new light, with respect to the discussion above regarding the chain of

continuity of the '700 Patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the claims are

patentable. Accordingly, Armstrong'891 in view of Armstrong'828 raise a substantial new

question of patentability as to claims 16, 19-20, 22-25, and 32-33, which question has not been

decided in a previous examination of the '700 Patent.


With respect to *Issue #35*, the request indicates that the Third Party Requester considers

claim 14 as being unpatentable over Armstrong'891 in view of Furukawa'760. It is agreed that

the consideration of Armstrong'891 in view of Furukawa'760 raises a substantial new question

of patentability as to claim 14. Request page 267, line 4 through page 268, line 22, and the claim

chart on pages 50-54 of Appendix B, are hereby incorporated by reference from the request for

reexamination for their explanation of the teachings provided in Armstrong'891 in view of

Furukawa'760 that were not present in the manner discussed by the Third Party Requester during

the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891

reference is being viewed in a new light, with respect to the discussion above regarding the chain

of continuity of the '700 Patent. Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the claims are

patentable. Accordingly, Armstrong'891 in view of Furukawa'760 raise a substantial new

question of patentability as to claim 14, which question has not been decided in a previous

examination of the '700 Patent.


        With respect to *Issues #38 and 41*, the request indicates that the Third Party Requester

considers claims 9-11 and 21 as being unpatentable over Armstrong'891 in view of

Armstrong'828, and further in view of Chandler or further in view of Ledin.  It is agreed that the

consideration of Armstrong'891 in view of Armstrong'828, and further in view of Chandler or

further in view of Ledin raises a substantial new question of patentability as to claims 9-11 and

21.  Request page 285, line 1 through page 288, line 21, and page 309, line 15 through page 313,

line 15, and the claim chart on pages 38-45, and 72-73 of Appendix B, are hereby incorporated

by reference from the request for reexamination for their explanation of the teachings provided in

Armstrong'891 in view of Armstrong'828, and further in view of Chandler or further in view of

Ledin that were not present in the manner discussed by the Third Party Requester during the

prosecution of the application which became the '700 Patent.  Thus, the Armstrong'891 and

Armstrong'828 references are being viewed in a new light, with respect to the discussion above

regarding the chain of continuity of the '700 Patent.  Further, there is a substantial likelihood that

a reasonable examiner would consider these teachings important in deciding whether or not the

claims are patentable.  Accordingly, Armstrong'891 in view of Armstrong'828, and further in

view of Chandler or further in view of Ledin raise a substantial new question of patentability as

to claims 9-11 and 21, which question has not been decided in a previous examination of the

'700 Patent.

With respect to *Issue #39*, the request indicates that the Third Party Requester considers

claims 9-11, 17-18, 21-27, and 32-33 as being unpatentable over Armstrong'891 in view of

Armstrong'828, and further in view of Kramer. It is agreed that the consideration of

Armstrong'891 in view of Armstrong'828, and further in view of Kramer raises a substantial

new question of patentability as to claims 9-11, 17-18, 21-27, and 32-33. Request page 289, line

1 through page 299, line 23, and the claim chart on pages 38-45, 62-67, 72-77, and 79-82 of

Appendix B, are hereby incorporated by reference from the request for reexamination for their

explanation of the teachings provided in Armstrong'891 in view of Armstrong'828, and further

in view of Kramer that were not present in the manner discussed by the Third Party Requester

during the prosecution of the application which became the '700 Patent. Thus, the

Armstrong'891 and Armstrong'828 references are being viewed in a new light, with respect to

the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Armstrong'891 in view of

Armstrong'828, and further in view of Kramer raise a substantial new question of patentability

as to claims 9-11, 17-18, 21-27, and 32-33, which question has not been decided in a previous

examination of the '700 Patent.

With respect to *Issue #40*, the request indicates that the Third Party Requester considers

claims 12-13, 15-16, 22-25, and 32-33 as being unpatentable over Armstrong'891 in view of

Armstrong'828, and further in view of O'Mara. It is agreed that the consideration of

Application/Control Number: 95/000,221                                    Page 39
Art Unit: 3992

Armstrong'891 in view of Armstrong'828, and further in view of O'Mara raises a substantial

new question of patentability as to claims 12-13, 15-16, 22-25, and 32-33. Request page 300,

line 1 through page 309, line 14, and the claim chart on pages 45-50, 54-61, 73-75, and 79-82 of

Appendix B, are hereby incorporated by reference from the request for reexamination for their

explanation of the teachings provided in Armstrong'891 in view of Armstrong'828, and further

in view of O'Mara that were not present in the manner discussed by the Third Party Requester

during the prosecution of the application which became the '700 Patent. Thus, the

Armstrong'891 and Armstrong'828 references are being viewed in a new light, with respect to

the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, Armstrong'891 in view of

Armstrong'828, and further in view of O'Mara raise a substantial new question of patentability

as to claims 12-13, 15-16, 22-25, and 32-33, which question has not been decided in a previous

examination of the '700 Patent.


