EXHIBIT C

Dockets.Justia.com

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Jared S. Goff
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER _95/000,230_.

PATENT NUMBER _6,563,415_.

TECHNOLOGY CENTER _3999_.

ART UNIT _3992_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000230 | 04/19/07 | 6563415 | |

Brad A. Armstrong
P.O. BOX 2048
Carson City, NV 89702

| EXAMINER |
|---|
| Margaret Rubin |

| ART UNIT | PAPER |
|---|---|
| 3992 | |

DATE MAILED:

06/04/07

# *INTER PARTES* REEXAMINATION
# COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

| ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 95/000,230 | 6563415 | |
| | Examiner | Art Unit | |
| | Margaret Rubin | 3992 | |

-- **The MAILING DATE of this communication appears on the cover sheet with the correspondence address.** --

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):    ☐ PTO-892    ☒ PTO/SB/08    ☐Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

    ☐ An Office action is attached with this order.

    ☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,230                                           Page 2
Art Unit: 3992

## ORDER GRANTING REEXAMINATION REQUEST

A substantial new question of patentability (SNQ) affecting claims 1-24 of United States

Patent Number 6,563,415 (the '415 patent) is raised by the present request for *inter partes*

reexamination filed 4/19/2007 ("the Request").

An Office action on the merits does not accompany this order for *inter partes*

reexamination. An Office action on the merits will be provided in due course. Patent owner is

reminded that no proposed amendment may be made in this proceeding until after the first Office

action on the merits. 37 CFR 1.939(b).

### *References Relied Upon in the Request*

JP S61-103836 (translation with Request) (herein "Matsumoto").

JP S61-100844 (translation with Request) (herein "Kaneko").

GB 1 412 298 (herein "Knox").

U.S. Patent No. 5,164,697 to Kramer (herein "Kramer").

JP 5-87760 (translation with Request) (herein "Furukawa 760").

The admitted prior art from the '415 patent (herein "APA").

U.S. Patent No. Re. 34,095 to Padula et al. (herein "Padula").

U.S. Patent No. 5,046,739 to Reichow (herein "Reichow").

JP 5-326217 (translation with Request) (herein "Furukawa 217").

Mason, Switch Engineering Handbook (McGraw-Hill 1993) (herein "Mason").

Application/Control Number: 95/000,230                                                    Page 3
Art Unit: 3992

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*
reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"
and not to the patent owner in a reexamination proceeding.  Additionally, 35 U.S.C. 314(c)
requires that *inter partes* reexamination proceedings "will be conducted with special dispatch"
(37 CFR 1.937).  Patent owner extensions of time in *inter partes* reexamination proceedings are
provided for in 37 CFR 1.956.  Extensions of time are not available for third party requester
comments, because a comment period of 30 days from service of patent owner's response is set
by statute.  35 U.S.C. 314(b)(3).

### *Notification of Other Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to
apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the
'415 patent throughout the course of this reexamination proceeding. The third party requester is
also reminded of the ability to similarly apprise the Office of any such activity or proceeding
throughout the course of this reexamination proceeding. See MPEP § 2686 and 2686.04.

Application/Control Number: 95/000,230                                    Page 4
Art Unit: 3992

## *Requester's Proposals*

The Request indicates that the cited references raise SNQs as follows:

1. Claim 17 is anticipated by Matsumoto. Request pp. 28-29.

2. Claim 17 is anticipated by Kaneko. Request pp. 29-30.

3. Claims 9-10, 13-15, and 17-19 are anticipated by Knox. Request pp. 31-33.

4. Claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24 are anticipated by Kramer. Request pp. 34-46.

5. Claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24 are anticipated by Furukawa 760. Request pp. 47-59.

6. Claims 1-2, 7-10, and 18-19 are obvious over Matsumoto in view of APA. Request pp. 59-70.

7. Claims 1-2, 7-10, and 18-19 are obvious over Kaneko in view of APA. Request pp. 71-80.

8. Claim 3 is obvious over Kramer in view of Padula, and further in view of Reichow. Request pp. 80-81.

9. Claims 6, 10, 12, 16, 19, and 22 are obvious over Kramer in view of Padula. Request pp. 81-83.

10. Claims 2 and 8 are obvious over Furukawa 760 in view of Furukawa 217. Request pp. 83-84.

11. Claim 3 is obvious over Furukawa 760 in view of Reichow, and further in view of Padula. Request p. 85.

Application/Control Number: 95/000,230                                           Page 5
Art Unit: 3992

