# EXHIBIT D

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Jared S. Goff
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204

## Transmittal of Communication to Third Party Requester
### *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,226*.

PATENT NUMBER *6,351,205*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses

PTOL-2070 (Rev.07-04)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000226 | 04/19/07 | 6351205 | |

Brad A. Armstrong
P.O. BOX 2048
Carson City, NV 89702

| EXAMINER |
|---|
| Margaret Rubin |

| ART UNIT | PAPER |
|---|---|
| 3992 | |

DATE MAILED:

06/04/07

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

| ***ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION*** | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 95/000,226 | 6351205 | |
| | Examiner | Art Unit | |
| | Margaret Rubin | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):  ☐ PTO-892   ☒ PTO/SB/08   ☐Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

   ☐ An Office action is attached with this order.

   ☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

| **Transmittal of Communication to Third Party Requester Inter Partes Reexamination** | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 95/000,226 | 6351205 | |
| | Examiner | Art Unit | |
| | Margaret Rubin | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

Application/Control Number: 95/000,226                    Page 2
Art Unit: 3992

## DECISION GRANTING *INTER PARTES* REEXAMINATION

An Office action on the merits does not accompany this
order for *inter partes* reexamination.  An Office action on the
merits will be provided in due course.  Patent owner is reminded
that no proposed amendment may be made in this proceeding until
after the first Office action on the merits.  See 37 CFR
1.939(b).

Application/Control Number: 95/000,226                    Page 3
Art Unit: 3992

## I.) Summary

Substantial new questions of patentability affecting claims

1-5, 7 and 8[1] of United States Patent Number 6,351,205(hereafter

"the base patent") are raised by the request for *inter partes*

reexamination based on the following prior art references[2]:

1.) Great Britain Document 1 412 298 to Knox published November
5, 1975;

2.) Japanese Document 5-87760 to Furukawa published November 26,
1993 (hereafter "Furukawa '760");

3.) Mason, Switch Engineering Handbook (McGraw-Hill, Inc.
1993)(excerpts ch. 1, 6, 8-11) (hereafter, "Switch Engineering
Handbook");

4.) United States Patent No. Re. 34,095 to Padula published
October 12, 1992;

5.) Japanese Document S61-100844 published June 27, 1986 to
Kaneko;

6.) Japanese Document S61-103836 published July 2, 1986 to
Matsumoto; and

7.) United States Patent No. 5,164,697 to Kramer published
November 17, 1992.

---

[1] Although an SNQ was not raised for claims 6 and 9, they will be reexamined
as well as claims 1-5, 7 and 8.

Application/Control Number: 95/000,226                     Page 4
Art Unit: 3992

The above substantial new questions of patentability are
based in part on patents and/or printed publications already
cited/considered in an earlier concluded examination of the
patent being reexamined.  On November 2, 2002, Public Law 107-
273 was enacted. Title III, Subtitle A, Section 13105, part (a)
of the Act revised the reexamination statute by adding the
following new last sentence to 35 U.S.C. 303(a) and 312(a):

"The existence of a substantial new question of patentability
is not precluded by the fact that a patent or printed
publication was previously cited by or to the Office or
considered by the Office."

For any reexamination ordered on or after November 2, 2002,
the effective date of the statutory revision, reliance on
previously cited/considered art, i.e., "old art," does not
necessarily preclude the existence of a substantial new question
of patentability (SNQ) that is based exclusively on that old
art.  Rather, determinations on whether a SNQ exists in such an
instance shall be based upon a fact-specific inquiry done on a
case-by-case basis.

In the present instance, there exists an SNQ based solely
on Kramer and based in part on Furukawa '760.  A discussion of
the specifics now follows:

As discussed on pages 14 and 15 of the request, during the
prosecution history of the base patent, the prior art of record,
including Kramer, was viewed as lacking an analog or variable
output sensor together with snap-through tactile feedback (see
the Reasons for Allowance of October 12, 2001) although it
appears as if Kramer was at least formerly viewed as comprising
a variable conductance pressure sensitive sensor (see the Office
action of April 19, 2000) albeit specific details are lacking.
Further, the Patent Owner argued that Kramer lacked a teaching
of a dome shaped cap (see the response of January 29, 2001.)
However, the discussion of Kramer in the base patent prosecution
history does not include mention of Kramer at col. 1, lines 21-
51, col. 4, line 63 to col. 5, line 8 and col. 5, lines 36-50.
Consideration of these portions of Kramer does plausibly suggest
that Kramer may include a variable output sensor with snap-
through tactile feedback and a dome shaped cap.

Similarly, during the prosecution history of the base
patent, Furukawa '760 was never viewed in combination with the
Switch Engineering Handbook (a newly presented reference) as

Application/Control Number: 95/000,226                    Page 6
Art Unit: 3992

Furukawa and the Switch Engineering Handbook appears to provide

a teaching for a variable output sensor with snap-through

tactile feedback.

