

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,214 | 04/24/07 | 6,347,997 | |

BRAD A. ARMSTRONG
P.O. BOX 2048
CARSON CITY, NV 89702

| EXAMINER |
|---|
| FLANAGAN, B. |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

07/17/07

## *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.



IT IS NOTED THAT IN THE REQUEST FOR REEXAMINATION FILED BY 3RD PTY REQUESTER, THE ADDRESS OF AN ASSIGNEE, ANASCAPE, LTD, AND COUNSEL FOR THE ASSIGNEE, LUKE FLEMING McELROY, IS LISTED. HOWEVER, UNTIL SUCH TIME AS A PROPERLY EXECUTED POWER OF ATTORNEY AND/OR CHANGE OF CORRESPONDENCE ADDRESS IS FILED BY THE PATENT OWNER, ALL CORRESPONDENCE WILL BE MAILED TO THE PATENT OWNER AT THE ADDRESS OF RECORD WITH THE USPTO. SEE MPEP § 2224 AND 37 CFR 1.33(c).

A COURTESY COPY OF THIS COMMUNICATION IS BEING SENT TO ANASCAPE LTD, c/o BRAD ARMSTRONG, 16487 JOSEPH ROAD, TYLER TX 75707. ALL FURTHER COMMUNICATIONS WILL BE DIRECTED SOLELY TO THE ADDRESS OF RECORD.

PTOL-2071 (Rev.07-04)

SPQE, AU 3993

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

JOSEPH T. JAKUBEK, ESQ.
KLARQUIST SPARKMAN, LLP
121 SW SALMON STREET
SUITE 1600
PORTLAND, OR 97204

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,214*.

PATENT NUMBER *6,347,997*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| *OFFICE ACTION IN* INTER PARTES *REEXAMINATION* | Control No. 95/000,214 | Patent Under Reexamination 6347997 | |
|---|---|---|---|
| | Examiner Beverly M. Flanagan | Art Unit 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on _____

## RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

## PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

## PART II.  SUMMARY OF ACTION:

1a. ☒ Claims <u>32-37</u> are subject to reexamination.

1b. ☒ Claims <u>1-31 and 38-51</u> are not subject to reexamination.

2. ☐ Claims _____ have been canceled.

3. ☐ Claims _____ are confirmed. [Unamended patent claims]

4. ☐ Claims _____ are patentable. [Amended or new claims]

5. ☒ Claims <u>32-37</u> are rejected.

6. ☐ Claims _____ are objected to.

7. ☐ The drawings filed on _____    ☐ are acceptable    ☐ are not acceptable.

8. ☐ The drawing correction request filed on _____ is:    ☐ approved.  ☐ disapproved.

9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
    ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No <u>95000214</u>.

10. ☐ Other _____

Application/Control Number: 95/000,214                                          Page 2
Art Unit: 3993

## DETAILED ACTION

This first action on the merits is being mailed with the order granting

reexamination.


### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or

declarations, or other documents as evidence of patentability, such documents must be

submitted in response to this Office action.  Submissions after the next Office action,

which is intended to be an Action Closing Prosecution (ACP), will be governed by 37

CFR 1.116(b) and (d), which will be strictly enforced.


### *Statutory Basis for Grounds of Rejections – 35 USC §§ 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Application/Control Number: 95/000,214                                    Page 3
Art Unit: 3993

### *Third Party Requester's Grounds of Rejection*

**Ground #1.**  The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Furukawa '760.

**Ground #2.**  The requester submits that claims 32 and 33 of Armstrong '997 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by O'Mara.

**Ground #3.**  The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Furukawa '217.

**Ground #4.**  The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760.

**Ground #5.**  The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Switch Engineering Handbook.

**Ground #6.**  The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer.

**Ground #7.**  The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Mitsuhashi.

**Ground #8.**  The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Padula.

Application/Control Number: 95/000,214                                    Page 4
Art Unit: 3993

     **Ground #9.**  The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Himoto.

     **Ground #10.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Thorner.

     **Ground #11.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of CyberMan.

     **Ground #12.** The requester submits that claim 37 of Armstrong '997 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Inoue.

     **Ground #13.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of CyberMan and further in view of Switch Engineering Handbook.

     **Ground #14.** The requester submits that claim 37 of Armstrong '997 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer and further in view of Inoue.

     **Ground #15.** The requester submits that claims 32-34[1] of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara.

---

[1] In the replacement request, at page 74, requester states that claims 32-37 are unpatentable under 35 U.S.C. § 103(a) as being obvious over the O'Mara reference.  However, Appendix B, at page 9, indicates that claims 35-37 are not considered to rejected under O'Mara alone. Indeed, the subject matter of claim 35 – a resilient dome cap – is not

Application/Control Number: 95/000,214                                    Page 5
Art Unit: 3993

**Ground #16.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of

Kramer.

**Ground #17.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of

Mitsuhashi.

**Ground #18.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of Padula.

**Ground #19.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of Himoto.

**Ground #20.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of

Thorner.

**Ground #21.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of

CyberMan.

**Ground #22.** The requester submits that claims 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of Kramer

and further in view of CyberMan.

---

taught by O'Mara.  Accordingly, the examiner has assumed that requester intended for only claims 32-34 to be
considered as rejected under 35 U.S.C. § 103(a) as being obvious over O'Mara.

Application/Control Number: 95/000,214                                      Page 6
Art Unit: 3993

**Ground #23.** The requester submits that claim 37 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over O'Mara in view of Kramer

and further in view of Inoue.

**Ground #24.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217.

**Ground #25.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of

Switch Engineering Handbook.

**Ground #26.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of

Mitchell.

**Ground #27.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of

Matsumoto.

**Ground #28.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of

Kramer.

**Ground #29.** The requester submits that claims 34, 36 and 37 of Armstrong '997

are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in

view of Mitsuhashi.

**Ground #30.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of Padula.

**Ground #31.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of Himoto.

**Ground #32.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of Thorner.

**Ground #33.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of CyberMan.

**Ground #34.** The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of CyberMan and further in view of Switch Engineering Handbook.

**Ground #35.** The requester submits that claims 35-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '217 in view of Matsumoto and further in view of Kramer.

**Ground #36.** The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of Furukawa '760.

Application/Control Number: 95/000,214                                          Page 8
Art Unit: 3993

**Ground #37.** The requester submits that claims 32-36 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Matsumoto.

**Ground #38.** The requester submits that claims 32-36 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Kramer.

**Ground #39.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Himoto.

**Ground #40.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Thorner.

**Ground #41.** The requester submits that claim 34 of Armstrong '997 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

CyberMan.

**Ground #42.** The requester submits that claims 34 and 36 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Matsumoto and further in view of Padula.

**Ground #43.** The requester submits that claims 34 and 36 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Furukawa '760 and further in view of Mitsuhashi.

Application/Control Number: 95/000,214                                                     Page 9
Art Unit: 3993

**Ground #44.** The requester submits that claims 32-37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Kawashima in view of

Matsumoto and further in view of Furukawa '760.


## *PROPOSED THIRD PARTY REQUESTER'S REJECTIONS*

**Proposed Third Party Requester Rejection: Ground #1**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 102(b) as being anticipated by Furukawa '760.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 102(b) as being

anticipated by Furukawa '760.  *In regard to claims 32 and 34-37,* Furukawa '760

teaches a device for controlling video game imagery comprised of a controller 10 that is

connected to a video game machine via a cable 11 and includes a cross shaped key 12

for vertically and horizontally moving characters on the screen (see Fig. 1 and

paragraph 8 of the accompanying translation).  A rubber contact point 29 on the cross

shaped key 12 is formed from elastic rubber material and a moving part 30 is disposed

onto the center of each cross shaped key 12 (see Fig. 2 and paragraph 9 of the

accompanying translation).  Moving contact 32 is formed of conductive rubber and is

disposed on the bottom end of each moving part 30, and conductive part 33, whose

resistance varies with pressure, is attached to the bottom end surface of moving contact

32  (see Fig. 2 and paragraph 9 of the accompanying translation).  By performing the

depressing operation, moving part 30 is lowered while being resisted by the elastic bias

of elastic let part 31 so that it is electrically connected to fixed contacts 7 and 7 on a

wiring pattern disposed on substrate 5 (see Fig. 2 and paragraph 9 of the

accompanying translation). The pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation). This elastic bias would be felt as a mechanical resistance

by the user, who is applying pressing force on the button with a fingertip, thus providing

active tactile feedback[2] (see paragraph 10 of the accompanying translation). *In regard*

*to claim 33,* Furukawa '760 also discloses placing analog sensors below each of the

four directional sections of a cross key in a game controller, each of which is attached to

the output circuit to control movement of a game character in one direction, allowing for

a user to vertically and horizontally move characters on a screen (see paragraph 8 of

the accompanying translation). *In regard to claim 37,* Furukawa '760 states that

additional sensors may be used in other locations on the controller, other than in the

cross keys, which inherently includes placing the sensors in an array that is located in a

right hand area of a housing, as shown in Fig. 1 of Furukawa '760 (see also paragraph

9 of the accompanying translation).

---

[2] The examiner agrees with the following assessment by third party requester: "It is not clear from the '997 patent specification what applicant means by 'active tactile feedback'. Applicant's attempts to incorporate his prior-issued patent, U.S. Pat. No. 6,222,525, for 'break-over and active tactile feedback and the like described therein.'

Application/Control Number: 95/000,214                                    Page 11
Art Unit: 3993

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '760 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #2**

The requester submits that claims 32 and 33 of Armstrong '997 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by O'Mara.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 102(b) as being anticipated by O'Mara. *In regard to claim 32,* O'Mara teaches a device for controlling imagery comprised of a piezoeletric element, such as a force sensitive resistor, to sense pressure applied to a button and provide an analog output related to the magnitude of the force applied (see col. 2, lines 10-12, col. 3, lines 51-53 and Figs. 1-5 and 7-9). O'Mara further discloses that the device may be used as an analog push-button, which would be operated by a fingertip (see col. 7, lines 49-50 and col. 8, lines 42-45). O'Mara teaches that pad 50 and spring 60 are used to provide mechanical resistance or 'feel' to the device 10 as the user applied force to disk 40, which would constitute active tactile feedback to the user[3] (see col. 4, lines 31-33). O'Mara further teaches that as the conductive foam is compressed, it will complete the circuit of the circuit traces and provide an output voltage varying with the compression of the foam (see col. 2, lines 48-51). *In regard to claim 33*, O'Mara teaches an output circuit connected to at least four

---

However, upon review, the '525 patent fails to set forth any specific means for providing 'active tactile feedback' other than possibly a dome cap." (see Appendices A-D of the replacement request, filed April 24, 2007).
[3] *Id.*

piezoresistive elements where the output circuit provides signals representative of the

sensed force (see col. 8, lines 43-45).

