Anascape, Ltd v. Microsoft Corp. et al                                                                                    Doc. 122 Att. 1

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,480 | 05/11/2007 | 6135886 | 6620-76454-04 | 3680 |

7590    07/27/2007

Brad A. Armstrong
P.O. BOX 2048
Carson City, NV  89702

EXAMINER

FLANAGAN, B.

ART UNIT: 3993

PAPER NUMBER

DATE MAILED: 07/27/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

Dockets.Justia.com

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

7/27/2007

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

Jared S. Goff, Esq.

Klarquist Sparkman, LLP

121 SW Salmon Street, Suite 1600

Portland, OR 97204

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008480

PATENT NO.  6,135,886

ART UNI  3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,480 | Patent Under Reexamination 6135886 |
|---|---|---|
| | Examiner Beverly M. Flanagan | Art Unit 3993 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>11 May 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,   b)☒ PTO/SB/08,   c)☐ Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

    RESPONSE TIMES ARE SET AS FOLLOWS:

    For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

    For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

    This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

    In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____, or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Beverly M. Flanagan
Primary Examiner
Art Unit: 3993

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)             Office Action in *Ex Parte* Reexamination             Part of Paper No. —

Application/Control Number: 90/008,480                                                                 Page 2
Art Unit: 3993

## DECISION ON REQUEST FOR REEXAMINATION

A substantial new question of patentability affecting claims 1-19 of United States Patent Number 6,135,886 is raised by the request for *ex parte* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### Replacement Request

Receipt of the replacement request filed May 11, 2007 is acknowledged. The decision below is based upon this replacement request, and not the original request, filed February 1, 2007, which filing date was vacated with the decision of April 11, 2007.

### Correspondence Address

It is noted that in the request for reexamination filed by third party requester, the address of an assignee, Anascape, Ltd, and counsel for the assignee, Luke Fleming McElroy, is listed. However, until such time as a properly executed power of attorney and/or correspondence address is filed by the patent owner, all correspondence will be mailed to the patent owner at the address of record with the USPTO. See MPEP § 2224 and 37 CFR 1.33(c). A courtesy copy of this communication is being sent to Anascape,

Application/Control Number: 90/008,480                                                                                    Page 3
Art Unit: 3993

Ltd., c/o Brad Armstrong, 16487 Joseph Road, Tyler, TX 75707. All further communications will be directed solely to the address of record.

### *Service of Papers*

After the filing of a request for reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248. See 37 C.F.R. 1.550(f).

### *Waiver of Right to File Patent Owner Statement*

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made by a third party requester, see 37 C.F.R. 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

### **WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

Application/Control Number: 90/008,480                                                               Page 4
Art Unit: 3993

### Amendment in Reexamination Proceedings

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by 37 C.F.R. 1.20(c).

### Submissions

In order to ensure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first Office action on the merits (which does not result in a close of prosecution). Submissions after the second Office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 C.F.R. 1.116, after final rejection and by 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving U.S. Patent No. 6,135,886 throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,480                                          Page 5
Art Unit: 3993

## *Substantial New Question*

The substantial new question of patentability (SNQ) is based on the following references:

- Furukawa, Japanese Laid-Open Utility Model Application No. H06-56740 and its accompanying translation (hereinafter "Furukawa '740");

- Furukawa, Japanese Laid-Open Patent Application Publication No. H05-326217 (hereinafter "Furukawa '217");

- Kramer, U.S. Patent No. 5,164,697 (hereinafter "Kramer");

- Shinohara, U.S. Patent No. 6,004,219 (hereinafter "Shinohara");

- Maynard, U.S. Patent No. 5,557,299 (hereinafter "Maynard);

- Snyder, U.S. Patent No. 4,749,878 (hereinafter "Snyder");

- Fukushima, U.S. Patent No. 4,775,574 (hereinafter "Fukushima");

- Konieczny, U.S. Patent No. 5,236,324 (hereinafter "Konieczny"); and

- Mason, Switch Engineering Handbook (McGraw-Hill, Inc. 1993) (hereinafter "Switch Engineering Handbook").

A discussion of the specifics follows.

