

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000220 | 05/04/2007 | 6403303 | |

Brad A. Armstrong
15487 Joseph Road
Tyler TX  75707

| EXAMINER |
|---|
| Scott Weaver |

| ART UNIT | PAPER |
|---|---|
| 3992 | |

DATE MAILED:

07/26/2007

# INTER PARTES REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Richard D. McLeod
Klarquist Sparkman LLP
121 S. W. Salmon Street Suite 1600
Portland OR  97204

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER <u>95/000,220</u>.

PATENT NUMBER <u>6,400,303</u>.

TECHNOLOGY CENTER <u>3999</u>.

ART UNIT <u>3992</u>.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION | Control No. 95/000,220 | Patent Under Reexamination 6400303 |
|---|---|---|
| | Examiner Scott L. Weaver | Art Unit 3992 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address.* --

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):   ☐ PTO-892    ☒ PTO/SB/08    ☒ Other: <u>Decision on Request</u>

1. ☒ The request for *inter partes* reexamination is GRANTED.

   ☐ An Office action is attached with this order.

   ☒ An Office action will follow in due course.


2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,220 Page 2
Art Unit: 3992

# DECISION GRANTING INTER PARTES REEXAMINATION

A substantial new question of patentability (SNQ) affecting claims 1-23 of United States Patent Number 6,400,303 to Armstrong, (hereinafter 'Armstrong' or 'the '303 patent' ) is raised by the present request for inter partes reexamination (hereafter the "Request") filed on May 4, 2007 for the reasons indicated below.

An Office action on the merits does not accompany this order for inter partes reexamination. An Office action on the merits will be provided in due course.

Extensions of time under 37 CFR 1.136(a) will not be permitted in inter partes reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to the patent owner in a reexamination proceeding. Additionally, 35 U.S.C. 314(c) requires that inter partes reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in inter partes reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute. 35 U.S.C. 314(b)(3).

## Substantial New Question of Patentability

For "a substantial new question of patentability'" (SNQ) to be present, it is only necessary that:

    A. The prior art patents and or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; it is not necessary that the prior art establish a prima facie case of unpatentability; and

    B. The same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

    For any reexamination ordered on or after November 2, 2002, reliance on previously Cited/considered art, i.e., "'old art,'" does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. See MPEP 2642.

Application/Control Number: 95/000,220 Page 3
Art Unit: 3992

## Prior Art Relied on in the Request

| | |
|---|---|
| Exhibit 3. | Kramer, U.S. Patent 5,164,697, issued November 17, 1992 (hereinafter **Kramer"**); |
| Exhibit 4. | Armstrong, U.S. Patent No. 5,565,891, issued Oct. 15, 1996 (hereinafter **"Armstrong ' 891 "**); |
| Exhibit 5. | Armstrong, U.S. Patent No. 6,102,802, filed Oct. 1, 1997 (hereinafter **"Armstrong '802"**); |
| Exhibit 6. | Brad A. Armstrong, U.S. Patent No. 6,208,271, filed Sep. 4, 1998 (hereinafter **"Armstrong '271"** or "the '271 Patent"); |
| Exhibit 7. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H5-87760, published November 26, 1993 (hereinafter **"Furukawa I"**) |
| Exhibit 8. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H05-326217, published December 10, 1993. (hereinafter **"Furukawa II"**) |
| Exhibit 9. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H06-056740, published August 5, 1994 (hereinafter **"Furukawa III"**) |
| Exhibit 10. | Eric L. Brandenburg, et al., U.S. Patent No. 5,231,386, issued July 27, 1993 (hereinafter **"Brandenburg"**); |
| Exhibit 11. | Yasufumi Asano, Japanese Patent Application Laid-Open Disclosure No. H01-62627, published April 21, 1989 (hereinafter **"Asano"**) |
| Exhibit 12. | Shiro Tanami, Japanese Patent Application Laid-Open Disclosure No. H05-19005 l, published July 30, 1993 (hereinafter **"Tanami"**) |
| Exhibit 13. | Junichi Terajima, Japanese Patent Application Laid-Open Disclosure No. H7-302159, published November 14, 1995 (hereinafter **"Terajima"**) |
| Exhibit 14. | Seiichi Sakurai, Japanese Patent Application Laid-Open Disclosure No. H06-154422, published June 3, 1994 (hereinafter **"Sakurai"**) |
| Exhibit 15. | Tamotsu Yamamoto, Japanese Patent Application Laid-Open Disclosure No. H08-222070, published August 30, 1996 (hereinafter **"Yamamoto"**) |

