UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,477 | 05/10/2007 | 6,208,271 | 6620-76454-05 | 2625 |

7590    07/26/2007

BRAD ARMSTRONG
15487 JOSEPH ROAD
TYLER, TX 75707

| EXAMINER |
|---|
| Scott L. Weaver |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 07/26/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

RICHARD D. MCLEOD
KLARQUIST SPARKMAN LLP
121 S.W. SALMON STREET
SUITE 1600
PORTLAND, OR 97204

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,477*.

PATENT NO. *6,208,271*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,477 | Patent Under Reexamination 6,208,271 | |
|---|---|---|---|
| | Examiner Scott L. Weaver | Art Unit 3992 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>10 May 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,   b)☒ PTO/SB/08,   c)☒ Other: <u>Decision</u>

1. ☒ The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

   For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

   For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐ The request for *ex parte* reexamination is DENIED.

   This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

   In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐ by Treasury check or,

   b) ☐ by credit to Deposit Account No. _____, or

   c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                Office Action in *Ex Parte* Reexamination                Part of Paper No. 20070717

Application/Control Number: 90/008,477    Page 2
Art Unit: 3992

### DECISION ON REQUEST FOR EX PARTE REEXAMINATION

Reexamination has been requested for claims 1-31 of United States Patent Number 6,208,271 to Armstrong issued on March 27, 2001.

A substantial new question of patentability (SNQ) affecting claims 1-31 of United States Patent Number 6,208,271 to Armstrong, (hereinafter 'Armstrong' or 'the '271 patent' ) is raised by the present request for ex parte reexamination (hereafter the "Request") filed on May 10, 2007 for the reasons indicated below.

### Substantial New Question of Patentability

For "a substantial new question of patentability'" (SNQ) to be present, it is only necessary that:

    A. The prior art patents and or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; it is not necessary that the prior art establish a prima facie case of unpatentability; and

    B. The same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

    For any reexamination ordered on or after November 2, 2002, reliance on previously Cited/considered art, i.e., "'old art,'" does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. See MPEP 2642.

### Prior Art Relied on in the Request

| | |
|---|---|
| Exhibit 3. | Kramer, U.S. Patent 5,164,697, issued November 17, 1992 (hereinafter Kramer"); |
| Exhibit 4. | Armstrong, U.S. Patent No. 5,565,891, issued Oct. 15, 1996 (hereinafter "Armstrong ' 891 "); |
| Exhibit 6. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H5-87760, published November 26, 1993 |

Application/Control Number: 90/008,477                                                                Page 3
Art Unit: 3992

                            (hereinafter "Furukawa I")

| | |
|---|---|
| Exhibit 7. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H05-326217, published December 10, 1993. (hereinafter "Furukawa II" |
| Exhibit 8. | Hitoshi Furukawa, Japanese Patent Application Laid-Open Disclosure No. H06-056740, published August 5, 1994 (hereinafter "Furukawa III") |
| Exhibit 10. | Yasufumi Asano, Japanese Patent Application Laid-Open Disclosure No. H01-62627 published April 21, 1989. (hereinafter "Asano" |
| Exhibit 11. | Shiro Tanami, Japanese Patent Application Laid-Open Disclosure No. H05-19005 1, published July 30, 1993 (hereinafter "Tanami") |
| Exhibit 12. | Junichi Terajima, Japanese Patent Application Laid-Open Disclosure No. H7-302159, published November 14, 1995 (hereinafter "Terajima") |
| Exhibit 14. | Tamotsu Yamamoto, Japanese Patent Application Laid-Open Disclosure No. H08-222070, published August 30, 1996 (hereinafter "Yamamoto") |
| Exhibit 15. | Kim, U.S. Patent No. 5,377,173, issued Dec. 27, 1994 (hereinafter "Kim"); |
| Exhibit 16. | Shimada, U.S. Patent 4,866,542, issued September 12, 1989 (hereinafter "Shimada"); |
| Exhibit 17. | Eventoff, U.S. Patent No. 4,489,302, issued December 21, 1999 (hereinafter "Eventoff"); |
| Exhibit 21. | Shinohara, U.S. Pat. No. 6,004,210, issued Dec. 21, 1999, on an application filed Aug. 27, 1996 (hereinafter "Shinohara"); |

### Issues Raised in the Request

The Requestor asserts that the cited references raise SNQs in the following manner:

Issue 1        Kramer anticipates Claims 1-2, 4, 9, 11.,13, 21-22, 26, and 29.

Issue 2        Kramer in combination with the Admitted Prior Art (APA) renders obvious Claims 1-31.

Issue 3        Kramer in combination with Shinohara renders obvious Claim 10.

Application/Control Number: 90/008,477 Page 4
Art Unit: 3992

| | |
|---|---|
| Issue 4 | Kramer in combination with Shimada renders obvious Claims 3,5, 8, 12, 14, 17-20, 23, 25, 30 and 31. |
| Issue 5 | Kramer in combination with Kim renders obvious Claims 6, 15, 27, and 28. |
| Issue 6 | Kramer in combination with Shinohara renders obvious Claims 7 and 16. |
| Issue 7 | Furukawa I anticipates Claims 1,2, 4, 9, 11,13, and 22. |
| Issue 8 | Furukawa I in combination with Tanami renders obvious Claims 7 and 16. |
| Issue 9 | Armstrong '891 anticipates Claims 1, 3, 11-12, 22, 25, and 29-30. |
| Issue 10 | Armstrong '891 in combination with Furukawa I renders obvious Claims 11, 13 and 16. |
| Issue 11 | Armstrong '891 in combination with Furukawa II renders obvious Claims 11, 13 and 16. |
| Issue 12 | Armstrong '891 in combination with Furukawa III renders obvious Claims 11, 13 and 16. |
| Issue 13 | Armstrong '891 in combination with Tanami renders obvious Claims 11, 13 and 16. |
| Issue 14 | Armstrong '891 in combination with Yamamoto renders obvious Claims 11, 13 and 16. |
| Issue 15 | Armstrong '891 in combination with Asano renders obvious Claims 11, 13 and 16. |
| Issue 16 | Armstrong '891 in combination with Kramer renders obvious Claims 11, 13 and 16. |
| Issue 17 | Terajima renders obvious Claims 11, 13, and 16. |
| Issue 18 | Terajima in combination with Kramer renders obvious Claims 11,13, and 16. |

Application/Control Number: 90/008,477                                                                 Page 5
Art Unit: 3992

## Prosecution History

U. S. Patent No 6,208,271 to Armstrong was issued on March 27, 2001 from U.S. patent application No. 09/148,806 which was filed on September 4, 1998. The instant patent under reexamination is Parent to patent 6,400,303 which is the subject of Inter Parte Reexamination No. 95/000,220.

The '271 patent discloses using pressure-sensitive variable-conductance sensors (PVSC sensor) in hand held remote controls where variable sensor output is required (figure 1; col. 5, ln. 33-40) and the addition of analog to digital conversion circuitry to read the variable control output of "conductive pills" (col. 8, 44-64; figure 7, col.12, ln.39-46). The PVSC is described in one of several examples for use in a TV remote to control the rate of change of a control signal for changing channels, the pressure applied to the button is used to vary the rate of channel change (or scrolling through channel selections) from slower speeds, with use of light pressure, to higher speed, with heavy pressure applied (col.5, ln.57 - col.6, ln.11) and with different rates of change provided as related to the applied pressure on the PVSC. The device being controlled (host device) by the remote controller is not limited to any particular host device or specific control (col.11, ln..6-19) and buttons associated with a PVSC are described as having at least three readable states which the circuitry reads (col.11,ln.33-48; col.13,ln.20-30; col.15,ln.27-50).

An examiners reasons for allowance during the prosecution of the application which became the '271 patent indicates : the prior art does not teach or suggest the limitation, "wherein the user selects any of the selectable pressure levels, of a plurality of selectable pressure levels".

Claim 1 reads as follows:
    1. An improved hand-hold-able remote controller structure for controlling a host device, said remote controller of the type including a housing, an electrical power source, electronic circuitry within said housing connected to said power source and including an emitter for emitting function-control signals from said housing, a plurality of finger depressible buttons exposed on said housing and interfacing with sensors electrically associated with said circuitry for allowing user selection of function-control signals emitted for controlling a host device; at least one of said sensors including a depressible dome-cap member and a pressure-sensitive variable-conductance analog material capable of providing at least three readable states of varied conductance, said states dependant upon depressive pressure applied to the variable-conductance analog material through depression of at least one of said finger depressible buttons against the dome-cap member;

    wherein the improvement comprises:

    said circuitry including means for reading said at least three readable states said variable-conductance analog material and for emitting distinct

function-control signals for each of at least two states of said at least three readable states,

wherein, the user selects any of the selectable pressure levels, of a plurality of selectable pressure levels.

## Discussion of Issues that Raise an SNQ

### Issues 1-6

The Requestor alleges that several SNQ are raised by Kramer.

The Requestor alleges that an SNQ is raised by Kramer with respect to claims 1-2, 4, 9, 11,13, 21-22, 26, and 29 of the '271 patent to Armstrong.

It is agreed that Kramer raises an SNQ over claims 1-2, 4, 9, 11,13, 21-22, 26, and 29 of the 6,208,271 patent to Armstrong.

Request pages 51-53 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Kramer that was not present in the prosecution of the application which became the 6,208,271 patent to Armstrong.

Kramer is drawn generally to "providing pushbutton switching devices in an input keyboard that can be used to produce not only a switching process but also an adjustment process." (Col. 1 lines 45-49). Kramer utilizes a pressure-sensitive variable-conductance material: "The contact resistance Rk(P) between the contact surface 18 of the counter contact 16 and the contact surfaces 15.1 and 15.2 in the switching condition depends on the operating pressure applied to the pushbutton 22." (Col. 4 lines 17-21). "The pressure-dependent contact resistance between the contact surface 18 of the carbonized plastic foil and the contact surfaces 15.1 and 15.2... diminish[es] linearly as the contact pressure increases... [T]he linear relationship being preserved over a range of two to three powers of ten. This contact pressure is constituted by the operating pressure P acting on the pushbutton 22, since the spring element 20 transfers this pressure to the contact surface 18 of the carbonized plastic foil 14. (Col. 4 line 63 - col. 5 line 9).

The varying resistance is "used to cause a control circuit arrangement (6) to generate a control command (Bf) for setting a particular function and an adjustment command (Bw) for setting a particular value or adjustment rate." Abstract.

"...[S]pring element 20 is attached to the ceiling surface of a rubber dome of a contact mat that is arranged between the bottom 27 of a pushbutton 22 and the said spring element 20. Like the thin insulating plate in the previous embodiment, the rubber dome bears against the printed circuit board 10 and, upon the depression of the appropriate pushbutton 22, will first actuate a switching

process with a snap effect and subsequently permit pressure-dependent adjustment of a function variable." (Col. 5 lines 36-48).

When the said spring element is of a certain thickness, it will act as a displacement-sensitive pressure transducer that will convey to the user of the input keyboard the feeling that, displacing the pushbutton through a certain, albeit very small distance, he can sense the adjustment rate or parameter magnitude to be set by means of the pushbutton in a manner to which he is psychologically accustomed. (col. 2, line 65 - col. 3, line 4).

Kramer discloses and claims a control circuit for reading the resistance of the PSVC sensor and forming control signals Bf and Bw (figure 2) ; "...the contact linings (11.1, 11.2) correlated with the pushbutton (22) are connected to a control circuit arrangement (6) for converting bridging resistance (Rk) of the switching device (3) into a control command (Bf, Bw) that determines both a control or adjustment function and a control or adjustment variable, the bridging resistance depending on the pressure (P) that the depressed pushbutton (22) exerts on the counter contact (16) of that pushbutton. (See last paragraph of claim 1 of Kramer)

Thus, Kramer appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 25) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1-2, 4, 9, 11,13, 21-22, 26, and 29 during prosecution of the 09/148,806 application which became the '271 patent. The Kramer patent was not before the examiner during prosecution of the 09/148,806 application which became the '271 patent to Armstrong. Accordingly, the Kramer patent (Exhibit 3) raises a substantial new question of patentability as to claims 1-2, 4, 9, 11,13, 21-22, 26, and 29 of the '271 patent.

Other issues alleged by the Requestor relating to Kramer in combination with other cited references, specifically Issues 2, 3, 4, 5, and 6, raise an SNQ for the same reasoning set forth above with respect to Issue 1.

Given that the remaining features of the claims are conventional, as illustrated in APA Fig. 3, and/or are apparently disclosed by each of Shinohara, Shimada, and Kim as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find Kramer's teachings to be important in determining the patentability of the claims.

Kramer is new art as it has not been previously considered. The teachings of Kramer discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

...

Application/Control Number: 90/008,477 Page 8
Art Unit: 3992

### Issues 7-8

The Requestor alleges that several SNQ are raised by Furukawa I.

The Requestor alleges that an SNQ is raised by Furukawa I with respect to claims 1,2, 4, 9, 11,13, and 22 of the '271 patent to Armstrong in Issue 7.

It is agreed that Furukawa I raises an SNQ over claims 1,2, 4, 9, 11,13, and 22 of the 6,208,271 patent to Armstrong.

Request pages 85-86 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Furukawa I that was not present in the prosecution of the application which became the 6,208,271 patent to Armstrong.

Furukawa I is drawn to a remote control (figure 1) with pressure sensing switches 12.

Furukawa discloses at least one sensor including a depressible dome shaped member (Fig. 2, block 31 "elastic leg part") and a compression-sensitive variable-conductance structure (Fig. 2, block 33 "conductive part whose resistance change with pressing force") (Furukawa I, [0006, 0009, 0010]).

The electrical resistance of the switch is varied by changing the pressing force applied to the switch 12 ([0010 and 0012]) and thus at least two pressure dependent states and a third non pressure state are disclosed for controlling the host device of Furukawa I.

Thus, Furukawa I appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 26) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1,2, 4, 9, 11,13, and 22 during prosecution of the 09/148,806 application which became the '271 patent. The Furukawa reference was not before the examiner during prosecution of the 09/148,806 application which became the '271 patent to Armstrong. Accordingly, the Furukawa references (Exhibit 7) raises a substantial new question of patentability as to claims 1, 2, 4, 9, 11,13, and 22 of the '271 patent.

Other issues alleged by the Requestor relating to Kramer in combination with other cited references, specifically Issue 7, raise an SNQ for the same reasoning set forth above with respect to Issue 8.

Application/Control Number: 90/008,477 Page 9
Art Unit: 3992

Given that the remaining features of claims 7 and 16 are apparently disclosed by Tanami as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find the teachings of Furukawa I to be important in determining the patentability of the claims.

Furukawa I is new art as it has not been previously considered. The teachings of Furukawa I discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

## Issues 9-16

The Requestor alleges that several SNQ are raised by Armstrong '891.

The Requestor alleges that an SNQ is raised by Armstrong '891 with respect to claims 1, 3, 11-12, 22, 25, and 29-30 of the '271 patent to Armstrong.

It is agreed that Armstrong '891 raises an SNQ over claims 1, 3, 11-12, 22, 25, and 29-30 of the 6,208,271 patent to Armstrong.

Request pages 91-92 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Armstrong '891 that was not present in the prosecution of the application which became the 6,208,271 patent to Armstrong.

Armstrong '891 discloses a remote controller structure with housing allowing a user to manipulate functions of an associated remotely positioned host device. (Fig. 9), the controller includes a "battery compartment/internal electronics", Fig. 9, blocks 132, 134 and is battery powered with a battery in compartment 134, and may include a scan or program window shown at 132 for allowing programming of internal electronics. This version may prove to be particularly useful with interactive television and interactive three-dimensional displays such as are commonly referred to as virtual reality displays, and most likely will include additional function keys 136 for on/off, volume, channel selection, special functions and the like. (Figure 9, col. 12, lines 29-36).

Armstrong '891 discloses that the various sensors may be of many known types, including "variable resistive" and "piezo sensors." "For the purposes of this disclosure the term "sensor" or "sensors" is considered to include not only proximity sensors; variable resistive and/or capacitive sensors, piezo sensors, variable voltage/amperage limiting or amplifying sensors and switches, potentiometers, resistive and optical encoders and the like, but to also include simple on/off switches." ( col. 3, line 25-31). Thus Armstrong 891 appears to disclose using a pressure sensitive depressible surface for remote controller with pressure sensitive states.

See Claim Chart (Exhibit 27) of the request for further detail.

Application/Control Number: 90/008,477                                                          Page 10
Art Unit: 3992

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 1, 3, 11-12, 22, 25, and 29-30 during prosecution of the 09/148,806 application which became the '271 patent. The Armstrong '891 patent was not before the examiner during prosecution of the 09/148,806 application which became the '271 patent to Armstrong. Accordingly, the Armstrong '891 patent (Exhibit 27) raises a substantial new question of patentability as to claims 1, 3, 11-12, 22, 25, and 29-30 of the '271 patent.

Other issues alleged by the Requestor relating to Armstrong '891 in combination with other cited references, specifically Issues 10, 11, 12, 13,1, 14, 15, and 16, raise an SNQ for the same reasoning set forth above with respect to Issue 9.

Given that the remaining features of the claims are apparently disclosed by each of Furukawa I, Furukawa II, Furukawa III, Tanami, Yamamoto, Asano, Kramer, as indicated in the detailed item matching in the claim charts of the Request, a reasonable examiner would find the teachings of Armstrong '891 patent to be important in determining the patentability of the claims.

The Armstrong '891 patent is new art as it has not been previously considered. The teachings of Armstrong '891 discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

### Issues 17-18

The Requestor alleges that several SNQ are raised by Terajima.

The Requestor alleges that an SNQ is raised by Terajima with respect to claims 11, 13, and 16 of the '271 patent to Armstrong.

It is agreed that Terajima raises an SNQ over claims 5 and 6 of the 6,400,303 patent to Armstrong.

Request pages 113-114 are hereby incorporated by reference from the request for reexamination for their explanation of the teaching provided in Terajima that was not present in the prosecution of the application which became the 6,208,271 patent to Armstrong.

Terajima is drawn to a switching device used in a game device ( Figure 1, [0002-0006]), the device includes a switch which allows amount of manipulation of a button on the device to control amount of character movement and movement speed of a character controlled by the device (see [0014-0017] below with emphasis added; and [0028-0029]

Application/Control Number: 90/008,477                                                                Page 11
Art Unit: 3992

> [0014] The switch of the switching device involving this invention is also characterized in that it provides a movable contact of conductive rubber in a semicircular shape secured to the button and a stationery contact disposed in a circular shape such that the plurality of electrodes are in positions opposing the above movable contact at a specified gap and there is a central electrode in the center position, <u>and is designed to allow output to be made as a digital amount related to the amount of manipulation that corresponds to the above conductive rubber contact area in contact with each electrode</u>.
> [0015] The signal output means of the switching device involving this invention is also characterized in that it provides a manipulation time detection circuit that converts digital amounts related to the amount of manipulation into digital signals related to manipulation time.
> [0016] The manipulation time detection circuit of the switching device involving this invention is also characterized in that it provides an information processing unit to convert digital amounts related to the amount of manipulation into digital signals related to manipulation time.
> [0017]
> [Operation of the Invention] With the present invention, when the operation switch is manipulated, signals that correspond to that operation are generated by the switch. The amount of manipulation of this switch is sent to a processing unit in a subsequent step. Also, <u>the above signal output means creates electrical signals that correspond to manipulation time from the amount of manipulation of the above switch. The electrical signals that correspond to the amount of manipulation and the manipulation time of this switching device are able to control the amount of character movement and movement speed for the game device.</u>

Terajima further discusses the use of an AD converter to convert a detected change in resistance values into digital signals ([0032 – 0046] ) with table 1 showing multiple readable states related to 'amount of manipulation' (contact surface area) so as to provide a plurality of selectable pressure levels selectable by the user for controlling movement of the character being manipulated by the game device.

Thus, Terajima appears to disclose the features over which the claims were deemed to be allowable during prosecution.

See Claim Chart (Exhibit 28) of the request for further detail.

Given the above teachings, there is a substantial likelihood that a reasonable examiner would consider the teachings important in deciding the patentability of claims 11, 13, and 16 during prosecution of the 09/148,806 application which became the '271 patent. The Terajima reference was not before the examiner during prosecution of the 09/148,806 application which became the '271 patent to Armstrong. Accordingly, the Terajima reference (Exhibit 13) raises a substantial new question of patentability as to claims 11, 13, and 16 of the '271 patent.

Application/Control Number: 90/008,477 Page 12
Art Unit: 3992

Other issues alleged by the Requestor relating to Terajima in combination with other cited references, specifically Issue 18, raise an SNQ for the same reasoning set forth above with respect to Issue 17.

Terajima is new art as it has not been previously considered. The teachings of Terajima discussed herein are not cumulative to any written discussion on the record of the teachings of the prior art, were not previously considered nor addressed during a prior examination, and the same question was not the subject of a final holding of invalidity in the Federal Courts.

## Conclusion

Claims 1-31 of the patent will be reexamined as indicated in the request.

Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner or the Third Party Requester must be served on every other party in the reexamination proceeding, including any other third party requester that is part of the proceeding due to merger of the reexamination proceedings. As proof of service, the party submitting the paper to the Office must attach a Certificate of Service to the paper, which sets forth the name and address of the party served and the method of service. Papers filed without the required Certificate of Service may be denied consideration. 37 CFR 1.903; MPEP 2666.06.

Any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). Amendments in an inter partes reexamination proceeding are made in the same manner that amendments in an ex parte reexamination are made. MPEP 2666.01. See MPEP 2250 for guidance as to the manner of making amendments in a reexamination proceeding.

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent under reexamination throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2686 and 2686.04.

Application/Control Number: 90/008,477 Page 13
Art Unit: 3992

All correspondence relating to this inter partes reexamination proceeding should be directed to:

    Mail Stop Ex Parte Reexam
    Attn: Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450

Please FAX any communications to:
571-273-9900
Central Reexamination Unit

Please hand-deliver any communications to:
Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany St.
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

Application/Control Number: 90/008,477                                              Page 14
Art Unit: 3992

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice         (571) 272-7703
Central Reexam Unit (CRU)                    (571) 272-7705
Reexamination Facsimile Transmission No.     (571) 273-9900


SCOTT L. WEAVER
CRU EXAMINER-AU 3992

Confrees: