IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD. | § | |
| | § | Hon. Ron Clark |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 9:06-CV-00158-RC |
| | § | |
| MICROSOFT CORPORATION, and | § | |
| NINTENDO OF AMERICA, INC., | § | ***REQUEST FOR EXPEDITED BRIEFING*** |
| | § | |
| Defendants. | § | |

**DEFENDANT MICROSOFT CORPORATION'S RENEWED
MOTION TO STAY LITIGATION PENDING REEXAMINATION
IN LIGHT OF PATENT OFFICE REJECTIONS OF ANASCAPE'S CLAIMS**

**I.   INTRODUCTION**

Over the past few weeks, the Patent and Trademark Office ("PTO") has begun issuing its decisions rejecting the patent claims that Anascape is asserting in this litigation. In every Office Action issued to date, the PTO has agreed with Microsoft by rejecting each asserted claim on multiple grounds each.

Specifically, well over half of the still-asserted claims (64 of 110) have already reached the point where the PTO initially decides whether or not they are valid. Agreeing with Microsoft, the PTO has rejected ***all 64*** of them as being anticipated and/or obvious. More claims are nearing such a decision, and all signs point to rejections on them as well. With these actual rejections of Anascape's claims, the Court now has before it a dramatically different picture than it did in February, when Anascape argued that the outcome of the reexaminations was highly uncertain and would not be known for a long time.

Given the changed circumstances and new information before the Court, Microsoft moves the Court to stay the remaining six patents in this litigation. *See Ricoh Co. v. Aeroflex*

*Inc.*, 2006 WL 3708069 (N.D. Cal., Dec. 14, 2006) (granting renewed motion to stay after claims were rejected in reexamination). Over the next nine months, the parties and the Court face two claim construction hearings, damages discovery, prior art discovery, expert reports and discovery, dispositive motions, and trial preparation regarding 110 asserted claims, over half of which already stand rejected by the PTO (with the others expected to follow soon). While the outcome of the reexaminations may have been speculative in February, the PTO's mounting rejections make it highly likely that most if not all of the remaining work to be done in the litigation will be a waste of judicial and party resources.

Congress created the reexamination process as a more efficient method of challenging weak patents, one that avoids the expense of litigating all of the infringement and damages issues for such patents. Requiring the parties to spend millions of dollars over the next nine months litigating all these issues regarding claims that already stand rejected by the PTO would frustrate Congress's purpose in creating the reexamination process and would contradict the goal of Federal Rule of Civil Procedure 1 of providing "just" and "inexpensive" resolution of disputes.

***Request for Expedited Briefing***: Microsoft respectfully requests that briefing on this motion be expedited for the following reasons: (a) the Court and parties have a claim construction proceeding on August 22 in which 64 of the 68 claims being construed have already been rejected by the PTO; (b) the parties have already briefed the law in the earlier motion for stay, so this motion only requires the parties to address the effect of all of the rejections and decisions by the PTO on the stay of the remaining six patents; and (c) Microsoft brought this motion as soon as the claims reached a point where the majority of claims are rejected, with three more of Microsoft's requests granted just at the end of last week. Thus, to minimize further waste of resources, Microsoft requests that the Court order an opposition brief be filed by August

6, any reply by August 8, and any surreply by August 10.  In conferring on this motion, Microsoft asked Anascape to agree to the above expedited schedule; Anascape refused, explaining that it preferred to follow the standard, month-long briefing schedule.  Anascape certainly knows that dragging out the briefing would likely postpone decision until after the Court and the parties have incurred all of the time and resources to prepare for and conduct the August 22 hearing in which nearly all the claims to be construed stand rejected.

## II.     THE PRESENT STATUS OF THE REEXAMINATIONS

The chart below shows the current status of the reexaminations of the six patents that have not yet been stayed by the Court:

| *Patent No.* | *Number of Asserted Claims* | *Status of Reexamination (as of 7/30/07)* |
|---|---|---|
| 6,102,802 | 18 | *All claims rejected.* |
| 6,343,991 | 46 | *All claims rejected.* |
| 5,999,084 | 3 | *Ex parte reexamination ordered. Awaiting Office Action.* |
| 6,906,700 | 30 | *Inter partes reexamination ordered. Anascape's claim of priority to earlier applications rejected. Office Action expected by Sep. 13.* |
| 6,135,886 | 1 | *Ex parte reexamination ordered. Awaiting Office Action.* |
| 6,222,525 | 12 | Request pending. |

***64 Asserted Claims Examined, All Rejected***:  As the chart shows, well over half of the remaining asserted claims (64 of 110) have already reached the advanced stage of an "Office Action" in which the PTO initially decides whether or not the claims are patentable.  ***All 64*** of these claims that have reached such a decision have been emphatically rejected by the PTO.  (Declaration of J. Christopher Carraway, ¶ 3).  Not a single claim that has reached this stage has

been found valid. These rejections will be extremely difficult for Anascape to overcome for several reasons:

<u>First</u>, each has been issued not by a single examiner, but by panels of three senior-level examiners who have all concurred in the rejections. (*Id.*, ¶ 3(a)-(b)).

<u>Second</u>, each claim has been rejected not for just one reason, but instead based on multiple prior art references that the PTO found anticipate or render obvious each claim, creating numerous hurdles for Anascape on every asserted claim.[1]

<u>Third</u>, studies show that the PTO almost never changes its mind from its initial office action rejecting claims in inter partes reexaminations.[2]

<u>Fourth</u>, since this Court's *February 23 Order*, the Supreme Court strengthened the law of obviousness, making claims even less likely to survive reexamination. *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007). While many of the PTO's rejections of Anascape's claims have been anticipation rejections, many have also been obviousness rejections, suggesting that the PTO is following the Supreme Court's instruction that obviousness must be more liberally applied to reject claims than has occurred in the past.

In sum, to overcome rejections on any of these 64 claims, Anascape must convince three senior-level examiners that they were all wrong on multiple different grounds in

---

[1] For example, the PTO cited thirty (30) separate grounds for rejecting the claims of '991 patent, with each claim rejected on at least two separate grounds. (*Id.*, ¶ 3(b)).

[2] In a 2005 article surveying all of the inter partes reexaminations at that time, the author found that "No patent owner has yet succeeded in changing an examiner's mind about a rejection. Thus, in all the other *inter partes* [proceedings] with a second office action, the examiner has not had a change of heart from the position taken in the first action. Thus the first action on the merits is a guide to the viability of the original claims." Joseph D. Cohen, "What's Really Happening in Inter Partes Reexamination," p. 10 (2005) (copy attached as Carraway Decl., Ex. 1). While these statistics could be slightly different today, they show a strong focus by the PTO on providing detailed, reasoned decisions early in the process that are unlikely to change.

the face of statistics showing that the PTO rarely reverses course in reexaminations and recent instruction from the Supreme Court that obviousness law must be applied more liberally.

*__34 More Asserted Claims Being Reexamined__*:  In addition to the 64 claims that already stand rejected, another 34 of the 110 still-asserted claims have not yet reached the Office Action stage but have reached the earlier stage of an order deciding that they will be reexamined.  Again, the PTO has agreed with Microsoft that all 34 of these claims will be reexamined, and has found multiple "substantial new questions of patentability" for each claim.  (Carraway Decl., ¶ 4).  A number of reasons strongly suggest that these 34 claims are heading for the same fate as the 64 that have already been rejected.

<u>First</u>, most of these remaining claims (30 of 34) are in the '700 patent.  In opposing the previous stay motion, Anascape argued that Microsoft's reexamination request for the '700 patent was unlikely to succeed because the "lynchpin" of Microsoft's request was a "priority" argument that had already been considered and rejected by the PTO.  (Anascape Sur-Reply, Docket No. 71, pp. 2-4).  The PTO has already proven Anascape wrong:  in ordering reexamination of the '700 patent, the PTO expressly agreed with Microsoft's argument that the claims in that patent are in fact ***not*** entitled to claim "priority" to the earlier Armstrong application, thereby opening the door to large amounts of prior art.  (Carraway Decl., ¶ 4(b)).  Thus, Anascape's argument to the Court for why it thought the '700 patent would survive reexamination has already been refuted by the PTO.

<u>Second</u>, for each Anascape reexamination that has reached an Office Action, the PTO issued rejections that largely mirrored the "substantial new questions of patentability" ("SNQs") it had found in its earlier reexamination orders.  (Carraway Decl., ¶ 3(a)-(b)).  Given that the PTO has already found multiple SNQs for each of the 34 claims awaiting an Office

- 5 -                    MICROSOFT'S RENEWED MOTION TO STAY
                                          LITIGATION PENDING REEXAMINATION

Action, this mounting track record of turning SNQs into corresponding claim rejections bodes very badly for Anascape. Rejections on most of these 34 additional claims are expected in the next month or so.[3]

***Only 12 Claims Are Still Awaiting Decision on Reexamination Request***: Only one of the six unstayed patents—the '525 patent with 12 asserted claims—is still awaiting an order of reexamination. Given that it is the parent of the '700 patent, which the PTO has already ordered into reexamination and stripped of its claim to an earlier priority date, the claims of the '525 patent will likely face rejection as well.

### III.  IN LIGHT OF THE NEW INFORMATION, THE RELEVANT FACTORS OVERWHELMINGLY SUPPORT STAYING THIS CASE, THEREBY AVOIDING THE WASTE OF RESOURCES INHERENT IN LITIGATING INVALID CLAIMS

In considering whether to stay a case pending reexamination, the Court considers (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) whether discovery is complete and whether a trial date has been set. *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007) (hereafter the "*February 23 Order*"). In view of the PTO's rejection of all claims considered to date in the reexamination process, each of these factors overwhelmingly points to a stay.

####     A.    *Simplification: The PTO's Mounting Rejections Show That Further Litigation Will Be a Waste of Time and Money*

In February, the Court's decision carefully weighed, on a patent-by-patent basis, the likelihood that the reexaminations would simplify the litigation. *February 23 Order*, 475 F.

---

[3] Reexamination of the '700 patent, which includes 30 of the asserted claims, was ordered on July 13, 2007. (Carraway Decl., ¶ 4(b)). The order stated that an Office Action would soon follow. (*Id.*) The PTO's practice is to provide such an Office Action within two months of the order. (Manual of Patent

Supp. 2d at 616-17.  At that time, the chance that reexamination would eliminate claims from the case was based on predictions about what the PTO might do in this case based on historical statistics.  In opposing the earlier stay motion, Anascape argued that Microsoft should "provide the Court with specific facts that demonstrate a *likelihood* that issues will be simplified," not just argue historical statistics.  (Anascape Opp. to Stay Motion, Docket No. 62, p. 12, emphasis original).  Now the Court has the benefit of knowing what the PTO has ***actually*** done:  rejected every Anascape claim it has reexamined—already over half of the ones now being litigated—citing numerous different grounds for each claim.  Certainly, with the PTO rejecting 100% of Anascape's claims it has reexamined and striking down Anascape's priority dates (an issue in the litigation as well), the likelihood of simplification that Anascape argued was so necessary for a stay has been more than satisfied.

These rejections provide the Court with first-hand information about the viability of Anascape's claims on their merits.  Based on these real data points in which Anascape's claims are being rejected at a 100% rate, the Court can more reliably project that few if any asserted claims will survive reexamination.  Any resources spent litigating claims that are not going to survive reexamination will be entirely wasted, because claims found invalid and canceled by the PTO are rendered void—as if they never existed—eliminating all infringement, validity, and damages issues regarding those claims from the litigation.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Even if Anascape chooses to amend the claims to overcome the rejections, such amended claims would be extinguished from this litigation for five of the six remaining patents (all but the '700 patent), making any further work on those claims in this litigation a waste of resources.

---

Ex'g Proc., § 2660, online at http://www.uspto.gov/web/offices/pac/mpep/mpep_e8r5_2600.pdf).

This is because amended claims could only be asserted prospectively, against sales that occur after the reexaminations are concluded. *Bloom Eng'g Co., Inc. v. North Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); 35 U.S.C. §§ 307(b), 252. Only the '700 patent is asserted against Microsoft's current product (the Xbox 360 controllers); the remaining five patents are asserted against Microsoft's old Xbox controllers no longer being manufactured. Thus, any claims in those five patents would disappear from Anascape's infringement case whether they are canceled or even just amended.

In the end, this motion is not merely about future simplification of the lawsuit; with every passing week, the mounting rejections make it look more and more like Anascape's patents will in fact be extinguished and its infringement case (and any verdict it might obtain in the interim) rendered void. Thus, the motion is instead about whether justice and efficiency, two of the hallmarks of Rule 1, would be truly served by having the parties and the Court continue to spend precious resources litigating all of the issues surrounding patent claims that have now been shown unlikely to survive. Moreover, if the litigation and the reexaminations are carried out to completion in parallel fashion and reach inconsistent results, even more wasteful litigation would be generated over the significance of the different results.[4] For the sake of justice and efficiency, the litigation should be stayed to allow the PTO to determine whether Anascape has any valid patent claims left at all.

There appears to be no precedent in this District for a stay sought after the PTO has issued rejections of asserted claims. The reason why such an issue is now before this Court is

---

[4] The Federal Circuit has held that if reexamination rejections are upheld on appeal, the patent would be "void ab initio," rendering any injunction from a litigation verdict "inoperative." *Standard Havens Prods., Inc., v. Gencor Indus., Inc.*, 1993 U.S. App. LEXIS 11963, *1-2 (Fed. Cir. 1993) (unpublished) (reversing denial of stay of injunction and damages pending appeal of reexamination decision). Thus, the PTO's cancellation of the patents should render void any inconsistent litigation decision.

that the PTO is acting very quickly on the collective set of Anascape patents, allowing rejections to mount before the litigation has advanced too far.  However, other courts have faced this issue and have recognized that once claims are rejected, the uncertainty regarding the reexamination drops, the likelihood of simplification jumps, the balance swings decisively in favor of a stay, and moving forward to trial becomes necessarily inefficient and unfair.  For example, in *Ricoh Co. v. Aeroflex Inc.*, the district court initially denied a stay at the time the requests for reexamination were filed, in part because of the "unpredictability of the PTO's reexamination proceedings."  2006 WL 3708069, at *1 n.3, *4 (N.D. Cal., Dec. 14, 2006).  However, after the claims were actually rejected, the defendant renewed its motion for a stay.  Even though discovery was complete and trial was approaching, the court granted the renewed motion for a stay because proceeding with the case when the claims stood rejected "would be a tremendous waste of time and resources of all those involved."  *Id*. at *5.[5]  A stay is even more appropriate here than in the *Ricoh* case given that the present litigation is at a much earlier stage with more judicial and party resources at serious risk of waste if the litigation continues forward.

        B.        *<u>Prejudice</u>:  While Anascape Will Not Be Prejudiced By A Stay, The Parties, The Court, Third Parties, and Two Juries Would Be Prejudiced If Litigation Continues On Claims That Are Being Rejected*

The Court should look not only at any legitimate prejudice to Anascape if a stay issues, but also at the prejudice to others if the litigation continues on claims the PTO is rejecting.

As for Anascape, in denying the stay in February as to some of the asserted patents, the Court referred to Anascape's concern that Microsoft and Nintendo might have trouble finding witnesses with memories about their older accused products.  Just as Anascape's argument that

---

[5] *See also Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 441 (D.N.H. 1997) (granting stay after remand when the asserted claims had been rejected in reexamination Office Action).

claim rejections were unlikely has now been undermined by the PTO's actual results, so too Anascape's argument of potential evidentiary prejudice turned out to be unwarranted speculation. In February and March, Anascape took the 30(b)(6) depositions of Microsoft and Nintendo on the structure and operation of their accused products. (Carraway Decl., ¶ 8). In each, witnesses were provided and questions answered. (*Id.*) After asking all of its questions, Anascape concluded each deposition in approximately four hours, and in the many months since, has never suggested that the witnesses failed to provide all the information sought about the accused products. (*Id.*)

Nor can Anascape articulate any other unfair prejudice if the PTO is allowed to finish its swiftly moving proceedings. The PTO is, as required for patents in litigation, acting with "special dispatch." 35 U.S.C. § 305. In fact, the PTO has assigned all twelve reexaminations to a small set of several experienced examiners who are apparently taking full advantage of the overlapping subject matter between the patents by quickly issuing office actions rejecting the claims. (Carraway Decl., ¶ 7). Furthermore, even if Anascape overcomes the rejections, Anascape could not be prejudiced by the delay: it is only seeking money damages, mostly for old products, and if there is a surviving claim and if liability is found, Anascape can be fully compensated for the delay with pre-judgment interest.[6]

In contrast, significant prejudice will befall the parties, the Court, and third parties if the litigation continues as the rejections continue to mount. Over the next nine months, the parties

---

[6] *See, e.g.*, *Antor Media Corp. v. Nokia, Inc.*, No. 2:05-CV-186-DF (E.D. Tex. Sept. 27, 2006), at 8 (finding no prejudice from a stay because "Antor can be adequately compensated through economic damages under these circumstances—neither Antor, nor its licensees, is a sole manufacturer or producer of the intellectual property in question"); *Photoflex Prods., Inc. v. Circa 3 LLC*, 2006 WL 1440363 (N.D. Cal. May 26, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."); *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669, at *9 (S.D. Iowa August 24, 2004) (finding no undue prejudice and granting a stay where defendant was not "selling or

will spend millions of dollars on claim construction hearings, technical discovery, prior art discovery, damages discovery, expert reports and depositions, dispositive motions, trial preparation, and trial.[7]  All of this litigation constitutes real prejudice, in the form of dollars and time, that the Court should consider.  As the *Ricoh* Court recently explained:

> [T]he Court notes the risk of prejudice to Defendants if a stay is not issued.  Defendants will be forced to potentially litigate a lengthy patent trial and a potential appeal, and possibly be forced to pay significant damages for infringing the exact claims that have already been determined to be invalid by the PTO.

*Ricoh Co.*, 2006 WL 3708069, at *3 (N.D. Cal. Dec. 14, 2006).  The Court will also expend a significant amount of time and effort going forward on claims as to which rejections on multiple grounds have been entered.

The prejudice extends to third parties as well.  Third parties have already been burdened in this litigation, and as the parties move to complete discovery this Fall, it is expected that over a dozen additional third parties will face subpoenas for documents and deposition testimony in order to support claims and defenses.  (Carraway Decl., ¶ 10).  Finally, if this case goes forward to trial on claims that have been rejected, two juries of this district's citizens will hear and decide issues of infringement and invalidity of claims that the PTO has already rejected.

### C. *Stage of the Litigation:  The Case Is Not Much Further Along Than In February*

The final factor to be considered is the stage of the litigation when the stay is requested.  The more that remains to be done, the greater the possible waste of resources if the litigation goes forward on patents that stand rejected.  In its February 23 Order staying some of the patents, the Court found that the case was still in its early stages, which weighed in favor of a stay.

---

marketing products under its patent and would be entitled to money damages if proven").

[7] At the case management hearing, the parties estimated combined budgets of $10 million.  (Carraway Decl., ¶ 11).

*February 23 Order*, 474 F. Supp. 2d at 616. Today, the case is not much further along. Since the Court's earlier Order, very few additional documents have been produced, only a few additional depositions have been taken, and the parties have submitted their claim construction briefs. (Carraway Decl., ¶ 9). In contrast, as stated above, most of the litigation remains to be completed over the coming months.

The case is still early enough that the Court has an opportunity to save the parties, the judicial system, third parties, and the citizenry from wasting time and effort in litigation over claims that already stand rejected by the PTO and that, consequently, stand little chance of surviving the reexaminations.

## IV.     CONCLUSION

It appears that no Court in this District has been faced with the question whether to stay in the extreme case where the very claims being litigated are already being rejected by the PTO. Patent litigation is extremely expensive and time-consuming for the parties and the Court. Here, where so much time and expense stands to be wasted litigating about patents in which the majority of the asserted claims are already rejected and the remainder are headed that way, the Court should declare a standstill and wait until the PTO completes its work. If any claim survives reexamination (which appears less likely with every PTO decision) and if the parties still have a dispute, that dispute can be tried without prejudice to Anascape. In contrast, the defendants, the judicial system, and third parties are unlikely ever to get back what is wasted litigating rejected claims. For the above reasons, the Court should stay the remainder of this litigation pending the completion of the reexaminations. Microsoft also requests the accelerated briefing schedule set forth at pages 2-3 above.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 30, 2007 | By: /s/ J. Christopher Carraway<br>J. Christopher Carraway (admitted *pro hac vice*)<br>christopher.carraway@klarquist.com<br>Joseph T. Jakubek (admitted *pro hac vice*)<br>joseph.jakubek@klarquist.com<br>Stephen Joncus (admitted *pro hac vice*)<br>stephen.joncus@klarquist.com<br>Richard D. Mc Leod (Bar No. 24026836)<br>rick.mcleod@klarquist.com<br>Derrick W. Toddy (admitted *pro hac vice*)<br>derrick.toddy@klarquist.com<br>KLARQUIST SPARKMAN, LLP<br>121 S.W. Salmon Street, Suite 1600<br>Portland, Oregon 97204<br>Telephone: 503-595-5300<br><br>J. Thad Heartfield (Bar No. 09346800)<br>thad@jth-law.com<br>Law Offices of J. Thad Heartfield<br>2195 Dowlen Road<br>Beaumont, Texas 77706<br>Telephone: 409-866-3318<br>Facsimile: 409-866-5789<br><br>Clayton E Dark Jr. (Bar No. 05384500)<br>clay.dark@yahoo.com<br>Clayton E Dark Jr., Law Office<br>207 E Frank Ave # 100<br>Lufkin, TX 75901<br>Telephone: 936-637-1733<br><br>Stephen McGrath, Esq. (admitted *pro hac vice*)<br>MICROSOFT CORPORATION<br>One Microsoft Way, Building 8<br>Redmond, Washington 98052-6399<br>Telephone: 425-882-8080<br>Facsimile: 425-706-7329<br><br>*Attorneys for Defendant Microsoft Corporation* |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 30th day of July, 2007.

/s/ J. Christopher Carraway

## CERTIFICATE OF CONFERENCE

Counsel for Microsoft has conferred with counsel for Anascape in a good faith attempt to resolve without court intervention the matters raised by Microsoft's foregoing Renewed Motion to Stay Litigation Pending Reexamination. Counsel for Anascape stated that Anascape opposes the motion. Anascape also stated that it opposed Microsoft's request that briefing on this motion be expedited to avoid wasting further resources.

/s/ J. Christopher Carraway