# Exhibit A

Dockets.Justia.com

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,217 | 05/07/07 | 6,344,791 | |

BRAD A. ARMSTRONG
15487 JOSEPH ROAD
TYLER, TX 75707

| EXAMINER |
|---|
| Flanagan, Beverly |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

08/01/07

# *INTER PARTES* REEXAMINATION
## COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

MICHAEL J. KEENAN
NIXON & VANDERHYE
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203-1808

## Transmittal of Communication to Third Party Requester
### *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER _95/000,217_.

PATENT NUMBER _6,344,791_.

TECHNOLOGY CENTER _3999_.

ART UNIT _3993_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| ***ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION*** | Control No. | | Patent Under Reexamination | |
|---|---|---|---|---|
| | 95/000,217 | | 6344791 | |
| | Examiner | | Art Unit | |
| | Beverly M. Flanagan | | 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):    ☐ PTO-892    ☒ PTO/SB/08    ☐ Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

     ☐ An Office action is attached with this order.

     ☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

Application/Control Number: 95/000,217                                   Page 2
Art Unit: 3993

## DECISION GRANTING INTER PARTES REEXAMINATION

### *Amended/Substitute Request*

Receipt of the amended/substitute request filed May 7, 2007 is acknowledged.

The decision below is based upon this amended/substitute request, and not the original

request, filed January 31, 2007 or the corrected papers, filed February 22, 2007, which

filing date was vacated with the decision of March 6, 2007.


### *Substantial New Question of Patentability*

A substantial new question of patentability affecting claims 1-66 of U.S. Patent

No. 6,344,791 to Armstrong (hereinafter "Armstrong '791") is raised by the present

request for *inter partes* reexamination.


Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes*

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an

applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. §

314(c) requires that *inter partes* reexamination proceedings "will be conducted with

special dispatch" (37 CFR 1.937). Patent owner extensions of time in *inter partes*

reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are

not available for third party requester comments, because a comment period of 30 days

from service of patent owner's response is set by statute. 35 U.S.C. § 314(b)(3).

Application/Control Number: 95/000,217                                    Page 3
Art Unit: 3993

## Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR

1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving U.S. Patent No. 6,344,791 throughout the course of this

reexamination proceeding.  The third party requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding.  See MPEP §§ 2686 and 2686.04.

## References Relied Upon

The following prior art documents are relied upon by requester in support of this

request for *inter partes* reexamination:

1.    Knox, UK Published Patent Specification No. 1 412 298 (hereinafter
      "Knox");

2.    Kaneko et al., Japanese Laid Open Utility Model Application No. JP S61-
      100844 (hereinafter "Kaneko");

3.    Matsumoto et al., Japanese Laid Open Utility Model Application No. JP
      S61-103836 (hereinafter "Matsumoto");

4.    Jackson, U.S. Patent No. 3,463,041 (hereinafter "Jackson");

5.    Kramer, U.S. Patent No. 5,164,697 (hereinafter "Kramer");

6.    Brandenberg et al. U.S. Patent No. 5,231,386 (hereinafter "Brandenberg");

7.    Tanami et al., Japanese Laid Open Patent Application No. JP H5-304007
      (hereinafter "Tanami");

Application/Control Number: 95/000,217                                    Page 4
Art Unit: 3993

8.    Kawashima, Japanese Laid Open Utility Model Application No. JP H3-61304 (hereinafter "Kawashima");

9.    Furukawa et al., Japanese Laid Open Utility Model Application No. JP5-87760 (hereinafter "Furukawa '760);

10.   Furukawa et al., Japanese Laid Open Utility Model Application No. H6-56740 (hereinafter "Furukawa '740");

11.   Meleard et al., UK Published Patent Application No. 2 156 588 A (hereinafter "Meleard");

12.   Padula et al., U.S. Patent No. Re. 34,095 (hereinafter "Padula").

### *Requester's Position*

The request indicates that the third party requester considers:

1.    Claim 1 of Armstrong '791 to be unpatentable over Knox alone;

2.    Claim 1 of Armstrong '791 to be unpatentable over Kaneko alone;

3.    Claim 1 of Armstrong '791 to be unpatentable over Matsumoto alone;

4.    Claim 1 of Armstrong '791 to be unpatentable over Jackson alone;

5.    Claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 to unpatentable over Kramer alone;

6.    Claim 6 to be unpatentable over Kramer taken with Brandenberg or Tanami;

7.    Claims 8-13 to be unpatentable over Kramer taken with Kawashima;

Application/Control Number: 95/000,217                                    Page 5
Art Unit: 3993

8.    Claims 7 and 14-18 to be unpatentable over Kramer taken with Furukawa
      '760;

9.    Claims 20 and 21 to be unpatentable over Kramer taken with Brandenberg
      or Furukawa '740;

10.   Claims 22-24, 27 and 28 to be unpatentable over Kramer taken with
      Meleard;

11.   Claims 25, 26 and 29-33 to be unpatentable over Kramer taken with
      Meleard and Furukawa '760;

12.   Claim 39 to be unpatentable over Kramer taken with Padula;

13.   Claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 to be unpatentable over
      Kramer taken with Furukawa '760.


### Prosecution History of the Armstrong '791 Patent

U.S. Patent No. 6,344,791 issued from an application with the Serial No.
09/599,095, which was filed on June 21, 2000. The '095 application was a continuation
of an application with the Serial No. 09/122,269, filed on July 24, 1998, Now U.S. Patent
No. 6,135,886, which was a continuation-in-part of an application with the Serial No.
08/942,450, filed on October 1, 1997, now U.S. Patent No. 6,102,802.


### Substantial New Question (SNQ)

. The substantial new questions of patentability with respect to Jackson, Padula,
Brandenberg, Kaneko, Matsumoto, Tanami, Kawashima, Furukawa '740, Meleard and

Application/Control Number: 95/000,217                                        Page 6
Art Unit: 3993

Knox is based on new teachings, not previously considered or addressed in the prior

examination of the patent or a final holding of invalidity by the Courts. The substantial

new question of patentability with respect to Kramer and Furukawa '760 is based on a

patent already cited by the applicant and considered, but neither applied nor

commented upon by the examiner.

A discussion of the specifics now follows:

### Claim 1 of Armstrong '791 to be unpatentable over Knox alone

It is agreed that consideration of Knox alone raises a substantial new question of

patentability as to claim 1 of Armstrong '791.  As pointed out in page 24 of the

amended/substitute request, Knox teaches a keyboard that includes a plastic plate or

sheet 4 formed with a plurality of dome keys 3 arranged to push a conductive layer into

engagement with contacts 2 (see Figs. 4 and 5).  Variable resistance is established

between the layer 14 and the terminals A-O of the contact track 2 (see page 3, lines 61-

69 and Fig. 4).  Knox further teaches that each key can be arranged to act against a

metal spring so that a "snap action" and an audible "click" is obtained when the key is

depressed (see page 4, lines 30-33).

These teachings of Knox were not present in the prosecution of the application

which became the Armstrong '791.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable.  Accordingly, Knox is considered to raise a substantial

new question of patentability as to claim 1 of the Armstrong '791 patent.

Application/Control Number: 95/000,217                              Page 7
Art Unit: 3993

### Claim 1 of Armstrong '791 to be unpatentable over Kaneko alone

It is agreed that consideration of Kaneko alone raises a substantial new question of patentability as to claim 1 of Armstrong '791. As pointed out in pages 19 and 25 of the amended/substitute request, Kaneko teaches a variable resistance switch 10 that includes an electro-conductive curved plate 3 (dome cap) adapted to be pressed by a pushbutton 1 so as to engage a pressure sensitive electroconductive rubber sheet 6 (see page 4, lines 4-12). When pressed to the center of the generating line 8 on a concave surface side of the sheet 6, the concave surface is elastically deformed and changes its orientation with a click action to the configuration shown in Fig. 4 (see also Fig. 3 and page 5, lines 7-11). Kaneko also teaches that "a switchover point (clock point) is provided in the middle of the stroke of the push button so that the operator clearly recognizes the switching from the off-state to the on-state in the course of the pressing operation (see page 2, lines 12-16, page 6, lines 2-4 and page 7, lines 4-13).

These teachings of Kaneko were not present in the prosecution of the application which became the Armstrong '791. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kaneko is considered to raise a substantial new question of patentability as to claim 1 of the Armstrong '791 patent.

### Claim 1 of Armstrong '791 to be unpatentable over Matsumoto alone

It is agreed that consideration of Matsumoto alone raises a substantial new question of patentability as to claim 1 of Armstrong '791. As pointed out in pages 23

Application/Control Number: 95/000,217                                    Page 8
Art Unit: 3993

and 25 of the amended/substitute request, Matsumoto teaches a variable resistance

sensor that comprises a rigid support board, a sheet between the board and a resilient

dome cap (see Fig. 1 and page 4, lines 9-11).  Matsumoto also teaches that the dome

cap exhibits a snap-through tactile feedback, stating "a switchover point (click point) is

provided in the middle of the stroke of the push button so that the operator clearly

recognizes the switching from the off-state to the on-state in the course of the pressing

operation" (see page 2, lines 12-16, page 6, lines 2-4 and page 7, lines 4-13).

    These teachings of Matsumoto were not present in the prosecution of the

application which became the Armstrong '791.  Further, there is a substantial likelihood

that a reasonable examiner would consider these teaching important in deciding

whether or not the claims are patentable.  Accordingly, Matsumoto is considered to

raise a substantial new question of patentability as to claim 1 of the Armstrong '791

patent.


### Claim 1 of Armstrong '791 to be unpatentable over Jackson alone

    It is agreed that consideration of Jackson alone raises a substantial new question

of patentability as to claim 1 of Armstrong '791.  As pointed out in pages 14-15 and 26

of the amended/substitute request, Jackson teaches a push button diaphragm switch for

a keyboard formed of a plurality of openings 18 where a metal switch 20 underlies a

metal keyboard base plate 16 and is formed with a plurality of dome-shaped resiliently

deformable dimples 22 that project into corresponding openings 18 and serve as

keyboard push buttons (see col. 1, lines 64-73).  The dimples 22 are adapted to engage

contact buttons 30 secured to a contact board 28 and provide snap-through tactile

feedback to the user (see Fig. 3 and col. 2, lines 25-42).

These teachings of Jackson were not present in the prosecution of the

application which became the Armstrong '791. Further, there is a substantial likelihood

that a reasonable examiner would consider these teaching important in deciding

whether or not the claims are patentable. Accordingly, Jackson is considered to raise a

substantial new question of patentability as to claim 1 of the Armstrong '791 patent.


*Claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of Armstrong '791 to be unpatentable*

*over Kramer alone*

It is agreed that consideration of Kramer alone raises a substantial new question

of patentability as to claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of Armstrong '791.

As pointed out in pages 15, 16 and 26-29 of the amended/substitute request, Kramer

teaches a variable sensor 3 including a rigid support board 10, supporting a sheet 17

where the sheet is positioned between the board 10 and a depressible, resilient dome

cap providing a snap-through threshold tactile feedback to the user (see col. 5, lines 36-

48 and col. 1, lines 21-35). Kramer also teaches that the board 10 supports electrical

circuit traces 11.1 and 11.2 and a means for variable controlling imagery is the control

circuit operating on the basis of variable resistance as a function of applied pressure

(see col. 4, lines 61-65 and Fig. 2). Kramer also teaches a spring 20 located on the

ceiling surface of a rubber dome and electricallt conductive carbonized foil 14 located to

contact circuit traces 11.1 and 11.2 (see Fig. 1). Kramer also teaches that spring 20,

carbonzied foil 14 and conductive layer 17 are carried by the dome cap and deform

under pressure and the switching device 3 acts as a pressure dependent, variable

sensor as pressure is applied to the pushbutton (see col. 5, lines 39-48). Kramer also

teaches that the countercontact 16 and spring 20 supply snap-through tactile feedback

through the button to the user (see col. 5, lines 42-48 and col. 1, lines 21-35). Kramer

also teaches that the dome cap is rubber (see col. 1, lines 21-35 and col. 5, line 40).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teaching important in deciding whether or not the claims are patentable.

Accordingly, Kramer is considered to raise a substantial new question of patentability as

to claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of the Armstrong '791 patent.

### *Claim 6 of Armstrong '791 to be unpatentable over Kramer taken with Brandenberg or Tanami*

It is agreed that consideration of Kramer taken with Brandenberg or Tanami

raises a substantial new question of patentability as to claim 6 of Armstrong '791. As

pointed out in pages 18-20, 29 and 30 of the amended/substitute request, Kramer

teaches circuit traces 11.1 and 11.2, as noted above. It is also agreed that

Brandenberg and Tanami teach interdigitated circuit traces in pressure sensitive switch

constructions (see col. 3, line 68 through col. 4, line 2 of Brandenberg and page 6,

paragraph 10 and Fig. 2 of Tanami).

These teachings of Kramer were present in the prosecution of the application
which became the Armstrong '791 patent and were considered, but not applied. The
teachings of Brandenberg and Tanami were not present in the prosecution of the
application which became the Armstrong '791 patent. Further, there is a substantial
likelihood that a reasonable examiner would consider these teaching important in
deciding whether or not the claims are patentable. Accordingly, Kramer taken with
Brandenberg or Tanami is considered to raise a substantial new question of
patentability as to claim 6 of the Armstrong '791 patent.

### Claims 8-13 of Armstrong '791 to be unpatentable over Kramer taken with Kawashima

It is agreed that consideration of Kramer taken with Kawashima raises a
substantial new question of patentability as to claims 8-13 of Armstrong '791. As
pointed out in pages 20, 30 and 31 of the amended/substitute request, Kramer teaches
variable pressure sensitive sensors in hand-operated input keyboards on remote
transmitters or for electronic appliances in entertainment electronics that produce active
tactile feedback (see col. 1, lines 46-54 and col. 5, lines 42-48). It is agreed that
Kawashima teaches variable resistors in an operating body 10 for finger tip actuation
where the operating body or button 10 is of the see-saw type (see page 6, lines 3-9,
page 4, lines 24-26, page 5, lines 25 and 26 and Figs. 1, 3 and 4).

These teachings of Kramer were present in the prosecution of the application
which became the Armstrong '791 patent and were considered, but not applied. The

Application/Control Number: 95/000,217                                    Page 12
Art Unit: 3993

teachings of Kawashima were not present in the prosecution of the application which

became the Armstrong '791 patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable.  Accordingly, Kramer taken with Kawashima is

considered to raise a substantial new question of patentability as to claims 8-13 of the

Armstrong '791 patent.

### Claims 7 and 14-18 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760

It is agreed that consideration of Kramer taken with Furukawa '760 raises a

substantial new question of patentability as to claims 7 and 14-18 of Armstrong '791.

As pointed out in pages 21, 22 and 31-33 of the amended/substitute request, Furukawa

'760 teaches a hand-operated video game controller 10 that includes right and left-hand

areas, with cross key or button 12 on the left side and trigger buttons 19 and 20 on the

right side (see Fig. 1).  It is also agreed that Furukawa '760 teaches that the pressure

sensitive switch could be employed with other buttons, as desired locations (see page

9).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied.  Further, there is a substantial likelihood that a reasonable examiner would

consider these teaching important in deciding whether or not the claims are patentable.

Application/Control Number: 95/000,217                                    Page 13
Art Unit: 3993

Accordingly, Kramer taken with Furukawa '760 is considered to raise a substantial new

question of patentability as to claims 7 and 14-18 of the Armstrong '791 patent.


### Claims 20 and 21 of Armstrong '791 to be unpatentable over Kramer taken with Brandenberg or Furukawa '740

It is agreed that consideration of Kramer taken with Brandenberg or Furukawa

'740 raises a substantial new question of patentability as to claims 20 and 21 of

Armstrong '791. As pointed out in pages 18, 22, 23, 33 and 34 of the

amended/substitute request, both Brandenberg and Furukawa '740 teach the use of

convex actuator surfaces (17 in Brandenberg and 14b in Furukawa '740).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

teachings of Brandenberg and Furukawa '740 were not present in the prosecution of the

application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Brandenberg or Furukawa '740 is considered to raise a substantial new question of

patentability as to claims 20 and 21 of the Armstrong '791 patent.

Application/Control Number: 95/000,217                                Page 14
Art Unit: 3993

### Claims 22-24, 27 and 28 of Armstrong '791 to be unpatentable over Kramer taken with Meleard

It is agreed that consideration of Kramer taken with Meleard raises a substantial new question of patentability as to claims 22-24, 27 and 28 of Armstrong '791. As pointed out in pages 23, 34 and 35 of the amended/substitute request, Meleard teaches a snap-through switch where a non-conductive sheet 20 supports conductive material (contact surface 26) (see page 2, lines 70-81 and Fig. 3). It is also agreed that the conductive material 26 in Meleard contacts circuit traces 16 (see Fig. 3 and page 2, lines 125-130).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Meleard were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Meleard is considered to raise a substantial new question of patentability as to claims 22-24, 27 and 28 of the Armstrong '791 patent.

### Claims 25, 26 and 29-33 of Armstrong '791 to be unpatentable over Kramer taken with Meleard and Furukawa '760

It is agreed that consideration of Kramer taken with Meleard and Furukawa '760 raises a substantial new question of patentability as to claims 25, 26 and 29-33 of

Application/Control Number: 95/000,217                                    Page 15
Art Unit: 3993

Armstrong '791. As pointed out in pages 35-37 of the amended/substitute request,

Furukawa '760 teaches a hand-operated video game controller 10 that includes right

and left-hand areas, with cross key or button 12 on the left side and trigger buttons 19

and 20 on the right side (see Fig. 1). It is also agreed that Furukawa '760 teaches that

the pressure sensitive switch could be employed with other buttons, as desired

locations (see page 9).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied. The teachings of Meleard were not present in the prosecution of the

application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Meleard and Furukawa '760 is considered to raise a substantial new question of

patentability as to claims 25, 26 and 29-33 of the Armstrong '791 patent.


***Claim 39 of Armstrong '791 to be unpatentable over Kramer taken with Padula***

It is agreed that consideration of Kramer taken with Padula raises a substantial

new question of patentability as to claim 39 of Armstrong '791. As pointed out in pages

17 and 37 of the amended/substitute request, Padula teaches using a metal dome 102

in a pressure transducer (see col. 9, lines 12-16 and Fig. 12).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

Application/Control Number: 95/000,217                                    Page 16
Art Unit: 3993

teachings of Padula were not present in the prosecution of the application which

became the Armstrong '791 patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable.  Accordingly, Kramer taken with Padula is considered to

raise a substantial new question of patentability as to claim 39 of the Armstrong '791

patent.


### *Claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760*

It is agreed that consideration of Kramer taken with Furukawa '760 raises a

substantial new question of patentability as to claims 40-43, 47-55, 57-60, 62, 63, 65

and 66 of Armstrong '791.  As pointed out in pages 38-42 of the amended/substitute

request, Furukawa '760 teaches a hand-operated video game controller 10 that includes

right and left-hand areas, with cross key or button 12 on the left side and trigger buttons

19 and 20 on the right side, where the buttons are positioned for thumb depression (see

Fig. 1).  It is also agreed that Furukawa '760 teaches that the pressure sensitive switch

could be employed with other buttons, as desired locations (see page 9).  It is also

agreed that Furukawa '760 teaches controlling game characters in a video (see

paragraph 10 on page 7).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied.  Further, there is a substantial likelihood that a reasonable examiner would

Application/Control Number: 95/000,217                                    Page 17
Art Unit: 3993

consider these teaching important in deciding whether or not the claims are patentable.

Accordingly, Kramer taken with Furukawa '760 is considered to raise a substantial new

question of patentability as to claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 of the

Armstrong '791 patent.


### Summary of Substantial New Questions Adopted and Not Adopted

All of requester's substantial new questions have been adopted by the examiner.


### Office Action on the Merits

An Office action on the merits will follow in due course.


### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte*
> *and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this
revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.**

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

Application/Control Number: 95/000,217                    Page 18
Art Unit: 3993

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice        (571) 272-7703
Central Reexam Unit (CRU)                   (571) 272-7705
Reexamination Facsimile Transmission No. (571) 273-9900

Application/Control Number: 95/000,217                                    Page 19
Art Unit: 3993

### *Conclusion*

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766

Conferee:     /Jeffrey R. Jastrzab/
              Jeffrey R. Jastrzab
              CRU Examiner

Conferee _____

APPENDIX B
PTO/SB/08

Sheet 1 of 1

**INFORMATION DISCLOSURE CITATION**

*(Use several sheets if necessary)*

| | |
|---|---|
| Atty. Docket No.<br>**723-2108** | Serial No.<br>~~To Be Assigned~~ 95/000,217 |
| Applicant<br>**ARMSTRONG** | |
| Filing Date<br>**January 31, 2007** | TC/A.U.<br>**To Be Assigned** |

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| *BF* | 3,643,041 | 2/1972 | Jackson | | | |
| *BF* | 5,164,697 | 11/1992 | Kramer | | | |
| *BF* | 5,231,386 | 7/1993 | Brandenburg et al. | | | |
| *BF* | RE 34,095 | 10/1992 | Padula et al. | | | |
| | | | | | | |
| | | | | | | ✓ |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| *BF* | 1 412 298 | 11/1975 | Great Britain | | | | |
| | 2 156 588 A | 10/1985 | Great Britain | | | | |
| | 61-103836 | 7/1986 | Japan | | | | |
| | 61-100844 | 6/1986 | Japan | | | | |
| | 3-61304 | 6/1991 | Japan | | | | |
| | 5-87760 | 11/1993 | Japan | | | | |
| | 5-304007 | 11/1993 | Japan | | | | |
| ↓ | 6-56740 | 8/1994 | Japan | | | | |

### OTHER DOCUMENTS (including Author, Title, Date, Pertinent pages, etc.)

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| | | | |
|---|---|---|---|
| *Examiner | B. FLANAGAN | Date Considered | 7/26/07 |

Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to application.

1167442