# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

| | |
|---|---|
| Anascape, Ltd., | |
| **Plaintiff,** | |
| v. | Civil Action No. 9:06-cv-158-RC |
| Microsoft Corp., and | JURY TRIAL REQUESTED |
| Nintendo of America, Inc., | |
| **Defendants.** | |

## ANASCAPE, LTD.'S CONSOLIDATED RESPONSE TO DEFENDANT MICROSOFT CORPORATION'S AND DEFENDANT NINTENDO OF AMERICA'S RENEWED MOTIONS TO STAY LITIGATION

Dallas 242392v4

Dockets.Justia.com

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.    LITTLE HAS CHANGED SINCE THE COURT REFUSED TO
       STAY THIS LITIGATION IN FEBRUARY ....................................................2

       A.     Reexaminations Rarely Result In Cancellation Of All
              Claims .........................................................................................................2

       B.     Nothing Suggests that the Anascape Reexaminations Will
              Result In A Cancellation Of All Claims ...................................................3

III.   NONE OF THE RECENT DEVELOPMENTS IN THE
       REEXAMINATION AFFECTS THE THREE-FACTOR TEST
       APPLIED BY THIS COURT ..............................................................................5

       A.     A Stay Will Not Streamline the Litigation or Simplify the
              Issues at Trial ............................................................................................6

       B.     Anascape Will Be Prejudiced by a Stay ..................................................9

       C.     The Stage of the Litigation Weighs Against Granting a Stay................11

IV.   GRANTING A STAY INVITES DEFENDANTS TO
       UNILATERALLY DERAIL ALL PATENT INFRINGEMENT
       LITIGATION......................................................................................................12

V.     CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)......................................................................................11

*Alza Corp. v. Wyeth*,
    No. 9:06 CV 156, 2006 WL. 3500015 (E.D. Tex. Nov. 21, 2006)..............................5, 13

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    No. 9:06-CV-155, *Order* (E.D. Tex. Mar. 12, 2007)...........................................................5

*Castanho v. Jackson Marine, Inc.*,
    484 F. Supp. 201 (E.D. Tex. 1980)............................................................................2, 13

*In re Klopfenstein*,
    380 F.3d 1345 (Fed. Cir. 2004)...................................................................................10

*Gladish v. Tyco Toys, Inc.*,
    No. S-92-1666, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept. 16, 1993)........................7

*KSR Int'l Co. v. Teleflex Inc.*,
    127 S. Ct. 1727 (2007).................................................................................................4

*NTP, Inc. v. Research In Motion, Ltd.*,
    397 F. Supp. 2d 785 (E.D. Va. 2005) ........................................................................9, 10

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005)......................................................................12, 13

*St. Gobain Performance Plastics Co. v. Advanced Flexible Composites, Inc.*,
    436 F. Supp. 2d 252 (D. Mass. 2006) .........................................................................10

*Standard Havens Prods., Inc. v. Gencor Indus.*,
    No. 93-1208, 1993 U.S. App. LEXIS 11963 (Fed. Cir. May 21, 1993)............................8

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001)....................................................................................8

*Visto v. Seven*,
    No. 2:03-CV-0333 (TJW), Docket No. 247 (E.D. Tex. July 10, 2005)..............................8

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) ..........................................................................10

Dallas 242392v4

**FEDERAL STATUTES**

35 U.S.C. § 301 ..................................................................................................................7

35 U.S.C. § 30 ....................................................................................................................9

37 C.F.R. 1.997 ..................................................................................................................8

35 U.S.C. § 316 ..................................................................................................................8

**MISCELLANEOUS**

Joseph D. Cohen, *What's Really Happening in Inter Partes Reexaminations*, at 10 ......................4

Manual of Patent Examining Procedure, § 2671.03 ......................................................3

Roger Shang & Yar Chaikovsky, *Inter Partes Reexamination of Patents*, 15 Tex. Intell.
   Prop. L.J. 1, 16-17 (2006) ................................................................................................9

Dallas 242392v4

## I.    INTRODUCTION

The Court should again deny the motions of Defendants Microsoft Corp. ("Microsoft") and Nintendo of America, Inc. ("Nintendo") to stay this litigation pending reexamination of the patents-in-suit.  In their briefs, the Defendants make a number of observations about the current state of the reexaminations, but – just like their previous attempt to delay this litigation and keep Anascape from its day in Court – the Defendants can only speculate as to the final results of the reexaminations and the efficiency that may or may not ultimately be derived from a stay. Needless to say, the Defendants' speculation and assumptions do not evince the "pressing need" required to delay trial in this case.

Moreover, each of the three factors that this Court considers when determining whether or not to grant a stay weighs in favor of keeping this case on its current schedule.  This case will be simplified only in the unlikely event that each of the asserted claims in this case is cancelled or amended during reexamination.  Even a "final rejection" of the Anascape patents would not be final until the Board of Patent Appeals and Interferences, and then the Federal Circuit, affirm it, which will take years.  Second, as the Court recognized in its previous Order, "time is money," and a stay will unavoidably prejudice Anascape by delaying the trial of this case.  Finally, this case is becoming ripe for trial – claim construction issues are fully briefed, the inventor and the Defendants' 30(b)(6) representatives have been deposed, key third parties have been subpoenaed, and trial is less than nine months away.  In light of the fast-approaching trial setting, Defendants cannot seriously contend that a stay will expedite resolution of the present litigation.

Anascape asks the Court to deny the motions, and thereby deny the Defendants' invitation to delay the resolution of this case in favor of Patent Office proceedings that will likely span the next two or three years.

## II.    LITTLE HAS CHANGED SINCE THE COURT REFUSED TO STAY THIS LITIGATION IN FEBRUARY

"The burden is squarely on the party seeking the stay to show that there is a pressing need for a delay." *Castanho v. Jackson Marine, Inc.* 484 F. Supp. 201, 209 (E.D. Tex. 1980).  In February, the Court found that the Defendants had not satisfied this burden, and refused to stay nine of the twelve patents-in-suit.  The Defendants now attempt to discharge their burden solely by relying on self-serving speculation loosely tied to recent developments in the Patent Office.  The Defendants' speculation about the future outcomes of the pending reexaminations and reexamination requests, however, is supported by nothing more than faulty assumptions and irrelevant and outdated statistics, as described below.

### A.    *Reexaminations Rarely Result In Cancellation Of All Claims*

The Patent Office's decision to order reexamination with respect to five of the asserted patents is not unusual, given the Patent Office's historic 91% and 95% rates for ordering reexaminations in response to requests for *ex parte* and *inter partes* reexamination, respectively. *See* U.S. Patent & Trademark Office, EX PARTE REEXAMINATION FILING DATA (Dec. 31, 2006) at 2, attached hereto as Ex. B.  In contrast, only 10% of *ex parte* reexaminations result in the cancellation of all of the claims of any single patent.[1]  *Id.*  This result is not surprising, as the patentee typically will not begin its participation in the reexamination process until after the first office action is received.  In this case, neither Anascape nor Brad Armstrong has yet to file a single document in the reexamination proceedings.  The posture of the reexaminations will certainly change as Anascape begins to respond to the Defendants' invalidity assertions.

---

[1] The *inter partes* reexamination procedure is simply too new to provide meaningful statistics.  As of December 31, 2006, only seven *inter partes* reexamination certificates had issued.  *See* U.S. Patent & Trademark Office, EX PARTE REEXAMINATION FILING DATA (Dec. 31, 2006) at 3, attached hereto as Ex. B.

B.    *Nothing Suggests that the Anascape Reexaminations Will Result In A Cancellation Of All Claims*

Defendants wrongly assume that, because three examiners have been assigned to the reexaminations of the '802 and '991 patents, it will be highly difficult for Anascape to overcome the rejections in those two cases.   The Defendants failed to recognize, however, that the assignment of a three-examiner panel is <u>standard</u> Patent Office procedure.  *See* U.S. Patent & Trademark Office, Change in Policy of Examiner Assignment in Ex Parte Reexamination Proceedings and Establishment of Patentability Review Conferences in Ex Parte Reexamination Proceedings, 1237 OG 138 (Aug. 29, 2000), *available at* http://www.uspto.gov/web/offices/com/sol/og/2000/week35/patreex.htm, attached as Exhibit C; Manual of Patent Examining Procedure, § 2671.03, attached as Exhibit D.  Moreover, the three-examiner panels who typically conduct reexaminations cancel all of the claims of a patent in only 10% of *ex parte* reexaminations.  *See* U.S. Patent & Trademark Office, Ex Parte Reexamination Filing Data (Dec. 31, 2006) at 2, attached hereto as Ex. B.  Nothing about the assignment of a three-examiner panel to either reexamination affects the likelihood that all of the claims of the '802 and '991 patents will be cancelled at a rate higher than the 10% historic rate.

Defendants point out that the claims of the '802 and '991 patents have been rejected over multiple prior art references.   These multiple reference rejections do not suggest that the rejections will be <u>more difficult</u> for Anascape to overcome; to the contrary, the multiple prior art references suggest that the rejections will be <u>easier</u> to overcome.  For 44 of the 93 claims in the '802 and '991 patents, the Patent Office has acknowledged that no single reference discloses all of the elements of the claimed inventions.  Instead, the Patent Office resorted to combinations of two or three prior art references in order to reject the claims under the doctrine of obviousness, which is a far weaker basis for rejection than anticipation.  With respect to these obviousness

rejections, the Patent Office must satisfy the additional requirements imposed by § 103(a) before canceling any of the claims, easing Anascape's arguments.

As to the "studies" that purportedly show that the Patent Office almost never changes its mind after an initial rejection of claims in *inter partes* reexaminations, Microsoft's Brief at 4, the single study cited by Microsoft is limited to *inter partes* reexaminations as of 2005. *Inter partes* reexamination is a new procedure at the Patent Office, and at the time of the article cited by Microsoft, only *two inter partes* reexamination certificates had ever been issued by the Patent Office. Joseph D. Cohen, *What's Really Happening in Inter Partes Reexaminations*, at 10 (attached as Ex. 1 to Microsoft's Brief). The Court cannot draw any meaningful conclusions based on a statistical sample of two. Further, only two of the six reexaminations relevant to this case were filed as *inter partes* reexaminations. The remaining four, including the '802 patent, are *ex parte* reexaminations to which the 10% statistic, not the one cited by Microsoft, applies.

Defendants also overblow the anticipated effect of the Supreme Court's opinion in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007). Commentators have opined that "the PTO is saying that there is no drastic change in the Supreme Court's decision." *See* Amanda Ernst, *PTO Issues Memo on KSR Decision to Examiners* (2007), attached as Ex. E.

The Defendants read far too much into the finding of a "substantial new question of patentability" by the Patent Office. This standard is much lower than the standard required for rejecting a claim. As described in the Order Granting Reexamination for the '700 Patent:

> For a "substantial new question of patentability " (SNQ) to be present, <u>it is only necessary that</u>:
>
> A.     The prior art patents or printed publication raise a substantial question of patentability regarding at least one claim, i.e. the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; <u>it is not necessary that the prior art establish a prima facie case of unpatentability</u>; . . .

4

*See* Order Granting Reexamination of the '700 Patent, attached as Ex. 1 to Nintendo's Brief.

In sum, each of the "developments" identified by the Defendants can be quickly discounted. Nothing about the current posture of the reexaminations satisfies the Defendants' burden to show that there is a substantial chance that the reexaminations will result in a simplification of the case, much less a "pressing need for a delay."

## III.    NONE OF THE RECENT DEVELOPMENTS IN THE REEXAMINATION AFFECTS THE THREE-FACTOR TEST APPLIED BY THIS COURT

"[E]ach motion to stay pending reexamination filed in this Court is determined on a case-by-case basis with each cause of action presenting distinct circumstances." *Echostar Techs. Corp. v. TiVo, Inc.*, 5:05-CV-81, 2006 WL 2501494, at *4 (E.D. Tex. July 14, 2006) (Craven, M.J.). This Court has previously recognized three factors to consider before granting a stay pending reexamination: (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay unduly prejudices or presents a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set. *Alza Corp. v. Wyeth*, No. 9:06 CV 156, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006). As in February, these factors do not support a stay of the patents-at-issue in this case. *See Blackboard, Inc. v. Desire2Learn, Inc.*, No. 9:06-CV-155, *Order on Defendant's Renewed Motion to Stay* at 1 (E.D. Tex. Mar. 12, 2007) (Clark, J.) ("The factors discussed at the December 8th hearing weigh even more heavily against a stay at this stage of the proceedings. Substantial discovery has been conducted by the parties, and the *Markman* in this case is set for July 2007. There is no indication that a stay would result in any savings of time or resources at this point.")

### A.     A Stay Will Not Streamline the Litigation or Simplify the Issues at Trial

Granting a stay will not simplify the litigation or streamline the issues to be presented at trial. The Defendants' assertions to the contrary are based entirely on speculation that their hypothetical reexaminations will be wholly successful.

First, the litigation will not be streamlined by granting a stay in this litigation, because the same resources will be expended whether or not this Court grants a stay.[2] Although the case involves a number of claims, the patents are closely related – claiming priority to one of three common patent applications and directed to a common technology. Thus, the Court should not expect the elimination of one or more patents or claims from the lawsuit to substantially change or simplify the issues in the litigation – the same inventor, same accused products, same experts, same witnesses, same depositions, and the same documents will be involved. Assuming that the reexaminations follow the historical statistical patterns, then 26% of the claims will survive the reexamination procedure unamended. *See* U.S. Patent & Trademark Office, EX PARTE REEXAMINATION FILING DATA (Dec. 31, 2006) at 2, attached hereto as Ex. B. Thus, the same depositions will be taken, the same documents will be analyzed, and the same experts will testify. No litigation resources will be conserved by granting a stay pending reexamination.

Second, the Defendants erroneously contend that a litigation stay is the only way to avoid a duplication of effort by this Court and the Patent Office.[3] Many courts who have found that a reexamination will simplify the issues of the case have been faced with an *inter partes* reexamination in which the requester is estopped from contesting validity in future litigation. In

---

[2] Nintendo turns this factor on its head when it argues that a stay directed toward the '700 patent will completely remove its new Wii controllers from the case, as they are only accused of infringing the '700 patent. They will be temporarily stayed from the case, but must be addressed at the conclusion of the reexamination of the '700 patent.

[3] The Defendants created parallel venues by filing the motions for reexamination. This Court is fully equipped to resolve the Defendants' validity arguments of the asserted patents and typically does so much quicker than the Patent Office.

Dallas 242392v4

fact, the Defendants relied heavily on the *inter partes* nature of their reexamination in their original briefing on this topic. *See, e.g.,* Microsoft's January 16, 2007 Original Motion for Stay at 2 (Docket No. 56). Because of the Court's previous order staying three of the patents and because of subsequent agreement between the parties, only two of the six patents currently at issue are subject to an *inter partes* reexamination.

Moreover, in both *ex parte* and *inter partes* reexaminations, the Patent Office is limited to considering written prior art consisting of patents and printed publications. *See* 35 U.S.C. § 301. Here, Defendants have asserted numerous prior art game controllers as prior art to the asserted patents. Instead of <u>streamlining</u> the litigation, then, the use of such art would <u>complicate</u> the litigation, as two separate bodies (the Patent Office and the Court) will be forced to determine validity separately based on differing sets of prior art. In such a situation, the efficient solution is to simply present all validity arguments to the Court, which may consider *all* of the relevant prior art in one setting. *See Gladish v. Tyco Toys, Inc.*, No. S-92-1666, 1993 U.S. Dist. LEXIS 20211, *6 (E.D. Cal. Sept. 16, 1993) (noting that the Court is "the only forum for complete consideration of evidence . . . of invalidity").

Third, Microsoft's and Nintendo's assumptions that all of the claims asserted against their older Xbox and Gamecube products will be eliminated by the reexaminations are similarly unfounded. For example, Anascape has accused the Xbox controllers of infringing over 100 claims of the six patents currently at issue. Even if one claim asserted against the Xbox and Gamecube systems survives against reexamination without amendment, the lawsuit would continue against the associated controllers – they would not be removed from the lawsuit.

Fourth, it is doubtful that this Court's order could ever be "rendered void" as suggested by the Defendants. Based on historical statistics, it is much more likely that this Court will

Dallas 242392v4

resolve the validity of the asserted claims before the Patent Office. An *ex parte* reexamination takes an average of twenty-three months, while many *inter partes* reexaminations require at least three years.[4] *See* U.S. Patent & Trademark Office, EX PARTE REEXAMINATION FILING DATA (Dec. 31, 2006) at 2, attached hereto as Ex. B. Moreover, the Court "is not required to stay judicial resolution in view of the reexamination."[5] *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

Fifth, there is significant precedent for proceeding with a patent infringement lawsuit even when claims have been rejected in a reexamination proceeding.[6] As an example, in *Visto v. Seven*, the court kept pre-trial administration on schedule, even though one of the patents-in-suit was in reexamination. *See Visto v. Seven*, No. 2:03-CV-0333 (TJW), Docket No. 247 (E.D. Tex. July 10, 2005). Shortly before trial, the examiner indicated that he would soon issue a reexamination certificate. *See Visto v. Seven*, No. 2:03-CV-0333 (TJW), Docket No. 262 (E.D. Tex. Aug. 23, 2005). With the consent of each of the parties, the Court briefly stayed the litigation until the reexamination certificate issued and then proceeded with the trial without delay. *See Visto v. Seven*, No. 2:03-CV-0333 (TJW), Docket Nos. 266 (E.D. Tex. Sept. 1, 2005),

---

[4] Although the *inter partes* procedure is new, the statistics produced by the Patent Office show that the procedure, including appeals, will likely take at least three years. Under 35 U.S.C. § 316, the Patent Office must issue and publish a certificate whenever an *inter partes* reexamination procedure is terminated. *See* MPEP § 2688; 37 C.F.R. 1.997. According to Ex. B, the average pendency is 27.9 months, but a closer examination of the statistics shows that the usual duration is much longer. Twenty-six reexaminations were filed in the fiscal years between 2000 and 2003. Since the genesis of the *inter partes* reexamination procedure, only nine reexaminations have concluded -- two were vacated, and seven were issued certificates. Therefore, many of the reexaminations filed between 2000 and 2003 were still pending as of December 31, 2006 -- indicating that the Court should reasonably expect a delay of at least three years.

[5] The unpublished *per curiam* opinion cited by Microsoft, *Standard Havens Prods., Inc. v. Gencor Indus.*, No. 93-1208, 1993 U.S. App. LEXIS 11963, at *1-2 (Fed. Cir. May 21, 1993) simply states that the decision of a federal court – not the Patent Office – in the appeal of a reexamination proceeding can override a litigation verdict. Logically, in certain circumstances, the Federal Circuit's decision in this case can also have a *res judicata* effect on any later decision appealed from the Patent Office.

[6] In the two cases cited by Microsoft, *Ricoh Co. v. Aeroflex Inc.* and *Vitronics Corp. v. Conceptronic, Inc.*, the court granted stays only when all of the asserted claims had been rejected in a reexamination proceeding. That is not the case here; claims have been rejected in only two of the six asserted patents.

267 (E.D. Tex. Sept. 6, 2005). The Eastern District is not alone; courts across the nation have determined that, often, the best course is to allow reexamination and litigation on the same patents to proceed concurrently. In *NTP, Inc. v. Research in Motion, Inc*., the court denied four stays, allowing reexamination to proceed concurrently with trial, appeal, and remand to the district court. 397 F. Supp. 2d 785, 787 (E. D. Va. 2005).

> **B.**    ***Anascape Will Be Prejudiced by a Stay***

As the Court recognized in its previous Order, the delay caused by a stay will severely and inherently prejudice Anascape; for a patentee, "time is money." February 23, 2007 Order at 3. An *ex parte* reexamination takes an average of twenty-three months, while many *inter partes* reexaminations require at least three years.

Even in the worst-case scenario, in which all claims are rejected by the Patent Office (which is extremely unlikely in this case given the number and quality of claims), it would still take years for that rejection to become final. After the Patent Office finally rejects a claim (which still takes many months after the initial office action), the patent owner may appeal the examiner's decision to the Board of Patent Appeals and Interferences. The backlog at the Board of Patent Appeals and Interferences ("BPAI") has constantly grown over the last year and a half; the number of pending *ex parte* appeals has risen from 882 at the end of 2005 to 2477 as of June 2007. U.S. Patent and Trademark Office, Board of Patent Appeals and Interferences Process Production Report (2006 & 2007), *available at* http://www.uspto.gov/web/offices/dcom/bpai/docs/process/index.htm, attached as Ex. G. If the BPAI persists in its rejection, then appeal can be taken to the Court of Appeals for the Federal Circuit. 35 U.S.C. §§ 306 (*ex parte*), 315 (*inter partes*). Again, the Federal Circuit appeal will typically take up to two years, and BPAI appeals from *inter partes* reexaminations are similarly lengthy. Roger Shang & Yar Chaikovsky, *Inter Partes Reexamination of Patents*, 15 Tex. Intell.

Prop. L.J. 1, 16-17 (2006).  Importantly, the appeal is not just a rubberstamp of the Patent Office, but rather, the standard of review of the Patent Office decision is *de novo*.  *In re Klopfenstein*, 380 F.3d 1345, 1347 (Fed. Cir. 2004).

Taking into account time for appeal, "[r]eality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals."  *NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 788 (E.D. Va. 2005); *see also St. Gobain Performance Plastics Co. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252, 253 (D. Mass. 2006) (noting that the reexamination "process may well take several years"); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999). (noting that the delay "could easily exceed two years").  As an example of Defendants' wildly optimistic forecasts, the Court will remember that Defendants assured it that the Patent Office will grant or deny all of the reexamination requests within three months of filing.  *See, e.g.,* Microsoft's January 16, 2007 Original Motion for Stay at 4 (Docket No. 56).  In contrast to these predictions, a majority of the reexamination requests were originally refused by the Patent Office and re-filed to correct their deficiencies, delaying the Patent Office's decision to order reexamination by months.  *See*, *e.g.*, April 10, 2007 Notice Vacating *Inter Partes* reexamination Filing Date, attached as Ex. F.  Moreover, one of the reexamination requests regarding the '525 patent remains undecided due to Microsoft's filing deficiencies.  The Defendants wholly ignore this unavoidable prejudice to Anascape.

The risk that witnesses and documents relevant to the damages issues in this case will not be available three years or more down the road is real and still exists despite the discovery that has already been completed.  As one example, no damages or willfulness discovery will be conducted in this case until after the claim construction hearings.  This critical element of

Anascape's case remains to be developed; there is a significant concern that a three-year delay will cause critical witnesses and documents to be lost over time. In analogous settings, courts have found prejudice due to an "inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events." *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (considering a laches defense); Order on Motion to Stay, Docket No. 75 at 7 (recognizing a "tactical disadvantage" from an inability to engage in timely discovery). The probability that Plaintiff will have a more difficult time procuring evidence wholly within Defendants' control is materially prejudicial. Therefore, with respect to the prejudice to Anascape, nothing has changed.[7]

### C.    *The Stage of the Litigation Weighs Against Granting a Stay*

The Defendants strenuously argued that the early stages of the case supported a stay in the first round of briefing on this issue. Now, with the claim construction briefing completed, inventor, 30(b)(6), and third-party depositions taken, and hundreds of thousands of pages of documents produced, the Defendants have backed away from their earlier position. In light of this substantial investment, all parties could benefit from the Court's resolution of the entire case, including *every* validity argument, especially considering that the case is less than two months from completing claim construction and nine months from trial. Staying the case for the next two or three years to assess a subset of prior art only serves to prolong the fast-approaching trial date.

---

[7] Defendants ask the Court to consider the prejudice to themselves, the Court, and third parties. The applicable standard does not ask what prejudice will befall the Defendants and third parties, however. Furthermore, the Defendants could have avoided the duplicative work that arises in duplicative proceedings by simply choosing to adjudicate their validity arguments in this Court, rather than filing reexaminations with the Patent Office.

Dallas 242392v4

## IV.     GRANTING A STAY INVITES DEFENDANTS TO UNILATERALLY DERAIL ALL PATENT INFRINGEMENT LITIGATION

Because of the delay that reexaminations cause, the Eastern District of Texas has emphasized that courts should not grant stays lightly.  For example, Judge Davis recently denied a motion to stay because the case lacked specific indications that reexamination would simplify the issues for trial.  *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  In doing so, Judge Davis explained that:

> Although there may be circumstances that warrant a stay, the Court is unwilling to adopt a *per se* rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected.  To do so would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.

*Id.*

In fact, the filings of the reexaminations were not motivated by a need to "simplify" the litigation, but instead are indicative of the Defendants' wish to delay trial and to increase the costs of litigation for Anascape.  In December 2006, this Court issued an order setting trial for May 2008 – seventeen months later.  (Docket No. 52)  Despite this timely trial setting, Defendants continued to file reexamination requests.  Even one *ex parte* examination would not be expected to terminate in seventeen months, let alone multiple *ex parte* and *inter partes* reexamination requests, the last of which was not filed until <u>last month</u>.[8]  The motivation, then, was not to simplify or streamline the case, rather, Defendants have only succeeded in complicating the litigation, duplicating adjudication, and increasing litigation costs.

---

[8] In some districts, where patent litigation drags on for years, *ex parte* reexamination may be a relatively quick way to resolve key issues.  Here, however, in light of the quick trial setting, Defendants cannot contend that reexamination is a quicker way to resolve the issues in this case.

The importance of the Court's decision in this case should not be underestimated. Doubtless, situations exist where a party seeking a stay could show either a pressing need for a delay, *see Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1980), or provide the Court with specific facts that demonstrate a *likelihood* that issues will be simplified through reexaminations.[9] However, the routine grant of a two- or three-year stay based upon the inherent *possibility* that a few issues will be simplified through reexaminations provides accused infringers with a method to delay litigation and prolong infringement – effectively allowing infringers to lock patentees out of the courthouse. In the long term, a routine grant of stays pending reexamination will weaken the patentee's ability to obtain timely justice in the federal courts, without regard to the merits of each individual action.

Additionally, as suggested in *Soverain*, the routine granting of stays pending reexamination also provides an incentive for accused infringers to file requests for reexamination to delay litigation, whether meritorious or not. *See* 356 F. Supp. 2d at 662. Defendants could have sought reexamination *before* Anascape filed suit – such requests are expressly provided for by the MPEP. *See* §§ 2209, 2609. Instead, Defendants now attempt to subvert the reexamination procedure to delay litigation, without providing sufficient basis for the Court to find countervailing benefits.

## V.    CONCLUSION

Once again, the Defendants have filed Motions to Stay that, if granted, will defeat the efficiency of the Court's patent docket and prejudice Anascape. For the reasons enumerated above, Anascape requests that the Court deny Defendants' Motions.

---

[9] For example, as in *Alza*, if only one claim of one patent were at issue, the Court could reasonably find that *any* amendment by the Patent Office would likely dramatically change the litigation posture, thus, a stay would be warranted. *See Alza Corp. v. Wyeth*, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006). Here, Defendants have not provided facts that could support a similar finding.

DATED:  August 7, 2007                    Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ Sam Baxter
Sam Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Facsimile: (903) 927-2622

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Luke F. McLeroy
Texas State Bar No. 24041455
lmcleroy@mckoolsmith.com
Anthony M. Garza
Texas State Bar No. 24050644
agarza@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
Charles Ainsworth
Texas State Bar No. 00783521
charley@pbatyler.com
Parker, Bunt & Ainsworth P.C.
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
ANASCAPE, LTD.**

14

Dallas 242392v4

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 7, 2007.  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).

         /s/ Luke F. McLeroy
        Luke F. McLeroy