# EXHIBIT B TO:

# DEFENDANT MICROSOFT CORPORATION'S NOTICE OF PTO ORDERS IN MICROSOFT'S REQUESTS FOR REEXAMINATION OF ANASCAPE PATENTS

Dockets.Justia.com

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

STEPHEN J. JONKUS
KLARQUIST SPARKMAN, LLP
121 SW SALMON STREET, SUITE 1600
PORTLAND, OR 97204

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER _95/000,222_.

PATENT NUMBER _6,344,791_.

TECHNOLOGY CENTER _3999_.

ART UNIT _3993_.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. Box 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,222 | 05/10/07 | 6,344,791 | |

BRAD ARMSTRONG
15487 JOSEPH ROAD
TYLER, TX 75707

| EXAMINER |
|---|
| Flanagan, Beverly |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

MAILED

AUG – 2 2007

CENTRAL REEXAMINATION UNIT

## *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

| *ORDER GRANTING/DENYING REQUEST FOR* **INTER PARTES** *REEXAMINATION* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/000,222 | 6,344,791 B1 ET AL. |
| | Examiner | Art Unit | |
| | Beverly M. Flanagan | 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):    ☐ PTO-892    ☒ PTO/SB/08    ☐Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

    ☐ An Office action is attached with this order.

    ☒ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

## DECISION GRANTING INTER PARTES REEXAMINATION

### *Amended/Substitute Request*

Receipt of the replacement request filed May 102007 is acknowledged. The decision below is based upon this replacement request, and not the original request, filed February 2, 2007, which filing date was vacated with the decision of March 10, 2007.

### *Substantial New Question of Patentability*

A substantial new question of patentability affecting claims 1-66 of U.S. Patent No. 6,344,791 to Armstrong (hereinafter "Armstrong '791") is raised by the present request for *inter partes* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in *inter partes* reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 314(c) requires that *inter partes* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in *inter partes* reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for third party requester comments, because a comment period of 30 days from service of patent owner's response is set by statute. 35 U.S.C. § 314(b)(3).

Application/Control Number: 95/000,222                                    Page 3
Art Unit: 3993

## *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 CFR

1.985(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving U.S. Patent No. 6,344,791 throughout the course of this

reexamination proceeding.  The third party requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding.  See MPEP §§ 2686 and 2686.04.


## *References Relied Upon*

The following prior art documents are relied upon by requester in support of this

request for *inter partes* reexamination:

1.    Knox, UK Published Patent Specification No. 1 412 298 (hereinafter
      "Knox");

2.    Kaneko et al., Japanese Laid Open Utility Model Application No. JP S61-
      100844 (hereinafter "Kaneko");

3.    Matsumoto et al., Japanese Laid Open Utility Model Application No. JP
      S61-103836 (hereinafter "Matsumoto");

4.    Jackson, U.S. Patent No. 3,463,041 (hereinafter "Jackson");

5.    Kramer, U.S. Patent No. 5,164,697 (hereinafter "Kramer");

6.    Clancy, U.S. Patent No. 4,604,509 (hereinafter "Clancy");

7.    Furukawa et al., Japanese Laid Open Utility Model Application No. JP5-
      87760 (hereinafter "Furukawa '760);

8.    Brandenberg et al., U.S. Patent No. 5,231,386 (hereinafter
      "Brandenberg");

9.    Tanami, Japanese laid-Open Patent Application No. H5-304007
      (hereinafter "Tanami");

10.   Kawashima, Japanese Laid-Open Utility Model Application No. H3-61304
      (hereinafter "Kawashima");

11.   Furukawa et al., Japanese Laid Open Utility Model Application No. H6-
      56740 (hereinafter "Furukawa '740");

12.   Mason, Switch Engineering Handbook (McGraw-Hill, Inc., 1993)
      (hereinafter "Switch Engineering Handbook");

13.   Meleard et al., UK Published Patent Application No. 2 156 588 A
      (hereinafter "Meleard");

14.   Sakurai et al., Japanese Laid-Open Patent Application No. H06-154422
      (hereinafter « Sakurai ») ;

15.   Padula et al., U.S. Patent No. Re. 34,095 (hereinafter "Padula");

16.   Yamaoka, Japanese Patent Application Laid-Open Disclosure No. H7-
      122073 (hereinafter "Yamaoka");

17.   Himoto et al., European Patent Application EP 0 835676 A1 (hereinafter
      « Himoto »).

### *Requester's Position*

The request indicates that the third party requester considers:

1.    Claim 1 of Armstrong '791 to be unpatentable over Knox alone;

2.    Claim 1 of Armstrong '791 to be unpatentable over Kaneko alone;

3.    Claim 1 of Armstrong '791 to be unpatentable over Matsumoto alone;

4.    Claim 1 of Armstrong '791 to be unpatentable over Jackson alone;

5.    Claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 to unpatentable over Kramer alone;

6.    Claims 3-5 and 7 to be unpatentable over Kramer taken with Clancy;

7.    Claim 7 to be unpatentable over Kramer taken with Furukawa '760 and Clancy;

8.    Claim 6 to be unpatentable over Kramer taken with Brandenberg;

9.    Claim 6 to be unpatentable over Kramer taken with Tanami;

10.    Claims 8-13 to be unpatentable over Kramer taken with Kawashima;

11.    Claims 14-18 to be unpatentable over Kramer taken with Furukawa '760;

12.    Claims 20 and 21 to be unpatentable over Kramer taken with Brandenberg;

13.    Claims 20 and 21 to be unpatentable over Kramer taken with Furukawa '740;

14.    Claims 1, 19 and 20 to be unpatentable over Furukawa '760 taken with Furukawa '740 and Switch Engineering;

15.    Claims 22-24, 27 and 28 to be unpatentable over Kramer taken with Meleard;

16. Claims 22, 25, 26 and 29-33 to be unpatentable over Kramer taken with Meleard and Furukawa '760;

17. Claims 31-33 to be unpatentable over Kramer taken with Meleard, Furukawa '760 and Sakurai;

18. Claim 39 to be unpatentable over Kramer taken with Padula;

19. Claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 to be unpatentable over Kramer taken with Furukawa '760;

20. Claims 41-43, 47-55 and 57-60 to be unpatentable over Kramer taken with Furukawa '760 and Sakurai;

21. Claims 62, 63, 65 and 66 to be unpatentable over Kramer taken with Furukawa '760 and Yamaoka;

22. Claims 43, 48, 50 and 53 to be unpatentable over Kramer taken with Furukawa '760 and Himoto;

23. Claim 10 to be unpatentable over Kramer taken with Furukawa '740 and Himoto;

24. Claim 21 to be unpatentable over Kramer taken with Furukawa '740 and Himoto;

25. Claims 27 and 29 to be unpatentable over Kramer taken with Meleard and Himoto;

26. Claim 35 to be unpatentable over Kramer taken with Himoto.

Application/Control Number: 95/000,222                         Page 7
Art Unit: 3993

### Prosecution History of the Armstrong '791 Patent

U.S. Patent No. 6,344,791 issued from an application with the Serial No.

09/599,095, which was filed on June 21, 2000.  The '095 application was a continuation

of an application with the Serial No. 09/122,269, filed on July 24, 1998, Now U.S. Patent

No. 6,135,886, which was a continuation-in-part of an application with the Serial No.

08/942,450, filed on October 1, 1997, now U.S. Patent No. 6,102,802.

### Substantial New Question (SNQ)

. The substantial new questions of patentability with respect to Knox, Meleard,

Kaneko, Matsumoto, Kawashima, Tanami, Furukawa '740, Yamaoka, Himoto, Jackson,

Clancy, Padula, Brandenberg and Switch Engineering Handbook is based on new

teachings, not previously considered or addressed in the prior examination of the patent

or a final holding of invalidity by the Courts. The substantial new question of

patentability with respect to Kramer, Furukawa '760 and Sakurai is based on a patent

already cited by the applicant and considered, but neither applied nor commented upon

by the examiner.

A discussion of the specifics now follows:

### Claim 1 of Armstrong '791 to be unpatentable over Knox alone

It is agreed that consideration of Knox alone raises a substantial new question of

patentability as to claim 1 of Armstrong '791.  As pointed out in page 22 of the

replacement request, Knox teaches a keyboard that includes a plastic plate or sheet 4

formed with a plurality of dome keys 3 arranged to push a conductive layer into engagement with contacts 2 (see Figs. 4 and 5). Variable resistance is established between the layer 14 and the terminals A-O of the contact track 2 (see page 3, lines 61-69 and Fig. 4). Knox further teaches that each key can be arranged to act against a metal spring so that a "snap action" and an audible "click" is obtained when the key is depressed (see page 4, lines 30-33).

.      These teachings of Knox were not present in the prosecution of the application which became the Armstrong '791. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Knox is considered to raise a substantial new question of patentability as to claim 1 of the Armstrong '791 patent.


### *Claim 1 of Armstrong '791 to be unpatentable over Kaneko alone*

It is agreed that consideration of Kaneko alone raises a substantial new question of patentability as to claim 1 of Armstrong '791. As pointed out in pages 22-23 of the replacement request, Kaneko teaches a variable resistance switch 10 that includes an electro-conductive curved plate 3 (dome cap) adapted to be pressed by a pushbutton 1 so as to engage a pressure sensitive electroconductive rubber sheet 6 (see page 4, lines 4-12). When pressed to the center of the generating line 8 on a concave surface side of the sheet 6, the concave surface is elastically deformed and changes its orientation with a click action to the configuration shown in Fig. 4 (see also Fig. 3 and page 5, lines 7-11). Kaneko also teaches that "a switchover point (clock point) is

provided in the middle of the stroke of the push button so that the operator clearly

recognizes the switching from the off-state to the on-state in the course of the pressing

operation (see page 2, lines 12-16, page 6, lines 2-4 and page 7, lines 4-13).

These teachings of Kaneko were not present in the prosecution of the application

which became the Armstrong '791. Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable. Accordingly, Kaneko is considered to raise a substantial

new question of patentability as to claim 1 of the Armstrong '791 patent.

### Claim 1 of Armstrong '791 to be unpatentable over Matsumoto alone

It is agreed that consideration of Matsumoto alone raises a substantial new

question of patentability as to claim 1 of Armstrong '791. As pointed out in page 23 of

the replacement request, Matsumoto teaches a variable resistance sensor that

comprises a rigid support board, a sheet between the board and a resilient dome cap

(see Fig. 1 and page 4, lines 9-11). Matsumoto also teaches that the dome cap exhibits

a snap-through tactile feedback, stating "a switchover point (click point) is provided in

the middle of the stroke of the push button so that the operator clearly recognizes the

switching from the off-state to the on-state in the course of the pressing operation" (see

page 2, lines 12-16, page 6, lines 2-4 and page 7, lines 4-13).

These teachings of Matsumoto were not present in the prosecution of the

application which became the Armstrong '791. Further, there is a substantial likelihood

that a reasonable examiner would consider these teaching important in deciding

Application/Control Number: 95/000,222                                    Page 10
Art Unit: 3993

whether or not the claims are patentable. Accordingly, Matsumoto is considered to

raise a substantial new question of patentability as to claim 1 of the Armstrong '791

patent.


### Claim 1 of Armstrong '791 to be unpatentable over Jackson alone

It is agreed that consideration of Jackson alone raises a substantial new question

of patentability as to claim 1 of Armstrong '791. As pointed out in pages 23-24 of the

replacement request, Jackson teaches a push button diaphragm switch for a keyboard

formed of a plurality of openings 18 where a metal switch 20 underlies a metal keyboard

base plate 16 and is formed with a plurality of dome-shaped resiliently deformable

dimples 22 that project into corresponding openings 18 and serve as keyboard push

buttons (see col. 1, lines 64-73). The dimples 22 are adapted to engage contact

buttons 30 secured to a contact board 28 and provide snap-through tactile feedback to

the user (see Fig. 3 and col. 2, lines 25-42).

These teachings of Jackson were not present in the prosecution of the

application which became the Armstrong '791. Further, there is a substantial likelihood

that a reasonable examiner would consider these teaching important in deciding

whether or not the claims are patentable. Accordingly, Jackson is considered to raise a

substantial new question of patentability as to claim 1 of the Armstrong '791 patent.

*Claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of Armstrong '791 to be unpatentable*

*over Kramer alone*

It is agreed that consideration of Kramer alone raises a substantial new question

of patentability as to claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of Armstrong '791.

As pointed out in page24-27 of the replacement request, Kramer teaches a variable

sensor 3 including a rigid support board 10, supporting a sheet 17 where the sheet is

positioned between the board 10 and a depressible, resilient dome cap providing a

snap-through threshold tactile feedback to the user (see col. 5, lines 36-48 and col. 1,

lines 21-35). Kramer also teaches that the board 10 supports electrical circuit traces

11.1 and 11.2 and a means for variable controlling imagery is the control circuit

operating on the basis of variable resistance as a function of applied pressure (see col.

4, lines 61-65 and Fig. 2). Kramer also teaches a spring 20 located on the ceiling

surface of a rubber dome and electricallt conductive carbonized foil 14 located to

contact circuit traces 11.1 and 11.2 (see Fig. 1). Kramer also teaches that spring 20,

carbonzied foil 14 and conductive layer 17 are carried by the dome cap and deform

under pressure and the switching device 3 acts as a pressure dependent, variable

sensor as pressure is applied to the pushbutton (see col. 5, lines 39-48). Kramer also

teaches that the countercontact 16 and spring 20 supply snap-through tactile feedback

through the button to the user (see col. 5, lines 42-48 and col. 1, lines 21-35). Kramer

also teaches that the dome cap is rubber (see col. 1, lines 21-35 and col. 5, line 40).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teaching important in deciding whether or not the claims are patentable.

Accordingly, Kramer is considered to raise a substantial new question of patentability as

to claims 1-5, 7, 19, 34-38, 44-46, 56, 61 and 64 of the Armstrong '791 patent.

### *Claims 3-5 and 7 of Armstrong '791 to be unpatentable over Kramer taken with Clancy*

It is agreed that consideration of Kramer taken with Clancy raises a substantial

new question of patentability as to claims 3-5 and 7 of Armstrong '791. As pointed out

in pages 31-32 of the replacement request, Clancy teaches a dome cap with a

deformable surface having an apex located to contact the sheet (see Figs. 3 and 4).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

teachings of Clancy were not present in the prosecution of the application which

became the Armstrong '791 patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable. Accordingly, Kramer taken with Clancy is considered to

raise a substantial new question of patentability as to claims 3-5 and 7 of the Armstrong

'791 patent.

### Claim 7 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760 and Clancy

It is agreed that consideration of Kramer taken with Furukawa '760 and Clancy raises a substantial new question of patentability as to claim 7 of Armstrong '791. As pointed out in pages 32-33 of the replacement request, Furukawa '760 teaches the use of pressure sensitive switches in a video game controller for a video game machine which would have output displayed on a television (see paragraph 8).

These teachings of Kramer and Furukawa '760 were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Clancy were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Furukawa '760 and Clancy is considered to raise a substantial new question of patentability as to claim 7 of the Armstrong '791 patent.

### Claim 6 of Armstrong '791 to be unpatentable over Kramer taken with Brandenberg

It is agreed that consideration of Kramer taken with Brandenberg raises a substantial new question of patentability as to claim 6 of Armstrong '791. As pointed out in pages 33-34 of the replacement request, Kramer teaches circuit traces 11.1 and 11.2,

as noted above.  It is also agreed that Brandenberg teaches interdigitated circuit traces in pressure sensitive switch constructions (see col. 3, line 68 through col. 4, line 2).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied.  The teachings of Brandenberg were not present in the prosecution of the application which became the Armstrong '791 patent.  Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable.  Accordingly, Kramer taken with Brandenberg is considered to raise a substantial new question of patentability as to claim 6 of the Armstrong '791 patent.

### *Claim 6 of Armstrong '791 to be unpatentable over Kramer taken with  Tanami*

It is agreed that consideration of Kramer taken with Tanami raises a substantial new question of patentability as to claim 6 of Armstrong '791.  As pointed out in pages 35-36 of the replacement request, Kramer teaches circuit traces 11.1 and 11.2, as noted above.  It is also agreed that Tanami teach interdigitated circuit traces in pressure sensitive switch constructions (see page 6, paragraph 10 and Fig. 2).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied.  The teachings of Tanami were not present in the prosecution of the application which became the Armstrong '791 patent.  Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable. Accordingly, Kramer taken with Tanami is considered to

raise a substantial new question of patentability as to claim 6 of the Armstrong '791

patent.

### Claims 8-13 of Armstrong '791 to be unpatentable over Kramer taken with Kawashima

It is agreed that consideration of Kramer taken with Kawashima raises a

substantial new question of patentability as to claims 8-13 of Armstrong '791. As

pointed out in pages 36-38 of the replacement request, Kramer teaches variable

pressure sensitive sensors in hand-operated input keyboards on remote transmitters or

for electronic appliances in entertainment electronics that produce active tactile

feedback (see col. 1, lines 46-54 and col. 5, lines 42-48). It is agreed that Kawashima

teaches variable resistors in an operating body 10 for finger tip actuation where the

operating body or button 10 is of the see-saw type (see page 6, lines 3-9, page 4, lines

24-26, page 5, lines 25 and 26 and Figs. 1, 3 and 4).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

teachings of Kawashima were not present in the prosecution of the application which

became the Armstrong '791 patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable. Accordingly, Kramer taken with Kawashima is

considered to raise a substantial new question of patentability as to claims 8-13 of the

Armstrong '791 patent.

## *Claims 14-18 of Armstrong '791 to be unpatentable over Kramer taken with*
### *Furukawa '760*

It is agreed that consideration of Kramer taken with Furukawa '760 raises a

substantial new question of patentability as to claims 14-18 of Armstrong '791. As

pointed out in pages 38-40 of the replacement request, Furukawa '760 teaches a hand-

operated video game controller 10 that includes right and left-hand areas, with cross

key or button 12 on the left side and trigger buttons 19 and 20 on the right side (see Fig.

1). It is also agreed that Furukawa '760 teaches that the pressure sensitive switch

could be employed with other buttons, as desired locations (see page 9).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied. Further, there is a substantial likelihood that a reasonable examiner would

consider these teaching important in deciding whether or not the claims are patentable.

Accordingly, Kramer taken with Furukawa '760 is considered to raise a substantial new

question of patentability as to claims 14-18 of the Armstrong '791 patent.

Application/Control Number: 95/000,222                           Page 17
Art Unit: 3993

### *Claims 20 and 21 of Armstrong '791 to be unpatentable over Kramer taken with Brandenberg*

It is agreed that consideration of Kramer taken with Brandenberg raises a substantial new question of patentability as to claims 20 and 21 of Armstrong '791. As pointed out in pages 40-41 of the amended/substitute request, Brandenberg teaches the use of convex actuator surfaces (17 in Brandenberg).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Brandenberg were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Brandenberg is considered to raise a substantial new question of patentability as to claims 20 and 21 of the Armstrong '791 patent.

### *Claims 20 and 21 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '740*

It is agreed that consideration of Kramer taken with Furukawa '740 raises a substantial new question of patentability as to claims 20 and 21 of Armstrong '791. As pointed out in pages 42-43 of the replacement request, Furukawa '740 teaches the use of convex actuator surfaces (14b in Furukawa '740).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Furukawa '740 were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Furukawa '740 is considered to raise a substantial new question of patentability as to claims 20 and 21 of the Armstrong '791 patent.

### Claims 1, 19 and 20 of Armstrong '791 to be unpatentable over Furukawa '760 taken with Furukawa '740 and Switch Engineering Handbook

It is agreed that consideration of Furukawa '760 taken with Furukawa '740 and Switch Engineering Handbook raises a substantial new question of patentability as to claims 1, 19 and 20 of Armstrong '791. As pointed out in pages 43-45 of the replacement request. Furukawa '760 teaches a variable sensor with a rigid board 5 that supports a dome cap the supports a sheet 32 that is positioned between the done cap and the board. The dome cap 29 is structured to provide snap-through threshold tactile feedback. It is also agreed that Furukawa '760 teaches electrically conductive material 33 carried by the dome cap. It is also agreed that Switch Engineering Handbook teaches dome caps that are structured like Furukawa '760, that exhibit snap-through threshold tactile feedback (see Fig. 11.6). It is also agreed that Furukawa '740 teaches electrically conductive material 14b carried by the dome cap.

These teachings of Furukawa '760 were present in the prosecution of the

application which became the Armstrong '791 patent and were considered, but not

applied. The teachings of Switch Engineering Handbook and Furukawa '740 were not

present in the prosecution of the application which became the Armstrong '791 patent.

Further, there is a substantial likelihood that a reasonable examiner would consider

these teaching important in deciding whether or not the claims are patentable.

Accordingly, Furukawa '760 taken with Switch Engineering Handbook andFurukawa

'740 is considered to raise a substantial new question of patentability as to claims 1, 19

20 of the Armstrong '791 patent.

### Claims 22-24, 27 and 28 of Armstrong '791 to be unpatentable over Kramer taken with Meleard

It is agreed that consideration of Kramer taken with Meleard raises a substantial

new question of patentability as to claims 22-24, 27 and 28 of Armstrong '791. As

pointed out in pages 45-47 of the replacement request, Meleard teaches a snap-through

switch where a non-conductive sheet 20 supports conductive material (contact surface

26) (see page 2, lines 70-81 and Fig. 3). It is also agreed that the conductive material

26 in Meleard contacts circuit traces 16 (see Fig. 3 and page 2, lines 125-130).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

teachings of Meleard were not present in the prosecution of the application which

became the Armstrong '791 patent. Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable. Accordingly, Kramer taken with Meleard is considered to

raise a substantial new question of patentability as to claims 22-24, 27 and 28 of the

Armstrong '791 patent.

### Claims 22, 25, 26 and 29-33 of Armstrong '791 to be unpatentable over Kramer taken with Meleard and Furukawa '760

It is agreed that consideration of Kramer taken with Meleard and Furukawa '760

raises a substantial new question of patentability as to claims 22, 25, 26 and 29-33 of

Armstrong '791. As pointed out in pages 47-50 of the replacement request, Furukawa

'760 teaches a hand-operated video game controller 10 that includes right and left-hand

areas, with cross key or button 12 on the left side and trigger buttons 19 and 20 on the

right side (see Fig. 1). It is also agreed that Furukawa '760 teaches that the pressure

sensitive switch could be employed with other buttons, as desired locations (see page

9).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied. The teachings of Meleard were not present in the prosecution of the

application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Application/Control Number: 95/000,222                                Page 21
Art Unit: 3993

Meleard and Furukawa '760 is considered to raise a substantial new question of
patentability as to claims 22, 25, 26 and 29-33 of the Armstrong '791 patent.


### Claims 31-33 of Armstrong '791 to be unpatentable over Kramer taken with Meleard, Furukawa '760 and Sakurai

It is agreed that consideration of Kramer taken with Meleard, Furukawa '760 and
Sakurai raises a substantial new question of patentability as to claims 31-33 of
Armstrong '791. As pointed out in pages 50-52 of the replacement request, it is agreed
that Sakurai teaches pressure sensitive variable conductance sensors in the right hand
side of the video game controller (see paragraphs 21 and 26). It is also agreed that
Sakurai teaches a four-way rocker in the left-hand area of the housing (see Fig. 1). It is
also agreed that Sakurai teaches up to five or more pressure sensitive variable
conductance sensors in the right hand side of the video game controller (see
paragraphs 21, 26 and 57).

These teachings of Kramer, Furukawa '760 and Sakurai were present in the
prosecution of the application which became the Armstrong '791 patent and were
considered, but not applied. The teachings of Meleard were not present in the
prosecution of the application which became the Armstrong '791 patent. Further, there
is a substantial likelihood that a reasonable examiner would consider these teaching
important in deciding whether or not the claims are patentable. Accordingly, Kramer
taken with Meleard, Furukawa '760 and Sakurai is considered to raise a substantial
new question of patentability as to claims 31-33 of the Armstrong '791 patent.

### Claim 39 of Armstrong '791 to be unpatentable over Kramer taken with Padula

It is agreed that consideration of Kramer taken with Padula raises a substantial new question of patentability as to claim 39 of Armstrong '791. As pointed out in pages 52-53 of the replacement request, Padula teaches using a metal dome 102 in a pressure transducer (see col. 9, lines 12-16 and Fig. 12).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Padula were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Padula is considered to raise a substantial new question of patentability as to claim 39 of the Armstrong '791 patent.

### Claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760

It is agreed that consideration of Kramer taken with Furukawa '760 raises a substantial new question of patentability as to claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 of Armstrong '791. As pointed out in pages 53-59 of the replacement request, Furukawa '760 teaches a hand-operated video game controller 10 that includes right and left-hand areas, with cross key or button 12 on the left side and trigger buttons 19 and 20 on the right side, where the buttons are positioned for thumb depression (see

Fig. 1). It is also agreed that Furukawa '760 teaches that the pressure sensitive switch could be employed with other buttons, as desired locations (see page 9). It is also agreed that Furukawa '760 teaches controlling game characters in a video (see paragraph 10 on page 7).

These teachings of Kramer and Furukawa '760 were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Furukawa '760 is considered to raise a substantial new question of patentability as to claims 40-43, 47-55, 57-60, 62, 63, 65 and 66 of the Armstrong '791 patent.

### Claims 41-43, 47-55 and 57-60 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760 and Sakurai

It is agreed that consideration of Kramer taken with Furukawa '760 and Sakurai raises a substantial new question of patentability as to claims 41-43, 47-55 and 57-60 of Armstrong '791. As pointed out in pages 59-64 of the replacement request, Furukawa '760 teaches a hand-operated video game controller 10 that includes right and left-hand areas, with cross key or button 12 on the left side and trigger buttons 19 and 20 on the right side, where the buttons are positioned for thumb depression (see Fig. 1). It is also agreed that Furukawa '760 teaches that the pressure sensitive switch could be employed with other buttons, as desired locations (see page 9). It is also agreed that

Furukawa '760 teaches controlling game characters in a video (see paragraph 10 on

page 7). It is also agreed that Sakurai teaches up to five or more pressure sensitive

variable conductance sensors in the right hand side of a video game controller and a

four way rocker in the left-hand area of the housing (see paragraphs 21, 26 and 57). It

is also agreed that Sakurai teaches buttons positioned for thumb depression (see Fig.

1).

These teachings of Kramer and Furukawa '760 were present in the prosecution

of the application which became the Armstrong '791 patent and were considered, but

not applied. The teachings of Sakurai were not present in the prosecution of the

application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Furukawa '760 and Sakurai is considered to raise a substantial new question of

patentability as to claims 41-43, 47-55 and 57-60 of the Armstrong '791 patent.


**Claims 62, 63, 65 and 66 of Armstrong '791 to be unpatentable over Kramer taken**
**with Furukawa '760 and Yamaoka**

It is agreed that consideration of Kramer taken with Furukawa '760 and Yamaoka

raises a substantial new question of patentability as to claims 62, 63, 65 and 66 of

Armstrong '791. As pointed out in pages 64-66 of the replacement request, it is agreed

that Yamaoka teaches a video game machine that converts the intensity of the pressing

to the action of a game character, such as jumping higher (see paragraphs 9, 25, 28-30 and 35).

These teachings of Kramer and Furukawa '760 were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Yamaoka were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Furukawa '760 and Yamaoka is considered to raise a substantial new question of patentability as to claims 62, 63, 65 and 66 of the Armstrong '791 patent.

## *Claims 43, 48, 50 and 53 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa '760 and Himoto*

It is agreed that consideration of Kramer taken with Furukawa '760 and Himoto raises a substantial new question of patentability as to claims 43, 48, 50 and 53 of Armstrong '791. As pointed out in pages 66-68 of the replacement request, Himoto teaches a means for active tactile feedback (see Figs. 1 and 15 and col. 16, lines 38-58).

These teachings of Kramer and Furukawa '760 were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Himoto were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Furukawa '760 and Himoto is considered to raise a substantial new question of

patentability as to claims 43, 48, 50 and 53 of the Armstrong '791 patent.


### *Claim 10 of Armstrong '791 to be unpatentable over Kramer taken with Kawashima and Himoto*

It is agreed that consideration of Kramer taken with Kawashima and Himoto

raises a substantial new question of patentability as to claim 10 of Armstrong '791. As

pointed out in pages 68-69 of the replacement request, Himoto teaches a means for

active tactile feedback (see Figs. 1 and 15 and col. 16, lines 38-58).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied. The

teachings of Kawashima and Himoto were not present in the prosecution of the

application which became the Armstrong '791 patent. Further, there is a substantial

likelihood that a reasonable examiner would consider these teaching important in

deciding whether or not the claims are patentable. Accordingly, Kramer taken with

Kawashima and Himoto is considered to raise a substantial new question of

patentability as to claim 10 of the Armstrong '791 patent.

*Claim 21 of Armstrong '791 to be unpatentable over Kramer taken with Furukawa*

*'740 and Himoto*

It is agreed that consideration of Kramer taken with Furukawa '740 and Himoto raises a substantial new question of patentability as to claim 21 of Armstrong '791. As pointed out in pages 69-71 of the replacement request, Himoto teaches a means for active tactile feedback (see Figs. 1 and 15 and col. 16, lines 38-58).

These teachings of Kramer were present in the prosecution of the application which became the Armstrong '791 patent and were considered, but not applied. The teachings of Furukawa '740 and Himoto were not present in the prosecution of the application which became the Armstrong '791 patent. Further, there is a substantial likelihood that a reasonable examiner would consider these teaching important in deciding whether or not the claims are patentable. Accordingly, Kramer taken with Furukawa '740 and Himoto is considered to raise a substantial new question of patentability as to claim 21 of the Armstrong '791 patent.

*Claims 27 and 29 of Armstrong '791 to be unpatentable over Kramer taken with*

*Meleard and Himoto*

It is agreed that consideration of Kramer taken with Meleard and Himoto raises a substantial new question of patentability as to claims 27 and 29 of Armstrong '791. As pointed out in pages 71-72 of the replacement request, Himoto teaches a means for active tactile feedback (see Figs. 1 and 15 and col. 16, lines 38-58).

Application/Control Number: 95/000,222                                    Page 28
Art Unit: 3993

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied.  The

teachings of Meleard and Himoto were not present in the prosecution of the application

which became the Armstrong '791 patent.  Further, there is a substantial likelihood that

a reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable.  Accordingly, Kramer taken with Meleard and Himoto is

considered to raise a substantial new question of patentability as to claims 27 and 29 of

the Armstrong '791 patent.


### Claim 35 of Armstrong '791 to be unpatentable over Kramer taken with Himoto

It is agreed that consideration of Kramer taken with Himoto raises a substantial

new question of patentability as to claim 35 of Armstrong '791.  As pointed out in pages

72-73 of the replacement request, Himoto teaches a means for active tactile feedback

(see Figs. 1 and 15 and col. 16, lines 38-58).

These teachings of Kramer were present in the prosecution of the application

which became the Armstrong '791 patent and were considered, but not applied.  The

teachings of Himoto were not present in the prosecution of the application which

became the Armstrong '791 patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teaching important in deciding whether or

not the claims are patentable.  Accordingly, Kramer taken with Himoto is considered to

raise a substantial new question of patentability as to claim 35 of the Armstrong '791

patent.

Application/Control Number: 95/000,222                                    Page 29
Art Unit: 3993

### *Summary of Substantial New Questions Adopted and Not Adopted*

All of requester's substantial new questions have been adopted by the examiner.

### *Office Action on the Merits*

An Office action on the merits will follow in due course.

### NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Application/Control Number: 95/000,222                          Page 30
Art Unit: 3993


Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                      (571) 272-7705
Reexamination Facsimile Transmission No. (571) 273-9900

Application/Control Number: 95/000,222                                Page 31
Art Unit: 3993

### *Conclusion*

Please mail any communications to:

> Attn: Mail Stop "Ex Parte Reexam"
> Central Reexamination Unit
> Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA  22313-1450

Please FAX any communications to:

> (571) 273-9900
> Central Reexamination Unit

Please hand-deliver any communications to:

> Customer Service Window
> Attn: Central Reexamination Unit
> Randolph Building, Lobby Level
> 401 Dulaney Street
> Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.


Signed:

/Beverly M. Flanagan/

Beverly M. Flanagan
CRU Examiner
GAU 3993
(571) 272-4766


Conferee:     /Jeffrey R. Jastrzab/
              Jeffrey R. Jastrzab
              CRU Examiner
Conferee _____

EXPRESS MAIL LABEL NO.: EV 669613273 US
DATE OF DEPOSIT: May 10, 2007

ATTORNEY REFERENCE NO 6620-76454-08
REEXAM CONTROL NO: 95/000,222

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART** | Attorney Docket Number · 6620-76454-08 |
| | Patent Number · 6,344,791 |
| | Issued Date · February 5, 2002 |
| | First Named Inventor · Brad A. Armstrong |

### U.S. PATENT DOCUMENTS

Copies of U.S. Patent documents do not need to be provided, unless requested by the Patent and Trademark Office. For patents, provide the patent number and the issue date. For published U.S. applications, provide the publication number and the publication date. For unpublished pending patent applications, provide the application number and the filing date.

| Examiner's Initials* | Cite No. (optional) | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|
| *(initialed)* | | RE 34,095 | October 13, 1992 | Padula |
| | | 3,643,041 | February 15, 1972 | Jackson |
| | | 4,604,509 | August 5, 1986 | Clancy |
| | | 5,164,697 | November 17, 1992 | Kramer |
| | | 5,231,386 | July 27, 1993 | Brandenburg |

### FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| *(initialed)* | | Great Britain | 1 412 298 | November 5, 1975 | Knox |
| | | Great Britain | 2 156 588 | October 9, 1985 | Meleard |
| | | Japan | S61-100844 | June 27, 1986 | Kaneko |
| | | Japan | S61-103836 | July 2, 1986 | Matsumoto |
| | | Japan | H3-61304 | June 17, 1991 | Kawashima |
| | | Japan | H5-304007 | November 16, 1993 | Tanami |
| | | Japan | H5-87760 | November 26, 1993 | Furukawa |
| | | Japan | H06-154422 | June 3, 1994 | Sakurai |
| | | Japan | H6-56740 | August 5, 1994 | Furukawa |

| | |
|---|---|
| EXAMINER SIGNATURE: B. FLANAGAN | DATE CONSIDERED: 7/26/07 |

\* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.

Information Disclosure Statement (1449) Page 1 of 2

EXPRESS MAIL LABEL NO.: EV 669613273 US
DATE OF DEPOSIT: May 10, 2007

ATTORNEY REFERENCE NO 6620-76454-08
REEXAM CONTROL NO: 95/000,222

| INFORMATION DISCLOSURE STATEMENT REEXAMINATION PRIOR ART | Attorney Docket Number | 6620-76454-08 |
|---|---|---|
| | Patent Number | 6,344,791 |
| | Issued Date | February 5, 2002 |
| | First Named Inventor | Brad A. Armstrong |

### FOREIGN PATENT DOCUMENTS

| Examiner's Initials* | Cite No. (optional) | Country | Number | Publication Date | Name of Applicant or Patentee |
|---|---|---|---|---|---|
| *(initials)* | | Japan | H7-112073 | May 2, 1995 | Yamaoka |
| *(initials)* | | Europe | EP 0 835676 A1 | April 15, 1998 | Himoto |

| Examiner's Initials* | Cite No. (optional) | OTHER DOCUMENTS |
|---|---|---|
| *(initials)* | | Mason, Switch Engineering Handbook (McGraw-Hill, Inc. 1993) (excerpts, ch. 1, 6, 8-11) |

| EXAMINER SIGNATURE: | B FLANAGAN | DATE CONSIDERED: | 7/26/07 |
|---|---|---|---|

\* Examiner: Initial if reference considered, whether or not in conformance with MPEP 609. Draw line through cite if not in conformance and not considered. Include copy of this form with next communication to applicant.

Information Disclosure Statement (1449) Page 2 of 2