IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD. | § | |
| | § | Hon. Ron Clark |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 9:06-CV-00158-RC |
| | § | |
| MICROSOFT CORPORATION, and | § | JURY TRIAL DEMANDED |
| NINTENDO OF AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

**MICROSOFT'S RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF ANASCAPE, LTD.'S MOTION TO COMPEL PRODUCTION OF SETTLEMENT AND LICENSE AGREEMENTS FROM DEFENDANT MICROSOFT CORP.**

## INTRODUCTION

Anascape has asked this Court to compel production of settlement and/or license agreements reached in settlement of patent litigation between Microsoft and Immersion ("the Immersion Agreements") so that Anascape can rely on such agreements to prove its reasonable royalty damages theory. Anascape's request is contrary to long-established law holding that licenses reached in settlement of litigation are not relevant to reasonable royalty damages and in fact are unfairly prejudicial, as well as the federal law and policy prohibiting use of litigation settlements as damages evidence of any kind. Nor has Anascape identified any admissible evidence to which these inadmissible settlement agreements might lead. In short, Anascape improperly seeks unfairly prejudicial documents, for inadmissible purposes, without any plausible legitimate uses. For this reason, Microsoft respectfully requests that Anascape's motion to compel production of the Immersion Agreements be denied.

## ARGUMENT

### I.  ANASCAPE INTENDS TO USE THE IMMERSION AGREEMENTS FOR THE INADMISSIBLE AND PREJUDICIAL PURPOSE OF PROVING ITS ALLEGED DAMAGES

It is well-established that licenses reached in settlement of litigation are inadmissible to prove a plaintiff's claim for reasonable royalty damages, because they are not relevant to a hypothetical reasonable royalty and unduly prejudicial in light of their negligible probative value, and because the prospect of having such agreements put before a jury as evidence of future damages claims would chill settlements between parties. Ignoring this established law and policy, Anascape asks this Court to compel production of the Immersion agreement for the purpose of supporting its damages claim, without any plausible admissible use, or any plausible link to other admissible evidence.

A.  **Established patent law and Federal Rules of Evidence 402 and 403 exclude licenses reached in settlement of litigation to prove a reasonable royalty claim**

Evidence that is not relevant to the matter for which it is submitted is inadmissible under Fed. R. Evid. 402. Further, where "the probative value of evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," such evidence is inadmissible under Fed. R. Evid. 403.

These principles form the basis of long-established patent law barring licenses reached in settlement of litigation from admission to support a party's reasonable royalty arguments. As stated by the Supreme Court in 1889, "a payment of any sum in settlement of a claim for alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude v. Westcott*, 130 U.S. 152, 164 (1889). This Court upheld the principles laid out in *Rude v. Westcott* just last year, excluding from evidence mention of licenses reached in settlement of litigation because they "would not be proper evidence of Plaintiff's damages to present to the jury." *Spreadsheet Automation Corp. v. Microsoft Corp.*, No. 127-DF, 2007 WL 4386258, at * 5 (E.D. Tex. Feb. 23, 2007) (Folsom, J.)[1]. The Court further noted that offering up such settlement-induced licenses "for the purpose of 'perspective' or 'context,' would likely confuse the jury, and the jury would be unlikely to consider such evidence only as 'context' for a reasonable royalty." *Id.*; *see also Acco Brands, Inc. v. ABA Locks Mfr. Ltd.*, No. 2:02-CV-112, slip op (E.D. Tex. May 12, 2004) (Ward, J.) ("[R]oyalties paid in settlement are not probative of a reasonable royalty under 35 U.S.C. § 284.").

---

[1] Copies of unpublished opinions cited herein, or the relevant portions thereof, are attached as Exhibit A.

**MICROSOFT'S OPPOSITION TO ANASCAPE'S MOTION TO COMPEL PRODUCTION
OF SETTLEMENT AND LICENSE AGREEMENTS FROM MICROSOFT**  Page 2

Anascape's own designated damages expert has concurred with the law and testified that licenses in settlement of litigation are not relevant:

> I did not rely on [the Matsushita license] as being instructable of what a reasonable royalty would be back at the time of the hypothetical negotiation back in 1993...[because] it was settled by litigation. It was tainted by the bias that in fact that the parties were litigating after Matsushita was sued...So <u>they don't tell you anything about what a prospective license would be if you are sitting there in 1993</u>... [W]henever you have settlement, <u>there is case law that's come down from the federal courts that talks about disregarding licenses executed as a result of litigation because they are tinted [sic] and they don't represent an arm's length transaction</u>."

Partial Testimony of Walter Bratic, *Harris Corp. v. Sanyo North Am. Corp.*, No. 3:98-CV-2712-M, 2003 WL 21750710, at 17, 68 (N.D. Tex. 1998) (attached as Exhibit B).

Anascape cites to several cases, namely *In re Mahurkur* and *Rates Technology*, for the proposition that settlement licenses can be admissible for other purposes, but these two cases are inapplicable to the present litigation. The *Rates Technology* and *In re Mahurkar* courts explicitly noted that because the settlement agreements at issue involved licenses <u>to the asserted patents</u>, they were admissible on the issue of validity of the patents. *See Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05-CV-3583, 2007 WL 1176732, at *2 (E.D.N.Y. Apr. 20, 2007) ("[T]o the extent these agreements reflect the industry's acquiescence to Plaintiff's patents, they may be relevant to show the validity thereof."); *In re Mahurkar*, 831 F. Supp. 1354, 1378-79 (N.D. Ill. 1993) (allowing license to patent-in-suit by other accused infringer as evidence of validity). Here, the Immersion Agreement at issue involved <u>Immersion's</u> patents, <u>not</u> <u>Anascape's</u> patents. Thus, in addition to being inadmissible on damages issues, the Immersion Agreements are also not relevant to validity of the Anascape patents.[2]

---

[2] *In re Mahurkar* is further inapposite to this case because it involved a bench trial. In fact, the court there recognized that presentation of such licenses to a jury <u>would</u> have created a danger of unfair prejudice. 831 F. Supp. at 1379 ("There is of course a risk of undue prejudice in a jury trial; but as this was a bench trial, I admitted the evidence for its limited relevance [to the issue of patent validity].").

**MICROSOFT'S OPPOSITION TO ANASCAPE'S MOTION TO COMPEL PRODUCTION**
**OF SETTLEMENT AND LICENSE AGREEMENTS FROM MICROSOFT**                    Page 3

B.  Federal policy and Federal Rule of Evidence 408
    bar admission of settlement evidence to show damages

In addition to the long-established patent law excluding settlement agreements on the issue of a reasonable royalty, settlement agreements are generally inadmissible to show damages under Fed. R. Evid. 408, based on the strong federal policy supporting settlement of claims. Rule 408 bars admission of settlement agreements and related communications to show the "amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408. For example, in *Vardon Golf Co. v. BBMG Golf Ltd.*, the court rejected the notion "that evidence of settlement negotiations is admissible on the question of a reasonable royalty," stating that such an argument "ignore[es] the obvious: that the amount of a reasonable royalty does relate, as a matter of fact, directly to the amount of a claim. This being the case, settlement evidence would be barred under Fed. R. Evid. 408." 156 F.R.D. 641, 651 (N.D. Ill. 1994); *see also Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552-53 (S.D. Ind. 1999) ("Because [Defendant] intends to determine the merits of [Plaintiff's] case in part by reviewing the evidence of liability and damages which it hopes the...settlement agreement contains, Rule 408 renders evidence of that agreement inadmissible..."). Based on the underlying policy goal of encouraging settlement, the Federal Circuit has interpreted Rule 408 broadly to apply beyond the explicitly prohibited purposes of proving damages and liability. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("Although the Rules do not explicitly make evidence of [settlement] negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an approach that fosters settlement of infringement claims.").

C.    The Immersion Agreements were reached in settlement of litigation

The Immersion Agreements were entered into in settlement and compromise of a claim of patent infringement brought by Immersion against Microsoft. Immersion filed a patent infringement suit against Microsoft in U.S. District Court for the Northern District of California in February of 2002. Immersion Corporation, *Microsoft Licenses Immersion's Haptic Patent Portfolio*, July 28, 2003 (attached as Exhibit C). The Immersion Agreements were entered into on or about July 25, 2003, in settlement of that lawsuit. *Id.* Although Anascape appears to argue that the license taken by Microsoft from Immersion was not reached in settlement of litigation, this argument is blatantly misleading. Anascape states that the Immersion License was entered into "separate and *apart from* the Settlement Agreement." (Pl. Br. at 6.) In support, Anascape relies on Microsoft's 2007 Complaint for Breach of Contract against Immersion, which states that Microsoft entered into a license agreement with Immersion "*as part of*" the Immersion settlement. (*Id.*) Needless to say, the terms "apart from" and "as part of" are polar opposites. Moreover, Anascape cites no support whatsoever for its underlying assumption that merely because a settlement-induced license agreement happens to be in a physically separate document from the corresponding settlement agreement entered into the same day as part of a settlement has any bearing on the relevance or admissibility of the license agreement.

D.    Anascape's motion concedes that it intends to use the
      Immersion Agreements to prove reasonable royalty damages

Despite the established law prohibiting use of evidence of litigation settlement agreements for showing damages, Anascape's only stated purpose for the Immersion Agreements is just that: to support its reasonable royalty damages theory. Anascape's motion to compel establishes that it hopes to use the Immersion Agreements to "help Anascape's retained expert on damages evaluate *Georgia-Pacific* factors that are relevant to determining a reasonable royalty," such as the "royalty rate and structure" of a hypothetical license. (Pl. Br. at 5-6.) Anascape also apparently intends to

put the Immersion Agreements before the jury, stating that they may "assist the factfinder in determining an appropriate royalty base of infringing products."[3] (Pl. Br. at 7.)

Not only are Anascape's proposed uses explicitly prohibited, as described above, but also they directly contradict their own expert's opinions. Although Anascape urges this Court to hold that "Anascape's retained damages expert should properly consider the Settlement Agreement in his [reasonable royalty] analysis," Anascape's retained damages expert (Walter Bratic) disagrees that settlement agreements are at all relevant. Partial Testimony of Walter Bratic, *Harris Corp.*, 2003 WL 21750710, at 17 (Licenses reached in settlement of litigation "don't tell you anything about what a prospective license would be if you are sitting there [at the time of hypothetical reasonable royalty negotiation].") (attached as Exhibit B).

Anascape's attorneys also conjure up hypothetical arguments that Microsoft might make, then argue that the Immersion Agreements could be used to contradict such hypothetical arguments. Yet, even these circuitously described uses ultimately amount to proving Anascape's damages theory. For example, Anascape proposes that the Immersion Agreements may, somehow, contradict an argument that the license between Anascape and Sony ascribed a "low value" to patents at issue (Pl. Br. at 7), or may "provide context" to a 1999 agreement between Immersion and Microsoft if Microsoft argues that "a lump sum payment is appropriate" (Pl. Br. at 8). These

---

[3] Although Anascape cites *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-CV-1974 (NAM/DEP), 2007 WL 4349135, in support of the notion that settlement agreements are admissible to show a proper royalty base, *Cornell Research* is inapposite. The *Cornell Research* court admitted a license reached <u>prior</u> to any litigation, for a purpose unrelated to damages (patent exhaustion), making any suggestion that settlement agreements are admissible for calculating a hypothetical royalty base mere dicta, at best. *Id.* at *17-18. To the extent Anascape construes *Cornell Research* as "suggesting" that proving historical licensing practices or the proper royalty base for a reasonable royalty is <u>not</u> proving "valuation of the claim," and therefore an inadmissible purpose for settlement agreements under Rule 408, Microsoft disagrees. *See Vardon Golf,* 156 F.R.D. at 651. Even if Anascape were correct, it fails to overcome the Rule 403 bar on such prejudicial evidence being placed before a jury. *See* cases cited in Section I(A) above.

proposed hypothetical "defensive" uses of the Immersion Agreements amount to no more than using the Immersion Agreements to prove Anascape's damages theory, in contradiction of the established law and Anascape's own expert's opinion.[4]

## II. ANASCAPE MAKES NO SHOWING THAT THE IMMERSION AGREEMENTS WOULD LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE

Because the Immersion Agreements are not admissible for any purpose proposed by Anascape, they are outside the scope of discovery unless Anascape can show that they are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 742 (Fed. Cir. 1987). Where, as here, a party moves "to compel discovery of information that would be inadmissible at trial, the party seeking discovery has the burden of demonstrating '<u>a plausible chain of inferences</u> showing how discovery of the item sought would lead to other <u>admissible</u> evidence.'" William W. Schwartz, A. Wallace Tashima, and James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 11:615 at 11-65 (2006) (quoting *Vardon Golf*, 156 F.R.D. at 651) (emphasis added); *see also Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999) (refusing discovery of settlement agreement because "when relevancy has been challenged, the burden is on the discovery requestor to show the relevance of requested information."). Due to the confidential and prejudicial nature of settlement agreements, and the federal policy of encouraging settlement, many courts employ a "modest presumption" against the discoverability of settlement agreements, or require some "particularized showing" of relevance. *See, e.g., Centillion Data*, 193 F.R.D. at 552 n.1 (refusing discovery of settlement agreement); *Gen. Elec. Co. v. DR Sys.*,

---

[4] Anascape's vague statement that the Immersion Agreements are "salient to the issues at hand in the present lawsuit" (Pl. Br. at 5) provides no guidance whatsoever as to any proposed use for the Immersion Agreements, their admissibility, or their relevance. *See Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995) ("[A]ssertions…without any detail or analysis whatsoever, are insufficient to prove the relevance of the [requested document].").

*Inc.*, No. CV 06-5581, 2007 WL 1573625, at *1 (E.D.N.Y. May 25, 2007) (refusing discovery of accused infringer's settlement agreements with third parties regarding the accused product); *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994) (Rule 408 "makes it unlikely that information about prior settlements will lead to the discovery of admissible evidence.").

Anascape has not shown how the Immersion Agreements might lead to other evidence that would be admissible. As discussed above, Anascape proposes using the Immersion Agreements to support various arguments regarding its reasonable royalty damages theory (an inadmissible purpose). Anascape's motion fails, however, to show that the Immersion Agreements might identify other persons or documents, or that such persons or documents might themselves constitute or lead to admissible evidence.

Apart from the Immersion Agreements themselves, the only evidence discussed by Anascape is the proposed opinion testimony of Anascape's expert witness. Anascape proposes that, in addition to putting the Immersion Agreements directly in front of the jury to support its reasonable royalty arguments, Anascape's damages expert would consider the Immersion Agreements in forming his reasonable royalty opinion testimony. Yet, Anascape cannot simply introduce inadmissible and prejudicial evidence by filtering it through expert opinion testimony, unless such evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Anascape's own expert agrees that licenses reached in settlement of litigation are <u>not</u> properly relied on by damages experts in forming a reasonably royalty opinion. (*See supra*, pp. 3-4.) Moreover, the considerations of relevance and unfair prejudice that have lead courts to exclude licenses reached in settlement of litigation on the issue of damages do not magically disappear when filtered through expert testimony. Rather, such considerations create a greater concern when the jury

receives such evidence under the blessing of an "expert" opinion. *See* 2 Gregory E. Upchurch, *Intellectual Property Litigation Guide: Patents & Trade Secrets* § 18:4 (2007) ("The Supreme Court has suggested that under Rule 403 a court should exercise more control over expert testimony than over lay witness testimony, due to the greater force of expert evidence and the difficulty in evaluating it.").

Anascape cites to this Court's opinion in *Spreadsheet* in support of the position that a reasonable royalty expert is <u>entitled</u> to review licenses reached in settlement of litigation. (Pl. Br. at 6.) This is a misrepresentation of the *Spreadsheet* holding. In *Spreadsheet*, this Court rejected a request to entirely exclude an expert's reasonable royalty testimony on the grounds that, in addition to non-settlement licenses, the expert had considered a settlement-induced license in forming such opinion testimony. Case No. 2:05-cv-00127-DF at 9-10 (E.D. Tex. 2007). In other words, the Court held that an expert's consideration of a settlement agreement did not so irrevocably taint his opinion that the <u>entire</u> report would have to be excluded. Anascape attempts to twist this ruling into a proclamation that an expert "should" consider settlement agreements in determining a reasonable royalty. (Pl. Br. at 6.) The *Spreadsheet* decision cannot reasonably be read to <u>require</u> that an expert be given the opportunity to consider irrelevant and inadmissible settlement agreements as a matter of discovery. Nor does the Court's admission of unrelated portions of an expert report, <u>despite</u> the expert's consideration of irrelevant settlement licenses, support an assertion that production of settlement licenses would "lead to the discovery of admissible evidence."

## CONCLUSION

Because Anascape seeks to compel production of evidence that is inadmissible, and Anascape has not proposed any plausible scenario in which such evidence would lead to the

discovery of other, admissible evidence, Microsoft respectfully requests that Anascape's motion be denied.

Respectfully submitted,

Dated: February 19, 2008    By:    /s/ J. Christopher Carraway
J. Thad Heartfield (Bar No. 09346800)
thad@jth-law.com
Law Offices of J. Thad Heartfield
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: 409-866-3318
Facsimile: 409-866-5789

Clayton E Dark Jr. (Bar No. 05384500)
clay.dark@yahoo.com
Clayton E Dark Jr., Law Office
207 E. Frank Avenue #100
Lufkin, Texas 75901
Telephone: 936-637-1733

J. Christopher Carraway (admitted *pro hac vice*)
christopher.carraway@klarquist.com
Joseph T. Jakubek (admitted *pro hac vice*)
joseph.jakubek@klarquist.com
Stephen J. Joncus (admitted *pro hac vice*)
stephen.joncus@klarquist.com
Richard D. Mc Leod (Bar No. 24026836)
rick.mcleod@klarquist.com
Derrick W. Toddy (admitted *pro hac vice*)
derrick.toddy@klarquist.com
John D. Vandenberg (admitted *pro hac vice*)
john.vandenberg@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300
Facsimile: 503-595-5301

*Attorneys for Defendant Microsoft Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 19th day of February, 2008. Any other counsel of record will be served by first-class mail.

By:    /s/ J. Christopher Carraway
        J. Christopher Carraway
        christopher.carraway@klarquist.com