# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **SPREADSHEET AUTOMATION CORPORATION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **2:05-CV-127-DF** |
| **MICROSOFT CORPORATION,** | § § § | |
| **Defendant.** | § § | |

## O R D E R

Before the Court is Defendant's Motion to Exclude the Testimony of N. Elton Dry, to which Plaintiff has responded and Defendant has replied. Dkt. Nos. 96, 127 & 137. Also before the Court is Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini, to which Plaintiff has responded and Defendant has replied. Dkt. No. 98, 109 & 117. Defendant also filed supplemental motions to exclude these experts, and Plaintiff filed a consolidated response, to which Defendant filed a consolidated reply. Dkt. Nos. 123, 124, 134 & 142. The Court held a hearing on February 14, 2007. Having considered the briefing, arguments of counsel, and all relevant papers and pleadings, the Court finds that Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini (Dkt. No. 98) should be **GRANTED IN PART** as to consent decrees, settlements, and licenses made under the threat of litigation, and this motion should be otherwise **DENIED IN PART**. The Court further finds that Defendant's remaining motions (Dkt. Nos. 96, 123 & 124) should be **DENIED**.

## I. BACKGROUND

Plaintiff brings this patent infringement action against Defendant for alleged infringement of United States Patent No. 5,033,009 (the "'009 Patent"). Complaint, Dkt. No. 1 at ¶ 5. In particular, Plaintiff accuses Defendant's "Access" and "Excel" products of infringement. *Id.* at ¶ 7. Plaintiff originally asserted infringement of Claims 1, 2, 3, 5, 6, and 7. The Court entered its Claim Construction Order on November 9, 2006. Dkt. No. 72. Following an exchange of summary judgment briefing, the parties stipulated to invalidity of Claims 1, 2, 3, and 5, and Plaintiff now only asserts Claims 6 and 7. *See* Dkt. Nos. 118 & 120.

Defendant seeks to exclude certain testimony of Plaintiff's damages expert, Joseph Gemini ("Mr. Gemini"), and Plaintiff's willfulness expert, N. Elton Dry ("Mr. Dry"). Plaintiff raised some dispute as to whether Defendant's motions may properly be considered motions to exclude expert testimony pursuant to *Daubert.* 509 U.S. 579. In its motions, Defendant cites Federal Rule of Evidence 702 and clearly questions the methodology and principles of Plaintiff's experts. Dkt. Nos. 96 at 5 & 98 at 4. The Court therefore properly treats Defendant's motions as *Daubert* motions to exclude expert testimony.

The Court considers first whether the expert testimony is proper and then addresses the parties disputes as to the appropriate scope of evidence on damages, the propriety of testimony on willfulness, the state of mind required to prove inducement, and laches.

## II. LEGAL PRINCIPLES

Federal Rule of Evidence ("Rule") 702 requires that any expert be qualified to testify by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Specifically, Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if

(1) the testimony is based upon sufficient facts or data,

(2) the testimony is the product of reliable principles and methods, and

(3) the witness has applied the principles and methods reliably to the facts of the case.

Any such testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* When faced with a proffer of expert testimony, it is the trial judge's responsibility to determine, at the outset, whether the expert is proposing to testify to expert knowledge and whether such testimony will assist the trier of fact to understand or determine a fact in issue. *Id.*; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). In this regard, the trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

To constitute expert knowledge that will "assist the trier of fact," the proposed testimony must be both relevant and reliable. *E.I. duPont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1996). The trial judge's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id.* at 558. Relevant testimony is that which is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 556 (quotation omitted). "In addition to being relevant, the underlying scientific technique or principle must be reliable.

-3-

Scientific evidence which is not grounded 'in the methods and procedures of science' is no more than 'subjective belief or unsupported speculation.'" *Id.* at 557 (quoting *Daubert*, 509 U.S. at 590).

### III. THE PARTIES' POSITIONS

#### A. Damages

Defendant argues that Mr. Gemini's royalty calculations improperly: (1) use settlement licenses to arrive at a royalty rate; (2) include revenue from non-accused products, as well as non-accused features of accused products; and (3) include sales outside the U.S. Dkt. No. 98 at 4. Defendant argues that Mr. Gemini improperly invokes the "entire market value" doctrine because Plaintiff has not shown that "the patent related feature is the basis for customer demand." *Id.* at 9 (quoting *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374 (Fed. Cir. 2005)).

In response, Plaintiff cites the rejection of purportedly similar arguments by Defendant in *Eolas Techs. Inc., v. Microsoft Corp.*, 70 U.S.P.Q.2d 1939, 2004 U.S. Dist. LEXIS 534 (N.D. Ill. Jan. 14, 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005). Dkt. No. 109 at 5. Plaintiff argues, for example, that Defendant "markets Office as the type of 'functional unit' that justifies use of an entire market value damages theory." *Id.* at 12. Plaintiff distinguishes *Imonex* by arguing that "[r]oyalty-based damages were allowed only on the aftermarket units ostensibly because there was no evidence presented of [the accused component's] value (when incorporated as a component) relative to the [accused] machines as a whole." *Id.* at 14. As to revenue from foreign sales, Plaintiff argues that the Federal Circuit has ruled that "every form of invention eligible for patenting falls within the protection of [35

U.S.C.] section 271(f)." *Id.* at 15 (quoting *Eolas*, 399 F.3d at 1339; discussing *Union Carbide v. Shell*, 425 F.3d 1366, 1380 (Fed. Cir. 2005)). As to settlement licenses, Plaintiff argues that *Rude v. Westcott*, 130 U.S. 152 (1889), is distinguishable because the plaintiff in that case used only a single settlement and because Mr. Gemini does not use settlement licenses as a standard to measure the "value" of the '009 Patent. *Id.* at 17.

Defendant replies that "the plaintiff *in this lawsuit* . . . has failed to make any showing that the accused functionalities drive customer demand for Excel, Access, or, especially, Office." Dkt. No. 117 at 2. As to worldwide sales, Defendant argues that *Union Carbide* "only held that process claims *could* be infringed under Section 271(f)(2), and remanded for a finding as to whether the facts of that case justified liability for the exportation." *Id.* at 4 (discussing 425 F.3d 1366). As to Section 271(f)(1), Defendant argues that "the asserted claims do not cover an apparatus and thus cannot be applied to the combination of 'components'" in this case. *Id.* at 5 (distinguishing *AT&T Corp. v. Microsoft Corp.*, 414 F.3d 1366 (Fed. Cir. 2005) & *Eolas v. Microsoft*, 399 F.3d 1325 (Fed. Cir. 2005)).

**B. Willfulness**

Defendant argues that Mr. Dry's willfulness opinions improperly invade the provinces of the jury, by opining on Defendant's intent, and of the Court, by instructing the jury on the law of willfulness. Dkt. No. 96; *see* Expert Report of N. Elton Dry, Dkt. No. 96 at Exh. A.

Plaintiff responds that experts may properly testify on ultimate issues of fact. Dkt. No. 127 at 3. Further, Plaintiff argues that "Mr. Dry's opinions regarding Defendant's conduct – its knowledge of the '009 Patent and what reasonable patent counsel and corporations would have done with the knowledge – are proper subjects of expert testimony." *Id.* at 5. Plaintiff notes that

-5-

Mr. Dry can "explain[] the technical aspects of patent prosecution, describing how, when, and why Defendant would have received notice of the '009 patent in 1992." *Id.* at 6.

## C. Supplemental Briefing

Defendant has filed a supplemental motion to exclude Mr. Gemini's testimony, arguing that: "(1) Mr. Gemini cannot support his claims for damages prior to March 28, 2005 on a theory of inducing infringement because Defendant had no notice of SAC's infringement allegations prior to that date; and (2) laches bar SAC's damages." Dkt. No. 124 at 1. Defendant argues that Plaintiff has not produced evidence of "specific intent" to infringe prior to Plaintiff filing suit on March 28, 2005 because prior to that date Defendant had no reason to believe it might be infringing the '009 Patent. *Id.* at 3 (quoting *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). Defendant argues that because it had reason to believe the claims of the '009 patent were invalid, it could not have had specific intent to infringe. *Id.* at 4-5. Defendant also argues that because Plaintiff waited to file suit until over twelve years after it alleges Defendant started infringing, laches bars pre-filing damages. *Id.* at 5-6.

Plaintiff responds that as to the intent element of inducement, it need only prove Defendant "should have known" that its acts would induce infringement, and Plaintiff argues it may do so with "circumstantial evidence." Dkt. No. 134 at 8-11 (quoting *DSU*, 471 F.3d at 1306). Plaintiff argues there is sufficient circumstantial evidence because Plaintiff "presents evidence: (1) [Defendant] clearly knew about the '009 Patent; and (2) [Defendant] encouraged and consciously promoted the uses of Excel that [Plaintiff] claims infringe[]." *Id.* at 10-11. As to the presumption of laches, Plaintiff responds that Defendant has not established the requisite predicate fact that the patent owner knew of Defendant's alleged infringement. Plaintiff further

argues that this is a question of fact, and even if Defendant establishes a presumption of laches,

Plaintiff may rebut that presumption by showing lack of prejudice to Defendant, showing good

cause for delay, or showing that Defendant "engaged in particularly egregious behavior." *Id.* at

12 (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir.

1992)).

Defendant replies that its purported knowledge of the '009 Patent is insufficient evidence

of specific intent. Dkt. No. 142 at 4. Defendant further argues it could not have formed such

intent as to Claims 6 and 7 because these claims have only recently been "narrowed" to avoid

invalidity based on "a limitation not in the claims themselves, but added during claim

construction." *Id.* at 5. As to laches, Defendant argues Plaintiff has presented no evidence of

"egregious conduct." *Id.* at 5-6.

Defendant has filed a supplemental motion to exclude Mr. Dry, arguing that: "(1) Mr. Dry

cannot support his claims for damages for willful infringement; and (2) laches bar SAC's

damages." Dkt. No. 123 at 1. Defendant asserts the same supplemental arguments here as in its

supplemental motion to exclude Mr. Gemini's testimony. *See* Dkt. No. 124, discussed *supra*.

## IV. DISCUSSION

Messrs. Gemini and Dry have substantial expertise in their respective areas of damages

and willfulness, and the parties do not appear to dispute their qualifications. *See* Expert Reports,

Dkt. No. 96, Exh A at ¶¶ 5-7 & Dkt. No. 99, Exh. B at ¶¶ 3-7.

### A. Damages

"The amount of damages based on a reasonable royalty is an issue of fact." *Micro Chem.,

Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003). Defendant disputes Mr. Gemini's

use of settlements as evidence of a reasonable royalty, his application of the entire market value

doctrine, and his inclusion of foreign sales of products accused of infringement.

### 1. Settlements as Evidence of Reasonable Royalty

"[A] payment of any sum in settlement of a claim for alleged infringement cannot be

taken as a standard to measure the value of the improvements patented, in determining the

damages sustained by the owners of the patent in other cases of infringement." *Rude*, 130 U.S. at

164. "Many considerations other than the value of the improvements patented may induce the

payment in such cases." *Id.* "The avoidance of the risk and expense of litigation will always be a

potential motive for a settlement." *Id.* "In order that a royalty may be accepted as a measure of

damages against an infringer, who is a stranger to the license establishing it, it must be paid or

secured before the infringement complained of . . . ." *Id.* at 165. Licenses based on "offers [that]

were made after the infringement had begun and litigation was threatened or probable . . . should

not be considered evidence of an established royalty, since license fees negotiated in the face of a

threat of high litigation costs may be strongly influenced by a desire to avoid full litigation."

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) (citations and

quotations omitted).

Settlements that are *not* entered into to avoid litigation may be probative of a reasonable

royalty. *Studiengellschaft Kohle v. Dart Indus.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988) (allowing

evidence of settlement where patent had already been adjudged valid and infringed by the

defendant). As to Mr. Gemini's reliance upon the jury's findings in *Amado v. Microsoft Corp.*,

such findings are probative because they are not "under a threat of litigation" but rather appear to

have occurred after findings of validity and infringement. *Id.*; *see* Dkt. No. 99, Exh. B at 33-34.

-8-

Defendant has not shown that evidence of judgements should be excluded, and the Court therefore declines to do so.

The Court received letter briefing dated February 16, 2007, in which Plaintiff submits that for purposes of "perspective," it is "acceptable for Mr. Gemini to have considered such licenses/verdicts in connection with a reasonable royalty analysis." Defendant responded, in letter briefing dated February 20, 2007, that settlement agreements are not appropriate for "context" and that "no evidence or testimony in any form should be permitted in front of the jury . . . of prior settlements, resolutions, or rulings from other lawsuits." Defendant proposed that Mr. Gemini's entire report should be excluded for this reason.

Evidence of consent decrees, settlements, and licenses made under the threat of litigation, offered for the purpose of "perspective" or "context," would likely confuse the jury, and the jury would be unlikely to consider such evidence only as "context" for a reasonable royalty. The Court therefore finds that such testimony, even if offered for the purportedly limited purpose of context, is inadmissible under Federal Rule of Evidence 403.[1] As to whether the entire report should be excluded, the Court finds that because Mr. Gemini does not rely exclusively upon settlement agreements reached under threat of litigation,[2] he may properly "*consider* such royalty

---

[1]   "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[2]   Defendant argues that "Mr. Gemini impermissibly relies on a "cross-license agreement between Microsoft and Inprise Corporation (now known as Borland) . . . ." Dkt. No. 98 at 14. Defendant argues this license is improper evidence for Mr. Gemini to rely upon because it was "made under circumstances that are sharply and fundamentally different" from the present case. *Id.* at 15 (citing *Georgia-Pacific*, 318 F.Supp. 1116, 1137 (S.D.N.Y 1970). This argument goes to weight rather than admissibility. Because Defendant does not submit that this

rates and the underlying agreements in the formation of an opinion." *Acco Brands, Inc. v. ABA Locks Mfr. Ltd.*, Civil Action No. 2:02-CV-112, Dkt. No. 196 (May 17, 2004) (Ward, J.)

The Court therefore finds that evidence of consent decrees, settlements, and licenses made under the threat of litigation would not be proper evidence of Plaintiff's damages to present to the jury. Defendant's motion to exclude Mr. Dry's testimony on this issue should be granted. However, Defendant has not justified exclusion of other evidence, such as judgments or licenses not reached under threat of litigation. Defendant's motion is therefore otherwise denied.

### 2. Entire Market Value Doctrine

Defendant argues both that the "entire market value doctrine" is inapplicable and that, even if applicable, Mr. Gemini incorrectly applies the doctrine.

### (a) Applicability of the Entire Market Value Doctrine

"The entire market value rule 'permits recovery of damages based on the value of the entire apparatus containing several features, where the patent related feature is the basis for customer demand.'" *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005) (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989)). "This measure of damages arises where both the patented and unpatented components together are analogous to components of a single assembly, parts of a complete machine, or constitute a functional unit but not where the unpatented components have essentially no functional relationship to the patented invention and . . . may have been sold with an infringing device only as a matter of convenience or business advantage." *Id.* (quoting

---

license agreement was influenced by any litigation, the Court considers this license an example of a non-litigation-related license that supports Mr. Gemini's opinion.

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc)).

In support of its motion, Defendant relies upon the Federal Circuit's decisions in *Imonex* and *Rite-Hite*. Dkt. No. 98 at 9-11 (discussing *Imonex*, 408 F.3d 1374 & *Rite-Hite*, 56 F.3d 1538). In response, Plaintiff relies upon *Eolas*. Dkt. No. 109 at 6-13 (discussing *Eolas*, 2004 U.S. Dist. LEXIS 534).[3]

In *Eolas*, the court considered whether to allow the plaintiff to apply the entire market value doctrine to an invention involving "automatic invocation of an application" related to Defendant's Windows and Internet Explorer products. 2004 U.S. Dist. Lexis 534, at *7. In the present case, Plaintiff analogously accuses a particular functionality of Defendant's Excel (and, in turn, Office) products. The court in *Eolas* noted that Defendant "bundles together all of its Windows functionality as seamlessly as it can," and the court found that "the bundling makes it very difficult for either party to assess the value of each individual component." *Id.* at *6. In the present case, Plaintiff similarly argues that the accused instrumentality is a component whose value cannot be accurately assessed because of Defendant's practice of bundling. *See* Dkt. No. 109 at 12. The court in *Eolas* opined that "[s]ince [Defendant] has created this difficulty for itself, it must bear the legal risks attendant to its way of business." *Id.* at *6-7.

*Imonex* is distinguishable from the present case because the plaintiff in *Imonex* accused a comparatively discrete instrumentality that was available as an "after-market" product. The plaintiff in *Imonex* therefore had the ability to show a reasonable royalty on sales of accused devices in the after-market. In the present case, by contrast, Plaintiff accuses a method of using

---

[3]         Plaintiff also cites a brief in support of a motion for judgment as a matter of law on damages filed before Judge David O. Carter of the Central District of California, Southern Division, in *Amado v. Microsoft Corp.*, SACV 03-242. *See* Dkt. No. 98 at Exh. C.

Defendant's PivotTables functionality, which is part of Defendant's Excel product, among others. In *Imonex*, the defendant argued in its briefing that it sold products "both with and without a coin selector . . . ." Dkt No. 109 at Exh. K. Here, neither party has shown that an after-market exists for PivotTables or that PivotTables is otherwise available separately.

For all of these reasons, the Court finds that the accused functionality of PivotTables has a "functional relationship to the patented invention" such that the entire market value doctrine may be applied. *Imonex*, 408 F.3d at 1379. Whether the "patent related feature is the basis for customer demand" is a matter for the finder of fact. *Id.* (quoting *State v. Mor-Flo*, 883 F.2d at 1580). The Court therefore finds the entire market value doctrine applicable to Plaintiff's claim.

### (b) Mr. Gemini's Application of the Entire Market Value Doctrine

Defendant also argues that Mr. Gemini's analysis is a misapplication of the entire market value doctrine. Specifically, Defendant argues Mr. Gemini "bases his damage opinion on revenues from licenses for entire products" and "combines the revenue for products that have no features accused of infringement together with those products that do include features accused of infringement." Dkt. No. 98 at 6. For example, Defendant notes that Mr. Gemini's analysis includes "0.50% of all licenses that include Excel, whether those licenses also include other products or not . . . ." *Id.* at 7.

Here again, *Eolas* is analogous to the present case. The accused functionality of PivotTables is "bundl[ed]" with Defendant's Excel product, which "makes it very difficult for either party to assess the value" of that particular functionality. 2004 U.S. Dist. Lexis 534, at *6. *Eolas* is persuasive on this issue, and the Court also finds the present case analogous to *State v. Mor-Flor*, in which the Federal Circuit affirmed the trial court's application of the entire market

-12-

value doctrine where "no components [could] be used separately." 883 F.2d at 1580. The entire

market value doctrine simply allows the finder of fact to consider the value of the product as a

whole when calculating damages. *See TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901

(Fed. Cir. 1986) ("Where a hypothetical licensee would have anticipated an increase in sales of

collateral unpatented items because of the patented device, the patentee should be compensated

accordingly.") In response, Defendant may properly present evidence of the "unique value [of]

other components" of its accused products. *State v. Mor-Flor*, 883 F.2d at 1580. To the extent

Defendant bundles products incorporating the accused functionality of PivotTables with other

non-accused functionalities and products, the finder of fact may consider such evidence in

calculating damages.

Because Plaintiff properly invokes and applies the entire market value doctrine,

Defendant's motion to exclude Mr. Gemini's corresponding testimony should be denied.

### 3. Damages from Foreign Sales

Defendant argues that Mr. Gemini cannot testify as to damages based on infringement

resulting from foreign sales because 35 U.S.C. § 271(f) does not provide damages for foreign

infringement of method claims. The Court need not resolve the availability of damages for

foreign infringement at this stage because at trial the jury may, on a special verdict form, enter

separate figures for domestic and foreign infringement. Because this dispute would thus be

better addressed by post-trial motion, Defendant's motion to exclude testimony related to foreign

infringement should be denied.

**B. Willfulness**

Whether a defendant committed willful infringement is a question of fact. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995); *see also Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classic jury question of intent. When trial is had to a jury, the issue should be decided by the jury.") (citations omitted). A plaintiff has the burden of proving willfulness by clear and convincing evidence. *Pall*, 66 F.3d at 1221; *SRI Int'l v. Advanced Technological Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997).

Plaintiff's counsel represented at the hearing on this matter that Mr. Dry would not testify directly as to Defendant's subjective intent. Based on this representation, the Court finds that Mr. Dry's testimony on willfulness will not invade the province of the jury. In his expert report, Mr. Dry provides expertise on patent prosecution that may be helpful to the jury in deciding what Defendant knew, when it knew it, and what intent its actions may therefore reflect. *See* Dkt. No. 99, Exh. A at ¶¶ 20-25. The jury must ultimately decide whether Defendant had the requisite intent to support a finding of willfulness.

As to the law of willfulness, "questions which would merely allow the witness to tell the jury what result to reach are not permitted." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Id.* The Court shall instruct the jury on the law of willfulness. Nevertheless, Mr. Dry may testify as to his opinion on underlying facts that Plaintiff must prove to sustain a finding of willfulness.

-14-

**C. Supplemental Issues**

### 1. Showing of Intent Required to Prove Inducement to Infringe

Defendant argues that Plaintiff's evidence of pre-suit damages must be excluded because

Plaintiff cannot show that Defendant had the requisite intent to induce infringement. Proof of

inducement to infringe "requires evidence of culpable conduct, directed to encouraging another's

infringement, not merely that the inducer had knowledge of the direct infringer's activities."

*DSU*, 471 F.3d at 1306 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster,*

*Ltd.*, 545 U.S. 913 (2005) & *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553

(Fed. Cir. 1990)).  The Federal Circuit upheld the following instruction given by the trial court:

> In order to induce infringement, there must first be an act of direct
> infringement and proof that the defendant knowingly induced infringement
> with the intent to encourage the infringement. The defendant must have
> intended to cause the acts that constitute the direct infringement and must
> have known or should have known than [sic] its action would cause the
> direct infringement.

*DSU*, 471 F.3d at 1305.  "While proof of intent is necessary, direct evidence is not required;

rather, circumstantial evidence may suffice." *Id.* at 1306 (quoting *Water Techs. Corp. v. Calco,*

*Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)).  "Intent is a factual determination particularly within

the province of the trier of fact." *Water Techs.*, 850 F.2d at 668-69 (quoting *Allen Organ Co. v.*

*Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988)).  Defendant acknowledges that the

United States Patent and Trademark Office cited the '009 Patent as prior art on other patent

applications filed by Defendant.  Dkt. No. 142 at 3-4.

Because a reasonable jury could find the requisite intent from Defendant's knowledge of

the '009 Patent, viewed in light of the accused functionality, Mr. Gemini should not be precluded

from testifying as to pre-suit damages. Similarly, Mr. Dry should not be precluded from testifying as to willfulness because Defendant has not shown that Plaintiff cannot establish the requisite intent.

### 2. Whether Laches Bars Pre-Suit Damages

Defendant further seeks to exclude evidence of pre-suit damages based on laches. To succeed on the equitable defense of laches, a defendant must prove the following elements by a preponderance of the evidence: (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) that the delay operated to the prejudice or injury of the defendant. *A.C. Aukerman Co.*, 960 F.2d at 1028, 1032 & 1045. Whether the length of time is unreasonable has no fixed boundaries but rather depends on the circumstances. *Id.* A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity. *Id.* at 28. A court must also consider and weigh any justification offered by the plaintiff for its delay, such as whether the plaintiff was in negotiations with the defendant. *Id.* at 1033.

The parties dispute at what point in time the patent owner knew or should have known of Defendant's allegedly infringing activity. The Court therefore declines to apply laches, at the pre-trial stage, as a bar to pre-suit damages. Alternatively, the Court notes that the presumption of laches, even once established, may be rebutted. Defendant's motion to exclude testimony by Messrs. Gemini and Dry as to pre-suit damages should therefore be denied.

## V. CONCLUSION

Defendant's Motion to Exclude the Expert Testimony of Joseph Gemini (Dkt. No. 98) is

hereby **GRANTED IN PART** as to consent decrees, settlements, and licenses made under the

threat of litigation, and this motion is otherwise **DENIED IN PART**.

Defendants' Motion to Exclude the Testimony of N. Elton Dry (Dkt. No. 96),

Defendant's Supplemental Motion to Exclude the Expert Testimony of N. Elton Dry (Dkt. No.

123), and Defendant's Supplemental Motion to Exclude the Expert Opinion of Joseph Gemini

(Dkt. No. 124) are hereby **DENIED**.

**SIGNED this 23rd day of February, 2007.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

-17-

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

FILED-CLERK
U. DISTRICT COURT

04 MAY 12  AM 9: 06

TX EASTERN-MARSHALL

BY_____

| | | |
|---|---|---|
| ACCO BRANDS, INC. | § | |
| Vs. | § | CIVIL ACTION NO. 2:02-CV-112 |
| ABA LOCKS MANUFACTURER LTD., ET AL. | § | |

## ORDER

The court grants the defendants' motion in limine with respect to the Targus agreement and

any others entered into as settlements of lawsuits. *Rude v. Westcott*, 130 U.S. 152, 164 (1889)

establishes the general rule that royalties paid in settlement are not probative of a reasonable royalty

under 35 U.S.C. § 284. In *Studiengesellschaft Kohle, m.b.h. v. Dart Industries, Inc.*, the court drew

a distinction when there was an agreement after a prior judicial finding of validity and infringement.

862 F.2d 1564 (Fed. Cir. 1988). The plaintiff in this case relies on *Dart Industries*, pointing to

language in a consent judgment in the *Targus* case. The consent judgment is a creature of the

parties' own making, however, and is not the sort of judicial finding of validity and infringement

contemplated in the *Dart Industries* case. The court is not persuaded that the general rule should not

apply to this case and therefore grants the motion in limine. The court will address by separate order

the *Daubert* motion filed by the defendants related to this issue.

So **ORDERED** and **SIGNED** this *11th* day of May, 2004.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)
(Cite as: Slip Copy)

**H**Rates Technology Inc. v. Cablevision Systems
Corp.
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
RATES TECHNOLOGY INC., Plaintiff,
v.
CABLEVISION SYSTEMS CORP., Defendant.
No. 05-CV-3583 (DRH)(WDW).

April 20, 2007.

Burke, Williams & Sorensen LLP, by James B.
Hicks, Esq., Los Angeles, CA, for Plaintiff.
Goodwin Proctor LLP, by Benjamin Hershkowitz,
Esq., New York, NY, for Defendant.

**ORDER**

HURLEY, Senior District Judge.

**BACKGROUND**

**I. *Procedural Background***

*1 Plaintiff Rates Technology Inc. ("Plaintiff")
filed this patent infringement case on July 29, 2005,
alleging, inter alia, that the sale of Optimum Voice,
Optimum Online VoIP and voice messaging services
by Cablevision Systems Corp. ("Defendant")
infringed upon two of Plaintiff's patents. Plaintiff
seeks actual damages in the amount of $950 million
and requests trebling to $2.85 billion under 35 U.S.C.
§ 284.

On April 11, 2006, Defendant filed a motion to
compel responses to document demands and
interrogatories. Specifically, Defendant sought an
order directing Plaintiff to produce any licenses,
settlement agreements, covenants not to sue, and
other agreements between the Plaintiff and various
non-parties concerning both of the patents at issue in
this case. Plaintiff opposed the motion, primarily on
the ground that discovery of such information would
ultimately be inadmissible under Federal Rule of
Evidence ("FRE") 408.

**A. *The Magistrate Judge's Order***

On April 14, 2006, Magistrate Judge William D.
Wall granted Defendant's motion, finding that "the
materials sought are discoverable in that they may
lead to the discovery of admissible evidence, and
[Plaintiff's] reliance on FRE 408 is, at best,
premature."(Apr. 14, 2006 Order at 2.) The order
provides in pertinent part as follows:

During the course of this litigation, [Plaintiff]
has bolstered its claims that its patents are universally
accepted by stating that "over 120 companies have
been covered under" the patents, and that [Plaintiff]
has only had to litigate patent infringement claims
"approximately 25 times out of some 740 covered
companies."Having raised this information to its
benefit, [Plaintiff] now seeks to bar inquiry into how
or why those companies were "covered." Simply put,
RTI cannot have it both ways.

The court takes no position on whether the
information sought will be admissible at trial. FRE
408 states, in part, that evidence [of] accepting
"valuable consideration in compromising or
attempting to compromise a claim which was
disputed as to either validity or amount, is not
admissible to prove liability for or invalidity of the
claim or its amount."In its opposition papers,
[Plaintiff] repeatedly asserts that its agreements with
non-parties are settlements and not licenses. Prior
communications from RTI, however, characterize the
agreements somewhat differently: "[o]ur past
'licensing' practice has been to grant Covenant Not
To Sue ('CNS') agreements and not formal licenses,
in exchange for one-time payments."It is possible
that the documents at issue wouldn't be considered
settlement materials under FRE 408. Since discovery
is ongoing and the question of admissibility is not
currently before the court, it is premature to make a
determination as to the nature of [Plaintiff's] other
"agreements."

(*Id.* at 2-3.)Judge Wall directed Plaintiff to
produce any licenses, settlement agreements,
covenants not to sue, and other agreements between
Plaintiff and various non-parties concerning both of
the patents at issue.

**B. *This Court's October 20, 2006 Order***

Slip Copy
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)
(Cite as: Slip Copy)

**\*2** Plaintiff appealed Judge Wall's decision to this Court. By Memorandum of Decision and Order dated October 20, 2006 (the "October 20, 2006 Order"), the Court affirmed Judge Wall's Order in its entirety and gave Plaintiff ten days to produce the relevant documents. Finding that Judge Wall's Order was neither clearly erroneous nor contrary to law, the Court stated:

The premise of Plaintiff's objection-that these documents will be inadmissible at trial pursuant to FRE 408-is, as Judge Wall correctly pointed out, premature and irrelevant to the question of discoverability before the Court. While Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations, this rule does not itself govern discovery. Instead, settlement agreements are governed by Rule 26, which allows discovery thereof so long as such disclosure "appears reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1).

(*Id.* at 5 (citations and internal quotation marks omitted).) Thus, even assuming that the documents at issue could be classified as settlement agreements, they would still be subject to discovery so long as Federal Rule of Civil Procedure ("Rule") 26 was satisfied. Here, that condition was met because in the patent context, "settlement of patent litigation may be functionally identical to a license."(*Id.* at 6 (citations and internal quotation marks omitted).) As the Court further explained:[I]n "settling" claims with alleged infringers, it is of no import that Plaintiff may have styled its agreements as "covenants not to sue" rather than licenses because in the patent context, "[a] license may amount to no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention."*Ortho Pharm. Corp. v. Genetics Inst. Inc.,* 52 F.3d 1026, 1031 (Fed.Cir.1995).

(*Id.* at 6.) Thus, regardless of their classification, to the extent these agreements reflect the industry's acquiescence to Plaintiff's patents, they may be relevant to show the validity thereof.[FN1](Id. n. 1) Accordingly, the Court found that they may lead to the discovery of admissible evidence and were discoverable.

FN1. Notably, Plaintiff itself at one point

characterized the agreements as licenses. (Apr. 14, 2006 Order at 2.)

In the October 20, 2006 Order, the Court also rejected Plaintiff's argument that public policy concerns dictated that the documents, if settlement agreements, remain confidential. (*See id* . at 8 ("[A]lthough the Sixth Circuit may have recognized a settlement privilege under federal law, other 'courts have generally declined to recognize a privilege that would preclude discovery for the purpose of settlements or settlement negotiations,'" *Newman & Assocs. v. J.K. Harris & Co., LLC,* No. 04CV9264, 2005 WL 3610140, at \*2 (S.D.N.Y. Dec. 15, 2005) (collecting cases), including the lower courts in this Circuit as well as other Circuit Courts of Appeals.").)

**C.** *Plaintiff's Subsequent Applications*

**\*3** Thereafter, Plaintiff moved for certification of this Court's October 20, 2006 Order so that it could seek an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff also sought a stay of the October 20, 2006 Order. Plaintiff argued:

[W]hen [Plaintiff] entered into confidential settlements, it promised the other parties that it would keep those settlements confidential-indeed, often at the other's party demand. [Plaintiff] won't break its promises, especially since the Magistrate's April 14 Order is flat-out wrong ... and [Plaintiff] would rather face terminating sanctions, and see this case dismissed, then produce confidential settlements in violation of its constitutional contract rights....

(Letter by James B. Hicks, dated Oct. 24, 2006, at 1.)

By Order dated November 16, 2006, the Court denied Plaintiff's application and extended the time within which Plaintiff was to produce the relevant documents to December 1, 2006. That same day, Plaintiff submitted a second application to stay production of the documents, asserting that "Magistrate Wall's underlying order and this Court's October 20 and November 16 Orders are invalid."(Letter by James B. Hicks, dated Nov. 16, 2006, at 1.) Plaintiff repeated its intention not "to produce these documents, even if this case is dismissed as a result."(*Id.* at 2.)

By Order dated November 17, 2006, the Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)
(Cite as: Slip Copy)

directed Defendant to respond to Plaintiff's most recent application. The Court noted that because it intended "to move promptly on this matter, no stay [would] be granted at this time."(Nov. 17, 2006 Order.) Defendant responded by letter dated November 21, 2006, and Plaintiff replied by letter dated November 27, 2006.

By Order dated November 30, 2006, the Court found that none of Plaintiff's arguments had "any merit" and denied Plaintiff's request for a stay. (Nov. 30, 2006 Order at 2, 3.) Plaintiff was directed to produce all documents concerning any licenses, settlement agreements, covenants not to sue, or any other agreements concerning either or both of the patents at issue, on an "attorneys' eyes only" basis, on or before December 11, 2006. The Court noted that "[s]hould Plaintiff indicate to the Court that it will not comply with this Order, Defendant shall promptly advise the Court how it wishes to proceed."(*Id.* at 3.)

### D. *The Current Application*

By letter dated December 5, 2006, Plaintiff "respectfully note[d] that the orders requiring it to produce these documents are defective" and indicated that "it does not intend to produce those settlement agreements, even if this case is dismissed as a result."(Letter by James B. Hicks, dated Dec. 5, 2006, at 1, 2.) By letter dated December 8, 2006, Defendant responded by moving for a dismissal of Plaintiff's claims with prejudice and an award of attorneys' fees and costs. (Letter by Benjamin Hershkowitz, dated Dec. 8, 2006, at 1.) In a footnote, Defendant also noted that under Rule 37(b)(2)(A), "the Court would be justified in light of [Plaintiff's] failure to produce, ... for example, take as established that: (1) [Defendant's] suppliers are licensed and that [Defendant] is entitled to the benefit of those licenses; (2) that the license agreements do not support [Plaintiff's] damages theories; and (3) that [Plaintiff] cannot rely on secondary considerations to refute [Defendant's] obviousness defense."(*Id* . at 4 n. 4.)

*4 Plaintiff responded by stating that though it was aware that the Court would likely dismiss its case for refusing to produce the documents, it objected to Defendant's request for monetary sanctions because Plaintiff's refusal to comply with the various orders was "substantially justified."

(Letter by James B. Hicks, dated Dec. 12, 2006, at 1, 2.) Plaintiff also objected to Defendant's suggestion that the Court take certain facts as established based upon Plaintiff failure to produce the agreements. Finally, Plaintiff argued that if the Court did dismiss Plaintiff's complaint, it should also dismiss Defendant's counterclaim for declaratory relief as moot. (*Id.* at 1.)

By letter dated December 15, 2006, Defendant reiterated its request for monetary sanctions and for findings of fact in its favor. (Letter by Benjamin Hershkowitz, dated Dec. 15, 2006, at 1.) In addition, Defendant, for the first time, explicitly requested that the Court take the facts supporting its counterclaims as established. (*Id.*)

Plaintiff wrote a final letter on December 18, 2006, objecting to Defendant's request for judgment on its counterclaim as untimely, as Defendant "never requested such sanctions before." (Letter by James B. Hicks, dated Dec. 18, 2006, at 1.) In addition, Plaintiff "ask[ed] the Court to dismiss its claims with prejudice if that is the necessary alternative to being forced to produce confidential settlements to untrustworthy adverse counsel."(*Id.* at 2.)

For the reasons stated below, the Court dismisses Plaintiff's claims with prejudice, declines to take facts supporting Defendant's counterclaims as established, and finds that Defendant is entitled to an award of attorneys' fees in an amount to be subsequently determined.

### DISCUSSION

### I. *Plaintiff's Claims are Dismissed Pursuant to Rule 37(b)(2)(C)*

Rule 37 provides in pertinent part as follows:
If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:....
(C) An order ... dismissing the action or proceeding....

Fed.R.Civ.P. 37(b)(2)(C). The imposition of sanctions under Rule 37 lies within the broad discretion of the district court. *See, e.g., Corporation*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*of Lloyd's v. Lloyd's U.S., 831 F.2d 33, 36 (2d Cir.1987).*"[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault on the part of the [sanctioned party]."*Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990)* (citations and internal quotation marks omitted). As the Supreme Court has noted, however, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."*National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976); see also Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir.1988)* (affirming magistrate judge's decision to award summary judgment against party who failed to comply with discovery orders: "[W]e wish to emphasize the importance we place on a party's compliance with discovery orders. Such compliance is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril. If one suggests that our decision today is strong medicine, that is precisely what it is intended to be.").

**\*5** The record in this case demonstrates Plaintiff's sustained and wilful refusal to comply with multiple court orders to produce the agreements at issue based upon Plaintiff's belief that the orders are "flat-out wrong" and "invalid." Such blatant disregard for the rules and procedures of this Court clearly demonstrates willfulness and bad faith. Accordingly, the Court finds that dismissal of Plaintiff's claims with prejudice is warranted under Rule 37.[FN2]

> FN2. Plaintiff cannot claim that it is unfairly surprised by the Court's dismissal of its claims as Plaintiff has repeatedly petitioned for such relief as an alternative to being required to produce the documents.

## II. *Defendant's Counterclaims Rule 37(b)(2)(A)*

### A. *The Counterclaims are not Dismissed for Lack of Subject Matter Jurisdiction*

Defendants' Answer asserts four counterclaims,

to wit: (1) declaratory judgment that Defendant has not infringed upon Plaintiff's patents; (2) declaratory judgment that Plaintiff's patents are invalid; (3) declaratory judgment that Plaintiff's patents are unenforceable due to inequitable conduct; and (4) declaratory judgment that Plaintiff is barred from maintaining this action under the doctrine of unclean hands. Plaintiff moves for dismissal of Defendant's counterclaims, arguing that should the Court dismiss Plaintiff's complaint with prejudice, Defendant's counterclaims will be moot and the Court will lack subject matter jurisdiction over them pursuant to *Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed.Cir.1995).*

In *Super Sack,* the Federal Circuit held that a patentee's promise not to "assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts" divests the court of jurisdiction over the case. *Id.* at 1058.The court reasoned that the patentee's covenant not to sue resolved the actual controversy between the parties, i.e., the question of infringement of the actual patent, such that the court no longer had jurisdiction to hear a declaratory judgment action regarding the validity or enforceability of the patent. *Id.*

Here, Plaintiff has not filed a covenant not to sue Defendant for infringement based upon its patents. Moreover, although this Court has dismissed Plaintiff's claims with prejudice, Plaintiff has "reserve[d] its right to appeal a dismissal."(Letter by James B. Hicks, dated Dec. 12, 2006, at 1 n. 1.) Thus, as opposed to the circumstances present in *Super Sack,* where the patentee was "forever estopped ... from asserting liability against" the alleged infringer and thus had no "reasonable apprehension that it [would] face an infringement suit,"*57 F.3d at 1059,* the possibility of suit against Defendant has not been permanently foreclosed. Accordingly, based on the argument proffered, the Court declines to dismiss Defendant's counterclaims for lack of subject matter jurisdiction.

### B. *The Court Declines to Award Judgment to Defendant on its Counterclaims*

Rule 37(b)(2)(A) provides that if a party fails to obey a discovery order, the Court may issue "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)
**(Cite as: Slip Copy)**

be established for the purposes of the action in accordance with the claim of the party obtaining the order."As noted above, by Order dated November 30, 2006, the Court directed Defendant to "promptly advise the Court how it wishe[d] to proceed" with regard to Plaintiff's failure to produce the documents. Defendant responded by moving for dismissal of Plaintiff's claims with prejudice and an award of attorneys' fees and costs. In a footnote, Defendant noted that the Court would "also be justified" in taking certain facts as established pursuant to Rule 37(b)(2)(A). It was not until Plaintiff responded, by letter dated December 12, 2006, and requested dismissal of Defendants' counterclaim, that Defendant explicitly moved the Court to "take facts supporting [its] counterclaims as established."(See Letter by Benjamin Hershkowitz, dated Dec. 15, 2006, at 1.)

*6 In the Court's view, Defendant's sparsely-worded letter application has not satisfactorily explained why this Court, in the exercise of its discretion, should grant Defendant's request. Essentially, Defendant asks this Court to take as established that its suppliers are covered under the unproduced licenses and that Defendant is therefore entitled to the benefit thereof. Such a factual finding would effectively result in judgment in Defendant's favor on its first counterclaim that it has not infringed upon Plaintiff's patents. The Court has already found that Plaintiff is not entitled to the affirmative relief it seeks in its Complaint based upon its discovery violations. Defendant now asks the Court to go one step further and find that Defendant's position is correct. At this juncture, and based upon the papers submitted, the Court declines to do so. Accordingly, Defendant's application to take facts supporting its counterclaims as established pursuant to Rule 37(b)(2)(A) is denied.

### C. *Attorneys' Fees*

Defendant moves for an award of attorneys' fees under Rule 37(b), which provides, in pertinent part:
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award

of expenses unjust.

Fed.R.Civ.P. 37(b). Plaintiff's opposition to such an award is twofold. First, Plaintiff argues that its resistance was "substantially justified." Next, Plaintiff raises due process objections, claiming that Defendant failed to provide it with sufficient notice and that Plaintiff has not had an adequate opportunity to respond.

Plaintiff's first objection is easily disposed of. The Court has repeatedly found that Plaintiff's position has no merit because even if the documents at issue could be characterized as settlement agreements, they are still subject to discovery pursuant to Rule 26. Plaintiff's refusal to comply with these orders based upon its opinion that they are "invalid" cannot be countenanced. Accordingly, the Court finds that Plaintiff has not offered adequate justification for its conduct.

As for Plaintiff's due process argument, the Court notes that "[a]s a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders."*Fonar Corp. v. Magnetic Resonance Plus, Inc.,* 128 F.3d 99, 102 (2d Cir.1997). Further, because Defendant brought its sanctions application under Rule 37, which expressly provides that the Court "shall" impose monetary sanctions under specified circumstances, Plaintiff clearly had notice of the possibility of such sanctions. *See id.*Accordingly, the Court finds that an award of attorneys' fees is warranted in this case. Nonetheless, given Defendant's complete failure to support its fee application with *any* specifics, including what fees it is seeking, for what work, at what hourly rate, etc., the Court cannot make a fee determination on the present record. Accordingly, this matter is respectfully referred to Magistrate Judge Wall for a report and recommendation on the proper amount of attorneys' fees to be awarded.

### CONCLUSION

*7 For the foregoing reasons, the Court So Orders the following relief: (1) Defendant's application to dismiss Plaintiff's claims with prejudice pursuant to Rule 37(b)(2)(C) is granted; (2) Defendant's application to take facts supporting its counterclaims as established pursuant to Rule

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)
**(Cite as: Slip Copy)**


37(b)(2)(A) is denied; and (3) Defendant's application for attorneys' fees is granted and the matter is respectfully referred to Magistrate Judge Wall for a report and recommendation on the proper amount of attorneys' fees to be awarded.

Plaintiff is directed to advise the Court what effect, if any, this decision has on its pending magistrate judge appeal, docket number 79.

**SO ORDERED.**

E.D.N.Y.,2007.
Rates Technology Inc. v. Cablevision Systems Corp.
Slip Copy, 2007 WL 1176732 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                        Page 1
Slip Copy, 2007 WL 4349135 (N.D.N.Y.)
**(Cite as: Slip Copy)**

**H**Cornell Research Foundation, Inc. v. Hewlett-Packard
Co.
N.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. New York.
CORNELL RESEARCH FOUNDATION, INC., and
Cornell University, Plaintiffs,
v.
HEWLETT-PACKARD COMPANY, Defendant.
**Civ. Action No. 5:01-CV-1974 (NAM/DEP).**

Jan. 31, 2007.

Sidley Austin Law Firm, Edward Poplawski, Esq., Denise
McKenzie, Esq., Sandra Fujiyama, Esq., Bryan K.
Anderson, Esq., of Counsel, Los Angeles, CA, Cornell
University, Office of Counsel, James J. Mingle, Esq.,
Nelson Roth, Esq., Valerie Cross, Esq., of Counsel,
Ithaca, NY, for Plaintiffs.
Dla Piper, Rudnick Law Firm, John Allcock, Esq., Licia
E. Vaughn, Esq., Stewart M. Brown, Esq., Sean C.
Cunningham, Esq., Arthur A. Wellman, Esq., Erin P.
Gibson, Esq., of Counsel, San Diego, CA, Fish,
Richardson Law Firm, Barry K. Shelton, Esq., John E.
Guist, Esq., of Counsel, Austin, TX, Harter, Secrest Law
Firm, Jerauld E. Brydges, Esq., of Counsel, Rochester,
NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.
  **\*1** Precipitated by the manufacture and sale by
defendant Hewlett-Packard Company ("HP") of a series
of computer processors, beginning with their introduction
into the marketplace in or about 1996 and extending over
the remaining lifetime of the patent at issue in this case,
plaintiffs Cornell University ("CU") and Cornell Research
Foundation, Inc. ("CRF") (collectively, "Cornell")
commenced this action against HP, alleging patent
infringement. At the heart of this high-stakes infringement
suit is a now-expired patent issued in 1989 to Dr. Hwa C.
Torng, and assigned to CRF, describing an "instruction
issuing mechanism for processors with multiple
functioning units."Plaintiffs assert that the accused
processors infringe various of the means-plus-function
and method claims of the patent.

  Now that both fact and expert discovery, which have
proven to be both expansive and contentious, is closed,
HP has moved for the entry of partial summary judgment
seeking to narrow the claims to be tried by invoking
several familiar defenses, including laches, invalidity,
non-infringement, and patent exhaustion, and additionally
urging a narrowing of the base plaintiffs have proposed
for calculation of reasonable royalties, in the event of a
finding of infringement. HP's five dispositive motions,
which are vigorously opposed by the plaintiffs, together
with objections voiced by both sides to certain evidentiary
materials offered in connection with those motions, have
been referred to me for the issuance of a report and
recommendation, pursuant to 28 U.S.C. §
636(b)(1)(B).*See also*Fed.R.Civ.P. 72(b). Having
carefully considered the extensive submissions of the
parties and oral argument conducted on December 5,
2006, I make the following recommended findings with
regard to the pending motions.

*I. BACKGROUND*

  On February 21, 1989, United States Patent No.
4,807,115 (the " '115 Patent") issued to plaintiff CRF, as
assignee of the named inventor, Dr. Torng. Amended
Complaint (Dkt. No. 43) Exh. 1 (hereinafter cited as the
"'115 patent"). The patent discloses the invention which it
describes as an instruction issuing system and method for
computer processors with multiple functioning units. The
object of the architecture and techniques specified in the
'115 patent claims is the detection of dependencies within
a series of instructions, or directions which specify certain
operations which a computer is to perform, in order to
permit concurrent execution of multiple, dependency-free
instructions in a single machine cycle, thereby enhancing
the speed at which the device can operate. '115 Patent,
1:10-2:40.

  For purposes of this action, the parties are in
agreement that a processor is "[a] device that interprets
and executes instructions."*Cornell Univ. v. Hewlett
Packard Co.,* 313 F.Supp.2d 114, 129 (N.D.N.Y.2004).
The typical high performance processor to which the '115
patent is addressed is a multiple functional unit,
comprised of two sections, including an instruction unit,
designed to store and issue instructions retrieved from
memory, and an execution unit, charged with performing
the operations specified by the instructions. Instruction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 4349135 (N.D.N.Y.)
**(Cite as: Slip Copy)**

Many of the cases typically cited which favor inadmissibility of licenses and compromises entered in the context, or in anticipation, of litigation in cases such as this do so not because they are properly excludable under Rule 408, but rather based upon their limited usefulness in determining a reasonable royalty based upon a hypothetical, arms length negotiation between willing patent holder and willing licensee. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1164, n. 11 (6th Cir.1978); *see also Hanson,* 718 F.2d at 1075 (citing *Panduit* ). That agreements reached under the specter of litigation are rarely indicative of commercially reasonable terms resulting from unencumbered arms length negotiations is confirmed by the following observation, made by the Supreme Court more than a century ago:

It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.

*Rude v. Westcott,* 130 U.S. 152, 164, 9 S.Ct. 463, 468, 32 L.Ed. 888 (1889). Addressing the same principle, the Sixth Circuit more recently cautioned that[a] royalty, if any, resulting from [settlement of a prior litigation] should not be considered evidence of an established royalty and thus a measure of adequate damages here. License fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation.

*Panduit Corp.,* 575 F.2d at 1164, n. 11(quoting, *inter alia, Rude,* 130 U.S. at 164, 9 S.Ct. 463, 32 L.Ed. 888) (internal quotation marks omitted).

When attempting to assist the factfinder in placing a value upon plaintiffs' infringement claims in this case, the trial court will undoubtedly be required to assess whether the '115 patent agreement negotiated with Intel, which plaintiffs portray as having been entered into under the cloud of potential litigation, as well as the negotiations leading up to its formulation and offers made by CRF to license other entities under the '115 patent, should be received in evidence as establishing standards for use in determining a reasonable royalty under the patent for HP's

allegedly infringing conduct. In addressing this confusingly complex issue the court will of necessity be required to navigate turbid waters created by the confluence of Rules 402 and 408, with precious little clear guidance from the Federal Circuit. *See Alpex Computer Corp. v. Nintendo Co., Ltd.,* No. 86 Civ. 1749, 1994 WL 681752, at *42-*45 (S.D.N.Y. Dec.5, 1994) (noting importance of history of patentee's licensing practices and the fact that the court had considered the admissibility of such evidence on three separate occasions, had certified the issue of Rule 408 exclusion for interlocutory appeal, "and struggled to implement its rulings fairly during the trial."), *aff'd in part, rev' in part,*102 F.3d 1214 (Fed.Cir.1996), *cert. denied,*521 U.S. 1104, 117 S.Ct. 2480, 138 L.Ed.2d 989 (1997). The determination of admissibility of the challenged evidence may well turn upon an analysis of context, informed by the history of the parties' negotiations, and the question of whether a threat of litigation was made and had advanced sufficiently, at the time of the negotiations, to undermine significance of the resulting license or the parties' discussions and effectively negate the reliability of any benchmarks established during those negotiations, for purposes of determining a reasonable royalty, and even perhaps warrant exclusion of such evidence altogether under Rule 408.[FN16]

> FN16. The Intel License Agreement appears to be the only evidence potentially implicated in the reasonable royalty rate equation, since none of the other communications at issue, in which plaintiffs attempted to license others to the '115 patent, mention specific royalty figures. Brydges Decl. (Dkt. No. 707) Exh. 22.

**\*18** It is unnecessary, however, for the court to stake out a position on this thorny issue at this juncture. While Rule 408 would potentially preclude consideration of the Intel license as bearing upon the value of the claim in that case, and thus a reasonable royalty rate to be applied in this action, as was previously noted, Rule 408 does not require exclusion of such evidence to the extent that it bears relevance on other issues in dispute. *See*Fed.R.Evid. 408(b); *American Standard, Inc. v. Pfizer, Inc.,* MISC. 87-1-73-IP, 1988 WL156152, at *2 (S.D.Ind. July 8, 1988) ("[A]dmissibility under Rule 408 depends not only on the nature of the evidence offered, but on the purpose for which it is introduced[.]"). For purposes of the pending motions, evidence of the Intel License together with its underlying negotiations, as well as the offers by CRF to license other potentially infringing parties, is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

being offered by HP for a different purpose-to address CRF's licensing practices, in order to assist the factfinder in determining an appropriate royalty base, and specifically whether in the context of hypothetical negotiations it would have included peripherals in that royalty base, and, for purposes of patent exhaustion, for the legal effect of the Intel agreement itself. Since in neither instance are the license and negotiations at issue being offered either to establish liability or for the purpose of valuation of the claim between Intel and CRF, as distinct from these other, ancillary purposes, neither the letter nor the spirit of Rule 408 requires exclusion of the disputed license and negotiations at this juncture, for those purposes.*American Standard, Inc. v. Pfizer, Inc., 722 F.Supp. 86, 136, n. 55 (D.Del.1989)* (admitting evidence otherwise excludable under Rule 408 as bearing upon the issue of commercial success). Accordingly, I recommend that plaintiffs' motion to strike such evidence be denied, without prejudice to their right to seek a ruling *in limine* from the trial court regarding these issues under Federal Rules of Evidence 402, 403, and 408.

### 2. HP Objections to Plaintiffs' Submissions

#### a) Expert Opinions

In their opposition to several of HP's pending summary judgment motions, plaintiffs have submitted reports of various of its experts, including James E. Smith, Marion Stewart, Robert G. Sterne, Peter Dane Elliott, Earl Swartzlander and Irving Rappaport. HP, despite itself having submitted an unsworn report from one of its own experts in connection with the pending summary judgment motions, *see* Brydges Decl. (Dkt. No. 698) Exh. 5 (report of HP expert Robert H. Wallace), has objected to consideration by the court of those reports as representing inadmissible hearsay, and thus not properly before the court under Rule 56(e). In an attempt to cure any perceived defect, plaintiffs have since submitted to the court declarations of the five experts whose reports were previously included, attesting to the contents of their respective reports.[FN17]Dkt. No. 773.HP counters by arguing that this effort to cure is ineffective, both as untimely and procedurally improper, since the affidavits are not submitted in traditional format but instead simply attest to the wholesale accuracy of larger, comprehensive documents.

> FN17. The sixth expert at issue, Earl Swartzlander, was retained by HP. As a report generated by an adversary party's expert, this

report, prepared at HP's request and disclosed in this litigation, is therefore not inadmissible as hearsay, but instead constitutes an authorized statement of an opposing party's representative properly before the court.Fed.R.Evid. 801(d)(2); *contrast Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 163-64 (3d Cir.1995) (opinion of expert retained in unrelated litigation does not constitute admissible statement of an authorized agent of a party).

**\*19** There are some cases tending to support plaintiffs' initial position that an unsworn expert report may be considered by the court, particularly in opposition to a summary judgment motion, following full disclosure which has included an adequate opportunity to depose the expert regarding the opinions set forth in his or her report. *See, e.g., Medtronic Xomed, Inc. v. Gyrus ENT LLC,* 440 F.Supp.2d 1300, 1310 n. 6 (M.D.Fla.2006) (unsworn expert report which was marked as exhibit during deposition of expert properly admitted and considered on motion for summary judgment). The far greater weight of authority, however, supports HP's argument, to the effect that such reports constitute inadmissible hearsay and thus are not worthy of consideration on motion for summary judgment. *Maytag,* 448 F.Supp.2d at 1064 (collecting cases).

Despite the potential inappropriateness of submitting the unsworn report of a party's own expert to support or oppose a summary judgment motion, such a defect is, as plaintiffs argue, curable through the submission of an affidavit or a declaration verifying the report's contents. *Maytag,* 448 F.Supp.2d at 1064 ("This court concludes that subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment."); *see also Kidder, Peabody & Co., Inc. v IAG Intern. Acceptance Group, N.V.,* 28 F.Supp.2d 126, 130 (S.D.N.Y.1998) (exercising discretion to permit the filing of affidavits purporting to authenticate previously unsworn materials challenged in connection with a summary judgment motion), *aff'd,*205 F.3d 1323 (2d Cir.1999); *Brenord v. Catholic Med. Ctr. Of Brooklyn & Queens, Inc.,* 133 F.Supp.2d 179, 183 n. 1 (E.D.N.Y.2001) (defect, based upon submission of unsworn expert report in connection with summary judgment motion, cured through later submission of sworn affidavit attaching expert report); *Gache v. Town of Harrison, New York,* 813 F.Supp. 1037, 1052 (S.D.N.Y.1993) ("To the extent defendants seek to strike

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1573625 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Page 1

▷General Elec. Co. v. DR Systems, Inc.
E.D.N.Y.,2007.
Only the Westlaw citation is currently
available.GENERAL ELECTRIC CO., Plaintiff,
v.
DR SYSTEMS, INC., Defendant.
**No. CV 06-5581(LDW)(ARL).**

May 25, 2007.

Edward John DeFranco, Quinn Emanuel Urquhart
Oliver & Hedges, New York, NY, Victoria F.
Maroulis, Quinn Emanuel Urquhart Oliver &
Hedges, LLP, Redwood Shores, CA, for Plaintiff.
Dina M. Hayes, Frederick C. Laney, Matthew G.
McAndrews, Raymond P. Niro, Jr., Nicholas M.
Dudziak, Niro, Scavone, Haller & Niro, Chicago, IL,
Peter Mayer Ripin, Davidoff Malito & Hutcher LLP,
New York, NY, for Defendant.

**ORDER**

LINDSAY, Magistrate Judge.
    *1 Before the court is a series of letter
applications from the parties. The court addresses
them as follows:

    Plaintiff's letter application, dated May 4, 2007,
seeks to compel the production of documents and
information relating to defendant's settlement
agreements with third parties relating to the accused
products in this patent case. According to the
plaintiff, it seeks those agreements to determine what
the defendant considered to be a reasonable royalty
when it licensed its comparable patent. Thus, plaintiff
claims that evidence of what defendant accepted
under those agreements will likely be relevant to the
determination of a reasonable royalty in this case.
Defendant opposes the application by letter dated
May 14, 2007.[FN1]Defendant argues that the settlement
agreements sought by the plaintiff are irrelevant to
the issues in this case, and suggests that the
disclosure of these agreements in this action will
prejudice it in another lawsuit pending in the
Southern District of California brought by DR against
GE and other codefendants. Defendant also argues
that plaintiff has failed to make a "particularized

showing" that the settlement documents are
reasonable calculated to lead to the discovery of
admissible evidence as is required.

> FN1. The court notes that this court's May
> 10th order extended the defendant time to
> oppose the application through May 14.
> Accordingly, this letter is timely.

    Federal Rule of Civil Procedure 26(b) permits
the discovery of "any matter, not privileged, that is
relevant to the claim or defense of any party."Rule
26(b) further provides that "[r]elevant information
need not be admissible at trial if the discovery
appears reasonably calculated to lead to the discovery
of admissible evidence."Fed.R.Civ.P. 26(b)(1).
Notwithstanding the broad discovery contemplated
by Rule 26, district courts in the Second Circuit have
applied a heightened standard to the production of the
terms of settlement agreements and documents
related thereto. See, e.g., Morse Diesel, Inc. v.
Fidelity & Deposit Co., 122 F.R.D. 447, 451
(S.D.N.Y.1988); Bottaro v. Hatton Assocs., 96
F.R.D. 158 (E.D.N.Y.1982). This heightened
standard requires the party seeking production to
make " 'some particularized showing of a likelihood
that admissible evidence will be generated by the
dissemination of the terms of the settlement
agreement.' " Morse Diesel, 122 F.R.D. at 450,
quoting Bottaro, 96 F.R.D. at 160.

    Here, the plaintiff argues only that the settlement
agreements are relevant and discoverable under Rule
26(b)'s liberal discovery provision. This argument,
however, fails to meet the applicable heightened
standard particularly in the face of defendant's claim
that the settlement agreements do not concern the
patents at issue in this case and are sought simply to
gain a tactical advantage in another case between the
parties. Accordingly, the plaintiff's May 4th
application is denied at this time.

    Plaintiff also moves by letter dated May 15,
2007 for an order compelling the defendant to
provide responses to its interrogatories, served on
March 29, 2007. The interrogatories sought the
defendant's construction of each term in the claims
that defendant contends requires construction.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1573625 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Defendant responded to the interrogatories on May 2, 2007, declining to construe such terms because it had not yet received a substantive response from plaintiff to its request for plaintiff's proposed claims constructions. Plaintiff argues that the defendant's untimely interrogatory response constitutes a waiver of any objections. Plaintiff also explains that, in an attempt to resolve this issue without judicial intervention, it suggested that the parties simultaneously exchange their claims constructions and that the defendant rejected this proposal. Defendant opposes the application by letter dated May 18th, arguing that the plaintiff should be required to provide a substantive response to defendant's claim construction interrogatory and also cross-moves on this issue by letter application dated May 15, 2007.

**\*2** The defendant's letter application seeks an order compelling the plaintiff to respond fully to its interrogatories concerning the construction of several terms of the 122 patent claims GE has asserted in this case and providing defendant with a reasonable 10-day period within which to provide its responsive claims constructions. Plaintiff opposes the application by letter dated May 21, 2007. Plaintiff asserts that its interrogatory response was full and complete and states that it is the defendant who has failed to construe its claim despite plaintiff's service of interrogatories in this regard in March 2007. Plaintiff represents that it has already constructed 28 terms it believes may be disputed and requests that the court resolve this issue by requiring a simultaneous exchange of construed claim terms.

As a threshold matter, given the court's preference for determining cases on their merit, the plaintiff's request that the court find that defendant has waived its objection to the interrogatories is denied. The court turns to the merits of the cross-motions to compel. The defendant's second interrogatory seeks GE's construction of the asserted claims of GE's five patents-in-suit. *See* DR Systems' Interrogatory No. 2, annexed to its May 15, 2007 letter as "Exhibit A." GE's response asserted that each of the 122 asserted claims "is to be given its ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention."GE's Response and Supplemental Response, annexed to DR's May 15, 2007 letter as "Exhibit B" and "Exhibit C", respectively. Defendant

represents that, in an effort "to move discovery matters along," it narrowed the terms deemed to require construction by GE and provided GE's counsel with a list of 100 such claim terms on April 30, 2007. In response, GE provided constructions for 22 of the 100 claim terms identified by DR. DR represents that it offered to reconsider the remaining 78 claim terms but GE "cut-off the compromise dialogue" on May 15, 2007. Accordingly, DR compels the GE's construction of the remaining 78 claim terms.

Given DR's willingness to reconsider whether it requires construction of the 78 claim terms at issue here, the parties are directed to meet and confer either in person or by telephone in an attempt to resolve this matter.

With regard to the plaintiff's motion to compel, the court declines to order a simultaneous exchange of term constructions. Rather, plaintiff shall provide claims constructions and DR shall provide responsive claims constructions 10 days thereafter. Finally, the court will extend the June 15, 2007 deadline for the completion of claims construction discovery to **July 15, 2007.**

E.D.N.Y.,2007.
General Elec. Co. v. DR Systems, Inc.
Slip Copy, 2007 WL 1573625 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.