IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ANASCAPE, LTD | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:06-CV-158 |
| v. | § | |
| | § | |
| MICROSOFT CORP. AND | § | JUDGE RON CLARK |
| NINTENDO OF AMERICA, INC. | § | |
| | § | |
| *Defendant.* | § | |

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE AND DENYING DEFENDANTS' MOTION FOR LEAVE

Before the court are Plaintiff's Motion to Strike Portions of the Expert Reports of Stephen Bristow and Robert Dezmelyk [Doc. #209] and Defendants' Motion for Leave to Amend their Invalidity Contentions [Doc. #226]. Plaintiff seeks to strike the portions of Dr. Bristow and Dr. Dezmelyk's expert reports opining on the 1) Magellan reference, and 2) any prior art combination that does not include either the Goto Reference or Armstrong ´891. Plaintiff also seeks to strike Mr. Bristow's supplemental expert report as untimely. Defendants allege that the references are not new. In the alternative, Defendants seek to amend their invalidity contentions to add magazine publications related to the "Flightstick" and Dual Shock 2 references.

Defendants' invalidity contentions simply assume that Anascape can guess what controllers correspond to which disclosed prior art reference. Allowing such a "mix-and-match" infringement contention disclosure game to stand would encourage violation of the rules and discourage the voluntary exchange of information. Moreover, there is no

identification of how each controller would be combined with other prior art.   The court must reject Defendants' argument that merely giving a generalized name to several prior art references complies with the requirement of P.R. 3-3. Accordingly, Anascape's motion to strike is granted and Defendants' motion for leave to amend is denied.

## I. Background

Anascape filed suit against Defendants Microsoft Corporation and Nintendo of America, Inc. claiming infringement of U.S. Patent No. 6,906,700 ("the '700 patent.") The '700 patent generally describes graphic image controllers that have a "tactile feedback motor" with a shaft and offset weight for providing vibration that is felt by the user. In some embodiments, the sensors are pressure-sensitive variable output sensors.

On February 12, 2007, the court's Scheduling Order [Doc. #52] required Defendants to file P.R. 3-3 Invalidity Contentions (and P.R. 3-4 document production).  Defendants served what they called Preliminary Invalidity Contentions as required by P.R. 3-3.[1]

On May 4, 2007, Microsoft filed a Request for *Inter Partes* Reexamination of the patent.

On February 11, 2008, parties with the burden of proof were to provide their expert witness reports.  Defendants' experts, Mr. Robert Dezmelyk and Mr. Stephen Bristow, filed expert reports discussing invalidity contentions, including *inter alia* the Sony Dual Shock and Dual Shock 2 controllers in view of other prior art references.

---

[1]The local patent rules were amended on October 27, 2006 and the word "preliminary" was eliminated from all references to infringement contentions and invalidity contentions. Parties cannot change local rules by using creative titles for their motions.

On March 1, 2008, Mr. Bristow, supplemented his report by discussing, *inter alia,* the Magellan, Sony Dual Shock 2 and Sony Analog Joystick ("Flightstick") controllers.

On March 3, 2008, Anascape moved to strike portions of Mr. Bristow and Mr. Dezmelyk's report.

On March 17, 2008, Defendants moved for leave to amend their invalidity contentions.

## II. Standard of Review

### A. Local Rules

Both parties agree this case is governed by the Local Patent Rules. This dispute highlights the tension between the necessity for orderly and complete discovery on the one hand, and the natural desire of litigants to attain important tactical advantages by delaying disclosure of key elements of their case. Over time, the Federal Rules of Civil Procedure have been amended in favor of full and open discovery. *See* Fed. R. Civ. P. 26 Advisory Committee note (1993 Amendments). The Rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Some district courts have recognized that the normal discovery process can be very cumbersome and expensive in a complicated patent case. To balance the competing interests of the parties, these courts have adopted Local Patent Rules and frequently enter special scheduling orders. *See* Fed. R. Civ. P. 16(c)(6) and (12). This tracks suggestions made in the MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.212.

Local Patent Rules are a valid exercise of the court's authority to manage its docket in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 83; *O2 Micro International Limited v. Monolithic Power Systems*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006);

*Genetech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). The judges of the Eastern District of Texas unanimously adopted the Local Patent Rules. They are posted on the Court's website, and each party was informed in the Order Governing Proceedings that they would apply. The Scheduling Order in this case set deadlines for the parties to complete actions required by the various provisions of the Local Patent Rules.

  The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860, * 3 (N.D. Cal. June 16, 2004); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 849 (E.D. Tex. 2004). A court has the inherent power to enforce its scheduling orders and to impose sanctions. Fed. R. Civ. P. 16(f); *see O2 Micro Intern. Ltd.,* 467 F.3d at 1363; *Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n. 3 (5th Cir. 1968). However, interpretation and enforcement of discovery provisions of the Local Patent Rules should not conflict with, and should harmonize with, the discovery provisions of the Federal Rules of Civil Procedure. *See O2 Micro Intern. Ltd.,* 467 F.3d at 1365. Deciding whether invalidity contentions should be struck, or whether to allow amendments to contentions, is similar to deciding whether evidence should be excluded for discovery violations. It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended. Therefore, the court will consider the kinds of factors identified as important in making both types of decisions. *See O2 Micro Intern. Ltd.,* 467 F.3d at 1366; *Finisar v. DirecTV Group, Inc.*, 424 F.Supp.2d 896, 899 (E.D. Tex. 2006). A non-exclusive list of factors considered by courts includes:

    1. The danger of unfair prejudice;

    2. The length of the delay and its potential impact on judicial proceedings;

    3. The reason for the delay, including whether it was within the reasonable control of the party responsible for the delay;

    4. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and

    5. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent.

*See, e.g., Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2006)(listing factors to consider for exclusion of evidence); *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)(rule 37(c)(1) mandates that a trial court punish a party for failure to make disclosures under Rule 26, unless the violation is harmless or is substantially justified); *S & W Enters., L.L.C. v. Southtrust Bank of Alabama, N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (party seeking leave to amend a court's scheduling order must show "good cause," i.e., that the deadlines cannot reasonably be met despite the diligence of the party seeking the extension.); *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993) (listing factors in determining excusable neglect).

**B. Patent Rule 3-3**

    Under P.R. 3-3, a party alleging invalidity must identify each alleged item of prior art.

P.R. 3-3(c) provides that the Invalidity Contentions must include:

> a chart identifying where *specifically in each* alleged item of prior art *each* element of *each* asserted claim is found, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identifying structure(s), act(s), or material(s) in each item of prior art that performs the claimed function. (emphasis added).

These contentions are a way to streamline the discovery process. *STMicroelectronics, Inc.*, 307 F.Supp.2d at 755.

### III. Analysis

Anascape argues that it will be prejudiced because interpretation of a defendants' invalidity contention should not be a guessing game. Defendant argues that the "information [in the expert reports] relates to the same controllers, patents and printed publications (and combinations of the same) that were mapped against the ´700 claims in Microsoft's and Nintendo's [] invalidity contentions, as well as in Microsoft's request for reexamination, which the invalidity contentions incorporated by reference." Defs.' Response, p. 1 [Doc. #228].

A. Magellan reference

Defendants state that Magellan was cited in Nintendo's invalidity contention. The invalidity contention lists the Magellan reference in a chart, but fails to explain specifically where each element of each asserted claim is found in the Magellan controller. *See* Pl.'s Motion to Strike, Ex. 4, p.4-5, and 306-322. [Doc. #209]. The controller is simply named among a long list of other references.

This meager attempt at a disclosure does not harmonize with the local patent rules. Anascape's motion is granted with respect to the Magellan reference.

B. Prior Art Combinations that do not Include Either the Goto Reference or Armstrong ´891.

Defendants admit that it did not explicitly disclose the Sony Dual Shock, Sony Dual Shock 2 or "Flightstick" controllers in their invalidity contentions. Yet Defendants argue it equated these references with the "Goto" controllers, and Anascape should have known that because they share many common elements. Similarly, Defendants argue that Anascape could easily tell that "Himoto" means "Sega Saturn 3D." Finally, Defendants state that "CyberMan" cannot come as a surprise to Anascape because of Armstrong's admissions in the ´891 patent.

The local patent rules do not allow a defendant to throw a generic term into its invalidity contentions and use it to encompass several prior art references. Anascape is not required to read Defendants' mind as to which controllers would be a "Goto" controller or somehow know that "Himoto" is "Sega Saturn 3D." If Defendants truly meant to equate various prior art references to each other rather than to sandbag Anascape with its invalidity contentions, Defendants could have included the helpful chart submitted in response to Anascape's motion to strike back in February 2007, rather than a few weeks before trial. *See* Defs.' Response, p. 6-8 [Doc. #228]. For example, the chart provides:

| **Exemplary Complained of Combinations in Expert Report(s)** | **Corresponding Combination(s) in Microsoft's/Nintendo's Invalidity Contentions** |
|---|---|
| Dual Shock in view of Saturn 3D | Goto in view of Himoto/Sega Controllers |

Defendants argue that Dual Shock, Dual Shock 2 and "Flightstick" were mapped element-by-element in photographs of the controllers with labeled parts. This is a proper disclosure for anticipation, but not obviousness. Anascape is not seeking to strike Defendants'

use of the Dual Shock, Dual Shock 2, "Flightstick," Sega Saturn 3D or Cyberman controllers on anticipation grounds.

Defendants' invalidity contentions related to the combinations of controllers that do not include the Goto Reference or Armstrong ´891 are deficient. Accordingly, Anascape's motion is granted.

C. Magazine Articles Regarding Sony Controllers

Defendants seek leave to amend its invalidity contentions to include magazine publications regarding Sony "Flightstick" and Dual Shock 2 controllers, namely the "Two-rific" and GameFan articles. These publications are discussed in Mr. Bristow's supplemental expert report, which Anascape alleges is untimely.

Defendants argue that Anascape "informally" amended its Infringement Contentions after the court's *Markman* order because Anascape describes video games not included in the infringement contentions. The accused products and claims in this case relate to game *controllers,* not the video games themselves. Anascape's disclosure of actual use of a controller with a particular game is not an amendment of its infringement contentions.

Defendants next contend that it has good cause to supplement its invalidity contentions because the magazine articles were not produced until February 20, 2008, at the deposition of Susan Panico, a 30(b)(6) representative of third-party SCEA. If these actually are publicly available articles, parties with the vast combined resources of Defendants could have located them with relatively little effort. There is no evidence that Anascape had any hand in delaying production of documents by a third party. Defendants' failure to fully investigate the field

does not justify an amendment of invalidity contentions a few weeks before trial when Anascape was not at fault.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike Portions of the Expert Reports of Stephen Bristow and Robert Dezmelyk [Doc. #209] is **GRANTED.**

IT IS FURTHER ORDERED that Defendants' Motion for Leave to Amend their Invalidity Contentions [Doc. #226] is **DENIED.**

So **ORDERED** and **SIGNED** this **1**   day of **May, 2008.**

_____
Ron Clark, United States District Judge