       With respect to *Issue #42*, the request indicates that the Third Party Requester considers

claims 16, 22-25, and 32-33 as being unpatentable over Armstrong'891 in view of

Armstrong'828, and further in view of Furukawa'760. It is agreed that the consideration of

Armstrong'891 in view of Armstrong'828, and further in view of Furukawa'760 raises a

substantial new question of patentability as to claims 16, 22-25, and 32-33. Request page 313,

line 16 through page 319, line 12, and the claim chart on pages 58-61, 73-75, and 79-82 of

Appendix B, are hereby incorporated by reference from the request for reexamination for their

explanation of the teachings provided in Armstrong'891 in view of Armstrong'828, and further in view of Furukawa'760 that were not present in the manner discussed by the Third Party Requester during the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891 and Armstrong'828 references are being viewed in a new light, with respect to the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Armstrong'891 in view of Armstrong'828, and further in view of Furukawa'760 raise a substantial new question of patentability as to claims 16, 22-25, and 32-33, which question has not been decided in a previous examination of the '700 Patent.

With respect to *Issue #43*, the request indicates that the Third Party Requester considers claims 9-10 as being unpatentable over Armstrong'891 in view of Chandler, and further in view of Himoto. It is agreed that the consideration of Armstrong'891 in view of Chandler, and further in view of Himoto raises a substantial new question of patentability as to claims 9-10. Request page 319, line 13 through page 322, line 4, and the claim chart on pages 38-45 of Appendix B, are hereby incorporated by reference from the request for reexamination for their explanation of the teachings provided in Armstrong'891 in view of Chandler, and further in view of Himoto that were not present in the manner discussed by the Third Party Requester during the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891 reference is being viewed in a new light, with respect to the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner would

Application/Control Number: 95/000,221                                     Page 41
Art Unit: 3992

consider these teachings important in deciding whether or not the claims are patentable.

Accordingly, Armstrong'891 in view of Chandler, and further in view of Himoto raise a

substantial new question of patentability as to claims 9-10, which question has not been decided

in a previous examination of the '700 Patent.


        With respect to *Issues #44 and 45*, the request indicates that the Third Party Requester

considers claim 5 as being unpatentable over Armstrong'891 in view of O'Mara, and further in

view of Chandler or further in view of Ledin.  It is agreed that the consideration of

Armstrong'891 in view of O'Mara, and further in view of Chandler or further in view of Ledin

raises a substantial new question of patentability as to claim 5.  Request page 322, line 5 through

page 327, line 4, and the claim chart on pages 27-30 of Appendix B, are hereby incorporated by

reference from the request for reexamination for their explanation of the teachings provided in

Armstrong'891 in view of O'Mara, and further in view of Chandler or further in view of Ledin

that were not present in the manner discussed by the Third Party Requester during the

prosecution of the application which became the '700 Patent.  Thus, the Armstrong'891

reference is being viewed in a new light, with respect to the discussion above regarding the chain

of continuity of the '700 Patent.  Further, there is a substantial likelihood that a reasonable

examiner would consider these teachings important in deciding whether or not the claims are

patentable.  Accordingly, Armstrong'891 in view of O'Mara, and further in view of Chandler or

further in view of Ledin raise a substantial new question of patentability as to claim 5, which

question has not been decided in a previous examination of the '700 Patent.

With respect to *Issues #46 and 47*, the request indicates that the Third Party Requester

considers claims 1-11 as being unpatentable over Armstrong'891 in view of Armstrong'828,

further in view of Chandler, and further in view of O'Mara, or unpatentable over Armstrong'891

in view of Armstrong'828, further in view of Ledin, and further in view of O'Mara. It is agreed

that the consideration of these combinations raise a substantial new question of patentability as to

claims 1-11. Request page 327, line 5 through page 343, line 13, and the claim chart on pages 1-

45 of Appendix B, are hereby incorporated by reference from the request for reexamination for

their explanation of the teachings provided in Armstrong'891, Armstrong'828, Chandler, Ledin,

and O'Mara that were not present in the manner discussed by the Third Party Requester during

the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891 and

the Armstrong'828 references are being viewed in a new light, with respect to the discussion

above regarding the chain of continuity of the '700 Patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding

whether or not the claims are patentable. Accordingly, the combinations raise a substantial new

question of patentability as to claims 1-11, which question has not been decided in a previous

examination of the '700 Patent.


With respect to *Issue #48*, the request indicates that the Third Party Requester considers

claims 1-13, 15-18, and 28-33 as being unpatentable over Armstrong'891 in view of

Armstrong'828, further in view of Kramer, and further in view of O'Mara. It is agreed that the

consideration of this combination raises a substantial new question of patentability as to claims

1-13, 15-18, and 28-33. Request page 343, line 14 through page 363, line 17, and the claim chart

on pages 1-50, 54-67, and 77-82 of Appendix B, are hereby incorporated by reference from the request for reexamination for their explanation of the teachings provided in Armstrong'891, Armstrong'828, Kramer, and O'Mara that were not present in the manner discussed by the Third Party Requester during the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891 and the Armstrong'828 references are being viewed in a new light, with respect to the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, the combinations raise a substantial new question of patentability as to claims 1-13, 15-18, and 28-33, which question has not been decided in a previous examination of the '700 Patent.

With respect to *Issues #49 and 50*, the request indicates that the Third Party Requester considers claims 9-11 as being unpatentable over Armstrong'891 in view of Armstrong'828, further in view of Furukawa'760, and further in view of Chandler or Ledin. It is agreed that the consideration of these combinations raise a substantial new question of patentability as to claims 9-11. Request page 363, line 18 through page 371, line 9, and the claim chart on pages 38-45 of Appendix B, are hereby incorporated by reference from the request for reexamination for their explanation of the teachings provided in Armstrong'891, Armstrong'828, Furukawa'760, Chandler, and Ledin that were not present in the manner discussed by the Third Party Requester during the prosecution of the application which became the '700 Patent. Thus, the Armstrong'891 and the Armstrong'828 references are being viewed in a new light, with respect to the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a

Application/Control Number: 95/000,221                                    Page 44
Art Unit: 3992

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, the combinations raise a

substantial new question of patentability as to claims 9-11, which question has not been decided

in a previous examination of the '700 Patent.


   With respect to *Issue #51*, the request indicates that the Third Party Requester considers

claims 9-11 and 17-18 as being unpatentable over Armstrong'891 in view of Armstrong'828,

further in view of Furukawa'760, and further in view of Kramer. It is agreed that the

consideration of this combination raises a substantial new question of patentability as to claims

9-11 and 17-18. Request page 371, line 10 through page 377, line 17, and the claim chart on

pages 38-45 and 62-67 of Appendix B, are hereby incorporated by reference from the request for

reexamination for their explanation of the teachings provided in Armstrong'891, Armstrong'828,

Furukawa'760, and Kramer that were not present in the manner discussed by the Third Party

Requester during the prosecution of the application which became the '700 Patent. Thus, the

Armstrong'891 and the Armstrong'828 references are being viewed in a new light, with respect

to the discussion above regarding the chain of continuity of the '700 Patent. Further, there is a

substantial likelihood that a reasonable examiner would consider these teachings important in

deciding whether or not the claims are patentable. Accordingly, the combinations raise a

substantial new question of patentability as to claims 9-11 and 17-18, which question has not

been decided in a previous examination of the '700 Patent.

Application/Control Number: 95/000,221                                    Page 45
Art Unit: 3992

With respect to *Issues #52, 53, and 54*, the request indicates that the Third Party

Requester considers claims 1, 3, 6, and 8-10 as being unpatentable over Armstrong'891 in view

of Himoto, further in view of either Chandler, Ledin, or Kramer, and further in view of O'Mara.

It is agreed that the consideration of these combinations raise a substantial new question of

patentability as to claims 1, 3, 6, 8-10. Request page 377, line 18 through page 397, line 23, and

the claim chart on pages 1-21, 23-26, 30-45 of Appendix B, are hereby incorporated by reference

from the request for reexamination for their explanation of the teachings provided in

Armstrong'891, Himoto, Chandler, Ledin, Kramer, and O'Mara that were not present in the

manner discussed by the Third Party Requester during the prosecution of the application which

became the '700 Patent. Thus, the Armstrong'891 reference is being viewed in a new light, with

respect to the discussion above regarding the chain of continuity of the '700 Patent. Further,

there is a substantial likelihood that a reasonable examiner would consider these teachings

important in deciding whether or not the claims are patentable. Accordingly, the combinations

raise a substantial new question of patentability as to claims 1, 3, 6, and 8-10, which question has

not been decided in a previous examination of the '700 Patent.


Contrarily, with respect to *Issues #2, 5, 8, 10, 31, 33, 34, 36, and 37*, the Third Party

Requester utilizes the Applicant's Admissions in the request allegedly render various claims

unpatentable. It is not agreed that the consideration of the various combinations that utilize the

Applicant's Admissions raise a substantial new question of patentability as to the claims 19 and

26. In the examiner's opinion, the portion of the Information Disclosure Statement filed in the

Application/Control Number: 95/000,221                               Page 46
Art Unit: 3992

prosecution history of the '700 Patent and the background section of the earlier 'Armstrong'525

patent document clearly raise a SNQ for claims in the instant '700 Patent.


### *Litigation Reminder*

30.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,906,700 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

Application/Control Number: 95/000,221                                    Page 47
Art Unit: 3992

## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Application/Control Number: 95/000,221                                    Page 48

Art Unit: 3992

## *Conclusion*

31.    **All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By Mail to:    Mail Stop *Inter Partes* Reexam
                Attn: Central Reexamination Unit
                Commissioner of Patents
                United States Patent & Trademark Office
                P.O. Box 1450
                Alexandria, VA 22313-1450

By FAX to:    (571) 273-9900
                Central Reexamination Unit

By hand:        Customer Service Window
                Randolph Building
                401 Dulany St.
                Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

JOSEPH R. POKRZYWA
PRIMARY EXAMINER

Joseph R Pokrzywa

Primary Patent Examiner

Central Reexamination Unit 3992

(571) 272-7410

Conferees:

EXPRESS MAIL LABEL NO.: EV514208534US
DATE OF DEPOSIT: May 4, 2007

PATENT

| INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART | | |
|---|---|---|
| | Attorney Docket Number | 6620-76454-13 |
| | Patent Number | 6,906,700 |
| | Issued Date | June 14, 2005 |
| | First Named Inventor | Brad A. Armstrong |

## U.S. PATENT DOCUMENTS

Copies of U.S. Patent documents do not need to be provided, unless requested by the Patent and Trademark Office. For patents, provide the patent number and the issue date. For published U.S. applications, provide the publication number and the publication date. For unpublished pending patent applications, provide the application number and the filing date.

| Examiner's Initials* | Cite No. (optional) | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|
| J.P. | | 5,164,697 | November 17, 1992 | Kramer |
| J.P. | | 5,565,891 | October 15, 1996 | Armstrong |
| J.P. | | 5,510,812 | April 23, 1996 | O'Mara et al. |
| J.P. | | 5,589,828 | December 31, 1996 | Armstrong |
| J.P. | | 4,246,452 | January 21, 1981 | Chandler |
| J.P. | | 6,002,594 | December 14, 1999 | Ledin |
| J.P. | | 4,491,325 | January 1, 1985 | Bersheim |
| | | | | |
| | | | | |
| | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| J.P. | | EP | EP 867,212 A1 | September 30, 1998 | Goto et al |
| J.P. | | Japan | H05-87760 | November 26, 1993 | Furukawa et al. |
| J.P. | | EP | EP 0 835676 A1 | April 15, 1998 | Himoto et al. |

| EXAMINER SIGNATURE: | Joseph R Rhyne | DATE CONSIDERED: | 7/2/07 |
|---|---|---|---|

* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.

EXPRESS MAIL LABEL NO.: EV514208534US
DATE OF DEPOSIT: May 4, 2007

PATENT

| INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART | | |
|---|---|---|
| Attorney Docket Number | 6620-76454-13 |
| Patent Number | 6,906,700 |
| Issued Date | June 14, 2005 |
| First Named Inventor | Brad A. Armstrong |

| Examiner's Initials* | Cite No. (optional) | OTHER DOCUMENTS |
|---|---|---|
| J.P. | | Sony Computer Entertainment Inc., "PlayStation® Instruction Manual SCPH-7000," SONY Publication No. 3-861-343-05(1), © 1994-1998 |
| J.P | | Sega Enterprises, Ltd., "Sega Saturn™ 3D Control Pad instruction manual," © 1996 |
| J.P. | | May 6, 2004 Declaration of Brad A. Armstrong (submitted for Applicant's Admissions regarding Prior Art contained therein) |
| J.P. | | Brad A. Armstrong, U.S. Patent No. 6,222,525, issued April 24, 2001, (submitted for Applicant's Admissions regarding Prior Art contained therein) |
| J.P. | | '700 Patent Prosecution History, Applicant's December 4, 2003 Information Disclosure Statement (submitted for Applicant's Admissions regarding Prior Art contained therein) |

| EXAMINER SIGNATURE: | Joseph R Ptomey | DATE CONSIDERED: | 7/2/07 |
|---|---|---|---|

* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.