12. Claims 6, 10, 12, 16, 19, and 22 are obvious over Furukawa 760 in view of Padula.
    Request pp. 85-87.

13. Claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24 are obvious over Furukawa 760
    in view of Mason.  Request pp. 87-103

14. Claims 4-5, 11, and 19-20 are obvious over Kramer in view of Furukawa 760.  Request
    pp. 103-104.


It is agreed Issues 1-4, 6-9, and 13-14 raise an SNQ as to claims 1-24 of the '415 patent;

Issues 5 and 10-12 are found not to raise an SNQ.  The Issues are discussed in detail below.


### *Prosecution History*

The '415 patent issued from U.S. Patent Application 09/955,838, filed 9/18/2001.

Claims 1-24 were rejected in the first Office action mailed 5/3/2002. Claims 1-17 and 19-22

were rejected on the basis of non-statutory double patenting; claims 1-2, 4-5, 7-9, 11, 13-15, 17-

18, 20-21, and 23-24 were rejected as being anticipated by Furukawa 760; and claims 1-2 and 7-

8 were rejected as being obvious over Furukawa 760 in view of Kramer.

The examiner also discussed the following references on the record: Kambic (IBM Tech.

Disclosure), Murata (GB 2113920), Mitchell (apparently U.S. Patent 3,806,471) and Parsons

(apparently U.S. Patent 5,287,089).[1] Kambic and Murata were distinguished as disclosing on/off

type switches, rather than analog switches as claimed.  Mitchell was cited as disclosing both

on/off and analog type switches, but the examiner stated there was no suggestion to combine the

Application/Control Number: 95/000,230                                                    Page 6
Art Unit: 3992

analog type switch with the snap through type design. The examiner stated that Parsons does not

disclose a snap type device. See Office Action mailed 5/2/2002, pp. 4-5.

Patent owner's response filed 5/16/2002 argued that terminal disclaimers had already

been filed to obviate the double patenting rejections, and also argued against the prior art

rejections. Patent owner also argued that Furukawa 760 does not disclose the claimed "snap-

through" tactile feedback, and that the combination of Furukawa 760 and Kramer was

impermissible due to hindsight.

In a final rejection mailed 7/12/2002, the examiner maintained the double patenting

rejections, stating that the file did not include a terminal disclaimer for the patent used in the

double patenting rejections, and also maintained the rejection of claims 17 and 20 as anticipated

by Furukawa 760. The examiner withdrew the remaining rejections based on Furukawa 760,

agreeing with the Patent owner that the reference discloses no "snap" as claimed. The examiner

noted that claims 17 and 20 did not require the "snap" limitations argued by the Patent owner.

In response to the final rejection, patent owner filed the appropriate terminal disclaimer to

remove the double patenting rejections, and amended claims 17 and 20 to require snap-through

threshold tactile feedback, i.e. adding what the examiner had found lacking in Furukawa 760.

The examiner allowed the claims without reasons for allowance.

It is also recognized that Figure 3 of the '415 patent is labeled as "prior art." It appears

that Patent owner's invention was admitted to be known in the art, except for the inclusion of

variable conductance material 30. Compare Figure 3 (Prior art) with Figure 4 (identical to

Figure 3 except for element 30); see also '415 patent col. 6 lines 46-53 (describing Fig. 4 as

---

[1] The examiner made the identical discussion of these references in both the non-final and final office actions.

Application/Control Number: 95/000,230                                Page 7
Art Unit: 3992

structured the same as Fig. 3, except for the addition of variable conductance material). That is,

Figure 3 shows a switch with snap-through tactile feedback, but without a variable conductance

material. This is generally described in the discussion of prior art in col. 1 line 39 – col. 2 line 29

of the '415 patent. It is stated that such switches provide only on/off control, and it would be

advantageous if there could be provided proportional, or analog, control. Col. 2 lines 25-29.

Patent owner further admits that sensors were known in the prior art having variable

conductance materials producing analog outputs, but that such prior art sensors did not utilize

snap-through tactile feedback. Col. 2 lines 30-54.

Thus, it is admitted that snap-through tactile feedback sensors were known in the prior

art, and that analog sensors having variable conductive materials were known in the prior art.

While there are no reasons for allowance on the record, it is apparent that the claims were

allowed due to the combination of these elements: a snap-through tactile feedback type analog

sensor having variable conductive material or providing a variable output. Such limitations are

present in all claims of the '415 patent. Thus, patents or printed publications teaching these

limitations would raise a SNQ.


### *Discussion of the References Pertaining to the Alleged SNQs*

Issues 1, 6:[2]

It is agreed that Matsumoto raises an SNQ as to claim 17, and that the combination of

Matsumoto and APA raises an SNQ as to claims 1-2, 7-10, and 18-19.

---

Patent owner did not discuss the references, nor did he comment on the examiner's discussion.
[2] The issues are set forth *supra* at pages 4-5.

Application/Control Number: 95/000,230                                    Page 8
Art Unit: 3992

Matsumoto is drawn to a "variable resistance switch of which the on/off switching can be easily recognized through the feeling of pressure on a fingertip and the resistance between two terminals can be changed depending on how much the push button of the switch is pressed." Matsumoto p. 359. Matsumoto discloses that when push button 1 is pressed downward, it causes curved plate 3 to move downward, ultimately pressing electro-conductive rubber 6. Matsumoto p. 365. Rubber 6 is a pressure-sensitive variable-conductance material, as the resistance is altered due to the amount of pressure applied. Matsumoto p. 363 ("It has a variable resistance depending on the pressure."); 366. The varying resistance can be used to alter features such as motor speed. Matsumoto p. 368. Thus, Matsumoto's pressure-sensitive variable-conductance material and sensor, rather than merely being used for on/off operation as a digital sensor, is used in an analog nature similar to the sensors of the '415 patent.

Matsumoto additionally discloses that the sensor is of snap-through type and creates a tactile feedback due to curved plate 3. Matsumoto p. 365 (describing a "click action" when curved plate 3 is pressed); 360 ("[A] switchover point (click point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes switching."). Thus, Matsumoto appears to disclose an analog sensor having variable conductance material and snap-through tactile feedback, the same disclosure that was deemed lacking during the original prosecution.

Given the above teachings showing that Matsumoto appears to disclose what was found lacking in the original prosecution, along with the item matching of Matsumoto to claim 17, Request pp. 28-29, a reasonable examiner would have found Matsumoto important in considering the patentability of claim 17. Likewise, a reasonable examiner would have found

Application/Control Number: 95/000,230                                          Page 9
Art Unit: 3992

Matsumoto important in considering the patentability of claims 1-2, 7-10, and 18-19 when

combined with APA. Note the item matching on pp. 59-70 of the Request, along with the

Requester's statement of motivation to combine on pp. 61, 64, 67, and 69 of the Request.

The teachings of Matsumoto discussed herein are not cumulative to any written

discussion on the record of the teachings of the prior art, were not previously considered nor

addressed during a prior examination, and the same question was not the subject of a final

holding of invalidity in the Federal Courts.


Issues 2, 7:

It is agreed that Kaneko raises an SNQ as to claim 17, and that the combination of

Kaneko and APA raises an SNQ as to claims 1-2, 7-10, and 18-19.

Kaneko is drawn to a "variable resistance switch in which the on/off switching can be

easily recognized through the feeling of pressure on a fingertip and the resistance between two

terminals can be changed depending on how much the push button of the switch is pressed."

Kaneko p. 402. Kaneko discloses that when push button 1 is pressed downward, it causes curved

plate 3 to move downward, ultimately pressing electro-conductive rubber 6. Kaneko p. 407.

Rubber 6 is a pressure-sensitive variable-conductance material, as the resistance is altered due to

the amount of pressure applied. Kaneko p. 405 ("The pressure sensitive electro-conductive

rubber 6 has variable resistance according to the pressure."). Thus, Kaneko's pressure-sensitive

variable-conductance material and sensor is used in an analog nature similar to the sensors of the

'415 patent.

Kaneko additionally discloses that the sensor is of snap-through type and creates a tactile feedback due to curved plate 3. Kaneko p. 407 (describing a "click action" when curved plate 3 is pressed); 403 ("[A] switchover point (click point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes the switching."). Thus, Kaneko appears to disclose an analog sensor having variable conductance material and snap-through tactile feedback, the same disclosure that was deemed lacking during the original prosecution.

Given the above teachings showing that Kaneko appears to disclose what was found lacking in the original prosecution, along with the item matching of Kaneko to claim 17, Request pp. 29-30, a reasonable examiner would have found Kaneko important in considering the patentability of claim 17. Likewise, a reasonable examiner would have found Kaneko important in considering the patentability of claims 1-2, 7-10, and 18-19 when combined with APA. Note the item matching on pp. 71-80 of the Request, along with the Requester's statement of motivation to combine on pp. 72, 74-75, 77-78, and 79-80 of the Request.

The teachings of Kaneko discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

Issue 3:

It is agreed that Knox raises an SNQ as to claims 9-10, 13-15, and 17-19.

Knox is drawn to a push button keyboard. Knox p. 1 lines 9-12. When key 3 is pressed, it moves downward causing pressure on variable conductance material 1, which causes a change

Application/Control Number: 95/000,230                                     Page 11
Art Unit: 3992

in resistance so that a current path is created between contacts 2 and conductive material 14.

Knox p. 3 lines 80-126. Variable conductance material 1 is a foam having contacts 2 therein,

and having a resistance that varies according to the pressure applied to the foam. See Knox Fig.

9 (showing pressure vs. resistance graphs for various foams); p. 2 lines 4-111.

Knox additionally discloses that the key can "act against a metal spring so that a snap-

action and an audible 'click' is obtained on depressing the key." Knox p. 4 lines 30-33. Knox's

key might therefore be considered a snap-through type. Thus, Knox appears to disclose a sensor

of the snap-through type having a variable conductance material, a combination that was found

lacking in the prior art during the original prosecution.

Given the above teachings showing that Knox appears to disclose material that was found

lacking in the original prosecution, along with the item matching of Knox to the claims, Request

pp. 31-33, a reasonable examiner would have found Knox important in considering the

patentability of claims 9-10, 13-15, and 17-19.

The teachings of Knox discussed herein are not cumulative to any written discussion on

the record of the teachings of the prior art, were not previously considered nor addressed during

a prior examination, and the same question was not the subject of a final holding of invalidity in

the Federal Courts.


Issues 4, 8, 9, 14:

It is agreed that Kramer raises an SNQ as to claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21,

and 23-24; that the combination of Kramer, Padula, and Reichow raises an SNQ as to claim 3;

that the combination of Kramer and Padula raises an SNQ as to claims 6, 10, 12, 16, 19, and 22;

Application/Control Number: 95/000,230                                    Page 12
Art Unit: 3992

and that the combination of Kramer and Furukawa 760 raises an SNQ as to claims 4-5, 11, and

19-20.

Kramer is drawn generally to "providing pushbutton switching devices in an input

keyboard that can be used to produce not only a switching process but also an adjustment

process." Col. 1 lines 45-49. Kramer utilizes a pressure-sensitive variable-conductance

material: "The contact resistance Rk(P) between the contact surface 18 of the countercontact 16

and the contact surfaces 15.1 and 15.2 in the switching condition depends on the operating

pressure applied to the pushbutton 22." Col. 4 lines 17-21. "The pressure-dependent contact

resistance between the contact surface 18 of the carbonized plastic foil and the contact surfaces

15.1 and 15.2 . . . diminish[es] linearly as the contact pressure increases." Col. 4 line 63 – col. 5

line 3. The varying resistance is "used to cause a control circuit arrangement (6) to generate a

control command (Bf) for setting a particular function and an adjustment command (Bw) for

setting a particular value or adjustment rate." Abstract. Thus Kramer's pressure-sensitive

variable-conductance material and sensor, rather than merely being used for on/off operation as a

digital sensor, is used in an analog nature similar to the sensors of the '415 patent.

Kramer additionally discloses, as noted in the Request, that the device may employ a

snap through dome cap type configuration:

> In another advantageous embodiment of such an input keyboard that is not
> illustrated in the drawing attached hereto, the spring element 20 is attached to the
> ceiling surface of a <u>rubber dome</u> of a contact mat that is arranged between the
> bottom 27 of a pushbutton 22 and the said spring element 20. Like the thin
> insulating plate in the previous embodiment, the rubber dome bears against the
> printed circuit board 10 and, upon the depression of the appropriate pushbutton
> 22, will first actuate a switching process with a <u>snap effect</u> and subsequently
> permit pressure-dependent adjustment of a function variable.

Col. 5 lines 36-48 (emphasis added). Thus, Kramer appears to disclose an analog sensor having variable conductance material and snap-through tactile feedback, the same disclosure that was deemed lacking during the original prosecution.

Given the above teachings showing that Kramer appears to disclose what was found lacking in the original prosecution, along with the item matching of Kramer to claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24, Request pp. 34-46, a reasonable examiner would have found Kramer important in considering the patentability of claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24. Likewise, a reasonable examiner would have found Kramer important in considering the patentability of claim 3 when combined with Padula and Reichow, claims 6, 10, 12, 16, 19, and 22 when combined with Padula, and claims 4-5, 11, and 20-21 when combined with Furukawa 760. Note the item matching on pp. 80-83 and 103-104 of the Request, along with the Requester's statement of motivation to combine on pp. 81-83 and 104 of the Request.

The above SNQ based on Kramer alone is based solely on patents already cited in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a): "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a SNQ that is based exclusively on that old art. Rather, determinations

on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination, or in view of a material new argument or interpretation presented in the request.

During prosecution, Kramer was cited in an obviousness rejection of claims 1-2 and 7-8 in the non-final rejection mailed 5/3/2002. Kramer was used for the teaching that an actuator, i.e. pushbutton 22 of Kramer, may be partially in the housing and partially exposed. There was no written discussion on the record of whether Kramer disclosed a snap-through type variable conductance analog sensor. In light of Kramer's teachings as noted above, it appears that these teachings were not appreciated during the original prosecution.

As Kramer's teachings as elaborated on herein were not discussed and apparently were not appreciated during the original prosecution, the application of Kramer to the claims in the Request is deemed a presentation of the reference in a new light, viewing the reference in a new way as compared to its use in the earlier examination, in view of a material new argument or interpretation of the reference. The SNQ presented herein thus does not fail due to Kramer being old art.

Issues 5, 10, 11, 12:

The examiner does NOT agree that Furukawa 760 raises an SNQ as to claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24, that the combination of Furukawa 760 and Furukawa 217 raises an SNQ as to claims 2 and 8, that the combination of Furukawa 760, Reichow, and Padula

Application/Control Number: 95/000,230                                  Page 15
Art Unit: 3992

raises an SNQ as to claim 3, or that the combination of Furukawa 760 and Padula raises an SNQ

as to claims 6, 10, 12, 16, 19, and 22.

As noted above, Furukawa 760 was applied against the claims during the previous

examination.  Furukawa 760 clearly discloses a switch including a variable conductance material

33 whose resistance is changed by the force applied thereon.  See Fig. 2; pars. [0009]-[0010].

Furukawa 760 does not explicitly state that there is any snap-through type action.  The examiner

during the original prosecution stated: "It is assumed that the device is a 'snap-through' device as

claimed . . . ."  Office Action mailed 5/3/2002 p. 4.  In response, Patent owner argued that this

was pure speculation and nothing in Furukawa 760 supports that this is the case.  The examiner

agreed: "In agreement with applicant's arguments, the cap of Furukawa is not a snap-through

device."  Office Action mailed 7/12/2002 p. 4.

The Request, however, alleges that the original prosecution was erroneous, that Furukawa

760 does indeed show a snap-through type device.  Request pp. 14-22.  Patent owner makes a

number of arguments, citing to Furukawa 760, the '415 patent itself, and other references.

To the extent that the Request relies on the teachings of Furukawa 760 and the '415

patent, the arguments are not persuasive that an SNQ has been raised.  This precise matter was

already determined in the original prosecution, where the examiner had before him both

Furukawa 760 and the specification that ultimately became the '415 patent.  The examiner

explicitly found that there was a snap-through feature in Furukawa 760, then explicitly withdrew

that finding.

This is not a matter of reading Furukawa 760 in a new light or with a material new

interpretation.  The Request is reading Furukawa 760 in exactly the same light, merely stating

Application/Control Number: 95/000,230                                                    Page 16
Art Unit: 3992

that the prior interpretation was wrong. The matter was squarely before the examiner during the

prior examination, and the examiner unequivocally decided the matter, therefore there is nothing

new to make this an SNQ.

To the extent that the Request relies on other references, see e.g. Request p. 17 (citing

Padula, Kaneko, Matsumoto, Kramer, and Mason to allegedly show that the snap-through feature

is inherent), the Request is also not persuasive that a SNQ is raised by Furukawa 760 alone. At

best, these references may teach that the snap-through feature was present *in those references*. It

does not necessarily follow that the feature is present in Furukawa 760. Except for Mason, the

switches/sensors of these references have much different structures than that found in Furukawa

760. Requester is arguing that it is inherent that Furukawa 760 includes the snap-through

feature, because those references teach similar switches having the snap-through feature. But it

does not necessarily follow that a switch having a particular structure must share the same

properties as a switch that is similar but of much different structure. Inherency, "may not be

established by mere probabilities or possibilities. The mere fact that a certain thing may result

from a given set of circumstances is not sufficient." *In re Robertson*, 169 F.3d 743, 745, 49

USPQ2d 1949, 1950-51 (Fed. Cir. 1999) (quotations omitted). It is conceded that Mason's

switch *is* very similar to the Furukawa 760 switch, but it is more persuasive to actually rely on

the Mason reference for its teachings as part of the proposed SNQ, as the Request does in Issue

13, which is discussed *infra*.

The Request also purports to combine Furukawa 760 with Reichow, Padula, and

Furukawa 217. See Issues 10-12. These references, however, are merely provided to meet the

various dependent claim limitations; the references do not remedy the underlying problem of

Furukawa 760, that the matter of the snap-through design was already fully examined during the original prosecution. As there is no SNQ with regard to the independent claims, and these references do not remedy the deficiencies as to the independent claims, the addition of these references do not raise an SNQ as to the dependent claims when combined with Furukawa 760.

As Furukawa 760 was thoroughly considered and was discussed during the previous examination, and the Request does not present the reference in a new light or with a material new interpretation, no SNQ is raised by Furukawa 760, alone or in the above combinations of references, for the reasons discussed above.

Issue 13:

It is agreed that the combination of Furukawa 760 and Mason raises an SNQ as to claims 1-2, 4-5, 7-9, 11, 13-15, 17-18, 20-21, and 23-24. While Furukawa 760 alone was found not to raise an SNQ as to these claims, the combination with Mason remedies this deficiency.

As described above, it was already determined during the previous examination that Furukawa 760 lacks a snap-through design, although the reference appears to disclose the remaining limitations that were important to the patentability of the claims. As described in the Request, however, Mason discloses a similar switch as Furukawa 760, and further describes such switch as providing a snap-through effect and tactile feedback. See Request 88-89; Mason 11.6 (showing similar switch "key top" in the "tactile group"); 11.14 (describing switches with good tactile feel as having high snap ratios). The Request additionally points out that Mason appears to give a motivation for utilizing a switch having a good tactile feel. Request 89, citing Mason 1.48-.49 as describing the desirability of having good tactile feel so that the operator can discern

Application/Control Number: 95/000,230                                    Page 18
Art Unit: 3992

the actuation of the switch. Thus, it appears that Mason provides what was found lacking in

Furukawa 760, and additionally provides a motivation for combining the references. A

reasonable examiner would therefore find the combination of Furukawa 760 and Mason

important in determining the patentability of the claims, and thus an SNQ is raised by the

combination of Furukawa 760 and Mason.

As Mason adds to what was lacking in the previous examination of Furukawa 760, and

because the combined teachings of Furukawa 760 and Mason appear to teach the subject matter

that was lacking in the previous examination, the teachings of Furukawa 760 combined with

Mason raise a SNQ as to the claims described in Issue 13. The teachings are not cumulative to

any written discussion on the record of the teachings of the prior art, were not previously

considered nor addressed during a prior examination, and the same question was not the subject

of a final holding of invalidity in the Federal Courts.

The above SNQ is based in part on patents already cited in an earlier concluded

examination of the patent being reexamined. The examiner again notes the 2002 amendment to

35 U.S.C. 312(a), cited above with respect to Issue 4, and that an SNQ is not precluded merely

because it is based in part on old art. For instance, Furukawa 760 may be deemed to be viewed

in a new light, in a material new way, given that it is now being combined with Mason, a

reference that was never considered during the previous examination. *See also In re Hiniker Co.*,

150 F.3d 1362, 47 USPQ2d 1523 (Fed. Cir. 1998) (holding that reexamination proceeding is

supported by an SNQ when old art is combined with new art). Thus, the SNQ is not precluded

by the fact that it is partially based on old art.

Application/Control Number: 95/000,230                          Page 19

Art Unit: 3992

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to
provide that:

The patent owner's correspondence address for all communications
in an *ex parte* reexamination or an *inter partes* reexamination is
designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting
> Requirements for Ex Parte and Inter Partes
> Reexamination*, 72 FR 18892 (April 16, 2007)(Final
> Rule)

**The correspondence address for any pending reexamination
proceeding not having the same correspondence address as that of
the patent is, by way of this revision to 37 CFR 1.33(c),
automatically changed to that of the patent file as of the
effective date.**

This change is effective for any reexamination proceeding which
is pending before the Office as of May 16, 2007, including the
present reexamination proceeding, and to any reexamination
proceeding which is filed after that date.

Parties are to take this change into account when filing papers,
and direct communications accordingly.

In the event the patent owner's correspondence address listed in
the papers (record) for the present proceeding is different from
the correspondence address of the patent, it is strongly
encouraged that the patent owner affirmatively file a
Notification of Change of Correspondence Address in the
reexamination proceeding and/or the patent (depending on which
address patent owner desires), to conform the address of the
proceeding with that of the patent and to clarify the record as
to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

Application/Control Number: 95/000,230                                    Page 20
Art Unit: 3992

## *Conclusion*

**All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

By **U.S. Postal Service Mail** to:

>       Mail Stop *Inter Partes* Reexam
>       ATTN: Central Reexamination Unit
>       Commissioner for Patents
>       P.O. Box 1450
>       Alexandria, VA 22313-1450

By FAX to:       (571) 273-9900
                 Central Reexamination Unit

By hand to:      Customer Service Window
                 Randolph Building
                 401 Dulany St.
                 Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the

Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be

directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Margaret Rubin
Primary Examiner
Central Reexamination Unit 3992
(571) 272-1756

May 9, 2007

Conferees:

MARK J. REINHART
SPRE-AU 3992
CENTRAL REEXAMINATION UNIT

| INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART | | Attorney Docket Number | 6620-76454-12 |
|---|---|---|---|
| | | Patent Number | 6,563,415 |
| | | Reexam Control Number | 95/000,230 |
| | | Reexam Filing Date | Pending |
| | | In re Application of | Brad A. Armstrong |

## U.S. PATENT DOCUMENTS

Copies of U.S. Patent documents do not need to be provided, unless requested by the Patent and Trademark Office. For patents, provide the patent number and the issue date. For published U.S. applications, provide the publication number and the publication date. For unpublished pending patent applications, provide the application number and the filing date.

| Examiner's Initials* | Cite No. (optional) | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|
| ✓ | | RE 34,095 | October 13, 1992 | Padula |
| ✓ | | 5,046,739 | September 10, 1991 | Reichow |
| ✓ | | 5,164,697 | November 17, 1992 | Kramer |
| | | | | |
| | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| ✓ | | Great Britain | 1 412 298 | November 5, 1975 | Knox |
| ✓ | | Japan | 5-87760 | November 26, 1993 | Furukawa |
| ✓ | | Japan | 5-326217 | December 10, 1993 | Furukawa |
| ✓ | | Japan | S61-100844 | June 27, 1986 | Kaneko |
| ✓ | | Japan | S61-103836 | July 2, 1986 | Matsumoto |

| Examiner's Initials* | Cite No. (optional) | OTHER DOCUMENTS |
|---|---|---|
| ✓ | | Mason, Switch Engineering Handbook (McGraw-Hill, Inc. 1993) (excerpts, ch. 1, 6, 8-11) |
| | | |
| | | |

| EXAMINER SIGNATURE: | | DATE CONSIDERED: | 5/7/07 |
|---|---|---|---|

\* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.

| **Transmittal of Communication to Third Party Requester Inter Partes Reexamination** | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/000,230 | 6563415 |
| | Examiner | Art Unit | |
| | Margaret Rubin | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.