Insofar as the record does not reflect that the portions of

the text of Kramer that are relied upon in the request were

fully appreciated for all they suggest nor was the combination

of Furukawa '760 and the Switch Engineering Handbook considered,

the request successfully presents both Kramer and Furukawa '760

in a new light in contrast to how it was viewed during the

prosecution history of the base patent. *See Ex parte Chicago*

*Rawhide Mfg. Co., 223 USPQ 351 (Bd. Pat. App. & Inter. 1984).*

Application/Control Number: 95/000,226                          Page 7
Art Unit: 3992

## II.) Issues Raised by Requester

The Requester asserts that the cited references raise
substantial new questions of patentability when interpreted in
the following manner[3]:

1.) "Matsumoto, which was not cited, discloses variable sensors
with snap-through tactile feedback and anticipates claims 3 and
4 under 35 U.S.C. § 102."

2.) "Kaneko, which was not cited, discloses variable sensors
with snap-through tactile feedback and anticipates claims 3 and
4 under 35 U.S.C. § 102."

3.) "Knox, which was not cited, discloses variable sensors with
snap-through tactile feedback and anticipates claims 3 and 4
under 35U.S.C. § 102."

4.) "Kramer, which was cited but was mischaracterized by the
applicant as not including snap-through tactile feedback,
anticipates claims 1-5 and 7-8 under 35 U.S.C. § 102."

5.) "Furukawa '760, which was also cited but was also
mischaracterized by the applicant as not including snap-through

Application/Control Number: 95/000,226                    Page 8
Art Unit: 3992

tactile feedback, anticipates claims 1-5 and 7-8 under 35 U.S.C.
§ 102."

6.) "Claims 6 and 9 would have been obvious over Kramer in view
of Furukawa '760 and Kawashima."

7.) "Claims 6 and 9 would have been obvious over Furukawa '760
in view of Kawashima and Pepper."

8.) "Claims 5 and 7-8 would have been obvious over Kramer in
view of Furukawa '760."

9.) "Claims 1-5 and 7-8 would have been obvious over Furukawa
'760 in view of the Switch Engineering Handbook under 35 U.S.C.
§ 103." and

10.) "Claims 1-4 would have been obvious over Kramer in view of
Padula and Matsumoto under 35 U.S.C. § 103."

Application/Control Number: 95/000,226                    Page 9
Art Unit: 3992

### III.) Prosecution History

The base patent issued from United States Patent
Application 09/455,821 (hereafter "the base application".) The
base application is a continuation of United States Patent
Application 09/106,825 and a continuation of United States
Patent Application 08/677,378.  United States Patent Application
08/677,378 is a continuation in part of United States Patent
Application 08/393,459 and a continuation in part of United
States Patent Application 07/847,619.

A non-final Office action including a rejection of claims
1-6 under 35 USC 103(a) as being unpatentable over Kramer or
Kambric in view of Murata, a rejection of claim 7 under 35 USC
102(b) as being anticipated by Kambric and a rejection under the
judicially created doctrine of double patenting of claims 1-6
over claims 1-6 of U. S. Patent No. 5,999,084 was mailed for the
base application on April 19, 2000. It is noteworthy that this
former claim 1 was an apparatus claim and included limitations
drawn to the snap-through dome-cap and a variable output. In an
amendment received January 29, 2001, claims 1-7 were cancelled

requirement was mailed on May 3, 2001 which required election of
one of the following groups: Group I including claims 8-19,
Group II including claim 20 or Group III including claims 21-24.

In an amendment received May 29, 2001, Patent Owner called
for the election of Group III claims 21-24 and the cancellation
of claims 8-20; however, a Notice of Non-Compliant Amendment was
sent out in response on June 19, 2001 and Patent Owner complied
with its requirements by submitting another amendment on
September 5, 2001 which cancelled claims 8-24 and introduced new
claims 25-33. Claims 25-33 were all method claims and, of these,
claims 25, 27, 29 and 31 were independent claims. A Notice of
Allowance was mailed on October 12, 2001 accompanied with an
interview summary dated September 19, 2001, an examiner's
statement of reasons for allowance and examiner's amendment.
Claims 25-33 were renumbered as claims 1-9, respectively – the
same numbering that appears in the base patent.

The Examiner's Statement of Reasons for Allowance states:
"The claimed method of employing an analog or variable output
sensor with a snap tactile feedback is not disclosed or
suggested by the prior art of record."  The interview summary
includes a similar statement although it includes an error
insofar as it states that claim 30 would be amended to insert

ultimately amended instead by the Examiner's Amendment.
Further, claim 30 already included recitation of "snap-through
tactile feedback" by virtue of its dependency from claim 29.

     Thus, it is clear from the Examiner's Statement of Reasons
for Allowance and the interview summary included in the base
patent prosecution history that at the time of allowance, all of
the independent claims were perceived as including the
limitation of an "analog or variable output sensor with a snap
tactile feedback" and the base patent issued for that reason.
Accordingly, any reference or combination of references
including this teaching would raise a substantial new question
of patentability.

     Reviewing the prosecution history of parent application
09/106,825, one sees a similar reason for allowance on August 4,
1999 - "While digital and analog sensors are disclosed in
Mitchell, there is no suggestion to employ such a sensor with a
snap through dome cap where same is employed in digital
bistate/on-off devices in the prior art."  Further, it is noted
that an Examiner's amendment on August 4, 1999 was made to
clarify that the pressure-sensitive variable-conductance sensor
claimed was analog.

     The prosecution history of parent application 08/677,378 is

Application/Control Number: 95/000,226                    Page 12
Art Unit: 3992

Reexamination.   More particularly, an Examiner's Reasons for
Allowance was not included with a Notice of Allowance mailed
December 13, 2000; however, the preceding Office action mailed
August 31, 200 stated the following: "The prior art of record
does not teach or suggest placing an input member movable in at
least two axes and finger depressible buttons of claim
43/41/40/39138 or claim 51150149148 onto a flexible sheet."   In
a subsequent amendment received September 7, 2000, all of the
previously submitted claims were cancelled and new claims were
submitted wherein each of the independent claims included at
least one of the features mentioned in the indication of
allowable subject matter of August 31, 2000. Insofar as the base
patent claims do not include recitation of either  "an input
member movable in at least two axes" or a "flexible sheet" and
the prior art is rife with teachings of finger depressible
buttons (please see push button 1 of Matsumoto, for instance),
the prosecution history of parent application 08/677,378 is not
seen to be immediately germane as to whether the references or
combination of references presented in the instant Request for
Reexamination raise a substantial new question of patentability.

    Similarly, the claims of U.S. Patent Numbers 5,565,891 and
5,589,828 that issued from applications 08/393,459 and

Application/Control Number: 95/000,226                    Page 13
Art Unit: 3992

There is no claim of domestic priority from the base patent to
either 5,565,891 or 5,589,828.  Further, neither of these
patents include recitation of an analog or variable output
sensor with a snap tactile feedback. The prior art of record for
these patents are also not seen to be dispositive of whether the
references or combination of references presented in the instant
Request for Reexamination raise a substantial new question of
patentability.

Application/Control Number: 95/000,226                    Page 14
Art Unit: 3992

## IV) Analysis

Matsumoto, taken alone:

On pages 28-31 of the request, Requester presents arguments
that Matsumoto, taken alone, raises an SNQ with respect to
claims 3 and 4.  It is noted that Requester alleges that
Matsumoto teaches an analog or variable output sensor with a
snap tactile feedback.

To support this contention, Requester quotes from Matsumoto
at 1 and 2-3,4, respectively:

"The present invention relates to a variable resistance switch of which the on/off switching can be easily
recognized through the feeling of pressure on a fingertip and the resistance between two terminals can be
changed depending on how much the push button of the switch is pressed."

"The purpose of the present invention is to resolve the above problems with the prior art variable
resistance switch and to provide an excellent variable resistance switch in which a switchover point (click
point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes
switching from the off-state to the on-state in the course of the pressing operation, and the resistance
between two terminals is changed when the push button is further pressed."

The foregoing item-matching provided by Requester does
indeed plausibly suggest that Matsumoto teaches an analog or
variable output sensor with a snap tactile feedback. As
discussed in section III devoted to the prosecution history of

including such teachings do raise an SNQ at least for an
independent claim such as claim 3.

    With regard to claim 4, Requester relies heavily on the
principle of inherency in asserting that Matsumoto teaches a
second tactile snap-through feedback.  Such a teaching would
also raise an SNQ insofar as the prosecution history indicates
that the base patent was allowed because the prior art of record
was not seen as including a teaching of variable output sensor
with a snap tactile feedback. Through deductive reasoning, one
can fairly draw the conclusion that if the prior art of record
during the prosecution was seen as failing to teach a variable
output sensor with a snap tactile feedback, then it also was not
seen as teaching a variable output sensor with a second snap
tactile feedback where the latter conclusion is only a
particular case of the first generality.

    To support the contention that Matsumoto teaches a second
tactile snap-through feedback, Requester relies on the same
quotes provided with regard to claim 3.  It is agreed that
mention within Matsumoto of "a feeling of pressure" with regard
to off switching does suggest at least the "receiving of said
second snap-through tactile feedback" (where on switching
represents the first snap-through tactile feedback), and,

Application/Control Number: 95/000,226                    Page 16
Art Unit: 3992

of inherency.  However, a decision regarding whether the

evidence is sufficient to support a rejection will not be made

until the next Office action.

Despite the fact that Requester's allegation that Matsumoto

raises an SNQ for claims 3 and 4 relies on the theory of

inherency and the question of whether the Office will adopt that

position has not been decided, insofar as evidence was offered

to support Requester's assertions, a reasonable examiner would

consider it important to consider Matsumoto in relation to

claims 3 and 4.

The teachings of Matsumoto are not cumulative to the

teachings of the prior art discussed on the record in relation

to claims 3 and 4.  Further, they were not previously considered

nor addressed in the same light during the prior examination or

a final holding of invalidity by Federal Courts and a reasonable

examiner would consider the teachings to be important in

deciding whether or not to allow claims 3 and 4.


Kaneko, taken alone:


On pages 31-33 of the request, Requester presents arguments

that Kaneko, taken alone, raises an SNQ with respect to claims 3

Application/Control Number: 95/000,226          Page 17
Art Unit: 3992

an analog or variable output sensor with a snap tactile

feedback.

    To support this contention, Requester quotes from the

Kaneko translation at 1, 2 and 7, respectively:


The present invention relates to a variable resistance switch in which on/off switching can be easily recognized through the feeling of pressure on a fingertip and the resistance between two terminals can be changed depending on how far the push button of the switch is pressed.

The purpose of the present invention is to resolve the above problems with the prior art variable resistance switch and to provide an excellent variable resistance switch in which a switchover point (click point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes the switching from the off-state to the on-state in the course of the pressing operation.

With the push button 1 being further pressed, the pressure-sensitive electro-conductive rubber 6 is compressed and has reduced resistance, which gradually reduces the resistance between the terminals 7A and 7B. When pressing is discontinued, the restoration of the elastic electro-conductive curved plate 3 pushes up the push button 1 and the elastic electro-conductive curved plate 3 returns to the no-load state so that it is no longer in contact with the pressure-sensitive electro-conductive rubber 6, with the resistance between the terminals 7A and 7B reaching an infinite value.


    The foregoing item-matching provided by Requester does

indeed plausibly suggest that Kaneko teaches an analog or

variable output sensor with a snap tactile feedback. As

discussed in section III devoted to the prosecution history of

the base patent, a prior art reference or combination of

references including such teachings do raise an SNQ at least for

an independent claim such as claim 3.

    As was the circumstance with Matsumoto discussed above with

regard to claim 4, Requester relies heavily on the principle of

snap-through feedback.  Such a teaching would also raise an SNQ
insofar as the prosecution history indicates that the base
patent was allowed because the prior art of record was not seen
as including a teaching of variable output sensor with a snap
tactile feedback. Through deductive reasoning, one can fairly
draw the conclusion that if the prior art of record during the
prosecution was seen as failing to teach a variable output
sensor with a snap tactile feedback, then it also was not seen
as teaching a variable output sensor with a second snap tactile
feedback where the latter conclusion is only a particular case
of the first generality.

To support the contention that Kaneko teaches a second
tactile snap-through feedback, Requester relies on the same
quotes provided with regard to claim 3.  It is agreed that
mention within Kaneko of "a feeling of pressure" with regard to
off switching does suggest at least the "receiving of said
second snap-through tactile feedback" (where on switching
represents the first snap-through tactile feedback), and,
accordingly, there is evidence to support requester's allegation
of inherency.  However, a decision regarding whether the
evidence is sufficient to support a rejection will not be made
until the next Office action.

Application/Control Number: 95/000,226                     Page 19
Art Unit: 3992

    Despite the fact that Requester's allegation that Kaneko
raises an SNQ for claims 3 and 4 relies on the theory of
inherency and the question of whether the Office will adopt that
position has not been decided, insofar as evidence was offered
to support Requester's assertions, a reasonable examiner would
consider it important to consider Kaneko in relation to claims 3
and 4.

    The teachings of Kaneko are not cumulative to the teachings
of the prior art discussed on the record in relation to claims 3
and 4.  Further, they were not previously considered nor
addressed in the same light during the prior examination or a
final holding of invalidity by Federal Courts and a reasonable
examiner would consider the teachings to be important in
deciding whether or not to allow claims 3 and 4.


Knox, taken alone:


    On pages 34-36 of the request, Requester presents arguments
that Knox, taken alone, raises an SNQ with respect to claims 3
and 4.  It is noted that Requester alleges that Knox teaches an
analog or variable output sensor with a snap tactile feedback.

Application/Control Number: 95/000,226                    Page 20
Art Unit: 3992

　　To support this contention, Requester quotes from the Knox at 3, lines 98-115[4] and at 4, lines 30-33, respectively, as follows:

　Depression of the key bearing the number 1, for example, cause [sic] compression of the part of the foam on which the conductive tracks connected to terminals D and E are positioned. Compression of the foam by an overlying key results in the conductive tracks underlying the key being brought into contact with the conductive layer 14. The resistance on contact decreases with increased pressure on the key and in an experimental keyboard was found to be 100 k for 40 Z, 50 k for 80 Z and 15 k for 16 OZ. The spacer ensures infinite resistance when the key is underpressed. Thus, a resistance drop is observed between terminal D and layer 14, and between terminal E and layer 14 when the key bearing the number '1' is depressed.

If desired, each key can be arranged to act against a metal spring so that a snap-action and an audible 'click' is obtained on depressing the key.

　　Insofar as the above quotes do not expressly mention an analog or variable sensor or the operation of the same in direct terms, Requester again relies on the theory of inherency.　While a decision regarding whether sufficient evidence has been presented to accept Requester's assertion will not be made until the next Office action, it is noted that Requester has provided evidence such that a reasonable examiner would consider it important to consider Knox in relation to claim 3. The teachings of Knox are not cumulative to the teachings of the prior art discussed on the record in relation to claim 3.　Further, they were not previously considered nor addressed in the same light during the prior examination or a final holding of invalidity by Federal Courts.

Application/Control Number: 95/000,226                    Page 21
Art Unit: 3992

In contrast, Requester's arguments do not provide
sufficient evidence that Knox raises an SNQ with regard to claim
4.   More particularly, the limitations of claim 4 hinge on the
requirement of claim 3 of a second snap-through tactile
feedback.   Although it is possible that such feedback is
inherent, Requester has not provided logical reasoning to
support such a conclusion.   More particular, Requester item-
matches a second snap-through tactile feedback to Knox at 3,
lines 98-115 but no discussion of the same is seen to be
present.   That said, Knox remains available for use in a
rejection of claim 4, or any other suitable use, if it is later
viewed in a different light than the manner it has been
presented in the request.

Kramer, taken alone:


On pages 36-44 of the request, Requester presents arguments
that Kramer, taken alone, raises an SNQ with respect to claims
1-5 and 7-8.   It is noted that Requester alleges that Kramer
teaches an analog or variable output sensor with a snap-through
tactile feedback as recited in independent claims 1, 3 and 5 and

Application/Control Number: 95/000,226                    Page 22
Art Unit: 3992

dependent claim 8.   Independent claim 7 only requires an analog

sensor with snap tactile feedback.

    To support this contention, Requester quotes from Kramer at

col. 4, line 63 to col. 5, line 8 and col. 5, lines 36-50,

respectively:

The pressure-dependent contact resistance between the contact surface 18 of the carbonized plastic foil and the contact surfaces 15.1 and 15.2 of the contact linings 11.1 and 11.2 of the conductor strips 12.1 and 12.2 of the printed circuit board 10 is schematically indicated in FIG. 2 by means of the resistances Rk(P) controlled by a pressure P. These resistances diminish linearly as the contact pressure increases, the linear relationship being preserved over a range of two to three powers of ten. This contact pressure is constituted by the operating pressure P acting on the pushbutton 22, since the spring element 20 transfers this pressure to the contact surface 18 of the carbonized plastic foil 14.

In another advantageous embodiment of such an input keyboard that is not illustrated in the drawing attached hereto, the spring element 20 is attached to the ceiling surface of a rubber dome of a contact mat that is arranged between the bottom 27 of a pushbutton 22 and the said spring element 20. Like the thin insulating plate in the previous embodiment, the rubber dome bears against the printed circuit board 10 and, upon the depression of the appropriate pushbutton 22, will first actuate a switching process with a snap effect and subsequently permit pressure-dependent adjustment of a function variable.

    The foregoing item-matching provided by Requester does

indeed plausibly suggest that Kramer teaches an analog or

variable output sensor with a snap tactile feedback. As

discussed in section III devoted to the prosecution history of

the base patent, a prior art reference or combination of

references including such teachings do raise an SNQ at least for

claims requiring an analog or variable output sensor with snap

tactile feedback such as claims 1, 3, 5, 7 and 8.

    The teachings of Kramer are not cumulative to the teachings

Application/Control Number: 95/000,226                    Page 23
Art Unit: 3992

1, 3, 5, 7 and 8.  Further, they were not previously considered

nor addressed in the same light during the prior examination or

a final holding of invalidity by Federal Courts and a reasonable

examiner would consider the teachings to be important in

deciding whether or not to allow claims 1, 3, 5, 7 and 8.

It is not agreed; however, that Kramer raises an SNQ with

respect to claims 2 and 4.  The request asserts that many of the

limitations of such claims are inherently taught by Kramer but

provides no evidence or convincing arguments to buttress the

generalizations made regarding, for example, why Kramer

necessarily includes the second and third snap-through feedback

recited in claim 2 or the second snap-through feedback recited

in claim 4.  Accordingly, it is not agreed that Kramer raises an

SNQ for claims 2 and 4; however, Kramer remains available for

use in a rejection of claims 2 and 4, or any other suitable use,

if it is later viewed in a different light than the manner it

has been presented in the request.


Furukawa '760, taken alone


On pages 44-52 of the request, Requester presents arguments

that Furukawa '760, taken alone, raises an SNQ with respect to

To reiterate, the prosecution history of the base patent
reflects that <u>both</u> the limitations of an analog or variable
output sensor and snap tactile feedback in combination were
determinant in allowing the base patent application (see section
III.) It is not agreed that Furukawa '760, taken alone, raises
an SNQ with respect to claims 1-5, 7 and 8 based on the
rationale presented in the request.  More particularly, for each
of independent claims 1, 3, 5 and 7 and dependent claim 8,
Requester argues that snap or snap-through tactile feedback is
inherently present; however, neither a convincing line of
reasoning nor evidence is provided to support this assertion.
Rather, a bare assertion is made that the components of Furukawa
'760 operate such that the feedback prescribed by the
independent claims is produced.

Similarly, Requester relies on the theory of inherency in
alleging that Furukawa '760 teaches a second and third snap-
through tactile feedback as required by claim 2 and a second and
another tactile feedback as required by claim 4 but bare
assertions are again put forward that cannot take the place of
logical reasoning or evidence. A decision is not made herein
regarding whether snap or snap-through tactile feedback is
inherently present - that determination will be included in the

drawn to that issue that are included in the request are

insufficient for Furukawa '760, taken alone, to raise an SNQ for

claims 1-5, 7 and 8.


Kramer in view of Furukawa '760 and Kawashima:


On pages 52 and 53 of the request, Requester presents

arguments that Kramer in view of Furukawa '760 raises an SNQ

with respect to claims 6 and 9.

It is not agreed that Kramer in view of Furukawa '760 and

Kawashima raises an SNQ with respect to claims 6 and 9 based on

the discussion included in the request. More particularly,

Kramer is relied upon only to teach the limitations of claims 5

and 8 from which claims 6 and 9, respectively, depend. It is

noted that Requester points out the Furukawa does teach changing

the speed of a character in a video game according to the

magnitude of a pressing force but United States Patent No.

5,287,089 to Parsons, already of record, includes a similar

teaching (see discussion of the cursor speed in the abstract,

for instance.) While the teaching of Furukawa '760 of varying

the speed of a character may well be functionally equivalent to

varying firing speed, it is nonetheless cumulative to the

Application/Control Number: 95/000,226                    Page 26
Art Unit: 3992

Also, Requester does not state where Kawashima discloses
varying firing speed.  Further, a review of Kawashima reflects
that nothing is explicitly disclosed about varying firing speed
(there is disclosure that the prior art had the drawback of
being limited to a single shot) and Requester did not argue that
the same is inherent. A decision is not made here regarding
whether such teaching is inherent but, if appropriate, the
question may be revisited in future Office actions. Insofar as
the request does not provide evidence or logical reasoning to
support the position that Kawashima inherently teaches varying
firing speed, based on the request, Kawashima at least facially
appears to be cumulative to Parsons.


        Furukawa '760 in view of Kawashima and Pepper:


    On pages 53-55 of the request, Requester presents arguments
that Furukawa '760 in view of Kawashima and Pepper raises an SNQ
with respect to claims 6 and 9.

    It is not agreed that Furukawa '760 in view of Kawashima
and Pepper raises an SNQ with respect to claims 6 and 9.  More
particularly, Furukawa '760 is relied upon only to teach the
limitations of claims 5 and 8 from which claims 6 and 9.

'760 fails to raise an SNQ with respect to claims 5 and 8.  It
is noted that Requester points out the Furukawa does teach
changing the speed of a character in a video game according to
the magnitude of a pressing force but United States Patent No.
5,287,089 to Parsons, already of record, includes a similar
teaching (see discussion of the cursor speed in the abstract,
for instance.) While the teaching of Furukawa '760 of varying
the speed of a character may well be functionally equivalent to
varying firing speed, it is nonetheless cumulative to the
similar teaching of Parsons.  Also, Requester does not state
where Kawashima and Pepper disclose varying firing speed.
Further, a review of Pepper and Kawashima reflects that nothing
is explicitly disclosed about varying firing speed (there is
disclosure that the prior art had the drawback of being limited
to a single shot in Kawashima and disclosure of multiple shots
in Pepper) and Requester did not argue that the same is
inherent. A decision is not made here regarding whether such
teaching is inherent in Kawashima and Pepper but, if
appropriate, such questions may be revisited in future Office
actions. Insofar as the request does not provide evidence or
logical reasoning to support the position that Kawashima and
Pepper inherently teach varying firing speed, based on the

request, Kawashima and Pepper at least facially appear to be
cumulative to Parsons.

Kramer in view of Furukawa '760:

On page 55 of the request, Requester presents arguments
that Kramer in view of Furukawa '760 raises an SNQ with respect
to claims 5 and 7-8.

While Kramer, taken alone, does raise an SNQ with respect
to claims 5 and 7-8, as stated above, it is not agreed that
Furukawa raises an SNQ for claims 5 and 7-8, even when it is
used to supplement the teachings of Kramer. More particularly,
Furukawa '760 is relied upon only as a teaching of a variable
output sensor *to control an electronic game*. However, United
States Patent No. 5,689,285 to Asher, already of record,
includes a similar teaching (see discussion of a resistive
membrane sensor having a pressure-variable resistor used for
video games in the abstract, for instance.) Thus, based on the
arguments put forth in the request, the teaching within Furukawa
'760 of a variable output sensor to control an electronic game
is cumulative to teachings already of record.

Furukawa '760 in view of the Switch Engineering Handbook:

On pages 56-66 of the request, Requester presents arguments
that Furukawa '760 in view of the Switch Engineering Handbook
raises an SNQ with respect to claims 1-5 and 7-8.

It is noted that Requester alleges that Figure 11.5 of the
Switch Engineering Handbook teaches a dome cap that resembles
the dome cap of Furukawa '760 yet possesses snap-through tactile
feedback as recited in independent claims 1, 3 and 5 and
dependent claim 8. Independent claim 7 only requires an analog
sensor with snap tactile feedback.

To support this contention, Requester quotes the Switch
Engineering Handbook at 11.14 regarding the "tactile feel" of
switches with high snap ratios and paraphrases a description of
the desirability of good tactile feel at 1.48-1.49.

The foregoing item-matching provided by Requester does
indeed plausibly suggest that the Switch Engineering Handbook
teaches snap-through tactile feedback and it also plausibly
suggests that one of ordinary skill in the art would be
motivated to combine such teaching with the teachings of a
variable output sensor from Furukawa '760. As discussed in
section III devoted to the prosecution history of the base

including such teachings do raise an SNQ at least for claims
requiring an analog or variable output sensor with snap tactile
feedback such as claims 1, 3, 5, 7 and 8.

Accordingly, it is agreed that Furukawa '760 in view of the
Switch Engineering Handbook raises an SNQ with respect to claims
1, 3, 5, 7 and 8. The teachings of Furukawa '760 in view of the
Switch Engineering Handbook are not cumulative to the teachings
of the prior art discussed on the record in relation to claims
1, 3, 5, 7 and 8.  Further, they were not previously considered
nor addressed in the same light during the prior examination or
a final holding of invalidity by Federal Courts and a reasonable
examiner would consider the teachings to be important in
deciding whether or not to allow claims 1, 3, 5, 7 and 8.

It is not agreed; however, that Furukawa '760 in view of
the Switch Engineering Handbook raises an SNQ with respect to
claims 2 and 4.  The request does not provide item-matching nor
does it otherwise specifically address the second and third
snap-through feedback of claim 2 or the second snap-through
feedback of claim 4.  While the question of whether such
features may at least be inherent within Furukawa '760 or the
Switch Engineering Handbook will not be decided herein, insofar
as Requester provides no evidence or convincing arguments to

Application/Control Number: 95/000,226                    Page 31
Art Unit: 3992

view of the Switch Engineering Handbook, as presented in the

request, raise an SNQ for claims 2 and 4.  Both references

remain available for use in a rejection of claims 2 and 4, or

any other suitable use, if they are later viewed in a different

light.


Kramer in view of Padula and Matsumoto:


       On page 55 of the request, Requester presents arguments

that Kramer in view of Padula and Matsumoto raises an SNQ with

respect to claims 1-4.

       Insofar as Kramer, taken alone, does raise an SNQ with

respect to claims 1 and 3, as stated above, it is superfluous to

supplement the teachings of Kramer with the teachings of Padula

and Matsumoto in this respect.  However, insofar as Kramer was

not found to raise an SNQ with respect to claims 2 and 4

(supra), Requester's allegation that both Padula and Matsumoto

teach a second snap-through tactile feedback is a relevant

issue.

       To be specific, the prosecution history indicates that the

base patent was allowed because the prior art of record was not

snap tactile feedback. Through deductive reasoning, one can
fairly draw the conclusion that if the prior art of record
during the prosecution was seen as failing to teach a variable
output sensor with a snap tactile feedback, then it also was not
seen as teaching a variable output sensor with a second snap
tactile feedback where the latter conclusion is only a
particular case of the first generality.

Requester argues that Padula and Matsumoto teach a second
snap-through tactile feedback.  This feature has already been
discussed herein with respect to Matsumoto where it was decided
that at least some evidence has been provided that Matsumoto
does indeed teach this feature (supra.) With regard to Padula,
Requester quotes the following text from column 9, lines 30-32:
"When pressure is removed from the stylus tip, the dome snaps
back to its original undeformed state, ready for the next
operation." The foregoing item-matching provided by Requester
does indeed plausibly suggest that Padula teaches a second snap-
through tactile feedback.  Further, insofar as Requester has
provided a motivation to combine either Padula or Matsumoto with
Kramer, a reasonable examiner would consider it important to
consider the combination of Kramer in view of Padula and
Matsumoto in relation to claims 2 and 4.

Application/Control Number: 95/000,226                          Page 33
Art Unit: 3992

The teachings of Kramer in view of Padula and Matsumoto are not cumulative to the teachings of the prior art discussed on the record in relation to claims 2 and 4. Further, they were not previously considered nor addressed in the same light during the prior examination or a final holding of invalidity by Federal Courts and a reasonable examiner would consider the teachings to be important in deciding whether or not to allow claims 2 and 4.

Application/Control Number: 95/000,226                    Page 34
Art Unit: 3992


## V.) Conclusion


### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to
provide that:

The patent owner's correspondence address for all communications
in an *ex parte* reexamination or an *inter partes* reexamination is
designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting*
> *Requirements for Ex Parte and Inter Partes*
> *Reexamination*, 72 FR 18892 (April 16, 2007)(Final
> Rule)

**The correspondence address for any pending reexamination**
**proceeding not having the same correspondence address as that of**
**the patent is, by way of this revision to 37 CFR 1.33(c),**
**automatically changed to that of the patent file as of the**
**effective date.**

This change is effective for any reexamination proceeding which
is pending before the Office as of May 16, 2007, including the
present reexamination proceeding, and to any reexamination
proceeding which is filed after that date.

Parties are to take this change into account when filing papers,
and direct communications accordingly.

In the event the patent owner's correspondence address listed in
the papers (record) for the present proceeding is different from
the correspondence address of the patent, it is strongly
encouraged that the patent owner affirmatively file a
Notification of Change of Correspondence Address in the
reexamination proceeding and/or the patent (depending on which
address patent owner desires), to conform the address of the

Application/Control Number: 95/000,226                    Page 35
Art Unit: 3992

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice        (571) 272-7703
Central Reexam Unit (CRU)                   (571) 272-7705
Reexamination Facsimile Transmission No.    (571) 273-9900

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes* reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 314(c) requires that *inter partes* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937).  Patent owner extensions of time in *inter partes* reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute.  35 U.S.C. 314(b)(3).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the base patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any

Application/Control Number: 95/000,226                    Page 36
Art Unit: 3992

such activity or proceeding throughout the course of this

reexamination proceeding. See MPEP § 2686 and 2686.04.

Please mail any communications to:

Attn: Mail Stop "Inter Partes Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA    22313-1450

Please FAX any communications to:

(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:

Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Application/Control Number: 95/000,226                    Page 37
Art Unit: 3992

Any inquiry concerning this communication or as to the status of
this proceeding, should be directed to the Central Reexamination
Unit at telephone number (571) 272-7705.

Margaret Rubin
Primary Examiner
Central Reexamination Unit 3992

Conferees:

**MARK J. REINHART**
**SPRE-AU 3992**
**CENTRAL REEXAMINATION UNIT**

95/000,226

| INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART | Attorney Docket Number | 6620-76454-10 |
|---|---|---|
| | Patent Number | 6,351,205 |
| | Reexam Control Number | 95/000,226 |
| | Reexam Filing Date | Pending |
| | In re Application of | Brad A. Armstrong |

### U.S. PATENT DOCUMENTS

Copies of U.S. Patent documents do not need to be provided, unless requested by the Patent and Trademark Office. For patents, provide the patent number and the issue date. For published U.S. applications, provide the publication number and the publication date. For unpublished pending patent applications, provide the application number and the filing date.

| Examiner's Initials* | Cite No. (optional) | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|
| MR | | Re. 34,095 | October 13, 1992 | Padula |
| MR | | 4,353,552 | October 12, 1982 | Pepper |
| MR | | 5,164,697 | November 17, 1992 | Kramer |
| | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| MR | | Great Britain | 1 412 298 | November 5, 1975 | Knox |
| MR | | Japan | 5-87760 | November 26, 1993 | Furukawa |
| MR | | Japan | H1-40545 | December 4, 1989 | Kawashima |
| MR | | Japan | S61-100844 | June 27, 1986 | Kaneko |
| MR | | Japan | S61-103836 | July 2, 1986 | Matsumoto |
| | | | | | |

| Examiner's Initials* | Cite No. (optional) | OTHER DOCUMENTS | | |
|---|---|---|---|---|
| MR | | Mason, Switch Engineering Handbook (McGraw-Hill, Inc. 1993) (excerpts, ch. 1, 6, 8-11) | | |
| | | | | |

| EXAMINER SIGNATURE: | | DATE CONSIDERED: | 5/10/07 |
|---|---|---|---|

\* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.