This rejection of claims 32 and 33 of Armstrong '997 based on O'Mara was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #3**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 102(b) as being anticipated by Furukawa '217.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 102(b) as being

anticipated by Furukawa '217. *In regard to claims 32-37*, Furukawa '217 teaches a

switch in a computer keyboard to allow the scroll rate, cursor moving speed and

character reaction speed in computer games to be controlled according to the intention

of a user (see paragraph 11 of the accompanying translation).  Furukawa '217 also

teaches a pressure-sensitive variable resistor 1 and abuts secure contact points 9 and

10 where the contact pressure between carbon powder particles is increased by the

applied pressure and anisotropic conductivity established between the secure contact

points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).  The resistance of

the pressure-sensitive variable resistor 1 is changed according to the applied pressure

so that the voltage between the secure contact points 9 and 10 can be manually and

arbitrarily controlled (see abstract).  When the elastic rubber of rubber key top 6 is

pressed down, the pressure-sensitive variable resistor 1 makes contact with the two

secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation).  Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation).   The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip.  The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[4]

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #4**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being obvious over Furukawa '760.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

obvious over Furukawa '760.   *In regard to claims 32 and 34-37*, Furukawa '760 teaches

a device for controlling video game imagery comprised of a controller 10 that is

connected to a video game machine via a cable 11 and includes a cross shaped key 12

for vertically and horizontally moving characters on the screen (see Fig. 1 and

---

[4] *Id.*

paragraph 8 of the accompanying translation).  A rubber contact point 29 on the cross

shaped key 12 is formed from elastic rubber material and a moving part 30 is disposed

onto the center of each cross shaped key 12 (see Fig. 2 and paragraph 9 of the

accompanying translation).  Moving contact 32 is formed of conductive rubber and is

disposed on the bottom end of each moving part 30, and conductive part 33, whose

resistance varies with pressure, is attached to the bottom end surface of moving contact

32  (see Fig. 2 and paragraph 9 of the accompanying translation).  By performing the

depressing operation, moving part 30 is lowered while being resisted by the elastic bias

of elastic let part 31 so that it is electrically connected to fixed contacts 7 and 7 on a

wiring pattern disposed on substrate 5 (see Fig. 2 and paragraph 9 of the

accompanying translation).  The pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation).  Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation).  This elastic bias would be felt as a mechanical resistance

by the user, who is applying pressing force on the button with a fingertip (see paragraph

10 of the accompanying translation).  In addition, patent owner's admission that "most

but not all elastomeric injection molded dome caps when depressed produce a soft

snap which is a user discernable tactile feedback" at col. 1, lines 58-65 through col. 2,

lines 1-15 of U.S. Patent No. 6,135,886 further supports the argument that the rubber

contact point 29 of Furukawa '760 would have implicitly provided active tactile feedback

to the finger of a user. Accordingly, it would have been obvious for one of ordinary skill

in the art at the time the invention was made to construct the dome-shaped structure

disclosed in Furukawa '760 to provide active tactile feedback.[5] *In regard to claim 33*,

Furukawa '760 also discloses placing analog sensors below each of the four directional

sections of a cross key in a game controller, each of which is attached to the output

circuit to control movement of a game character in one direction, allowing for a user to

vertically and horizontally move characters on a screen (see paragraph 8 of the

accompanying translation). *In regard to claim 37*, Furukawa '760 states that additional

sensors may be used in other locations on the controller, other than in the cross keys,

which inherently includes placing the sensors in an array that is located in a right hand

area of a housing, as shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the

accompanying translation).

    This rejection of claims 32-37 of Armstrong '997 based on Furukawa '760 was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

---

[5] *Id.*

Application/Control Number: 95/000,214                                    Page 16
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #5**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Switch

Engineering Handbook.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

obvious over Furukawa '760 in view of Switch Engineering Handbook. *In regard to*

*claims 32 and 34-37*, Furukawa '760 teaches a device for controlling video game

imagery comprised of a controller 10 that is connected to a video game machine via a

cable 11 and includes a cross shaped key 12 for vertically and horizontally moving

characters on the screen (see Fig. 1 and paragraph 8 of the accompanying translation).

A rubber contact point 29 on the cross shaped key 12 is formed from elastic rubber

material and a moving part 30 is disposed onto the center of each cross shaped key 12

(see Fig. 2 and paragraph 9 of the accompanying translation). Moving contact 32 is

formed of conductive rubber and is disposed on the bottom end of each moving part 30,

and conductive part 33, whose resistance varies with pressure, is attached to the

bottom end surface of moving contact 32 (see Fig. 2 and paragraph 9 of the

accompanying translation). By performing the depressing operation, moving part 30 is

lowered while being resisted by the elastic bias of elastic let part 31 so that it is

electrically connected to fixed contacts 7 and 7 on a wiring pattern disposed on

substrate 5 (see Fig. 2 and paragraph 9 of the accompanying translation). The pressing

force applied by the fingertip on each contact point 29 on the cross shaped key 12

changes the electrical resistance through conductive part 33 and thus, the operation of

a character in a video game can be freely controlled by the pressing force applied by

the fingertip of the operator (see Fig. 2 and paragraph 10 of the accompanying

translation).  Rubber contact point 29 is dome-shaped, and includes elastic leg parts 31

where moving part 30 is lowered while being resisted by the elastic bias of elastic leg

part 31 (see Fig. 2 and paragraph 9 of the accompanying translation).  This elastic bias

would be felt as a mechanical resistance by the user, who is applying pressing force on

the button with a fingertip (see paragraph 10 of the accompanying translation).  In

addition, patent owner's admission that "most but not all elastomeric injection molded

dome caps when depressed produce a soft snap which is a user discernable tactile

feedback" at col. 1, lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886

further supports the argument that the rubber contact point 29 of Furukawa '760 would

have implicitly provided active tactile feedback to the finger of a user.  In addition,

Switch Engineering Handbook teaches rubber domes shaped similarly to the dome of

Furukawa '760 that produce snap-through tactile feedback (see Fig. 11.5 of Switch

Engineering Handbook).  Accordingly, it would have been obvious for one of ordinary

skill in the art at the time the invention was made to construct the dome-shaped

structure disclosed in Furukawa '760 to provide active tactile feedback[6] , in the manner

disclosed by Switch Engineering Handbook.  *In regard to claim 33,*  Furukawa '760 also

discloses placing analog sensors below each of the four directional sections of a cross

key in a game controller, each of which is attached to the output circuit to control

movement of a game character in one direction, allowing for a user to vertically and

---

[6] *Id.*

horizontally move characters on a screen (see paragraph 8 of the accompanying translation). *In regard to claim 37*, Furukawa '760 states that additional sensors may be used in other locations on the controller, other than in the cross keys, which inherently includes placing the sensors in an array that is located in a right hand area of a housing, as shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the accompanying translation).

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '760 in view of Switch Engineering Handbook was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


## Proposed Third Party Requester Rejection: Ground #6

The requester submits that claims 32-37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer.   *In regard to claims 32 and 34-37*, Furukawa '760 teaches a device for controlling video game imagery comprised of a controller 10 that is connected to a video game machine via a cable 11 and includes a cross shaped key 12 for vertically and horizontally moving characters on the screen (see Fig. 1 and paragraph 8 of the accompanying translation). A rubber contact point 29 on the cross shaped key 12 is formed from elastic rubber material and a moving part 30 is disposed onto the center of each cross shaped key 12 (see Fig. 2 and paragraph 9 of the accompanying translation). Moving contact 32 is formed of conductive rubber

and is disposed on the bottom end of each moving part 30, and conductive part 33,

whose resistance varies with pressure, is attached to the bottom end surface of moving

contact 32  (see Fig. 2 and paragraph 9 of the accompanying translation).  By

performing the depressing operation, moving part 30 is lowered while being resisted by

the elastic bias of elastic let part 31 so that it is electrically connected to fixed contacts 7

and 7 on a wiring pattern disposed on substrate 5 (see Fig. 2 and paragraph 9 of the

accompanying translation).  The pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation).  Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation).  This elastic bias would be felt as a mechanical resistance

by the user, who is applying pressing force on the button with a fingertip (see paragraph

10 of the accompanying translation).  In addition, patent owner's admission that "most

but not all elastomeric injection molded dome caps when depressed produce a soft

snap which is a user discernable tactile feedback" at col. 1, lines 58-65 through col. 2,

lines 1-15 of U.S. Patent No. 6,135,886 further supports the argument that the rubber

contact point 29 of Furukawa '760 would have implicitly provided active tactile feedback

to the finger of a user.  In addition, Kramer discloses a snap-through dome cap for

providing tactile feedback to the user which is break-over threshold, namely, "the rubber

dome bears against the printed circuit board 10 and, upon depression of the appropriate

pushbutton 22, will first actuate a switching process with a snap effect and subsequently

permit pressure-dependent adjustment of a function variable (see col. 5, lines 40-48 of

Kramer). Accordingly, it would have been obvious for one of ordinary skill in the art at

the time the invention was made to construct the dome-shaped structure disclosed in

Furukawa '760 to provide active tactile feedback[7] , in the manner disclosed by Kramer.

*In regard to claim 33*, Furukawa '760 also discloses placing analog sensors below each

of the four directional sections of a cross key in a game controller, each of which is

attached to the output circuit to control movement of a game character in one direction,

allowing for a user to vertically and horizontally move characters on a screen (see

paragraph 8 of the accompanying translation). *In regard to claim 37*, Furukawa '760

states that additional sensors may be used in other locations on the controller, other

than in the cross keys, which inherently includes placing the sensors in an array that is

located in a right hand area of a housing, as shown in Fig. 1 of Furukawa '760 (see also

paragraph 9 of the accompanying translation).

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '760 in view

of Kramer was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

---

[7] *Id.*

**Proposed Third Party Requester Rejection: Ground #7**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of

Mitsuhashi.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being obvious over Furukawa '760 in view of Mitsuhashi. *In regard to claims 34 and 36*,

Furukawa '760 teaches that the pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation). It is agreed that this elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation). However, Mitsuhashi

discloses the use of a metallic dome cap structure to provide a high click ratio and

"active tactile feedback" by providing a "considerably good touch of clicking with a click

ratio as high as 46.7% (see col. 1, lines 48-58 of Mitsuhashi). Mitsuhashi also teaches

that "when the surface panel sheet 21 is depressed with a finger tip at a position just

above the pushing head 22, the curvature of the diaphragm 25 is clickingly reversed to

give a considerably high click ratio even with a low pushing stroke (see Figs. 7 and 8

and col. 2, lines 54-66 of Mitsuhashi). It would have been obvious for one of ordinary

skill in the art at the time the invention was made to replace the rubber contact point 29

of Furukawa '760 with the metallic dome cap of Mitsuhashi to improve tactile feedback.

*In regard to claim 37*, Furukawa '760 states that additional sensors may be used in

other locations on the controller, other than in the cross keys, which inherently includes

placing the sensors in an array that is located in a right hand area of a housing, as

shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the accompanying

translation).

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760

in view of Mitsuhashi was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #8**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of

Padula.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being obvious over Furukawa '760 in view of Padula. *In regard to claims 34 and 36*,

Furukawa '760 teaches that the pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation).  Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation).  It is agreed that this elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation).  However, Padula

discloses a metallic dome cap wherein "The snap action during collapse of the dome

can be sensed by the stylus user, providing a definite tactile feedback to the user,

thereby providing active tactile feedback (see Fig 12 and col. 9, lines 12-13 of Padula).

It would have been obvious for one of ordinary skill in the art at the time the invention

was made to replace the rubber contact point 29 of Furukawa '760 with the metallic

dome cap of Padula to improve tactile feedback.  *In regard to claim 37*,  Furukawa '760

states that additional sensors may be used in other locations on the controller, other

than in the cross keys, which inherently includes placing the sensors in an array that is

located in a right hand area of a housing, as shown in Fig. 1 of Furukawa '760 (see also

paragraph 9 of the accompanying translation).

   This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760

in view of Padula was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #9**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of

Himoto.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being obvious over Furukawa '760 in view of Himoto. *In regard to claims 34 and 36*,

Furukawa '760 teaches that the pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation). It is agreed that this elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation). However, Himoto

teaches an expansion unit 70 with a vibration unit 75 that is actuated in response to a

command signal from the game apparatus body 200 or the controller body 10 and gives

vibrations to the controller body 10, thereby providing active tactile feedback (see Figs.

12 and 15 and col. 16, lines 38-58 of Himoto). It would have been obvious for one of

ordinary skill in the art at the time the invention was made to provide the rubber contact

point 29 of Furukawa '760 with the vibration unit of Himoto to improve tactile feedback.

*In regard to claim 37,* Furukawa '760 states that additional sensors may be used in

other locations on the controller, other than in the cross keys, which inherently includes

placing the sensors in an array that is located in a right hand area of a housing, as

shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the accompanying

translation).

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760

in view of Himoto was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #10**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of

Thorner.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being obvious over Furukawa '760 in view of Thorner. *In regard to claims 34 and 36,*

Furukawa '760 teaches that the pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation).  It is agreed that this elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation).  However, Thorner

teaches a video game player where "each actuator or group of actuators interacts with

the player and is individually activated to produce a localized tactile sensation, e.g., and

impact or vibration, corresponding to the action portrayed by the video game as it

occurs (see Thorner, abstract).    It would have been obvious for one of ordinary skill in

the art at the time the invention was made to provide the rubber contact point 29 of

Furukawa '760 with the vibration of Thorner to improve tactile feedback.  *In regard to*

*claim 37*,  Furukawa '760 states that additional sensors may be used in other locations

on the controller, other than in the cross keys, which inherently includes placing the

sensors in an array that is located in a right hand area of a housing, as shown in Fig. 1

of Furukawa '760 (see also paragraph 9 of the accompanying translation).

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760

in view of Thorner was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #11**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of

CyberMan.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being obvious over Furukawa '760 in view of CyberMan. *In regard to claims 34 and 36*,

Furukawa '760 teaches that the pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation). It is agreed that this elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation). However, CyberMan

teaches a "pulsating tactile feedback feature" which creates active tactile feedback felt

through the hand of a user (see page 1 of CyberMan). It would have been obvious for

one of ordinary skill in the art at the time the invention was made to provide the rubber

contact point 29 of Furukawa '760 with the pulsating tactile feedback of CyberMan to

improve tactile feedback. *In regard to claim 37*, Furukawa '760 states that additional

sensors may be used in other locations on the controller, other than in the cross keys,

which inherently includes placing the sensors in an array that is located in a right hand

area of a housing, as shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the

accompanying translation).

Application/Control Number: 95/000,214                              Page 28
Art Unit: 3993

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760
in view of CyberMan was proposed by the third party requester in the request for
reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #12**

The requester submits that claim 37 of Armstrong '997 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Inoue.

Claim 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being
obvious over Furukawa '760 in view of Inoue.  Furukawa '760 teaches placing analog
sensors below each of the four directional sections of a cross key in a game controller,
each of which is attached to the output circuit to control movement of a game character
in one direction, allowing for a user to vertically and horizontally move characters on a
screen (see paragraph 8 of the accompanying translation).  Furukawa '760 states that
additional sensors may be used in other locations on the controller, other than in the
cross keys (see Fig. 1 and paragraph 9 of the accompanying translation).  However,
Inoue teaches multiple single individual buttons in a right hand area of a housing to be
depressed by a user's thumb (see Figs. 1 and 6 of Inoue).  It would have been obvious
for one of ordinary skill in the art at the time the invention was made to provide the
device of Furukawa '760 with multiple single individual buttons in a right hand area of a
housing, in the manner disclosed by Inoue.

This rejection of claim 37 of Armstrong '997 based on Furukawa '760 in view of Inoue was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #13**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of CyberMan and further in view of Switch Engineering Handbook.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of CyberMan and further in view of Switch Engineering Handbook. *In regard to claims 34 and 36*, Furukawa '760 teaches that the pressing force applied by the fingertip on each contact point 29 on the cross shaped key 12 changes the electrical resistance through conductive part 33 and thus, the operation of a character in a video game can be freely controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the accompanying translation). It is agreed that this elastic bias would be felt as a mechanical resistance by the user, who is applying pressing force on the button with a fingertip (see paragraph 10 of the accompanying translation). However, Switch Engineering Handbook teaches rubber domes shaped similarly to the dome of Furukawa '760 that produce snap-through tactile feedback (see

Fig. 11.5 of Switch Engineering Handbook). Accordingly, it would have been obvious

for one of ordinary skill in the art at the time the invention was made to construct the

dome-shaped structure disclosed in Furukawa '760 to provide active tactile feedback[8] ,

in the manner disclosed by Switch Engineering Handbook. Furthermore, CyberMan

teaches a "pulsating tactile feedback feature" which creates active tactile feedback felt

through the hand of a user (see page 1 of CyberMan). It would have been obvious for

one of ordinary skill in the art at the time the invention was made to provide the rubber

contact point 29 of Furukawa '760 with the pulsating tactile feedback of CyberMan to

improve tactile feedback. *In regard to claim 37*, Furukawa '760 states that additional

sensors may be used in other locations on the controller, other than in the cross keys,

which inherently includes placing the sensors in an array that is located in a right hand

area of a housing, as shown in Fig. 1 of Furukawa '760 (see also paragraph 9 of the

accompanying translation).

     This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '760

in view of CyberMan and further in view of Switch Engineering Handbook was proposed

by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.

---

[8] *Id.*

**Proposed Third Party Requester Rejection: Ground #14**

The requester submits that claim 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer and further in view of Inoue.

Claim 37 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being obvious over Furukawa '760 in view of Kramer and further in view of Inoue. Furukawa '760 teaches a device for controlling video game imagery comprised of a controller 10 that is connected to a video game machine via a cable 11 and includes a cross shaped key 12 for vertically and horizontally moving characters on the screen (see Fig. 1 and paragraph 8 of the accompanying translation). A rubber contact point 29 on the cross shaped key 12 is formed from elastic rubber material and a moving part 30 is disposed onto the center of each cross shaped key 12 (see Fig. 2 and paragraph 9 of the accompanying translation). Moving contact 32 is formed of conductive rubber and is disposed on the bottom end of each moving part 30, and conductive part 33, whose resistance varies with pressure, is attached to the bottom end surface of moving contact 32 (see Fig. 2 and paragraph 9 of the accompanying translation). By performing the depressing operation, moving part 30 is lowered while being resisted by the elastic bias of elastic let part 31 so that it is electrically connected to fixed contacts 7 and 7 on a wiring pattern disposed on substrate 5 (see Fig. 2 and paragraph 9 of the accompanying translation). The pressing force applied by the fingertip on each contact point 29 on the cross shaped key 12 changes the electrical resistance through conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and

paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-

shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being

resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the

accompanying translation). This elastic bias would be felt as a mechanical resistance

by the user, who is applying pressing force on the button with a fingertip (see paragraph

10 of the accompanying translation). However, Kramer discloses a snap-through dome

cap for providing tactile feedback to the user which is break-over threshold, namely, "the

rubber dome bears against the printed circuit board 10 and, upon depression of the

appropriate pushbutton 22, will first actuate a switching process with a snap effect and

subsequently permit pressure-dependent adjustment of a function variable (see col. 5,

lines 40-48 of Kramer). Accordingly, it would have been obvious for one of ordinary skill

in the art at the time the invention was made to construct the dome-shaped structure

disclosed in Furukawa '760 to provide active tactile feedback[9] to the user. Furthermore,

Furukawa '760 discloses placing analog sensors below each of the four directional

sections of a cross key in a game controller, each of which is attached to the output

circuit to control movement of a game character in one direction, allowing for a user to

vertically and horizontally move characters on a screen (see paragraph 8 of the

accompanying translation). Furukawa '760 also states that additional sensors may be

used in other locations on the controller, other than in the cross keys (see Fig. A and

paragraph 9 of the accompanying translation). Inoue teaches multiple single individual

---

[9] *Id.*

Application/Control Number: 95/000,214                                         Page 33
Art Unit: 3993

buttons in a right hand area of a housing to be depressed by a user's thumb (see Figs.

1 and 6 of Inoue). It would have been obvious for one of ordinary skill in the art at the

time the invention was made to provide the device of Furukawa '760 with multiple single

individual buttons in a right hand area of a housing, in the manner disclosed by Inoue.

This rejection of claim 37 of Armstrong '997 based on Furukawa '760 in view of

Kramer and further in view of Inoue was proposed by the third party requester in the

request for reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #15**

The requester submits that claims 32-34 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over O'Mara.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara. *In regard to claims 32 and 34,* O'Mara teaches a device for

controlling imagery comprised of a piezoeletric element, such as a force sensitive

resistor, to sense pressure applied to a button and provide an analog output related to

the magnitude of the force applied (see col. 2, lines 10-12, col. 3, lines 51-53 and Figs.

1-5 and 7-9). O'Mara further discloses that the device may be used as an analog push-

button, which would be operated by a fingertip (see col. 7, lines 49-50 and col. 8, lines

42-45). O'Mara teaches that pad 50 and spring 60 are used to provide mechanical

resistance or 'feel' to the device 10 as the user applied force to disk 40, which would

constitute active tactile feedback to the user[10] (see col. 4, lines 31-33). O'Mara further

teaches that as the conductive foam is compressed, it will complete the circuit of the

circuit traces and provide an output voltage varying with the compression of the foam

(see col. 2, lines 48-51). *In regard to claim 33*, O'Mara teaches an output circuit

connected to at least four piezoresistive elements where the output circuit provides

signals representative of the sensed force (see col. 8, lines 43-45).

This rejection of claims 32-34 of Armstrong '997 based on O'Mara was proposed

by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


## Proposed Third Party Requester Rejection: Ground #16

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Kramer.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Kramer. *In regard to claims 32, and 34-37,* O'Mara

teaches a device for controlling imagery comprised of a piezoeletric element, such as a

force sensitive resistor, to sense pressure applied to a button and provide an analog

output related to the magnitude of the force applied (see col. 2, lines 10-12, col. 3, lines

51-53 and Figs. 1-5 and 7-9). O'Mara further discloses that the device may be used as

an analog push-button, which would be operated by a fingertip (see col. 7, lines 49-50

and col. 8, lines 42-45). O'Mara teaches that pad 50 and spring 60 are used to provide

---

[10] *Id.*

mechanical resistance or 'feel' to the device 10 as the user applied force to disk 40, which would constitute active tactile feedback to the user[11] (see col. 4, lines 31-33). O'Mara further teaches that as the conductive foam is compressed, it will complete the circuit of the circuit traces and provide an output voltage varying with the compression of the foam (see col. 2, lines 48-51). However, Kramer discloses a snap-through dome cap for providing tactile feedback to the user which is break-over threshold, namely, "the rubber dome bears against the printed circuit board 10 and, upon depression of the appropriate pushbutton 22, will first actuate a switching process with a snap effect and subsequently permit pressure-dependent adjustment of a function variable (see col. 5, lines 40-48 of Kramer). It would have been obvious for one of ordinary skill in the art at the time the invention was made to provide the device of O'Mara with a resilient dome cap, in the manner disclosed by Kramer, to provide increased tactile feedback to the user. *In regard to claim 33*, O'Mara teaches an output circuit connected to at least four piezoresistive elements where the output circuit provides signals representative of the sensed force (see col. 8, lines 43-45).

This rejection of claims 32-37 of Armstrong '997 based on O'Mara in view of Kramer was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

---

[11] *Id.*

Application/Control Number: 95/000,214                                    Page 36
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #17**

The requester submits that claim 34 of Armstrong '997 are unpatentable under

35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Mitsuhashi.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Mitsuhashi.  O'Mara teaches that pad 50 and spring 60

are used to provide mechanical resistance or 'feel' to the device 10 as the user applied

force to disk 40, which would constitute tactile feedback to the user (see col. 4, lines 31-

33).  However, Mitsuhashi discloses the use of a metallic dome cap structure to provide

a high click ratio and "active tactile feedback" by providing a "considerably good touch of

clicking with a click ratio as high as 46.7% (see col. 1, lines 48-58 of Mitsuhashi).

Mitsuhashi also teaches that "when the surface panel sheet 21 is depressed with a

finger tip at a position just above the pushing head 22, the curvature of the diaphragm

25 is clickingly reversed to give a considerably high click ratio even with a low pushing

stroke (see Figs. 7 and 8 and col. 2, lines 54-66 of Mitsuhashi).  It would have been

obvious for one of ordinary skill in the art at the time the invention was made to provide

the device of O'Mara with the metallic dome cap of Mitsuhashi to improve tactile

feedback.

This rejection of claim 34 of Armstrong '997 based on O'Mara in view of

Mitsuhashi was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

Application/Control Number: 95/000,214                                           Page 37

Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #18**

The requester submits that claim 34 of Armstrong '997 are unpatentable under

35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Padula.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Padula. O'Mara teaches that pad 50 and spring 60 are

used to provide mechanical resistance or 'feel' to the device 10 as the user applied

force to disk 40, which would constitute tactile feedback to the user (see col. 4, lines 31-

33). However, Padula discloses a metallic dome cap wherein "The snap action during

collapse of the dome can be sensed by the stylus user, providing a definite tactile

feedback to the user, thereby providing active tactile feedback (see Fig 12 and col. 9,

lines 12-13 of Padula). It would have been obvious for one of ordinary skill in the art at

the time the invention was made to provide the device of O'Mara with the metallic dome

cap of Padula to improve tactile feedback.

This rejection of claim 34 of Armstrong '997 based on O'Mara in view of Padula

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #19**

The requester submits that claim 34 of Armstrong '997 are unpatentable under

35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Himoto.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Himoto. O'Mara teaches that pad 50 and spring 60 are

used to provide mechanical resistance or 'feel' to the device 10 as the user applied

force to disk 40, which would constitute tactile feedback to the user (see col. 4, lines 31-

33). However, Himoto teaches an expansion unit 70 with a vibration unit 75 that is

actuated in response to a command signal from the game apparatus body 200 or the

controller body 10 and gives vibrations to the controller body 10, thereby providing

active tactile feedback (see Figs. 12 and 15 and col. 16, lines 38-58 of Himoto). It

would have been obvious for one of ordinary skill in the art at the time the invention was

made to provide the device of O'Mara with the vibration unit of Himoto to improve tactile

feedback.

       This rejection of claim 34 of Armstrong '997 based on O'Mara in view of Himoto

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #20**

       The requester submits that claim 34 of Armstrong '997 are unpatentable under

35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Thorner.

       Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Thorner. O'Mara teaches that pad 50 and spring 60 are

used to provide mechanical resistance or 'feel' to the device 10 as the user applied

force to disk 40, which would constitute tactile feedback to the user (see col. 4, lines 31-

33). However, Thorner teaches a video game player where "each actuator or group of

actuators interacts with the player and is individually activated to produce a localized

tactile sensation, e.g., and impact or vibration, corresponding to the action portrayed by

the video game as it occurs (see Thorner, abstract). It would have been obvious for one

of ordinary skill in the art at the time the invention was made to provide the device of

O'Mara with the vibration of Thorner to improve tactile feedback.

This rejection of claim 34 of Armstrong '997 based on O'Mara in view of Thorner

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #21**

The requester submits that claim 34 of Armstrong '997 are unpatentable under

35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of CyberMan.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of CyberMan. O'Mara teaches that pad 50 and spring 60

are used to provide mechanical resistance or 'feel' to the device 10 as the user applied

force to disk 40, which would constitute tactile feedback to the user (see col. 4, lines 31-

33). However, CyberMan teaches a "pulsating tactile feedback feature" which creates

active tactile feedback felt through the hand of a user (see page 1 of CyberMan). It

would have been obvious for one of ordinary skill in the art at the time the invention was

made to provide the device of O'Mara with the pulsating tactile feedback of CyberMan

to improve tactile feedback.

Application/Control Number: 95/000,214 .                              Page 40
Art Unit: 3993

This rejection of claim 34 of Armstrong '997 based on O'Mara in view of
CyberMan was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #22**

The requester submits that claims 36 and 37 of Armstrong '997 are unpatentable
under 35 U.S.C. § 103(a) as being unpatentable over O'Mara in view of Kramer and
further in view of CyberMan.

Claims 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as
being unpatentable O'Mara in view of Kramer and further in view of CyberMan. *In
regard to claims 36 and 37,* O'Mara teaches that pad 50 and spring 60 are used to
provide mechanical resistance or 'feel' to the device 10 as the user applied force to disk
40, which would constitute active tactile feedback to the user[12] (see col. 4, lines 31-33).
O'Mara further teaches that as the conductive foam is compressed, it will complete the
circuit of the circuit traces and provide an output voltage varying with the compression
of the foam (see col. 2, lines 48-51). However, Kramer discloses a snap-through dome
cap for providing tactile feedback to the user which is break-over threshold, namely, "the
rubber dome bears against the printed circuit board 10 and, upon depression of the
appropriate pushbutton 22, will first actuate a switching process with a snap effect and
subsequently permit pressure-dependent adjustment of a function variable (see col. 5,
lines 40-48 of Kramer). It would have been obvious for one of ordinary skill in the art at

---

[12] *Id.*

the time the invention was made to provide the device of O'Mara with a resilient dome

cap, in the manner disclosed by Kramer, to provide increased tactile feedback to the

user. *In regard to claim 33*, O'Mara teaches an output circuit connected to at least four

piezoresistive elements where the output circuit provides signals representative of the

sensed force (see col. 8, lines 43-45). Furthermore, CyberMan teaches a "pulsating

tactile feedback feature" which creates active tactile feedback felt through the hand of a

user (see page 1 of CyberMan). It would have been obvious for one of ordinary skill in

the art at the time the invention was made to provide the device of O'Mara with the

pulsating tactile feedback of CyberMan to improve tactile feedback.

This rejection of claims 36 and 37 of Armstrong '997 based on O'Mara in view of

Kramer and further in view of CyberMan was proposed by the third party requester in

the request for reexamination and is being adopted essentially as proposed in the

request.


**Proposed Third Party Requester Rejection: Ground #23**

The requester submits that claim 37 of Armstrong '997 is unpatentable under 35

U.S.C. § 103(a) as being unpatentable over O'Mara in view of Kramer and further in

view of Inoue.

Claim 37 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable O'Mara in view of Kramer and further in view of Inoue. O'Mara teaches

that pad 50 and spring 60 are used to provide mechanical resistance or 'feel' to the

device 10 as the user applied force to disk 40, which would constitute active tactile

feedback to the user[13] (see col. 4, lines 31-33).  O'Mara further teaches that as the

conductive foam is compressed, it will complete the circuit of the circuit traces and

provide an output voltage varying with the compression of the foam (see col. 2, lines 48-

51).  However, Kramer discloses a snap-through dome cap for providing tactile

feedback to the user which is break-over threshold, namely, "the rubber dome bears

against the printed circuit board 10 and, upon depression of the appropriate pushbutton

22, will first actuate a switching process with a snap effect and subsequently permit

pressure-dependent adjustment of a function variable (see col. 5, lines 40-48 of

Kramer).  It would have been obvious for one of ordinary skill in the art at the time the

invention was made to provide the device of O'Mara with a resilient dome cap, in the

manner disclosed by Kramer, to provide increased tactile feedback to the user.  Inoue

teaches multiple single individual buttons in a right hand area of a housing to be

depressed by a user's thumb (see Figs. 1 and 6 of Inoue).  It would have been obvious

for one of ordinary skill in the art at the time the invention was made to provide the

device of O'Mara with multiple single individual buttons in a right hand area of a

housing, in the manner disclosed by Inoue.

    This rejection of claim 37 of Armstrong '997 based on O'Mara in view of Kramer

and further in view of Inoue was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

---

[13] *Id.*

**Proposed Third Party Requester Rejection: Ground #24**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217. *In regard to claims 32-37*, Furukawa '217 teaches a

switch in a computer keyboard to allow the scroll rate, cursor moving speed and

character reaction speed in computer games to be controlled according to the intention

of a user (see paragraph 11 of the accompanying translation). Furukawa '217 also

teaches a pressure-sensitive variable resistor 1 and abuts secure contact points 9 and

10 where the contact pressure between carbon powder particles is increased by the

applied pressure and anisotropic conductivity established between the secure contact

points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5). The resistance of

the pressure-sensitive variable resistor 1 is changed according to the applied pressure

so that the voltage between the secure contact points 9 and 10 can be manually and

arbitrarily controlled (see abstract). When the elastic rubber of rubber key top 6 is

pressed down, the pressure-sensitive variable resistor 1 makes contact with the two

secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation). The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip. The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[14] In addition, patent

owner's admission that "most but not all elastomeric injection molded dome caps when

depressed produce a soft snap which is a user discernable tactile feedback" at col. 1,

lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the

argument that the rubber key top 6 of Furukawa '217 would have implicitly provided

active tactile feedback to the finger of a user.

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #25**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of Switch

Engineering Handbook..

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217 in view of Switch Engineering Handbook. *In regard to*

*claims 32-37*, Furukawa '217 teaches a switch in a computer keyboard to allow the

scroll rate, cursor moving speed and character reaction speed in computer games to be

controlled according to the intention of a user (see paragraph 11 of the accompanying

---

[14] *Id.*

translation). Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and

abuts secure contact points 9 and 10 where the contact pressure between carbon

powder particles is increased by the applied pressure and anisotropic conductivity

established between the secure contact points 9 and 10 and the electroconductive layer

7 (see Figs. 4 and 5). The resistance of the pressure-sensitive variable resistor 1 is

changed according to the applied pressure so that the voltage between the secure

contact points 9 and 10 can be manually and arbitrarily controlled (see abstract). When

the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable

resistor 1 makes contact with the two secure contact points 9 and 10 and when the

contact pressure is low, the pressure-sensitive variable resistor 1 has high resistance;

when the rubber key top 6 is further pressed down and the contact pressure is

increased, the resistance is reduced (see paragraph 10 of the accompanying

translation). Furukawa '217 also discloses that the variable resistor yields changes in

resistance corresponding to operational feeling (see paragraph 5 of the accompanying

translation). The operational feeling of rubber key top 6 would be felt as a mechanical

resistance by the user, who is applying pressing force on the button with a fingertip.

The rubber key top 6 of Furukawa '217 would have implicitly provided active tactile

feedback to the finger of a user.[15] In addition, patent owner's admission that "most but

not all elastomeric injection molded dome caps when depressed produce a soft snap

which is a user discernable tactile feedback" at col. 1, lines 58-65 through col. 2, lines 1-

15 of U.S. Patent No. 6,135,886 further supports the argument that the rubber key top 6

---

[15] *Id.*

Application/Control Number: 95/000,214                                  Page 46
Art Unit: 3993

of Furukawa '217 would have implicitly provided active tactile feedback to the finger of a

user. Furthermore, Switch Engineering Handbook teaches rubber domes shaped

similarly to the dome of Furukawa '760 that produce snap-through tactile feedback (see

Fig. 11.5 of Switch Engineering Handbook). Accordingly, it would have been obvious

for one of ordinary skill in the art at the time the invention was made to construct the

dome-shaped structure disclosed in Furukawa '760 to provide active tactile feedback[16],

in the manner disclosed by Switch Engineering Handbook.

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 in view

of Switch Engineering Handbook was proposed by the third party requester in the

request for reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #26**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of Mitchell.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217 in view of Mitchell. *In regard to claims 32-37*,

Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate, cursor

moving speed and character reaction speed in computer games to be controlled

according to the intention of a user (see paragraph 11 of the accompanying translation).

Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure

contact points 9 and 10 where the contact pressure between carbon powder particles is

---

[16] *Id.*

increased by the applied pressure and anisotropic conductivity established between the

secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).

The resistance of the pressure-sensitive variable resistor 1 is changed according to the

applied pressure so that the voltage between the secure contact points 9 and 10 can be

manually and arbitrarily controlled (see abstract). When the elastic rubber of rubber key

top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the

two secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation). The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip. The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[17] In addition, patent

owner's admission that "most but not all elastomeric injection molded dome caps when

depressed produce a soft snap which is a user discernable tactile feedback" at col. 1,

lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the

argument that the rubber key top 6 of Furukawa '217 would have implicitly provided

active tactile feedback to the finger of a user. Furthermore, Mitchell discloses pressure-

sensitive variable-conductance materials in analog sensors where, when pressure is

---

[17] Id.

exerted on the material, electrical resistance to current flow between two electrodes is

reduced (see col. 2, lines 58-62, col. 5, line 57 through col. 6, line 35 and Figs. 4 and 6

of Mitchell). Mitchell also identifies numerous types of materials that can be used to

make thin pressure-sensitive variable-conductance layers. Thus, it would have been

obvious for one of ordinary skill in the art at the time the invention was made to utilize

materials disclosed by Mitchell to form the pressure-sensitive variable conductance

sensor of Furukawa '217.

This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 in view

of Mitchell was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

## Proposed Third Party Requester Rejection: Ground #27

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of

Matsumoto.

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217 in view of Matsumoto. *In regard to claims 32-37*,

Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate, cursor

moving speed and character reaction speed in computer games to be controlled

according to the intention of a user (see paragraph 11 of the accompanying translation).

Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure

contact points 9 and 10 where the contact pressure between carbon powder particles is

Application/Control Number: 95/000,214                                    Page 49
Art Unit: 3993

increased by the applied pressure and anisotropic conductivity established between the

secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).

The resistance of the pressure-sensitive variable resistor 1 is changed according to the

applied pressure so that the voltage between the secure contact points 9 and 10 can be

manually and arbitrarily controlled (see abstract).  When the elastic rubber of rubber key

top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the

two secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation).  Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation).   The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip.  The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[18]  In addition, patent

owner's admission that "most but not all elastomeric injection molded dome caps when

depressed produce a soft snap which is a user discernable tactile feedback" at col. 1,

lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the

argument that the rubber key top 6 of Furukawa '217 would have implicitly provided

active tactile feedback to the finger of a user.  Furthermore, Matsumoto discloses a

variable resistance switch where "switching can be easily recognized through the feeling

---

[18] *Id.*

Application/Control Number: 95/000,214                                     Page 50
Art Unit: 3993

of pressure on a fingertip and the resistance between two terminals can be changed

depending on how much the push button of the switch is depressed" (see Matsumoto at

page 1).  Matsumoto also discloses a "click action" made by an elastic electro-

conductive curved plate 3 within a push button 1 that can easily be recognized by the

operator (see pages 7 and 9 of Matsumoto).  It would have been obvious for one of

ordinary skill in the art to provide the device of Furukawa '217 with the switch of

Matsumoto so as to enhance tactile feedback.

        This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 in view

of Matsumoto was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #28**

        The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of Kramer.

        Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217 in view of Kramer.  *In regard to claims 32-37*,

Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate, cursor

moving speed and character reaction speed in computer games to be controlled

according to the intention of a user (see paragraph 11 of the accompanying translation).

Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure

contact points 9 and 10 where the contact pressure between carbon powder particles is

increased by the applied pressure and anisotropic conductivity established between the

secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).
The resistance of the pressure-sensitive variable resistor 1 is changed according to the
applied pressure so that the voltage between the secure contact points 9 and 10 can be
manually and arbitrarily controlled (see abstract).  When the elastic rubber of rubber key
top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the
two secure contact points 9 and 10 and when the contact pressure is low, the pressure-
sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further
pressed down and the contact pressure is increased, the resistance is reduced (see
paragraph 10 of the accompanying translation).  Furukawa '217 also discloses that the
variable resistor yields changes in resistance corresponding to operational feeling (see
paragraph 5 of the accompanying translation).   The operational feeling of rubber key
top 6 would be felt as a mechanical resistance by the user, who is applying pressing
force on the button with a fingertip.  The rubber key top 6 of Furukawa '217 would have
implicitly provided active tactile feedback to the finger of a user.[19]  In addition, patent
owner's admission that "most but not all elastomeric injection molded dome caps when
depressed produce a soft snap which is a user discernable tactile feedback" at col. 1,
lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the
argument that the rubber key top 6 of Furukawa '217 would have implicitly provided
active tactile feedback to the finger of a user.  Furthermore, Kramer discloses a snap-
through dome cap for providing tactile feedback to the user which is break-over
threshold, namely, "the rubber dome bears against the printed circuit board 10 and,

---

[19] *Id.*

Application/Control Number: 95/000,214                                  Page 52
Art Unit: 3993

upon depression of the appropriate pushbutton 22, will first actuate a switching process

with a snap effect and subsequently permit pressure-dependent adjustment of a

function variable (see col. 5, lines 40-48 of Kramer). Accordingly, it would have been

obvious for one of ordinary skill in the art at the time the invention was made to

construct the dome-shaped structure disclosed in Furukawa '760 to provide active

tactile feedback[20] , in the manner disclosed by Kramer.

     This rejection of claims 32-37 of Armstrong '997 based on Furukawa '217 in view

of Kramer was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #29**

     The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in

view of Mitsuhashi.

     Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Furukawa '217 in view of Mitsuhashi. *In regard to claims 34,*

*36 and 37*, Furukawa '217 teaches a switch in a computer keyboard to allow the scroll

rate, cursor moving speed and character reaction speed in computer games to be

controlled according to the intention of a user (see paragraph 11 of the accompanying

translation). Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and

abuts secure contact points 9 and 10 where the contact pressure between carbon

---

[20] *Id.*

powder particles is increased by the applied pressure and anisotropic conductivity
established between the secure contact points 9 and 10 and the electroconductive layer
7 (see Figs. 4 and 5). The resistance of the pressure-sensitive variable resistor 1 is
changed according to the applied pressure so that the voltage between the secure
contact points 9 and 10 can be manually and arbitrarily controlled (see abstract). When
the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable
resistor 1 makes contact with the two secure contact points 9 and 10 and when the
contact pressure is low, the pressure-sensitive variable resistor 1 has high resistance;
when the rubber key top 6 is further pressed down and the contact pressure is
increased, the resistance is reduced (see paragraph 10 of the accompanying
translation). Furukawa '217 also discloses that the variable resistor yields changes in
resistance corresponding to operational feeling (see paragraph 5 of the accompanying
translation). The operational feeling of rubber key top 6 would be felt as a mechanical
resistance by the user, who is applying pressing force on the button with a fingertip.
The rubber key top 6 of Furukawa '217 would have implicitly provided active tactile
feedback to the finger of a user.[21] Furthermore, Mitsuhashi discloses the use of a
metallic dome cap structure to provide a high click ratio and "active tactile feedback" by
providing a "considerably good touch of clicking with a click ratio as high as 46.7% (see
col. 1, lines 48-58 of Mitsuhashi). Mitsuhashi also teaches that "when the surface panel
sheet 21 is depressed with a finger tip at a position just above the pushing head 22, the
curvature of the diaphragm 25 is clickingly reversed to give a considerably high click

ratio even with a low pushing stroke (see Figs. 7 and 8 and col. 2, lines 54-66 of

Mitsuhashi).  It would have been obvious for one of ordinary skill in the art at the time

the invention was made to replace the rubber key top 6 of Furukawa '217 with the

metallic dome cap of Mitsuhashi to improve tactile feedback.

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217

in view of Mitsuhashi was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #30**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in

view of Padula.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Furukawa '217 in view of Padula.  *In regard to claims 34, 36*

*and 37*, Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate,

cursor moving speed and character reaction speed in computer games to be controlled

according to the intention of a user (see paragraph 11 of the accompanying translation).

Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure

contact points 9 and 10 where the contact pressure between carbon powder particles is

increased by the applied pressure and anisotropic conductivity established between the

secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).

---

[21] *Id.*

The resistance of the pressure-sensitive variable resistor 1 is changed according to the applied pressure so that the voltage between the secure contact points 9 and 10 can be manually and arbitrarily controlled (see abstract). When the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the two secure contact points 9 and 10 and when the contact pressure is low, the pressure-sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further pressed down and the contact pressure is increased, the resistance is reduced (see paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the variable resistor yields changes in resistance corresponding to operational feeling (see paragraph 5 of the accompanying translation). The operational feeling of rubber key top 6 would be felt as a mechanical resistance by the user, who is applying pressing force on the button with a fingertip. The rubber key top 6 of Furukawa '217 would have implicitly provided active tactile feedback to the finger of a user.[22] Furthermore, Padula discloses a metallic dome cap wherein "The snap action during collapse of the dome can be sensed by the stylus user, providing a definite tactile feedback to the user, thereby providing active tactile feedback (see Fig 12 and col. 9, lines 12-13 of Padula). It would have been obvious for one of ordinary skill in the art at the time the invention was made to replace the rubber key top 6 of Furukawa '217 with the metallic dome cap of Padula to improve tactile feedback.

---

[22] *Id.*

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217 in view of Padula was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #31**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of Himoto.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of Himoto. *In regard to claims 34, 36 and 37*, Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate, cursor moving speed and character reaction speed in computer games to be controlled according to the intention of a user (see paragraph 11 of the accompanying translation). Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure contact points 9 and 10 where the contact pressure between carbon powder particles is increased by the applied pressure and anisotropic conductivity established between the secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5). The resistance of the pressure-sensitive variable resistor 1 is changed according to the applied pressure so that the voltage between the secure contact points 9 and 10 can be manually and arbitrarily controlled (see abstract).  When the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the two secure contact points 9 and 10 and when the contact pressure is low, the pressure-

Application/Control Number: 95/000,214                                        Page 57
Art Unit: 3993

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation). The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip. The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[23] Furthermore, Himoto

teaches an expansion unit 70 with a vibration unit 75 that is actuated in response to a

command signal from the game apparatus body 200 or the controller body 10 and gives

vibrations to the controller body 10, thereby providing active tactile feedback (see Figs.

12 and 15 and col. 16, lines 38-58 of Himoto). It would have been obvious for one of

ordinary skill in the art at the time the invention was made to provide the rubber key top

6 of Furukawa '217 with the vibration unit of Himoto to improve tactile feedback.

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217

in view of Himoto was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

---

[23] *Id.*

**Proposed Third Party Requester Rejection: Ground #32**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in

view of Thorner.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Furukawa '217 in view of Thorner. *In regard to claims 34, 36*

*and 37*, Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate,

cursor moving speed and character reaction speed in computer games to be controlled

according to the intention of a user (see paragraph 11 of the accompanying translation).

Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and abuts secure

contact points 9 and 10 where the contact pressure between carbon powder particles is

increased by the applied pressure and anisotropic conductivity established between the

secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).

The resistance of the pressure-sensitive variable resistor 1 is changed according to the

applied pressure so that the voltage between the secure contact points 9 and 10 can be

manually and arbitrarily controlled (see abstract).  When the elastic rubber of rubber key

top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the

two secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation).  Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation).    The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip.  The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[24]  Furthermore, Thorner

teaches a video game player where "each actuator or group of actuators interacts with

the player and is individually activated to produce a localized tactile sensation, e.g., and

impact or vibration, corresponding to the action portrayed by the video game as it

occurs (see Thorner, abstract).    It would have been obvious for one of ordinary skill in

the art at the time the invention was made to provide the rubber key top 6 of Furukawa

'217 with the vibration of Thorner to improve tactile feedback.

        This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217

in view of Thorner was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #33**

        The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in

view of CyberMan.

        Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Furukawa '217 in view of CyberMan.  *In regard to claims 34,*

*36 and 37*, Furukawa '217 teaches a switch in a computer keyboard to allow the scroll

---

[24] *Id.*

rate, cursor moving speed and character reaction speed in computer games to be
controlled according to the intention of a user (see paragraph 11 of the accompanying
translation). Furukawa '217 also teaches a pressure-sensitive variable resistor 1 and
abuts secure contact points 9 and 10 where the contact pressure between carbon
powder particles is increased by the applied pressure and anisotropic conductivity
established between the secure contact points 9 and 10 and the electroconductive layer
7 (see Figs. 4 and 5). The resistance of the pressure-sensitive variable resistor 1 is
changed according to the applied pressure so that the voltage between the secure
contact points 9 and 10 can be manually and arbitrarily controlled (see abstract). When
the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable
resistor 1 makes contact with the two secure contact points 9 and 10 and when the
contact pressure is low, the pressure-sensitive variable resistor 1 has high resistance;
when the rubber key top 6 is further pressed down and the contact pressure is
increased, the resistance is reduced (see paragraph 10 of the accompanying
translation). Furukawa '217 also discloses that the variable resistor yields changes in
resistance corresponding to operational feeling (see paragraph 5 of the accompanying
translation). The operational feeling of rubber key top 6 would be felt as a mechanical
resistance by the user, who is applying pressing force on the button with a fingertip.
The rubber key top 6 of Furukawa '217 would have implicitly provided active tactile
feedback to the finger of a user.[25] Furthermore, CyberMan teaches a "pulsating tactile
feedback feature" which creates active tactile feedback felt through the hand of a user

---

[25] *Id.*

Application/Control Number: 95/000,214                                    Page 61
Art Unit: 3993

(see page 1 of CyberMan).  It would have been obvious for one of ordinary skill in the

art at the time the invention was made to provide the rubber key top 6 of Furukawa '217

with the pulsating tactile feedback of CyberMan to improve tactile feedback.

This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217

in view of CyberMan was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #34**

The requester submits that claims 34, 36 and 37 of Armstrong '997 are

unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in

view of CyberMan and further in view of Switch Engineering Handbook.

Claims 34, 36 and 37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Furukawa '217 in view of CyberMan and further in view of

Switch Engineering Handbook.  *In regard to claims 34, 36 and 37*, Furukawa '217

teaches a switch in a computer keyboard to allow the scroll rate, cursor moving speed

and character reaction speed in computer games to be controlled according to the

intention of a user (see paragraph 11 of the accompanying translation).  Furukawa '217

also teaches a pressure-sensitive variable resistor 1 and abuts secure contact points 9

and 10 where the contact pressure between carbon powder particles is increased by the

applied pressure and anisotropic conductivity established between the secure contact

points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5).  The resistance of

the pressure-sensitive variable resistor 1 is changed according to the applied pressure

so that the voltage between the secure contact points 9 and 10 can be manually and

arbitrarily controlled (see abstract). When the elastic rubber of rubber key top 6 is

pressed down, the pressure-sensitive variable resistor 1 makes contact with the two

secure contact points 9 and 10 and when the contact pressure is low, the pressure-

sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further

pressed down and the contact pressure is increased, the resistance is reduced (see

paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the

variable resistor yields changes in resistance corresponding to operational feeling (see

paragraph 5 of the accompanying translation). The operational feeling of rubber key

top 6 would be felt as a mechanical resistance by the user, who is applying pressing

force on the button with a fingertip. The rubber key top 6 of Furukawa '217 would have

implicitly provided active tactile feedback to the finger of a user.[26] Furthermore,

CyberMan teaches a "pulsating tactile feedback feature" which creates active tactile

feedback felt through the hand of a user (see page 1 of CyberMan). It would have been

obvious for one of ordinary skill in the art at the time the invention was made to provide

the rubber key top 6 of Furukawa '217 with the pulsating tactile feedback of CyberMan

to improve tactile feedback. However, Switch Engineering Handbook teaches rubber

domes shaped similarly to the dome of Furukawa '760 that produce snap-through tactile

feedback (see Fig. 11.5 of Switch Engineering Handbook). Accordingly, it would have

been obvious for one of ordinary skill in the art at the time the invention was made to

---

[26] *Id.*

Application/Control Number: 95/000,214                                    Page 63
Art Unit: 3993

construct the dome-shaped structure disclosed in Furukawa '217 to provide active

tactile feedback[27] , in the manner disclosed by Switch Engineering Handbook.

    This rejection of claims 34, 36 and 37 of Armstrong '997 based on Furukawa '217

in view of CyberMan and further in view of Switch Engineering Handbook was proposed

by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #35**

    The requester submits that claims 35-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Furukawa '217 in view of

Matsumoto and further in view of Kramer.

    Claims 35-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Furukawa '217 in view of Matsumoto and further in view of Kramer.

In regard to claims 35-37, Furukawa '217 teaches a switch in a computer keyboard to

allow the scroll rate, cursor moving speed and character reaction speed in computer

games to be controlled according to the intention of a user (see paragraph 11 of the

accompanying translation).  Furukawa '217 also teaches a pressure-sensitive variable

resistor 1 and abuts secure contact points 9 and 10 where the contact pressure

between carbon powder particles is increased by the applied pressure and anisotropic

conductivity established between the secure contact points 9 and 10 and the

electroconductive layer 7 (see Figs. 4 and 5).  The resistance of the pressure-sensitive

_____

[27] *Id.*

Application/Control Number: 95/000,214                           Page 64
Art Unit: 3993

variable resistor 1 is changed according to the applied pressure so that the voltage

between the secure contact points 9 and 10 can be manually and arbitrarily controlled

(see abstract).  When the elastic rubber of rubber key top 6 is pressed down, the

pressure-sensitive variable resistor 1 makes contact with the two secure contact points

9 and 10 and when the contact pressure is low, the pressure-sensitive variable resistor

1 has high resistance; when the rubber key top 6 is further pressed down and the

contact pressure is increased, the resistance is reduced (see paragraph 10 of the

accompanying translation).  Furukawa '217 also discloses that the variable resistor

yields changes in resistance corresponding to operational feeling (see paragraph 5 of

the accompanying translation).   The operational feeling of rubber key top 6 would be

felt as a mechanical resistance by the user, who is applying pressing force on the button

with a fingertip.  The rubber key top 6 of Furukawa '217 would have implicitly provided

active tactile feedback to the finger of a user.[28]  In addition, patent owner's admission

that "most but not all elastomeric injection molded dome caps when depressed produce

a soft snap which is a user discernable tactile feedback" at col. 1, lines 58-65 through

col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the argument that the

rubber key top 6 of Furukawa '217 would have implicitly provided active tactile feedback

to the finger of a user.  Furthermore, Matsumoto discloses a variable resistance switch

where "switching can be easily recognized through the feeling of pressure on a fingertip

and the resistance between two terminals can be changed depending on how much the

push button of the switch is depressed" (see Matsumoto at page 1).  Matsumoto also

---

[28] *Id.*

Application/Control Number: 95/000,214                                        Page 65
Art Unit: 3993

discloses a "click action" made by an elastic electro-conductive curved plate 3 within a

push button 1 that can easily be recognized by the operator (see pages 7 and 9 of

Matsumoto). It would have been obvious for one of ordinary skill in the art to provide

the device of Furukawa '217 with the switch of Matsumoto so as to enhance tactile

feedback. Furthermore, Kramer discloses a snap-through dome cap for providing

tactile feedback to the user which is break-over threshold, namely, "the rubber dome

bears against the printed circuit board 10 and, upon depression of the appropriate

pushbutton 22, will first actuate a switching process with a snap effect and subsequently

permit pressure-dependent adjustment of a function variable (see col. 5, lines 40-48 of

Kramer). Accordingly, it would have been obvious for one of ordinary skill in the art at

the time the invention was made to construct the dome-shaped structure disclosed in

Furukawa '217 to provide active tactile feedback[29] , in the manner disclosed by Kramer.

This rejection of claims 35-37 of Armstrong '997 based on Furukawa '217 in view

of Matsumoto and further in view of Kramer was proposed by the third party requester in

the request for reexamination and is being adopted essentially as proposed in the

request.


**Proposed Third Party Requester Rejection: Ground #36**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Furukawa

'760.

---

[29] *Id.*

Claims 32-37 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Kawashima in view of Furukawa '760. *In regard to claims 32-37*,

Kawashima teaches a game control device for a personal computer comprised of a

push button formed from a pressure-sensitive rubber whose resistance value changes

with the pressing force on the switch (see col. 1 of Kawashima).  Kawashima teaches

that the oscillation frequency of a variable frequency oscillation circuit 10 is determined

by the resistance value of a pressure-sensitive conductive rubber switch 3 and the

capacity of a capacitor 2 (see col. 2 of Kawashima). Furukawa '760 teaches a device for

controlling video game imagery comprised of a controller 10 that is connected to a video

game machine via a cable 11 and includes a cross shaped key 12 for vertically and

horizontally moving characters on the screen (see Fig. 1 and paragraph 8 of the

accompanying translation).  A rubber contact point 29 on the cross shaped key 12 is

formed from elastic rubber material and a moving part 30 is disposed onto the center of

each cross shaped key 12 (see Fig. 2 and paragraph 9 of the accompanying

translation).  Moving contact 32 is formed of conductive rubber and is disposed on the

bottom end of each moving part 30, and conductive part 33, whose resistance varies

with pressure, is attached to the bottom end surface of moving contact 32  (see Fig. 2

and paragraph 9 of the accompanying translation).  By performing the depressing

operation, moving part 30 is lowered while being resisted by the elastic bias of elastic let

part 31 so that it is electrically connected to fixed contacts 7 and 7 on a wiring pattern

disposed on substrate 5 (see Fig. 2 and paragraph 9 of the accompanying translation).

The pressing force applied by the fingertip on each contact point 29 on the cross

shaped key 12 changes the electrical resistance through conductive part 33 and thus,

the operation of a character in a video game can be freely controlled by the pressing

force applied by the fingertip of the operator (see Fig. 2 and paragraph 10 of the

accompanying translation).  Rubber contact point 29 is dome-shaped, and includes

elastic leg parts 31 where moving part 30 is lowered while being resisted by the elastic

bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the accompanying translation).

This elastic bias would be felt as a mechanical resistance by the user, who is applying

pressing force on the button with a fingertip (see paragraph 10 of the accompanying

translation.  It would have been obvious for one of ordinary skill in the art at the time the

invention was made to provide the device of Kawashima with the dome-shaped cap of

Furukawa '760 as an alternate pressure-sensitive variable resistance switch.  Furukawa

'760 also discloses placing analog sensors below each of the four directional sections of

a cross key in a game controller, each of which is attached to the output circuit to

control movement of a game character in one direction, allowing for a user to vertically

and horizontally move characters on a screen (see paragraph 8 of the accompanying

translation).  Furukawa '760 also states that additional sensors may be used in other

locations on the controller, other than in the cross keys (see paragraph 9 of the

accompanying translation).

        This rejection of claims 32-37 of Armstrong '997 based on Kawashima in view of

Furukawa '760 was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

Application/Control Number: 95/000,214                                    Page 68
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #37**

The requester submits that claims 32-36 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Matsumoto.

Claims 32-36 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Kawashima in view of Matsumoto. *In regard to claims 32-36*,

Kawashima teaches a game control device for a personal computer comprised of a

push button formed from a pressure-sensitive rubber whose resistance value changes

with the pressing force on the switch (see col. 1 of Kawashima). Kawashima teaches

that the oscillation frequency of a variable frequency oscillation circuit 10 is determined

by the resistance value of a pressure-sensitive conductive rubber switch 3 and the

capacity of a capacitor 2 (see col. 2 of Kawashima). Matsumoto discloses a variable

resistance switch where "switching can be easily recognized through the feeling of

pressure on a fingertip and the resistance between two terminals can be changed

depending on how much the push button of the switch is depressed" (see Matsumoto at

page 1). Matsumoto also discloses a "click action" made by an elastic electro-

conductive curved plate 3 within a push button 1 that can easily be recognized by the

operator (see pages 7 and 9 of Matsumoto). It would have been obvious for one of

ordinary skill in the art at the time the invention was made to provide the device of

Kawashima with the switch of Matsumoto as an alternate pressure-sensitive variable

resistance switch.

Application/Control Number: 95/000,214                                    Page 69
Art Unit: 3993

This rejection of claims 32-36 of Armstrong '997 based on Kawashima in view of

Matsumoto was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #38**

The requester submits that claims 32-36 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Kramer.

Claims 32-36 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as being

unpatentable over Kawashima in view of Kramer. *In regard to claims 32-36*,

Kawashima teaches a game control device for a personal computer comprised of a

push button formed from a pressure-sensitive rubber whose resistance value changes

with the pressing force on the switch (see col. 1 of Kawashima). Kawashima teaches

that the oscillation frequency of a variable frequency oscillation circuit 10 is determined

by the resistance value of a pressure-sensitive conductive rubber switch 3 and the

capacity of a capacitor 2 (see col. 2 of Kawashima). Kramer discloses a snap-through

dome cap for providing tactile feedback to the user which is break-over threshold,

namely, "the rubber dome bears against the printed circuit board 10 and, upon

depression of the appropriate pushbutton 22, will first actuate a switching process with a

snap effect and subsequently permit pressure-dependent adjustment of a function

variable (see col. 5, lines 40-48 of Kramer). Accordingly, it would have been obvious for

one of ordinary skill in the art at the time the invention was made to construct the switch in Kawashima to provide active tactile feedback[30] , in the manner disclosed by Kramer.

This rejection of claims 32-36 of Armstrong '997 based on Kawashima in view of Kramer was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

**Proposed Third Party Requester Rejection: Ground #39**

The requester submits that claim 34 of Armstrong '997 are unpatentable under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Kramer.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Himoto. Kawashima teaches a game control device for a personal computer comprised of a push button formed from a pressure-sensitive rubber whose resistance value changes with the pressing force on the switch (see col. 1 of Kawashima). Kawashima teaches that the oscillation frequency of a variable frequency oscillation circuit 10 is determined by the resistance value of a pressure-sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col. 2 of Kawashima). Himoto teaches an expansion unit 70 with a vibration unit 75 that is actuated in response to a command signal from the game apparatus body 200 or the controller body 10 and gives vibrations to the controller body 10, thereby providing active tactile feedback (see Figs. 12 and 15 and col. 16, lines 38-58 of Himoto). It would have been obvious for one of ordinary skill in the art at the time the invention was

---

[30] *Id.*

Application/Control Number: 95/000,214                                    Page 71
Art Unit: 3993

made to provide the device of Kawashima with the vibration unit of Himoto to improve

tactile feedback.

This rejection of claim 34 of Armstrong '997 based on Kawashima in view of

Himoto was proposed by the third party requester in the request for reexamination and

is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #40**

The requester submits that claim 34 of Armstrong '997 is unpatentable under 35

U.S.C. § 103(a) as being unpatentable over Kawashima in view of Thorner.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable over Kawashima in view of Thorner. Kawashima teaches a game control

device for a personal computer comprised of a push button formed from a pressure-

sensitive rubber whose resistance value changes with the pressing force on the switch

(see col. 1 of Kawashima). Kawashima teaches that the oscillation frequency of a

variable frequency oscillation circuit 10 is determined by the resistance value of a

pressure-sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col.

2 of Kawashima). However, Thorner teaches a video game player where "each

actuator or group of actuators interacts with the player and is individually activated to

produce a localized tactile sensation, e.g., and impact or vibration, corresponding to the

action portrayed by the video game as it occurs (see Thorner, abstract). It would have

been obvious for one of ordinary skill in the art at the time the invention was made to

Application/Control Number: 95/000,214                                    Page 72
Art Unit: 3993

provide the device of Kawashima with the vibration of Thorner to improve tactile

feedback.

This rejection of claim 34 of Armstrong '997 based on Kawashima in view of

Thorner was proposed by the third party requester in the request for reexamination and

is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #41**

The requester submits that claim 34 of Armstrong '997 is unpatentable under 35

U.S.C. § 103(a) as being unpatentable over Kawashima in view of CyberMan.

Claim 34 of Armstrong '997 is rejected under 35 U.S.C. § 103(a) as being

unpatentable over Kawashima in view of CyberMan.  Kawashima teaches a game

control device for a personal computer comprised of a push button formed from a

pressure-sensitive rubber whose resistance value changes with the pressing force on

the switch (see col. 1 of Kawashima).  Kawashima teaches that the oscillation frequency

of a variable frequency oscillation circuit 10 is determined by the resistance value of a

pressure-sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col.

2 of Kawashima).   However, CyberMan teaches a "pulsating tactile feedback feature"

which creates active tactile feedback felt through the hand of a user (see page 1 of

CyberMan).  It would have been obvious for one of ordinary skill in the art at the time

the invention was made to provide the device of Kawashima with the pulsating tactile

feedback of CyberMan to improve tactile feedback.

Application/Control Number: 95/000,214                                    Page 73
Art Unit: 3993

This rejection of claim 34 of Armstrong '997 based on Kawashima in view of
CyberMan was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.


**Proposed Third Party Requester Rejection: Ground #42**

The requester submits that claims 34 and 36 of Armstrong '997 are unpatentable
under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Matsumoto
and further in view of Padula.

Claims 34 and 36 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as
being unpatentable over Kawashima in view of Matsumoto and further in view of
Padula. *In regard to claims 34 and 36,* Kawashima teaches a game control device for
a personal computer comprised of a push button formed from a pressure-sensitive
rubber whose resistance value changes with the pressing force on the switch (see col. 1
of Kawashima). Kawashima teaches that the oscillation frequency of a variable
frequency oscillation circuit 10 is determined by the resistance value of a pressure-
sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col. 2 of
Kawashima). Matsumoto discloses a variable resistance switch where "switching can
be easily recognized through the feeling of pressure on a fingertip and the resistance
between two terminals can be changed depending on how much the push button of the
switch is depressed" (see Matsumoto at page 1). Matsumoto also discloses a "click
action" made by an elastic electro-conductive curved plate 3 within a push button 1 that
can easily be recognized by the operator (see pages 7 and 9 of Matsumoto). It would

have been obvious for one of ordinary skill in the art at the time the invention was made

to provide the device of Kawashima with the switch of Matsumoto as an alternate

pressure-sensitive variable resistance switch.  Furthermore, Padula discloses a metallic

dome cap wherein "The snap action during collapse of the dome can be sensed by the

stylus user, providing a definite tactile feedback to the user, thereby providing active

tactile feedback (see Fig 12 and col. 9, lines 12-13 of Padula).   It would have been

obvious for one of ordinary skill in the art at the time the invention was made to provide

the device of Kawashima with the metallic dome cap of Padula to improve tactile

feedback.

This rejection of claims 34 and 36 of Armstrong '997 based on Kawashima in

view of Matsumoto and further in view of Padula was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed

in the request.


**Proposed Third Party Requester Rejection: Ground #43**

The requester submits that claims 34 and 36 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Furukawa

'760 and further in view of Mitsuhashi.

Claims 34 and 36 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Kawashima in view of Furukawa '760 and further in view of

Mitsuhashi.  *In regard to claims 34 and 36*,  Kawashima teaches a game control device

for a personal computer comprised of a push button formed from a pressure-sensitive

rubber whose resistance value changes with the pressing force on the switch (see col. 1

of Kawashima).  Kawashima teaches that the oscillation frequency of a variable

frequency oscillation circuit 10 is determined by the resistance value of a pressure-

sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col. 2 of

Kawashima). Furukawa '760 teaches a device for controlling video game imagery

comprised of a controller 10 that is connected to a video game machine via a cable 11

and includes a cross shaped key 12 for vertically and horizontally moving characters on

the screen (see Fig. 1 and paragraph 8 of the accompanying translation).  A rubber

contact point 29 on the cross shaped key 12 is formed from elastic rubber material and

a moving part 30 is disposed onto the center of each cross shaped key 12 (see Fig. 2

and paragraph 9 of the accompanying translation).  Moving contact 32 is formed of

conductive rubber and is disposed on the bottom end of each moving part 30, and

conductive part 33, whose resistance varies with pressure, is attached to the bottom

end surface of moving contact 32  (see Fig. 2 and paragraph 9 of the accompanying

translation).  By performing the depressing operation, moving part 30 is lowered while

being resisted by the elastic bias of elastic let part 31 so that it is electrically connected

to fixed contacts 7 and 7 on a wiring pattern disposed on substrate 5 (see Fig. 2 and

paragraph 9 of the accompanying translation).  The pressing force applied by the

fingertip on each contact point 29 on the cross shaped key 12 changes the electrical

resistance through conductive part 33 and thus, the operation of a character in a video

game can be freely controlled by the pressing force applied by the fingertip of the

operator (see Fig. 2 and paragraph 10 of the accompanying translation).  Rubber

contact point 29 is dome-shaped, and includes elastic leg parts 31 where moving part

30 is lowered while being resisted by the elastic bias of elastic leg part 31 (see Fig. 2

and paragraph 9 of the accompanying translation).  This elastic bias would be felt as a

mechanical resistance by the user, who is applying pressing force on the button with a

fingertip (see paragraph 10 of the accompanying translation.  It would have been

obvious for one of ordinary skill in the art at the time the invention was made to provide

the device of Kawashima with the dome-shaped cap of Furukawa '760 as an alternate

pressure-sensitive variable resistance switch.  Furthermore, Mitsuhashi discloses the

use of a metallic dome cap structure to provide a high click ratio and "active tactile

feedback" by providing a "considerably good touch of clicking with a click ratio as high

as 46.7% (see col. 1, lines 48-58 of Mitsuhashi).  Mitsuhashi also teaches that "when

the surface panel sheet 21 is depressed with a finger tip at a position just above the

pushing head 22, the curvature of the diaphragm 25 is clickingly reversed to give a

considerably high click ratio even with a low pushing stroke (see Figs. 7 and 8 and col.

2, lines 54-66 of Mitsuhashi).  It would have been obvious for one of ordinary skill in the

art at the time the invention was made to replace the rubber key top 6 of Kawashima

with the metallic dome cap of Mitsuhashi to improve tactile feedback.  Furukawa '760

also discloses placing analog sensors below each of the four directional sections of a

cross key in a game controller, each of which is attached to the output circuit to control

movement of a game character in one direction, allowing for a user to vertically and

horizontally move characters on a screen (see paragraph 8 of the accompanying

translation).  Furukawa '760 also states that additional sensors may be used in other

Application/Control Number: 95/000,214                              Page 77
Art Unit: 3993

locations on the controller, other than in the cross keys (see paragraph 9 of the

accompanying translation).

This rejection of claims 34 and 36 of Armstrong '997 based on Kawashima in

view of Furukawa '760 and further in view of Mitsuhashi was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed

in the request.


**Proposed Third Party Requester Rejection: Ground #44**

The requester submits that claims 32-37 of Armstrong '997 are unpatentable

under 35 U.S.C. § 103(a) as being unpatentable over Kawashima in view of Matsumoto

and further in view of Furukawa '760.

Claims 34 and 36 of Armstrong '997 are rejected under 35 U.S.C. § 103(a) as

being unpatentable over Kawashima in view of Matsumoto and further in view of

Furukawa '760. *In regard to claims 34 and 36*, Kawashima teaches a game control

device for a personal computer comprised of a push button formed from a pressure-

sensitive rubber whose resistance value changes with the pressing force on the switch

(see col. 1 of Kawashima). Kawashima teaches that the oscillation frequency of a

variable frequency oscillation circuit 10 is determined by the resistance value of a

pressure-sensitive conductive rubber switch 3 and the capacity of a capacitor 2 (see col.

2 of Kawashima). Matsumoto discloses a variable resistance switch where "switching

can be easily recognized through the feeling of pressure on a fingertip and the

resistance between two terminals can be changed depending on how much the push

button of the switch is depressed" (see Matsumoto at page 1). Matsumoto also

discloses a "click action" made by an elastic electro-conductive curved plate 3 within a

push button 1 that can easily be recognized by the operator (see pages 7 and 9 of

Matsumoto). It would have been obvious for one of ordinary skill in the art at the time

the invention was made to provide the device of Kawashima with the switch of

Matsumoto as an alternate pressure-sensitive variable resistance switch. Furthermore,

Furukawa '760 teaches a device for controlling video game imagery comprised of a

controller 10 that is connected to a video game machine via a cable 11 and includes a

cross shaped key 12 for vertically and horizontally moving characters on the screen

(see Fig. 1 and paragraph 8 of the accompanying translation). A rubber contact point

29 on the cross shaped key 12 is formed from elastic rubber material and a moving part

30 is disposed onto the center of each cross shaped key 12 (see Fig. 2 and paragraph 9

of the accompanying translation). Moving contact 32 is formed of conductive rubber

and is disposed on the bottom end of each moving part 30, and conductive part 33,

whose resistance varies with pressure, is attached to the bottom end surface of moving

contact 32 (see Fig. 2 and paragraph 9 of the accompanying translation). By

performing the depressing operation, moving part 30 is lowered while being resisted by

the elastic bias of elastic let part 31 so that it is electrically connected to fixed contacts 7

and 7 on a wiring pattern disposed on substrate 5 (see Fig. 2 and paragraph 9 of the

accompanying translation). The pressing force applied by the fingertip on each contact

point 29 on the cross shaped key 12 changes the electrical resistance through

conductive part 33 and thus, the operation of a character in a video game can be freely

controlled by the pressing force applied by the fingertip of the operator (see Fig. 2 and paragraph 10 of the accompanying translation). Rubber contact point 29 is dome-shaped, and includes elastic leg parts 31 where moving part 30 is lowered while being resisted by the elastic bias of elastic leg part 31 (see Fig. 2 and paragraph 9 of the accompanying translation). This elastic bias would be felt as a mechanical resistance by the user, who is applying pressing force on the button with a fingertip (see paragraph 10 of the accompanying translation. It would have been obvious for one of ordinary skill in the art at the time the invention was made to provide the device of Kawashima with the dome-shaped cap of Furukawa '760 as an alternate pressure-sensitive variable resistance switch.

This rejection of claims 32-37 of Armstrong '997 based on Kawashima in view of Matsumoto and further in view of Furukawa '760 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


### Scope of Reexamination

Since requester did not request reexamination of claims 1-31 and 38-51and did not assert the existence of a substantial new question of patentability (SNQP) for such claims  (see 35 U.S.C. § 311(b)(2); see also 37 CFR 1.915b and 1.923), such claims were not be reexamined. This matter was squarely addressed in *Sony Computer Entertainment America Inc., et al. v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL 1472462.  (Not Reported in F.Supp.2d.)

The District Court upheld the Office's discretion to not reexamine claims in an *inter*

*partes* reexamination proceeding other than those claims for which reexamination had

specifically been requested.  The Court stated:

> To be sure, a party may seek, and the PTO may grant, *inter partes* review of each and every claim of a patent.  Moreover, while the PTO in its discretion may review claims for which *inter partes* review was not requested, nothing in the statute compels it to do so.  To ensure that the PTO considers a claim for *inter partes* review, § 311(b)(2) requires that the party seeking reexamination demonstrate why the PTO should reexamine each and every claim for which it seeks review.  Here, it is undisputed that Sony did not seek review of every claim under the '213 and '333 patents.  Accordingly, Sony cannot now claim that the PTO wrongly failed to reexamine claims for which Sony never requested review, and its argument that AIPA compels a contrary result is unpersuasive.

(Slip copy at page 9.)

The *Sony* decision's reasoning and statutory interpretation apply analogously to

*ex parte* reexamination, as the same relevant statutory language applies to both *inter*

*partes* and *ex parte* reexamination.  35 U.S.C. § 302 provides that the *ex parte*

reexamination "request must set forth the pertinency and manner of applying cited prior

art to every claim for which reexamination is requested" (emphasis added), and 35

U.S.C. § 303 provides that "the Director will determine whether a substantial new

question of patentability affecting any claim of the patent concerned is raised by the

request..." (Emphasis added).  These provisions are analogous to the language of 35

U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in *Sony*, and would be

construed in the same manner.  As the Director can decline to reexamine non-

requested claims in an *inter partes* reexamination proceeding, the Director can likewise

Application/Control Number: 95/000,214                              Page 81
Art Unit: 3993

do so in *ex parte* reexamination proceeding.  <u>See</u> *Notice of Clarification of Office Policy*

*To Exercise Discretion in Reexamining Fewer Than All the Patent Claims* (signed Oct.

5, 2006) 1311 OG 197 (Oct. 31, 2006).  <u>See</u> <u>also</u> MPEP § 2240, Rev. 5, Aug. 2006.

Therefore, claims 1-31 and 38-51 were not reexamined in this *inter partes*

reexamination proceeding.


## NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte
> and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this
revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.**

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Application/Control Number: 95/000,214                                    Page 82
Art Unit: 3993

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No. (571) 273-9900

Application/Control Number: 95/000,214                                      Page 83
Art Unit: 3993

### *Conclusion*

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferee _____

Conferee _____