Application/Control Number: 90/008,480 Page 6
Art Unit: 3993

### *The Furukawa '740 Reference*

The Furukawa '740 reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Furukawa '740 reference raises a SNQ with respect to claims 1-19 of U.S. Patent No. 6,135,886. It is agreed that Furukawa '740 teaches a pressure sensitive device 10 comprised of a rubber key top 14 formed from a thermoset rubber having a surface with an apex positioned above fixed contacts 12 and 13 on a board 11 where the fixed contacts 12 and 13 can be electrically connected to each other via a movable contact 14b mounted to the lower end of the rubber key top 14 (see Fig. 2 and paragraphs 12-16 of the accompanying translation). The electrical resistance value R between the fixed contacts 12 and 13 changes considerably on the basis of pushing force F of the rubber key top 14 (see Figs. 3 and 4). It is also agreed that Furukawa '740 teaches at least three readable states produced by at least three different pressures (see Figs. 1-3 and paragraphs 16-18 of Furukawa '740, with attention to pushing forces Fa and Fb, as well as considering an "off" state; see also page 25 of the replacement request). It is also agreed that the use of the variable resistor in the control keys of a computer keyboard implies that the output of the sensor will be converted from its original analog value to a digital value that can be input to the computer, as is typical with computer key commands and would be stored as digital information requiring at least two digital bits (see pages 11 and 24 of the replacement request). It is also agreed that the operational feeling of rubber key top 14 would be felt as a mechanical

Application/Control Number: 90/008,480                                                    Page 7
Art Unit: 3993

resistance by the user, who is applying pressing force on the button with a fingertip. In addition, patent owner's admission that "most but not all elastomeric injection molded dome caps when depressed produce a soft snap which is a user discernable tactile feedback" at col. 1, lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the argument that the rubber key top 14 of Furukawa '740 would have implicitly provided active tactile feedback to the finger of a user.

These teachings of Furukawa '740 were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Furukawa '740 is considered to raise a substantial new question of patentability as to claims 1-19 of U.S. Patent No. 6,135,886.

### *The Furukawa '217 Reference*

The Furukawa '217 reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Furukawa '217 reference raises a SNQ with respect to claims 1-19 of U.S. Patent No. 6,135,886. It is agreed that Furukawa '217 teaches a switch in a computer keyboard to allow the scroll rate, cursor moving speed and character reaction speed in computer games to be controlled according to the intention of a user (see paragraph 11 of the accompanying translation). It is also agreed that Furukawa '217 teaches a pressure-sensitive variable resistor 1 and abuts secure contact points 9 and 10 where

Application/Control Number: 90/008,480 Page 8
Art Unit: 3993

the contact pressure between carbon powder particles is increased by the applied pressure and anisotropic conductivity established between the secure contact points 9 and 10 and the electroconductive layer 7 (see Figs. 4 and 5). The resistance of the pressure-sensitive variable resistor 1 is changed according to the applied pressure so that the voltage between the secure contact points 9 and 10 can be manually and arbitrarily controlled (see abstract). When the elastic rubber of rubber key top 6 is pressed down, the pressure-sensitive variable resistor 1 makes contact with the two secure contact points 9 and 10 and when the contact pressure is low, the pressure-sensitive variable resistor 1 has high resistance; when the rubber key top 6 is further pressed down and the contact pressure is increased, the resistance is reduced (see paragraph 10 of the accompanying translation). Furukawa '217 also discloses that the variable resistor yields changes in resistance corresponding to operational feeling (see paragraph 5 of the accompanying translation). It is also agreed that Furukawa '217 implicitly teaches converting the analog output of the sensor into a digital form for use in a device such as a computer and that the output would be stored as digital information requiring at least two digital bits (see paragraph 11 of Furukawa '217 and page 26 of the replacement request). It is agreed that the operational feeling of rubber key top 6 would be felt as a mechanical resistance by the user, who is applying pressing force on the button with a fingertip. In addition, patent owner's admission that "most but not all elastomeric injection molded dome caps when depressed produce a soft snap which is a user discernable tactile feedback" at col. 1, lines 58-65 through col. 2, lines 1-15 of U.S. Patent No. 6,135,886 further supports the argument that the rubber key top 6 of

Application/Control Number: 90/008,480                                              Page 9
Art Unit: 3993

Furukawa '217 would have implicitly provided active tactile feedback to the finger of a user.

These teachings of Furukawa '217 were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Furukawa '217 is considered to raise a substantial new question of patentability as to claims 1-19 of U.S. Patent No. 6,135,886.

### The Kramer Reference

The Kramer reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Kramer reference raises a SNQ with respect to claims 1-19 of U.S. Patent No. 6,135,886. It is agreed that Kramer teaches a pushbutton switching device in an input keyboard and generates variable output by utilizing a thin carbonized plastic foil with an electrical resistce that varies with the pressure applied to the button (see col. 1, line 45 to col. 2, line 41 of Kramer). Depressing the pushbutton causes the foil 14 to come into contact with the contact linings 11.1 and 11.2, creating a bridging resistance between conductore 12.1 and 12.2 through the foil 14 (see col. 3, line 39 through col. 5, line 35 of Kramer).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in

Application/Control Number: 90/008,480	Page 10
Art Unit: 3993

deciding whether or not the claims are patentable. Accordingly, Kramer raises a SNQ as to claims 1-19, which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### The Shinohara Reference

The Shinohara reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Shinohara reference raises a SNQ with respect to claims 4, 5, 17 and 18 of U.S. Patent No. 6,135,886. It is agreed that Shinohara teaches that 256 is a useful number of readable states to represent an analog switch value for a video game controller (see col. 4, lines 9-24 of Shinohara).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Shinohara raises a SNQ as to claims 4, 5, 17 and 18, which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### The Maynard Reference

The Maynard reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

Application/Control Number: 90/008,480                                                                Page 11
Art Unit: 3993

The Maynard reference raises a SNQ with respect to claims 1, 3-5, 13-18 and 19 of U.S. Patent No. 6,135,886. It is agreed that Maynard teaches that for a conventional keyboard microcontroller conversion of key commands to digital form is commonplace, e.g., "[t]he key attributes associated with each key are recognized by programs or modules in the microcontroller which, in turn, generates one or more digital key strike signals ultimately retrieved by the microprocessor in the personal computer system" (see col. 8, lines 1-5 and col. 7, lines 52-55 of Maynard).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Shinohara raises a SNQ as to claims 1, 3-5, 13-18 and 19 which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### *The Snyder Reference*

The Snyder reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Snyder reference raises a SNQ with respect to claims 1, 3-5 and 13-19 of U.S. Patent No. 6,135,886. It is agreed that Snyder teaches control circuitry converting a pressure sensitive analog signal into a digital form to be sent to a VCR (see col. 3, lines 1-21 and 57 of Snyder).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial

Application/Control Number: 90/008,480                                              Page 12
Art Unit: 3993

likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Snyder raises a SNQ as to claims 1, 3-5 and 13-19 which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### *The Fukushima Reference*

The Fukushima reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Fukushima reference raises a SNQ with respect to claims 10, 11 and 15-18 of U.S. Patent No. 6,135,886. It is agreed that Fukushima teaches that it is preferable to make elastic pushbutton elements, such as dome caps, primarily of thermoset rubber, such as silicone (see col. 4, lines 46-53 of Fukushima).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Fukushima raises a SNQ as to claims 10, 11 and 15-18 which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### *The Konieczeny Reference*

The Konieczeny reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

Application/Control Number: 90/008,480 Page 13
Art Unit: 3993

The Konieczeny reference raises a SNQ with respect to claims 10, 11 and 15-18 of U.S. Patent No. 6,135,886. It is agreed that Konieczeny teaches that silicone materials are examples of thermoset materials that can be injection molded (see col. 3, lines 29-40).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Konieczeny raises a SNQ as to claims 10, 11 and 15-18 which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### The Switch Engineering Handbook Reference

The Switch Engineering Handbook reference is a new teaching, not previously considered or addressed in the prior examination of the patent or a final holding of invalidity by the Courts.

The Switch Engineering Handbook reference raises a SNQ with respect to claims 11 and 16 of U.S. Patent No. 6,135,886. It is agreed that Switch Engineering Handbook teaches key top dome caps that have a snap-through tactile feedback effect on actuation and deactuation (see Figs. 11.5 and 11.6 of Switch Engineering Handbook).

The teachings identified above were not present in the prosecution of the application which became U.S. Patent No. 6,135,886. Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not the claims are patentable. Accordingly, Switch Engineering

Application/Control Number: 90/008,480 Page 14
Art Unit: 3993

Handbook raises a SNQ as to claims 11 and 16 which question has not been decided in a previous examination of U.S. Patent No. 6,135,886.

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice       (571) 272-7703
Central Reexam Unit (CRU)                  (571) 272-7705
Reexamination Facsimile Transmission No.   (571) 273-9900

Application/Control Number: 90/008,480   Page 15
Art Unit: 3993

## Conclusion

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA 22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/
Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferee: _____

Conferee: _____