Application/Control Number: 95/000,220 Page 4
Art Unit: 3992

| | |
|---|---|
| Exhibit 16. | Keiichiro Shimada, U.S. Patent 4,866,542, issued September 12, 1989 (hereinafter "**Shimada**"); |
| Exhibit 20. | Satoshi Shinohara, U.S. Pat. No. 6,004,210, issued Dec. 21, 1999, on an application filed Aug. 27, 1996 (hereinafter "**Shinohara**"); |

## Issues Raised in the Request

The Requestor asserts that the cited references raise SNQs in the following manner:

| | |
|---|---|
| Issue 1 | Armstrong '271 raises double patenting issues with Claims 1-23. |
| Issue 2 | Armstrong '802 raises double patenting issues with Claims 1-23. |
| Issue 3 | Kramer anticipates Claims 1-2, 5-6, 14, and 18-19. |
| Issue 4 | Kramer in combination with the Admitted Prior Art (APA) renders obvious claims 1-23. |
| Issue 5 | Kramer in combination with Shimada renders obvious Claims 1-23. |
| Issue 6 | Kramer in combination with Armstrong '891 renders obvious Claims 1-8, 14. 15, and 18-23. |
| Issue 7 | Kramer in combination with Shinohara renders obvious Claim 23. |
| Issue 8 | Claims 5-6, and 18-19 are anticipated by Furukawa I. |
| Issue 9 | Furukawa I in combination with the Admitted Prior Art (APA) renders obvious Claims 1-23. |
| Issue 10 | Furukawa I in combination with Kramer renders obvious Claims 1-23. |
| Issue 11 | Furukawa I in combination with Shimada renders obvious Claims 1-23. |
| Issue 12 | Furukawa I in combination with Shimada and Shinohara renders obvious Claim 23. |
| Issue 13 | Furukawa I in combination with Shimada and Furukawa III renders obvious Claim 2 and 6. |
| Issue 14 | Claims 1-8, and 14-15 are anticipated by Armstrong '891. |

Application/Control Number: 95/000,220                                                              Page 5
Art Unit: 3992

Issue 15     Armstrong '891 in combination with the Admitted Prior Art (APA) renders obvious Claims 1-23.

Issue 16     Armstrong '891 in combination with Shimada renders obvious Claims 9, 12, 13, and 16.

Issue 17     Armstrong '891 in combination with Furukawa I renders obvious Claims 1-23.

Issue 18     Armstrong '891 in combination with Furukawa II renders obvious Claims 1-23.

Issue 19     Armstrong '891 in combination with Furukawa III renders obvious Claims 1-23.

Issue 20     Armstrong '891 in combination with Tanami renders obvious Claims 1-23.

Issue 21     Armstrong '891 in combination with Yamamoto renders obvious Claims 1-23.

Issue 22     Armstrong '891 in combination with Asano renders obvious Claims 1-23.

Issue 23     Armstrong '891 in combination with Kramer renders obvious Claims 1-23.

Issue 24     Armstrong '891 in combination with Brandenburg renders obvious Claims 1-23.

Issue 25     Armstrong '891 in combination with Sakurai renders obvious Claims 1-23.

Issue 26     Terajima anticipates claims 5 and 6.

Issue 27     Terajima in combination with Kramer renders obvious claims 18 and 19.

**Summary**

It is agreed that Issues 1-27 raise an SNQ regarding the '303 Patent.

**Prosecution History**

U. S. Patent No 6,400,303 to Armstrong was issued on June 4, 2002 from U.S. patent application No. 09/815,598 which was filed on March 22, 2001 as a continuation of application No. 09/148,806 filed Sept. 4, 1998 now U.S. patent 6,208,271 which is the subject of Ex Parte Reexamination No. 90/008,477.

The '303 patent discloses using pressure-sensitive variable-conductance sensors (PVSC sensor) in hand held remote controls where variable sensor output is required (figure 1; col. 5, ln. 41-48) and the addition of analog to digital conversion circuitry to read the variable control output of

"conductive pills" (col. 8, ln. 53- col. 9, ln.4 ; figure 7, col.12, ln.46-52). The PVSC is described in one of several examples for use in a TV remote to control the rate of change of a control signal for changing channels, the pressure applied to the button is used to vary the rate of channel change (or scrolling through channel selections) from slower speeds, with use of light pressure, to higher speed, with heavy pressure applied (col.5, ln.65- col.6, ln.19) and with different rates of change provided as related to the applied pressure on the PVSC. The device being controlled (host device) by the remote controller is not limited to any particular host device or specific control (col.11, ln. 13-26) and buttons associated with a PVSC are described as having at least three readable states which the circuitry reads (col.11,ln.40-55; col.13,ln.27-37; col.15,ln.34-56).

An examiners reasons for allowance during the prosecution of the application which became the '303 patent indicates : the prior art does not teach or suggest the limitation, "wherein the user selects any of the selectable pressure levels, of a plurality of selectable pressure levels".

Claim 1 reads as follows:

> 1. A remote controller structure allowing a user to manipulate functions of an associated remotely positioned host device;
>
> said remote controller including a housing, said housing having a battery socket allowing batteries to be inserted into said housing, said batteries to serve as an electrical power source for electronic circuitry within said housing;
>
> a plurality of finger depressible buttons exposed on said housing and interfacing with sensors electrically associated with said circuitry for allowing a user selection of function-control signals communicated from said remote controller to said host device;
>
> said circuitry including an emitter for communicating user selected function-control signals from said remote controller to the host device;
>
> at least one of said sensors including a depressible dome shaped member and a compression-sensitive variable-conductance structure, the compression-sensitive variable-conductance structure capable of providing at least three readable states of varied electrical conductance, said states dependant upon compression levels applied to the compression-sensitive variable-conductance structure through depression of at least one of said finger depressible buttons against the dome shaped member;
>
> means for reading said at least three readable states of said compression-sensitive variable-conductance structure and for forming distinct function-control signals for each of at least two states of said at least three readable states.

Application/Control Number: 95/000,220 Page 7
Art Unit: 3992

Independent claims 5, 11, and 18 also recite similar limitations as above including the at least three readable states while Independent claims 14 and 20 recite two user selectable pressure levels.

## Discussion of Issues that Raise an SNQ

**Issue 1**

The Requestor alleges that an SNQ is raised by Armstrong '271 (Exhibit 1).

It is agreed that Armstrong '271 raises an SNQ over claims 1-23 of the '303 patent to Armstrong

As provided in detail via the claim chart Exhibit 27 pages 1-19 and page 24 of the request, the Armstrong '271 patent claims recite substantially similar elements to the claims of the '303 Armstrong patent.

See Claim Chart on pages 1-19 (Exhibit 27) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1-23 during prosecution of the 09/815,898 application which became the '303 patent. Armstong '271 was not before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong. Accordingly, Armstrong '271 (Exhibit 6) raises a substantial new question of patentability as to claims 1-23 of the '303 patent.

Armstrong '271 has not been previously considered and is thus new art.


**Issue 2**

The Requestor alleges that an SNQ is raised by Armstrong '802 (Exhibit 2) with respect to claims 5, 6, and 18 of the '303 patent to Armstrong.

It is agreed that Armstrong '802 raises an SNQ over claims 5, 6, and 18 of the '303 patent to Armstrong.

As provided in detail via the claim chart Exhibit 28 pages 1-5 and page 25 of the request, the Armstrong '802 patent claims indicated in Exhibit 28 recite substantially similar elements to the claims of the '303 Armstrong patent.

Application/Control Number: 95/000,220 Page 8
Art Unit: 3992

See Claim Chart on pages 1-5 (Exhibit 28) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 5, 6, and 18 during prosecution of the 09/815,898 application which became the '303 patent. The Armstong '802 was before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong, however, no discussion or analysis of the claims of the '802 patent with respect to the applicability of double patenting was made of record during prosecution of the application which became the '303 patent to Armstrong. Accordingly, the Armstrong '802 patent (Exhibit 2) raises a substantial new question of patentability as to claims 5, 6, and 18 of the '303 patent.

Armstrong '802 was neither applied against the claims in a rejection, nor even discussed in relation to the claims during prosecution of the application which became the '303 patent. Thus, any application of Armstrong '802 to the claims is a presentation of the reference in a new light, viewing the reference in a new way as compared to its use in the earlier examination. The SNQ presented herein thus does not fail due to Armstrong '802 being old art.

**Issues 3-7**

The Requestor alleges that several SNQ are raised by Kramer.

The Requestor alleges that an SNQ is raised by Kramer with respect to claims 1-2, 5-6, 14, and 18-19 of the '303 patent to Armstrong.

It is agreed that Kramer raises an SNQ over claims 1-2, 5-6, 14, and 18-19 of the 6,400,303 patent to Armstrong.

Kramer is drawn generally to "providing pushbutton switching devices in an input keyboard that can be used to produce not only a switching process but also an adjustment process." Col. 1 lines 45-49. Kramer utilizes a pressure-sensitive variable-conductance material: "The contact resistance Rk(P) between the contact surface 18 of the counter contact 16 and the contact surfaces 15.1 and 15.2 in the switching condition depends on the operating pressure applied to the pushbutton 22." Col. 4 lines 17-21. "The pressure-dependent contact resistance between the contact surface 18 of the carbonized plastic foil and the contact surfaces 15.1 and 15.2... diminish[es] linearly as the contact pressure increases." Col. 4 line 63 - col. 5 line 3. The varying resistance is "used to cause a control circuit arrangement (6) to generate a control command (Bf) for setting a particular function and an adjustment command (Bw) for setting a particular value or adjustment rate." Abstract.

Application/Control Number: 95/000,220                                                                 Page 9
Art Unit: 3992

"...[S]pring element 20 is attached to the ceiling surface of a rubber dome of a contact mat that is arranged between the bottom 27 of a pushbutton 22 and the said spring element 20. Like the thin insulating plate in the previous embodiment, the rubber dome bears against the printed circuit board 10 and, upon the depression of the appropriate pushbutton 22, will first actuate a switching process with a snap effect and subsequently permit pressure-dependent adjustment of a function variable." (Col. 5 lines 36-48).

Kramer discloses and claims a control circuit for reading the resistance of the PSVC sensor and forming control signals Bf and Bw (figure 2) ; "...the contact linings (11.1, 11.2) correlated with the pushbutton (22) are connected to a control circuit arrangement (6) for converting bridging resistance (Rk) of the switching device (3) into a control command (Bf, Bw) that determines both a control or adjustment function and a control or adjustment variable, the bridging resistance depending on the pressure (P) that the depressed pushbutton (22) exerts on the counter contact (16) of that pushbutton. (See last paragraph of claim 1 of Kramer)

Thus, Kramer appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 29) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1-2, 5-6, 14, and 18-19 during prosecution of the 09/815,898 application which became the '303 patent. The Kramer patent was not before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong. Accordingly, the Kramer patent (Exhibit 3) raises a substantial new question of patentability as to claims 1-2, 5-6, 14, and 18-19 of the '303 patent.

Other issues alleged by the Requestor relating to Kramer in combination with other cited references, specifically Issues 4, 5, 6, and 7, raise an SNQ for the same reasoning set forth above with respect to Issue 3.

Given that the remaining features of the claims are apparently conventional, as illustrated in APA Fig. 3, and/or are disclosed by each of Shimada, Armstrong '891, and Shinohara, as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find Kramer's teachings to be important in determining the patentability of the claims.

The teachings of Kramer discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

The above substantial new question is based solely on patents already cited in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-

Application/Control Number: 95/000,220  Page 10
Art Unit: 3992

273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a): "The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination, or in view of a material new argument or interpretation presented in the request.

Kramer was neither applied against the claims in a rejection, nor even discussed in relation to the claims during prosecution of the application which became the '303 patent. Thus, any application of Kramer to the claims is a presentation of the reference in a new light, viewing the reference in a new way as compared to its use in the earlier examination. The SNQ presented herein thus does not fail due to Kramer being old art.

## Issues 8-13

The Requestor alleges that several SNQ are raised by Furukawa I.

The Requestor alleges that an SNQ is raised by Furukawa I with respect to claims 5-6, and 18-19 of the '303 patent to Armstrong in Issue 8.

It is agreed that Furukawa I raises an SNQ over claims 5-6, and 18-19 of the 6,400,303 patent to Armstrong.

Furukawa I is drawn to a remote control (figure 1) with pressure sensing switches 12.

Furukawa discloses at least one sensor including a depressible dome shaped member (Fig. 2, block 31 "elastic leg part") and a compression-sensitive variable-conductance structure (Fig. 2, block 33 "conductive part whose resistance change with pressing force") (Furukawa I, [0006, 0009, 0010]).

The electrical resistance of the switch is varied by changing the pressing force applied to the switch 12 ([0010 and 0012]) and thus at least two pressure dependent states and a third non pressure state are disclosed for controlling the host device of Furukawa I.

Application/Control Number: 95/000,220                                                                                Page 11
Art Unit: 3992

Thus, Furukawa I appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 30) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 5-6, and 18-19 during prosecution of the 09/815,898 application which became the '303 patent. The Furukawa reference was not before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong. Accordingly, the Furukawa references (Exhibit 7) raises a substantial new question of patentability as to claims 5-6, and 18-19 of the '303 patent.

Other issues alleged by the Requestor relating to Kramer in combination with other cited references, specifically Issues 9, 10, 11, 12, and 13, raise an SNQ for the same reasoning set forth above with respect to Issue 8.

Given that the remaining features of the claims are apparently conventional, as illustrated in APA, and/or are disclosed by each of Kramer, Shimada, Shinohara, and Furukawa III as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find the teachings of Furukawa I to be important in determining the patentability of the claims.

Furukawa I is new art as it was neither applied against the claims in a rejection, nor even discussed in relation to the claims.

The teachings of Furukwa I discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

## Issues 14-25

The Requestor alleges that several SNQ are raised by Armstrong '891.

The Requestor alleges that an SNQ is raised by Armstrong '891 with respect to claims 1-8, and 14-15 of the '303 patent to Armstrong.

It is agreed that Armstrong '891 raises an SNQ over claims 1-8, and 14-15 of the 6,400,303 patent to Armstrong.

Armstrong '891 discloses a remote controller structure with housing allowing a user to manipulate functions of an associated remotely positioned host device. (Fig. 9), the controller includes a "battery compartment/internal electronics", Fig. 9, blocks 132, 134 and is battery

Application/Control Number: 95/000,220                                                                 Page 12
Art Unit: 3992

powered with a battery in compartment 134, and may include a scan or program window shown at 132 for allowing programming of internal electronics. This version may prove to be particularly useful with interactive television and interactive three-dimensional displays such as are commonly referred to as virtual reality displays, and most likely will include additional function keys 136 for on/off, volume, channel selection, special functions and the like. Figure 9 Armstrong '891, col. 12, lines 29-36

Armstrong '891 discloses that the various sensors may be of many known types, including "variable resistive" and "piezo sensors." "For the purposes of this disclosure the term "sensor" or "sensors" is considered to include not only proximity sensors; variable resistive and/or capacitive sensors, piezo sensors, variable voltage/amperage limiting or amplifying sensors and switches, potentiometers, resistive and optical encoders and the like, but to also include simple on/off switches." Figure 19 - Armstrong '891, col. 3, line 25-31. Thus Armstrong 891 appears to disclose using a pressure sensitive depressible surface for remote controller with pressure sensitive states.

See Claim Chart (Exhibit 31) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1-8 and 14-15 during prosecution of the 09/815,898 application which became the '303 patent. The Armstrong '891 patent was not before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong. Accordingly, the Armstrong '891 patent raises a substantial new question of patentability as to claims 1-8 and 14-15 of the '303 patent.

Other issues alleged by the Requestor relating to Armstrong '891 in combination with other cited references, specifically Issues 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25, raise an SNQ for the same reasoning set forth above with respect to Issue 14.

Given that the remaining features of the claims are apparently conventional, as illustrated in APA, and/or are disclosed by each of Shimada, Furukawa I, Furukawa II, Furukawa III, Tanami, Yamamoto, Asano, Kramer, Brandenburg and, Sakuri as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find the teachings of Armstrong '891 patent to be important in determining the patentability of the claims.

The teachings of Armstrong '891 patent discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

The above substantial new question is based solely on patents already cited in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

Application/Control Number: 95/000,220 Page 13
Art Unit: 3992

"The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination, or in view of a material new argument or interpretation presented in the request.

Armstrong '891 was neither applied against the claims in a rejection, nor even discussed in relation to the claims during prosecution of the application which became the '303 patent. Thus, any application of Armstrong '891 to the claims is a presentation of the reference in a new light, viewing the reference in a new way as compared to its use in the earlier examination. The SNQ presented herein thus does not fail due to Armstrong '891 being old art.

## Issues 26-27

The Requestor alleges that several SNQ are raised by Terajima.

The Requestor alleges that an SNQ is raised by Terajima with respect to claims 5 and 6 of the '303 patent to Armstrong.

It is agreed that Terajima raises an SNQ over claims 5 and 6 of the 6,400,303 patent to Armstrong.

Terajima is drawn to a switching device used in a game device ( Figure 1, [0002-0006]), the device includes a switch which allows amount of manipulation of a button on the device to control amount of character movement and movement speed of a character controlled by the device (see [0014-0017] below with emphasis added; and [0028-0029]

> [0014] The switch of the switching device involving this invention is also characterized in that it provides a movable contact of conductive rubber in a semicircular shape secured to the button and a stationery contact disposed in a circular shape such that the plurality of electrodes are in positions opposing the above movable contact at a specified gap and there is a central electrode in the center position, <u>and is designed to allow output to be made as a digital amount related to the amount of manipulation that corresponds to the above conductive rubber contact area in contact with each electrode.</u>
> [0015] The signal output means of the switching device involving this invention is also characterized in that it provides a manipulation time detection circuit that converts digital

Application/Control Number: 95/000,220 Page 14
Art Unit: 3992

> amounts related to the amount of manipulation into digital signals related to manipulation time.
> [0016] The manipulation time detection circuit of the switching device involving this invention is also characterized in that it provides an information processing unit to convert digital amounts related to the amount of manipulation into digital signals related to manipulation time.
> [0017]
> [Operation of the Invention] With the present invention, when the operation switch is manipulated, signals that correspond to that operation are generated by the switch. The amount of manipulation of this switch is sent to a processing unit in a subsequent step. Also, <u>the above signal output means creates electrical signals that correspond to manipulation time from the amount of manipulation of the above switch. The electrical signals that correspond to the amount of manipulation and the manipulation time of this switching device are able to control the amount of character movement and movement speed for the game device.</u>

Terajima further discusses the use of an AD converter to convert a detected change in resistance values into digital signals ([0032 – 0046] ) with table 1 showing multiple readable states related to 'amount of manipulation' (contact surface area) so as to provide a plurality of selectable pressure levels selectable by the user for controlling movement of the character being manipulated by the game device.

Thus, Terajima appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 32) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 5-6 during prosecution of the 09/815,898 application which became the '303 patent. The Terajima reference was not before the examiner during prosecution of the 09/815,898 application which became the '303 patent to Armstrong. Accordingly, the Terajima reference (Exhibit 13) raises a substantial new question of patentability as to claims 5-6 of the '303 patent.

Other issues alleged by the Requestor relating to Terajima in combination with other cited references, specifically Issue 27, raise an SNQ for the same reasoning set forth above with respect to Issue 26.

Terajima is new art as it has not been previously considered. The teachings of Terajima discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

Application/Control Number: 95/000,220                                                      Page 15
Art Unit: 3992

## Conclusion

Claims 1-23 of the 6,400,303 patent will be reexamined as indicated in the request.

Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner or the Third Party Requester must be served on every other party in the reexamination proceeding, including any other third party requester that is part of the proceeding due to merger of the reexamination proceedings. As proof of service, the party submitting the paper to the Office must attach a Certificate of Service to the paper, which sets forth the name and address of the party served and the method of service. Papers filed without the required Certificate of Service may be denied consideration. 37 CFR 1.903; MPEP 2666.06.

Any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). Amendments in an inter partes reexamination proceeding are made in the same manner that amendments in an ex parte reexamination are made. MPEP 2666.01. See MPEP 2250 for guidance as to the manner of making amendments in a reexamination proceeding.

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent under reexamination throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2686 and 2686.04.

All correspondence relating to this inter partes reexamination proceeding should be directed to:
    Mail Stop Inter Partes Reexam
    Attn: Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450

Please FAX any communications to:
571-273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany St.
Alexandria, VA 22314

Application/Control Number: 95/000,220 Page 16
Art Unit: 3992

Any inquiry concerning this communication or earlier communications from the examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

SCOTT L. WEAVER
CRU EXAMINER-AU 3992

Conferees: